FILED
HARRISBURG, PA

DEC 1 4 2004

MARY E. D'ANDREA, CLERK
Per _____
        Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TAMMY KITZMILLER; BRYAN AND
CHRISTY REHM; DEBORAH
FENIMORE AND JOEL LIEB; STEVEN
STOUGH; BETH EVELAND; CYNTHIA
SNEATH; JULIE SMITH; AND ARALENE
("BARRIE") D. AND FREDERICK B.
CALLAHAN,

**4:CV   04-2688**

Plaintiffs,

Civil Action No. _____

v.

DOVER AREA SCHOOL DISTRICT;
DOVER AREA SCHOOL DISTRICT
BOARD OF DIRECTORS,

Defendants.

## COMPLAINT

I.      INTRODUCTION

On October 18, 2004, the defendant Dover Area School District Board

of Directors ("Dover School Board") passed by a 6-3 vote the following resolution:

> Students will be made aware of gaps/problems in
> Darwin's theory and of other theories of evolution
> including, but not limited to, intelligent design. Note:
> Origins of Life is not taught.

On November 19, 2004, the defendant Dover Area School District announced that teachers would be required to read a statement to students in the ninth grade biology class at Dover High School that includes the following language:

> Because Darwin's Theory is a theory, it is still being
> tested as new evidence is discovered. The Theory is not
> a fact. Gaps in the Theory exist for which there is no
> evidence. A theory is defined as a well-tested
> explanation that unifies a broad range of observations.

> Intelligent design is an explanation of the origin of life
> that differs from Darwin's view. The reference book, *Of
> Pandas and People* is available for students to see if they
> would like to explore this view in an effort to gain an
> understanding of what intelligent design actually
> involves. As is true with any theory, students are
> encouraged to keep an open mind.

Thus, the Dover Area School District intends to teach students that there are gaps and problems in the scientific theory of evolution and present "intelligent design" to students in public school science class as an alternative to the scientific theory of evolution.

Intelligent design is a non-scientific argument or assertion, made in opposition to the scientific theory of evolution, that an intelligent, supernatural actor has intervened in the history of life, and that life "owes its origin to a master

intellect." The phrase "intelligent design" was first widely used in the book *Of Pandas and People: The Central Question of Biological Origins* and has been vigorously promoted by opponents of the scientific theory of evolution for the last fifteen years. Unlike the theory of evolution, however, intelligent design is neither scientific nor a theory in the scientific sense; it is an inherently religious argument or assertion that falls outside the realm of science.

Intelligent design has been publicly promoted by an organization called the Discovery Institute and others as a means of challenging the scientific theory of evolution in public classrooms and replacing it with so called "science" that is "consonant with Christian and theistic convictions." The purpose of the Dover School Board in passing the October 18 resolution was similarly religious. The Board decided to amend the district's biology curriculum to include the presentation of intelligent design over the objection of the Dover High School's science faculty. The leading proponent on the Board of the October 18 resolution stated during the Board's discussion of the biology curriculum, "Two thousand years ago, someone died on a cross. Can't someone take a stand for him?" The Dover Area School District has also arranged for Dover High School to be supplied with the book *Of Pandas and People:  The Central Question of Biological Origin.  Of Pandas and People* is, by acknowledgment of its authors, directed at

making the "favorable case for intelligent design," and raising doubt about natural descent (*i.e.*, the scientific theory of evolution).

The effect of the defendant Dover School Board's October 18 resolution as implemented by the defendant Dover Area School District (defendants' "intelligent design policy") will be to compel public school science teachers to present to their students in biology class information that is inherently religious, not scientific, in nature. The resolution thus is in clear and direct violation of the First Amendment's Establishment Clause, which prohibits the teaching or presentation of religious ideas in public school science classes. The plaintiffs, parents of children in the Dover Area School District, bring this lawsuit to enforce their rights under the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania. As their remedy, the plaintiffs seek a declaration that the defendants' intelligent design policy violates the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania. They also seek an injunction to prevent such violations.

## II.     JURISDICTION AND VENUE

1.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over plaintiffs' causes of action arising under the First and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This

Court has supplemental jurisdiction over plaintiffs' cause of action arising under the Constitution of the Commonwealth of Pennsylvania pursuant to 28 U.S.C. § 1367.

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because one or more defendants resides in this District, all defendants reside in the Commonwealth of Pennsylvania and the events or omissions giving rise to the claims at issue occurred in this District.

## III.    PARTIES

3.      Plaintiff Tammy J. Kitzmiller is a resident of Dover, Pennsylvania.  She is a parent of a child in the ninth grade and a child in the eleventh grade at Dover High School.

4.      Plaintiffs Bryan and Christy Rehm are residents of Dover, Pennsylvania.  They are parents to a child in the eighth grade, a child in the second grade, a child in kindergarten in the Dover Area School District, and a child of pre-school age and intend for their children to attend Dover High School.

5.      Plaintiffs Deborah F. Fenimore and Joel A. Leib are residents of Dover, Pennsylvania.  They are the parents of a child in the twelfth grade at Dover High School and a child in the seventh grade in the Dover Area School District and intend for that child to attend Dover High School.

6.      Plaintiff Steven Stough is a resident of Dover, Pennsylvania. He is a parent of a child in the eighth grade in the Dover Area School District and intends for his child to attend Dover High School.

7.      Plaintiff Beth A. Eveland is a resident of York, Pennsylvania. She is a parent of a child in the first grade in the Dover Area School District and a child of pre-school age and intends for her children to attend Dover High School.

8.      Plaintiff Cynthia Sneath is a resident of Dover, Pennsylvania. She is a parent of a child in the first grade in the Dover Area School District and a child of pre-school age and intends for her children to attend Dover High School.

9.      Plaintiff Julie Smith is a resident of York, Pennsylvania.  She is a parent of a child in the tenth grade at Dover High School.

10.      Plaintiffs Aralene ("Barrie") D. and Frederick B. Callahan are residents of Dover, Pennsylvania.  They are parents of a child in the tenth grade at Dover High School.

11.      Defendant Dover Area School District is a municipal corporation with a board of directors, which is defendant Dover Area School District Board of Directors.  At all times alleged herein, defendants were acting under color of state law.  The Dover Area School District is comprised of Dover Township, Washington Township, and Dover Borough, all in York County,

Pennsylvania. There are approximately 3,700 students in the School District, with approximately 1,000 attending Dover High School.

## IV.   BACKGROUND TO THIS LAWSUIT

### A.   Science and The Scientific Theory of Biological Evolution

12.    The scientific theory of biological evolution, often associated with Charles Darwin, states that all known life shares common descent. The National Academy of Sciences summarizes the scientific theory of evolution as follows:

> Biological evolution concerns changes in living things during the history of life on earth. It explains that living things share common ancestors. Over time, evolutionary change gives rise to new species. [Charles] Darwin called this process "descent with modification," and it remains a good definition of biological evolution today.

13.    In science, the term "theory" has a distinct meaning and does not suggest uncertainty, doubt, or speculation. The National Academy of Sciences defines "theory" as follows: "In science, a well-substantiated explanation of some aspect of the natural world that can incorporate facts, laws, inferences and tested hypotheses." In addition to the theory of evolution, other examples of a scientific theory include the germ theory of diseases, the heliocentric theory of the solar system, atomic theory (the basis of the periodic table of the elements), the theory of plate tectonics, and the theory of gravity. Each of these scientific theories

integrates and explains such a wide range of data that they are considered crowning achievements of their respective fields.

14.     Regarding specifically the theory of evolution, the National Academy of Sciences has stated that "evolution is one of the strongest and most useful scientific theories we have" and "[t]he scientific consensus around evolution is overwhelming." The American Association for the Advancement of Science has stated that: "The contemporary theory of biological evolution is one of the most robust products of scientific inquiry. It is the foundation for research in many areas of biology as well as an essential element of science education."

**B.      Creationism and The Concept of Intelligent Design**

15.     While the scientific theory of biological evolution is overwhelmingly accepted in the scientific community, it has been repeatedly attacked by persons who disagree with it on religious grounds because it is perceived by some to contradict their religious beliefs about the origin and development of life, including, but not limited to, acceptance of a literal reading of the creation stories in the Book of Genesis.

16.     Opponents of evolutionary theory in the United States have on many occasions attempted to forbid, limit, or otherwise undermine the teaching of the scientific theory of biological evolution in public schools. Challenges have included laws or policies to prohibit the teaching of evolution, requiring teachers to

make statements or disclaimers questioning the validity of the scientific theory of evolution, and/or requiring teachers to present antievolutionary views, including religious views not based on scientific evidence.

17.     In 1987, the United States Supreme Court issued a decision in *Edwards v. Aguillard*, 482 U.S. 578 (1987), holding that a requirement that public schools teach "creation science" along with evolution violated the Establishment Clause of the First Amendment of the United States Constitution.  The Court held that the belief that a supernatural creator was responsible for the creation of human kind is a religious viewpoint. *Id.* at 591.  The Court further held that the Act "advances a religious doctrine by requiring either the banishment of the theory of evolution from public school classrooms or the presentation of a religious viewpoint that rejects evolution in its entirety." *Id.* at 596.

18.     Since the Court's decision in *Edwards v. Aguillard*, opponents of the scientific theory of biological evolution have developed the assertion or argument of intelligent design as a means for undermining efforts to teach the scientific theory of evolution in public schools and replacing it with so-called "science" that is "consonant with Christian and theistic convictions."

19.     Intelligent design is a belief that the origin and development of living organisms cannot adequately be explained as the result of purely natural forces and thus require the action of an intelligent agent.  In place of natural

explanations, intelligent design posits a supernatural and intelligent creator that

plans and brings into being living things.  In *Of Pandas and People:  The Central*

*Question of Biological Origin,* the authors allege "weaknesses" or "gaps" or

"problems" with evolutionary theory, leading them to conclude that "life itself

owes its origin to a master intellect" and that "new organisms arise from a

blueprint, a plan, a pattern, devised by an intelligent agent."

      20.    The existence of such a creator is a central tenet of traditional

theistic religions.  As such, intelligent design is inherently religious.

      21.    In reality, intelligent design promotes positions taken by

advocates of the same "creation science" that was at issue in *Edwards v. Aguillard,*

including the divine design of biological adaptations and the special creation of the

basic "kinds" of animals.

      22.    The concept of a creator who has power, intelligence, and a

sense of design is a fundamental tenet of the creation science that courts have ruled

is not permitted in schools because it has the purpose and effect of advancing

religion and results in excessive entanglement of the state with religion.  *See*

*McLean v. Arkansas Board of Education*, 529 F. Supp. 1255, 1265 (E. D. Ark.)

(1992) (striking down law requiring teaching of "creation science" along with

"evolution science") (cited with approval in *Edwards v. Aguillard*, 482 U. S. 578

(1987)).

23.     Public proponents of intelligent design have acknowledged its religious content and purposes.  For example, the Discovery Institute produced a paper entitled "The Wedge Strategy," which explains in its "Governing Goals" that the purpose of advocating intelligent design is "[t]o defeat scientific materialism and its destructive moral, cultural and political legacies" and "[t]o replace materialistic explanations with theistic understanding that nature and human beings are created by God."  As a further example, Phillip Johnson, a public spokesperson for intelligent design, explained on American Family Radio in 2003 that "[o]ur strategy has been to change the subject a bit so that we can get the issue of intelligent design, which really means the reality of God, before the academic world and into the schools."

24.     In 1989, Percival Davis and Dean Kenyon authored *Of Pandas and People*.  A second edition was published in 1993.  Both of the book's authors are advocates of creation science.  Mr. Davis has publicly acknowledged that his motive for writing *Of Pandas and People* was religious.  Dr. Kenyon submitted an affidavit in support of the Louisiana law at issue in *Edwards v. Aguillard*, that described "creation science" as "origin through abrupt appearance in complex form" and stated that "creation-science and evolution are the sole scientific alternative explanations" of the origins of life.  "Intelligent design" is simply a new

term applied to the "creation science" promoted by Dr. Kenyon in *Edwards v. Aguillard*.

25.     *Of Pandas and People* is published by the Foundation of Thought and Ethics, which describes itself as a Christian think-tank that includes in its mission "proclaiming, publishing, preaching [and] teaching . . . the Christian Gospel and understanding of the Bible and the light it sheds on the academic and social issues of the day."

## V.   DOVER AREA SCHOOL DISTRICT'S CHANGE TO THE SCIENCE CURRICULUM

26.     The defendant Dover Area School District derives its authority to design and implement curricula from 22 Pa. Code § 4 *et seq.* and 24 P.S. §§ 15-16.  While it is empowered to design school curricula, it must do so "in compliance with the School Code, including requirements for courses to be taught . . . ." 22 Pa. Code § 4.4(b).

27.     Pennsylvania Board of Education standards require that "Pennsylvania's public schools shall teach, challenge and support . . . every student . . . to acquire the knowledge and skills needed to . . . . [e]xplain the mechanisms of the theory of evolution" by Grade 10.  Pennsylvania Department of Education, Academic Standards for Science and Technology, 22 Pa. Code § 4, Appendix B at 12-13 (January 5, 2002).

28.     In the Dover Area School District, professional faculty typically develop curricula and submit them to the Dover School Board for approval.  The process usually also includes the collaboration and cooperation of a high school curriculum committee, a parent-community group, administrators, and the Board.

29.     This controversy began with a dispute over the purchase of a textbook for use in Dover High School biology classes.  The book under consideration was the latest version of *Biology* by Kenneth Miller and Joseph Levine, published by Prentice Hall.  In a public meeting of the defendant Dover Area School Board on June 7, 2004, School Board member William Buckingham, Chair of the Board's Curriculum Committee, criticized the textbook *Biology* because it is "laced with Darwinism," and advocated the purchase of a biology book that includes theories of creation as part of the text.  At that meeting, Mr. Buckingham said that as part of the search for a new biology book, he and others were looking for one that offers balance between the biblical view of creation and Darwin's theory of evolution.  He also said there need not be any consideration for the beliefs of Hindus, Buddhists, Muslims or other competing faiths and views. "This country wasn't founded on Muslim beliefs or evolution," he said.  "This country was founded on Christianity and our students should be taught as such."

30.     At a public meeting of the Dover School Board on June 14, 2004, in further discussion of the new biology book, Mr. Buckingham stated, "Two

thousand years ago, someone died on a cross. Can't someone take a stand for him?" He also stated that "[n]owhere in the Constitution does it call for a separation of church and state."

31.     As of August 2, 2004, past the deadline for purchasing a new biology textbook, the books still had not been ordered. On August 2, 2004, Mr. Buckingham stated in a public Dover School Board meeting that he would vote down the purchase of *Biology* unless the School District also bought *Of Pandas and People: The Central Question of Biological Origin*. A motion to approve the purchase of *Biology* without *Of Pandas and People* failed by a vote of 4-4. After a motion for reconsideration and extended discussion, the purchase of *Biology* was approved without requiring the purchase of *Of Pandas and People*. The final vote was 5-3.

32.     At some time after the August 2, 2004, Dover School Board meeting, the Dover Area School District approved the anonymous donation of fifty copies of *Of Pandas and People* for the Dover High School science classrooms.

33.     On October 18, 2004, the defendant Dover School Board passed by a 6-3 vote the following resolution:

> Students will be made aware of gaps/problems in
> Darwin's theory and of other theories of evolution
> including, but not limited to, intelligent design. Note:
> Origins of Life is not taught.

34.     This resolution was developed without the participation of district science faculty and was opposed by the faculty when it found out about it.

35.     School Board members William Buckingham, Alan Bonsell, Heather Geesey, Sheila Harkins, Angie Zeigler-Yingling, and Jane Cleaver voted for the resolution.  Jeff Brown, Carol Brown, and Noel Wenrich voted against the resolution.

36.     Jeff and Carol Brown both resigned from the Board on October 18, 2004, in protest of the resolution at issue here.  Carol Brown read a statement at the October 18, 2004 Board Meeting, noting that other School Board members had asked her if she had been "born again."

37.     Jane Cleaver and Noel Wenrich's resignations from the School Board, offered at the October 4, 2004 School Board Meeting, became effective, respectively, on November 1, 2004 and November 15, 2004.

38.     On November 18, 2004, the remaining members of the Board selected defendants Edward Rowand, Eric Riddle, Ronald Short, and Sherrie Leber to fill the seats on the Board vacated by Jeff and Carol Brown, Noel Wenrich, and Jane Cleaver.

39.     On December 6, 2004, Board member Angie Zeigler-Yingling resigned from the Board.  She stated that she regrets voting for the October 18

resolution but did so because many on the board pressured her by accusing her of being an atheist and un-Christian.

40.     On November 19, 2004, the School District issued a press release. The release makes clear that the School District policy is to treat intelligent design as a bona fide scientific theory competing with the scientific theory of evolution. According to the release, the School Board has "made a considerable effort to develop and adopt a fair and balanced *science* curriculum." (emphasis added). In "an effort to present a balanced curriculum, the *[Pandas]* book is made available to all students who wish to review the book." The release includes a statement to be read to all students prior to teaching the scientific theory of evolution. That statement reads as follows:

> The state standards require students to learn about Darwin's Theory of Evolution and to eventually take a standardized test of which evolution is a part.
>
> Because Darwin's Theory is a theory, it is still being tested as new evidence is discovered. The Theory is not a fact. Gaps in the Theory exist for which there is no evidence. A theory is defined as a well-tested explanation that unifies a broad range of observations.
>
> Intelligent design is an explanation of the origin of life that differs from Darwin's view. The reference book, *Of Pandas and People* is available for students to see if they would like to explore this view in an effort to gain an understanding of what intelligent design actually involves. As is true with any theory, students are encouraged to keep an open mind.

> The school leaves the discussion of the Origins of Life up
> to individual students and their families. As a standards-
> driven district, class instruction focuses on the standards
> and preparing students to be successful on standards-
> based assessments.

The press release further states: "[T]he Superintendent, Dr. Richard Nilsen, is on record stating that no teacher will teach Intelligent design, Creationism, or present his/her or the Boards' religious beliefs. The Dover Area School District wants to support and not discriminate against students and parents that do have competing beliefs, especially in the area of the origin of life debate. Therefore, the School Board has noted that there are other opinions besides Darwin's on the origin of life."

41.    The Dover Area School District does not require the reading of similar statements for any other aspect of the science curriculum or as regards any other scientific theory.

42.    The Dover Area High School has received sixty donated copies of *Of Pandas and People.*

43.    The Biology Curriculum posted on the Dover Area School District's web site includes as "Unit Content" the following:

> Students will be made aware of gaps/problems in
> Darwin's Theory and of other theories of evolution
> including, but not limited to Intelligent Design

The curriculum states that the Instructional Strategy for this Unit will be "Lecture," and as Material and Resources:  "Reference:  Of Pandas and People."

44.     The defendant Dover School Board has the authority to set official policy for the Dover Area School District.  Accordingly, the October 18, 2004, Board resolution and the November 19, 2004, press release at issue here represent official policy of the Dover Area School District.

45.     Pursuant to the defendants' intelligent design policy, the biology curriculum at Dover High School for the 2004-05 school year requires Dover High School science teachers to present intelligent design to their students and to single out the scientific theory of evolution among all other scientific theories and concepts taught to students as having "gaps" and "problems."

46.     Defendants' intelligent design policy was added to the curriculum precisely because of its religious content and purposes.

47.     Defendants' intelligent design policy would do nothing to improve, and much to harm, science education in the school.

48.     Unless an injunction issues from this Court, plaintiffs will suffer irreparable harm from the defendants' intelligent design policy.

## COUNT ONE

### (Violation of the Establishment Clause of the First Amendment of the Constitution of the United States)

**49.** The actions of defendants, as set forth in paragraphs 1 though 48 above, which are fully incorporated herein, entitle plaintiffs to relief under 42 U.S.C. § 1983 because defendants, acting under color of law, subjected plaintiffs to a deprivation of their rights under the Establishment Clause of the First Amendment of the Constitution of the United States, as applied to the states by the Fourteenth Amendment.

**50.** The October 18, 2004, resolution and the November 19, 2004, press release (collectively, the "defendants' intelligent design policy" or the "policy") facially and as applied violate the Establishment Clause of the First Amendment to the United States Constitution, including in the following ways: The policy has no secular purpose. Singling out evolution from all other scientific topics in the curriculum for special, negative treatment detracts from the science education of students in the Dover Area School District, and misleads them about the established position of the scientific theory of biological evolution in the scientific community. The purpose and effect of the policy are to advance and endorse the specific religious viewpoint and beliefs encompassed by the assertion or argument of intelligent design. Students will not be told of any flaws or weaknesses in intelligent design, much less that the scientific community does not

-19-

consider it valid science. The defendants' policy will suggest to students that the scientific theory of biological evolution is false and that the truth lies in the religious beliefs advocated through the assertion or argument of intelligent design. By telling students that there purportedly are "gaps/problems" in the scientific theory of biological evolution, while not presenting any "gaps" or "problems" in the assertion or argument of intelligent design, the defendants' policy exhibits a preference for the assertion or argument of intelligent design over the scientific theory of biological evolution. The defendants are thereby preferring religion over a religion-neutral scientific theory, and are preferring the specific religious views reflected in the assertion or argument of intelligent design.

51.     The defendants' intelligent design policy promotes religious views that may not be adhered to by the plaintiffs and their children and invades their prerogative to instruct their children about their beliefs with respect to religion. The plaintiffs perceive the district's action as conveying a governmental message that students should subscribe to the religious views reflected in the assertion or argument of intelligent design. The plaintiffs feel harmed, intimidated, and distressed by the defendants' endorsement and promotion of religious views which they feel should not be taught in public school.

52.     The defendants' intelligent design policy results in an excessive entanglement of government and religion, coerced religious instruction, and an

endorsement by the state of religion over non-religion and of one religious

viewpoint over others.  The defendants' intelligent design policy also results in an

excessive entanglement of government and religion because, for example, the

Dover Area School District will have to monitor the classroom behavior of its

teachers to prevent them from identifying God as the "intelligent agent" or

"designer" when students ask that question.  "The need to monitor classroom

discussion in order to uphold [a law's] prohibition against religious instruction will

necessarily involve administrators in questions concerning religion.  These

continuing involvements of State officials in questions and issues of religion create

an excessive and prohibited entanglement with religion." *McLean v. Arkansas,*

529 F. Supp. at 1272.

      **53.**    The defendants' intelligent design policy violates the plaintiffs'

rights under the Establishment Clause by subjecting their children to an

unwelcome governmental endorsement of religion that causes the plaintiffs

irreparable harm.  To avoid this harm, the plaintiffs would have to move from the

Dover Area School District or arrange private education for their children.

      **54.**    As a result of these current and threatened violations of

plaintiffs' rights under the Establishment Clause, plaintiffs are entitled to

declaratory and injunctive relief.

## COUNT TWO

### (Violations of the Constitution of the Commonwealth of Pennsylvania, Art. I, Sec. 3; Art. III, Secs. 15 & 29)

55.     The actions of defendants, as set forth in paragraphs 1 though

54 above, which are fully incorporated herein, violate, both facially and as applied,

Art. I, Sec. 3 and Art. III, Secs. 15 & 29 of the Constitution of the Commonwealth

of Pennsylvania.  The purpose of the defendants' intelligent design policy is to

advance and endorse religion and a particular religious viewpoint.  The defendants'

intelligent design policy succeeds in doing so, resulting in an excessive

entanglement of government and religion, coerced religious practice, and an

endorsement by the state of religion over non-religion and of one religious

viewpoint over others.  The defendants' intelligent design policy also represents an

impermissible appropriation of state funds for purposes of sectarian education.

56.     As a result of these current and threatened violations of

plaintiffs' rights under the Constitution of the Commonwealth of Pennsylvania,

plaintiffs are entitled to declaratory and injunctive relief.

### PRAYER FOR RELIEF

WHEREFORE, in light of the foregoing, plaintiffs respectfully

request the following:

a.      a declaratory judgment pursuant to 28 U.S.C. §§ 2201

and 2202 and 42 U.S.C. § 1983 declaring that the defendants' intelligent design

policy violates the Establishment Clause of the First Amendment of the

Constitution of the United States and Art. I, Sec. 3, and Art. III, Secs. 15 & 29, of

the Constitution of the Commonwealth of Pennsylvania;

       **b.**    an injunction pursuant to Fed. R. Civ. P. 65 prohibiting

the defendants from implementing their intelligent design policy in any school

within the Dover Area School District, and requiring the removal of *Of Pandas*

*and People* from the School District's science classrooms;

       **c.**    nominal damages against the defendants for violating the

plaintiffs' rights under the First and Fourteenth Amendments to the United States

Constitution and Art. I, Sec. 3, and Art III, Secs. 15 & 29, of the Constitution of

the Commonwealth of Pennsylvania;

       **d.**    an order awarding plaintiffs the costs incurred in this

litigation, including attorneys' fees pursuant to 42 U.S.C. § 1988; and

e.    any other relief the Court deems just and proper.

_Eric Rothschild_ (signature)

Eric Rothschild (Pa. ID # 71746)
Stephen G. Harvey (Pa. ID # 58233)
Joseph M. Farber (Pa. ID # 84965)
Benjamin M. Mather (Pa. ID # 89959)
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000
(215) 981-4750 (fax)
rothschilde@pepperlaw.com

Thomas B. Schmidt, III
(Pa. ID # 19196)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
P.O. Box 1181
Harrisburg, PA  17108
(717) 255-1155
(717) 238-0575 (fax)
schmidtt@pepperlaw.com

_Witold J. Walczak_ (signature)

Witold J. Walczak (Pa. ID # 62976)
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213
412-681-7864
412-681-8707 (fax)
vwalczak@aclupgh.org

[signatures continued]

-24-

Paula K. Knudsen (Pa. ID # 87607)
ACLU of Pennsylvania
105 N. Front St., Suite 225
Harrisburg, PA  17101
(717) 236-6827
(717) 236-6895 (fax)
pknudsen@aclupa.org


Ayesha Khan
Richard B. Katskee
Alex J. Luchenitser
Americans United for Separation of Church
and State
518 C St., NE
Washington, DC 20002
(202) 466-3234

Attorneys for plaintiffs
TAMMY KITZMILLER; BRYAN AND
CHRISTY REHM; DEBORAH
FENIMORE AND JOEL LIEB; STEVEN
STOUGH; BETH EVELAND; CYNTHIA
SNEATH; JULIE SMITH, AND
ARALENE ("BARRIE") D. AND
FREDERICK B. CALLAHAN

Dated:  December 14, 2004

**I.(a)    Plaintiffs (cont'd)**

Beth Eveland; Cynthia Sneath; Julie Smith; And Aralene ("Barrie") D. And Frederick B.
Callahan

**(c)    Plaintiffs' Attorneys (cont'd)**

Joseph M. Farber (Pa. ID # 84965)
Benjamin M. Mather (Pa. ID # 89959)
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000
(215) 981-4750 (fax)
rothschilde@pepperlaw.com

Thomas B. Schmidt, III
(Pa. ID # 19196)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
P.O. Box 1181
Harrisburg, PA  17108
(717) 255-1155
(717) 238-0575 (fax)
schmidtt@pepperlaw.com

Witold J. Walczak (Pa. ID # 62976)
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213
412-681-7864
412-681-8707 (fax)
vwalczak@aclupgh.org

Paula K. Knudsen (Pa. ID # 87607)
ACLU of Pennsylvania
105 N. Front St., Suite 225
Harrisburg, PA  17101
(717) 236-6827
(717) 236-6895 (fax)
pknudsen@aclupa.org

Ayesha Khan
Richard B. Katskee
Alex J. Luchenitser
Americans United for Separation of Church and State
518 C St., NE
Washington, DC 20002
(202) 466-3234

bn

Tue Dec 14 11:27:38 2004

UNITED STATES DISTRICT COURT

SCRANTON        , PA

Receipt No.   111 142342
Cashier          jill

Check Number:  310292

DB Code       Div No
4667            1

Sub Acct Type Tender      Amount
0:510000  N      2        90.00
1:086900  N      2        60.00

Total Amount        $    150.00

PEPPER HAMILTON 3000 TWO LOGAN SQ.
PHILADELPHIA, PA 19103

       FILING FEE FOR COMPLAINT IN CV-04-2
688

cn