1

```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
                        HARRISBURG DIVISION

     TAMMY KITZMILLER, et al.,   : CASE NO.
                      Plaintiffs : 4:04-CV-02688
                   vs.           :
     DOVER AREA SCHOOL DISTRICT, : Harrisburg, PA
                      Defendant  : 21 December 2004
     .........................: 1:10 p.m.


                TRANSCRIPT OF SCHEDULING CONFERENCE
             BEFORE THE HONORABLE JOHN E. JOHNS, III
                   UNITED STATES DISTRICT JUDGE

     APPEARANCES:

     For the Plaintiff:

         Stephen G. Harvey, Esq.
         Pepper Hamilton, L.L.P.
         3000 Two Logan Square
         18th & Arch Streets
         Philadelphia, PA 19103



     For the Defendant:

         Robert J. Muise, Esq.
         24 Frank Lloyd Drive
         P.O. Box 393
         Ann Arbor, MI 48106
         (734) 827-2001



     Court Reporter:

         Wesley J. Armstrong, RMR
         Official Court Reporter
         U.S. Courthouse
         228 Walnut Street
         Harrisburg, PA 17108
         (717) 542-5569
```

**FILED**
**HARRISBURG, PA**

JAN 0 3 2005

**MARY E. D'ANDREA, CLERK**
**Per** _____
Deputy Clerk

**ORIGINAL**

1        P R O C E E D I N G S

2        THE COURT: Be seated, please.  All right,

3    good afternoon to everyone.  This is the matter

4    of Tammy Kitzmiller and other plaintiffs versus

5    the Dover Area School District.  It is a

6    complaint that has been filed, and the court

7    has set this time for a status conference based

8    in the nature of the action, and I'll get into

9    that in a little bit of detail shortly, but at

10    this point why don't we have counsel enter their

11    appearances, starting with counsel for the

12    plaintiffs, and then following, obviously,

13    counsel for the defendants.

14        MR. HARVEY: Good afternoon, Your Honor.

15    I'm Steve Harvey, with Pepper Hamilton in

16    Philadelphia.  Pleasure to be here.

17        THE COURT: Good afternoon to you.

18        MR. HARVEY: With me I have my colleague

19    Tom Schmidt, who's a partner in our Harrisburg

20    office of Pepper Hamilton.

21        THE COURT: Good afternoon to you.

22        MR. HARVEY: And Paula Knudsen of the ACLU.

23        MS. KNUDSEN: Good afternoon.

24        THE COURT: Good afternoon to you.

25        MR. HARVEY: And for your information,

1   we also have some of the plaintiffs in the

2   courtroom, and I could name them for you if

3   you would like.

4        THE COURT: We can get to that.

5        MR. HARVEY: Very well, Your Honor, thank

6   you.

7        THE COURT: Let's do that as we need to.

8   We welcome you, certainly.  And for the

9   defendants?

10        MR. MUISE: Good afternoon, Your Honor.

11   Robert Muise, from the Thomas More Law Center.

12   I represent the defendants, the Dover Area

13   School District and the Dover Area School

14   District board of directors.  Also with me at

15   counsel table is Mr. Richard Thompson, an

16   attorney with Thomas More Law Center, and

17   Mr. Ron Turo, who is our local associate

18   counsel, and sitting with counsel at table

19   Dr. Richard Nilsen, the superintendent, and

20   Ms. Sheila Harkins, the board president of the

21   Dover Area School District.

22        THE COURT: Good afternoon to all of you

23   as well, and we thank you for attending.  As I

24   noted given the nature of this matter, I thought

25   in an effort to do several things, not the least

1   of which is to clarify where we're heading, it

2   would be well to have a conference on the

3   record, and predominantly what I'd like to do

4   is discuss with the parties, and I recognize

5   that defendant's counsel in particular are very

6   recently in the mix so to speak, so I'm not at

7   all in a position, or do I want to put you in a

8   position, where we delve substantially into the

9   merits of this action.

10      But more than that what I want to do is

11  talk about where we're going.  From the

12  plaintiffs' perspective, you've requested

13  several things, among them a declaratory

14  judgment and relief under Rule 65, obviously

15  in the form of an injunction.  Let me ask

16  plaintiffs' counsel, is it your intention

17  to seek some preliminary relief?

18      MR. HARVEY: Your Honor, anticipating that

19  this was the subject that Your Honor wanted to

20  discuss, I've given it some thought and I

21  contacted my colleagues on the other side about

22  this subject.  Because they're so new we spoke

23  by phone yesterday, I told them what the issue

24  was, but we didn't have chance to talk about it

25  until just prior to the hearing.  And what I

1  said to them is subject to what I wanted to tell

2  the court, which is that we are, we believe, or

3  we're under the impression that this policy is

4  going to be implemented in January.  Then it's

5  going to be implemented again sometime in the

6  spring.

7  Now, I've just learned from counsel that

8  it's going to be implemented on or about January

9  13th, and then it's going to come up again in

10  late June.  And so my first, what I said was the

11  plaintiffs' preferred position here would be for

12  the defendants agree not to implement the policy

13  in January, and then we could work out a

14  schedule for a preliminary injunction hearing

15  prior to the time that it's going to be

16  implemented in June.  That would give us, you

17  know, time for any discovery, a briefing, a

18  hearing, time for Your Honor to consider the

19  matter and write an opinion.

20  THE COURT: Well, under those circumstances

21  we may not even need a preliminary injunction

22  hearing.  It seems like we could hear the case

23  on the merits in that intervening period.

24  MR. HARVEY: That may very well be the case,

25  Your Honor, and we wouldn't foreclose that

1   possibility.

2        THE COURT: That's an option.

3        MR. HARVEY: We might be able to get that

4   all done, you're right.  And if we were unable

5   to get that all done, obviously under Rule 65

6   you can consolidate the hearing on the merits

7   of whatever your heard at the preliminary

8   injunction hearing.  So that wouldn't be a

9   problem.  Now, I just learned from Mr. Muise

10  that I think I understand that that's not

11  acceptable in terms of January, that they do

12  intend to implement the policy in January.

13       And so that leaves us with a choice of

14  whether we move for a temporary restraining

15  order or not, and we haven't decided, we'll need

16  to confer with the remainder of our counsel.  We

17  reserve the right to take some discovery in the

18  interim, some limited discovery to learn more

19  exactly about what's going to happen here, and

20  then to make a decision about a TRO.

21       Their answer would be due on January 3rd,

22  and I would think that we would have to be in

23  here very shortly after January 3rd telling the

24  court whether or not we wanted to be heard on a

25  TRO hearing.  And then, putting that aside, I

1    still think we can proceed on that schedule that

2    I just mentioned to you.  We don't I believe

3    need to work all that out right now.  I think we

4    could work that out among counsel an agreed

5    schedule and then present it to Your Honor for

6    approval with respect to how we litigate this

7    matter between now and when the issue comes up

8    in May, and then we'd leave here with an open

9    issue of what's going to happen on January 13th

10   when they're going to present that, because as I

11   said we have to be shortly in here shortly after

12   January 3rd to tell you about that.

13          MR. MUISE: Your Honor, counsel is correct

14   that the school district intends to implement

15   the policy as written.  But really the question

16   that I had for opposing counsel is what it is

17   they're seeking to enjoin, because the policy

18   even as they alleged which is going to take

19   place on the 13th consists of teaching the state

20   required standard on evolution.  So that's going

21   to be taught over a two-day period, 13th and

22   14th.

23          Intelligent design is not going to be

24   taught.  Creationism is not going to be taught.

25   Religion is not going to be taught as part of

8

1   the science class.  This book which they

2   apparently object to is going to be sitting in

3   the library for the students to look at if they

4   want to.   So in the question I pose to counsel,

5   are you seeking to enjoin to prevent the

6   teaching of evolution over those two days?

7   So it's really, it's not clear in terms of when

8   you look at the complaint, our answer is due on

9   the 3rd --

10      THE COURT: No, I understand.  What we're

11   doing is we're lapsing into the merits, to

12   disagree, and I understand -- and so that I'm

13   clear, I am not accepting as fact that which is

14   alleged in the plaintiff's complaint.  Nor am I

15   accepting your version, which is that nothing is

16   going to be taught.  That's not our purpose

17   here.  I'm assuming that the answer I would get

18   back from the plaintiffs is that they believe,

19   as stated in their complaint, that something is

20   going to be taught that is objectionable and in

21   fact a violation of the Constitution.

22      But we're going to get off track.  At this

23   point the first part of your response is that

24   however you may cast it, is that from your

25   perspective, your clients' perspective, that the

1    board intends to proceed as planned with the

2    policy, however it may be characterized.  And

3    is the operative date, can we agree on the

4    operative date as being January 13th?  Is that

5    much --

6         MR. MUISE: My opinion, Your Honor, that's

7    the earliest that it would be implemented, so

8    that would be a date.

9         THE COURT: Okay.

10         MR. MUISE: And with regard to the, you

11    know, the necessity to move so quickly to either

12    do a TRO preliminary injunction hearing, I'll

13    note that if you look at the complaint, there's

14    only one plaintiff that this may even have any

15    implications with, and that's the Kitzmiller

16    child.  None of the other plaintiffs will

17    actually even this year have, even the June

18    session will not be confronted with this policy.

19    It's only in the ninth grade.

20         THE COURT: Isn't one enough?

21         MR. MUISE: My point being though, Your

22    Honor, is one enough in terms of getting this

23    emergency relief, the child can opt out of

24    whatever portion that they believe is

25    objectionable.  It's always been a policy of the

1    board that if there's something controversial,

2    they can opt out of it.  So that way we don't

3    have to rush so quickly as plaintiff's attorney

4    wanted to do, because this is really going to be

5    I think an important issue to get resolved and

6    to have proper briefing.

7         As the court noted, we came on last

8    evening, at 7:00 p.m. we were appointed.  Our

9    answer is due the 3rd.  I had asked if counsel

10   would grant an extension.  They weren't willing

11   to because of the 13th date, but I think that

12   13th date, I think we can have in place where

13   this one, it's the one child that's implicated,

14   the child can opt out of whatever portion that

15   they believe the policy is going to be that's

16   going to be problematic, and then there isn't

17   any urgency, the greatest urgency would

18   potentially be next fall, and that would give

19   time to get discovery, the proper briefing,

20   perhaps give us an extension.

21        Because we're not even certain right now

22   we're trying to, we may file a motion to

23   dismiss.  Certainly there's some standing issues

24   that we believe, and so even the January 3rd

25   date, we would have more time from the January

1    3rd, I think we can work around having to deal

2    with the immediacy of this.  We're not going to

3    engage in self-censorship as a school district.

4    We're not going to remove books from out of

5    library as we understand that they are concerned

6    about.  And so I think there is a way we can

7    reasonably move forward in this case and get

8    the merits brought before the court, fully

9    briefed, full discovery, without trying to move

10   as quickly as I think plaintiffs' attorney

11   potentially wants to do.

12        MR. HARVEY: Your Honor, one plaintiff

13   is enough, and excusing that child from the

14   classroom we don't believe would be a

15   constitutionally or a lawfully permissible

16   option here, much as in the way of I believe

17   in the area of school prayer, you couldn't have

18   only have the objecting students excused from

19   the classroom.  So that's not an answer.  We'd

20   be happy not to move on, you know, to have --

21        THE COURT: Is that because this is a facial

22   challenge?

23        MR. HARVEY: Your Honor, it's facial and

24   as applied, Your Honor.

25        THE COURT: At least in part facial.

1          MR. HARVEY: Exactly.

2          THE COURT: Is that why you can't abide

3    removing, accepting the defendants' version

4    as true that one student may be impacted on

5    January 13th, you can't abide the removal of

6    that one student from that setting?  That's

7    not acceptable to the plaintiffs?

8          MR. HARVEY: Your Honor, I would want to

9    confer before making a decision on that, but

10   I believe that that would be, you know, my

11   preliminary thinking is that would be

12   objectionable.

13         THE COURT: All right.

14         MR. HARVEY: You know, if we, if they're not

15   willing to stand down on this and we have to

16   make our decision before as I said before or

17   after the 3rd, and that was the option that

18   they're presenting us with, in that context I'd

19   have to decide, we'd have to decide whether

20   we're going to move for a TRO.

21         THE COURT: So you haven't determined at

22   this point whether or not you want to move

23   for a TRO?

24         MR. HARVEY: That is correct, Your Honor.

25   We have not determined that.  We're not, you

1    know, we allege about the policy that's going

2    to be implemented, but you know, we thought we'd

3    hear more and learn more.  It's I don't believe

4    crystal clear exactly what's going to happen

5    here with respect to this policy.  For example,

6    what happens if the student asks what is

7    intelligent design, what is handed to people,

8    how are the teachers supposed to respond to

9    that?  There's a number of questions I could

10   come up with.

11        But we'd like to learn more about what they

12   intend to do and then make a decision about a

13   TRO in the short-run.  And as I said, I'd be

14   happy to, we'd love to grant them the extension,

15   in fact I was going to offer that, but not if

16   we're forced to make a decision before January

17   13th.

18        THE COURT: Are you suggesting that you want

19   to do some immediate discovery in aid of the

20   determination of whether or not you're going to

21   request a TRO?

22        MR. HARVEY: Yes, Your Honor.

23        THE COURT: What's your position on that?

24        MR. MUISE: Your Honor, our position is that

25   the policy is as it states, and I don't think

1   there's any additional discovery that's going to

2   be necessary.  He's got a facial challenge --

3        THE COURT: Well, he can -- wait, wait.

4        MR. MUISE: I understand.

5        THE COURT: It's not additional discovery.

6   He's entitled to some discovery.  Right?

7        MR. MUISE: Absolutely, Your Honor.

8        THE COURT: So it's your position that he

9   can't take -- the question is, is it your

10  position he can't take immediate discovery?

11       MR. MUISE: I just don't think there's a

12  need for the immediate discovery as I explained,

13  Your Honor.  Now, the opt out --

14       THE COURT: Well, you didn't explain that.

15  I'm having trouble understanding why it doesn't

16  help the court and help the matter move forward

17  if he can't have some immediate discovery.  Tell

18  me why they doesn't help.

19       MR. MUISE: Your Honor, again it goes to the

20  point that there isn't the immediacy that it --

21       THE COURT: Well, that may be, but wouldn't

22  the discovery tend to show whether there's

23  immediacy or not?  Taking at face value what he

24  says, discovery would seem to allow the board to

25  clarify that for example the immediacy is not

1    present and verify the representation that you

2    made that the immediacy is not present, that we

3    don't have exigent circumstances, and that he

4    ought not try to get, that they ought not try to

5    get a TRO. I'm having trouble understanding why

6    that wouldn't help.

7       MR. MUISE: Certainly, Your Honor, he's

8    entitled to discovery if he wants to have

9    discovery. My point being as they allege in

10   how the policy reads, and part of the policy

11   is also the superintendent's statement, they

12   have to assume that the policy is going to

13   be violated in order for them to make the

14   constitutional claim that they're making.

15      THE COURT: I don't know --

16      MR. MUISE: We have a facial challenge to a

17   particular policy that clearly states what

18   can be taught and what can't be taught in a

19   particular classroom.

20      THE COURT: Well, I don't know that, because

21   I don't know what your position is. See, that

22   again we've drifted off track into the merits,

23   and I don't want to do that, because you have to

24   have a full and complete opportunity, and I want

25   to give you that, you'll have that, to make your

1    answer.  So I'm getting piecemeal from you

2    arguments on the merits, and you can do that,

3    but it's not helping me today.

4         What I want to do is try to see where we

5    steer the ship from here.  Now, what I'm hearing

6    might militate in favor of allowing some

7    discovery in aid of a determination with respect

8    to a motion for a TRO, reluctant though you may

9    be, and then have a deadline date, for example,

10   for the determination on a motion for a TRO.

11   And then if you file that, it speaks for itself,

12   we'll deal with it.

13        If you don't, then I think my inclination

14   would be to allow you, you've obviously just met

15   and you're just sort of attempting to have some

16   relationship as it relates to this case, allow

17   you to try to come up with your own scenario for

18   how you want the case to proceed.  We certainly

19   can set it down consistent with that for a

20   hearing on a preliminary injunction or a

21   combined hearing on the declaratory judgment

22   action and the preliminary injunction, which

23   will allow you the opportunity to file any

24   motions that you may want to file, such as a

25   motion to dismiss, in the interim, and you can

1   set time frames for that, and I'm all for that

2   if you can reach an agreement.

3       If not, we'll impose something on you.

4   But I don't like to do that because you know

5   your cases better than I do.  So in the

6   short-run, if for example we were to allow some

7   discovery and then give you a deadline date for

8   your evaluation of whether or not you want to

9   move for a TRO, what would your preferred time

10  frame be?

11      MR. HARVEY: Your Honor, we would like

12  to take some very brief depositions, brief

13  depositions next week, towards the end of next

14  week, and make a decision shortly after the 3rd.

15  They're going to file their answer to our motion

16  to dismiss on the 3rd.  I'd like to see what he

17  has to say so we can answer, and then come in

18  and tell the court what our intentions are on or

19  about the 4th or the 5th.

20      That would give us a time to come in here,

21  be heard on arguments, and make a ruling if

22  that's what we decide to do.  And if that's not

23  what we decide to do, we will communicate to the

24  court in that same schedule that we've decided

25  that, you know, we're going to just wait until

1  the preliminary injunction hearing, which may be

2  a hearing on the merits.

3  MR. MUISE: Your Honor, I don't think in

4  terms of the answer on January 3rd, the decision

5  to make a TRO or not make a TRO shouldn't

6  necessarily rest, ride and fall on how we answer

7  on January 3rd.  I would like an extension on

8  that portion, I mean you can have a motion to

9  dismiss that can even be consolidated later down

10  the road with whatever preliminary injunction

11  hearing that we might in fact have in this case,

12  particularly if they're going to be taking

13  discovery --

14  THE COURT: Aren't you --

15  MR. MUISE: -- it appears the court wants to

16  grants, and obviously we would like to also have

17  some opportunity at discovery as well in

18  preparation for this in a similar fashion as

19  the plaintiffs.

20  THE COURT: Tell me as a practical matter

21  what would prevent you from rendering an answer

22  by January 3rd.

23  MR. MUISE: As a practical matter obviously,

24  Your Honor, we can do that if that's what's

25  necessary.

1    THE COURT: Well, the only reason I say that

2    is it seems to me that if you want to go the

3    route and say well, we need an extension and we

4    don't think the answer is going to help them in

5    evaluating whether or not they want to get a

6    TRO, you may be begging more discovery it seems

7    to me, which doesn't make a lot of sense. So

8    there may be things that are revealed in the

9    answer that would cause the plaintiffs not to

10   have to pursue certain inquiries in discovery

11   in their evaluative process. So I'm hard

12   pressed to understand why you wouldn't answer

13   that and then give them the benefit of where you

14   are. And I'm thinking if we set a deadline of

15   January the 5th, what day of the week is that?

16       MR. MUISE: That's a Wednesday, Your Honor.

17       THE COURT: January 5th for the plaintiffs

18   to make a determination as to whether or not

19   they want to move for a TRO, that we open up a

20   discovery period from now until then, that would

21   be the last day for this preliminary discovery,

22   and see where we are. I don't know how much

23   further we can go than that. We can revisit it

24   by even a telephone status call if in fact you

25   determine that you don't want to move for a TRO

1   after that and see where you are, unless you

2   talk in the meantime and you come up with a

3   scenario that you want to suggest to me.

4       MR. HARVEY: And then, Your Honor, and then

5   following that we would also confer with counsel

6   about the preliminary injunction, or whether

7   that's, or the hearing on the merits. In other

8   words, a further hearing down the road.

9       THE COURT: That's what I'm thinking.

10      MR. HARVEY: And if we could work out a

11  schedule, we come to you with an agreed

12  schedule, and if we can't, we present it to

13  you for --

14      THE COURT: Or as an interim step I'm

15  certainly willing to, without assembling

16  everybody, I thought it was fruitful to assemble

17  everybody in person because I wasn't frankly

18  sure what you wanted to do, but I'm only too

19  happy to get counsel by telephone, understanding

20  that you've traveled some great distance, and

21  I'm not going to try to run you unnecessarily

22  back and forth for brief matters, although I

23  think there's a salutory benefit to having

24  everybody together at this early stage of the

25  case, I wouldn't do that lightly, as we move

1   forward from here.  So if you have some general

2   ideas about scheduling going forward and you

3   want to get my input on them, we can do that by

4   telephone certainly.

5       MR. MUISE: In terms of the number of

6   depositions for example, Your Honor, is there

7   any sort of limitation that we'd want to put on?

8   Obviously we've got the holidays coming up here

9   and there's something that at least we can

10  advise clients about who needs to be around and

11  that sort of thing, is there in terms of what

12  the court, or do you just want to leave it to

13  the counsel --

14      THE COURT: Do you have a sense who you want

15  to depose?

16      MR. HARVEY: Yes, Your Honor.  I have a

17  sense that I want to depose the current board

18  president, the immediate past board president,

19  the chairman of the curriculum committee, and

20  superintendent of the schools.

21      MR. MUISE: We can work out those --

22      THE COURT: Sounds like four.

23      MR. MUISE: Four.

24      MR. HARVEY: That's correct, Your Honor.

25      THE COURT: Are you going to serve any

1   interrogatories, or are you just going to do

2   depositions?

3        MR. HARVEY: I wasn't go to serve

4   interrogatories, Your Honor.  I was planning

5   on serving document requests in the near future,

6   but it would be due unless we agreed on, it

7   wouldn't be due in the interim unless Your Honor

8   ordered them or we agreed on them.  So I think

9   I would ask if there's any particular document

10  that we want I'd ask counsel to produce them if

11  we feel we need them prior to the deposition

12  that we are agreeable, we will post Your Honor

13  if necessary.

14       THE COURT: Well, my standard procedure in

15  all cases where there's a discovery dispute is

16  for you to contact my chambers, and you would be

17  more aware of this than you would be aware of

18  this obviously, and attempt to have me mediate

19  a discovery dispute.  So I think rather than

20  become too precise, why don't we say that the

21  depositions would be not to exceed -- the

22  depositions would be four, not to exceed four.

23       MR. HARVEY: Yes, Your Honor.

24       THE COURT: And if you couldn't agree, if

25  you needed five and you couldn't agree on five,

1    you'd contact me and we'd try to mediate that.

2    If you need documents and you can't agree on

3    documents, you contact me and we can mediate on

4    that.  I'll leave you to your own designs

5    otherwise.  The discovery period for the four

6    depositions and whatever else you need to do,

7    without being specific, would conclude, it would

8    commence as we leave here today.

9         It would conclude at the close of business

10   on January the 5th of 2005, and with that elapse

11   no later than the end of that business day on

12   January 5th, the plaintiffs' counsel will advise

13   the court as to whether or not -- well, you

14   don't have to advise the court.  The filing

15   advises the court.  Obviously you will file a

16   motion if you are intending to do so, your

17   deadline would be that same day.

18        MR. HARVEY: Yes, Your Honor.

19        THE COURT: Is that acceptable to the

20   plaintiffs?

21        MR. HARVEY: That is acceptable, Your Honor.

22        THE COURT: Is that acceptable to the

23   defendants?

24        MR. MUISE: Yes, Your Honor.  In terms of

25   response, the deadline obviously is going to be

1  sort of truncated if we're kind of looking at

2  the 13th as being the date for plaintiffs'

3  counsel, defense counsel would like at least

4  a week to respond, but that puts us, you know,

5  the day before obviously.

6      THE COURT: Yes, and it's somewhat

7  problematic for me as well, because I have

8  trials in January and I just don't know, I'll

9  do the level best that I can, but you shouldn't

10 fear that you're going to be yanked into a

11 hearing the day after the motion for a TRO is

12 filed, because my schedule wouldn't permit that

13 in any event.  So you'll have time, and if we

14 again have to get you by telephone conference,

15 if and when a motion for a TRO is filed, in

16 order to try to set some deadlines and check

17 schedules.

18     I'm reluctant in this busy practice that

19 all of you have to drop mandates in some sort of

20 draconian fashion that you'll be at such and

21 such a place at such and such a time when you

22 may be attached some place else, and I'm not

23 unsympathetic to that, and we'll try to work

24 with you, understanding that it's going to be a

25 short time frame and we're going to have to all

1    try to find time in our schedule to do it, if

2    and when that happens.

3         MR. MUISE: It's my understanding, Your

4    Honor, in terms of they file their motion on

5    the 5th, we should proceed under what the

6    standard rules offer response time, barring some

7    conference to truncate that in some fashion that

8    meets the schedule?

9         THE COURT: I guess -- and my answer was

10   imprecise, and I apologize for that.  I guess

11   if a motion for a TRO is filed, probably what

12   that will likely trigger is an outreach from

13   my deputy almost immediately to check your

14   schedules, and then we can sort of clarify what

15   those deadlines are, without being too precise

16   here, because I just don't know.  And I know

17   that I have trials scheduled, and likely I would

18   have to interrupt a trial to do this.  So let's

19   not go too far out and speculate in areas that

20   we just can't at this point.  Tell me what else

21   we can cover today.

22        MR. HARVEY: Your Honor, I don't -- I'm

23   hopeful that we can work out the, understanding

24   exactly what the court has said on the TRO, I'm

25   hopeful we can work out a briefing schedule for

1   the remainder of the case that's mutually

2   acceptable.  The only other thing I wanted to

3   point out to you is that my colleague and

4   partner, and Tom Schmidt's colleague and

5   partner, Eric Rothschild, will be really serving

6   as lead counsel.  You'll a lot of us in this

7   case, but just so next we're here and you see

8   him and I'm sitting there, you'll know why.

9       THE COURT: You're going to pass the baton?

10      MR. HARVEY: No, Your Honor.  He has been

11  sort of our lead counsel going forth and he's

12  on a well deserved vacation this week.

13      THE COURT: I'll certainly allow for that.

14  Anything else from the defendants' perspective?

15      MR. MUISE: No, Your Honor.  Just as well we

16  have another attorney, Patrick Gillen, as well

17  who will be making an appearance, who's actually

18  in Massachusetts on a case presently.  So you

19  will see another face involved in this matter

20  as well.

21      THE COURT: Well, we have plenty of counsel

22  in this case, that's obvious, a lot of legal

23  talent.  That can be good, but sometimes that

24  can be difficult when we arrange everybody's

25  schedules.  But we'll do the best that we can.

1    At least we can, you lose the argument that

2    there's nobody available the more counsel you

3    have on each side.

4         MR. HARVEY: I understand, Your Honor.

5         THE COURT: So hopefully we'll be able to

6    work through that in this case.  I would urge

7    you to do the obvious, and you're experienced

8    counsel, so you know this, but that would be

9    to use the time, although this proceeding is

10   brief, to use the time today that you may have

11   to chat in the cordial vein that you've

12   addressed everything else in this case and

13   see what you can work out, particularly with

14   respect to scheduling, depositions, because what

15   I don't want to get, unless I have to, is a

16   phone call saying that, you know, someone,

17   you've only got limited time to depose people

18   and somebody can't be available.

19        So try to, we do have the holidays

20   impending, and that can make it difficult, but

21   I know you'll work in the spirit of cooperation

22   and try to make these folks available as well.

23   It's difficult, I know, and people have busy

24   lives as the year ends and the holidays are

25   upon us.  So I wish you luck in that regard.

1    I'll produce an order that memorializes this

2    as far as we can go with it, and then we'll be

3    back together at some point one way or another.

4         MR. HARVEY: Thank you, Your Honor.

5         THE COURT: Anything further?

6         MR. MUISE: No, Your Honor.

7         THE COURT: All right.  We'll close the

8    record for today, and we'll wait to hear from

9    you, all right?  Thank you.

10        (Court was adjourned at 1:37 p.m. )

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    **Tammy Kitzmiller vs. Dover Area School District**

2    **Scheduling Conference**

3    **21 December 2004**

4

5

6

7            I hereby certify that the proceedings

8    and evidence are contained fully and accurately

9    in the notes taken by me on the trial of the

10   above cause, and that this copy is a correct

11   transcript of the same.

12

13

14

15

16

17   _____

18            Wesley J. Armstrong

19            Registered Merit Reporter

20

21

22            The foregoing certification of this

23   transcript does not apply to any reproduction

24   by any means unless under the direct control

25   and/or supervision of the certifying reporter.