# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMMY KITZMILLER; et al. | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.  04-CV-2688 (M.D. Pa.) |
| | ) | |
| v. | ) | Hon. John E. Jones III |
| | ) | |
| | ) | |
| DOVER AREA SCHOOL DISTRICT; et al., | ) | **ANSWER** |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

Defendants, Dover Area School District, and Dover Area School District

Board of Directors, through counsel, hereby Answer the Plaintiffs' Complaint, as

1

follows:

# I

Defendants deny the mischaracterization of Defendants' actions in the

Introduction, which completely misrepresent the policy of the Dover Area School

District and the Dover Area School District Board of Directors (hereinafter

referred to as "DASD"), as well as the subject matter of this lawsuit.

By way of further explanation, Defendants affirmatively state that DASD's

resolution, adopted on October 18, 2004, reflects the intent of the Santorum

Amendment to the No Child Left Behind Act of 2001, which was adopted by the

U. S. Senate 91 –8 and included in the Final Conference Report as follows:

> "Where topics are taught that may generate controversy (such as
> biological evolution), the curriculum should help students to
> understand the full range of scientific views that exist, why such
> topics may generate controversy and how scientific discoveries can
> profoundly affect society."

Upon passage of the No Child Left Behind Act, Senator Santorum made the

following statement, which is contained in the Congressional Record:

> "Mr. President, I am very gratified that the House and Senate
> conferees included in the conference report of the elementary and
> secondary education bill the language of a resolution I introduced
> during the earlier Senate debate.  That resolution concerned the
> teaching of controversies in science.  It was adopted 91-8 by the
> Senate.  By passing it we were showing our desire that students

2

studying controversial issues in science, such as biological evolution, should be allowed to learn about competing scientific interpretations of evidence. As a result of our vote today that position is about to become a position of the Congress as a whole. . . .

As the education bill report language makes clear, it is not proper in the science classrooms of our public schools to teach either religion or philosophy. But also, it says, just because some think that contending scientific theories may have implications for religion or philosophy, that is no reason to ignore or trivialize the scientific issues embodied in those theories. After all, there are enormous religious and philosophical questions implied by much of what science does, especially these days. Thus, it is entirely appropriate that the scientific evidence behind them is examined in science classrooms. Efforts to shut down scientific debates, as such, only serve to thwart the true purposes of education, science and law. There is a question here of academic freedom, freedom to learn, as well as to teach. The debate over origins is an excellent example. Just as has happened in other subjects in the history of science, a number of scholars are now raising scientific challenges to the usual Darwinian account of the origins of life. Some scholars have proposed such alternative theories as intelligent design.

The public supports the position we are taking today. For instance, national opinion surveys show—to use the origins issue again—that Americans overwhelmingly desire to have students learn the scientific arguments against, as well as for, Darwin's theory. A recent Zogby International poll shows the preference on this as 71 percent to 15 percent, with 14 percent undecided. The goal is academic excellence, not dogmatism. It is most timely, and gratifying, that Congress is acknowledging and supporting this objective."

Accordingly, the DASD policy comports with the intent of Congress. Moreover,

Senator Santorum specifically commended the Dover School District for refusing

to ignore the controversy over the Darwinian theory of evolution, in keeping with

his amendment.

The DASD October 18, 2004 resolution, which refers to gaps/problems in Darwin's Theory, also tracks Justice Black's observation in his concurring opinion in *Epperson v. Arkansas*, 393 U.S. 97, 114 (1968) (Black, J., concurring):

> Certainly the Darwinian theory, precisely like the Genesis story of creation of man, is not above challenge.  In fact the Darwinian theory has not merely been criticized by religionists but by scientists, and perhaps no scientist would be willing to take an oath and swear that everything announced in the Darwinian theory is unquestionably true."

Moreover, the U. S. Supreme Court in *Edwards v. Aguillard*, 482 U.S. 578, 594 (1987) specifically stated:

> "We do not imply that a legislature could never require that scientific critiques of prevailing scientific theories be taught. . . . [T]eaching a variety of scientific theories about the origins of humankind to schoolchildren might be validly done with the clear secular intent of enhancing the effectiveness of science instruction."

Plaintiffs' Introduction also fails to inform this honorable Court of the full DASD

4

policy, as recited in the November 19, 2004 Press Release, attached hereto as Exhibit 1 to this Answer.  The DASD's Biology Curriculum Policy provides that:

1.   Creationism shall not be taught to the students.

2.   The theory of Intelligent Design shall not be taught to the students.

3.   Religious beliefs will not be taught or presented to the students.

4.   No teacher will present his or her, or the Board's religious beliefs.

5.   The only text that shall be used in the Biology class is *Biology* published by Prentice- Hall, which was recommended by teachers in the science department and approved by the Board.

6.   Students shall be taught Darwin's Theory of Evolution in accordance with the Pennsylvania Academic Standards.

There is no DASD "intelligent design policy" as the plaintiffs allege.  The only reference to the theory of Intelligent Design in the biology classroom is a one-time reference during an approximately one-minute long statement made by the teacher at the beginning of the biology class.  This statement mentions Intelligent Design as an explanation of the origin of life that differs from Darwin's view and that if the students are interested in understanding what it involves they can refer to the book *Of Pandas and People*, which is located in the school library.

Intelligent Design is a scientific theory based on interpretation of scientific data by scientists; it is endorsed by a growing number of scientists who assert that

intelligent causes are necessary to explain the complex, information-rich structures observed by biologists. It does not presuppose any supernatural being. It is not Creationism, which in its basic form holds that the biblical account of creation recorded in the Book of Genesis is scientifically accurate.

The DASD Biology Curriculum Policy does not advance religion, but merely provides the students of Dover High School with an honest science education for the valid and clearly secular purpose of enhancing the science curriculum by informing students about the existing scientific controversy surrounding Darwin's Theory of Evolution, including the fact that there are alternative scientific theories being advanced by scientists.

The so called leading proponent of the October 18, 2004 resolution did not make the statement attributed to him by plaintiffs during the October 18, 2004, debate on the biology curriculum.

Finally, the "Introduction" fails to comply with Fed.R.Civ.P. 10(b) such that no answer is required pursuant to Fed.R.Civ.P. 8(d).

## II.

1    Admitted

2    Admitted.

## III.

3      Admitted upon information and belief.

4      Residence as alleged is admitted upon information and belief. Defendants are without knowledge or information sufficient to form a belief concerning the remaining allegations of paragraph 4.

5      Residence as alleged is admitted upon information and belief. Defendants are without knowledge or information sufficient to form a belief concerning the remaining allegations of paragraph 5.

6      Residence as alleged is admitted upon information and belief. Defendants are without knowledge or information sufficient to form a belief concerning the remaining allegations of paragraph 6.

7      Residence as alleged is admitted upon information and belief. Defendants are without knowledge or information sufficient to form a belief concerning the remaining allegations of paragraph 7.

8      Residence as alleged is admitted upon information and belief. Defendants are without knowledge or information sufficient to form a belief concerning the remaining allegations of paragraph 8.

9      Residence as alleged is admitted upon information and belief. Defendants are without knowledge or information sufficient to form a belief concerning the remaining allegations of paragraph 9.

10     Residence as alleged is admitted upon information and belief.
Defendants are without knowledge or information sufficient to form a belief
concerning the remaining allegations of paragraph 10.

11     Admitted.

## IV.

12     Upon information and belief an aspect of one scientific theory of
evolution, often associated with Charles Darwin, claims that all known life shares
common descent.  Upon information and belief it is admitted that the National
Academy of Sciences made the statement quoted in paragraph 12.

13     Defendants deny that the term theory, as used in science, has a
distinct meaning and does not suggest uncertainty, doubt, or speculation.  It is
admitted that the National Academy of Sciences defines "theory" as alleged.
Upon information and belief it is admitted that the other examples of scientific
theories are just that.  Defendants are without knowledge or information sufficient
to form a belief concerning how these theories are regarded by scientists in the
respective field(s) that each theory addresses.

14     Upon information and belief it is admitted that the National Academy
of Sciences and the American Association for the Advancement of Science made
the quoted statements attributed to them.

8

15     Defendants lack knowledge or information sufficient to form a belief concerning the allegation contained in paragraph 15.

16     Defendants lack knowledge or information sufficient to form a belief concerning the allegation contained in paragraph 16.

17     It is admitted that *Edwards v. Aguillard*, 482 U.S. 578 (1987) is an opinion of the United States Supreme Court which speaks for itself and indicates that scientific critiques of scientific theories of human origins can be taught.

18     Defendants lack knowledge or information sufficient to form a belief concerning the allegation contained in paragraph 18.

19     Defendants lack knowledge or information concerning whether there is one uniformly accepted definition of intelligent design theory.  It is denied that proponents of intelligent design theory posits that living organisms cannot be adequately explained by purely natural forces, but must be explained by a supernatural creator, or that Intelligent Design Theory sets forth a thesis concerning the nature of the intelligence responsible for the apparent design in nature.  It is admitted that *Of Pandas and People: The Central Question of Biological Origin*, identifies "weaknesses" "gaps" and "problems" in evolutionary theory, problems scientists acknowledge, as indicated by the Miller and Levine biology text recommended by biology teachers from the Dover School District

9

(and used in most American high schools), which presents evolutionary theory and contains a section entitled "Strengths and Weaknesses of Evolutionary Theory." It is admitted that *Of Pandas and People* is a text which speaks for itself that has been placed in the school library for reference purposes. Defendants are without knowledge or information sufficient to form a belief concerning the remaining allegations of paragraph 19. Except as admitted the allegations contained in paragraph 19 are denied.

20     Defendants are without knowledge or information sufficient to form a belief concerning the first allegation in paragraph 20. Defendants are without knowledge or information sufficient to form a belief concerning what counts as an "inherently religious" concept. Defendants deny that  intelligent design is an "inherently religious" concept if that phrase is taken to mean a concept that is only known or accepted as a result of religious faith as opposed to reason and science. Except as admitted the allegations contained in paragraph 20 are denied.

21     Insofar as paragraph 21 claims that intelligent design is "creation science" the allegation is denied. Defendants further deny that intelligent design advocates a "divine design of biological adaptations and the special creation of the basic 'kinds' of animals." It is admitted that *Edwards v. Aguillard* is a judicial opinion that speaks for itself. Defendants lack knowledge or information

10

sufficient to form a belief concerning the remaining allegations of paragraph 21.

22   Defendants admit that *McLean v. Arkansas Board of Education*, 529 F. Supp. 1255 (E.D. Ark. 1982) is a judicial opinion from the Eastern District of Arkansas which speaks for itself.   Except as admitted the allegations of paragraph 22 are denied.

23   Defendants lack knowledge or information sufficient to form a belief as to the first  sentence in paragraph 23.  Upon information and belief it is admitted that the Discovery Institute produced a paper called the "Wedge Strategy" which contains the statements set forth in quotations in paragraph 23. Defendants lack knowledge or information sufficient to form a belief concerning the remaining allegations of paragraph 23.

24   Defendants admit that Davis and Kenyon authored *Of Pandas and People* and that there were two additions, 1989, 1993.  Defendants lack knowledge or information sufficient to form a belief concerning the motives, statements, and actions, of Mr. Davis and Dr. Kenyon described in paragraph 24.  Defendants lack knowledge or information sufficient to form a belief concerning whether there is one common theory of "creation science" or the content of "creation science." Defendants deny that Intelligent Design theory is "creation science" as alleged in paragraph 24.

11

25    Defendants admit that *Of Pandas and People* is published by the Foundation of Thought and Ethics.  Defendants lack knowledge or information sufficient to form a belief concerning the remaining allegations contained in paragraph 25.

**V.**

26    Admitted.

27    Admitted.

28    Admitted in part, denied to the extent it implies that the policy of Dover Area School Board for 2004 required the solicitation of input from a parent-community group.

29    It is admitted that Dover's biology curriculum policy was related to a request from teachers in the science department for the purchase of the latest version of *Biology* by Kenneth Miller and Joseph Levine, published by Prentice Hall, the text that was in fact purchased by Dover School District for use in its biology classes.  It is admitted that William Buckingham is a School Board Member and that in a public meeting of the board on June 7, 2004, he criticized the textbook Biology as "laced with Darwinism" because it contained a one-sided presentation of Darwin's Theory of Evolution as fact without any reference to the significant debate in the scientific community concerning Darwin's theory that is a

12

matter of common knowledge.  Except as admitted the allegations of paragraph 29 are denied.

    30    It is admitted that at a public meeting of the Dover School Board on June 14, 2004 Buckingham stated that "[n]owhere in the Constitution does it call for a separation of church and state," in connection with his observation that teachers would not be teaching religion in Dover School District that in the event the Board, after due deliberation, decided to modify the biology curriculum for the purpose of ensuring that students were made aware of the controversy in the scientific community concerning various aspects of evolutionary theory.  Except as admitted the allegations of paragraph 30 are denied.

    31    It is admitted that as of August 2, 2004, past the deadline for purchasing a new biology textbook, the newest edition of Miller and Levine's *Biology* had not been purchased and, further, that the purchase of this text was authorized by the Board on or about that day.  It is denied that Buckingham ever made any motion requiring purchase of the text *Of Pandas and People: The Central Question of Biological Origin*, because Buckingham merely sought Board approval for acceptance of a donation of the text by the School District.  It is admitted that the motion to approve the purchase of the text *Biology* without approving acceptance of the donation of the text *Of Pandas and People* failed by a

vote of 4-4. It is admitted that after a motion for reconsideration and extended discussion, the purchase of the text *Biology* without Board approval of acceptance of the donation of the text *Of Pandas and People* passed by a vote of 5-3. Except as admitted, the allegations contained in paragraph 31 are denied.

32      It is admitted that the Superintendent of the Dover Area School District approved the anonymous donation of sixty copies of *Of Pandas and People*, for the Dover High School, which will be placed in the school library. Except as admitted, the allegations contained in paragraph 32 are denied.

33      Admitted.

34      The allegation that the resolution was developed without participation of district science faculty is denied.

35      Admitted.

36      It is admitted that Jeff and Carol Brown resigned from the Board as alleged. It is admitted that Brown read the statement as alleged, although, upon information and belief, Defendants believe that the statement is not true. Except as admitted, the allegations contained in paragraph 36 are denied.

37    It is admitted that Jane Cleaver and Noel Wenrich resigned as alleged

14

because they were moving out of the district.

38    Admitted.

39    It is admitted that on December 6, 2004, Board member Angie Zeigler-Yingling resigned from the Board, although she has since rescinded that resignation. Defendants lack knowledge or information sufficient to form a belief concerning the remaining allegations contained in paragraph 39.

40    Admitted.

41    It is admitted that the Dover Area School District does not require the reading of similar statements for any other aspect of the science curriculum or as regards any other scientific theory because the teachers of the district have not requested such guidance concerning other aspects of the science curriculum or other scientific theories.

42    Admitted.

43    It is admitted that the curriculum is posted on the Dover Area School District website which speaks for itself, contains the statements alleged in paragraph 43, and must be read in light of the policy attached hereto as Exhibit 1, which forbids the teaching of Intelligent Design. Except as admitted the allegations contained in paragraph 43 are denied.

44    Admitted.

15

45    Defendants' deny that they have an "intelligent design policy."

Defendants have a biology curriculum policy that, as indicated by the Press

Release attached hereto as Exhibit 1, requires teachers to: (1) teach only Darwin's

theory of evolution per state standards; (2) read the procedural statement set forth

in Exhibit One; (3) forbids teachers from teaching intelligent design, creationism,

or from presenting his or her or the Board's religious belief; and (4) makes the

book *Of Pandas and People* available to students in the school library.  It is

admitted that this policy relates only to the theory of evolution although it is

expected that teachers address gaps or problems with any theory presented.

Except as admitted, the allegations contained in paragraph 45 are denied.

46    Denied.

47    Denied.

48    Denied.

**COUNT ONE**

49    Denied.

50    Denied.

51    Denied.

52    Denied.

53    Denied.

54      Denied.

## COUNT TWO

55      Denied.

56      Denied.

## AFFIRMATIVE DEFENSES

1       The Complaint fails to state a claim upon which relief can be granted such that the Complaint must be dismissed pursuant to Fed.R.Civ.P 12(b)(6) and Plaintiffs lack standing such that dismissal is appropriate pursuant to Fed.R.Civ.P. 12(b)(1).

2       Defendants have a generally applicable opt-out policy which allows students to avoid the "harm" alleged.

3       There is no basis for the Plaintiffs' request for an injunction requiring removal of the book *Of Pandas and People* from the School District's science classrooms because the books will be held in the school library so that students may make reference to the text if they so choose and any effort to remove the volume from the library would violate the First Amendment rights of the students of DASD.

WHEREFORE, Defendants respectfully request that the Court enter an

order and judgment:

1      Denying the Plaintiffs the relief they seek and dismissing this action

       with prejudice; and

2      Awarding the Defendants the attorneys fees and costs incurred in

       connection with this action as authorized by law.


Dated: January 3, 2004       By: _____

Richard Thompson (P21410)*
Robert J. Muise  (P62849)*
Patrick T. Gillen (P47456)*
THOMAS MORE LAW CENTER
24 Frank Lloyd Wright Drive
PO Box 393
Ann Arbor, Michigan 48106
(734) 827-2001
*Attorneys for Defendants*
   *admitted pro hac vice*


By: _____

Ron Turo
Turo Law Offices
29 South Pitt Street
Carlisle, PA 177013


18