# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TAMMY KITZMILLER; BRYAN AND
CHRISTY REHM; DEBORAH
FENIMORE AND JOEL LIEB; STEVEN
STOUGH; BETH EVELAND; CYNTHIA
SNEATH; JULIE SMITH; AND ARALENE
("BARRIE") D. AND FREDERICK B.
CALLAHAN,

Case No. 04-cv-2688

        Plaintiffs,

(JUDGE JOHN E. JONES III)

        vs.

(ELECTRONICALLY FILED)

DOVER AREA SCHOOL DISTRICT;
DOVER AREA SCHOOL DISTRICT
BOARD OF DIRECTORS,

        Defendants.

---

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO PROPOSED INTERVENORS'
## APPLICATION TO INTERVENE AS DEFENDANTS

---

Eric Rothschild (PA 71746)
Stephen G. Harvey (PA 58233)
Joseph M. Farber (PA 84965)
Benjamin M. Mather (PA 89959)
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, Pennsylvania 19103
(215) 981-4000
(215) 981-4750 (fax)

Thomas B. Schmidt, III (PA 19196)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
Post Office Box 1181
Harrisburg, Pennsylvania 17108
(717) 255-1155
(717) 238-0575 (fax)

*Counsel for Plaintiffs*      *(contd.)*

Witold J. Walczak (PA 62976)
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213
412-681-7864
412-681-8707 (fax)
*vwalczak@aclupgh.org*

Ayesha Khan (adm. *phv*)
Richard B. Katskee (adm. *phv*)
Alex J. Luchenitser (adm. *phv*)
Americans United for Separation of
Church and State
518 C St., NE
Washington, DC 20002
(202) 466-3234
(202) 466-2587 (fax)
*akhan@au.org; katskee@au.org;*
*luchenitser@au.org*

Paula K. Knudsen (PA 87607)
ACLU of Pennsylvania
105 N. Front St., Suite 225
Harrisburg, PA  17101
(717) 236-6827
(717) 236-6895 (fax)
*pknudsen@aclupa.org*

Counsel  for Plaintiffs,

TAMMY KITZMILLER; BRYAN AND
CHRISTY REHM; DEBORAH FENIMORE
AND JOEL LIEB; STEVEN STOUGH; BETH
EVELAND; CYNTHIA SNEATH; JULIE
SMITH, AND ARALENE ("BARRIE") D. AND
FREDERICK B. CALLAHAN

Dated:  February 4, 2005

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................1

II.     RELEVANT FACTS AND PROCEDURAL HISTORY ............................1

III.    ARGUMENT ................................................................................4

   A.  Applicants Have No Right to Intervene Because They Cannot Meet the
       Standard Under Rule 24(a)...............................................................**5**

     1.  Applicants Have No "Significantly Protectable" Interest in this Action..... 5

     2.  Applicants Cannot Show Inadequacy of Representation............................. 11

   B.  Applicants Should Not Be Permitted to Intervene Because Their
       Participation Would Add Nothing Except Complication, Delay, and
       Additional Cost.............................................................................15

IV.     APPLICANTS CAN PARTICIPATE AS AMICUS CURIAE...................17

V.      CONCLUSION ...........................................................................17

# TABLE OF AUTHORITIES

## CASES

*Brody v. Spang*, 957 F.2d 1108 (3d Cir. 1992)...............................................8, 9, 10, 15

*Del. Valley Citizens Council for Clean Air v. Pennsylvania*, 674 F.2d 970 (3d Cir. 1982)..............................................................................................12

*Donaldson v. United States*, 400 U.S. 517 (1971).......................................................5

*Epperson v. Arkansas*, 393 U.S. 97 (1968)................................................................8

*First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978)......................................7

*Harris v. Pernsley*, 820 F.2d 592 (3d Cir. 1987), *cert. denied*, 484 U.S. 947 (1987).......................................................................................................4, 6, 11, 12, 14

*Hoots v. Pennsylvania*, 672 F.2d 1133 (3d Cir. 1982) .................................5, 11, 12, 15

*Ingebretsen v. Jackson Public Sch. Dist.*, 88 F.3d 274 (5th Cir. 1996)............... 9-10

*Island Trees Union Free Sch. Dist. v. Pico*, 457 U.S. 853 (1982) ........................6, 7

*Keyishian v. Bd. of Regents*, 385 U.S. 589 (1967).....................................................7

*Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242 (3d Cir. 1992) ................................................................................................. 10-11

*Mozert v. Hawkins County Bd. of Ed.*, 827 F.2d 1058 (6th Cir. 1987) ....................8

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co. ("NOPSI III")*, 732 F.2d 452 (5th Cir. 1984) .............................................................................17

*Pennsylvania v. Rizzo*, 530 F.2d 501 (3d Cir. 1976) ...............................................13

*Stanley v. Georgia*, 394 U.S. 557 (1969)................................................................7

*United States v. Bd. of Sch. Comm'rs*, 466 F.2d 573 (7th Cir. 1972) ......................14

## STATUTES & RULES

Fed. R. Civ. P. 24 .............................................................................4, 5, 11,
15, 16, 17

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO PROPOSED INTERVENORS'
<u>APPLICATION TO INTERVENE AS DEFENDANTS</u>**

## I.   INTRODUCTION

Applicants have no right to intervene in this constitutional challenge to defendants' "intelligent design policy" because there is no First Amendment right of parents to demand that a school teach any particular subject, because defendants will represent Applicants' interest adequately, and — contrary to Applicants' assertion — because plaintiffs do not seek to remove books from the school library.  Applicants should not be permitted to intervene when their presence would only add cost and complexity.  If they have a different perspective to share, they can do so by submitting a brief *amicus curiae*.

## II.   RELEVANT FACTS AND PROCEDURAL HISTORY

On October 18, 2004, defendant Dover Area School District Board of Directors ("the Board") passed by a 6-3 vote the following resolution:

> Students will be made aware of gaps/problems in Darwin's theory and of other theories of evolution including, but not limited to, intelligent design.  Note: Origins of Life is not taught.

Complaint ¶ 33.

In furtherance of this resolution, defendant Dover Area School District prepared a statement to be read to students in ninth grade biology classes at

Dover High School immediately before the students are taught the unit on

evolution.  *Id.* at ¶ 40.  The statement includes the following language:

> Because Darwin's Theory is a theory, it is still being
> tested as new evidence is discovered.  The Theory is not
> a fact.  Gaps in the Theory exist for which there is no
> evidence.   A theory is defined as a well-tested
> explanation that unifies a broad range of observations.
>
> Intelligent design is an explanation of the origin of life
> that differs from Darwin's view.  The reference book, *Of
> Pandas and People* is available for students to see if they
> would like to explore this view in an effort to gain an
> understanding of what intelligent design actually
> involves.   As is true with any theory, students are
> encouraged to keep an open mind.

*Id.*

On December 14, 2004, plaintiffs filed this lawsuit seeking a

declaratory judgment that the School Board's October 18 resolution as

implemented by the School District (defendants' "intelligent design policy") is

unlawful.  Plaintiffs also seek an injunction preventing defendants from

implementing their intelligent design policy.

On January 17, 2005, Applicants applied to intervene in this matter,

claiming as a legal interest the right "to receive information and ideas."  *See* Mem.

in Supp. of App. at 7.  More specifically, Applicants claim an interest in "making

sure that their children are not prevented from learning about intelligent design"

and in "making sure that their children are made aware that there are gaps in the

biological theory of evolution."  *Id.* at 8, 10.  Applicants' interest mirrors the

statement defendants insist on reading to the Dover High School's ninth grade biology class (quoted above), which means that their asserted interest is identical to defendants' interest in defending this litigation.

Applicants also claim an interest "in making sure the supplemental textbook *Of Pandas and People* is not removed from Dover High School, especially the library." *Id.* at 10. Applicants contend that plaintiffs seek to remove this book from Dover High School's library. *See* Proposed Answer in Intervention ¶ 47 ("it is the Plaintiffs – who seek to remove supplemental textbooks from the school library . . . ."), ¶ 48 ("if the Plaintiffs are successful in censoring the Dover Area School Board and removing books from the school library . . . ."), Aff. Def. No. 2 ("The relief sought by the Plaintiffs – the limitation of access to books . . . .").

Applicants are inexcusably wrong. Plaintiffs for their remedy seek to ensure that copies of the book *Of Pandas and People* are not maintained *in the school's science classrooms* and that teachers of that class are not required to direct students to that textbook as part of the biology curriculum. Compl. at 22-23 (Prayer for Relief). [1] Contrary to Applicants' assertion, plaintiffs do not seek to have the book removed from the high school library.

_____

[1] Plaintiffs' complaint seeks:

(continued...)

### III.    ARGUMENT

"The central purpose of [Rule 24] is to allow intervention by those who might be practically disadvantaged by the disposition of the action" in a way that is not being addressed by the parties to the action.  7C Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d §1908 at 301.  It is not a mechanism to allow any person with a concern about the outcome of an action to participate on a "me too" basis.  Thus, in deciding whether to grant intervention as of right under Fed. R. Civ. P. 24(a), courts are required to analyze the proposed intervenor's stated interest in the action to determine whether it is a significant, legally protectable interest that is different from the interest of any of the parties, whether it would be impaired or affected as a practical matter, and whether it is not being represented by one or more of the parties to the action.  *See Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987), *cert. denied*, 484 U.S. 947 (1987).  In deciding

_____

(continued...)

      a.      [A] declaratory judgment . . . declaring that the defendants' intelligent design policy violates the Establishment Clause of the First Amendment of the Constitution of the United States and Art. I, Sec. 3, and Art. III, Secs. 15 & 29, of the Constitution of the Commonwealth of Pennsylvania;

      b.      an injunction . . . prohibiting the defendants from implementing their intelligent design policy in any school within the Dover Area School District, and requiring the removal of *Of Pandas and People* from the School District's science classrooms.

Compl. at 22-23.

whether to grant permissive intervention under Fed. R. Civ. P. 24(b), courts

consider these same factors as well as the effect that intervention would have on

the action and the parties.  *See Hoots v. Pennsylvania*, 672 F.2d 1133, 1136 (3d

Cir. 1982).

Applicants fall far short of meeting either standard.

**A.**   **Applicants Have No Right to Intervene Because They Cannot Meet the Standard Under Rule 24(a).**

1.   Applicants Have No "Significantly Protectable" Interest in this Action.

Applicants argue primarily that they have a right to intervene in this

action under Rule 24(a).[2]  Rule 24(a) requires that Applicants demonstrate an

interest in this action that is "significantly protectable."  *Donaldson v. United*

*States*, 400 U.S. 517, 531 (1971).  In the Third Circuit, this means that the asserted

interests "must be legal interests as distinguished from interests of a general and

indefinite character . . . .  The applicant must demonstrate that there is a tangible

---

[2] Rule 24(a) provides, in pertinent part, as follows:

> Upon timely application, anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

threat to a legally cognizable interest to have the right to intervene." *Harris*, 820 F.2d at 601.

Applicants argue that their "sufficient legal interest" is their "First Amendment freedom 'to receive information and ideas,'" including "making sure that their children are not prevented from learning about intelligent design" or "making sure that their children are made aware that there are gaps in the biological theory of evolution." *See* Mem. in Supp. of App., at 7, 8, 10.   In essence, Applicants claim a right to require that their children be taught these subjects in public school science class.  This argument is flawed for several reasons.

First, Applicants provide no legal authority to support a claim that they have a First Amendment right to require that their children be taught any particular subject or that the curriculum include specific topics or books.  The cases on which Applicants rely simply do not apply.

Applicants rely primarily on *Island Trees Union Free Sch. Dist. v. Pico*, 457 U.S. 853 (1982), which would be relevant only if plaintiffs were seeking to remove books from Dover's public school libraries.  In *Pico*, the Supreme Court emphasized the limited scope of the case: "the only action challenged in this case is the *removal* from school libraries of books originally placed there by the school authorities, or without objection from them."  *Id.* at 862 (emphasis in original).

The Supreme Court held that public schools cannot restrict the right of students to access ideas on their own time. *Id.* at 872 ("local school boards may not remove books from school library shelves simply because they dislike the ideas contained in those books"). This case does not involve the removal of any books from the school library. Thus, *Pico* does not apply.

Applicants also cite *Stanley v. Georgia*, 394 U.S. 557, 564 (1969). In *Stanley*, the Supreme Court recognized a constitutional right to read or observe obscene material in the privacy of one's home. But the instant case has nothing to do with limiting anyone's right to receive information in the privacy of his or her home. Thus, *Stanley* also does not apply.[3] Consequently, Applicants have offered no legal authority for their claimed First Amendment right to "receive information and ideas" in a public school curriculum. Mem. in Supp. of App. at 7.

Second, if Applicants were correct that there is a First Amendment right of parents to dictate the content of public school curricula, that right would eviscerate the well-recognized authority of school districts to set their own curricula. *See Pico*, 457 U.S. at 863-64 (school boards have "broad discretion in

---

[3] Applicants cite *dicta* from the Supreme Court's decision in *Keyishian v. Bd. of Regents*, 385 U.S. 589 (1967). Mem. in Supp. of App. at 9. *Keyishian* involved a constitutional challenge by public university faculty members to a plan based on New York statutes and regulations to prevent appointment or retention of subversive employees in state employment. *Keyishian* does not even arguably apply, nor does the *dicta* from *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978), quoted by Applicants. Mem. in Supp. of App. at 9-10. *Bellotti* involved a constitutional challenge by banks and corporations to a Massachusetts criminal statute that prohibited certain political contributions.

the management of school affairs"); *Epperson v. Arkansas*, 393 U.S. 97, 104

(1968) ("Courts do not and cannot intervene in the resolution of conflicts which

arise in the daily operation of school systems and which do not directly and sharply

implicate basic constitutional values."); *Mozert v. Hawkins County Bd. of Ed.*, 827

F.2d 1058, 1070 (6th Cir. 1987) ("When asked to 'interpose,' courts must examine

the record very carefully to make certain that a constitutional violation has

occurred before they order changes in an educational program adopted by duly

chosen local authorities.").

Third, Applicants have no right to insist that defendants engage in

unconstitutional conduct.  *See Brody v. Spang*, 957 F.2d 1108 (3d Cir. 1992).  In

*Brody,* a group of parents applied to intervene as defendants in a case where

plaintiffs alleged that a high school's sponsorship of an official baccalaureate

service, inclusion of religious benedictions and invocations at graduation

ceremonies, and requirements that students write essays on religious subjects in

English class, violated the students' rights under the Establishment Clause.  *Id.* at

1111.  The parents seeking intervention asserted that their legal interest was a

"First Amendment free speech right of students to discuss religion in

commencement speeches."  *Id.* at 1116.

In considering whether the parents had a "sufficient legal interest," the

Court conducted a bifurcated inquiry in which it separately analyzed their interest

in the *merits* and *remedial* phases of the action.  *Id.*  The Court held that the parents had no "legal interest" in the merits phase, because "it is clear that the litigation of these questions and any court findings on liability would in no way have implicated the free speech rights of appellants." *Id.* [4]  In reasoning that is equally applicable to this case, the Court stated that "the school officials' practices were either lawful or unlawful, and a determination of this question would not impinge on appellants' ability to exercise their free speech rights at a graduation ceremony." *Id.* at 1116-17.

Other federal appeals courts have also rejected intervention by parents, like Applicants here, who oppose an Establishment Clause claim made against a school district.  *See Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 281 (5th Cir. 1996) (denying proposed intervenors' motion to intervene to assert their constitutionally protected rights of free exercise of religion and free speech where the only issue before the court was the "validity of the School Prayer

---

[4] In *Brody*, the Court also considered whether the proposed intervenors had an interest in the remedial phase of the action because the consent decree at issue "on its face, clearly permit[ted] an infringement of otherwise existing First Amendment rights of students."  957 F.2d at 1117.  The Court remanded for a determination of whether the graduation ceremonies at issue qualified as a public forum and, if so, whether the restrictions were viewpoint neutral and reasonable in light of the purpose of the forum.  *Id.* at 1122.  Thus, the district court on remand was required to consider whether the proposed intervenors had a "legally cognizable interest in the remedial phase of the litigation."  *Id.* at 1124.  But, unlike the consent decree in *Brody*, the remedy sought here would not impose any special restrictions on the Applicants.  And even if Applicants had a right to intervene in any remedial phase, which they do not, they clearly cannot use that to intervene in the merits of this case.

Statute, and the Attorney General, in defending that statute, [could] assert the rights of all Mississippians affected by the law, including the Free Exercise rights of Proposed Intervenors").

Like the parents in *Brody*, Applicants allege a First Amendment interest in the *merits* of this litigation.  And, as in *Brody*, the litigation over defendants' curriculum change and any court findings cannot implicate any legal interest of Applicants if that interest depends on maintaining an unconstitutional policy.  *Id.* at 1124 ("an application for intervention can have no interest in assuring the perpetuation of unconstitutional conditions").  Thus, Applicants have not alleged a "sufficient legal interest" in this action.

Finally, Applicants can allege a colorable constitutional claim only by mischaracterizing plaintiffs' complaint.  Applicants claim that plaintiffs "seek to remove supplemental textbooks from the school library."  *See* Proposed Answer in Intervention ¶ 48.  This misreads the complaint, which seeks only to remove the book *Of Pandas and People* from the High School's ninth grade biology class.  *See* Compl. at 22-23. (Prayer for Relief).  The mischaracterization is not surprising because the Third Circuit distinguishes removing books from a *library* and removing books from a *classroom*: "'special characteristics of the school library make that environment especially appropriate for the recognition of the First Amendment rights of students,' for the library, *unlike the school classroom*, is a

place for voluntary inquiry and study." *See Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1254 (3d Cir. 1992) (emphasis added).  Therefore, under Third Circuit law Applicants would have a colorable claim only if plaintiffs sought to remove books from the library.  Since plaintiffs have not sought to remove any books from the library, Applicants are forced to mischaracterize the complaint.  Obviously, Applicants cannot claim a right to intervene by mischaracterizing the pleadings.

Thus, Applicants have no legally cognizable interest in this action and the Application to intervene as of right under Rule 24(a) should be denied for this reason alone.[5]

2.     Applicants Cannot Show Inadequacy of Representation.

Even if the proposed intervenors had a "significantly protectable" interest in this action, they would still have no right to intervene because defendants will fully and adequately represent their interest.  The standard for intervention as of right is conjunctive.  Plaintiffs must satisfy each of the factors set forth in *Harris v. Pernsley*, *supra* at 4.

Applicants bear the burden of showing that defendants will not represent their interests adequately.  *Hoots*, 672 F.2d at 1135.  It is not enough for

---

[5] The Application also fails because, without a legally cognizable right to intervene, Applicants cannot show that any such right is "impair[ed] or impede[d]" as a practical matter by the disposition of this action.  Fed. R. Civ. P. 24(a).

them to show that their interests differ slightly from defendants' interests —
though they have not done even that.  Instead, they must "demonstrate that [their]
interests . . . are . . . sufficiently different that the representative cannot give [those]
interests proper attention."  *Id.*  Applicants cannot meet this burden.

      Applicants have not asserted a distinct interest that remains
unprotected in this litigation, and they acknowledge that defendants are defending
their shared interests "vigorously."  Mem. in Supp. of App. at 13 n.1.  The Court
can dispose of the Application on this basis alone.  *See Harris*, 820 F.2d at 596.
But there are many other reasons why Applicants' bid for intervention fails as a
matter of law.

      First, there is a well-settled presumption that a government entity
named as a defendant charged by law with representing the interests of proposed
intervenors will do so adequately.  *See Del. Valley Citizens Council for Clean Air
v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982).  This presumption applies
equally to school officials such as the defendants in this action.  *See Brody*, 957
F.2d at 1123 ("Other courts have held, particularly in the context of school
desegregation cases, that the presumption applies when students seek to intervene
in cases against school officials, *because school officials are charged by law with
representing the interests of students*") (emphasis added).  The presumption applies
here because defendants and Applicants share a common objective, namely, to

have intelligent design taught in Dover High School in the manner in which the

defendants have dictated.

Applicants state in conclusory fashion that their alleged legal interest

is not adequately represented "because there is enough divergence between their

interests and the Defendants' interests to present the risk the Applicants' interests

will not be pursued."  Mem. in Supp. of App., at 12.  But Applicants fail to identify

in any concrete terms how their interests differ, except to speculate that defendants

will not adequately represent their interests because defendants may feel pressured

at some unspecified future point in time into settling with plaintiffs "to avoid the

possibility of paying the plaintiffs' substantial legal fees."[6]  See Mem. in Supp. of

App. at 13 n.1.  The Third Circuit has explicitly rejected this reasoning; a

defendant's decision to settle has no impact on the "inadequate representation"

issue.  *See Pennsylvania v. Rizzo*, 530 F.2d 501, 505 (3d Cir. 1976) (the fact that

defendants entered into a consent decree with plaintiffs did not establish

inadequate representation; "a consent decree may be simply the inescapable legal

consequence of application of fundamental law to (the) facts.  That (intervenors)

would have been less prone to agree to the facts and would have taken a different

---

[6] Applicants base this assertion on a mischaracterization of a statement that plaintiffs' counsel Witold Walczak made at a press conference after this action was filed, depicted during the January 13, 2005 edition of the ABC television program *Nightline*.  Mr. Walczak, in responding to a question about the district's exposure to legal fees, was merely acknowledging, correctly, that plaintiffs would have a right to fees if they prevail.

view of the applicable law does not mean that the (defendants) did not adequately represent their interests in the litigation") (quoting *United States v. Bd. of Sch. Comm'rs*, 466 F.2d 573, 575 (7th Cir. 1972)).

Adequacy of representation depends on whether the named party represents the interests of the would-be intervenor, not on whether Monday-morning quarter-backing might suggest a different litigation strategy. In other words, a would-be intervenor cannot demonstrate inadequate representation by showing that the named party is not acting as its attorney and taking direction from it. Instead, a proposed intervenor must show that its interests are not represented by a named party. Applicants have not even made a minimal showing of inadequate representation here.

If the Court were to accept Applicants' contention that defendants will not represent their shared interests adequately in this case, then the concept of "adequate representation" can never be satisfied in any case. In short, Applicants' failure to establish inadequacy of representation by defendants presents an independent ground for denying the Application. *See Harris*, 820 F.2d at 596.

**B.    Applicants Should Not Be Permitted to Intervene Because Their Participation Would Add Nothing Except Complication, Delay, and Additional Cost.**

Under Rule 24(b), the decision whether to grant permissive intervention is within the discretion of the district court.[7] *Brody*, 957 F.2d at 1124. In making this determination, courts consider whether the proposed intervenors will add anything to the litigation. *See Hoots*, 672 F.2d at 1136. If the interests of the proposed intervenors are already represented in the litigation, courts deny such applications to intervene. *See id.* ("where . . . the interests of applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that applicant's contributions to the proceedings would be superfluous and that any resulting delay would be 'undue'").

In addition, courts consider any potentially adverse impact that intervention may have on the original parties. 7C Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d §1913 at 379 (1986) (the "principal

---

[7] Rule 24(b) provides in relevant part as follows:

> Upon timely application, anyone may be permitted to intervene in an action: … (2) when an applicant's claim or defense and the main action have a question of law or fact in common. … In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

consideration" on a motion for permissive intervention is whether undue delay or prejudice will result).

Applicants ask the Court to allow them to intervene because "issues raised in this matter are of great public importance, and the public will be better served if all competing interest are heard and considered in resolving this matter." Mem. in Supp. of App. at 14.  Quite apart from the fact that Applicants have not shown that they bring to the table any interest different from defendants' interest, Applicants do not explain why they need to intervene or show how their participation as defendants would bring anything new or useful to the litigation.

Applicants' participation as parties would add nothing to this litigation but more lawyers, more schedules to consider, more discovery requests, depositions, and briefs on the same subjects, more time at trial and, as a result, more costs for both the plaintiffs and defendants.  The end result would be a substantial increase in the amount of any fee award to the plaintiffs if they prevail, as they expect, and more litigation costs for the school district regardless of outcome.  The plaintiffs, all Dover residents and taxpayers, have no interest in increasing the amount of any fee award beyond that which is necessary for them to prevail.  Accordingly, the Court should exercise its discretion to deny the Application for permissive intervention under Rule 24(b).

## IV.    APPLICANTS CAN PARTICIPATE AS AMICUS CURIAE

If Applicants want to participate in this action and have something to tell the Court that they feel is not being covered by defendants, the appropriate procedure is to file a brief as *amicus curie*.  *See New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co. ("NOPSI III")*, 732 F.2d 452, 473 (5th Cir. 1984).

## V.    CONCLUSION

For the foregoing reasons, the Court should deny the Application to Intervene as Defendants under Rule 24(a) and Rule 24(b).

Respectfully submitted,

*/s/ Thomas B. Schmidt, III*
Eric Rothschild (PA 71746)
Stephen G. Harvey (PA 58233)
Joseph M. Farber (PA 84965)
Benjamin M. Mather (PA 89959)
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000
(215) 981-4750 (fax)
*rothschilde@pepperlaw.com*

Thomas B. Schmidt, III (PA 19196)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
P.O. Box 1181
Harrisburg, PA  17108
(717) 255-1155
(717) 238-0575 (fax)
*schmidtt@pepperlaw.com*

Witold J. Walczak (PA 62976)
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213
412-681-7864
412-681-8707 (fax)
*vwalczak@aclupgh.org*

Paula K. Knudsen (PA 87607)
ACLU of Pennsylvania
105 N. Front St., Suite 225
Harrisburg, PA  17101
(717) 236-6827
(717) 236-6895 (fax)
*pknudsen@aclupa.org*

Ayesha Khan (adm. *phv*)
Richard B. Katskee (adm. *phv*)
Alex J. Luchenitser (adm. *phv*)
Americans United for Separation
    of Church and State
518 C St., NE
Washington, DC 20002
(202) 466-3234
(202) 466-2587 (fax)
*akhan@au.org; katskee@au.org;*
*luchenitser@au.org*

Attorneys for plaintiffs,
TAMMY KITZMILLER; BRYAN AND
CHRISTY REHM; DEBORAH
FENIMORE AND JOEL LIEB; STEVEN
STOUGH; BETH EVELAND; CYNTHIA
SNEATH; JULIE SMITH, AND
ARALENE ("BARRIE") D. AND
FREDERICK B. CALLAHAN

Dated:  February 4, 2005

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 4, 2005, a copy of the foregoing

Plaintiffs' Memorandum of Law in Opposition to Proposed Intervenors'

Application to Intervene as Defendants should be served on the following counsel

through the electronic case filing system:

| | |
|---|---|
| Richard Thompson, Esquire<br>Robert J. Muise, Esquire<br>Patrick T. Gillen, Esquire<br>Thomas More Law Center<br>24 Frank Lloyd Wright Drive<br>P.O. Box 393<br>Ann Arbor, MI  48106 | (Counsel for Defendants) |
| John B. Dempsey, Esquire<br>Alfred W. Putnam, Jr., Esquire<br>Jason P. Gosselin, Esquire<br>Stephen A. Serfass, Esquire<br>Drinker Biddle & Reath LLP<br>One Logan Square<br>18th and Cherry Streets<br>Philadelphia, PA  19103-6996 | (Counsel for Michael and Sheree Hied,<br>Raymond and Cynthia Mummert, and<br>James and Martha Cashman) |
| John W. Whitehead, Esquire<br>Douglas McKusick, Esquire<br>The Rutherford Institute<br>P.O. Box 7482<br>Charlottesville, VA  22906 | (Counsel for Michael and Sheree Hied,<br>Raymond and Cynthia Mummert, and<br>James and Martha Cashman) |

*/s/ Thomas B. Schmidt III*
Thomas B. Schmidt, III (19196)