IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

—————————————————————

| | | |
|---|---|---|
| TAMMY KITZMILLER; BRYAN AND CHRISTY REHM; DEBORAH FENIMORE AND JOEL LIEB; STEVEN STOUGH; BETH EVELAND; CYNTHIA SNEATH; JULIE SMITH; AND ARALENE ("BARRIE") D. AND FREDERICK B. CALLAHAN, | : : : : : : : : : | |
| Plaintiff, | : : | CIVIL ACTION |
| vs. | : : | No. 4:04-cv-2688 |
| DOVER AREA SCHOOL DISTRICT; DOVER AREA SCHOOL DISTRICT BOARD OF DIRECTORS, | : : : : | (JUDGE JONES) |
| Defendants | : : | (Filed Electronically) |

—————————————————————

## PLAINTIFFS' BRIEF IN OPPOSITION

## TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ...................................................................................1

I. FACTUAL HISTORY .........................................................................3

    A. Background........................................................................ 3

    B. The Policy ........................................................................ 3

    C. Allegations of the Complaint..................................................4

    D. The Challenged Plaintiffs ....................................................6

II. ARGUMENT ....................................................................................6

    A. Plaintiffs Have Alleged Injury Sufficient to Confer Standing to
       Bring This Lawsuit .............................................................6

    B. The Smith and Callahan Claims Are Not Moot .......................7

    C. The Eveland and Sneath Claims Are Ripe For Adjudication.................11

    D. Plaintiffs' Supposed "Free Exercise of Religion" Claim Cannot Be
       Dismissed Because It Has Not Been Asserted ..................................15

    E. Plaintiffs Have Stated Claims under Art. III, §§ 15 & 29 of The
       Pennsylvania Constitution ..................................................19

III. CONCLUSION....................................................................................22

CERTIFICATE OF COMPLIANCE........................................................24

# TABLE OF AUTHORITIES

## CASES

*Altman v. Bedford Central Sch. Dist.*, 245 F.3d 49 (2d Cir. 2001) ........................10

*Auerbach v. Bd. of Educ.*, 136 F.3d 104 (2d Cir. 1998) ..........................................14

*Brody v. Spang*, 957 F.2d 1108 (3d Cir. 1992)....................................................7, 12

*Cole v. Orville Union High Sch. Dist.*, 228 F.3d 1092 (9th Cir. 2000)...................13

*Collins v. Kephart*, 117 A. 440 (Pa. 1921) ........................................................20, 21

*Common Cause of Pennsylvania v. Commonwealth*, 668 A.2d 190 (Pa. Commw. Ct.. 1995)................................................................................21

*County of Allegheny v. ACLU*, 492 U.S. 573 (1989)................................................9

*Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211 (3d Cir. 2003).............7, 10

*Doremus v. Bd. of Educ.*, 342 U.S. 429 (1952) ......................................................21

*Edwards v. Aguillard*, 482 U.S. 578 (1987) ...........................................................10

*Engel v. Vitale*, 370 U.S. 421 (1962) ...............................................................17, 18

*Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71 (3d Cir. 1998)...............................................6

*Hysong v. Gallitzin Borough Sch. Dist.*, 164 Pa. 629 (Pa. 1894) ...........................19

*Jenkins v. McKeithen*, 395 U.S. 411 (1969) .............................................................7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................6, 7

*Lynch v. Donnelly*, 465 U.S. 668 (1984) ..................................................................9

*McLean v. Arkansas Bd. of Educ.*, 529 F. Supp. 1255 (E.D. Ark.) (1982) .............10

*Peachlum v. City of York*, 333 F.3d 429 (3d Cir. 2003) ...........................................12

*Riva v. Massachusetts*, 61 F.3d 1003 (1st Cir. 1995) ........................................12, 13

*Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000) .......................................2, 8

*Sch. Dist. of Abington Township v. Schempp*, 374 U.S. 203 (1963) ...................7,18

*Selman v. Cobb Co. Sch. Dist., Slip Copy*, 2005 WL. 83829 ..................................10

*Springfield Sch. Dist. v. Dep't of Educ.*, 397 A.2d 1154 (Pa. 1979) .......................21

*Walsh v. Louisiana High Sch. Athletic Ass'n*, 616 F.2d 152 (5th Cir. 1980) ..........12

*Wiest v. Mt. Lebanon Sch. Dist.*, 320 A.2d 362 (Pa. 1974) ...............................17, 19

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMMY KITZMILLER; BRYAN AND CHRISTY REHM; DEBORAH FENIMORE AND JOEL LIEB; STEVEN STOUGH; BETH EVELAND; CYNTHIA SNEATH; JULIE SMITH; AND ARALENE ("BARRIE") D. AND FREDERICK B. CALLAHAN, | : : : : : : : : | |
| | : | CIVIL ACTION |
| Plaintiff, | : : | |
| vs. | : : | No. 4:04-cv-2688 |
| DOVER AREA SCHOOL DISTRICT; DOVER AREA SCHOOL DISTRICT BOARD OF DIRECTORS, | : : : : | (JUDGE JONES) |
| Defendants | : : : | (Filed Electronically) |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Defendants Dover Area School District ("DASD") and Dover Area

School District Board of Directors ("Dover School Board") have filed a motion to

dismiss five (5) of the eleven (11) parent-plaintiffs to this lawsuit, on the grounds

that their claims are either unripe, or moot. In doing so, defendants do not, because

they cannot, suggest that the lawsuit itself is not ripe or is moot, or will otherwise

be disposed of by virtue of their motion.  Nevertheless, they seek to peel off some of the plaintiffs, arguing that their children, students in the Dover Area School District, are either too young or too old to be affected by defendants' intelligent design policy.

The constitutional violation challenged by plaintiffs in this case is the intelligent design *policy* passed by the school board.  While defendants have focused attention on what is taught in the ninth-grade biology curriculum, the constitutional violation is broader than the four paragraphs being read to the students.  The constitutional violation alleged by plaintiffs is the DASD's endorsement of religion, as reflected by the policy undermining the scientific theory of evolution and promoting an alternative religious view, intelligent design. As the Supreme Court held recently, the Establishment Clause protects against not just forced student participation in a religious practice, but "the mere passage by the District of a policy that has the purpose and perception of government establishment of religion."  *See Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 314 (2000).  This endorsement affects all students in the district, and through them their parents.  Every parent with a child currently enrolled in the district, whether the student is in kindergarten or twelfth grade, has standing to challenge the policy.

The parent plaintiffs challenged by the defendants satisfy this test.  Accordingly, this Court should deny defendants' motion to dismiss. [1]

## I.      FACTUAL HISTORY

### A.      Background

Defendant DASD is a municipal corporation governed by defendant Dover School Board.  (Compl. at ¶ 11.)  The Dover School Board has the authority to set official policy for the DASD (Compl. at ¶ 44), and the DASD has the authority (and obligation) to design and implement the curricula for the seven public schools under its control. (Compl. at ¶ 26.)

### B.      The Policy

On October 18, 2004, the Dover School Board adopted the following resolution:

> Students will be made aware of gaps/problems in Darwin's theory and of other theories of evolution including, but not limited to, intelligent design.  Note: Origins of Life is not taught.  (Compl. at ¶ 1.)

On November 19, 2004, the DASD announced that teachers would be required, before teaching the unit on evolution, to read a statement (the

---

[1] Defendants have also moved to dismiss claims brought by all plaintiffs under Pennsylvania's Constitution.  For the reasons set forth in sections D and E, the motion should also be denied as it applies to those claims.

"Statement") to students in the ninth-grade biology class at Dover High School that

includes the following language:

> The state standards require students to learn about
> Darwin's Theory of Evolution and to eventually take a
> standardized test of which evolution is a part.
>
> Because Darwin's Theory is a theory, it is still being
> tested as new evidence is discovered.  The Theory is not
> a fact.  Gaps in the Theory exist for which there is no
> evidence.  A theory is defined as a well-tested
> explanation that unifies a broad range of observations.
>
> Intelligent Design is an explanation of the origin of life
> that differs from Darwin's view.  The reference book, *Of
> Pandas and People* is available for students to see if they
> would like to explore this view in an effort to gain an
> understanding of what intelligent design actually
> involves.  As is true with any theory, students are
> encouraged to keep an open mind.  The school leaves the
> discussion of the Origins of Life up to individual students
> and their families.  As a standards-driven district, class
> instruction focuses on the standards and preparing
> students to be successful on standards-based assessments.

(Compl. at ¶ 40.)  The Statement was read to the students for the first time on

January 18, 2005.

### C.    Allegations of the Complaint

Plaintiffs are parents of students who attend schools in the DASD.

Their complaint asserts that the October 18, 2004 resolution and the November 19,

2004 press release (together referred to as the "intelligent design policy") facially

and as applied violate the Establishment Clause of the First Amendment to the

United States Constitution.  (Compl. at ¶ 50.)  The intelligent design policy,

-4-

although focused on evolution and, thus, the ninth-grade biology curriculum, is a policy decision for the entire district.  The intelligent design policy is not time limited, and defendants have given no indication that they intend to rescind it in the future.  The injury alleged in the complaint stems directly from the intelligent design policy itself, and is not limited to the reading of the Statement to ninth-grade students.

Plaintiffs allege that the purpose and effect of the intelligent design policy are to advance and endorse the specific religious viewpoint and beliefs encompassed by the decision to undermine the scientific theory of evolution and promote an alternative view, "intelligent design," which is predicated on the existence of a supernatural being and which is not science.  (*Id.*)  The complaint alleges that plaintiffs have suffered injury because defendants' intelligent design policy promotes religious views that may not be adhered to by plaintiffs and their children and invades their parental authority to direct and guide a child's religious upbringing.  (Compl. at ¶ 51.)  The complaint also alleges that plaintiffs perceive the district's action as conveying a governmental message that students should subscribe to the religious views reflected in the assertion or argument of "intelligent design."  (*Id.*)

D.     **The Challenged Plaintiffs**

The challenged plaintiffs are parents of children who are in their early years of elementary education or who have completed ninth grade.  Plaintiff Beth Eveland is a parent of a student in the first grade in the DASD and a child of pre-school age.  (Compl. at ¶ 7.)  The complaint alleges that she intends to send her children to the Dover High School.  (*Id.*)  Plaintiff Cynthia Sneath is a parent of a student in the first grade in the DASD and a child of pre-school age.  (*Id.* at ¶ 8.)  The complaint alleges that she intends to send her children to the Dover High School  (*Id.*)  Plaintiff Julie Smith is a parent of a student in the tenth grade at the Dover High School.  (*Id.* at ¶ 9.)   Aralene ("Barrie") D. and Frederick B. Callahan are parents of a student in the tenth grade at the Dover High School.  (*Id.* at ¶ 10.)

## II.     ARGUMENT

### A.     **Plaintiffs Have Alleged Injury Sufficient to Confer Standing to Bring This Lawsuit**

There are three requirements for Article III standing.  *See Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71, 74 (3d Cir. 1998) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal link between the injury and the conduct at issue.  Third, it must be likely that the injury

will be redressed by a favorable decision.  *Id.*  Defendants argue only that the

challenged plaintiffs fail to allege injuries that satisfy the first of these

requirements.

On a motion to dismiss for lack of standing, the district court accepts

all material allegations in the complaint as true and liberally construes the pleading

in favor of the plaintiff.  *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

Moreover, when reviewing a challenge to standing "[a]t the pleading stage, general

factual allegations of injury resulting from the defendant's conduct may suffice, for

on a motion to dismiss, we 'presume that general allegations embrace those

specific facts that are necessary to support the claim.'"  *Lujan*, 504 U.S. at 561

(citation omitted).  Plaintiffs' allegations of injury easily satisfy this standard.

### B.   The Smith and Callahan Claims Are Not Moot

Defendants assert that plaintiffs Julie Smith and Aralene ("Barrie")

and Frederick Callahan, whose minor children are in the tenth grade at the Dover

High School, lack standing because their claims are moot.  As a general matter, it

is well-settled, and not disputed by defendants, that parents "have standing to bring

constitutional challenges to the conditions in their children's schools."  *Sch. Dist.*

*of Abington Township v. Schempp,*  374 U.S. 203, 224 n.9 (1963); *Donovan v.*

*Punxsutawney Area Sch. Bd.,* 336 F.3d 211, 217 n.2 (3d Cir. 2003); *Brody v.*

*Spang*, 957 F.2d 1108, 1114 (3d Cir. 1992).  However, defendants assert that these

three parents' claims are moot because their children have passed the ninth grade, the grade when the challenged biology curriculum is presented.  This argument frames plaintiffs' Establishment Clause claim far too narrowly.

Students subjected to the intelligent design policy in the classroom are affected most directly, but courts have never defined Establishment Clause violations in public schools so narrowly as to limit standing to only those students immediately subjected to the offensive content.  The Supreme Court has held that the very adoption of a policy that violates the Establishment Clause represents a constitutional injury.  *See Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 314 (2000).  In *Santa Fe*, the Supreme Court, addressing an argument similar to defendants' argument here, explained:

> [Defendants'] argument, however, assumes that we are concerned only with the serious constitutional injury that occurs when a student is forced to participate in an [unconstitutional practice] because she [attends school].  But the Constitution also requires that we keep in mind the myriad, subtle ways in which the Establishment Clause values can be eroded, and that we guard against other different, yet equally important, constitutional injuries.  One is the mere passage by the District of a policy that has the purpose and perception of government establishment of religion.

*Id.*

*Santa Fe* is in accord with the general Establishment Clause proposition that "the prohibition against governmental endorsement of religion

-8-

preclude[s] government from conveying or attempting to convey a message that religion or a particular religious belief is *favored* or *preferred,*" *County of Allegheny v. ACLU*, 492 U.S. 573, 593 (1989) (emphasis in original) (citations omitted), and that an endorsement of religion is invalid because "it sends a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community." *Lynch v. Donnelly*, 465 U.S. 668, 688 (1984) (O'Connor, J., concurring).  Children are susceptible to these constitutional injuries from a government policy promoting religion in their school, whether or not they are taking the specific class where the policy is being implemented, and plaintiffs have so alleged.  Plaintiffs' children are exposed to the policy through the students that are or will be taking the class, and through their very awareness that the DASD has favored religious ideas in their school.[2]

Consistent with these standing principles, courts entertaining Establishment Clause challenges to teaching religious content in public school science classes have acknowledged standing by multiple plaintiffs, including

---

[2] If there was any doubt that the DASD was promoting intelligent design beyond the biology classroom, it was removed by the DASD's publication this week of a "Biology Curriculum Update" to the entire district.  Lauri Lebo, *Dover Defends ID Stance: Mailing the Dover Area School Board's letter to area residents will cost $900*, YORK DAILY RECORD, February 15, 2005 at 1 http://ydr.com/story/doverbiology/58769/.  That document reproduces the entire statement read to the students in biology class, and exacerbates its denigration of the scientific theory of evolution and its promotion of the religious concept of intelligent design in its "responses" to "Frequently Asked Questions."  *See* Plaintiffs' Ex. A.

school children of all ages, teachers, religious leaders and public organizations.
*See, e.g., Edwards v. Aguillard*, 482 U.S. 578 (1987); *Selman v. Cobb Co. Sch. Dist.*, Slip Copy, 2005 WL 83829, (N.D. Ga., Jan. 13, 2005); *McLean v. Arkansas Bd. of Educ.,* 529 F. Supp. 1255 (E.D. Ark. 1982).

There is absolutely no merit to the suggestion that the challenged plaintiffs are merely "concerned bystanders" to the controversy arising from defendants' intelligent design Policy. *See* Defs.' Br. at 8 (citing *Valley Forge Christian College v. Americans United for the Separation of Church and State*, 454 U.S. 464, 473 (1982)). They are parents of students attending the very public school where the unconstitutional material is being taught.

Defendants do not cite a single case suggesting that Mrs. Smith and the Callahans do not have standing to challenge the constitutionality of a policy being implemented in their children's school while their children are attending it. Defendants rely on *Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003) for the proposition that "[w]hen a student challenges the constitutionality of a school policy, graduation typically moots her claim for injunctive or declaratory relief." They also cite *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 73 (2d Cir. 2001), which involves standing issues for children who had moved from the school whose policy was being challenged. Neither of these circumstances applies to the challenged plaintiffs' children, who are still attending

-10-

the public school where religious views are being favored and actively endorsed in the academic setting.  Mrs. Smith's and the Callahan's children have not graduated from Dover High School, and will not have by September 2005 when this trial is scheduled to occur,[3] nor have they transferred out of Dover High School.

###### C.    The Eveland and Sneath Claims Are Ripe For Adjudication.

Defendants argue that plaintiffs Eveland and Sneath lack standing because their claims on behalf of children currently in the first grade are not ripe. Defendants do not dispute that both parents allege in the complaint that their children attend elementary schools in the DASD, and that they intend to send their children to the Dover High School.  Nor do defendants suggest that they intend to rescind the policy at some point in time before Ms. Sneath's and Ms. Eveland's children attend the Dover High School.  Nonetheless, they argue that "the great amount of time that exists before these Plaintiffs' children are exposed…to the challenged biology curriculum" deprives them of standing.  (Defs.' Br. at 13.)

Defendants do not suggest that plaintiffs' children must currently be in ninth grade to have standing to bring this lawsuit.  Indeed, by not contesting the standing of the Rehms (oldest child in the eighth grade), Fenimore and Leib

---

[3] When these students do graduate and apply to college or seek employment, they will experience the deleterious effect of the reputational damage to a Dover education resulting from the intelligent design policy.

(children in the seventh and twelfth grades), and Stough (child in the eighth grade), defendants implicitly acknowledge that parents of children not yet in the grade where biology is taught have standing to challenge the intelligent design policy.

However, defendants have apparently concluded that the eight years it will take Ms. Sneath's and Ms. Eveland's children to reach the ninth grade is too remote to satisfy Article III. They cite no cases establishing an eight-year limitation on standing to challenge unconstitutional government conduct. Indeed, the Third Circuit applies a "relaxed ripeness standard" to constitutional claims. *Peachlum v. City of York*, 333 F.3d 429, 434 (3d Cir. 2003). That court has recognized the standing of parents to challenge a graduation policy on behalf of a child in the seventh grade, five (5) years from graduation. *Brody*, 957 F.2d at 1114; *see also Walsh v. Louisiana High Sch. Athletic Ass'n.*, 616 F.2d 152, 157 (5th Cir. 1980) (recognizing standing to bring Free Exercise Clause challenge to policy affecting ninth graders because parents had children enrolled in elementary or junior-high schools that ultimately would matriculate to the high school). Defendants have not explained how they distinguish among plaintiffs two, five, or eight years from direct exposure to the challenged policy for purposes of determining standing.

Lest there be any doubt that plaintiffs have standing to challenge policies that will not directly affect them for eight or more years, consider *Riva v.*

*Massachusetts*, 61 F.3d 1003 (1st Cir. 1995).  In <u>August</u> <u>1994</u>, plaintiff Robert

Kennan (one of several plaintiffs in the action), joined a pending lawsuit against

the Commonwealth of Massachusetts challenging a policy that would begin

reducing his retirement benefits beginning the last day of <u>August</u> <u>2002</u>.  *Riva v.*

*Massachusetts*, 871 F. Supp. 1511, 1514, 1518 (D. Mass. 1994).  The Court of

Appeals reversed the district court's determination that Keenan's claim "lacked the

ripeness necessary to confer justiciability."  *Riva*, 61 F.3d at 1009.

   Unlike *Riva,* the cases defendants rely on do not suggest temporal

rules for determining standing.  *Cole v. Orville Union High Sch. Dist.*, 228 F.3d

1092 (9th Cir. 2000), cited at page 10 of defendants' brief, involved a challenge to a

high school's decision not to allow student speakers to deliver sectarian,

proselytizing speeches at their graduation.  The court denied standing to the

speakers' younger siblings -- future graduates from that school -- because their

"future injury depends upon the highly speculative assumption that a student

seeking to give a sectarian speech or prayer will be chosen to . . . or elected" to

speak when they graduate.  *Id.* at 1100.  In other words, the standing issue in *Cole*

did not turn on how many years away plaintiffs were from being exposed to the

challenged policy, but whether that policy would even need to be applied when

they reached that point.  In this case, however, there is no dispute that the

challenged policy will be in effect and applied to the plaintiffs' children in ninth grade, unless plaintiffs are successful at stopping it in this litigation.

Defendants also rely on *Auerbach v. Bd. of Educ.*, 136 F.3d 104 (2d Cir. 1998) to argue that "because the claims of these Plaintiffs rest on future events that may never occur, their claims are not ripe and should be dismissed." (Defs.' Br. at 14). In *Auerbach*, the plaintiffs were teachers challenging a retirement policy whose claims were dismissed on ripeness grounds because they had not retired at the time the lawsuit was filed, in March 1995. *Id.* at 108-09. Defendants omit from their description of the case the fact that the retirement policy, unlike the retirement policy in *Riva* which had no termination date, "was effective only through June 30, 1996, and as a result, any unretired teacher may be subject to entirely different contractual terms at the time he or she actually retires." *Id.* at 109. If defendants' intelligent design policy included a sunset clause that caused it to expire a year from the time this lawsuit was filed, or any time before plaintiffs' children are scheduled to attend the high school, a ripeness argument based on *Auerbach* might have merit. But that is not the case here. The children of plaintiffs Sneath and Eveland will definitely be subjected to the policy eight years in the future. Accordingly, their claims are ripe and they have standing.

-14-

**D.      Plaintiffs' Supposed "Free Exercise of Religion" Claim
Cannot Be Dismissed Because It Has Not Been Asserted**

According to defendants, plaintiffs assert a claim under the

Pennsylvania Constitution for " 'coerced religious practice' (i.e., free exercise of

religion) . . . ."  (Defs.' Br. at 15.)  Defendants' motion to dismiss this claim must

be denied for the simple reason that plaintiffs' complaint asserts no Free Exercise

claim under either the Pennsylvania or the United States Constitution.  This is

apparent from the face of the complaint, which states, in relevant part:

> . . . defendants, acting under color of law, subjected
> plaintiffs to a deprivation of their rights under the
> Establishment Clause of the First Amendment of the
> Constitution of the United States, as applied to the states
> by the Fourteenth Amendment.

(Compl. at ¶ 49.)  This allegation comes in Count One, entitled "Violation of the

Establishment Clause of the First Amendment of the Constitution of the United

States."  Plaintiffs' complaint alleges in great detail the ways in which the Policy

violates the Establishment Clause, including the following statements that in their

essentials are repeated in Count Two:  its "purpose and effect are to advance and

endorse the specific religious viewpoint and beliefs encompassed by the assertion

or argument of intelligent design" (Compl. at ¶ 50); it "results in an excessive

entanglement of government and religion, coerced religious instruction, and an

endorsement by the state of religion over non-religion and of one religious

viewpoint over others." (Compl. at ¶ 52.)

-15-

Count Two, entitled "Violations of the Constitution of the

Commonwealth of Pennsylvania, Art. 1, Sec. 3; Art. III, Secs. 15 & 29," contains

essentially the same allegations summarized into one paragraph, following the

incorporation of the previous 54 paragraphs:

> [t]he purpose of defendants' intelligent design policy is
> to advance and endorse religion and a religious
> viewpoint. The defendants' intelligent design policy
> succeeds in doing so, resulting in an excessive
> entanglement of government and religion, coerced
> religious practice, and an endorsement by the state of
> religion over non-religion and of one religious viewpoint
> over others.

(Compl. at ¶ 55.)

Just as they have mischaracterized plaintiffs' First Amendment claims

to create a premise for their motion to dismiss the challenged plaintiffs, defendants

have mischaracterized plaintiffs' state constitutional claims. Their motion seizes

upon the phrase "coerced religious practice" and seeks to collapse plaintiffs' state

constitutional claims into a "Free Exercise" claim. Defendants are wrong. The

gravaman of plaintiffs' state constitutional claim is identical to their Establishment

Clause claim. This is clear from the structure of the complaint, Count Two's

incorporation of all that has gone before, and the language of paragraph 55.

Defendants concede that plaintiffs have adequately pleaded claims for

violation of the Establishment Clause of the First Amendment, and by their

argument concede that the Pennsylvania Constitution affords identical guarantees

of religious freedom.  Defendants rely, for example, on *Wiest v. Mt. Lebanon Sch. Dist.*, 320 A.2d 362 (Pa. 1974), in which the Pennsylvania Supreme Court held that the protection available under Pennsylvania's "Declaration of Rights" is coextensive with the First Amendment.  *Id.* at 366.  The Pennsylvania Supreme Court has repeatedly recognized the equivalent of Establishment Clause claims under the Pennsylvania Constitution, *id.*, which are exactly the claims pleaded here by plaintiffs.

Moreover, defendants' legal argument fundamentally misunderstands the relationship between the Establishment Clause and the Free Exercise Clause. Defendants correctly point out that an Establishment Clause violation, unlike a Free Exercise Clause violation, need not involve "governmental compulsion." (*See* Defs.' Br. at 15) (citing *Engel v. Vitale*, 370 U.S. 421, 430 (1962)).  They appear to conclude from this, though, that the reference to "coerced religious practice" in the complaint must implicate a  "free exercise claim."  This conclusion is unwarranted.  While an Establishment Clause violation *need* not involve "governmental compulsion," it certainly *can*.  As the Court observed in *Engel*, "these two clauses may in certain instances overlap," and the Establishment Clause is violated by "laws which establish an official religion whether those laws *operate*

-17-

*directly to coerce* nonobserving individuals or not." *Engel*, 370 U.S. at 430-31 (emphasis added).[4]

Defendants go on to cite cases involving "opt-out" procedures. (*See* Defs.' Br. at 16). Because the Establishment Clause can be violated even when attendance is not mandatory, the "opt-out cases" cited by defendants are simply irrelevant here. *See, e.g., Schempp* at 374 U.S. 224-25 (morning Bible readings in public school are unconstitutional under the Establishment Clause even though "individual students may absent themselves [from the classrooms where readings are heard] upon parental request, for that fact furnishes no defense to a claim . . . under the Establishment Clause"); *Engel*, 370 U.S. at 430 ("[n]either the fact that the prayer may be denominationally neutral nor the fact this its observance on the part of students is voluntary can serve to free it from the limitations of the Establishment Clause, as it might from the Free Exercise Clause").

Defendants' motion to dismiss Count Two is fundamentally mistaken and must be denied.

---

[4] Indeed, in explaining the distinction between the two Clauses, the Court noted that "[t]his is not to say, of course, that laws officially prescribing a particular form of religious worship do not involve coercion of such [nonobserving] individuals. When the power, prestige and financial support of government is placed behind a particular form of religious belief, the indirect coercive pressure upon religious minorities to conform to the prevailing officially approved religion is plain." *Engel*, 370 U.S. at 430-31.

**E.**     **Plaintiffs Have Stated Claims under Art. III, §§ 15 & 29 of**
         **The Pennsylvania Constitution**

Sections 15 and 29 of Article III of the Pennsylvania Constitution are

read *in pari materia* with Art. I, § 3, as "all born of the fixed purpose and intent

that church and state must be kept separate in this commonwealth."  *Hysong v.*

*Gallitzin Borough Sch. Dist.*, 164 Pa. 629, 640-44 (1894) (opinion of the court

below, approved by Supreme Court, *id.* at 654; *see also Wiest*, 320 A.2d at 366.

Following this established principle, plaintiffs' Count Two pleads these sections

conjunctively as the basis for their state constitutional claim.  (Compl. at ¶¶ 55-56.)

Defendants wish the Court to treat these sections disjunctively, and to

focus obsessively on the word "appropriation."  Doing either is inconsistent with

the Pennsylvania Supreme Court's approach:

> . . . this Court has prohibited the use of a public
> schoolroom for Catholic religious instruction after hours,
> *Hysong Gallitzin Borough School District*, 164 Pa. 629,
> 30 A. 482 (1894), and the use of public school property
> for sectarian religious purposes when school was not in
> session, *Bender v. Streabich*, 182 Pa. 251, 37 A. 853
> (1897).

*Wiest*, 320 A.2d at 366.  Both of these cases relied on the predecessor of Art. I, §3

and Art. III, §§ 15 & 29, and neither involved an "appropriation."

Even if this Court were to limit its inquiry to the language of sections

15 and 29, it must conclude that plaintiffs have pleaded a claim.  Defendants'

intelligent design policy flouts the Pennsylvania Constitution by using public-

education funds for the purposes of religious instruction.  Under section 15, "[n]o money raised for the support of the public schools of the Commonwealth shall be appropriated to or used for the support of any sectarian school," nor, under section 29, shall any "appropriation . . . be made . . . to any denominational or sectarian institution, corporation or association . . . ."  Plaintiffs' complaint clearly alleges that defendants' intelligent design policy will require staff time for the presentation of intelligent design to students.  (Comp. at ¶¶ 40, 45.)  Common sense, as well as the required inference at the 12(b)(6) stage, dictates that this use of educational resources represents an expenditure of public funds.[5]

In interpreting Art. III, § 18, the substantively identical precursor to § 29, the Pennsylvania Supreme Court noted that the "history of the development of social and political life in America shows a set purpose to divorce, absolutely, church and state . . . .  The intent of provisions like [Art. III, § 18] is . . . to forbid the state from giving, either directly or indirectly, any recognition to a religious sect or denomination, even in the fields of public education and charity . . . ." *Collins v. Kephart*, 117 A. 440, 441 (Pa. 1921) (finding appropriations to

---

[5] Defendants ignore the proper standard of review at this preliminary stage when they flatly assert, without any reference to plaintiffs' complaint, that there "is no 'out of pocket' loss in this case that can be traced to the challenged portions of DASD's biology curriculum." (*See* Defs.' Br. at 6 n.1).  This is especially ironic since the DASD is mailing out a newsletter this week [at an admitted cost of at least $900] to all its residents in order to defend its position in the debate over intelligent design. *See* Plaintiffs' Ex. A.

religiously affiliated hospitals unconstitutional under Art. III, § 18, even where

some of these institutions admitted patients of all faiths).

Here, taking the allegations of the complaint as true, "intelligent

design is inherently religious," and "[t]he purpose of defendants' intelligent design

policy is to advance and endorse religion and a religious viewpoint." (Compl. at ¶¶

20, 55.)  Were funds of the Commonwealth to flow "directly or indirectly,"

*Collins*, 117 A. at 441, to the implementation of defendant's intelligent design

policy, it would constitute a subsidization and encouragement of their religious

beliefs and an excessive entanglement of the Commonwealth with religion,

impermissible under Art. III, §§ 15 & 29.[6]

---

[6] Defendants cite a case in which state-funded busing of students to sectarian schools was upheld. *Springfield Sch. Dist. v. Dep't of Educ.*, 397 A.2d 1154, 1171 (Pa. 1979). The situation in the instant case, however, is quite distinct from that in *Springfield*, in which the expenditure at issue "merely confer[ed] upon all *children* the right to be transported safely to their school." *Springfield*, 397 A.2d at 1171 (emphasis in original). As such, the appropriation was authorized because "payment for the performance of a *governmental duty* [does] not fall within the constitutional proscriptions [of, e.g., Sec. 29]." *Common Cause of Pennsylvania v. Commonwealth*, 668 A.2d 190, 204 (Pa. Commw. Ct.. 1995) (emphasis in original). Here, defendants' alleged purposes are to promote religion and a particular religious viewpoint. (Comp. at ¶ 55). Accordingly, any monies appropriated and used by the defendants that are spent implementing their intelligent design policy would not be spent in "payment for the performance of a *governmental duty*." *Common Cause*, 668 A.2d at 204.

Defendants also miss the mark in reading *Doremus v. Bd. of Educ.*, 342 U.S. 429 (1952) as if it presented a substantive interpretation of the First Amendment or Art. III, §§ 15 & 29 of the Pennsylvania Constitution. *Doremus* discussed appropriations only as they relate to assessing taxpayer standing, not as they figure in Art, III, §§ 15 & 29.

## III.   CONCLUSION

For the foregoing reasons, the Court should deny defendants' motion to dismiss.

Respectfully submitted,


*/s/ Thomas B. Schmidt, III*
Eric Rothschild (PA 71746)
Stephen G. Harvey (PA 58233)
Joseph M. Farber (PA 84965)
Benjamin M. Mather (PA 89959)
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000
(215) 981-4750 (fax)
*rothschilde@pepperlaw.com*

Thomas B. Schmidt, III (PA 19196)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
P.O. Box 1181
Harrisburg, PA  17108
(717) 255-1155
(717) 238-0575 (fax)
*schmidtt@pepperlaw.com*

Witold J. Walczak (PA 62976)
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213
412-681-7864
412-681-8707 (fax)
*vwalczak@aclupgh.org*

Paula K. Knudsen (PA 87607)
ACLU of Pennsylvania
105 N. Front St., Suite 225
Harrisburg, PA  17101
(717) 236-6827
(717) 236-6895 (fax)
*pknudsen@aclupa.org*

Ayesha Khan (adm. *phv*)
Richard B. Katskee (adm. *phv*)
Alex J. Luchenitser (adm. *phv*)
Americans United for Separation
   of Church and State
518 C St., NE
Washington, DC 20002
(202) 466-3234
(202) 466-2587 (fax)
*akhan@au.org; katskee@au.org;*
*luchenitser@au.org*

Attorneys for Plaintiffs,
TAMMY KITZMILLER; BRYAN AND
CHRISTY REHM; DEBORAH
FENIMORE AND JOEL LIEB; STEVEN
STOUGH; BETH EVELAND; CYNTHIA
SNEATH; JULIE SMITH, AND
ARALENE ("BARRIE") D. AND
FREDERICK B. CALLAHAN

Dated:  February 18, 2005

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to LR 7.8(b) the foregoing Plaintiffs' Brief in

Opposition to Defendants' Motion to Dismiss has a typeface of 14 point Times

New Roman and contains 4,996 words, in compliance with this rule.


*/s/ Thomas B. Schmidt, III*_____
Thomas B. Schmidt, III (PA 19196)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
P.O. Box 1181
Harrisburg, PA  17108
(717) 255-1155
(717) 238-0575 (fax)
Dated:  February 18, 2005          *schmidtt@pepperlaw.com*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 18, 2005, a copy of the foregoing

*Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss* should be served

on the following counsel through the electronic case filing system:

Richard Thompson, Esquire           (Counsel for Defendants)
Robert J. Muise, Esquire
Patrick T. Gillen, Esquire
Thomas More Law Center
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, MI  48106


Ron Turo, Esquire                 (Counsel for Defendants)
Turo Law Offices
29 South Pitt Street
Carlisle, PA 17013



*/s/ Thomas B. Schmidt III*
Thomas B. Schmidt, III (PA 19196)