**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TAMMY KITZMILLER; BRYAN AND CHRISTY REHM; DEBORAH FENIMORE AND JOEL LIEB; STEVEN STOUGH; BETH EVELAND; CYNTHIA SNEATH; JULIE SMITH; AND ARALENE ("BARRIE") D. AND FREDERICK B. CALLAHAN, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | C.V. No. 04-CV-2688 |
| v. | ) ) | Hon. John E. Jones, III |
| DOVER AREA SCHOOL DISTRICT; DOVER AREA SCHOOL DISTRICT BOARD OF DIRECTORS, | ) ) ) ) | |
| Defendants, | ) ) | |
| MICHAEL AND SHEREE HIED, RAYMOND AND CYNTHIA MUMMERT, AND JAMES AND MARTHA CASHMAN, | ) ) ) ) ) | |
| Applicants for Intervention. | ) ) | |

**REPLY MEMORANDUM IN SUPPORT
OF APPLICATION TO INTERVENE AS DEFENDANTS**

In opposing the Applicants' request to intervene, the Plaintiffs make three arguments. Each is flawed. First, they assert there is no First Amendment right to demand that a particular topic be taught in public school. This is true. But, it is not what the Applicants seek to accomplish here. Second, the Plaintiffs argue that the Applicants' First Amendment rights are not implicated because the Plaintiffs do not seek to remove books from the Dover High School library. This is false. The relief the Plaintiffs demand, as well as the testimony of Plaintiff Tammy Kitzmiller, makes it crystal clear that removal of the supplemental textbook *Of Pandas and People* from the school library (and every other place within the school) is precisely what the Plaintiffs want. Third, the Plaintiffs assert that the Applicants' presence will add nothing to this matter but cost and complexity. This, too, is wrong. The Applicants bring a perspective that is currently absent, and their presence will cost the Dover Area taxpayers nothing, regardless of the outcome.

### A. The Applicants Do Not Seek to Require The Teaching of Intelligent Design In The Science Classrooms, And The Applicants Have A Legally Cognizable Interest In These Proceedings

The Plaintiffs open their argument in opposition by rebutting an argument that the Applicants did not make. The Plaintiffs assert that the

2

Applicants "claim a right to require that their children be taught [intelligent design] in public school science class." *See* Plaintiffs' Brief at 6. This is inaccurate. It is precisely *not* what the Applicants are seeking.

The Applicants made it clear in their opening brief that they "do not seek to prevent the teaching of evolution or to require the teaching of some other theory relative to the origin of life." *See* Memorandum of Law in Support of Application for Intervention at 2. Instead, the Applicants want to ensure that their children are not denied access to a critical analysis of evolution simply because the Plaintiffs are unwilling to allow such access for their own children. The Applicants fully understand that the right to establish the curriculum belongs to the School Board. Contrary to what the Plaintiffs would have this Court believe, it is they, not the Applicants, who "seek to dictate the content of public school curricula."

**B.    The Plaintiffs *Do* Seek To Remove *Of Pandas And People* From Dover High School's Library**

In addition to mischaracterizing what the Applicants seek to do by way of intervention, the Plaintiffs also mischaracterize what *they* are seeking in this lawsuit. The forced removal of books from a school library based solely on religious, social or political content is difficult to defend. It is thus little wonder that the Plaintiffs' lawyers are now arguing that this is not what

they are trying to do.  But, the relief the Plaintiffs demand and the testimony of Tammy Kitzmiller tell us otherwise.

The curriculum that the Plaintiffs challenge does two things: (1) it requires that biology teachers read a short statement to 9th grade students before the evolution section of their biology class; and (2) it requires that donated copies of the textbook *Of Pandas and People* remain available to students in the library.  The Plaintiffs' argument that they are merely trying to ensure that the *Pandas* textbook does not enter the science classrooms makes little sense because the challenged policy does not place the books in the science classrooms.  The Plaintiffs seek an injunction against the implementation of the curriculum, and, if granted, this would necessarily involve the removal of the *Pandas* textbooks from where the curriculum requires them to be – which is the library.

Further, as revealed in the complaint, the Plaintiffs' discontent is directed primarily at the *Pandas* textbook itself – not where the textbook is placed.  They do not like the fact that the *Pandas* textbook presents scientific bases for questioning the orthodoxy of Darwinian evolution.  So, they allege that "intelligent design is neither scientific nor a theory in the scientific sense," but rather is "an inherently religious argument or assertion that falls outside the realm of science."  *See* Plaintiffs Complaint at 3.  The Plaintiffs

complain not because the textbook might be placed in the library, but because the School Board "has arranged for Dover High School to be supplied with" the *Pandas* textbook. *Id.*

This attempt to disavow the relief they are seeking also directly contradicts the testimony of Tammy Kitzmiller, who made it clear that she does not want the textbook anywhere in the school:

> BY MR. GILLEN:
>
> Q.    Okay. So in order – What do you want in that regard then? Do you want the book taken out of the library?
>
> A.    I feel the whole lawsuit kind of speaks for itself about how I feel.
>
> Q.    Okay. I understand, but it doesn't. I can ask you questions. I'm just asking you, I mean, with respect to – we're talking about the text Of Pandas and People.
>
> And I'm representing to you that the book is going to be placed in the library. That's the action of the school district. If the book is in the library, do you believe that you are harmed?
>
> BY MR. ROTHSCHILD:        I object to the form, incomplete foundation.
>
> A.    I thought I've already answered that question.
>
> BY MR. GILLEN:
>
> Q.    I don't think that you have. Please answer the question that I've asked.

> A.   Well, I feel I have. *I don't feel it should be anywhere in the school.*

*See* Dep. Tr. Of T. Kitzmiller 100-01 (emphasis added).

The Plaintiffs' argument that they are not seeking to have the *Pandas* book removed from the library simply does not square with the relief they demand in their complaint or the statements of Plaintiff Tammy Kitzmiller.

Even if the Plaintiffs simply sought to have *Pandas* removed from the science classrooms, the Plaintiffs' treatment of the caselaw is wide of the mark. They attempt to distinguish *Island Trees Union Free Sch. Dist. v. Pico*, 457 U.S. 853 (1982), on the basis that the Court in that case addressed only the removal of books from a public school library. This is important, they tell us, because the Plaintiffs here seek that *Pandas* be removed only from a classroom and not the library.

In the context of the present case, this is a distinction without a difference. The rationale for rulings like *Pico* is that, unlike the classroom where a prescribed curriculum is taught, the library is a place of voluntary inquiry and study; thus, the right of school authorities to set the curriculum is not curtailed by forbidding offensive books to be removed from the library. Here, in contrast, *Pandas* is not taught in class, tested, or required as reading. The most that happens is that the teacher tells the students (once at

the beginning of the term) that the book exists and where to find it. Accordingly, regardless of where the book turns out to be located, any student who elects to read it does so in a spirit of voluntary inquiry or study.[1]

Finally, even if the Plaintiffs were to amend their complaint to withdraw their challenge to the portion of the curriculum relating to the placement of the *Pandas* textbook in the library, it would not mean that intervention is unwarranted. The Plaintiffs still seek to prevent teachers or administrators from telling students that the textbook is available for them to explore if they choose. (It is not hard to imagine the protests that would ensue if any other book were singled out in this way.) Permitting a book to remain in the library but forbidding teachers from telling students it is there infringes on the right to access information and ideas in an academic setting.

### C.    The Applicants' Bring A Perspective to this Lawsuit That Is Currently Lacking and Their Presence will Not Increase Costs to Dover Taxpayers.

---

[1] *Brody v. Spang*, 957 F.2d 1108 (3d Cir. 1992), which was cited by the Plaintiffs, is distinguishable. There, the putative intervenors were students who wished to engage in religious speech at a public high school graduation, but could only do so if the school board's policy were upheld. If it was struck down on Establishment Clause grounds, then those interveners would, of course, have had no cognizable interest in the perpetuation of an unconstitutional policy. Had they spoken, the would have become affirmative constitutional actors by virtue of state imprimatur on their religious message, and possibly in violation of an injunction as well. Here, in contrast, applicants do not wish to engage in any conduct which itself could violate the Establishment Clause, but would be mere passive consumers of information made available to them on a voluntary basis. Accordingly, the Applicants can very well have an independent interest in this litigation, an interest which neither rises nor falls in lockstep with the Defendants' policy.

After arguing vigorously that the Applicants do not have a legal interest at stake, the Plaintiffs go on to assert that the School Board will adequately represent this non-interest. The Plaintiffs also argue that the Applicants will bring nothing new or different to the litigation, only complexity and cost. These arguments are misplaced and flawed.

### 1.   The Applicants' Perspective

Intervention is a valuable procedural tool for bringing all of the relevant issues and points of view into the light of day, especially in public impact litigation that, as here, nominally involves a narrow adjudication of rights between the original parties but can have major adverse spillover effects on others. *Kleisser v. United States Forest Serv.*, 157 F.3d 964, 971 (3d Cir. 1998). Indeed, the Supreme Court has recognized that "an intervenor may sometimes raise an argument that brings into question not merely the appropriateness of the remedy but the plaintiff's very entitlement to relief." *Independent Fed. of Flight Attendants v. Zipes*, 491 U.S. 754 (1989). This is one of those cases. In addition to the fact that the Applicants have a significant legal interest at stake, they also bring a perspective that is currently absent.

The Defendants will undoubtedly seek to satisfy the *Lemon* test to defend the constitutionality of Dover's policy under the Establishment

Clause.  To accomplish that, they must demonstrate that the policy at issue has a secular purpose, neither advances nor inhibits any specific religious viewpoint, and does not excessively entangle government with religion.  *See* Complaint ¶¶ 49-54.  As the deposition of William Buckingham on January 3, 2005 amply demonstrates, much of the development of that evidence will center on the Defendants' motives in establishing the curriculum.  For example, in attempting to prove their claims, the Plaintiffs are already seeking to paint the members of the School Board as a group of religious zealots bent on establishing Christian Fundamentalism in the classroom.[2]

The Applicants, on the other hand, will focus more intensely on the implications of the Defendants' policy, as opposed to both its prior practice and the likely changes should the Plaintiffs prevail here, on the Applicants' right-to-hear interests under the *speech* clause.  They will develop their evidence and case theory accordingly.  Any overlap between that evidence and argument, on the one hand, and the *Lemon*-bound case the Defendants will put on, on the other, is likely to be minor at best.  Thus, regardless of the

---

[2] *See* Dep. Tr. Of W. Buckingham 8 ("Q. What church do you attend?"); *id.* at 10 ("Q. That pin you're wearing, the cross, the crucifix, with the flag on it, that is a representation of your personal beliefs?"); *id.* at 11 (Q. Is the theory of evolution offensive to your personal religious beliefs?"); *id.* at 12 ("Q. Do you believe in a literal reading of the book of Genesis?")

apparent alignment of their interests with the School Board, the Applicants bring a very different, and very relevant, point of view to this case.

The Applicants have established that the Plaintiffs want to censor any information on the origins of life other than Darwinian Evolution. This will inevitably result in denying fundamental educational benefits to the Applicants, who wish to have access to <u>all</u> information on the origins of life and scientific theories on that subject. This is one of the most fundamental questions of human existence, and the Applicants' desire to be more fully informed brings a unique perspective to this case, different in both degree and kind from the administrative concerns of a school board.

It is not surprising that the Plaintiffs do not want parents who disagree with the Plaintiffs' attempt to establish a pedagogical orthodoxy to have a voice in this litigation. It is plainly wrong to say that parents who desire that their children be free of censorship and have full access to relevant information in the classroom have nothing new or different to add to this case.

### 2.    The Applicants Will Not Increase the Costs to Dover Area Taxpayers, Regardless of the Outcome.

The Plaintiffs also argue that the Applicants' presence "would add nothing to this litigation but more lawyers" and that the "end result would be a substantial increase in the amount of any fee award to the plaintiffs if they

prevail." *See* Plaintiffs' Brief at 16. It is hard to take the Plaintiffs' "too many lawyers" argument seriously when the very pleading in which it was advanced was signed by no fewer than *ten* lawyers on the Plaintiffs' side. That irony aside, the Plaintiffs' point – *i.e.*, that the Applicants' participation will increase the fee award to the Plaintiffs and increase the expense to Dover taxpayers – is simply wrong.

The Supreme Court has held unequivocally that innocent intervenors are not liable to prevailing plaintiffs, and a non-prevailing state actor defendant is not liable for fees incurred by the plaintiff in addressing the intervenor's claims. *See Zipes*, 491 U.S. 754 (1989). Thus, if the Plaintiffs are sincere when they tell this Court they have "no interest in increasing the amount of any fee award beyond that which is necessary for them to prevail," they needn't worry. Intervention will have no effect on the Plaintiffs' fee award should they prevail.

## CONCLUSION

The Applicants seek to intervene in this lawsuit because the Plaintiffs – in their zeal to shield their own children from a critical analysis of evolution – are attempting to shield all children from such a critical analysis. Just because the Plaintiffs brought this lawsuit does not mean that the Plaintiffs' viewpoint is the only one that is relevant or the only one that

should be considered by this Court in evaluating the curriculum at issue.  For

the reasons set forth above, and for the reasons set forth in the initial

application for intervention, this court should grant the pending application.


February 18, 2005                    Respectfully submitted,

                                     DRINKER BIDDLE & REATH LLP

                     By:     _____/s/_____
                                     John B. Dempsey (PA 88017)
                                     Stephen A. Serfass  (PA 79376)
                                     One Logan Square
                                     18th and Cherry Streets
                                     Philadelphia, PA 19103-6996
                                     (215)988-2700
                                     (215)988-2757 (fax)
                                     john.dempsey@dbr.com

                                     *Of Counsel*

                                     DRINKER BIDDLE & REATH LLP
                                     Alfred W. Putnam, Jr. (PA 28621)
                                     Jason P. Gosselin (PA 76382)
                                     One Logan Square
                                     18th and Cherry Streets
                                     Philadelphia, PA 19103-6996

                                     THE RUTHERFORD INSTITUTE
                                     John W. Whitehead
                                     Douglas McKusick
                                     P.O. Box 7482
                                     Charlottesville, VA 22906
                                     (434)978-3888

*For Michael and Sheree Hied, Raymond and Cynthia Mummert, and James and Martha Cashman*

CERTIFICATE OF SERVICE


I hereby certify that on February 18, 2005, a copy of the foregoing Reply Memorandum

in Support of Application to Intervene as Defendants should be served on the following counsel

automatically through the electronic case filing system:

Richard Thompson, Esquire
Robert J. Muise, Esquire
Patrick T. Gillen, Esquire                    (Counsel for Defendants)
Thomas more Law Center
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, MI 48106


Eric Rothschild (PA 71746)
Stephen G. Harvey (PA 58233)
Joseph M. Farber (PA 84965)
Benjamin M. Mather (PA 89959)
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
215-981-4000
215-981-4750 (fax)
rothschilde@pepperlaw.com

Thomas B. Schmidt, III (PA 19196)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
P.O. Box 1181
Harrisburg, PA 17108
717-255-1155
717-238-0575 (fax)
schmidt@pepperlaw.com

Withold J. Walczak (PA 62976)
ACLU of Pennsylvania
313 Atwood Street

Pittsburgh, PA 15213
412-681-7864
412-681-8707 (fax)
vwalczak@aclupgh.org

Paula K. Knudsen (PA (87607)
ACLU of Pennsylvania
105 N. Front St., Suite 225
Harrisburg, PA 17101
717-236-6827
717-236-6895 (fax)
pknudsen@aclupa.org

Ayesha Khan (adm. phv)
Richard B. Katskee (adm. phv)
Alex J. Lulchenitser (adm. phv)
Americans United for Separation
    Of Church and State
518 C. St., NE
Washington, DC 20002
(202) 466-3234
(202) 466-2587 (fax)
akhan@au.org; katskee@au.org;
luchenitser@au.org

Attorneys for plaintiffs,
Tammy Kitzmiller; Bryan and
Christy Rehm; Deborah
Fenimore and Joel Lieb; Steven
Stough; Beth Eveland; Cynthia
Sneath; Julie Smith, and
Aralene ("Barrie") D. and
Frederick B. Callahan


                                        /s/
                           _____
                           Stephen A. Serfass (PA 79376)