# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMMY KITZMILLER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 04-CV-2688 |
| | ) | (Hon. Judge Jones) |
| v. | ) | |
| | ) | |
| DOVER AREA SCHOOL DISTRICT and | ) | **DEFENDANTS' REPLY** |
| DOVER AREA SCHOOL DISTRICT | ) | **IN SUPPORT OF MOTION** |
| BOARD OF DIRECTORS, | ) | **TO DISMISS** |
| | ) | |
| Defendants. | ) | |
| | ) | |

In a transparent effort to avoid the straightforward result of Defendants' motion to dismiss certain Plaintiffs and claims, Plaintiffs seek to recast their Complaint and advance an Establishment Clause claim that is so broad and amorphous that it plainly demonstrates the weakness of Plaintiffs' lawsuit and highlights the standing problems raised in Defendants' motion.[1]

Although Plaintiffs' Complaint is plainly a challenge to a small portion of Defendants' ninth-grade biology curriculum—as any reasonable review of the allegations in their Complaint reveals—Plaintiffs now want to create this ubiquitous, vaporlike "intelligent design *policy*" that floats through the air of Dover High School and beyond like some sort of flu virus, causing all students, including kindergarten students who are more than eight-years away from attending the school, to be "exposed" to it "through the students that are or will be taking the [ninth-grade biology class]." (*See* Pls.' Br. in Opp'n at 9). And it is the very "awareness" of its existence that is causing some untold harm for certain Plaintiffs. (*See* Pls.' Br. in Opp'n at 9).[2]

---

[1] Plaintiffs seek to remedy their defects by improperly asking this Court to consider matters outside of the pleadings. (*See* Pls.' Br. in Opp'n at 9, n.2). This Court should reject this effort to "amend through briefing." Additionally, the documents attached by Plaintiffs are not properly authenticated, contain inadmissible hearsay, and lack any foundation for admissibility. Therefore, Defendants further object on evidentiary grounds to any consideration of these documents by this Court.

[2] In their brief, Plaintiffs are also advancing, for the first time, a novel and highly speculative (i.e., improbable) claim for "reputational damage" based on an

Moreover, as if preventing students from receiving ideas and information and denying them access to books were not enough censorship for these Plaintiffs, they now want to prevent parents from receiving information regarding the very lawsuit that Plaintiffs have forced upon the school district, alleging that this too constitutes the dreaded "intelligent design *policy*."[3] Perhaps retaining lawyers to defend against Plaintiffs' lawsuit[4] or even Mr. Buckingham's lapel pin, which was the focus of Plaintiffs' attorney during Mr. Buckingham's deposition,[5] are also part of this *policy*. Indeed, there is no logical end to what Plaintiffs are now arguing.

Nevertheless, according to the Complaint, which is the controlling document for purposes of this motion, the challenged "policy" consists of the following: the minor change to the <u>ninth-grade biology curriculum</u>, adopted by resolution on October 18, 2004 (Compl. at ¶¶ 33, 43); the one-minute statement read to students of the <u>ninth-grade biology class</u> (Compl. at ¶ 40); the placement of the book *Of*

---

irrational fear that their children will be rejected by certain colleges or denied certain employment because they attended a school where some students were made aware of intelligent design or read a book about it in the school's library. (*See* Pls.' Opp'n Br. at 11, n.3).

[3] *See* Pls.' Opp'n Br. at 9, n.2 (arguing that the district newsletter sent to parents is also part of this mythical "intelligent design *policy*.").

[4] Plaintiffs' attorneys have questioned DASD members in deposition about the representation of the Thomas More Law Center, and the Law Center's mission as a public interest law firm.

[5] *See* Reply Mem. in Supp. of Appl. to Intervene as Defs. at 9, n.2.

2

*Pandas and People*, a reference book for the <u>ninth-grade biology class</u>, in the school (Compl. at ¶ 43 & "Prayer for Relief" at ¶ c); <u>and</u> the "policy" that unequivocally states that "no teacher will teach Intelligent design, Creationism, or present his/her or the Board's religious beliefs" and that students will only be taught and tested on Darwin's theory of evolution (Compl. at ¶ 40).[6] This *policy*, according to the <u>factual allegations</u> of the Complaint,[7] which this Court must assume are true for purposes of this motion, explicitly <u>excludes</u> any religion or religious beliefs from being conveyed in the school by school officials. (*See* Compl. at ¶ 40). Plaintiffs' Complaint is therefore self-defeating, and it contradicts the unsupported legal conclusions that Plaintiffs now assert in their brief.[8]

---

[6] If there is any doubt as to what constitutes the "*policy*" at issue, this Court need only refer to paragraph 50 of the Complaint, which specifically identifies the October 18, 2004, curriculum change and the November 19, 2004, "press release" as the alleged "*policy*." (Compl. at ¶ 50).

[7] For purposes of Defendants' motion, this Court should only consider the properly-alleged material facts and not the broad and sweeping legal conclusions advanced by Plaintiffs in their brief. *See, e.g.,* Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1357 (1990) (noting that courts, when examining motions to dismiss, have rejected "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations").

[8] DASD's newsletter further shows that it is <u>not</u> endorsing religion.

Fabricating a mythical "intelligent design *policy*" may help to sell local newspapers, but it does not suffice to confer standing in this case.[9]

## ARGUMENT

### I.   Certain Plaintiffs Lack Standing.

The "injury" that Plaintiffs allege in their brief is exactly the sort of "harm" that the courts have consistently held does <u>not</u> confer standing. A plaintiff cannot show a cognizable injury in fact by simply identifying some "psychological consequence presumably produced by observation of conduct with which one disagrees." *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982); *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975) (noting that a "'generalized grievance' shared in substantially equal measure by all or a large class of citizens . . . does not warrant

---

[9] Plaintiffs' reliance on *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000) is misplaced. The "District" "policy" referred to by the Supreme Court in the quoted language in Plaintiffs' brief (*see* Pls.' Opp'n Br. at 8) was a policy of permitting student-led, student-initiated *prayer*—a "religious practice"—before high school football games. The *Santa Fe* policy directly affected the entire student body; it was not limited to any particular grade or class, such as the ninth-grade biology curriculum at issue here. Furthermore, *County of Allegheny v. ACLU*, 492 U.S. 573 (1989) and *Lynch v. Donnelly*, 465 U.S. 668 (1984), which Plaintiffs cite for support of their general grievance argument (*see* Pls.' Opp'n Br. at 8-9), are religious display cases, which actually lend support to Defendants' arguments. Even in religious display cases a plaintiff must show, at a minimum, some direct contact with the challenged display; a plaintiff cannot rely on some general disagreement with the conduct in question. *See, e.g. ACLU-NJ v. Township of Wall*, 246 F.3d 258, 264-66 (3rd Cir. 2001) (holding that plaintiffs and ACLU lacked standing to challenge religious display because they lacked sufficient direct, personal contact with the challenged display).

4

exercise of jurisdiction"). Emotional involvement in a lawsuit is not sufficient to meet the case or controversy requirement. *See Ashcroft v. Mattis*, 431 U.S. 171 (1977). Additionally, the fact "[t]hat the plaintiffs may be offended by the defendants' conduct is not enough to confer standing." *Harris v. City of Zion*, 927 F.2d 1401, 1405 (7th Cir. 1991).

Without question, each Plaintiff must assert his or her own rights and not rest his or her claim to relief on the legal rights or interests of other parties. "[T]o have standing, the plaintiff must have suffered a 'particularized' injury, which means that 'the injury must affect the plaintiff in a personal and individual way.'" *Raines v. Byrd*, 521 U.S. 811, 819 (1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (emphasis added)). "As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction." *Warth*, 422 U.S. at 498 (citation omitted) (emphasis added).

These basic principles of standing apply with equal force in the public school context. As many courts, including the Third Circuit, have noted, "when a student challenges the constitutionality of a school policy, graduation typically moots her claim for injunctive or declaratory relief." *Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.2d 211, 216 (3rd Cir. 2003) (challenging denial of student's right to convene a Bible club). This is so because the student no longer has a

"particularized injury" as a result of the challenged policy. This is typically the case in those actions challenging prayer at public school graduations or at high school football games, as in the *Santa Fe* case, or when challenging school policies that affect the entire student body, regardless of the grade, such as the policy at issue in *Donovan*.

In the present case, Plaintiff Smith and the Callahan Plaintiffs, who will never have a child in the ninth-grade biology class in which the challenged curriculum is implemented, are in exactly the same position as those students who challenge prayer at high school graduations, but have graduated from the school, and therefore lack standing. Like the graduated students, these Plaintiffs cannot make the requisite showing of a "particularized injury" that affects them "in a personal and individual way."

In *Walsh v. Louisiana High Sch. Athletic Ass'n*, 616 F.2d 152 (5th Cir. 1980), for example, the plaintiffs advanced a free exercise of religion challenge to a high school's transfer policy that affected only ninth graders. During the pendency of that case, all of the original student plaintiffs completed the ninth grade and were no longer subject to the challenged policy, thereby potentially mooting the claim. However, the plaintiffs informed the court that several of the plaintiff parents had other children, specifically including a child currently enrolled in the ninth grade, and therefore the challenge to this ninth-grade policy was still alive. *Id.* at 157.

Thus, in the *Walsh* case, the mere fact that the student plaintiffs were in the school and had not yet graduated was <u>not</u> sufficient to confer standing to challenge the subject policy, which applied only to the students in the ninth grade. Similarly here, in order to challenge the "policy" at issue, each Plaintiff must show that his or her child will be subject to the challenged curriculum, which applies only to the ninth-grade biology class. Plaintiff Smith and the Callahan Plaintiffs, who only have children in the tenth grade, cannot show the "particularized injury" necessary to confer standing in this case and, therefore, must be dismissed.[10]

---

[10] Plaintiffs do not deny that they have <u>not</u> alleged sufficient facts to confer taxpayer standing in this case; therefore, they only have standing by showing a direct, personal injury that is both immediate and real, which several Plaintiffs cannot do. In a footnote, Plaintiffs state, "Defendants ignore the proper standard of review at this preliminary stage when they flatly assert, without any reference to plaintiffs' complaint, that there 'is no 'out of pocket' loss in this case that can be traced to the challenged portions of DASD's biology curriculum.'" (Pls.' Opp'n Br. at 20, n. 5). Defendants did not make "reference to plaintiffs' complaint," because the Complaint does not allege such facts. It should also be noted that Plaintiffs have failed to direct this Court to the existence of such allegations. Moreover, attaching a copy of a newspaper article, which Defendants object to as previously noted, does not cure this obvious defect in their pleadings. In *Doremus v. Board of Educ.*, 342 U.S. 429, 433 (1952), a case in which the plaintiffs challenged Bible reading in the public schools, the Court held that the plaintiffs lacked standing as taxpayers because there was "no allegation that [the Bible reading] is supported by any separate tax or paid for from any particular appropriation or that it adds any sum whatever to the cost of conducting the school. No information is given as to what kind of taxes are paid by [plaintiffs] and there is no averment that the Bible reading increases any tax they do pay or that as taxpayers they are, will, or possibly can be out of pocket because of it." Moreover, as noted by the Second Circuit in *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49 (2nd Cir. 2001), a case in which parents and guardians of school children brought an action against school officials for alleged violations of the First Amendment, the

In *Grove v. Mead School District*, 753 F.2d 1528 (9th Cir. 1985), the plaintiffs, like the Plaintiffs in this case, sought to exclude a book from a sophomore English literature curriculum, arguing that this book violated the religion clauses of the First Amendment. The court held that the plaintiffs "have standing to challenge alleged violations of the establishment clause of the First Amendment <u>if</u> they are <u>directly affected by use of *The Learning Tree* in the English curriculum</u>." *Id.* at 1532 (emphasis added); *see also Fleischfresser v. Directors of Sch. Dist. 200*, 15 F.3d 680, 683 (7th Cir. 1994) (finding that parents of children enrolled in grades K through Five had standing to challenge the use of a certain reader series for these grades under the Establishment Clause because these plaintiffs were "<u>directly affected</u> by the government action, here, <u>the use of the series</u>") (emphasis added); *School Dist. of Abington Township v. Schempp*, 374 U.S. 203, 225 n.9 (1963) ("It goes without saying that the laws and practices involved here can be challenged only by persons having standing to complain. . . . The parties here are school children and their parents, who are <u>directly affected</u> by the laws and practices against which their complaints are directed.") (emphasis

---

court held that the plaintiffs lacked standing as taxpayers and noted that "funding the general budget for general school district expenses" is not a sufficient finding to establish taxpayer standing. *Id.* at 74. Rather, what is required is "a showing of a measurable appropriation or loss of revenue attributable to the challenged activities at those schools." *Id.* Moreover, a municipal taxpayer does not have standing "to complain of school activities within the municipality simply because they are conducted 'by its paid employees.'" *Id.*

added); *Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402, 408 (5th Cir. 1995) (holding that the plaintiffs, a student who first enrolled in the school district in the seventh grade, and her father, lacked standing to challenge a school district policy of permitting the distribution of Bibles to students in the fifth grade because the student was never a member of any class to which the Bibles were distributed, even though she remained in the school district, and her father lacked standing as a taxpayer).

In addition to showing a "particularized injury," each Plaintiff "must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (citation omitted) (emphasis added). This temporal requirement—the requirement of some direct injury that is both "real and immediate"—is a fundamental requirement of standing.

Another aspect of justiciability is ripeness, which also considers the timing of an action. The test for ripeness consists of two parts: (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 (3rd Cir. 1998) (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967)). The Plaintiffs carry the burden to meet these elements. *Philadelphia Fed'n of*

*Teachers*, 150 F.3d at 323; *see also Lujan*, 504 U.S. at 561 (noting that it is the party invoking federal jurisdiction who bears the burden for establishing standing).

Most significant with regard to Plaintiffs Sneath and Eveland is the "hardship prong." This "prong focuses on the hardship that may be entailed in denying judicial review, and the determination whether any such hardship is cognizable turns on whether the challenged action creates a 'direct and immediate' dilemma for the parties, such that the lack of pre-enforcement review will put the plaintiffs to costly choices." *Philadelphia Fed'n of Teachers*, 150 F.3d at 323.

In this case, there is no "direct and immediate" dilemma for Plaintiffs Eveland and Sneath, such that their dismissal from this action will put them "to costly choices." These Plaintiffs' children are at least eight years from even enrolling in the ninth grade at Dover High School. There is hardly any immediacy to their claims.

In their brief, Plaintiffs boldly state, "Lest there be any doubt that [these] plaintiffs have standing to challenge policies that will not directly affect them for eight or more years, consider *Riva v. Massachusetts*, 61 F.3d 1003 (1st Cir. 1995)." (Pls.' Opp'n Br. at 12-13). Defendants suggest that this Court reject this case, as did the Third Circuit in *Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 (3rd Cir. 1998). In *Philadelphia Fed'n of Teachers v. Ridge*, the court reviewed *Riva* and distinguished it in a way that is relevant to the present case. As

noted by the Third Circuit, in *Riva* the court found that "the hardship prong was satisfied because the uncertainty about the validity of the statute made it impossible for [the plaintiff], then age fifty-eight, 'prudently to arrange his fiscal affairs' in anticipation of his retirement years," *id.* at 326 (citing *Riva*, 61 F.3d at 1012), thus finding a "direct and immediate" hardship to the plaintiff. The Third Circuit rejected this finding, stating that it was "<u>not convinced</u> . . . that the finding of hardship in *Riva* is supportable." *Philadelphia Fed'n of Teachers*, 150 F.3d at 326. (emphasis added).

In the present case, any "hardship" to Plaintiffs Eveland and Sneath, whose children are at least eight years away from even enrolling in the ninth grade at Dover High School, like the alleged hardship to the plaintiff in *Philadelphia Fed'n of Teachers*, "is one step removed even from *Riva*, and that step is one that [this Court should] decline to take." *See id.*

Also, these Plaintiffs will not suffer sufficient hardship simply because they may have to face returning to court in the speculative event that they actually do encounter the challenged curriculum in the future.[11] *See Ohio Forestry Ass'n, Inc.*

---

[11] In their opposition to the motion to intervene, Plaintiffs claim to be concerned with extra costs and burdens that might be associated with adding parties to this action (*see* Pls.' Opp'n to Mot. to Intervene at 16), yet they seem to have little to no concern with the additional cost in time and resources associated with keeping in this case Plaintiffs Eveland and Sneath, whose children are nearly a decade away from taking the ninth-grade biology class, and Plaintiff Smith and the Callahan Plaintiffs, whose children will never take the ninth-grade biology class.

11

*v. Sierra Club,* 523 U.S. 726, 735 (1998) ("[T]he Court has not considered this kind of litigation cost saving sufficient by itself to justify review in a case that would otherwise be unripe.").

## II. Plaintiffs' Claims Are Redundant.

As Plaintiffs now admit, "The gravaman (sic) of plaintiffs' state constitutional claims is <u>identical</u> to their Establishment Clause claim." (Pls.' Br. in Opp'n at 16) (emphasis added). They further admit that their "complaint asserts no Free Exercise claim under either the Pennsylvania or United States Constitution." (Pls.' Br. in Opp'n at 15). Therefore, Count Two, which alleges state constitutional claims, adds nothing to this lawsuit that is not already encompassed in the Establishment Clause claim of Count One. *See Wiest v. Mt. Lebanon Sch. Dist.,* 457 Pa. 166, 174, 320 A.2d 362, 366 (1974) ("The protection of rights and freedoms secured by [Article I, § 3] of our Constitution, however, does not transcend the protection of the First Amendment of the United States Constitution."); *Springfield Sch. Dist. v. Department of Ed.,* 483 Pa. 539, 571, 397 A.2d 1154, 1170-71 (1979) (stating that the limitations contained in Art. I, § 3 and Art. III, §§ 15 & 29 "do not extend beyond those announced by the United States Supreme Court in interpreting the first amendment to the federal constitution").

---

These Plaintiffs add nothing to this case, except additional discovery requests, depositions, time at trial, scheduling concerns, etc. Despite their claims to the contrary, it is evident that Plaintiffs have no concern about needlessly increasing the costs of this litigation.

And, as noted previously, Plaintiffs who lack standing because they cannot allege any direct or immediate injury on account of the ninth-grade biology curriculum likewise have no basis for asserting taxpayer standing in this case because it is now clear that the general term "appropriation" that Plaintiffs are referring to in Count Two is <u>not</u> "a designation of money raised by taxation to be withdrawn from the public treasury for a specifically designated purpose." *See Commonwealth. v. Perkins*, 342 Pa. 529, 532, 21 A.2d 45, 48 (1941) (defining "appropriation" for constitutional purposes); *see Doremus*, 342 U.S. at 433 (finding that plaintiffs failed to establish a direct monetary injury to challenge Bible reading in public schools); *ACLU-NJ v. Township of Wall*, 246 F.3d 258, 264 (3rd Cir. 2001) (holding that plaintiffs lacked standing as municipal taxpayers by failing to carry their burden of proving an expenditure of revenues that would make their suit "a good-faith pocketbook action"); *see also* note 10, *supra*. Rather, it is merely one conclusory allegation in a list of many that adds nothing more than what was previously alleged in Count One.

Thus, in the final analysis, Plaintiffs have alleged redundant claims that amount to a single allegation under the Establishment Clause.[12] Plaintiffs' admissions will certainly assist the parties and this Court by focusing the litigation on what is relevant.

---

[12] This Court has the authority to dismiss claims that are redundant. *See, e.g.,* Fed. R. Civ. P. 12(f).

## CONCLUSION

This Court should grant Defendants' motion to dismiss.

Respectfully submitted this 25th day of February, 2005.

By: _____
Robert J. Muise (MI P62849)*
Richard Thompson (MI P21410)*
Patrick T. Gillen (MI P47456)*
THOMAS MORE LAW CENTER
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, Michigan 48106
(734) 827-2001
Fax: (734) 930-7160

* Admitted *pro hac vice*

Ron Turo
TURO LAW OFFICES
29 South Pitt Street
Carlisle, Pennsylvania 177013
(717) 245-9688

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on Friday, February 25, 2005, a true and correct copy of **Defendants' Reply in Support of Motion To Dismiss** was served upon the following counsel of record by placing said documents in an envelope and delivering the same by U.S. Mail, with postage prepaid, and/or through the electronic case filing system:

Eric Rothschild
Stephen G. Harvey
Joseph M. Farber
Benjamin M. Mather
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103

Thomas B. Schmidt, III
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
PO Box 1181
Harrisburg, PA 17108

Witold J. Walczak
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213

Paula K. Knudsen
ACLU of Pennsylvania
105 N. Front Street
Suite 225
Harrisburg, PA 17101

Richard B. Katskee
Ayesha Khan
Alex J. Luchenitser
Americans United for Separation
  of Church and State
518 C Street, NE
Washington, DC 20002

Ron Turo
Turo Law Offices
29 South Pitt Street
Carlisle, PA 17013

_____
Robert J. Muise*
Admitted *pro hac vice*