# EXHIBT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMMY KITZMILLER, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.  04-CV-2688 |
| | ) | (M.D. Pa.) |
| v. | ) | Hon. John E. Jones III |
| | ) | |
| DOVER AREA SCHOOL DISTRICT, et al., | ) | **Declaration Of** |
| | ) | **William A. Dembski** |
| Defendants. | ) | |

I, Willam A. Dembski, declare as follows:

1. I am an adult of sound mind and body who makes this declaration based upon personal knowledge and I can testify to the facts set forth herein.

2. I have agreed to serve as an expert in this case for the Defendants (collectively "DASD") for the purpose of supporting their decision to make students aware of Intelligent Design Theory ("IDT") in connection with the classroom instruction that students at DASD receive in biology. A copy of the expert report I have provided is attached hereto as Exhibit A.

3. It is my understanding that Plaintiffs' counsel seeks access to a draft text that I am working on for the Foundation For Thought And Ethics ("FTE") entitled, *The Design Of Life*. A copy of a letter requesting production of the draft is attached hereto as Exhibit B.

4. I also understand that Plaintiffs' counsel have served subpoenas on Jon Buell of the FTE, requiring production of the draft entitled, *The Design Of Life*, as well as documents reflecting communications relating to that draft; in addition, Plaintiffs have served a subpoena requiring Buell to appear and testify so he can be questioned about these matters. A copy of the subpoenas served upon Jon Buell are attached hereto as Exhibit C.

5. I object to the Plaintiffs' effort to secure a copy of these documents, examine the draft for *The Design Of Life*, and pry into the drafting process,

my efforts to promote IDT, as well as my association with, and the affairs of, the FTE. I have asked counsel for the Defendants to seek a protective order barring this discovery. Overall, my objections are based upon the following factors: (1) the draft text has nothing to do with my expert opinion; (2) the draft text is vastly different from *Of Pandas* in terms of audience and goals such that it has a very weak relationship with the text actually at issue in this case; (3) I have a fiduciary duty to the FTE to preserve the confidentiality of the text and refrain from any action that damages the commercial and educational potential of *The Design of Life*: and (4) I desire to protect my ability to engage in speech and association for the purpose of presenting to the public IDT free from interrogation about the persons who collaborate with me in this area. I believe that if the Plaintiffs are allowed to pursue this discovery there is a real risk of substantial and irreparable harm to my ability to engage in these activities. Indeed, I feel so strongly about these matters that I would rather not be involved in this lawsuit as an expert than subject my pending work and my associations to scrutiny. But in saying this I realize that the Plaintiffs' discovery threatens my ability to promote IDT, an idea that I believe is vitally important to public education. As a result, I have asked counsel for

the Defendants to seek a protective order barring this discovery so that I can assist them in this case without being forced to expose my work-in-progress and my associations to scrutiny. I explain each of my objections further below.

6. As an initial matter, I object to the Plaintiffs' effort to examine the draft of *The Design Of Life*, because that draft text has nothing to do with my opinion in this case. It is true, as indicated in the letter from Plaintiffs' counsel, that I referenced the draft-in-progress of the text *The Design Of Life*, at page ten of my expert report. See Exhibit A, p 10. But a review of my reference demonstrates that it was only a prefatory comment designed to demonstrate my familiarity with the text placed in the library by the Defendants, *i.e.*, *Of Pandas and People*. My expert opinion is focused on the merits of the text *Of Pandas*. It is obvious that my defense of the Defendants' decision to direct students to *Of Pandas* as an example of IDT is not based on a book that does not even exist at present. I am willing to stipulate to that fact and so are the Defendants.

7. Moreover the draft text, *The Design of Life*, is only a successor to *Of Pandas* in the loosest sense. *The Design of Life* is geared to a whole different student market, *i.e.*, undergraduate college instruction and

Advanced Placement high school biology (again, essentially college-level instruction); in contrast, *Of Pandas* is targeted to students in the ninth and tenth grades generally. The FTE also intends to market *The Design of Life*, to the public at large so the public can acquaint itself with IDT as opposed to the caricature of the theory so frequently portrayed in the media–the FTE has never made this outreach effort with *Of Pandas*, which was designed to be a supplemental biology text for high school students. Thus, while *The Design Of Life* is a logical successor to *Of Pandas* in that *The Design of Life* builds on ideas developed in *Of Pandas* and incorporates some text from the older book, it is very much a new creation–at present I estimate that about two-thirds of the current draft of *The Design of Life* is new material. Indeed, the difference between these two texts will be so great that it is my understanding that FTE will continue to publish *Of Pandas*, even after *The Design of Life* is finished and goes to press, because *Of Pandas* will remain useful as an introduction to IDT that is accessible to a larger group of students. Finally, I note that *The Design Of Life* is still in draft form; it remains a work in progress. Currently the draft is in the hands of a science editor who will rework the material to make it suitable for use as a text book accessible to the target audience: it is not appropriate for such use at

present. For this reason it is likely that the text will be significantly changed, with some material dropped while other material is added. Once this editing is complete the draft will go to experts for review, and such review typically produces further changes. As a result, there is not even a necessary relationship between the current draft text and the final text which will be called *The Design Of Life*.

8. I also object to any production of the draft for *The Design of Life* because it is contrary to my fiduciary duties to FTE. I am working as a contract laborer for FTE on the *Design of Life* text. As such I do not own the copyright for the text. Moreover, Jon Buell of FTE has expressly stated my duty to preserve the confidentiality of this work-product so as to preserve its educational and commercial potential. The reason is simple, as the only text presenting IDT theory designed to be used in high-school biology courses the text *Of Pandas* has been subjected to intense scrutiny and criticism by a variety of groups or individuals with a variety of agendas. Precisely because *The Design of Life* is also a text designed to present IDT, the FTE fully expects that it will be subjected to similar scrutiny and criticism. Subjecting an unfinished draft of the text to the Plaintiffs' experts in this case, and consulting experts such as the National Center For Science

Education (a vehement critic of IDT), threatens to cripple the educational and commercial potential of the text before it can even get a fair hearing in the academic community and broader public. In short, *Of Pandas*, has become a flash-point for a heated debate in the scientific community and *The Design of Life* will be subjected to that same attacks precisely because it presents IDT theory. Allowing the draft text to be examined before it is finished will equip its proponents to undermine the text before it is even issued, and immediately upon release, threatening both the commercial and, more importantly, the larger educational potential of the text. In this regard, please know that I have spoken with Jon Buell regarding the Plaintiffs' demand for the draft *The Design of Life*; and he has instructed me not to turn over the text, and to do anything I can to preserve the confidentiality of the project until he can find an attorney who will appear and defend him in connection with the Plaintiffs' discovery efforts.

9. I also object to the Plaintiffs' efforts to make me turn over the draft of The Design of Life, any inquiry into the background of the project or processes that led to the draft, the associations I have formed in connection with this project, my communications in connection with the project, or my association and communications with the work of the FTE, its officers,

employees, agents, and supporters because I believe such discovery will threaten my ability to engage in speech and association for the purpose of advancing IDT theory. My work for the FTE on this project is motivated primarily by an educational, not commercial goal. I believe that IDT has tremendous potential as a scientific theory and as the foundation for a scientific research program. Precisely because I believe IDT has such tremendous potential to serve the common good, I have reached out to secure the support of other academics, including Michael Behe and Jonathan Wells. In addition, we will need to secure experts who are willing to review the draft as it progresses. Exposing the draft to scrutiny by experts and organizations hostile to IDT will prejudice the ability of the text to get a fair hearing in academic circles and among the public at large–even if the head start received by these experts and organizations cannot be used until some later point. Subjecting the work of Behe and Wells to criticism before the project is even finished will threaten harm to their reputations and future work. I have personal experience with the kind of adverse career consequences that can result when one advances controversial views; essentially my contract at Baylor University, where I was director of the Michael Polanyi Center, was not renewed because of the controversy

surrounding IDT. In a very real sense much of the criticism that resulted in the non-renewal of my contract originated from some of the Plaintiffs' experts (e.g. Barbara Forrest), institutions aligned with the Plaintiffs in this case, (e.g. The National Center for Science Education), or persons who share the same agenda. Moreover, allowing the draft text to be circulated prior to review may well discourage or chill the work of outside reviewers whom we will solicit to review and approve the text for publication. Exposing the text to a barrage of early and intense criticism may well discourage others from advancing favorable views of the text against such a wave of criticism, something particularly troubling in that part of the inspiration for *The Design of Life* is to present in a much more forceful and persuasive way the findings and potential of IDT for scientific research. In short, I–and those who have agreed to associate with me for the purpose of advancing IDT–are already in a vulnerable position because we have decided to advance a controversial position that IDT is a legitimate scientific theory with tremendous potential for scientific progress. I believe that allowing the plaintiffs to subject my associations and communications relating to my work to scrutiny will damage my ability to associate with others who might wish to advance this position because they might fear

scrutiny and criticism that might cause irreparable damage their career, publication, or other prospects.

10. Likewise I object to any inquiry into my associations with the FTE for the purposes of this project in connection with this litigation. Although I do receive compensation from the FTE for my work on *The Design of Life*, the remuneration is not the primary purpose for my association with the FTE or my work on IDT. Rather, I believe that IDT has tremendous potential for science and our nation. I have associated myself with the FTE and this project primarily to further that educational and civic goal, not in order to earn income. In fact, there is currently an arrearage of about a year in the amount due to me. Moreover, in connection with my work on this project, I have had conversations with Jon Buell and others associated with the FTE about the project and the work of the FTE. I do not want to be questioned about these associations or communications because I believe that if I am forced to speak to discuss these matters it will impede my ability to garner support for these and similar projects and will also damage the ability of the FTE to do so. I firmly believe that, in the long term, not only I and the FTE, but our public education and the nation at-large, will suffer from burdening efforts to secure acceptance for IDT in the academic community and among

the public at large.

11. I have spoken with Jon Buell and it is my understanding that Jon Buell intends to object to the Plaintiffs' discovery as soon as he can retain an attorney who will represent him for this purpose.

12. I make this affidavit pursuant to 28 U.S.C. 1746 and state, under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: May 4, 2005

*William A. Dembski* (signature)
William A. Dembski