# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY KITZMILLER; BRYAN AND CHRISTY REHM; DEBORAH FENIMORE AND JOEL LIEB; STEVEN STOUGH; BETH EVELAND; CYNTHIA SNEATH; JULIE SMITH; AND ARALENE ("BARRIE") D. AND FREDERICK B. CALLAHAN, <br><br> Plaintiffs, <br><br> v. <br><br> DOVER AREA SCHOOL DISTRICT; DOVER AREA SCHOOL DISTRICT BOARD OF DIRECTORS, <br><br> Defendants. | Civil Action No. 04-CV-2688 <br><br> Honorable John E. Jones III |

## PLAINTIFFS' BRIEF OPPOSING DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

Plaintiffs Tammy Kitzmiller, Bryan and Christy Rehm, Deborah Fenimore, Joel Lieb, Steven Stough, Beth Eveland, Cynthia Sneath, Julie Smith and Aralene and Frederick Callahan file this brief in opposition to Defendants' Motion for a Protective Order ("Defendants' Motion"). Defendants Dover Area

School District and Dover Area School District Board of Directors ("Defendants") filed their motion seeking to avoid discovery of the draft of <u>The Design of Life</u> ("draft" or "<u>The Design of Life</u>"), a work on Intelligent Design Theory ("IDT"),[1] which was principally authored by Defendants' expert William Dembski ("Dembski"), as well as communications between Dembski and others who collaborated with him in connection with producing the draft or with promoting IDT ("communications").  Because the draft and the communications are extremely relevant to this litigation, because Dembski already has published numerous portions of the draft on his website and in other formats, and because no harm or burden will result to Dembski or the publisher of <u>The Design of Life</u>, the Foundation for Thought and Ethics ("FTE"), if the draft is produced and Dembski is questioned about the communications, Defendants' Motion should be denied.

## I.    COUNTERSTATEMENT OF FACTS

Plaintiffs in this case are challenging, on First Amendment grounds, the requirement imposed by Defendants that ninth grade biology students be instructed by their teachers that Darwinian evolution theory "is not a fact.  Gaps in the Theory exist for which there is no evidence."  (Complaint, ¶ 40.)  The teachers

---

[1] Plaintiffs do not acknowledge that Intelligent Design Theory is scientific or a theory in the scientific sense.  It is only referred to as Intelligent Design Theory or IDT in this brief for ease of reference, as this is the term assigned to it by Defendants in their Motion.

are then required to state to the students: "Intelligent design is an explanation of the origin of life that differs from Darwin's view. The reference book, <u>Of Pandas and People</u>, is available for any student to see if you would like to explore this view in an effort to gain an understanding of what intelligent design actually involves." (<u>Id.</u>)

Dembski has been identified by Defendants as an expert witness who will opine that "the case for the legitimacy of intelligent design as a scientific explanation and as an alternative to neo-Darwinian theory is overwhelming." (Ex. 1-A to Defendants' Motion, p. 11.) With specific regard to <u>Of Pandas and People</u> ("<u>Pandas</u>"), Dembski will testify that "I feel I know it better than anyone" (<u>id.</u> at 10) because "since the summer of 2001, I have worked in producing the third edition of" <u>Pandas</u> (<u>id</u>. at 10), to which Dembski has added so much new material that the new version "is being renamed *The Design of Life:  Discovering Signs of Intelligence in Biological Systems.*" (<u>Id.</u>)

Plaintiffs intend to show, at trial, that IDT is the equivalent of "Creation science," which the Supreme Court already has affirmed to be religion, not science, and therefore not a subject that may be taught in public school science classes. <u>Edwards v. Aguillard</u>, 482 U.S. 578 (1987). Plaintiffs expect vigorous cross-examination of Dembski, including questioning as to his purposes in working on a successor to <u>Pandas</u>, the depth of his knowledge of the science of biology, and

any information he has as to how <u>The Design of Life</u> is to be promoted. Through such questions plaintiffs expect to bring out serious doubt as to the bona fides of IDT as science. Plaintiffs expect that the record of Dembski's communications with others during this project will both support plaintiffs' fundamental contentions about IDT as well as constrain Dembski's expected effort to minimize the religious and "cultural" component of IDT as he is cross-examined about it.

## II. COUNTERSTATEMENT OF QUESTION PRESENTED

The simple question presented is, does the material subpoenaed appear reasonably calculated to lead to the discovery of admissible evidence, either in plaintiffs' case in chief or in cross-examining a defense expert witness?

## III. ARGUMENT

### A. All Relevant Information Is Discoverable.

It is a well settled principle that the Federal Rules of Civil Procedure provide for broad discovery. <u>HealthAmerica Pennsylvania, Inc. v. Susquehanna Health Sys.</u>, No. 3:00-CV-1525, 2002 U.S. Dist. LEXIS 26583, *4 (M.D. Pa. May 9, 2002), attached hereto as Exhibit A. Federal Rule of Civil Procedure 26(b)(1) provides:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Not only are the discovery rules generally intended to be interpreted broadly, but courts have held that the relevancy requirement in particular is to be construed broadly. HealthAmerica, 2002 U.S. Dist. LEXIS 26583, at *4-5. "Relevancy encompasses 'any matter that bears on, or reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" Gould, Inc. v. A&M Battery & Tire Serv., No. 3 CV-91-1714, 1996 U.S. Dist. LEXIS 12151, *27-28 (M.D. Pa. May 13, 1996), attached hereto as Exhibit B, quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). The broad "conception of discovery in general and relevance in particular requires that where relevance is in doubt, the court should be permissive in allowing discovery." Gould, 1996 U.S. Dist. LEXIS 12151, *29, citing Yang v. Reno, 157 F.R.D. 625, 631 (M.D. Pa. 1994), quoting Oppenheimer.

Despite the liberal discovery rules, under certain circumstances courts may limit discovery of relevant materials. This occurs only where the party seeking protection has made a showing of "good cause" and "justice requires [an order] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). In such cases, however, the burden of persuasion is on the party seeking the protective order, and "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Cipollone v. Liggett Group, Inc., 785 F.2d

1108, 1121 (3d Cir. 1986). Defendants have failed to establish good cause or otherwise meet their burden of persuasion such that they would be entitled to withhold production of the draft or to keep Dembski from testifying as to the communications. Therefore, Defendants' Motion must be denied.

B.     The Information Sought Is Relevant.

The heart of plaintiffs' claim is that IDT is not science, but a religious view masquerading as science. It is analogous to the "creation science" that was struck down in Edwards v. Aguillard, because the purpose of Louisiana's requirement that creation science be taught along with evolution was clearly to advance the "religious belief that a supernatural creator was responsible for the creation of humankind." 482 U.S. 578, 592 (1987). The proponents' leading expert on creation science had testified in the Louisiana legislature that "creation scientists" point to a high probability that life was "created by an intelligent mind." Id. at 591. The Court held that the purpose to advance a religious viewpoint as to the nature of life rendered the legislation unconstitutional. Id. at 604.

Even if Dembski were not a testifying expert, it is undeniable that he is a leading proponent of IDT, and therefore he is likely to possess information as to the true purposes of those centrally involved in developing IDT. If that information reveals IDT to be a religious inference that life was created by "an intelligent mind" (or an "intelligent designer"), plaintiffs' case will be established.

In the present case, however, Dembski is also a testifying expert. He will be subject to cross-examination. That cross-examination may range over his qualifications, how much of his opinion is based on his own knowledge versus that derived from others, and prior inconsistent statements (whether in published pieces or private communications). The material sought is highly relevant to each of these subject areas as well.

Moreover, the material sought may be relevant in cross-examining other defense experts. For example, Defendants' expert Warren Nord proposes to testify that IDT is science because it passes the screening questions Nord would pose as to what is good science: "[H]ow many scientists take IDT seriously? What is (or has been) their standing within establishment science? What kinds of research have they done? To what extent does the theory draw on accepted science? To what extent is it an ad hoc theory? Does it grow honestly out of the evidence, rather than out of prior ideological or religious commitments?" Nord Disclosure at 5, attached hereto as Exhibit C. Nord proposes to opine that "IDT does pass this kind of test." Id. The communications of the leading proponent of IDT, Dembski, in the course of preparing what is to be the definitive text on IDT, can reasonably be predicted to bear upon many of these questions, and may therefore be eminently useful in cross-examining Nord as well as Dembski.

The potential relevance of the material sought cannot be gainsaid.

     C.    <u>None of the Reasons Advanced by Defendants To Prevent Discovery Applies.</u>

Perhaps in acknowledgment of the relevance of the material sought, Defendants focus their opposition on four supposed justifications for shielding Dembski's draft and communications from discovery. Not one withstands scrutiny.

     1.    <u>The Draft Is Relevant to Dembski's Knowledge.</u>

Defendants argue that Dembski has not based his opinions in this case on the draft. That is beside the point. The rules no longer require an expert to have relied upon the information in forming his opinion in order for the source of the information to be discoverable. <u>See</u> Fed. R. Civ. P. 26(a)(2); <u>Krisa v. Equitable Life Assurance Soc'y</u>, 196 F.R.D. 254, 258 (M.D. Pa. 2000). As Judge Becker pointed out in <u>Paoli</u>, it is relevant to ask whether a proposed expert is approaching his courtroom science with the same methods and approaches he brings to his labors outside the courtroom. <u>In re Paoli</u>, 35 F.3d 717, 742 (3d Cir. 1994). Since the draft represents Dembski's principal efforts on IDT outside the courtroom, its relevance is assured, whether Dembski relied on it in framing his testimony here or not. Indeed, as a draft Preface to <u>The Design of Life</u> states: "This textbook provides students with an up-to-date overview of intelligent design and its contribution to [the Darwinian] debate." Preface to <u>The Design of Life</u>, pp. v-vi, attached hereto as Exhibit D. The challenge plaintiffs make in this case is to the

-8-

requirement that teachers instruct their students that "intelligent design" is an alternative to evolution. Pandas is merely an explanation of IDT. If IDT has evolved beyond Pandas, both plaintiffs and the Court need to know that.

### 2. The Draft Is Relevant to the Efficacy Vel Non of Pandas.

Defendants argue that the draft is, by now, very different from Pandas, and that plaintiffs already have much information about Pandas. As to the first prong of this argument, if the draft reveals that the substance of Pandas has been eviscerated since it was written in the 1980s, that would be highly relevant to the suitability of Pandas as a reference book in 2004 or 2005. As to the second prong of this argument, plaintiffs are unaware of any doctrine that because they have been able to develop much information on their own, they are precluded from obtaining discovery from their litigation opponent or his expert witness.

### 3. There Is No Duty To Keep the Draft Confidential.

Defendants claim, without demonstrating where this comes from, that Dembski has a duty to keep the draft confidential. Because Defendants have not shown any facts to impose such a duty, they fail to meet their burden and their argument can be ignored.

It is extraordinary, however, that Defendants would make this argument at all, *because Mr. Dembski has published draft sections of this book*

*repeatedly*, on various websites. On different occasions, versions of Dembski's draft were available on at least three separate websites. See

- http://www.designinference.com/;
- http://www.professorenforum.de/volumes/v05n03/Artikel1/dembski.pdf; and
- http://www.iscid.org/papers/Dembski_HumanOrigins_062204.pdf.

Dembski even declared that he modified a chapter of the draft after a critic posted comments on a website identifying some of the more glaring errors in the chapter. See

- Dembski and Human Origins - http://www.pandasthumb.org/pt-archives/000291.html; and
- Dembski on Human Origins, reprise - http://www.pandasthumb.org/pt-archives/000506.html.

Dembski and Defendants cannot convincingly contend that they must protect the confidentiality of the draft, or be harmed by its production, when Dembski has himself published portions of it in the past.

    4.    Disclosure Will Not Impose on Dembski's Right To Perform IDT Work.

Defendants' last assertion is that if required to disclose the draft and "private communications," Dembski's ability to speak and associate freely will be

impeded. As is true about their contentions concerning confidentiality of the draft, Defendants have made this broad assertion without offering up any evidence to support it.

It must be obvious to every proposed expert witness that enlisting in someone else's battles may become a little messy at times. The fact that Dembski would prefer to proceed unencumbered by certain aspects of his history, however, is no reason to exempt him from the type of inquiry every expert witness might face. This is all the more true when the expert himself is the one who brought up the subject of a text in draft. Furthermore, plaintiffs offered and are willing to execute a reasonable protective agreement to assure the confidentiality of the draft whereby they would not use any quotes from the draft except in the context of the litigation, and, even then, they would be willing to file such parts under seal.

So far as "private communications" are concerned, no privilege is claimed or implicated here. Plaintiffs have no interest in inquiring into purely personal matters. But plaintiffs have an obvious and important interest for inquiring into communications regarding strengths or weaknesses of IDT as science, the purposes –religious or otherwise – of IDT proponents, and the expectations and intentions as to the marketing of IDT materials. If IDT is a charade or masquerade, it should be unmasked. If it is not, surely Dembski would

be unimpaired, notwithstanding the material subpoenaed here, in pursuit of his goals for IDT.

## IV. CONCLUSION

The liberal discovery rules allow discovery as to any relevant matter in a litigation. The draft and the communications are directly relevant to the primary issue in dispute in this litigation. Furthermore, Dembski already has published numerous portions of the draft on his website and in other formats, and no harm will result to Dembski or the FTE if the draft is produced and if Dembski is questioned about the communications. Therefore, Defendants' Motion should be denied.

Respectfully submitted,

*/s/ Thomas B. Schmidt, III*
Eric Rothschild (PA 71746)
Alfred H. Wilcox (PA 12661)
Stephen G. Harvey (PA 58233)
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000
(215) 981-4750 (fax)
*rothschilde@pepperlaw.com*
*wilcoxa@pepperlaw.com*
*harveys@pepperlaw.com*

Thomas B. Schmidt, III (PA 19196)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
P.O. Box 1181
Harrisburg, PA  17108
(717) 255-1155
(717) 238-0575 (fax)
*schmidtt@pepperlaw.com*

Witold J. Walczak (PA 62976)
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213
412-681-7864
412-681-8707 (fax)
*vwalczak@aclupgh.org*

Paula K. Knudsen (PA 87607)
ACLU of Pennsylvania
105 N. Front St., Suite 225
Harrisburg, PA  17101
(717) 236-6827
(717) 236-6895 (fax)
*pknudsen@aclupa.org*

Ayesha Khan (adm. *phv*)
Richard B. Katskee (adm. *phv*)
Alex J. Luchenitser (adm. *phv*)
Americans United for Separation
    of Church and State
518 C St., NE
Washington, DC 20002
(202) 466-3234
(202) 466-2587 (fax)
*akhan@au.org; katskee@au.org;
luchenitser@au.org*

                                                    Attorneys for Plaintiffs,
TAMMY KITZMILLER; BRYAN AND CHRISTY REHM; DEBORAH FENIMORE AND JOEL LIEB; STEVEN STOUGH; BETH EVELAND; CYNTHIA SNEATH; JULIE SMITH, AND ARALENE ("BARRIE") D. AND FREDERICK B. CALLAHAN

Dated:  May 10, 2005

# **CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2005, a copy of the foregoing Plaintiffs' Brief Opposing Defendants' Motion for a Protective Order should be served on the following counsel through the electronic case filing system:

| | |
|---|---|
| Richard Thompson, Esquire<br>Robert J. Muise, Esquire<br>Patrick T. Gillen, Esquire<br>Thomas More Law Center<br>24 Frank Lloyd Wright Drive<br>P.O. Box 393<br>Ann Arbor, MI  48106 | (Counsel for Defendants) |
| Ron Turo, Esquire<br>Toro Law Offices<br>28 South Pitt Street<br>Carlisle, PA 17013 | (Local Counsel for Defendants) |

*/s/ Thomas B. Schmidt III*
Thomas B. Schmidt, III (19196)