IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY J. KITZMILLER, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 4:04-CV-2688 |
| ) | |
| DOVER AREA SCHOOL, ) | Hon. John E. Jones, III |
| DISTRICT and DOVER AREA ) | |
| SCHOOL DISTRICT BOARD OF ) | |
| DIRECTORS, ) | |
| ) | |
| Defendants, ) | |
| ) | APPLICATION TO INTERVENE |
| FOUNDATION FOR THOUGHT ) | BY FOUNDATION FOR |
| AND ETHICS, ) | THOUGHT AND ETHICS |
| ) | |
| Applicant for Intervention. ) | |

**APPLICATION TO INTERVENE BY FOUNDATION FOR THOUGHT AND ETHICS**

Pursuant to Federal Rule of Civil Procedure 24, Foundation for Thought and Ethics ("FTE") timely moves to intervene in this lawsuit to prevent an economic loss of over $500,000 because (1) as the publisher of the textbook at issue in this case and a future textbook on intelligent design theory, it has sufficient economic and educational interests in this litigation, (2) such interests may be affected or impaired by the disposition of this action, and (3) its interests are not adequately represented in this case. In support

1

thereof, FTE would respectfully show the Court as follows:

1. FTE is a non-profit corporation formed in 1980. FTE's stated purpose is to restore the "freedom to know" to young people in the classroom, especially in matters of worldview, morality, and conscience, and to return the right of informed consent to families in the education of their children. FTE has launched an enriching series of high school textbooks that are used in both public and private schools. *See* Ex. A, Buell Aff. ¶ 3.

2. FTE publishes and owns the intellectual property rights of *Of Pandas and People* ("*Pandas*"). *See* Ex. A, Buell Aff. ¶ 4. *Pandas* serves as a supplement to high school biology textbooks presenting the scientific rationale for intelligent design. Currently, *Pandas* is the only supplemental textbook presenting intelligent design theory for use in school biology courses. *See* Ex. A, Buell Aff. ¶ 4.

3. FTE's *Pandas* is the textbook at the center of this litigation. *See* Plaintiffs' Complaint at 2-4, 11-12, 14, 16-18. Plaintiffs recognize that "*Pandas* is currently the leading textbook on Intelligent Design Theory." Pls.' Response at 6 attached

      hereto as Ex. C.  Plaintiffs specifically object to Dover Area School District's policy referencing *Pandas. Id.* Moreover, Plaintiffs seek an injunction requiring the removal of *Pandas* from the Dover Area School District's science classrooms.  *Id.* at 23.

4.  FTE is also the owner of the intellectual property rights to the draft text of *The Design of Life: Discovering Signs of Intelligence in Biological Systems* ("*Design of Life*").  *See* Ex. A, Buell Aff. ¶5. *Design of Life* is presently only in draft form and will be published at a future date and marketed for use by advanced public and private high school biology students and college-level students.  *See* Ex. A, Buell Aff. ¶5.

5.  On April 28, 2005, plaintiffs served subpoenas upon FTE seeking "[a]ll documents, including but not limited to any drafts, correspondence, notes and reports, memoranda (including those of telephone and oral conversations), e-mails, or letters relating to or referring to the following texts: *Biology and Origins, Of Pandas and People* and *The Design of Life: Discovering Signs of Intelligence in Biological Systems,* included but not limited to drafts of the texts themselves."

*See* Ex. A, Buell Aff. ¶ 7.

6. The April 28, 2005 subpoena to FTE's President, Jon A. Buell, also requires his appearance at a deposition on May 31, 2005. *See* Ex. A, Buell Aff. ¶ 7.

7. Prior to being served with the April 28, 2005 subpoenas, FTE had not reviewed or even seen the Complaint or any other papers filed in this lawsuit, although FTE's President, Jon Buell was generally aware of the litigation through media reports. *See* Ex. A, Buell Aff. ¶6.

8. FTE and Jon Buell vigorously opposed production of the unpublished manuscript *The Design of Life*, and plaintiffs' additional requests both before this Court and the United States District Court for the Northern District of Texas. *See* Ex. A, Buell Aff. ¶8.

9. After FTE's review of briefs filed by plaintiffs in response to FTE's motions for protective order, it became apparent to FTE that there is much more at stake in this litigation than merely the policy of Dover School Board. *See* Ex. A, Buell Aff. ¶ 10.

10. Plaintiffs, in their brief opposing defendant School Board's motion for a protective order in this court stated, "Plaintiffs

intend to show, at trial, that [intelligent design theory] is the equivalent of 'Creation science,' which the Supreme Court already has affirmed to be religion, not science, and therefore not a subject that may be taught in public school classes." Pls.' Mem. Opp'n to Defs.' Mot. for Protective Order p. 3, attached hereto as Ex. B.

11. Plaintiffs' response in the Northern District of Texas boldly asserts that "[t]he heart of plaintiffs' claim is that IDT [intelligent design theory] is not science, but a religious view masquerading as science."  See Pls.' Brief at 5-6 attached hereto as Ex. C.

12. On May 13, 2005, this Court entered a protective order with respect to the substance of the work in progress, restricting comment and dissemination of the *Design of Life* manuscript.

13. Plaintiffs' Complaint seeks declaratory and injunctive relief as it relates to Dover's intelligent design policy.  Plaintiffs do not seek a declaratory judgment that intelligent design theory violates the Establishment Clause.

14. As indicated in plaintiffs' Pennsylvania and Texas responses, the focus of plaintiffs' strategy has apparently shifted to

establish that intelligent design theory is the equivalent of "Creation Science" and therefore a religion. *See* Exs. B and C.

15. Accordingly, Plaintiffs' sights are not set solely on securing an injunction of Dover School Board's policy, but are now set on establishing that intelligent design theory is religion. Such a ruling in a case where FTE is not currently a party and its interests are not currently represented would have devastating effects on FTE's commercial and educational interests. *See* Ex. A, Buell Aff. ¶¶ 10, 11 and 13.

16. FTE can establish its right to intervene to protect its economic interest in the marketing of its textbooks within the Middle District of Pennsylvania and across the country.

17. FTE meets the requirement for intervention as of right: (1) the application for intervention is timely; (2) FTE has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation. *See Kitzmiller v. Dover Area School District,* 2005 WL 578974 (M.D. Pa. 2005).

18. Not until after April 28, 2005, was FTE first put on notice that it was mentioned in Plaintiffs' Complaint, *see* Ex. A, Buell Aff. ¶ 6, and became aware that the commercial viability of its textbook was in jeopardy based on the instant lawsuit.

19. FTE has a substantial interest in the outcome of this litigation; the financial success or failure of the science textbooks *Pandas* and *The Design of Life* is threatened by this litigation. *See* Ex. A, Buell Aff. ¶ 11.

20. FTE intends to market its textbooks to public schools within the Middle District of Pennsylvania. *See id.* A ruling by this Court finding that intelligent design theory is religion would destroy FTE's ability to market its textbooks within this district. Moreover, such a ruling would affect FTE's ability to market its textbooks to any public school in the United States. Following such a ruling, school administrators and curriculum specialists throughout the United States would be reluctant to purchase FTE's textbooks that have been declared impermissible by a federal judge. Further, there is no doubt, as evidenced by this lawsuit, that the opponents of intelligent design theory and FTE would use such a ruling by

this Court to dissuade and threaten public schools from purchasing these textbooks. FTE's pecuniary interest in the outcome of this litigation is real and will directly affect the viability of FTE. *See id.* Moreover, the intellectual property rights of FTE have already been compromised by their unpublished manuscript being provided to their competition. *See Israel Bio-Engineering Project v. Amgen*, 401 F3d. 1299 (D.C. Cir. 2005).

21. As a practical matter, the disposition of this action will directly affect FTE. The financial success or failure of FTE's textbooks is now threatened by this litigation. *See* Ex. A, Buell Aff. ¶ 12. Should plaintiffs be successful in their intention to prove at trial that intelligent design theory is the same as creation science, FTE will suffer a devastatingly adverse financial impact, while having no ability whatsoever to participate in the litigation of this issue. Moreover, in light of the investment FTE has made into the publication, production, and promotion of its textbooks, a ruling having the effect of prohibiting the sale of these textbooks to public schools would have a substantial adverse financial result and

greatly jeopardize FTE's continued existence as a viable entity. *See id.*

22. FTE has estimated that it will lose approximately $213,334 in income from the sale of *Pandas* should plaintiffs be successful in their intention to prove at trial that intelligent design theory is the same as creation science. *See* Ex. A, Buell Aff. ¶ 13. Likewise, to date, FTE has invested approximately $49,630 in the development of *The Design of Life. See id.* FTE estimates that its potential income loss from the sale of *The Design of Life* will be approximately $310,400. *See id.* Should plaintiffs prove successful in their intention to prove that intelligent design theory is the same as creation science, FTE stands to lose a significant investment in the development of *The Design of Life*, and a substantial loss of income.

23. FTE's significant interests are currently not adequately represented by any of the existing parties whose focus is on defending Dover's policy. There is not only a risk that the existing party cannot or will not devote proper attention to the FTE's interest, but such lack of attention has already

occurred. For example:[1]

    a. FTE has had limited contact with attorneys for defendants, *See* Ex. A, Buell Aff. ¶ 14;

    b. Attorneys for defendants have not sought any input from FTE with respect to strategies to defend FTE's interests or other input for this case in general, *see id.*;

    c. Attorneys for defendants have not sought FTE's input regarding selection of expert witnesses, *see id.*;

    d. Attorneys for defendants have not sought to address the blatantly false allegations levied at FTE by plaintiffs, nor have they requested information from FTE regarding such statements, *see id.*;

    e. FTE has no belief or expectation that attorneys for defendants will adequately or actually represent its interests, *see id.*; and,

    f. It is FTE's belief that attorneys for defendants are overwhelmed by the scope of representation for defendants and that they are not able to adequately represent the interests of FTE in addition to those of

---

[1] In reviewing FTE's examples supporting its basis for inadequate representation, FTE in no way seeks to impugn the motivations, character or conduct of attorneys for defendants.

      the Dover School District.  *See id.*

24. FTE has not only a basis for intervention as of right, but will also establish a basis for permissive intervention.  Pursuant to Fed.R.Civ.P. 24(b), "upon timely application, anyone may be permitted to intervene in an action when the applicants' claim or defenses in the main action have a question of law or fact in common."  *Kitzmiller, supra.*  When examining an application for permissive intervention the court must "consider whether the proposed intervenors will add anything to the litigation." *Id.* (citing *Hoots v. Pa.,* 672 F.2d 1133, 1136 (3d Cir.1982)).  Additionally, FTE's interests cannot be already represented in the litigation.

25. There are common questions of law and fact with respect to the instant litigation and FTE's concern for the future viability of marketing its textbooks to public schools within the Middle District of Pennsylvania.  The determination of whether intelligent design theory is the equivalent to Creation science not only affects the policy of the Dover School Board, but also has a drastic economic impact on FTE.  *See* Ex. A, Buell Aff. ¶¶ 12 -13.

26. FTE will certainly add to the litigation. Rather than be distracted by Dover's policy, FTE primarily will focus on plaintiffs' purpose to destroy both intelligent design theory as a viable scientific explanation to the origins of life and FTE's ability to market textbooks such as *Pandas* and *Design of Life*.

27. Unlike the attempted intervention by other parents of Dover students in February 2005, FTE is already the subject of extensive discovery requests; its president is under subpoena for deposition; and its focus is on an issue raised by plaintiffs themselves. Any increased costs to Dover area taxpayers as a result of FTE's permissive intervention will be marginal.

28. As set for in Paragraph 23 above, FTE's interests are not being represented.

29. Attached hereto as Ex. D is a copy of the pleading that Applicants seek to file if this application is granted.

30. Neither plaintiffs nor defendants concur in FTE's application to intervene.

WHEREFORE, the Applicant Foundation for Thought and Ethics respectfully requests that the Court grant its application to intervene.

Respectfully submitted,

By: _s/Leonard G. Brown, III_____
**Leonard G. Brown, III, Esq.**
PA I.D. No. 83207
**Randall L. Wenger, Esq.**
PA I.D. No. 86537
**Dennis E. Boyle, Esq.**
(Of Counsel)
PA I.D. No. 49618
**CLYMER & MUSSER, P.C.**
23 North Lime Street
Lancaster, PA 17602-2912
(717) 299-7101

**Jeffrey C. Mateer, Esq.***
Texas State Bar No. 13185320
**MATEER & SHAFFER, L.L.P.**
1300 Republic Center
325 N. St. Paul Street
Dallas, Texas 75202
Telephone: (214) 720-9900
Facsimile: (214) 720-9910

**Benjamin W. Bull, Esq.***
Arizona Bar No. 009940
**Gary S. McCaleb, Esq.***
Arizona Bar No. 018848
**Elizabeth A. Murray, Esq.***
Arizona State Bar No. 022954
**ALLIANCE DEFENSE FUND**
15333 North Pima Road
Suite 165

Scottsdale, AZ  85260
Tel: (800) 835-5233
Fax: (480) 444-0028

**Kelly J Shackelford, Esq.***
Texas Bar No.  18070950
**Hiram S. Sasser, III, Esq.***
Texas Bar No. 24039157
Oklahoma Bar No. 19559
**LIBERTY LEGAL INSTITUTE**
903 E. 18th, Suite 230
Plano, Texas 75024
Telephone: 972.423.3131
Facsimile: 972.423.8899

*Attorneys for Foundation for Thought and Ethics*

**\*** Application to be made for admission *pro hac vice*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the above document was served electronically on the below listed individuals by electronic filing using the ECF system for the United States District Court, Middle District of Pennsylvania, and is available for viewing on its website.

Eric Rothschild, Esq.
Alfred H. Wilcox, Esq.
Pepper Hamilton, LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, Pennsylvania 19103

Patrick Gillen, Esq.
Thomas More Law Center
24 Frank Lloyd Wright Drive
P.O. Box 93
Ann Arbor, Michigan 48106

                                          By:   _s/Leonard G. Brown, III_____
                                                                   Leonard G. Brown, III, Esquire

Date: May 23, 2005