IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAMMY KITZMILLER, *et al.* | § | |
|     *Plaintiffs,* | § | |
| | § | |
| *v.* | § | *Case No. 3:05-MC-053-R* |
| | § | |
| DOVER AREA SCHOOL DISTRICT, *et al.* | § | |
|     *Defendants,* | § | |
| | § | [related to Civil Action No. 04-CV-2688 |
| FOUNDATION FOR THOUGH AND ETHICS, | § | pending in the United States District Court |
| AND, JON A. BUELL, | § | for the Middle District of Pennsylvania] |
|     *Interested Parties.* | § | |

## PLAINTIFFS' RESPONSE AND BRIEF IN OPPOSITION TO MOTION FOR A PROTECTIVE ORDER AND/OR TO QUASH SUBPOENAS OF NON-PARTIES FOUNDATION FOR THOUGHT AND ETHICS AND JON A. BUELL

Plaintiffs Tammy Kitzmiller, Bryan and Christy Rehm, Deborah Fenimore, Joel Lieb, Steven Stough, Beth Eveland, Cynthia Sneath, Julie Smith and Aralene and Frederick Callahan file this response and brief in opposition to the Motion for a Protective Order and/or to Quash Subpoenas filed by non-parties Foundation for Thought and Ethics ("FTE") and Jon A. Buell ("Buell"). FTE and Buell filed their motion seeking to avoid responding to plaintiffs' subpoenas requesting all documents related to, and the drafts of three books: Biology and Origins ("Biology"), Of Pandas and People ("Pandas"), and The Design of Life: Discovering Signs of Intelligence in Biological Systems ("The Design of Life" and, together with Biology and Pandas, "books"), all of which are works advancing Intelligent Design Theory.[1] These subpoenas were issued in relation to Kitzmiller, et al. v. Dover Area School District, et al., 04-CV-2688, a suit presently being litigated in the United States District Court for the Middle

---

[1] Plaintiffs do not acknowledge that Intelligent Design Theory is scientific or a theory in the scientific sense. It is only referred to as Intelligent Design Theory in this brief for ease of reference, as FTE has designated it as such in its motion.

District of Pennsylvania ("Pennsylvania litigation").   A central question in that litigation is

whether Intelligent Design T is merely a disguised version of "Creation science," and therefore

not properly taught in public schools as held in Edwards v. Aguillard, 482 U.S. 578 (1987).

Because these books all relate to the central issue in the Pennsylvania litigation, and because

FTE and Buell have offered no justifiable basis for withholding the requested documents, the

motion for a protective order should be denied.

I.    **COUNTERSTATEMENT OF FACTS**

Plaintiffs in the Pennsylvania litigation are challenging, on First Amendment

grounds, the requirement imposed by defendants in the Dover Area School District that ninth

grade biology students be instructed by their teachers that Darwinian evolution theory "is not a

fact.  Gaps in the Theory exist for which there is no evidence." (Complaint, ¶ 40, attached as

Exhibit C to FTE's and Buell's Motion.)  The teachers are then required to state to the students:

"Intelligent design is an explanation of the origin of life that differs from Darwin's view.  The

reference book, Of Pandas and People, is available for any student to see if you would like to

explore this view in an effort to gain an understanding of what intelligent design actually

involves." (Id.)

Pandas, "a supplement to high school biology textbooks presenting the scientific

rationale for intelligent design as an alternative to Darwinism for use by ninth and tenth grade

high school students," was originally published by Haugton Publishing in association with FTE

in 1989 and was published solely by FTE in its most recent reprinting in 2004.  (Affidavit of Jon

A. Buell, ¶ 8, attached as Exhibit D to FTE's and Buell's Motion, hereinafter "Buell Aff. at ¶

__").  Buell personally "assisted with and oversaw the production and publication of this text."

(Buell Aff. at ¶ 8.)  FTE was also the publisher for the predecessor of Pandas, Biology, which

was a field test version of Pandas published in 1987. (Buell Aff. at ¶ 7.) Upon its publication,

The Design of Life also is expected to be used as a high school biology textbook on Intelligent

Design Theory. (Buell Aff. at ¶ 9.) Plaintiffs intend to show, at trial, that Intelligent Design is

the equivalent of "Creation science," which the Supreme Court already has affirmed to be

religion, not science, and therefore not a subject that may be taught in public school science

classes. Edwards v. Aguillard, 482 U.S. 578 (1987). Plaintiffs expect extensive testimony and

cross-examination at trial related to the books and related documents, including testimony

explaining the development of Intelligent Design Theory, the purposes for developing that

theory, and how that theory has been promoted by the publisher of the books. Through such

questions, plaintiffs expect to bring out serious doubt as to the bona fides of Intelligent Design as

science. Plaintiffs expect that the documents it seeks through its subpoenas and the testimony

elicited from Buell will support plaintiffs' fundamental contentions about Intelligent Design and

contradict the defendants' expected effort to minimize the religious and "cultural" components of

Intelligent Design.

## II.  ARGUMENT

A. All Relevant Information Is Discoverable and, Therefore, within the Proper Scope of a Non-Party Subpoena.

Pursuant to Federal Rule of Civil Procedure 45, a court is permitted to quash or

modify a subpoena if it "(1) fails to allow a reasonable time for compliance; (2) requires a person

who is not a party to travel more than 100 miles from where the person resides; (3) requires

disclosure of privileged or protected matter; or (4) subjects a person to undue burden." Wiwa v.

Royal Dutch Petroleum Co., 392 F.3d 812, 818 (5th Cir. 2004). "The individual seeking to quash

or modify[, however,] must meet the 'heavy burden of establishing that compliance with the

subpoena would be unreasonable and oppressive.'" Hussey v. State Farm Lloyds Ins. Co., 216

F.R.D. 591, 596 (E.D. Tex. 2003), quoting Williams v. City of Dallas, 178 F.R.D. 103, 109

(N.D. Tex. 1998). See also British Int'l Ins. Co., Ltd. v. Seguros La Republica, S.A., 200 F.R.D.

586, 590 (W.D. Tex. 2000).[2] "Modification of a subpoena is preferable to quashing it." Cmedia,

LLC v. Lifekey Healthcare, LLC, 216 F.R.D. 387, 389 (N.D. Tex. 2003).

"The court must balance the need for discovery by the requesting party and the

relevance of the discovery to the case against the harm, prejudice or burden to the other party."

Cmedia, 216 F.R.D. at 389. When a party issues a subpoena in an effort to gather discoverable

information, relevance, for the purpose of the undue burden test, is measured by the standard of

Federal Rule of Civil Procedure 26(b)(1). Cmedia, 216 F.R.D. at 389. Under Rule 26(b)(1),

discovery is permitted as to "any matter, not privileged, that is relevant to the claim or defense of

any party . . . . Relevant information need not be admissible at the trial if the discovery appears

reasonably calculated to lead to the discovery of admissible evidence." Cmedia, 216 F.R.D. at

389, quoting Fed. R. Civ. P. 26(b)(1).[3]

---

[2] The law in Pennsylvania is substantially similar to that in Texas on this subject. In Pennsylvania, the burden falls on the objecting party to "show specifically how each [request] is not relevant." Highland Tank & Mfg. Co. v. PS Int'l, Inc., No. 3:04-100J, 2005 U.S. Dist. LEXIS 8377, *14, n.8 (W.D. Pa. Feb. 18, 2005). ("[J]ust as with relevance, . . . a general objection based upon undue burden will not suffice, but . . . the objecting party must show the fallacies of each objected to request."). See also Franklin v. Gen. Elec. Capital Assurance Co., No. 02-3359, 2004 U.S. Dist. LEXIS 22842, *7 (E.D. Pa. Nov. 10, 2004) (The party objecting to the subpoena "bears a heavy burden of establishing that compliance with the subpoena would be unreasonable and oppressive," and a party must demonstrate a "clearly defined and serious injury" in order to warrant the granting of a protective order.); Mariner Health Care, Inc. v. Indem. Ins. Co. of North Am., Inc., No. 04-MC-00180, 2005 U.S. Dist. LEXIS 242, *4 (E.D. Pa. Jan. 7, 2005) (same).

[3] In Pennsylvania, the court may modify or quash a subpoena if it imposes an undue burden on the subpoenaed party. Highland Tank, 2005 U.S. Dist. LEXIS 8377, at *14. In addition, the relevancy rule provided for in Rule 26(b)(1) governs the scope of information which can be sought from a non-party by subpoena. Highland Tank, 2005 U.S. Dist. LEXIS 8377, at *14 n.8. See also R.J. Reynolds Tobacco v. Phillip Morris, Inc., 29 Fed. Appx. 880, 882 (3d Cir. 2002) (holding that Rule 26(b)(1) governs the discoverability of evidence under a subpoena, allowing all relevant, non-privileged information to be discoverable; and, requiring non-party to produce requested documents pursuant to subpoena where non-party was unable to make a sufficient showing of harm to establish that the district court abused its discretion in requiring the production).

The individual facts of each case must be weighed in determining whether a subpoena which is deemed to be burdensome is still reasonable enough to warrant compliance. Wiwa, 392 F.3d at 818. Factors to consider include "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." Wiwa, 392 F.3d at 818. See also Hussey, 216 F.R.D. at 596. When a subpoena is directed toward a non-party, the court also may consider expense and inconvenience to the non-party. Wiwa, 392 F.3d at 818; Hussey, 216 F.R.D. at 596.

B. The Information Sought Is Relevant.

The heart of plaintiffs' claim is that Intelligent Design Theory is not science, but a religious view masquerading as science. It is analogous to the "Creation science" that was struck down in Edwards v. Aguillard, because the purpose of Louisiana's requirement that "Creation science" be taught along with evolution was clearly to advance the "religious belief that a supernatural creator was responsible for the creation of humankind." 482 U.S. 578, 592 (1987). The proponents' leading expert on "Creation science" had testified in the Louisiana legislature that "Creation scientists" point to a high probability that life was "created by an intelligent mind." Id. at 591. The Court held that the purpose to advance a religious viewpoint as to the nature of life rendered the legislation unconstitutional. Id. at 604. In this case, the subpoenaed documents relate only to three texts which discuss one major theme – Intelligent Design – and they may enlighten plaintiffs and the fact finder as to whether Intelligent Design is in actuality similar to, the equivalent of, or in any way related to, "Creation science."

It is undeniable that the FTE and Buell are leading proponents and developers of Intelligent Design Theory. Buell Aff. at ¶¶ 3, 7, 8. As such, FTE's and Buell's drafts of

Biology, Pandas and The Design of Life, as well as the documents related to those drafts or

publications, are likely to reflect information as to the true purposes of those centrally involved

in developing Intelligent Design Theory.   As FTE's and Buell's counsel has been advised,

plaintiffs do not seek through their subpoenas, any of FTE's mailing lists, donor lists, financial

data, or other such peripheral information.   Rather, they seek documents reflecting

communications between Buell and others when they were preparing the books and reflecting

how they decided to promote and sell the books, because those communications go to whether

Intelligent Design actually is, or is being marketed as, "Creation science" in disguise.

For example, Pandas is currently the leading textbook on Intelligent Design

Theory, as well as the book required to be cited in the controversial statement demanded by

Dover teachers which is at the center of this litigation.  Similarly, Biology was the field test book

of Pandas and also is devoted to Intelligent Design Theory.   The documents conveying

communication and marketing strategies by the publishers of Pandas and Biology may

demonstrate the origin of the theory of Intelligent Design, and would be highly relevant to

whether Intelligent Design derived from "Creation science" theory.  In similar fashion, if the

documents conveying communications and marketing strategies related to The Design of Life

reveal that the substance of Pandas has been eviscerated since it was written in the 1980s (Buell

Aff. at ¶ 9), that would be highly relevant to the suitability of Pandas as a reference book in 2004

or 2005.[4]  If Intelligent Design has evolved beyond Pandas, both plaintiffs and the Pennsylvania

court need to know that.  If the documents revealing marketing strategies for any of the levels of

The Design of Life demonstrate that their publisher was making efforts to market it as Intelligent

---

[4] During oral argument on defendants' motion for a protective order in the Middle District of Pennsylvania ("Pennsylvania court"), Judge Jones announced that the draft of The Design of Life was clearly relevant to the Pennsylvania litigation.

Design rather than "Creation science," for the purpose of escaping the result in <u>Edwards v. Aguillard</u>, plaintiffs and the Pennsylvania court also must be made aware of that. Accordingly, the documents are relevant and FTE's and Buell's motion should be denied.

C.  <u>None of the Reasons Advanced by Defendants To Prevent Discovery Applies.</u>

Perhaps in acknowledgment of the relevance of the material sought, FTE and Buell offer four other supposed justifications for shielding the subpoenaed documents from discovery. Not one withstands scrutiny.

1.  <u>Plaintiffs Have Complied with Federal Rule of Civil Procedure 45 and Are Willing To Make Reasonable Accommodations for the Special Needs of FTE and Buell.</u>

FTE and Buell argue that plaintiffs failed to provide Buell with the required witness fee and mileage allowance and failed to provide both Buell and FTE with a "reasonable" time for compliance with the subpoena pursuant to Federal Rule of Civil Procedure 45. As to the first argument, it is true that plaintiffs did not originally include a check along with the subpoena, but they have subsequently corrected that oversight.

As to the second argument, plaintiffs served the subpoenas on April 22, 2005, and sought production of the documents 24 days later, on May 16, 2005. While plaintiffs believe this to be a more than reasonable period of time within which Buell and FTE could comply with the subpoenas, they have never indicated that they would be unwilling to work with Buell and FTE in arriving at a date which they could all agree upon as an acceptable date for producing the documents. As such, plaintiffs have not acted in violation of Rule 45. Even if they had, however, these alleged procedural defects can be cured without prejudice to FTE and Buell, and are not a sufficient basis upon which to grant their motion to quash and/or for a protective order.

Discovery in the Pennsylvania litigation is cut off on June 16th. Furthermore, Mr. Buell's deposition has heretofore been scheduled for May 31st and the documents and

information sought in plaintiffs' subpoenas are necessary to properly prepare for that deposition. Under these circumstances plaintiffs assert that requesting production by May 16th, 24 days after service, was additionally appropriate.

2. FTE's and Buell's Trade Secret Argument Is Moot.

The only document sought by plaintiffs which FTE and Buell argue is confidential or a trade secret is the draft of The Design of Life. This argument is moot, however, because defendants made that argument before the Pennsylvania court, and the court rejected that argument and ordered that the draft be produced by defendants' expert, William Dembski ("Dembski").[5]

3. Disclosure of the Documents Requested Will Not Invade any of FTE's and Buell's Constitutional Rights.

FTE and Buell also argue that disclosure of the subpoenaed documents will impede their ability to speak and associate freely. They have made this broad assertion without offering any specific examples of how disclosure of documents related to topics for which FTE has been an outspoken advocate, for nearly 25 years, could have the effect of chilling those rights. In fact, FTE and Buell have only cited one case in support of this claim, and that case dealt with disclosure of member lists. See NAACP v. Alabama, 357 U.S. 449 (1958). As explained above, that is not at all the type of information sought by plaintiffs in the subpoenas. Nor do plaintiffs have any interest in inquiring into purely personal or financial matters. But plaintiffs have an obvious and important interest in inquiring into documents regarding strengths

---

[5] The Pennsylvania court has acknowledged that plaintiffs have reserved their rights in the Pennsylvania litigation in connection with discovery related to communications between "Dembski and individuals who have collaborated with him in connection with the production of the draft [of The Design of Life] or his other efforts to promote the Intelligent Design Theory, including his communications with officers, employees, agents and supporters of the FTE or other individuals with whom Dembski communicates in connection with his association with, or work for, the FTE." Judge Jones's May 13, 2005 Order, p. 2.

or weaknesses of Intelligent Design Theory as science, the purposes – religious or otherwise – of Intelligent Design proponents, and the expectations and intentions as to the marketing of Intelligent Design materials.

        4.     <u>FTE and Buell Will Not Suffer any Undue Burden or Expense in Complying with the Subpoenas.</u>

FTE's and Buell's final argument is that because their records are so disorganized, they would suffer undue burden and expense in searching for the documents which are responsive to plaintiffs' subpoenas.  Unfortunately for FTE and Buell, the failure to keep records in an orderly fashion is not a viable excuse to avoid responding to valid subpoenas.  If FTE and Buell were permitted to use this excuse, non-parties and parties alike would attempt to escape producing relevant information in discovery by claiming that disorganized files prevent them from conveniently responding.  Moreover, the Federal Rules do not require that FTE and Buell take steps to organize currently unorganized files;  the Rules require only that they offer all relevant and responsive documents that they have in the same fashion they keep them in the normal course of business.  "Rule 45(d)(1), concerning the production of documents by a non-party to a lawsuit, expressly authorizes production of documents for inspection as they are kept in the usual course of business and relieves the producing entity of the responsibility of organizing the produced documents to correspond to the categories of documents requested."  <u>Calvert v. Reinisch</u>, 218 F.R.D. 497, 502 (W.D. Tex. 2003).  Therefore, FTE and Buell will not be burdened with having to organize files beyond that which is normally done by them.

As to the expense, while plaintiffs realize that Buell may have to devote some time in order to properly respond to this subpoena, this is a small price to pay given the significance that discovery plays in our judicial system. Parties to civil litigation are entitled to all relevant information, whether such information comes from a party to the suit or not.  <u>See</u>

Wiwa, 392 F.3d at 820 (noting that the Federal Rules entitle a party to all information which is relevant to the subject matter of the action unless it is privileged). The fact that Buell has not kept his records in an organized fashion, which may result in more time being spent by Buell in culling out nonresponsive material (assuming he elects to do so), is not an excuse which should prevent Buell and FTE from complying, because plaintiffs should not have to suffer for FTE's or Buell's organizational shortcomings.

III.   **CONCLUSION**

The subpoenaed documents are relevant to this litigation, and are important to plaintiffs so that they may learn of all relevant facts regarding Intelligent Design Theory. These factors outweigh any modest burden or expense which FTE and Buell may experience in responding to the subpoenas. Therefore FTE's and Buell's motion should be denied.

Respectfully submitted,
**MICHAEL F. LINZ, P.C.**
Attorneys for Plaintiffs

Michael F. Linz
State Bar No. 12393800
Christine E. Eason
State Bar No. 00795098

**Cooperating Attorneys**
**ACLU Foundation of Texas, Inc.**

400 Katy Building
701 Commerce Street
Dallas, Texas 75202-4599
Phone: 214.748.1948
Fax: 214.748.9449
E-mail: Linz-Law@msn.com

*Of Counsel:*

Eric Rothschild
Alfred H. Wilcox
Pepper Hamilton, LLP
3000 Two Logan Square
18th and Archer Streets
Philadelphia, Pennsylvania 19103

-11-

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served upon the attorneys of record set forth below in accordance with the Federal Rules Of Civil Procedure on this the 19th day of May 2005.

Jeffrey C. Mateer
Mateer & Shaffer, LLP
1300 Republic Center
325 N. St. Paul Street
Dallas TX 75202