IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMMY J. KITZMILLER, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:04-CV-2688 |
| | ) | |
| DOVER AREA SCHOOL DISTRICT and DOVER AREA SCHOOL DISTRICT BOARD OF DIRECTORS, | ) ) ) | Hon. John E. Jones, III |
| | ) | |
| Defendants, | ) | |
| | ) | |
| FOUNDATION FOR THOUGHT AND ETHICS, | ) ) | MEMORANDUM OF LAW IN SUPPORT OF APPLICATION TO INTERVENE BY FOUNDATION |
| | ) | |
| Applicant for Intervention. | ) | FOR THOUGHT AND ETHICS |

# TABLE OF CONTENTS

Table of Authorities ........................................................................................... iii

Summary of Argument........................................................................................1

Overview .............................................................................................................2

Argument and Authorities..................................................................................3

I.   FTE HAS A RIGHT TO INTERVENE UNDER FED. R. CIV. P. 24(a)(2) ...................3

    A. FTE's Application is Timely....................................................................4

    B. FTE Has Sufficient Interests in the Litigation
       that will be Impaired...............................................................................6

    C. FTE's Interests Will Be Impaired by a Ruling in Its Absence................10

    D. FTE's Interests are Not Adequately Represented ...................................12

II.  FTE SHOULD BE PERMITTED TO INTERVENE UNDER FED. R. CIV. P. 24(b)(2) ..16

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Brody v. Spang,*
    957 F.2d 1108 (3d Cir. 1992) ...............................................................10, 13

*Harris v. Pernsley,*
    820 F.2d 592 (3d Cir. 1987) ................................................................4, 7, 10

*Hoots v. Pa.,*
    672 F.2d 1133 (3d Cir. 1982) ..............................................................12, 15

*Israel Bio-Engineering Project v. Amgen Inc.,*
    401 F.3d 1299 (D.C. Cir. 2005)............................................................8, 12

*Kitzmiller v. Dover Area Sch. Dist.,*
    No. 04CV2688, 2005 WL 578974 (M.D. Pa. Mar. 10, 2005) ..6, 8, 13, 16, 17

*Kleissler v. U.S. Forest Serv.,*
    157 F.3d 964 (3d Cir. 1998) .......................................................7, 8, 9, 12, 15

*Trbovich v. United Mine Workers,*
    404 U.S. 528 (1972).................................................................................12

*U.S. v. Alcan Aluminum, Inc.,*
    25 F.3d 1174 (3d Cir. 1994).   .................................................................4, 5

**Federal Rules**

Fed. R. Civ. P. 24(a)(2).................................................................................1, 3, 4

Fed. R. Civ. P. 24(b)(2).................................................................................2, 16

## SUMMARY OF ARGUMENT

Faced with a tangible threat to its continued existence, the Foundation for Thought Ethics ("FTE") seeks to intervene in this case pursuant to Federal Rule of Civil Procedure 24. As its Application and the evidence offered in support of the Application demonstrate, FTE's intervention as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2) is proper. First, FTE's intervention is timely. FTE sought to intervene as soon as it realized that its rights were directly affected by this litigation. Second, as the publisher of the textbook at issue in this case and a future textbook on IDT who is subject to lose hundreds of thousands of dollars depending upon how this Court rules, FTE has sufficient economic, educational and expressive interests in this litigation. Third, FTE's interests may be affected or impaired by the disposition of this action based upon the ruling now sought by Plaintiffs that intelligent design is religion and, therefore, cannot be taught in public schools. Fourth, FTE's interests are not adequately represented in this case because FTE and Defendants have sufficient diverse interests such that Defendants cannot, will not and, in fact, have not devoted proper attention to FTE's interests. Defendants' interest involves defending the Dover policy, regardless of whether that policy or the purposes behind it truly support good science. FTE, on the other hand, wishes to advance IDT and its pecuniary interests in the scientific and legal viability of the appropriate teaching of IDT.

Alternatively, FTE seeks to intervene pursuant to Federal Rule of Civil Procedure 24(b)(2) as a permissive intervenor since there are common questions of law and fact, FTE will add to the litigation, and FTE's interests are not already represented in the litigation.

## **OVERVIEW**

On April 28, 2005, Plaintiffs served subpoenas upon FTE seeking a host of documents and draft texts of FTE publications. *See* Buell Aff. ¶ 7. Among the materials Plaintiffs demanded were draft texts of *Biology and Origins*, *Of Pandas and People ("Pandas")*, and *The Design of Life: Discovering Signs of Intelligence in Biological Systems ("The Design of Life")*. *See* Buell Aff. ¶ 7. *Pandas* is the textbook at the center of this litigation and is the only supplemental textbook presenting intelligent design theory ("IDT") for use in public high school biology courses. *See* Buell Aff. ¶ 4.

FTE resisted the subpoenas because FTE has significant commercial interests in their unpublished manuscripts – specifically, FTE's competitors could benefit if these proprietary, pre-production manuscripts became public. Only after reviewing Plaintiffs' briefs did FTE learn that Plaintiffs were not merely litigating the constitutionality of the Dover School Board's policy. *See* Buell Aff. ¶ 10. More significantly, Plaintiffs now seek to establish as a matter of law that IDT is not science, but rather inherently religious "creation science." Plaintiffs' Response

at 3.[1]  If Plaintiffs succeed, that judicial finding would likely bar the use of FTE materials in public school classes through out the nation– foreclosing FTE from its primary commercial market and from the constitutional "marketplace of ideas."

Such a ruling would have a devastating effect on FTE's economic, educational and expressive interests.  FTE has invested its resources in the publication, production, and promotion of its textbooks and plans to continue to market its textbooks to public schools.  *See* Buell Aff. ¶¶ 12-13.  Accordingly, the litigation in this case is a "tangible threat" to FTE because the financial success or failure of FTE's textbooks is now threatened.  *See* Buell Aff. ¶ 13.   As demonstrated below, FTE is entitled to intervene as of right and by permission to protect its significant economic, educational and expressive interests.

## ARGUMENT AND AUTHORITIES

### I.   FTE Has a Right to Intervene Under Fed. R. Civ. P. 24(a)(2)

Rule 24(a)(2) of the Federal Rules of Civil Procedure provides that a party is entitled to intervene as of right when:

> the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

---

[1] "Plaintiffs' Response" refers to Plaintiffs' Response and Brief in Opposition to Motion for a Protective Order and/or to Quash Subpoenas of Non-Parties Foundation for Thought and Ethics and Jon A. Buell filed in The United States District Court for the Northern District of Texas, Dallas Division on May 19, 2005 and is attached as Exhibit C to FTE's Application for Intervention.

Based upon the Third Circuit's application of Rule 24(a)(2), FTE has a right to intervene in this case because (1) FTE's application for intervention is timely; (2) FTE has a sufficient interest in the litigation; (3) FTE's interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) FTE's interest is not adequately represented by an existing party in the litigation. *See Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987).

### A.    FTE's Application is Timely

Intervention as of right is proper because FTE's Motion to Intervene is timely. "[T]imeliness is not just a function of counting days; it is determined by the totality of the circumstances." *U.S. v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 (3d Cir. 1994). "[T]o the extent there is a temporal component to the timeliness inquiry, it should be measured from the point which an applicant knows, or should know, its rights are directly affected by the litigation, not . . . from the time the applicant learns of the litigation." *Id*. at 1182. Thus, "where a party takes reasonable steps to protect its interest, its application should not fail on timeliness grounds." *Id*.

Examining the "totality of the circumstances" in this case, FTE's Application to Intervene is clearly timely. FTE did not learn that this case would affect its rights until after Plaintiffs served FTE and its President, Jon A. Buell ("Buell"), with subpoenas on April 28, 2005. *See* Buell Aff. ¶ 7. The discovery

subpoenas prompted FTE and Buell to learn the specifics of Plaintiffs' claims in this case. *See* Buell Aff. ¶ 6. Prior to April 28, 2005, Buell had not reviewed or even seen the Complaint or any other papers filed in this lawsuit. *See* Buell Aff. ¶ 6. Rather, Buell had only a general awareness of this litigation through media reports. *See* Buell Aff. ¶ 6.

After learning that FTE's rights were "directly affected by the litigation," FTE took "reasonable steps to protect its interest[s]," as required by *Alcan Aluminum, Inc.*, 25 F.3d at 1182. First, FTE and Buell retained legal counsel as an initial step to protect FTE's interests. *See* Buell Aff. ¶ 8. Next, on May 9, 2005, FTE and Buell filed Non-Parties Foundation for Thought and Ethics and Jon A. Buell's Motion for Protective Order and/or to Quash Subpoenas and Brief in Support in federal court in Texas. *See* Buell Aff. ¶ 8. During this same period, Buell took another step to protect FTE's interests by advising William A. Dembski, one of Defendants' experts and the editor and one of the authors who contracted with FTE to write *The Design of Life*, to take all necessary actions to protect FTE's confidential and proprietary information. *See* Buell Aff. ¶ 9. FTE filed a Motion for Protective Order with this Court in regard to this matter as well. *See* Buell Aff. ¶ 9.

After reviewing Plaintiffs' court filings with regard to their broad discovery

5

requests to FTE, including Plaintiffs' Brief filed in this Court on May 10, 2005[2] and Plaintiffs' Response filed in the Northern District of Texas on May 19, 2005, Buell determined for the first time that FTE's interests in this litigation went far beyond protecting its privacy interests in its commercial property in responding to third party subpoenas.   Instead, FTE's interests in the litigation fundamentally extend to protecting FTE's very existence because Plaintiffs are challenging the central scientific theory upon which FTE's economic, educational and expressive interests rest.  *See* Buell Aff. ¶¶ 10-13.   FTE must therefore defend the legal definition of FTE's work as "science," not religion.   At this same time, FTE realized that it cannot protect its significant interests unless it is permitted to intervene in this litigation.  With this knowledge, FTE took the next crucial step to protect its significant interests by filing an Application to Intervene with this Court on May 23, 2005 and now files this Memorandum of Law in Support thereof.  For these reasons, FTE's May 23, 2005 Application to Intervene is timely filed.

### B.   FTE Has Sufficient Interests in the Litigation that will be Impaired

Under Federal Rule of Civil Procedure 24(a), an intervention applicant must "demonstrate an interest in th[e] action that is 'significantly protectable,'" *Kitzmiller v. Dover Area School District*, No. 04CV2688, 2005 WL 578974, at *3

---

[2] "Plaintiffs' Brief" refers to Plaintiffs' Brief Opposing Defendants' Motion for a Protective Order filed in this Court on May 10, 2005 and is attached as Exhibit B to FTE's Application to Intervene.

(M.D. Pa. Mar. 10, 2005), *i.e.*, where "there is a tangible threat to a legally cognizable interest," there is a right to intervene." *Harris*, 820 F.2d at 601. Importantly, "Rule 24 demands flexibility when dealing with the myriad situations in which claims for intervention arise." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (attached hereto as Ex.2). "Rigid rules . . . contravene a major premise of intervention – the protection of third parties affected by pending litigation." *Id*. at 971.   The Third Circuit has explained the proper focus of intervention decisions:

> [T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote.  Due regard for efficient conduct of the litigation requires that intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought.  The interest may not be remote or attenuated. The facts assume overwhelming importance in each decision.

*Id*. at 972.

The *Kleissler* court reversed the denial of intervention as of right by lumber companies in an action brought by environmentalists against the United States Forest Service to restrict logging activities in a National Forest.  *Id*. at 967, 973-74. The district court denied the intervention applications of the lumber companies that did not have existing timber contracts and concluded that their interests were merely of "an economic nature based on expectation."  *Id*. at 968.  On appeal, the Third Circuit found that the timber companies were "'very dependent on timber

contracts with the [Service] to cut timber' in the Forest and 'their continued existence may be jeopardized' if plaintiffs prevail." *Id*. at 973. The appellate court concluded that the applicants "have a substantial interest, directly related to and threatened by this litigation, that meets the requirements of Rule 24(a)." *Id*.

In *Kleissler*, environmentalists specifically challenged two logging projects, as well as seeking to halt all logging activity in a National Forest. 157 F.3d at 967-68. Similarly, in this case, Plaintiffs specifically challenge FTE's central scientific theory of intelligent design as "religious," and therefore banned from use in public schools due to Establishment Clause concerns, as well as to remove the *Pandas* textbook from Defendants' classrooms. *See* Complaint, pp. 22-23; Plaintiffs' Brief at 3, attached to FTE's Application to Intervene as Ex. B; Plaintiffs' Response at 3, attached to FTE's Application to Intervene as Ex. C. Like the logging companies in *Kleissler*, FTE should be permitted to intervene as of right because it has a direct interest in this litigation that is "significantly protectable." *Kleissler*, 157 F.3d at 969; *Kitzmiller*, 2005 WL 578974, at *3; *see also Israel Bio-Engineering Project v. Amgen Inc*., 401 F.3d 1299, 1306-307 (Fed. Cir. 2005) (interest relating to intellectual property was sufficient interest for intervention).

While the *Kleissler* logging companies had a mere expectation of future timber contracts, FTE has a direct interest in preserving its ability to market its textbooks and other educational and expressive materials. 157 F.3d at 968. These

interests are at stake because Plaintiffs are specifically challenging the central scientific theory upon which FTE's economic, educational and expressive interests – perhaps its very existence – rest.  *See* Buell Aff. ¶¶ 11-12.  The Court must permit FTE to intervene as of right because "a victory for plaintiffs could destroy [FTE's] business," just as the *Kleissler* Court held concerning the lumber companies.  *Id*. at 973.

Based upon their court filings this month, Plaintiffs no longer merely attack the relevant Dover School Board's policies, now they demand that this Court hold – as a matter of law – that FTE's scientific theories are mere religious doctrine that cannot be permitted within our public schools, period.   Plaintiffs' Brief at 6; Plaintiffs' Response at 5.  In Plaintiffs' own words, they ask this Court to rule that "Intelligent Design is the equivalent of 'Creation science,' which the Supreme Court already has held to be religion, not science, and therefore not a subject that may be taught in public school science classes."  Plaintiffs' Brief at 3; Plaintiffs' Response at 3; Complaint, pp. 22-23.

Such a ruling in a case where FTE is currently not a party and its interests are not currently represented would have a devastating effect on FTE's economic, educational and expressive interests.  *See* Buell Aff. ¶ 11.  FTE has invested in the publication, production and promotion of its textbooks.  It already markets *Pandas* to public schools within the Middle District of Pennsylvania and throughout the

United States, and plans to market *The Design of Life*, to public schools within the Middle District of Pennsylvania and throughout the United States as well.   *See* Buell Aff. ¶¶ 12-13.   Plaintiffs should not be permitted to shut FTE out of huge market for its textbooks as well as the "marketplace of ideas" without this Court permitting FTE to have a voice in this litigation.[3]

### C.   FTE's Interests Will Be Impaired by a Ruling in Their Absence

Similarly, intervention is appropriate under Rule 24(a)(2) when proposed intervenors can show that their interest "may be affected or impaired, as a practical matter by the disposition of the action." *Brody v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992) (citing *Harris*, 820 F.2d at 596).   Simply put, "Rule 24(a)(2) directs the courts to consider the practical consequences of the litigation in passing on an application to intervene as of right." *Harris*, 820 F.2d at 601.   The *Harris* Court pointed to cases where intervention was granted because "the action will have a significant *stare decisis* effect on the applicant's rights, or where the contractual rights of the applicant may be affected by a proposed remedy." *Id*. (citations omitted).   Put another way, this element is satisfied when a proposed intervenor demonstrates "a tangible threat to a legally cognizable interest" – a test FTE easily meets as demonstrated below. *Id*.

---

[3] Technically, a ruling in this case would be binding on this district only.  As a practical matter, however, the decision would be used to intimidate school districts across the United States to ban IDT from their classrooms. *See* Murray Affid., ¶¶ 3-9.

In this case, to put it bluntly, there is a "tangible threat" to FTE because financial success or failure of FTE's textbooks is now threatened by Plaintiffs' prayer that this Court rule that IDT is purely religious doctrine. *See* Buell Aff. ¶ 13. Such a ruling by this Court would "impair" – in fact destroy – FTE's ability to market its textbooks within this district and would affect FTE's ability to market its textbooks to any public school in the United States. *See* Buell Aff. ¶ 12. Following such a ruling, school administrators and curriculum specialists throughout the United States would be reluctant to purchase FTE's textbooks that have been declared impermissible by a federal judge. *See* Buell Aff. ¶ 12. Further, opponents of IDT and FTE would likely use such a ruling by this Court to dissuade and threaten public schools from purchasing these textbooks. *See* Buell Aff. ¶ 12; Murray Aff. ¶¶ 3-9, Ex. A (attached hereto as Ex. 1).

More specifically, holding IDT to be "religious" as a matter of law would greatly jeopardize FTE's continued existence as a viable entity as the potential lost income from the sale of *Pandas* would be approximately $213, 334. *See* Buell Aff. ¶ 13. Moreover, FTE already spent approximately $49,630 to develop *The Design of Life* and potential lost income from its sale would be approximately $310,400. *See* Buell Aff. ¶ 13.

Therefore, FTE clearly has "substantial interest[s], directly related to and threatened by this litigation, that meets the requirements of Rule 24(a)." *Kleissler*, 157 F.3d at 973.

### D. FTE's Interests are Not Adequately Represented

Intervention as a matter of right is appropriate when the applicant shows "that his interests are not adequately represented by the existing parties." *Hoots v. Pa.*, 672 F.2d 1133, 1135 (3d Cir. 1982). As this Court has recognized, "representation is typically considered to be inadequate for any of the following three reasons":

> (1) Although the applicants' interests are similar to those of a party, they are sufficiently diverse that there is a risk that the existing party cannot or will not devote proper attention to the applicant's interest;
> (2) There is collusion between the representative party and the opposing party; or
> (3) The representative party has not been diligent in prosecuting the litigation.

*Kitzmiller*, 2005 WL 578974, at *5 (citing *Hoots*, 672 F.2d at 1135). The Supreme Court has stated that the burden of showing inadequacy "should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972).

In this case, intervention as of right is proper because FTE's significant interests are not adequately represented by any of the existing parties. FTE's economic, educational and expressive interests are "sufficiently diverse" to Defendants' interest in defending Dover School Board's policy. *Kitzmiller*, 2005

WL 578974, at *5.   Defendants are primarily concerned with defending their policy that allows school officials to inform students "of other theories of evolution."  *See* Complaint, p. 2.   While Defendants chose to make the *Pandas* textbook "available for students" as a reference book, *see* Complaint, p. 2, Defendants have a limited interest in defending IDT curriculum or FTE's economic or educational future (as shown below).   Defendants could just as easily remove *Pandas* from their classrooms, point to other sources that challenge "Darwin's theory," or revoke their policy that allows consideration of IDT.   *See* Complaint, p. 2.

As Defendants are a government entity, the presumption of adequacy of representation is not applicable because Defendants are not charged by law with representing FTE's interests.   *See Brody*, 957 F.2d at 1123 ("There is a presumption that if one party is a government entity charged by law with representing the interests of the applicant for intervention, then this representation will be adequate.").   Even if Defendants were diligent in defending this litigation, Defendants do not adequately represent FTE because Defendants and FTE's interests are sufficiently – in fact substantially – diverse.

Because the interests of FTE and Defendants are "sufficiently diverse," there is a risk that Defendants "cannot or will not devote proper attention" to FTE's interests.   *Kitzmiller*, 2005 WL 578974, at *5.   **In fact, Defendants' lack of**

**attention to FTE's interests has already occurred:**

1) FTE has had limited contact with attorneys for Defendants;
2) Attorneys for Defendants have not sought any input from FTE with respect to strategies to defend FTE's interests or other input for this case in general;
3) Attorneys for Defendants have not sought FTE's input regarding selection of expert witnesses to defend FTE's scientific theories;
4) Attorneys for Defendants have not sought to address the blatantly false allegations[4] levied at FTE by Plaintiffs, nor have they requested information from FTE regarding such statements;
5) FTE has no belief or expectation that attorneys for Defendants will adequately or actually represent its interests; and
6) FTE has observed that attorneys for Defendants are apparently overwhelmed by the scope of representation for Defendants and that they are not able to adequately represent the interests of FTE in addition to those of the Dover School District.

*See* Buell Aff. ¶ 14. Such actions by Defendants' counsel demonstrate that they are not interested in even coordinating efforts or accepting assistance from FTE, thus prohibiting FTE from protecting its interests through Defendants' representation. As a result, defense counsel has put FTE's interests at risk by their own actions, necessitating this intervention.

In summary, Defendants' and FTE's interests are substantially diverse. Defendants have an interest in defending the Dover policy, regardless of whether the policy promotes quality science education. If Defendants lose, they can simply walk away from the litigation and move on. FTE, on the other hand, stands to be financially ruined by an unfavorable outcome in this case. If IDT or FTE's

---

[4] In fact, Defendants' Answer states that they lack knowledge or information about the allegations alleged against FTE in Plaintiffs' Complaint. *See* Defendants' Answer, ¶25.

materials are discredited as merely "religious," rather than quality science and quality education, FTE's financial condition will be undermined.  The value of FTE's intellectual property will have little worth and its investments will have come to naught.  FTE has a very significant financial stake in the appropriate teaching of IDT that promotes quality science education. Defendants only have an interest in defending Dover's policy.

Because the focus and the substance of the interests are different, FTE's direct educational, economic and expressive interests will not be protected.  This problem is all the worse due to the inherent limitations of counsel.  Defendants' counsel can and will only focus on its own interests rather than FTE's interests.

While Defendants may prefer that this Court take a "wait and see" approach to granting intervention, "[t]he early presence of intervenors may serve to prevent errors from creeping into the proceedings" and clarify issues.  *Kleissler*, 157 F.3d at 974.  "Postponing intervention . . . may, in fact, encourage collateral attack and foster inefficiency."  *Id*.  As the Third Circuit has surmised, "the game may already be lost by the time the intervenors get to bat in the late innings."  *Id*.  For these reasons, FTE's "interests are not adequately represented by the existing parties" in this litigation, so FTE should be permitted to intervene as of right to protect its interests.  *Hoots*, 672 F.2d at 1135.

**II.     FTE Should be Permitted to Intervene Under Fed. R. Civ. P. 24(b)(2)**

Permissive intervention may be granted under Federal Rule of Civil Procedure 24(b)(2) "when an applicant's claim or defense and the main action have a question of law or fact in common."  When making this determination, "courts consider whether the proposed intervenors will add anything to the litigation" and ask "if the interests of the proposed intervenors are already represented in the litigation." *Kitzmiller*, 2005 WL 578974, at * 6.

If intervention as of right is not granted in this case, the Court should grant permissive intervention to FTE because there are common questions of law and fact with respect to the instant litigation and FTE's concern for the future viability of marketing its textbooks to public schools within the Middle District of Pennsylvania and elsewhere.  *See* Buell Aff. ¶¶ 12-13.  The determination of whether FTE's scientific theories are no more than "religious" doctrine of "creation science" not only affects the policy of the Dover School Board, but also has a drastic economic impact on FTE and its ability to access the "marketplace of ideas." *See* Buell Aff. ¶¶ 12-13.

Moreover, the Court should grant permissive intervention because FTE will aid the course of litigation by vigorously opposing Plaintiffs' central theory – that FTE's science is tantamount to religion – an issue that is only peripheral to Dover's policy.  It would be a gross miscarriage of justice were this Court to rule

that IDT is purely religious, absent a reasoned, expert defense of the matter by the one entity that has the greatest interest in IDT.  As set forth in § I(D), *supra*, FTE's significant interests are not "already represented in the litigation."  *Kitzmiller*, 2005 WL 578974, at * 6.

FTE's asserted intervention interests are very unlike those represented by the parents of Dover students, which this Court rejected in March of 2005.  FTE is currently subject to invasive, extensive discovery requests; its president is under subpoena for deposition; and its core legal interest is the very central issue raised by Plaintiffs themselves.  *See* Buell Aff. ¶¶ 7, 9-11.  Adding FTE to the case will better inform this Court of the legal issue, and potentially reduce the litigation costs to Dover area taxpayers by allowing FTE to focus on the "science equals religion" claim, while the present Defendants focus on defense of their policies.  As to Plaintiffs, any marginal increase in their litigation costs is a direct consequence of the incredibly broad relief they seek, and would be properly borne by Plaintiffs regardless of which parties are defendants.

Counsel for the proposed intervenor made a good faith effort to obtain the consent of both Plaintiffs and Defendants, but both parties advised that they oppose this application.

Therefore, the Applicant Foundation for Thought and Ethics respectfully requests that the Court grant its application to intervene.

Respectfully submitted,

By:   _s/Leonard G. Brown, III_____
      **Leonard G. Brown, III, Esq.**
      PA I.D. No. 83207
      **Randall L. Wenger, Esq.**
      PA I.D. No. 86537
      **Dennis E. Boyle, Esq.**
      PA I.D. No. 49618
      **CLYMER & MUSSER, P.C.**
      23 North Lime Street
      Lancaster, PA 17602-2912
      (717) 299-7101

      **Jeffrey C. Mateer, Esq. \***
      Texas State Bar No. 13185320
      **MATEER & SHAFFER, L.L.P.**
      1300 Republic Center
      325 N. St. Paul Street
      Dallas, Texas 75202
      Telephone: (214) 720-9900
      Facsimile: (214) 720-9910

      **Benjamin W. Bull, Esq. \***
      Arizona State Bar No. 009940
      **Gary S. McCaleb, Esq. \***
      Arizona State Bar No. 018848
      **Elizabeth A. Murray, Esq. \***
      Arizona State Bar No. 022954
      **ALLIANCE DEFENSE FUND**
      15333 North Pima Road Suite 165
      Scottsdale, AZ  85260
      Tel: (800) 835-5233
      Fax: (480) 444-0028

      **Kelly J. Shackelford, Esq. \***
      Texas Bar No. 18070950
      **Hiram S. Sasser, III, Esq. \***
      Texas Bar No. 24039157
      Oklahoma Bar No. 19559

18

**LIBERTY LEGAL INSTITUTE**
903 E. 18th, Suite 230
Plano, Texas 75024
Telephone: 972.423.3131
Facsimile: 972.423.8899

***Attorneys for Foundation for Thought and Ethics***

\* Application to be made for admission *pro hac vice*

19

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8**

This brief complies with the word-count limit described in Local Rule 7.8 as the word count feature of the MS Word word-processing system used to prepare this brief indicates that the actual number of words contained in this brief is 4,179.

By:   _s/Leonard G. Brown, III_____
Leonard G. Brown, III, Esquire

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the above document was served electronically on the below listed individuals by electronic filing using the ECF system for the United States District Court, Middle District of Pennsylvania, and is available for viewing on its website.

Eric Rothschild
Alfred H. Wilcox
Pepper Hamilton, LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, Pennsylvania 19103

Patrick Gillen
Thomas More Law Center
24 Frank Lloyd Wright Drive
P.O. Box 93
Ann Arbor, Michigan 48106

By:    _s/Leonard G. Brown, III_____
       Leonard G. Brown, III, Esquire

Date: May 27, 2005