

Slip Copy                                                                                                    Page 1
2005 WL 578974 (M.D.Pa.)
**(Cite as: 2005 WL 578974 (M.D.Pa.))**

Only the Westlaw citation is currently available.

United States District Court,
M.D. Pennsylvania.
Tammy KITZMILLER, et al. Plaintiffs
v.
DOVER AREA SCHOOL DISTRICT and Dover
Area School District Board of Directors,
Defendants.
**No. 04CV2688.**

March 10, 2005.

MEMORANDUM AND ORDER

JONES, J.

**\*1** THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Pending before the Court is a Motion to Intervene as Defendants (doc. 27) filed by Michael and Sheree Hied, Raymond and Cynthia Mummert, and James and Martha Cashman (the "Applicants") on January 17, 2005. Also pending before the Court is a Motion to Dismiss (doc. 30) filed by Defendants on January 28, 2005.

We will resolve the pending Motions herein, and for the reasons that follow we will deny both the Motion to Intervene and the Motion to Dismiss.

*FACTUAL AND PROCEDURAL BACKGROUND:*

On December 14, 2004, Plaintiffs filed a complaint against Defendants, Dover Area School District and Dover Area School District Board of Directors (collectively "Defendants" or "DASD"), in the United States District Court for the Middle District of Pennsylvania. (*See* Rec. Doc. 1). On January 6, 2005, Defendants filed an answer in the above-captioned case.

In the complaint, Plaintiffs assert that Defendants' October 18, 2004 resolution and November 19, 2004 press release (collectively, "the policy") facially and as applied violate the Establishment Clause of the First Amendment to the United States Constitution. (*See* Compl. at Count One). In addition, Plaintiffs state that Defendants' policy violates Art. 1, § 3 and Art. III, § § 15 & 29 of the Pennsylvania Constitution facially and as applied. *See id.* at Count Two.

The Applicants are parents of children who attend schools in the Dover Area School District. The Applicants assert that their children are either in the ninth grade at Dover High School or will reach that grade within four years. Michael and Sheree Hied have a daughter in the ninth grade at Dover High School. Raymond and Cynthia Mummert have a son in the ninth grade at Dover High School and a daughter in the fifth grade in the Dover Area School District. James and Martha Cashman have a son in the eighth grade and a daughter in the seventh grade in the Dover Area School District. (*See* App. to Intervene at 2).

On January 17, 2005 the Applicants filed the instant Motion to Intervene and on January 28, 2005 Defendants filed the instant Motion to Dismiss. The Motions have been briefed by the parties. On February 28, 2005 the Court heard argument with respect to both Motions. As a result, the Motions are therefore ripe for disposition.

*STANDARD OF REVIEW:*

With regard to the instant Motion to Dismiss, in considering a motion to dismiss, a court must accept the veracity of a plaintiff's allegations. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *see also White v. Napoleon,* 897 F.2d 103, 106 (3d Cir.1990). In *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996), our Court of Appeals for the Third Circuit added that in considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." Furthermore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *see also District Council 47 v. Bradley,* 795 F.2d 310 (3d Cir.1986).

**\*2** The applicable standards for adjudicating a motion to intervene will be more fully set forth within the analysis of the pending Motion.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*DISCUSSION:*

A. *MOTION TO INTERVENE*

 As we previously stated, the Applicants explain that they are parents of children who are either in the ninth grade at Dover High School or children who will be in the ninth grade within four years. The Applicants argue that they and their children have a First Amendment "right of access to information and ideas in an academic setting." (*See* Applicants' Br. Supp. Mot. Intervene at 2). The Applicants seek to intervene because they claim that their rights will be directly affected by Plaintiffs' lawsuit and "[i]f the Plaintiffs are successful, this lawsuit will have the effect of censoring the Dover Area School District Board and shielding ninth graders from all criticism of the theory of biological evolution." *Id.*

 As the Applicants submit, the Federal Rules of Civil Procedure provide for two types of intervention: intervention as of right and permissive intervention. *See* Fed.R.Civ.P. 24. We will discuss the two types of intervention in turn.

 1. *Intervention as of Right*

 Federal Rule of Civil Procedure 24 provides, in pertinent part, that:

 Upon timely application anyone shall be permitted to intervene in an action: (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practicable matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a). The Third Circuit Court of Appeals has instructed that Fed.R.Civ.P. 24(a) entitles an applicant to intervene if the applicant establishes that all prongs of the following four-part test are satisfied: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation. *Brody v. Spang,* 957 F.2d 1108, 1115 (3d Cir.1992); *see also Harris v. Pernsley,* 820 F.2d 592, 597 (3d Cir.1987), *cert. denied,* 484 U.S. 947 (1987). The applicant carries the burden of proving all four parts of the test under Fed .Civ.P. 24. *See United States v. Alcan Aluminum,* 25 F.3d 1174, n. 9 (3d Cir.1994).

 We will now proceed to discuss each prong of the aforementioned intervention as of right test in detail.

 a. *Timeliness of Intervention Application*

 The first prong of the intervention as of right test concerns the timeliness of the intervention application. Applicants argue that the application is timely as it was filed approximately one month after the complaint was filed and while certain activity has occurred, the prosecution of the case has not advanced significantly. (*See* Applicants' Br. Supp. Mot. Intervene at 6). Moreover, the Applicants assert that the parties have conducted limited discovery so that Plaintiffs could determine whether or not to file a motion for a temporary restraining order; however, discovery as to the merits of the claims and defenses has not yet begun. *Id.* at 6-7.

 **\*3** Timeliness is not just a function of counting days, but it is a totality of the circumstances analysis. *Alcan Aluminum,* 25 F.3d at 1181. "[W]here a party takes reasonable steps to protect its interest, its application should not fail on timeliness grounds." *Id. at 1182.*

 Although Plaintiffs maintain that the Applicants have no right to intervene as they cannot meet the standard under Fed.R.Civ.P. 24(a), they do not specifically address whether or not Applicants' application was timely.

 We hold that the intervention application is timely as it was filed approximately one month after the complaint was filed and as only limited discovery has been conducted in this case.

 b. *Interest in the Litigation*

 Federal Rule of Civil Procedure 24(a) requires that applicants demonstrate an interest in this action that is "significantly protectable." The Third Circuit instructs that this means that the asserted interests "must be legal interests as distinguished from interests of a general and indefinite character ... [T]he applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene." *Harris,* 820 F.2d at 601.

 Applicants contend that their sufficient legal interest is their "First Amendment freedom 'to receive information and ideas," ' including "making sure that their children are not prevented from learning about intelligent design" or "making sure that their children are made aware that there are gaps in the biological theory of evolution." (*See* Applicants' Br. Supp. Mot.

Intervene at 7-8, 10). Applicants cite to both *Stanley v. Georgia,* 394 U.S. 557 (1969), and *Island Trees Union Free Sch. Dist. v. Pico,* 457 U.S. 853 (1982), in support of their First Amendment freedom "to receive information and ideas" and their substantial legal interest, rooted in the First Amendment, in making sure that Applicants' children are not prevented from learning about intelligent design. (*See* Applicants' Br. Supp. Mot. Intervene at 7-9).

The caselaw relied upon by the Applicants is not applicable to the facts of this case. [FN1] First, in *Stanley v. Georgia,* 394 U .S. 557 (1969), the Supreme Court recognized a constitutional right to read or observe obscene material in the privacy of one's home. "We hold that the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime." *Id.* at 568. Second, in *Island Trees Union Free Sch. Dist. v. Pico,* 457 U.S. 853 (1982), three justices of the Supreme Court, in a plurality decision, stated that the First Amendment imposes limitations upon a local school board's exercise of its discretion to remove books from high school and junior school libraries. The basic holding in *Pico* is that a school board does not have absolute discretion to remove books from a school library. Furthermore, the Supreme Court emphasized the limited scope of the case: "the only action challenged in this case is the removal from school libraries of books originally placed there by the school authorities, or without objection from them." *Id.* at 862. Accordingly, as Plaintiffs submit, this case would only be relevant if Plaintiffs were seeking to remove books from Dover Area School District's public school libraries, which they have not asserted.

> FN1. We note at this juncture that the Applicants direct the Court to two Supreme Court cases in support of their "substantial legal interest, rooted in the First Amendment, in making sure that their children are not prevented from learning about intelligent design." (*See* Applicants' Br. Supp. Mot. Intervene at 8-10). Neither case comes even remotely close to granting a similar right to applicants similarly situated, nor are the cases cited factually similar to this case.
>
> First, the Applicants cite to *First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765 (1978). The issue before the Supreme Court was that appellants, banks and corporations, challenged the decision of the Supreme Judicial Court of Massachusetts, which

upheld the constitutionality of a Massachusetts statute which forbade certain expenditures by banks and business corporations for the purpose of influencing the vote on referendum proposals, on grounds that rights of a corporation under the First Amendment were limited to issues that materially affect its business, property or assets. *Id.* at 767-770. In reversing, the Supreme Court held that the statute at issue abridged expression that the First Amendment was meant to protect. Moreover, the Supreme Court ruled that freedom of speech was a fundamental component of the liberty safeguarded by the due process clause of the Fourteenth Amendment, which applied to corporations, and that the protection afforded to speech by corporations did not differ from that afforded to natural persons. The Supreme Court further ruled that there was no compelling state interest that justified the prohibition of speech by corporations through the statute at issue.

Of the fifty page opinion written by the Supreme Court, the Applicants extract sixteen words thereof and mischaracterize the context in which they were written. The Applicants state, "Indeed, the role of the First Amendment is not merely to foster 'individual self-expression' but also to 'afford [ ] the public access to discussion, debate and the dissemination of information and ideas' " and direct the Court to the *Bellotti* case. In fact, in that portion of the opinion, the Supreme Court states the following, after just having addressed the fact that the press does not have a monopoly on either the First Amendment or the ability to enlighten: "[T]he Court's decisions involving corporations in the business of communication or entertainment are based not only on the role of the First Amendment in fostering individual self-expression but also on its role in affording the public access to discussion, debate, and the dissemination of information and ideas." *Id.* at 782-83.

It is readily apparent to the Court that while *Bellotti* does address the First Amendment and references individual self-expression, public access to discussion, debate, and the dissemination of information and ideas, it is not in reference to the Applicants' alleged First Amendment right in making sure that their children are not prevented from

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

learning about intelligent design.

Second, the Applicants cite to *Keyishian v. Bd. of Regents,* 385 U.S. 589 (1967), with regard to their right to ensure that their children's access to knowledge and ideas will not be impeded simply because some persons do not agree with the content of those ideas. (*See* Applicants' Br. Supp. Mot. Intervene at 9-10). *Keyishian,* however, is clearly a factually distinguishable case that dealt with members of the faculty of a state university being required by state law to sign certificates stating, among other things, that they were not members of the Communist Party. Each was notified that failure to sign the certificate would result in dismissal. The Supreme Court reversed the lower court's finding that the program was constitutional, holding that the statutory scheme at issue was void for vagueness and overly broad in violation of the First Amendment. Specifically, the laws were held to be invalid insofar as they prescribed mere knowing membership without any showing of specific intent to further the unlawful aims of the Communist Party. Although the Applicants excerpt out of the thirty page opinion the fact that "students must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding," we do not find this case to support the Applicants' asserted First Amendment interest in this case.

**\*4** Plaintiffs' prayer for relief in their complaint states, in pertinent part, that they request an injunction requiring the removal of the book *Of Pandas and People* from "the School District's science classrooms." (*See* Rec. Doc. 1 at 22(b)). Despite the Applicants' assertions to the contrary, Plaintiffs further reiterated their desired relief, of requiring the removal of the aforementioned book from the science classrooms, in their submissions to the Court and at the hearing on the instant Motions before the Court on February 28, 2005. It is therefore clear to the Court that Plaintiffs only seek to remove the book *Of Pandas and People* from the Dover Area School District's science classrooms, and not from its school libraries. Accordingly, we find that the Supreme Court's *Pico* decision is not applicable to the case *sub judice,* as it concerned the removal of books from the library, and we decline to make new law extending the Supreme Court's holding to the removal of books from science classrooms. Moreover, we are aware of no case, nor have the

Applicants directed the Court to caselaw which establishes a First Amendment freedom "to receive information and ideas" as it relates to receipt of the information sought to be conveyed via implementation of the instant policy or a similar one.

While we have no question that the Applicants have a bona fide concern in this case, we do not find that the novel argument raised by Applicants, which as noted asserts a First Amendment freedom "to receive information and ideas," constitutes a "legal interest as distinguished from interests of a general and indefinite character." *Harris,* 820 F.2d at 601; *see also United States v. American Telephone and Telegraph Co.,* 642 F.2d 1285, 1292 (D.C.Cir.1980). In addition, we find that the Applicants have not demonstrated a "tangible threat to a legally cognizable interest[.]" *Harris,* 820 F.2d at 601. Accordingly, the Applicants have not demonstrated an interest in the litigation to justify intervention as of right pursuant to Fed.R.Civ.P. 24(a).

Although the Applicants carry the burden of proving all four parts of the test under Fed.R.Civ.P. 24(a) and have failed to do so with respect to the interest in the litigation prong, in the exercise of completeness we will analyze the remaining two prongs of the test in this narrative. *See Alcan Aluminum,* 25 F.3d at n .9; *see also Harris,* 820 F.2d at 596 ("Although these requirements are intertwined, each must be met to intervene as of right.").

c. *Potential Impairment of the Interest*

Once an applicant for intervention has established that he or she has a sufficient legal interest in the underlying dispute, the applicant must also show that the interest is in jeopardy in the lawsuit. *Id.* In making such a determination, the court is obligated to assess the "practicable consequences of the litigation," and "may consider any significant legal effect on the applicants' interest." *Id.* at 601.

**\*5** The only case cited by the Applicants in their brief in support of the Motion to Intervene, concerning this prong of the intervention as of right standard, is *Harris v. Pernsley,* 820 F.2d 592 (3d Cir.1987), *cert. denied,* 484 U.S. 947 (1987). Moreover, the Applicants only cited *Harris* after reciting the above-referenced impairment of the interest standard. (*See* Applicants' Br. Supp. Mot. Intervene at 10-11). Subsequent to a characterization of what Plaintiffs are seeking to do in this lawsuit, the Applicants assert that there is no doubt that their claimed First Amendment right to access information

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

is placed "in jeopardy" by this lawsuit.

As we have previously determined that the First Amendment freedom "to receive information and ideas" is not a cognizable interest in the litigation which warrants intervention as of right on the part of the Applicants, it logically follows that we need not determine whether the Applicants' alleged interest as so expressed is placed in jeopardy by the case *sub judice.* Accordingly, Applicants have failed to prove this part of the intervention as of right test.

d. *Representation by Existing Party in Litigation*

The final prong of the intervention as of right test is that Applicants must demonstrate that their interests are not adequately represented by the existing parties in the lawsuit. *Hoots v. Pa.,* 672 F.2d 1133, 1135 (3d Cir.1982). The Applicants must demonstrate that their interests are sufficiently different that the representative cannot give those interests proper attention. The Third Circuit Court of Appeals has instructed that representation is typically considered to be inadequate for any one of the following three reasons:

   (1) Although the applicants' interests are similar to those of a party, they are sufficiently diverse that there is a risk that the existing party cannot or will not devote proper attention to the applicant's interest;
   (2) There is collusion between the representative party and the opposing party; or
   (3) The representative party has not been diligent in prosecuting the litigation.
   *Id.*

Applicants assert that they meet the inadequate representation prong because there is enough divergence between their interests and Defendants' interests to present the risk that Applicants' interests will not be pursued. (*See* Applicants' Br. Supp. Mot. Intervene at 12). Applicants contend that they bring a perspective that is "currently absent." They allege that Defendants will seek to satisfy the *"Lemon Test"* [FN2] to defend the constitutionality of DASD's policy under the Establishment Clause; however, Applicants will "focus more intensely on the implications of Defendants' policy[.]" (*See* Applicants' Reply Br. at 9).

     FN2. *Lemon v. Kurtzman,* 403 U.S. 602 (1971).

Plaintiffs counter the Applicants' inadequacy of representation arguments by stating that the

Applicants have not asserted a distinct interest that remains unprotected in this litigation, and Plaintiffs point out as well that the Applicants acknowledge that Defendants are defending their shared interests "vigorously." [FN3] Moreover, Plaintiffs aptly submit that there is a well-settled presumption that a government entity named as a defendant charged with representing the interests of proposed intervenors will do so adequately. *Del. Valley Citizens Council for Clean Air v. Pa.,* 674 F.2d 970, 973 (3d Cir.1982). Plaintiffs explain that this presumption applies equally to school officials such as Defendants in this action. *Brody,* 957 F.2d at 1123 ("Other courts have held, particularly in the context of school desegregation cases, that the presumption applies when students seek to intervene in cases against school officials, because school officials are charged by law with representing the interests of students").

     FN3. The Applicants stated in their brief in support of their Motion to Intervene that "... there is no reason to believe that the Defendants will fail to prosecute their defenses vigorously[.]" (*See* Applicants' Br. Supp. Mot. Intervene at 13, n. 1).

**\*6** After carefully considering the record, including but not limited to the three typical reasons constituting inadequate representation as delineated by the Third Circuit Court of Appeals, we do not find that any interest alleged by the Applicants is not being adequately represented by Defendants in this action. *See Hoots,* 672 F.2d 1135.

First, the Applicants have not presented sufficient evidence to demonstrate that their alleged interests are sufficiently diverse to those of Defendants that there is a risk that the existing party, Defendants, cannot or will not devote proper attention to the Applicants' interest. Second, the Applicants have not raised the issue of potential collusion between the representative party, Defendants, and the opposing party, Plaintiffs, thus this issue does not warrant discussion. Finally, the Applicants themselves state that there is no reason to believe that the representative party, Defendants, will fail to prosecute their defenses "vigorously." [FN4] There is consequently no reason to believe that the representative party is not diligently prosecuting the lawsuit. Moreover, this Court's exposure to Defendants' counsel as it relates to the instant litigation leads us to conclude that counsel have at every turn thus far rendered zealous, professional, and appropriate representation to the Defendants.

This translates, in our view, to a finding that Defendants, through their able counsel, will certainly protect the interests of the Applicants as this case proceeds to trial.

> FN4. As we previously explained, the Applicants stated in their brief in support of their Motion to Intervene that "... there is no reason to believe that the Defendants will fail to prosecute their defenses vigorously[.]" (*See* Applicants' Br. Supp. Mot. Intervene at 13, n. 1).

We therefore conclude that the Applicants have not demonstrated that their alleged interests are not being adequately represented by the Defendants in this action. As a result of Applicants' failure with respect to this prong, as well as the "Interest" and "Impairment" prongs of the intervention as of right test, intervention as of right pursuant to Fed.R.Civ.P. 24(a) is accordingly not warranted in the case *sub judice.*

We will now discuss the Applicants' alternative argument that the Court grant their intervention application under Fed.R.Civ.P. 24(b), which provides for permissive intervention.

2. *Permissive Intervention*

Under Fed.R.Civ.P. 24(b), upon timely application, anyone may be permitted to intervene in an action when the applicants' claim or defenses in the main action have a question of law or fact in common. Whether to grant permissive intervention is within the Court's discretion, but in making this determination courts consider whether the proposed intervenors will add anything to the litigation. *Hoots, 672 F.2d at 1136.* Additionally, if the interests of the proposed intervenors are already represented in the litigation, courts deny such application to intervene. *See id.*

Applicants assert that the issues raised in this case are of great public importance, the public will be better served if all competing interests are heard and considered in resolving the matter, and that applicants will not increase the costs to Dover taxpayers, regardless of the outcome. (*See* Applicants' Br. Supp. Mot. Intervene at 14; *see also* Applicants' Reply Br. at 10-11).

**\*7** In response, Plaintiffs argue that Applicants do not explain why they need to intervene or show how their participation as defendants would bring

anything new or useful to the litigation. (*See* Pls.' Br. Opp. Applicants' Mot. Intervene at 15-16). Moreover, Plaintiffs submit that the end result of adding Applicants to the litigation would be a substantial increase in the amount of any fee award to Plaintiffs if they prevail and more litigation costs for the school district, regardless of the outcome. *Id.* Plaintiffs, who are all Dover residents and taxpayers, assert that they have no interest in increasing the amount of any fee award beyond that which is necessary for them to prevail. Finally, Plaintiffs propose that Applicants file *amicus curie* briefs if they want to participate and have something to tell the Court that is not covered by Defendants. *See id.* at 17.

In their reply brief, Applicants cite to *Independent Federation of Flight Attendants v. Zipes,* 491 U.S. 754 (1989). In *Zipes,* a Title VII suit was brought by flight attendants against an airline. Petitioner intervenor, a union, sought permission to intervene on behalf of flight attendants. The Supreme Court held that district courts may award attorney fees under § 706(k) of the Civil Rights Act of 1964 against losing parties who are not charged with civil rights violations, but who intervene to protect their own rights, only where the intervenors' action is frivolous, unreasonable or without foundation. Applicants mischaracterize *Zipes* by stating that "The Supreme Court has held unequivocally that innocent intervenors are not liable to prevailing plaintiffs, *and a non-prevailing state actor defendant is not liable for fees incurred by the plaintiff in addressing the intervenor's claims.*" (Applicants' Reply Br. at 11)(emphasis added). Our reading of *Zipes* reveals that the portion of the Applicants' interpretation emphasized by us is decidedly incorrect, and that they have extended the Supreme Court's holding far beyond what is expressed in that case.

The impact of *Zipes* upon this litigation arises only in the following situation: if Plaintiffs ultimately prevail in this action and if we determine that the Applicants can intervene in the lawsuit but that they are found to be "innocent intervenors," then under the authority of *Zipes,* we should not award Plaintiffs attorney's fees against the losing intervenors. However, contrary to Applicants' argument, there is nothing within *Zipes* which indicates that Defendants would be insulated from all or a portion of their exposure to the fees and costs of Plaintiffs in the event that they prevail, to the extent that these fees and costs were triggered by the intervention by the Applicants. Simply stated, we agree with Plaintiffs that were we to grant the Applicants' Motion, Defendants' exposure to even greater fees and costs,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

should they fail to prevail, would be greatly increased.

 **\*8** To summarize, after a thorough review of the record and in the sound discretion of the Court, we find that permissive intervention pursuant to Fed.R.Civ.P. 24(b) is not warranted in this case. First, in conducting our intervention as of right analysis under Rule 24(a), we determined that although the intervention application was timely, Applicants' First Amendment freedom "to receive information and ideas" was not a cognizable interest in the litigation warranting intervention, and accordingly we did not need to determine whether the Applicants' alleged interest was placed in jeopardy. We likewise found that Applicants' alleged interests were being adequately represented by Defendants in this action. In making these determinations, we have also concluded that the Applicants will not add anything to the litigation. The Third Circuit Court of Appeals has explained that if the interests of the proposed intervenors are already represented in the litigation, courts deny such applications to intervene. *Hoots, 672 F.2d at 1136.* Second, as Plaintiffs submit, courts consider any potentially adverse impact that intervention may have on the original parties. Although the Applicants assert that they will not increase the costs to Dover area taxpayers, regardless of the outcome, we find it impossible to believe that the participation of six additional defendants will not increase, potentially in a substantial fashion, discovery requests, depositions, discovery costs, pretrial work, the length of trial, and the extent of post-trial motions. As noted and contrary to the Applicants' assertions, we believe that at least a portion of the exposure to additional fees and costs would rest squarely upon the shoulders of the Dover School District taxpayers.

 Permissive intervention under Fed.R.Civ.P. 24(b) is not warranted in this case as the Applicants will not contribute anything to the litigation, and in fact will likely have a potentially adverse impact on existing parties relating to their exposure to fees and costs.

 B. *MOTION TO DISMISS*

 In their Motion to Dismiss, Defendants assert that Plaintiffs Eveland, Sneath, Smith, and the Callahans must be dismissed because they lack standing. Defendants also argue that the Court should dismiss Plaintiffs' claim of "coerced religious practice" under Art. I, § 3 of the Pennsylvania Constitution as Plaintiffs have not alleged facts sufficient to support such a claim. Finally, Defendants contend that the

Court should dismiss Plaintiffs' claims of improper use of public monies and appropriations brought pursuant to Art. III, § § 15 and 29 of the Pennsylvania Constitution as they are redundant claims that amount to a single allegation under the Establishment Clause.

 We will address each of Defendants' arguments in turn.

 1. *Standing Claims*

 The Third Circuit Court of Appeals has explained that the standing requirements embodied in the "case" or "controversy" provision of Article III mean that in every case, the plaintiff must be able to demonstrate the following: first, an "injury in fact," an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; second, a causal link between the injury and the conduct at issue; and third, it must be likely that the injury will be redressed by a favorable decision. *See Fair Housing Council of Suburban Phila. v. Montgomery Newspapers, 141 F.3d 71, 74 (3d Cir.1998)*(*citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)*).

 a. *Ripeness*

 **\*9** Defendants maintain that Plaintiffs Eveland and Sneath lack standing because their claims on behalf of children currently in the first grade are not ripe. (Defs.' Br. Supp. Mot. Dismiss at 12-14). These children are at least eight years away from attending Dover High School and the ninth-grade biology class, Defendants argue, and their claims are therefore remote, speculative, and not ripe for adjudication. *Id.* at 12-13.

 In response, Plaintiffs submit that Defendants do not dispute that, as both parents allege in the complaint, their children attend elementary school in the DASD, they intend to send their children to the Dover High School, and there is nothing to suggest that the policy at issue will be rescinded at some point before the children of Plaintiffs Eveland and Sneath attend the Dover High School. (Pls.' Br. Opp. Mot. Dismiss at 11).

 It is important to first note that the Third Circuit applies a "relaxed ripeness standard" to constitutional claims. *Peachlum v.. City of York, 333 F.3d 429, 434 (3d Cir.2003)*("A First Amendment claim, particularly a facial challenge, is subject to a relaxed

ripeness standard."). Second, although Defendants have apparently concluded that the eight years it will take the children of Plaintiffs Eveland and Sneath to reach the ninth grade is too remote to satisfy Article III, they cite to no cases establishing an eight year limitation on standing to challenge unconstitutional government conduct. In fact, although the cases Defendants rely upon do not suggest temporal rules for determining standing, they suggest that we create such guidelines and apply them here in an *ad hoc* manner. Moreover, the cases relied upon by Defendants are distinguishable from the case *sub judice* in that there is no indication that the "injury-triggering event," the policy, will not be in effect and applied to Plaintiffs' children when they reach the ninth grade. [FN5]

> FN5. Defendants assert that Plaintiffs Eveland and Sneath will face no hardship if the Court defers resolution of their claims, which are based on "contingent future events that may never occur" and cite to *Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319 (3d Cir.1998). In *Ridge,* labor organizations filed an action against the governor and state officials, seeking a declaration that an amendment to the state workers compensation act violated the United States and Pennsylvania Constitutions. The governor and state officials moved to dismiss the lawsuit and the district court granted the motion to dismiss, basing its holding on the conclusion that the claims were not ripe and, therefore, did not present a justiciable controversy. On appeal, the Third Circuit affirmed on the ground that the dispute was not justiciable because the labor organizations had failed to demonstrate a present controversy ripe for resolution by the federal courts, where there was a great deal of uncertainty regarding how the statute would operate against the labor organizations' members. Thus, the Third Circuit determined that the claim was premature, not based on *whether* the plaintiffs would be affected, but based on *how* they would be affected.
>
> The case before the Court is readily distinguishable because as long as a student attends the Dover High School and matriculates through the ninth grade, he or she is susceptible to the policy at issue in this case. The "great deal of uncertainty" which arose in *Ridge* regarding a statute's interpretation is lacking in this case because

there is no issue as to how the policy will affect a ninth grade student, i.e. he or she will receive the information as mandated by Defendants.

A second case relied upon by Defendants that is distinguishable from the case *sub judice* is that of *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092 (9th Cir.2000), which involved a challenge to a high school's decision not allow student speakers to deliver sectarian, proselytizing speeches at their graduation. The court explained that later-included plaintiffs, current students and individuals, lacked standing because the likelihood of their being selected to speak at a graduation was too speculative to satisfy the injury-in-fact requirement of Article III. "This threat of injury is neither real nor immediate." *Id.* at 1100. As Plaintiffs submit, the standing issue in Cole did not turn on how many years away plaintiffs were from being exposed to the challenged policy, but whether that policy would even need to be applied when they reached that point. Here, however, as we previously discussed, there has been no indication that the policy at issue will not be in effect and apply to Plaintiffs' children when they reach the ninth grade.

Finally, Defendants rely upon, *Auerbach v. Bd. of Educ.,* 136 F.3d 102 (2d Cir.1998), in support of their assertion that "because the claims of these Plaintiffs rest on future events that may never occur, their claims are not ripe and should be dismissed." (Defs.' Br. Supp. Mot. Dismiss at 14). The plaintiffs in *Auerbach* were teachers challenging a retirement policy whose claims were dismissed on ripeness grounds because they had not retired at the time the lawsuit was filed in March 1995. The important distinguishing factor between the *Auerbach* case and this case is that in *Auerbach,* the retirement policy "was effective only through June 30, 1996 ... [a]s a result, any unretired teacher may be subject to entirely different contractual terms at the time he or she actually retires." *Id.* at 109.

In this case, there is no sunset clause included within the policy and likewise no indication that the policy will not be in effect and applied to Plaintiffs' children when they reach the ninth grade.

We therefore hold that Plaintiffs Eveland and Sneath

should not be dismissed based upon ripeness grounds. Defendants' Motion to Dismiss Plaintiffs Eveland and Sneath is accordingly denied.

b. *Mootness*

Defendants contend that the claims for prospective relief made by Plaintiff Smith and the Callahan Plaintiffs, who have children in the tenth grade at Dover High School, should be dismissed because their claims are moot. (Defs.' Br. Supp. Mot. Dismiss at 11). "The children of the Smith and Callahan Plaintiffs will never be exposed to the alleged policy because they have already passed the ninth grade." *Id.* Moreover, Defendants assert that these Plaintiffs, who will never have a child in the ninth-grade biology class in which the challenged curriculum is implemented, are in exactly the same position as those students who challenge prayer at high school gradations, but have graduated from the school, and therefore lack standing. (Defs.' Reply Br. at 6). "Like the graduated students, these Plaintiffs cannot make the requisite showing of a 'particularized injury' that affects them 'in a personal and individual way.' ' *Id.*

**\*10** In response, Plaintiffs assert that Defendants frame the Establishment Clause claim far too narrowly and that although students subjected to the policy in the classroom are affected most directly, courts have never defined Establishment Clause violations in public schools so narrowly as to limit standing to only those students immediately subjected to the offensive content. (Pls.' Br. Opp. Defs.' Mot. Dismiss at 8). Plaintiffs cite to *Santa Fe Indep. Sch. Dist. v. Doe,* 530 U.S. 290 (2000), in support of the proposition that the very adoption or passage of a policy that violates the Establishment Clause represents a constitutional injury. In addition, Plaintiffs maintain that their children are exposed to the policy through the students that are or will be taking the class, and through their very awareness that the DASD has favored religious ideas in their school. (Pls.' Br. Opp. Defs.' Mot. Dismiss at 9).

After a careful review of the record and in the exercise of caution, we find that it is premature at this juncture to dismiss Plaintiff Smith and the Callahan Plaintiffs from the case *sub judice.* At this stage, the record is not sufficiently developed such that we can definitely dismiss these Plaintiffs. Notwithstanding this determination, we can certainly envision that a more fully developed record could support Defendants' mootness contentions with respect to these Plaintiffs. We will thus entertain a renewed motion from Defendants at a later stage in this litigation if Defendants elect to revisit their arguments in this regard. Defendants' Motion to Dismiss Plaintiff Smith and Callahan Plaintiffs is therefore denied.

2. *Plaintiffs' State Law Claims*

Defendants first argue that Plaintiffs have asserted a claim under the Pennsylvania Constitution for "coerced religious practice (i.e., free exercise of religion);" however, Plaintiffs respond by stating that the plain language of the complaint did not state a free exercise of religion claim under either the Pennsylvania or the United States Constitution. (*See* Defs.' Br. Supp. Mot. Dismiss at 15-16; *see also* Pls.' Br. Opp. Defs.' Mot. Dismiss at 15-18). Plaintiffs explain that the gravamen of their constitutional claim is identical to their Establishment Clause claim, which is clear from the structure of their complaint, to which Defendants respond that Count Two of Plaintiff's Complaint, which alleges state constitutional claims, adds nothing to this lawsuit that is not already encompassed in the Establishment Clause claim of Count One. Accordingly, Defendants contend that Plaintiffs' redundant claims amounting to a single violation under the Establishment Clause should be dismissed under Fed.R.Civ.P. 12(f).

We preliminary note that our dialogue with counsel at oral argument had the salutary effect of allowing the parties to agree that nowhere in Plaintiffs' complaint does there exist a free exercise of religion claim. As a result, it is not necessary for us to further reach Defendants' Motion as it relates to that point. Although Defendants assert that Plaintiffs failed to state a claim under Art. III, § § 15 and 29 of the Pennsylvania Constitution, Plaintiffs argue that they have stated claims under Art. III, § § 15 and 29 because these sections are to be read *in pari materia* with Art. I, § 3. "Following this established principle, plaintiffs' Count Two pleads these sections conjunctively as the basis for their state constitutional claim." (Pls.' Br. Opp. Defs.' Mot. Dismiss at 19). Plaintiffs further assert that Defendants want the Court to treat the above-referenced sections disjunctively, which is inconsistent with the Pennsylvania Supreme Court.

**\*11** In resolving this somewhat obtuse issue grounded in Pennsylvania constitutional law, we will first note that the Pennsylvania Supreme Court opined in *Springfield Sch. Dist. v. Commonwealth of Pa.,* 397 A.2d 1154 (Pa.1979), that it earlier held that the provisions of Art. I, § 3 of the Pennsylvania Constitution do not exceed the limitations in the First

Amendment's Establishment Clause. *See Wiest v. Mt. Lebanon Sch. Dist.,* 320 A.2d 362, 366 (Pa.1974), *cert. denied,* 419 U.S. 967 (1974). In discussing the provisions of Art. I, § 3, the Pennsylvania Supreme Court stated:

> The principles enunciated in this part of our Constitution reflected a concern for the protection of the religious freedoms of Pennsylvanians long before the first amendment to the United States Constitution was made applicable to the states through the fourteenth amendment ... The protection of rights and freedoms secured by this section of our Constitution, however, does not transcend the protection of the first amendment of the United States Constitution.

> *Wiest,* 320 A.2d at 366.

 Second, the limitations provided in Art. III, § 15 and 29 apply only when state funds flow to the sectarian school or institution. For constitutional purposes, "appropriation" means "a designation of money raised by taxation to be withdrawn from the public treasury for a specifically designated purpose." *Commonwealth v. Perkins,* 21 A.2d 45, 48 (Pa.1941). Although Defendants assert that no public monies were improperly designated or appropriated for the challenged portion of the ninth-grade biology curriculum and that no public monies were used for the purchase of the book *Of Pandas and People* as it was donated to the school, taking Plaintiffs' allegations as true as we must at this stage of the litigation, we find that the complaint alleges that the policy will at minimum require staff time for the presentation of intelligent design to students. If true, this implicates the limitations as set forth in Art. III, § 15 and 29.

 Moreover, and in the same vein, Defendants have argued that we should dismiss Count Two of Plaintiffs' complaint as the claims are redundant and would provide no additional basis for relief. We will decline to do so at this juncture as we have supplemental jurisdiction over pendent state constitutional claims in any event, even if we find the claims to be identical. *See* 28 U.S.C. § 1367. While there may arise significant issues as to what relief Plaintiffs may be entitled to under Count Two, a resolution of those issues at this stage of the litigation is unnecessary and thus premature. Defendants' Motion to Dismiss is therefore denied with respect to Plaintiffs' state law claims as expressed within Count Two of their complaint.

 NOW, THEREFORE, IT IS ORDERED THAT:
   1. The Applicants' Motion to Intervene (doc. 27) is

DENIED.
   2. Defendants' Motion to Dismiss (doc. 30) is DENIED.

 2005 WL 578974 (M.D.Pa.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.