## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TAMMY KITZMILLER; BRYAN AND
CHRISTY REHM; DEBORAH
FENIMORE AND JOEL LIEB; STEVEN
STOUGH; BETH EVELAND; CYNTHIA
SNEATH; JULIE SMITH; AND ARALENE
("BARRIE") D. AND FREDERICK B.
CALLAHAN,

                Plaintiffs,

                v.

DOVER AREA SCHOOL DISTRICT;
DOVER AREA SCHOOL DISTRICT
BOARD OF DIRECTORS,

                Defendants.

Civil Action No. 04-CV-2688

Honorable John E. Jones III

## PLAINTIFFS' BRIEF OPPOSING APPLICATION TO INTERVENE BY
## FOUNDATION FOR THOUGHT AND ETHICS

Eric Rothschild (PA 71746)
Alfred H. Wilcox (PA 12661)
Stephen G. Harvey (PA 58233)
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103

Thomas B. Schmidt, III (PA 19196)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
P.O. Box 1181
Harrisburg, PA  17108

Witold J. Walczak (PA 62976)
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213

Paula K. Knudsen (PA 87607)
ACLU of Pennsylvania
105 N. Front St., Suite 225
Harrisburg, PA  17101

Ayesha Khan (adm. *phv*)
Richard B. Katskee (adm. *phv*)
Alex J. Luchenitser (adm. *phv*)
Americans United for Separation
    of Church and State
518 C St., NE
Washington, DC 20002

Attorneys for Plaintiffs,
TAMMY KITZMILLER; BRYAN AND
CHRISTY REHM; DEBORAH
FENIMORE AND JOEL LIEB; STEVEN
STOUGH; BETH EVELAND; CYNTHIA
SNEATH; JULIE SMITH, AND
ARALENE ("BARRIE") D. AND
FREDERICK B. CALLAHAN

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................ii

I.   INTRODUCTION .................................................................................. 1

II.  COUNTERSTATEMENT OF FACTS.................................................... 1

III. ARGUMENT ......................................................................................... 3

    A.   FTE Is Not Entitled to Intervention as of Right .......................... 3

        1.   FTE's Application Is Not Timely.......................................... 4

        2.   FTE Does Not Have a Sufficient Interest in the Litigation....... 9

        3.   FTE's Interest Will Not Be Impaired by the Litigation ........... 15

        4.   Defendants Can Adequately Represent FTE's Interests .......... 15

    B.   FTE Is Not Entitled to Permissive Intervention ................................. 19

IV.  CONCLUSION .................................................................................... 22

# **TABLE OF AUTHORITIES**

**Page(s)**

## CASES

AMS Constr. Co., Inc. v. Reliance Ins. Co., No. 04-CV-2097, 2004 U.S.
    Dist. LEXIS 23078 (E.D. Pa. Nov. 15, 2004)....................................... 10

In re Asbestos Litigation, No. 83-0268, 1991 U.S. Dist. LEXIS 5255 (E.D.
    Pa. Apr. 18, 1991) ........................................................................... 5

Edwards v. Aguillard, 482 U.S. 578 (1987)........................................... 3, 7

FTC v. Mercury Marketing of Delaware, Inc., No. 00-3281, 2004 U.S. Dist.
    LEXIS 17730 (E.D. Pa. 2004)........................................................ 14

Harris v. Pernsley, 820 F.2d 592 (3d Cir. 1987) ..................................... 4, 9

Harris v. Reeves, 946 F.2d 214 (3d Cir. 1991) ........................................ 9

Harrisburg Hosp. v. Thornburgh, 611 F. Supp. 900 (M.D. Pa. 1985) ............... 4, 19

Haymond v. Lundy, No. 99-5048, 2002 U.S. Dist. LEXIS 18110 (E.D. Pa.
    2002)................................................................................................ 14

Kitzmiller v. Dover Area Sch. District, No. 04cv2688, 2005 U.S. Dist.
    LEXIS 3693 (M.D. Pa. Mar. 10, 2005)................................... 4, 7, 9, 14,
                                                                              16, 18, 19, 21

Kleissler v. U.S. Forest Service, 157 F.3d 964 (3d Cir. 1998) ................... 11, 12, 13

Mountain Top Condo. Assoc. v. Dave Stabbert Master Bldr., Inc., 72 F.3d
    361 (3d Cir. 1995) ....................................................................... 4, 5, 9,
                                                                              10, 17

Nat'l Assoc. for Neighborhood Sch. of Pittsburgh v. Bd. of Public Educ. of
    the Sch. Dist. of Pittsburgh, 90 F.R.D. 398 (W.D. Pa. 1981) .................. 5

**Page(s)**

<u>Nat'l R.R. Passenger Corp. v. Pennsylvania Public Utility Commission</u>, No.
86-5357, 1997 U.S. Dist. LEXIS 14171 (E.D. Pa. 1997) .................................... 11

<u>New Orleans Public Serv., Inc. v. United Gas Pipe Line Co.</u>, 732 F.2d 452
(5th Cir. 1984) ......................................................................................... 11

<u>Otto v. Pennsylvania State Educ. Assoc.</u>, 107 F. Supp. 2d 615 (M.D. Pa.
2000).................................................................................................... 4, 9

<u>Pennsylvania State Univ. v. U.S. Depart. of Health and Human Serv.</u>, 142
F.R.D. 274 (M.D. Pa. 1992) ..................................................................... 14

<u>Pennsylvania v. Rizzo</u>, 530 F.2d 501 (3d Cir. 1976) ....................................... 4

<u>SEPTA v. Pennsylvania Public Utility Commission</u>, 210 F. Supp. 2d 689
(E.D. Pa. 2002) ................................................................................... 10, 11

<u>Sch. Dist. of Philadelphia v. Pennsylvania Milk Marketing Bd.</u>, 160 F.R.D.
66 (E.D. Pa. 1995) .................................................................................. 10

<u>Scott v. Snider</u>, No. 91-7080, 1993 U.S. Dist. LEXIS 18014 (E.D. Pa. Dec.
15, 1993)................................................................................................. 6

<u>U.S. v. Alcan Aluminum, Inc.</u>, 25 F.3d 1174 (3d Cir. 1994)..................... 7, 9, 10

## FEDERAL RULES

Fed. R. Civ. P. 24 *et seq.* ................................................................... 1, 19,
22

Fed. R. Civ. P. 24(a)(2) ................................................................. 3, 10, 19

Fed. R. Civ. P. 24(b)(2) ................................................................. 3

I.   **INTRODUCTION**

Plaintiffs submit this brief in opposition to the application to intervene by the Foundation for Thought and Ethics ("FTE"). FTE's only asserted interest, an economic interest in averting lost book sales, is not sufficient to warrant intervention and, even if it were, it would not be practically impaired as a result of this litigation. In addition, any underlying defense FTE seeks to assert has been and will continue to be adequately asserted by the existing defendants, Dover Area School District and its Board of Directors (collectively "District"). Furthermore, FTE's intervention in this litigation at this time would cause delay, expense and prejudice to the parties. Therefore, FTE does not meet the requirements for intervention as of right or permissive intervention pursuant to Federal Rule of Civil Procedure 24, and FTE's motion should be denied.

II.  **COUNTERSTATEMENT OF FACTS**

Defendant District requires its ninth-grade biology teachers to read a statement to their students saying:

> [Darwin's] Theory is not a fact. Gaps in the Theory exist for which there is no evidence. . . . Intelligent design is an explanation of the origin of life that differs from Darwin's view. The reference book Of Pandas and People is available for students to see if they would like to explore this view in an effort to gain an understanding of what intelligent design actually involves.

On December 14, 2004, plaintiffs filed this lawsuit seeking a declaratory judgment that defendants' intelligent design policy violates the

Establishment Clause of the First Amendment to the United States Constitution and sections of the Pennsylvania Constitution, and an injunction prohibiting defendants from implementing their policy and requiring the removal of <u>Of Pandas and People</u> ("<u>Pandas</u>") from the District science classrooms.  Compl., Prayer for Relief.

FTE is the publisher of <u>Pandas</u>.  According to its President, Jon A. Buell ("Buell"), he was aware of the pendency of the instant action shortly after it was filed, but he did not focus on its potential impact on distribution of <u>Pandas</u> until April 22, 2005, when plaintiffs served subpoenas on FTE and Buell, in the United States District Court for the Northern District of Texas, seeking Buell's deposition and documents related to <u>Pandas</u>, its drafting, and its distribution.  Application to Intervene by Foundation for Thought and Ethics, ¶ 7, (hereinafter "FTE App. at ¶ __"); Affidavit of Jon A. Buell, ¶ 6, attached as Exhibit A to FTE's App. (hereinafter "Buell Aff. at ¶ __").

FTE seeks to intervene, claiming that a ruling that intelligent design is a religious view masquerading as science[1] "would have devastating effects on

---

[1] FTE appears to argue that the only way this Court can rule in plaintiffs' favor is to find that intelligent design is the equivalent of creation science.  This is only one theory asserted by plaintiffs.  Ultimately, plaintiffs seek to establish that the teaching of intelligent design has the effect of promoting religion in violation of the United States and Pennsylvania Constitutions.  Plaintiffs' argument that intelligent design is equivalent to creation science, which was struck down by the

(continued...)

FTE's commercial and educational interests," FTE's App. at ¶ 15, because it could

lose future sales of <u>Pandas</u> and a successor publication in process, <u>The Design of</u>

<u>Life</u>, if the teaching of intelligent design in public schools is declared

unconstitutional.

III.   **<u>ARGUMENT</u>**

      FTE moves for intervention as of right under Rule 24(a)(2) or, in the

alternative, for permissive intervention under Rule 24(b)(2).  FTE has failed to

offer proof sufficient to establish its entitlement to intervention under either section

of the Rule, so its motion should be denied.

   A.   **<u>FTE Is Not Entitled to Intervention as of Right</u>**

Federal Rule of Civil Procedure 24(a)(2) provides:

> Upon timely application anyone shall be permitted to
> intervene in an action . . . (2) when the applicant claims
> an interest relating to the property or transaction which is
> the subject of the action and the applicant is so situated
> that the disposition of the action may as a practical matter
> impair or impede the applicant's ability to protect that
> interest, unless the applicant's interest is adequately
> represented by existing parties.

Under this Rule, intervention is permitted only if "(1) the application

for intervention is timely; (2) the applicant has a sufficient interest in the litigation;

---

(continued...)

Supreme Court in <u>Edwards v. Aguillard</u>, 482 U.S. 578 (1987), is only one part of
the broader constitutional argument.

(3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." Mountain Top Condo. Assoc. v. Dave Stabbert Master Bldr., Inc., 72 F.3d 361, 365-66 (3d Cir. 1995). See also Kitzmiller v. Dover Area Sch. Dist., No. 04cv2688, 2005 U.S. Dist. LEXIS 3693, *6 (M.D. Pa. Mar. 10, 2005) (attached hereto as Exhibit A); Otto v. Pennsylvania State Educ. Assoc., 107 F. Supp. 2d 615, 627 (M.D. Pa. 2000). All four of these requirements must be met in order for a court to grant intervention as of right. Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir. 1987). The burden of establishing each of these rests with the applicant seeking intervention. Pennsylvania v. Rizzo, 530 F.2d 501, 505 (3d Cir. 1976).

       1.    FTE's Application Is Not Timely

The decision whether a motion to intervene is timely lies within the sound discretion of the trial court and must be determined from all the surrounding circumstances. Mountain Top, 72 F.3d at 369. "To determine whether the intervention motion is timely, we have listed three factors for courts to consider: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." Mountain Top, 72 F.3d at 369. See also Harrisburg Hosp. v. Thornburgh, 611 F. Supp. 900, 902 (M.D. Pa. 1985). The

application of these factors to the facts of this case demonstrates that FTE's motion is untimely.

The advanced stage of this litigation renders FTE's application untimely because it will cause prejudice, delay and added expense to the parties. See In re Asbestos Litig., No. 83-0268, 1991 U.S. Dist. LEXIS 5255, *28 (E.D. Pa. Apr. 18, 1991) (attached hereto as Exhibit B) ("Although not dispositive of the question, the point to which a lawsuit has progressed is a determining factor as to the timeliness of the motion to intervene."); Mountain Top, 72 F.3d at 370 ("[T]he stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved."). Thus far, 36 depositions have been taken in this case, including 9 expert depositions, and only three depositions remain to be taken. Discovery is set to close this month and this case is scheduled to go to trial in September. Additional defendants will mean more witnesses, depositions, and discovery, as well as possible additional pre-trial motions, threatening to delay the trial date.

Although the parties already have completed most of the depositions and other discovery necessary, they may have to depose additional witnesses and engage in additional discovery if FTE is permitted to intervene. See Nat'l Assoc. for Neighborhood Sch. of Pittsburgh v. Bd. of Public Educ. of the Sch. Dist. of Pittsburgh, 90 F.R.D. 398, 404 (W.D. Pa. 1981) (indicating that granting

intervention would prolong litigation because of additional discovery needed by applicant). The consequence is more expense and delay for the current parties, and duplication of efforts they already have diligently completed. See Scott v. Snider, No. 91-7080, 1993 U.S. Dist. LEXIS 18014, *16 (E.D. Pa. Dec. 15, 1993) ("Despite . . . Intervenors' claim that they will not conduct any discovery, additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, objections, briefs, arguments, motions and the like.") (citations and quotations omitted). Defendants also acknowledge the unnecessary prejudice, delay, expense and duplicative efforts that the parties will incur if FTE is permitted to intervene. Defendants' Memorandum of Law in Opposition to FTE's Application to Intervene, p. 7 (hereinafter "Defendants' Mem. at __") (explaining that the broad nature of FTE's claim of interest would "require the wholesale relitigation of this case," which will "result in tremendous burdens, expense and delay").

In ruling on the motion of certain Dover parents to intervene, this Court recognized the delay and expense that additional defendants would cause here, even when the application was made shortly after the complaint was filed. "Although the Applicants assert that they will not increase the costs to Dover area taxpayers, regardless of the outcome, we find it impossible to believe that the participation of six additional defendants will not increase, potentially in a

substantial fashion, discovery requests, depositions, discovery costs, pretrial work, the length of trial, and the extent of post-trial motions." <u>Kitzmiller</u>, 2005 U.S. Dist. LEXIS 3693, at *23.

Furthermore, FTE's application is untimely because FTE does not have a sufficient reason for its delay. Buell admitted that he has been aware of the litigation for some time now through media reports. Buell Aff. at ¶ 6. Given that FTE claims that this case squarely presents an issue that is of vital importance to FTE and Buell, FTE should have recognized back then the asserted implications of this litigation on FTE's activities. <u>See</u> <u>U.S. v. Alcan Aluminum, Inc.</u>, 25 F.3d 1174, 1183 (3d Cir. 1994) ("To the extent the length of time an applicant waits before applying for intervention is a factor in determining timeliness, it should be measured from the point at which the applicant knew, or should have known, of the risk to its rights.").

In a letter written by Buell in 1987, before FTE's publication of <u>Pandas</u> and also before the Supreme Court's ruling in <u>Edwards v. Aguillard</u>, Buell made a projection of <u>Pandas</u>' revenues if the Supreme Court did not uphold the Louisiana "Balanced Treatment Act," and a different projection if it did uphold the statute. <u>See</u> Expert Report of Barbara Forrest, Ph.D., pp. 24-25 (attached hereto as Exhibit C). Given that Buell and FTE were sensitive to the impact legal rulings could have on their sales almost twenty years ago, surely they could reasonably

have anticipated the alleged effect this case could have on their sales when Buell

first heard of this suit some time ago.  Although FTE argues that it did not

understand that the case would strike at intelligent design, the recognition that

rulings on creation science affect intelligent design book sales belies FTE's claim

now.

　　　　FTE also claims its delay is attributable to the fact that it only recently

became aware of plaintiffs' claim that intelligent design is a religious view.  FTE's

Memorandum of Law in Support of Application for Intervention by Foundation for

Thought and Ethics, p. 2, (hereinafter "FTE's Mem. at __"); Buell Aff. at ¶ 10.

This attempt at claiming ignorance fails for two reasons.  First, plaintiffs made

clear from the inception of this suit that they believe intelligent design is a

religiously motivated viewpoint.  Compl. at p. 3 and ¶ 20.  Second, the religious

aspect of this lawsuit has been reported in national newspapers for several months.

See New York Times, USA Today and Newsday.com articles (attached hereto as

Exhibit D).  Ironically, according to FTE itself, the organization's purpose is the

"[p]romoti[on] & publishing [of] textbooks presenting a Christian perspective."

FTE's 2003 Form 990, Tax Exempt Organization Application, p. 18 (attached

hereto as Exhibit E).  Given FTE's stated purpose, FTE hardly can claim it was

unaware that a text it published might be seen as inherently religious.

FTE's delay in seeking intervention can only be regarded as inexcusable.

### 2.   FTE Does Not Have a Sufficient Interest in the Litigation

To establish a sufficient interest in the litigation to warrant intervention, the applicant must assert a "significantly protectable" interest. Mountain Top, 72 F.3d at 366.  This type of interest has been defined as one that is "a legal interest as distinguished from interests of a general and indefinite character.  The applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene."  Mountain Top, 72 F.3d at 366 (citations and quotations omitted).  See also Otto, 107 F.Supp.2d at 627; Harris, 820 F.2d at 596 ("[T]his interest must be 'direct,' as opposed to contingent or remote."); Harris v. Reeves, 946 F.2d 214, 219 (3d Cir. 1991); Kitzmiller, 2005 U.S. Dist. LEXIS 3693, at *8-9.  The interest must be one that substantive law recognizes as being owned by the party seeking to intervene.  Alcan, 25 F.3d at 1185.  An applicant typically has a right to intervene where "the action will have a significant *stare decisis* effect on the applicant's rights," "the contractual rights of the applicant may be affected by a proposed remedy," Harris, 820 F.2d at 601, or the applicant is the "real party in interest" and "would have standing to raise the claim" itself.  Alcan, 25 F.3d at 1185.

FTE's only stated reason for intervening in this lawsuit is "to prevent
an economic loss of over $500,000" from the potential loss of book sales to public
educational institutions.  In addition to the fact that FTE could provide no factual
foundation for this contention, such a commercial interest is insufficient to warrant
intervention under Rule 24(a)(2).  "In general, a mere economic interest in the
outcome of the litigation is insufficient to support a motion to intervene."
Mountain Top, 72 F.3d at 366.  See also Alcan, 25 F.3d at 1185; Sch. Dist. of
Philadelphia v. Pennsylvania Milk Marketing Bd., 160 F.R.D. 66, 69 (E.D. Pa.
1995); AMS Constr. Co., Inc. v. Reliance Ins. Co., No. 04-CV-2097, 2004 U.S.
Dist. LEXIS 23078, *8 (E.D. Pa. Nov. 15, 2004) (attached hereto as Exhibit F).

In SEPTA v. Pennsylvania Public Utility Commission, 210 F. Supp.
2d 689 (E.D. Pa. 2002), for example, SEPTA and Amtrak each brought suit against
the Pennsylvania Public Utility Commission ("Commission") to enforce rights
related to whether the Commission could require them to share the cost for
maintaining and constructing bridges over railways, notwithstanding the fact that a
federal statute appeared to have exempted them from payment.  Id. at 694.  Norfolk
Southern, a non-exempt third party against whom these costs also had been
assessed, moved to intervene, claiming that it had a significant interest because its
responsibility for bridge maintenance costs was directly affected by whether
SEPTA and Amtrak were required to pay their share.  The court denied Norfolk

-10-

Southern's motion, finding that it was seeking to intervene solely on the ground that granting the relief requested by SEPTA and Amtrak "would compel Norfolk Southern to pay larger assessments," and this "mere economic interest in the outcome of the litigation [was] insufficient to support [its] motion to intervene." Id. at 704.  See also Nat'l R.R. Passenger Corp. v. Pennsylvania Public Utility Commission, No. 86-5357, 1997 U.S. Dist. LEXIS 14171 (E.D. Pa. 1997) (attached hereto as Exhibit G) (denying PennDOT's motion to intervene in declaratory judgment suit brought by Amtrak because, "[w]hile [PennDOT] may have a generalized economic or governmental interest in this case, [it] does not have a legally cognizable interest" where "its share of the cost of maintaining . . . bridges increased because of Amtrak's statutory exemption"); New Orleans Public Serv., Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 465-466 (5th Cir. 1984) ("purely economic interest" insufficient to warrant intervention where only claim of entitlement was that defendant overcharged plaintiff for gas, causing plaintiff to raise rates charged to proposed intervenors).

FTE relies on Kleissler v. U.S. Forest Service, 157 F.3d 964 (3d Cir. 1998), to support its application for intervention.  See FTE's Mem. at 7-9.  In that case, the court held:

> [T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote.  Due regard for efficient conduct of the litigation requires that intervenors should have an interest

-11-

> that is specific to them, is capable of definition, and will
> be directly affected in a substantially concrete fashion by
> the relief sought.  The interest may not be remote or
> attenuated.

Kleissler, 157 F.3d at 972.

The court also specifically held that "[t]he facts assume overwhelming importance in each decision," Kleissler, 157 F.3d at 972, and the facts in Kleissler are substantially different from those in this case.  In that case, plaintiffs were several environmentalists who filed suit against the United States Forest Service alleging that the Service violated statutory requirements by approving projects calling for the cutting of a substantial number of trees within a national forest. Plaintiffs sought an injunction barring the projects, halting all logging, and suspending or canceling contracts for logging in the forest.  Id. at 967.  The applicants for intervention were several school districts and municipalities that, pursuant to statutory provisions, received a substantial percentage of the funds earned from logging operations in the forest, as well as lumber companies, some of which already had been granted contracts to perform the logging projects at issue and others of which generated most of their income from similar logging projects in the forest.  Id. at 968.  Unlike the direct and specific economic detriment faced by the intervenors in that case, FTE can only assert a remote and attenuated economic interest.

-12-

In <u>Kleissler</u>, money from the logging contracts was guaranteed to go to the intervening school districts, who were granted intervention. <u>Id.</u> at 973 ("state law commands the Commonwealth . . . to forward to them federal grant money generated through timber harvesting"). As for the lumber companies, two already had contracts and another was a successful bidder for an additional contract. <u>Id.</u> The remaining lumber companies, although they did not have contracts in place at that time, were "very dependent on timber contracts" and "their continued existence [would] be jeopardized" if the plaintiffs prevailed. <u>Id.</u> The litigation immediately delayed the payments to the school districts and some of the lumber companies, because performance under the contracts could not commence until the court resolved whether the logging would be permitted. If the plaintiffs in that suit prevailed, there was no question but that money, that otherwise would have gone to the intervenors, would not be paid.

In this case, however, FTE already has sold its books which are now in the school system's libraries. FTE's claimed risk of future economic loss, meanwhile, is purely speculative, and it is entirely avoidable. If it turns out that FTE loses book sales to public schools, it can simply redirect its marketing efforts to religious schools, churches and individual church members, hardly an unreasonable burden for an entity whose stated mission is to promote and distribute "textbooks presenting a Christian perspective."

-13-

The United States District Courts for the Middle and Eastern Districts of Pennsylvania have denied motions to intervene for lack of a sufficiently protectable legal interest in many other instances where the proposed intervenors' only interest was an uncertain and purely economic one, just like that asserted here. See Pennsylvania State Univ. v. U.S. Dept. of Health and Human Serv., 142 F.R.D. 274, 275 (M.D. Pa. 1992) (denying motion to intervene where proposed intervenor's only interest was *potential* economic interest in earning profit from sale of health-benefit plan if federal statute required plaintiff to offer its employees the type of plan offered by proposed intervenor); FTC v. Mercury Marketing of Delaware, Inc., No. 00-3281, 2004 U.S. Dist. LEXIS 17730, *5-6 (E.D. Pa. 2004) (attached hereto as Exhibit H) (holding that proposed intervenor's application for intervention as of right failed for want of significantly protectable interest where interest asserted was for "tenuous future earnings" that could result if company to whom proposed intervenor had loaned money stayed in business); Haymond v. Lundy, No. 99-5048, 2002 U.S. Dist. LEXIS 18110, *9-10 (E.D. Pa. 2002) (attached hereto as Exhibit I) (holding that interest that was not only "clearly economic in nature," but also "qualified" in that it was "contingent" upon happening of other events, was not sufficient to support motion to intervene).

In the earlier motion to intervene filed in this case by parents of certain Dover students, this Court held that the applicants had "a bona fide concern

-14-

in this case," but that simply was not enough to warrant intervention in the suit, because they could not demonstrate a "tangible threat to a legally cognizable interest." Kitzmiller, 2005 U.S. Dist. LEXIS 3693, at *12. The same is true for FTE. Although it may be concerned with the outcome of the litigation, this concern does not amount to a direct interest such that FTE can intervene as a party.

     3.    FTE's Interest Will Not Be Impaired by the Litigation

     Even if FTE's economic interest were sufficiently protectable so as to meet that prong of the test, FTE's interest would not be impaired by this litigation. Plaintiffs do not seek an order prohibiting FTE from soliciting orders, raising contributions, or otherwise conducting its affairs. To the extent that the *stare decisis* effect of an order declaring intelligent design instruction to be unconstitutional in a public school might require FTE to redirect its marketing efforts, that indirect and attenuated effect hardly "impairs" FTE's interest in being able to present Christian perspectives. FTE will remain fully able to present those perspectives in virtually any method it chooses – direct marketing, advertising, traditional book stores, religious book stores, sales to churches, and more. FTE's "impairment," if any, will be of its own making.

     4.    Defendants Can Adequately Represent FTE's Interests

     In addition to all the above stated reasons, intervention is not warranted because it is certain that defendants will adequately represent FTE's

-15-

interests, since defendants vigorously seek to establish that intelligent design

constitutionally may be presented in public schools. "Representation will be

considered inadequate on any of the following three grounds: (1) Although the

applicants' interests are similar to those of a party, they are sufficiently diverse that

there is a risk that the existing party cannot or will not devote proper attention to

the applicants' interests; (2) There is collusion between the representative party

and the opposing party; or (3) The representative party has not been diligent in

prosecuting the litigation." Kitzmiller, 2005 U.S. Dist. LEXIS 3693, at *15, citing

Hoots v. Pennsylvania, 672 F.2d 1133, 1135 (3d Cir. 1982). Not one of these

grounds is met by FTE in this case.

First, both FTE and defendants are concerned with showing that

intelligent design is not a religious view. Defendants will be assiduous in

attempting to establish this, since the ability of plaintiffs to prove the religious

underpinnings of intelligent design is a key point in its proving that the

implementation of defendants' policy is an unconstitutional promotion of religion.

In fact, defendants already have taken significant steps in their effort to prove that

intelligent design is not religion by producing expert reports espousing exactly this

view. See Expert Report of Warren A. Nord, p. 4 (asserting that "IDT [intelligent

design theory] is not religion. . . . Indeed, it does not depend on scripture, religious

tradition, faith, or religious experience in any way. . . . IDT does not claim that

-16-

intelligent design leads us to the God of Christianity or Judaism or Islam – or, indeed, to any *god* at all."). Defendants also have specifically declared in their response in opposition to FTE's motion to intervene, that they aim to advance intelligent design as a "legitimate scientific theory," and have identified the several experts that they have retained to testify on both intelligent design and science education generally, so they can demonstrate how they believe intelligent design may constitutionally be referred to in a public school science class. Defendants' Mem. at 5-6.

"If [the] interest [of an absentee party] is identical to that of one of the present parties, . . . then a compelling showing should be required to demonstrate why this representation is not adequate." <u>Mountain Top</u>, 72 F.3d at 369-70. FTE has made no compelling argument why defendants would not make every effort to establish that intelligent design is not a religious view, or that FTE's instructional materials may be used in public school classrooms, and defendants have represented that they will "adequately represent any generalized interest in [intelligent design] that is shared with FTE." Defendants' Mem. at 5. FTE underplays defendants' interest in prevailing in this lawsuit. If defendants could simply "point to other sources that challenge 'Darwin's theory,' or revoke their policy that allows consideration of [intelligent design]," FTE's Mem. at 13, as FTE alleges they could, rather than make diligent efforts to prevail in this lawsuit, then

-17-

presumably defendants already would have done so and avoided the cost and time

involved in litigating this suit.  That defendants have done just the opposite attests

to their undeniable interest in defending the intelligent design curricula.

Second, there has been absolutely no evidence nor even any

accusation of collusion between the present parties, and therefore, this factor will

not allow FTE's intervention.

Finally, as pointed out above, there is no reason to believe that

defendants are not diligently prosecuting this suit.  In fact, this Court previously

recognized that defendants' counsel "have at every turn thus far rendered zealous,

professional, and appropriate representation to the Defendants." Kitzmiller, 2005

U.S. Dist. LEXIS 3693, *18.  There is no evidence in the record to support FTE's

contention that defense counsel are "overwhelmed" with the litigation.  If anything,

FTE's counsel is interfering with defendants' counsel's ability to adequately

represent defendants by causing defendants' experts to withdraw.  FTE's counsel,

the Alliance Defense Fund ("ADF"), also was retained as counsel for the

depositions of defendants' experts associated with the Discovery Institute ("DI"), a

Seattle-based think tank whose Center for Science and Culture promotes intelligent

design.  On June 2, 2005, one of those experts, John Campbell, appeared for his

deposition with his ADF counsel, who notified the parties that he was withdrawing

from the case.  Similarly, on June 10 and 13, counsel for defendants advised

-18-

plaintiffs that two other experts associated with DI, William A. Dembski and Stephen Meyer, withdrew from the case.

Accordingly, FTE has failed to meet each and every one of the requirements necessary for intervention as of right, and its motion under Rule 24(a)(2) must be denied.

B.   **FTE Is Not Entitled to Permissive Intervention**

Federal Rule of Civil Procedure 24(b)(2) provides:

> Upon timely application anyone may be permitted to intervene in an action . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

"Whether to grant permissive intervention is within the Court's discretion, but in making this determination courts consider whether the proposed intervenors will add anything to the litigation. Additionally, if the interests of the proposed intervenors are already represented in the litigation, courts deny such application to intervene." Kitzmiller, 2005 U.S. Dist. LEXIS 3693, at *19. "Whether intervention be claimed of right or is permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.' If it is untimely, intervention must be denied." Harrisburg Hosp. v.

Thornburgh, 611 F. Supp. 900, 903 (M.D. Pa. 1985), quoting Rizzo, 530 F.2d at

506.

     Here, it is apparent that FTE's defense would present a question of

fact in common with that already asserted in this lawsuit – namely, whether

intelligent design is fundamentally a religious proposition rather than a scientific

one.  But that is the only thing FTE's participation in the suit would contribute; and

it is merely duplicative of defendants' efforts.

     It is clear that FTE will not add any defense to this litigation that

defendants have not already demonstrated that they will present.  FTE's only

asserted defenses in its Proposed Answer are that "[t]he teaching of intelligent

design does not advance, endorse, or prefer religion or a religious doctrine . . . [or

a] religious viewpoint," and that "the teaching of intelligent design advances

scientific teaching and critical thinking."  FTE's Proposed Answer, p. 6, attached

as Exhibit D to FTE's App.  Defendants clearly asserted these same defenses in

their Answer to the complaint.  See Defendants' Answer, pp. 5-6 and ¶ 20

("Intelligent Design is a scientific theory based on interpretation of scientific data

by scientists. . . .  [T]he DASD Biology Curriculum Policy does not advance

religion, but merely provides the students of Dover High School with an honest

science education for the valid and clearly secular purpose of enhancing the

science curriculum. . . .  Defendants deny that intelligent design is an 'inherently

religious' concept if that phrase is taken to mean a concept that is only known or accepted as a result of religious faith as opposed to reason and science.").

FTE claims that the issue whether intelligent design is the equivalent of religion is "an issue that is only peripheral to Dover's policy." FTE's Mem. at 16. But, as defendants' answer and their subsequent efforts in this litigation demonstrate, that claim is not true. See Defendants' Answer, pp. 5-6 and ¶¶ 19, 20; Reports of defendants' experts, Warren A. Nord, Ph.D., p. 4 (quoted at p. 19, supra).

FTE will not add any defense to this litigation that defendants are not themselves adequately presenting, and FTE's untimely intervention will cause unnecessary prejudice, delay and expense.[2] Therefore, FTE's motion for permissive intervention should be denied.

_____

[2] If FTE wishes to inform the Court of certain concerns, it is permitted to file *amicus curie* briefs. See Kitzmiller, 2005 U.S. Dist. LEXIS 3693, at *20.

-21-

IV.   **CONCLUSION**

FTE does not meet the requirements for permissive intervention or intervention as of right pursuant to Federal Rule of Civil Procedure 24, and FTE's motion should be denied.

Respectfully submitted,

*/s/ Thomas B. Schmidt, III*
Eric Rothschild (PA 71746)
Alfred H. Wilcox (PA 12661)
Stephen G. Harvey (PA 58233)
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000
(215) 981-4750 (fax)
*rothschilde@pepperlaw.com*
*wilcoxa@pepperlaw.com*
*harveys@pepperlaw.com*

Thomas B. Schmidt, III (PA 19196)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
P.O. Box 1181
Harrisburg, PA  17108
(717) 255-1155
(717) 238-0575 (fax)
*schmidtt@pepperlaw.com*

Witold J. Walczak (PA 62976)
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213
412-681-7864
412-681-8707 (fax)
*vwalczak@aclupgh.org*

Paula K. Knudsen (PA 87607)
ACLU of Pennsylvania
105 N. Front St., Suite 225
Harrisburg, PA  17101
(717) 236-6827
(717) 236-6895 (fax)
*pknudsen@aclupa.org*

Ayesha Khan (adm. *phv*)
Richard B. Katskee (adm. *phv*)
Alex J. Luchenitser (adm. *phv*)
Americans United for Separation
     of Church and State
518 C St., NE
Washington, DC 20002
(202) 466-3234
(202) 466-2587 (fax)
*akhan@au.org; katskee@au.org;*
*luchenitser@au.org*

Attorneys for Plaintiffs,
TAMMY KITZMILLER; BRYAN AND
CHRISTY REHM; DEBORAH
FENIMORE AND JOEL LIEB; STEVEN
STOUGH; BETH EVELAND; CYNTHIA
SNEATH; JULIE SMITH, AND
ARALENE ("BARRIE") D. AND
FREDERICK B. CALLAHAN

Dated:  June 14, 2005

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that Plaintiffs' Brief Opposing Application to

Intervene by Foundation for Thought and Ethics complies with the word count

requirements of L.R. 7.8(b)(2) in that the Brief does not exceed 5,000 words.  The

word count of the Brief is 4,826 words (excluding the tables of authority and

contents).

<u>/s/ Thomas B. Schmidt III</u>
Thomas B. Schmidt, III (19196)

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2005, a copy of the foregoing

Plaintiffs' Brief Opposing Application to Intervene by Foundation for Thought and

Ethics should be served on the following counsel through the electronic case filing

system:

Richard Thompson, Esquire                    (Counsel for Defendants)
Robert J. Muise, Esquire
Patrick T. Gillen, Esquire
Thomas More Law Center
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, MI  48106

Ron Turo, Esquire                            (Local Counsel for Defendants)
Toro Law Offices
28 South Pitt Street
Carlisle, PA  17013

*/s/ Thomas B. Schmidt III*
Thomas B. Schmidt, III (19196)