IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY KITZMILLER, et al., ) | |
| Plaintiffs, ) | Case No. 04-CV-2688 |
| ) | (Hon. Judge Jones) |
| v. ) | |
| ) | (Filed Electronically) |
| DOVER AREA SCHOOL DISTRICT, et al.,) | |
| Defendants. ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION TO QUASH
OR FOR A PROTECTIVE ORDER FILED BY
<u>JOSEPH MALDONADO AND HEIDI BERNHARD-BUBB</u>**

Defendants oppose the motion to quash defendants' deposition subpoenas or for a protective order filed by Joseph Maldonado and Heidi Bernhard-Bubb (hereinafter collectively referred to as "the reporters"). (Doc. 80.) The motion should be denied, and the reporters should be compelled to comply with defendants' deposition subpoenas.[1]

---

[1] On June 15, 2005, defendants filed a motion to compel the reporters to comply with defendants' deposition subpoenas and for Maldonado, Bernhard-Bubb, *York Dispatch,* and *York County Daily Record* to comply with defendants' subpoenas requesting documents. (Docs. 85-86.) The reporters and the two

## I.   PROCEDURAL HISTORY/STATEMENT OF FACTS

Plaintiffs filed this action in December 2004 challenging portions of defendants' ninth-grade biology curriculum under the Establishment Clause to the federal Constitution and provisions of the Pennsylvania Constitution. (Doc. 1.) Defendants served their answer in January 2005. (Doc. 22.) The parties are engaging in discovery.

Joseph Maldonado is a correspondent for a newspaper known as the *York County Daily Record* and Heidi Bernhard-Bubb is a correspondent for a newspaper known as the *York Dispatch.* These reporters and newspapers cover Dover Area School Board meetings and have issued stories relevant to this action. During depositions of defendants, plaintiffs have questioned defendants about statements attributed to them by these reporters in published news articles.

On or about May 12, 2005, plaintiffs served the reporters with subpoenas and noticed their depositions for June 8, 2005. (Copies of the subpoenas are attached hereto as Exhibits A and B.)

In light of plaintiffs' subpoenas, on or about May 24, 2005, defendants served subpoenas for production of documents on Maldonado, the *York County*

---

newspapers have not filed a motion to quash or for a protective order with regard to the latter subpoenas with which they have not complied. Defendants' efforts to secure compliance with the subpoenas requiring production of documents, as well as requiring the testimony of the reporters, are the subject of the motion to compel. (Docs. 85-86.)

*Daily Record,* Bernhard-Bubb, and the *York Dispatch.* These nonparty witnesses were to produce the requested documents on June 7, 2005, to allow defendants a meaningful cross-examination and inquiry into the accuracy and reliability of the reporter's work product at the June 8th deposition. (Doc. 86, Exs. A-D.)

On or about May 26, 2005, counsel for the nonparties informed counsel for plaintiffs and defendants by letter of his position that the reporters could not be compelled to testify at deposition or at trial. Counsel for the nonparties indicated that he would be forwarding affidavits from his clients that he hoped would be acceptable to the parties in lieu of testimony at deposition or at trial. (Doc. 86, Ex. E.)

On or about May 31, 2005, plaintiffs' counsel informed the nonparties' counsel by letter that if resolution of this matter could not be reached in a manner satisfactory to all parties, then plaintiffs would expect the depositions to proceed on June 8, 2005, and that the reporters would answer all questions other than those requiring disclosure of information protected by attorney-client or work product privileges or by a protective order of the court. Plaintiffs' counsel noted that as of that date, the reporters had not sought a protective order from the court. (Doc. 86, Ex. F.)

On or about June 3, 2005, the parties received a letter from the nonparties' counsel enclosing affidavits from Maldonado, Bernhard-Bubb, *York County Daily*

*Record,* and *York Dispatch.* Counsel indicated that if the affidavits were not agreeable to one or both of the parties, that the nonparties would be filing a motion to quash and for protective order on June 7, 2005, based on a reporter's privilege. (Doc. 86, Ex. G.)

Also on June 3, 2005, counsel for these nonparty witnesses served defendants with an objection to the inspection and copying of some, but not all, of the documents requested in defendants' document subpoenas. (Doc. 86, Ex. H.)

On June 6, 2005, counsel for defendants informed counsel for the nonparties that defendants did not accept the offer of the affidavits and expected complete compliance with defendants' subpoenas requesting documents. (Doc. 86, Ex. I.) The nonparty witnesses did not comply with defendants' subpoena requests.

On June 7, 2005, the reporters filed a motion to quash plaintiffs' deposition subpoenas. (Doc. 71.)

On June 10, 2005, a telephone conference was held between the parties and the court. At the conference, the plaintiffs indicated they did not intend to seek enforcement of their subpoenas at this time, and the court indicated that defendants would need to pursue their interests in obtaining testimony and documents from the nonparty witnesses.

Subsequently on June 10, 2005, defendants served the reporters with subpoenas to appear for depositions scheduled for June 15, 2005, the close of discovery. (Doc. 86, Exs. J-K.)

On June 13, 2005, counsel for the reporters informed defense counsel that his clients would not appear and testify at their June 15th depositions and that he would, as he did with regard to the deposition subpoenas issued by plaintiffs for the reporters' testimony, be filing a motion to quash the subpoenas on June 14, 2005, based on a claimed reporters' privilege. Defendants informed counsel they were preserving their right to obtain this testimony and to bring the issue to this court's attention and that they would be filing a motion to compel. (Doc. 86, Ex. P.) Defendants agreed to postpone and stay the reporters' depositions pending a ruling by this court on the merits of the motion to quash and motion to compel. (Doc. 86, Ex. Q.)

## II.   STATEMENT OF QUESTION INVOLVED

Whether this court should deny the reporters' motion to quash or for a protective order. Suggested answer: Yes.

## III.   ARGUMENT

The reporters should be compelled to attend their depositions and answer the questions posed by defendants' counsel. As far as is known, defendants are not

seeking from these reporters the identity of a confidential source or information that is in any way privileged or confidential.

## The Reporters Had Reasonable Notice

The reporters claim in their motion, something not developed in their legal memorandum, that they did not receive reasonable notice of their depositions. The reporters are wrong. The reporters had been served with plaintiffs' deposition subpoenas on or about May 12, 2005, for depositions to take place on June 8, 2005, and had been served on May 24, 2005, with defendants' subpoenas to produce documents on June 7, 2005, which would be used at the June 8th deposition. Defendants believed that the reporters would comply with the subpoenas and that plaintiffs would enforce their deposition subpoenas. Only during the June 10, 2005, conference with the court did defendants learn that plaintiffs did not intend to seek enforcement of their subpoenas. It was at that conference that this court indicated that defendants would have to pursue their own interests in obtaining the reporters' testimony. Subsequently, on June 10, 2005, defendants served on the reporters subpoenas for depositions to take place on June 15, 2005, the day discovery was scheduled to close.

Under the circumstances, the reporters had reasonable notice that their depositions would be taken. The reporters had a reasonable amount of time to comply with defendants' subpoenas, and they have not shown any prejudice.

## The Reporters' Deposition Testimony Should Be Compelled

In considering whether a privilege applies in this case, the person asserting the privilege, here the reporters, must first overcome the well-settled principle that evidentiary privileges are disfavored in litigation because they interfere with the search for the truth, something the reporters have not done. *U.S. v. Criden,* 633 F.2d 346, 357-58 (3rd Cir. 1981). Moreover, in considering the privilege question, courts should consider whether a reporter's source is confidential, because the lack of a confidential source is a factor favoring production. *U.S. v. Cuthbertson,* 630 F.2d 139, 147 (3rd Cir. 1980). Since, as far as is known, defendants are not seeking from the reporters the identity of a confidential source or information that is otherwise confidential, the information sought from the reporters should be produced.

Although the Third Circuit acknowledges that reporters have a qualified privilege to shield the disclosure of confidential sources and information, *e.g., Riley v. City of Chester,* 612 F.2d 708 (3rd Cir. 1979), a qualified privileged extended to unpublished materials in criminal cases, *Cuthbertson,* 630 F.3d at 146, this qualified privilege does not apply when a reporter is subpoenaed to testify as a fact witness to public comments and observations and should give way when a reporter is asked to answer questions unrelated to confidential source disclosure. *See Criden,* 633 F.2d at 359 (noting that a reporter can be ordered to answer a

question unrelated to confidential source disclosure, and the reporter's refusal to do so is grounds for civil contempt); *Cuthbertson,* 630 F.2d at 147 (noting that lack of a confidential source is a factor favoring production); *Riley,* 612 F.2d at 716 (explaining that the case did not involve the situation where a reporter witnessed events that were the subject of a grand jury investigation).[2]

Courts that have confronted the situation of a reporter being called as a fact witness have ruled that reporters lack a privilege to refuse to testify. For example, in *U.S. v. Steelhammer,* 539 F.2d 373 (4th Cir. 1976), *on rehearing en banc* 561 F.2d 539 (4th Cir. 1977), the court sitting en banc upheld a finding of contempt against reporters who had refused to testify even though they were witnesses to the matter at trial. The testimony sought from the reporters did not involve confidential information. The reporters were considered witnesses to the matter at trial just as any other fact witness would be considered.

And, in *Alexander v. Chicago Park Dist.,* 548 F.Supp. 277 (N.D. Ill. 1982), the district court denied a motion to quash subpoenas because "a reporter's observations of a public place or event are no different in kind than that of other individuals; and as to this, they are not entitled to constitutional protection." *Id.* at

---

[2] When, as here, a case has both federal and state law claims, the general practice is to apply federal common law privileges to all claims. *See Wm. T. Thompson Co. v. General Nutrition Corp.,* 671 F.2d 100, 103 (3rd Cir. 1982). Thus, the reporters' claim to any Pennsylvania privilege is inapplicable in this action as is their reliance on *McMenamin v. Tartaglione,* 590 A.2d 802, 811 (Pa. Cmwlth. Ct. 1991), *aff'd,* 590 A.2d 753 (Pa. 1991).

278; *see also Miller v. Mecklenburg County*, 602 F.Supp. 675, 678 (W.D. N.C. 1985) (explaining that "the qualified privilege does not apply when the reporter is being questioned about an incident to which he or she may be a witness like any other member of the public. In such a case, there is no intrusion into newsgathering or special functions of the press.").

Accordingly, the reporters lack a privilege to refuse to answer questions about what they heard and saw during public meetings of the Dover Area School Board. The reporters should be compelled to testify, especially since, as far as is known, defendants are not seeking from the reporters the identity of a confidential source or information that is in any way privileged or confidential.

In determining whether to compel a reporter to disclose protected information, courts generally consider three factors: First, has the party seeking the disclosure made an effort to obtain the information from other sources. Second, has the party seeking the disclosure shown that the only access to the information sought is through the reporter or his sources. And, third, has the party seeking the disclosure shown that the information sought is relevant and important to his claim. *Criden*, 633 F.2d at 358-59; *Riley*, 612 F.2d at 716-17. In fashioning these factors, however, the *Riley* court was addressing a situation, unlike here, where the reporter did not witness events relevant to the case or where the substantive facts alleged in the news stories were claimed to be untrue. *Riley*, 612

F.2d at 716; *see also* fn. 4, p. 11, *infra*. To the extent the factors apply here, defendants will address them.³/

The reporters' testimony is relevant and important to defendants' claims because the reporters purport to have recorded statements by board members that tend to support the plaintiffs' claims in this action. The newspaper articles themselves are inadmissible hearsay. *See Barnes Found. v. Township of Lower Merion,* 982 F.Supp. 970, 996 (E.D. Pa. 1997). Therefore, for plaintiffs to present the reporters' testimony, the reporters will have to appear in person at trial and testify. Without allowing defendants the opportunity to conduct discovery, such testimony would be presented without defendants having first had the opportunity to examine the witnesses and to prepare for cross-examination. Only the reporters possess information about their bias, prejudice, interest, and motive; possess information about their reportorial and newsgathering practices; and possess information about what they heard and saw during public meetings of the school

---

³/ The reporters cite to the unpublished decision of *In re Barnard,* No. Misc. 98-189, 1999 WL 38269 (E.D. Pa. Jan. 25, 1999). In *Barnard*, the court denied the reporter's motion to quash and ordered that the reporter could be questioned about the statements in her article; the reporter could assert a privilege on a question-by-question basis regarding inquiry into information not published or otherwise publicly disclosed. Importantly, the court explained that the district court for the Western District of Pennsylvania had agreed that, because the information sought in that civil case was published and the source not confidential, the material was not privileged and the *Riley* test did not apply, a conclusion opposite of the one reached in *Barnard. Id.* at *2-*3 & n.*. (Copy of *Barnard* is attached hereto as Exhibit C.)

board. They are the only sources of this information, and discovery of this information is essential to the meaningful cross-examination of the reporters and directly impacts defendants' ability to defend themselves in this litigation. Thus, the reporters should be required to comply with defendants' deposition subpoenas. *See* Fed. R. Civ. P. 26(b) (noting scope of broad discovery); *Herbert v. Lando,* 441 U.S. 153, 158-77 (1979) (holding that there is no First Amendment privilege barring a plaintiff in a defamation case from inquiring into the editorial process of those responsible for the publication); *In re Vmark Software, Inc.,* No. Civ. A. 97-227, 1998 WL 42252 at *1-*3 (E.D. Pa. Jan. 8, 1998) (copy attached hereto as Exhibit D) (denying motion to quash and ordering reporter to be deposed and to release documents pertaining to news article since the reporter was the only source of the information, was the only person qualified to testify about his reportorial practices regarding the statements of others, and the reporter's testimony was important to plaintiffs' claim. Also rejecting the reporter's argument that his affidavit was sufficient to satisfy plaintiffs' needs, noting that declarations in affidavits are hearsay and generally barred at trial).[4]

---

[4] The reporters claim they lack a personal interest in this matter, as a reason not to be deposed. Defendants, on the contrary, believe that the reporters have a personal interest and should be deposed as to issues bearing on their bias, interest, and motive in misreporting events related to this action. Defendants have steadfastly maintained that the reporters and newspapers are inaccurate and biased in their reporting. (*E.g.,* Doc. 86, Ex. L, Bonsell Depo. at 36-46; Ex. M, Harkins Depo. at 25-27, 36-38; Ex. N, Buckingham Depo. at 22-26; Ex. O, Geesey Depo.

### The Reporters' Request for a Protective Order Should Be Denied

The reporters, in the alternative to their motion to quash, seek a protective order limiting their testimony to what was printed in the published articles in issue and preventing any questioning as to their sources, discussions, notes, documents, or other materials gathered or created as part of the reporters' functions and duties in preparing the published articles.

As explained above, the reporters should be compelled to testify fully pursuant to defendants' subpoenas. They have not supplied sufficient grounds to avoid compliance with defendants' subpoenas, nor have they supplied sufficient grounds to limit their testimony as they suggest in their request for a protective order. The reporters' request for a protective order should be denied.

### The Reporters Would Deny Defendants Due Process

The reporters also appear to be asserting that they should be able to testify only by way of affidavits that are agreeable to them and to plaintiffs. In short, they want to avoid having to be subject to cross-examination and impeachment by defendants' counsel. The law does not provide for such an exception to the presentation of testimony. Defendants have a right to cross-examine the reporters

---

at 34-35, 99-100.) Indeed, the defense has reason to believe that Maldonado is grossly negligent in his reporting. For example, when Heather Geesey informed Maldonado that she did not make a statement he had attributed to her, he responded, "so, I am putting my kids through college." (Doc. 86, Ex. O, Geesey Depo. at 99-100.)

to delve into the truth and veracity of their affidavit statements and to probe their credibility, bias, motive, and prejudice. It is only through cross-examination that the finder of fact will be able to observe the demeanor of the reporters and evaluate their credibility. Indeed, defendants would be deprived of their due process rights if they were denied the right to cross-examine and impeach the reporters. *See* Fed. R. Evid. 607-609, 611, 614; *McClure v. Independent Sch. Dist.,* 228 F.3d 1205, 1211-12 (10th Cir. 2000) (noting that due process required a principal to be allowed to cross-examine witnesses who provided testimony by affidavit at termination hearing); *McCarthy Stevedoring Corp. v. Norton,* 40 F. Supp. 957, 959 (E.D. Pa. 1939) (finding that the only way a party may maintain its rights and make a defense is to be fully apprised of the evidence and be given an opportunity to cross-examine witnesses, inspect documents, and offer evidence in explanation or rebuttal).

## IV. CONCLUSION

Defendants respectfully request that this court deny the reporters' motion to quash defendants' deposition subpoenas or for a protective order (Doc. 80) and grant defendants' motion to compel compliance with defendants' deposition subpoenas and document subpoenas. (Docs. 85-86).

Respectfully submitted,

*/s/ Edward L. White*

Richard Thompson (MI P21410)*
Patrick T. Gillen (MI P47456)*
Robert J. Muise (MI P62849)*
Edward L. White III (MI P62485)*
Thomas More Law Center
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, MI 48106
734-827-2001; Fax. 734-930-7160
rthompson@thomasmore.org
pgillen@thomasmore.org
rmuise@thomasmore.org
ewhite@thomasmore.org
*Admitted pro hac vice

Ron Turo
Turo Law Offices
29 South Pitt Street
Carlisle, PA 177013
717-245-9688

Dated: June 23, 2005         *Counsel for defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2005, a copy of the foregoing defendants' response in opposition to motion to quash, with exhibits, was served on the following counsel through the electronic case filing system and/or via U.S. Mail, first-class postage prepaid:

Eric Rothschild
Stephen G. Harvey
Joseph M. Farber
Benjamin M. Mather
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103

Witold J. Walczak
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213

Alex J. Luchenitser
Richard Katskee
Ayesha Khan
Americans United for Separation
  of Church and State
518 C Street, NE
Washington, DC 20002

Niles Benn
Benn Law Firm
103-107 E. Market Street
P.O. Box 5185
York, PA 17405

Thomas B. Schmidt, III
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
PO Box 1181
Harrisburg, PA 17108

Paula K. Knudsen
ACLU of Pennsylvania
105 N. Front Street
Suite 225
Harrisburg, PA 17101

Ron Turo
Turo Law Offices
29 South Pitt Street
Carlisle, PA 17013

Mary Catherine Roper
ACLU of Pennsylvania
P.O. Box 1161
Philadelphia, PA 19105

*/s/ Edward L. White III*
Edward L. White III
Admitted *pro hac vice*