# EXHIBIT C

EXHIBIT
C

Westlaw.

Not Reported in F.Supp.2d                                                                                      Page 1

Not Reported in F.Supp.2d, 1999 WL 38269, 27 Media L. Rep. 1500
**(Cite as: Not Reported in F.Supp.2d)**

C
Not Reported in F.Supp.2d, 1999 WL 38269, 27 Media L. Rep. 1500
Briefs and Other Related Documents

United States District Court, E.D. Pennsylvania.
In re: Subpoena Directed to Anne Barnard
**No. MISC. 98-189.**

Jan. 25, 1999.

MEMORANDUM

KELLY, J.
*1 Presently before the Court is the Motion of Anne Barnard ("Barnard") to Quash a Third-Party Subpoena directed to her by Bipin C. Shah ("Shah"). For the reasons which follow, Barnard's Motion to Quash is denied, however, Barnard may invoke the journalist's privilege on a question by question basis, in accordance with this opinion, at her deposition.

I. FACTS.

Shah is the plaintiff in an action pending in the United States District Court for the Northern District of Georgia. *Shah v. Yager,* No. 98-0077 (N.D.Ga.1998). In that action, Shah alleges that Faye W. Yager ("Yager") assisted his former wife, Ellen Dever ("Dever"), in removing their children from their Pennsylvania home and placing them in "an organized underground network," in violation of Shah's custodial and contractual rights.

Barnard is a reporter for the Philadelphia Inquirer who authored two articles describing the controversy surrounding the disappearance of Shah's former wife and children. The articles were published in the Philadelphia Inquirer on December 20, 1997, and January 8, 1998. Shah claims that Yager made numerous statements in the Inquirer articles regarding Dever and the assistance which she provided to Dever in removing the children and disappearing. At her deposition, Yager invoked the Fifth Amendment privilege against self-incrimination when asked to verify the statements contained in the Inquirer articles.

A lengthy series of articles on Yager and the number of women she assisted in going "underground," including Ellen Dever, were published in the Pittsburgh Post-Gazette by reporter Mackenzie Carpenter ("Carpenter"). Shah successfully subpoenaed Carpenter, who then testified at her deposition that Yager had stated that she assisted Dever in going "underground."

In support of her Motion to Quash, Barnard asserts the First Amendment

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 2

Not Reported in F.Supp.2d, 1999 WL 38269, 27 Media L. Rep. 1500
**(Cite as: Not Reported in F.Supp.2d)**

journalist's privilege announced in the "*Riley-Cuthbertson-Criden* trilogy" and the Pennsylvania Shield Law. *United States v. Cuthbertson*, 651 F.2d 189, 195-96 (3d Cir.1981), *cert. denied*, 454 U.S. 1056 (1981) (*Cuthbertson II* ); *United States v. Criden*, 633 F.2d 346, 358-59 (3d Cir.1980), *cert. denied*, 449 U.S. 1113 (1981), *United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir.1980), *cert. denied*, 449 U.S. 1126 (1981) (*Cuthbertson I* ); *Riley v. City of Chester*, 612 F.2d 708, 717 (3d Cir.1979) ; 42 Pa.C.S.A. § 5942. Specifically, Barnard claims that Shah has failed to meet his First Amendment burden to prove that she is the "only source" of the subpoenaed information. Further, Barnard claims that Shah seeks unpublished information that is absolutely privileged by the Pennsylvania Shield Law.

In response, Shah argues that the journalist's privilege does not apply because he seeks published information from a known source. Alternatively, Shah argues that if the information is privileged, then he has presented sufficient evidence to overcome the privilege. Shah asks, at the least, that Barnard appear for the deposition and invoke the privilege on a question by question basis.

## II. DISCUSSION.

### A. *Pennsylvania Shield Law.*

*2 In diversity actions, matters of privilege are governed by state law. *WM. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 103 (3d Cir.1982) (citing Fed. R. Ev. 501). The Pennsylvania Shield Law provides journalists with an absolute privilege against the compelled disclosure of confidential sources of information. *In re Taylor*, 193 A.2d 181, 184-85 (Pa.1963) (defining "source" to include both documents and persons), holding limited by, *Hatchard v. Westinghouse Broad.*, 532 A.2d 346, 349 (Pa.1987) (holding unpublished documentary material is discoverable by a plaintiff in a libel action to the extent that such documentary information does not reveal a personal source of information); *Davis v. Glanton*, 705 A.2d 879, 884-85 (Pa.Super.1997) ; 42 Pa.C.S.A. § 5942. Publication or public disclosure of confidential information, however, constitutes a waiver of the privilege. *Steaks Unlimited Inc., v. Deaner*, 623 F.2d 264, 278 (3d Cir.1980) (citing *In re Taylor*, 193 A.2d at 186; *Hepps v. Philadelphia Newspapers*, 3 D & C 3d 693, 705 (1977)).

The Shield Law does not protect Barnard because she waived the privilege by publishing Yager's statement. Should Shah seek to discover any unpublished information related to Barnard's confidential sources, the Shield Law protects such information from disclosure. Barnard may invoke the Pennsylvania Shield Law on a question by question basis at her deposition.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 3

Not Reported in F.Supp.2d, 1999 WL 38269, 27 Media L. Rep. 1500
**(Cite as: Not Reported in F.Supp.2d)**

B. *First Amendment Privilege.*

The First Amendment applies to the states through the Fourteenth Amendment. *Gitlow v. New York,* 268 U.S. 652, 666 (1925). It is well established that members of the press enjoy a qualified First Amendment privilege which limits disclosure of confidential sources, resource materials, unpublished material. *Cuthbertson I,* 630 F.2d at 147. In *Riley,* the Third Circuit Court of Appeals established a three prong test which must be met before a party may compel a journalist to disclose privileged information. Under the so-called *Riley* test, Shah must establish that:
  1. attempts to obtain the information from other sources have been exhausted;
  2. Barnard is the only source of the information sought; and
  3. the information sought is necessary and crucial to Shah's claims in the Georgia action.

*Criden,* 633 F.2d at 358 (citing *Riley,* 612 F.2d at 717). The purpose of this showing is to strike a balance "between the assertion of the privilege on the one hand and the interest of either criminal or civil litigants seeking the information" on the other. *Riley,* 612 F.2d at 716.

This case presents a rather unique situation because the information sought will be used in a civil case, was published, and the source of the information is not confidential. Shah seizes upon these differences to argue that the material sought is not privileged at all, and therefore, the *Riley* test does not apply. FN* I disagree.

> FN* Indeed, this argument convinced the District Court for the Western District of Pennsylvania that the information Shah sought from Carpenter was not privileged at all. *In re: Subpoena directed to Mackenzie Carpenter,* Misc. No. 98-292 (W.D. Pa 1998).

Factually, the *Criden* case is most similar to the case at hand, although it arose in the context of a criminal trial. In *Criden,* the district court held a journalist in contempt for refusing to affirm or deny whether she had a conversation with a self-avowed source. *Criden,* 633 F.2d at 358. On review, the Third Circuit Court of Appeals applied the *Riley* test, although it noted that the true purpose of that test is to determine whether a journalist should disclose a confidential source. *Id.* The court refused to fashion a separate test because it found that defendants had met the "more stringent " *Riley* test. *Id.*

*3 That the information Shah seeks will be used in a civil case further supports the determination that the *Riley* test applies. The *Riley* case, itself a civil action, noted that "a case by case analysis is mandated even more in civil cases than in criminal cases, for in the former the public's interest in casting a protective shroud over the newsmen's sources and information warrants an even greater weight than in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 38269, 27 Media L. Rep. 1500
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

latter." *Riley,* at 716 (citing *Altemose Construction Co. v. Building & Construction Trades Council,* 443 F.Supp. 489, 491 (E.D.Pa.1977).

The *Riley* test has also been applied to published information and information obtained from non-confidential sources. *In re Vmark Software Inc.,* No. 97-227, 1998 WL 42252, at * 2 (E.D.Pa. Jan. 9, 1998) ; *Criden,* 633 F.2d at 358. It has been noted that "the lack of a confidential source may be an important element in balancing the defendant's need for the material sought against the interest of the journalist in preventing production in a particular case." *Cuthbertson I,* 630 F.2d at 147.

Thus, the *Riley* test applies as an outside limit on the journalist's privilege. If Shah meets all three prongs, Barnard must affirm or deny the statements made by Yager and reported in the Inquirer articles.

The first prong of the *Riley* test is whether the party seeking to compel the journalist's testimony has exhausted all other sources of information. When questioned about her statements to Barnard, Yager refused to answer based on the Fifth Amendment privilege against self incrimination. This is sufficient to meet the first prong of the *Riley* test.

The second prong of the *Riley* test requires that the journalist be the only available source of the information at issue. Since Yager is the only person other than Barnard who can affirm Yager's statements to Barnard, Shah has met the second prong of the *Riley* test as well.

The fact that Yager made similar statements to Carpenter, who later affirmed those statements at her deposition, does not change this result. Statements "are unique bits of evidence that are frozen at a particular place and time." *Cuthbertson I,* 630 F.2d at 148. Affirmation of the statement made by Yeager to Barnard cannot be obtained from Carpenter or anyone other than either Yager or Barnard, regardless of any similarities between the statements. Because Yager invoked the Fifth Amendment at her deposition, Barnard is the "only source" of the information sought.

The third prong of the *Riley* test requires the information sought to be crucial to the claim in the underlying action. The basis of Shah's claim is that Yager assisted in Dever's disappearance in violation of Shah's custodial and contractual rights. Yager's admission to Barnard that she did just that is certainly crucial to Shah's claim in the underlying action.

Accordingly, because Barnard has waived the protection afforded by the Pennsylvania Shield Law and because Shah has met the requirements of the *Riley* test the Motion to Quash is denied. Barnard cannot assert the journalist's privilege when questioned about the statements attributed to Yager in the Inquirer articles. To the extent Shah seeks to discover any information not published

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                  Page 5

Not Reported in F.Supp.2d, 1999 WL 38269, 27 Media L. Rep. 1500
**(Cite as: Not Reported in F.Supp.2d)**

or otherwise publicly disclosed, the Pennsylvania Shield Law, 42 Pa.C.S.A. § 5942, prohibits such disclosure. Barnard may assert the journalist's privilege on a question by question basis, in accordance with this opinion, at her deposition.

**\*4** I will enter the following Order:

### ORDER

AND NOW, this 25th day of January, 1999, upon consideration of Anne Barnard's Motion to Quash Subpoena, and Bipin Shah's Response thereto, it is hereby ORDERED that said Motion is DENIED, however, Barnard may invoke the journalist's priviledge on a question by question basis in accordance with this opinion.

E.D.Pa.,1999.
In re Subpoena Directed to Barnard
Not Reported in F.Supp.2d, 1999 WL 38269, 27 Media L. Rep. 1500

Briefs and Other Related Documents (Back to top)

• 2:98MC00189 (Docket) (Dec. 02, 1998)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Date of Printing: JUN 21,2005

## KEYCITE

©In re Subpoena Directed to Barnard, 1999 WL 38269, 27 Media L. Rep. 1500 (E.D.Pa., Jan 25, 1999) (NO. MISC. 98-189)

### History

=>  1  **In re Subpoena Directed to Barnard,** 1999 WL 38269, 27 Media L. Rep. 1500 (E.D.Pa. Jan 25, 1999) (NO. MISC. 98-189)

### Court Documents
### Dockets (U.S.A.)

**E.D.Pa.**

   2  IN RE: ANNE BARNARD v. SHAH, NO. 2:98MC00189 (Docket) (E.D.Pa. Dec. 02, 1998)

© Copyright 2005 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, A 058 914 668, or their Licensors. All rights reserved.