# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMMY KITZMILLER; BRYAN AND CHRISTY REHM; DEBORAH FENIMORE AND JOEL LIEB; STEVEN STOUGH; BETH EVELAND; CYNTHIA SNEATH; JULIE SMITH; AND ARALENE ("BARRIE") D. AND FREDERICK B. CALLAHAN, | : : : : : : : : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| vs. | : | No. 4:04-cv-2688 |
| | : | |
| DOVER AREA SCHOOL DISTRICT; DOVER AREA SCHOOL DISTRICT BOARD OF DIRECTORS, | : : : | (JUDGE JONES) |
| | : | (Filed Electronically) |
| Defendants, | : | |
| | : | |

**PLAINTIFFS' RESPONSE TO MOTION
OF NON-PARTIES JOSEPH MALDONADO AND
HEIDI BERNHARD-BUBB TO QUASH SUBPOENA OR
FOR PROTECTIVE ORDER**

I.    **INTRODUCTION**

Plaintiffs served subpoenas dated May 4, 2005, requiring Heidi

Bernhard-Bubb, a correspondent for a newspaper known as *The York Dispatch*,

and Joseph Maldonado, a correspondent for a newspaper known as *The York Daily Record*, to testify at depositions that had been scheduled for June 8, 2005. Plaintiffs do not seek from either reporter the identity of confidential sources or information that is in any way privileged or confidential. Rather, plaintiffs seek merely to authenticate and lay a foundation for the admissibility of statements made by Dover school board members at public meetings last summer, as reported by these correspondents in their respective newspapers. For this reason, plaintiffs are willing to accept the affidavits already proffered by the two reporters.

Dover board members' statements at public meetings in the summer of 2004 are relevant to the claims in this litigation. Statements reported by Bernhard-Bubb and Maldonado have been denied by defendants in their pleading and in their deposition testimony. For example, William Buckingham, a member of the Board and chair of its curriculum committee, is alleged to have said that he and others were looking for a text that offers a balance between the biblical view of creation and Darwin's theory of evolution. Complaint, ¶ 29. He is also alleged to have said that there need be no consideration of the beliefs of Hindus, Buddhists, Muslims or other competing faiths and views: "[t]his country wasn't founded Muslim beliefs or evolution," and "[t]his country was founded on Christianity and our students should be taught as such." *Id.* At the next meeting of the Board, on June 14, 2004, also in connection with a discussion of the proposed biology

-2-

textbook, Buckingham is alleged to have stated that "[t]wo thousand years ago someone died on a cross. Can't someone take a stand for him?" *Id.* ¶ 30. Defendants deny that Buckingham made them. Answer, ¶¶ 29-30.

In depositions, plaintiffs' counsel specifically questioned Mr. Buckingham and other Dover board members and administrators about the statements, as reported in the newspapers by Maldonado and Bernhard-Bubb. Mr. Buckingham and others denied making statements in the articles written by the two reporters. The Dover board members suggested that the correspondents had fabricated them. Consequently, while other people attended the meetings where Mr. Buckingham allegedly made these comments, this dispute centers on the statements as reported by Bernhard-Bubb and Maldonado. While these statements are not the only evidence of Defendants' *purpose* in adopting their "intelligent design" addition to the ninth grade biology curriculum, nor are they the only evidence of its *effects*, they are certainly relevant to prove both elements of an Establishment Clause claim..

On June 7, 2005, Bernhard-Bubb and Maldonado, through counsel, filed a Motion to Quash Subpoena or for Protective Order ("Motion"), asserting a "news gatherer" privilege. *Id.*, ¶ 12(c). Bernhard-Bubb and Maldonado ask that the subpoenas for their testimony be quashed or, in the alternative, that a protective order be issued limiting their testimony "to what was printed in the published

articles in issue and barring any questioning of [the reporters] as to any sources, discussions, notes, documents or other materials gathered or created as part of their functions and dates in preparation for the published articles in issue." *Id.* at 7.

Before filing their Motion, Bernhard-Bubb and Maldonado proffered affidavits in lieu of their deposition testimony. Those affidavits were filed with the Motion. With a relatively minor change that would incorporate an additional news article, plaintiffs accepted the proffered affidavits as admissible at trial, in lieu of testimony. *See* Motion, ¶ 14. Defendants, however, apparently do not agree to accept the affidavits in lieu of testimony.

For the reasons stated below, plaintiffs oppose the Motion to the extent it seeks to have the subpoenas quashed. Plaintiffs do not oppose the proposed protective order, which is requested in the alternative. Regardless of how this Court rules, Plaintiffs' counsel reiterate that they have no intention of inquiring into the reporters' confidential sources or asking about notes or other arguably privileged information. The case law supports plaintiffs' right to this limited inquiry.

## II.   ARGUMENT

A.   The "news gatherer" privilege does not apply to the subpoenas at issue.

The cases cited in Maldonado and Berhhard-Bubb's motion, plus many others not listed, give reporters some First Amendment right to shield the

-4-

identity of confidential sources and information, often referred to as the "news

gatherer" privilege.  *See, e.g., Riley v. City of Chester*, 612 F.2d 708 (3rd Cir.

1979); *U.S. v. Cuthbertson*, 630 F.2d 139 (3rd Cir. 1980); and *U.S. v. Criden*, 633

F.2d 346 (3rd Cir. 1980).[1]  Neither these Third Circuit cases nor any others that the

undersigned could find support Maldonado and Bernhard-Bubb's argument

claiming complete immunity from testimony.  Plaintiffs are unaware of any case

law that gives a reporter immunity from testifying as a fact witness to comments

made in their presence.

      The notion of the "news gatherer" privilege evolved from *Branzburg*

*v. Hayes*, 408 U.S. 665 (1972).  While the majority opinion did not articulate

clearly whether the First Amendment supported a privilege for journalists, Justice

Powell, in his concurring opinion, wrote that courts should strike a balance, on a

case-by-case basis, between freedom of the press and the obligation of all persons

to give relevant testimony.  *Id.*, 408 U.S. at 710.

      In *Riley v. City of Chester*, the Third Circuit held that a reporter had a

qualified right to refuse to disclose the identity of a confidential source in a federal

civil case.  The *Riley* court noted that it was not analyzing a situation where the

---

[1] Plaintiffs also cite *McMenamin v. Tartaglione*, 590 A.2d 802 (Pa. Cmwlth. Ct. 1991), in which the Pennsylvania Commonwealth Court applied state law, not applicable here, and relied on *Riley*, which is discussed *supra*.

reporter was himself or herself actually a witness to the pertinent incidents. *Id.* at

716. In *Cuthbertson* and *Criden*, the Third Circuit both expanded the application,

and refined the analysis, of *Riley*. But, none of these decisions involved a reporter

who was being called to testify about his or her observations at a public meeting.

Courts that have confronted that circumstance have concluded that reporters are

not privileged to refuse to testify.

In *U.S. v. Steelhammer,* 539 F.2d 373 (4th Cir. 1976), *reh'g en banc,*

561 F.2d 540 (4th Cir. 1977), the Fourth Circuit upheld a district court judgment

that two journalists were in civil contempt for refusing to testify. The court had

ordered the reporters to give testimony on matters that did not include any

confidential information or materials given to them by another party. *Id.* at 375.

The journalists, who had reported upon the events of a public union rally, had filed

motions to quash the subpoenas to testify based on the reporter's privilege. *Id.* at

374. They asserted that "if a reporter is compelled to testify to what he has

observed or heard while present at a rally or meeting of persons assembled to

discuss peculiar problems of their interests, but also of general concern, then

thereafter, in retaliation, the sponsors of the occasion will in all probability bar

them from later gatherings." *Id.* Initially, the Fourth Circuit vacated the district

court's judgment. *Id.* at 376. In his dissent, Judge Winters wrote:

> In the instant case it is conceded that the reporters did not
> acquire the information sought to be elicited from them

on a confidential basis; one of them (Steelhammer) so
testified in the district court. My study of the record fails
to turn up even a scintilla of evidence that the reporters
were subpoenaed to harass them or to embarrass their
newsgathering abilities at any future public meetings that
the miners might hold. It therefore seems to me that, in
the balancing of interests suggested by Mr. Justice
Powell in *Branzburg v. Hayes* [citation omitted], the
absence of a claim of confidentiality and the lack of
evidence of vindictiveness tip the scale to the conclusion
that the district court was correct in requiring reporters to
testify.

*Id.* at 376. Nine months later, the Fourth Circuit reheard the case *en banc* and

adopted Judge Winters' dissenting position. It affirmed that there was a sufficient

basis to find the reporters in contempt, and vacated the unserved portion of their

sentences because the underlying proceeding had terminated. *U.S. v. Steelhammer*,

561 F.2d at 540. In *Miller v. Mecklenburg County*, the District Court for the

Western District of North Carolina summarized that the *en banc* Fourth Circuit in

*Steelhammer* "explicitly found that the newspaper reporters were witnesses to the

event like other members of the public." *Miller v. Mecklenburg County*, 602 F.

Supp. 675, 678 (W.D.N.C. 1985), *aff'd.*, 813 F.2d 402 (4th Cir. 1986).

Similarly, in *Alexander v. Chicago Park Dist.*, 548 F. Supp. 277 (N.D.

Ill. 1982), *aff'd.* 427 F.2d 1014 (7th Cir. 1991), the district court did not recognize

the reporter's privilege in a case where a reporter had observed a public place. In

this case, the newspaper reporter had written an article about parks as a part of a

series entitled "Our Squandered Legacy." *Id.* at 277. The plaintiffs had

subpoenaed the reporter to testify only about his personal observations of the parks

during the investigation for the series. *Id.* The court denied the journalist's motion

to quash a deposition subpoena, finding that:

> a reporter's observations of a public place or event are no
> different in kind than that of other individuals; and as to
> this, they are not entitled to constitutional protection.
> The provisions of the First Amendment simply do not
> extend to cover reporter[']s observations of the park
> during their investigation.

*Id.* at 278.  This decision, like *Steelhammer*, stands for the proposition that "the

qualified [reporter's] privilege does not apply when the reporter is being

questioned about an incident to which he or she may be a witness like any other

member of the public.  In such a case, there is no intrusion into newsgathering or

special functions of the press." *Miller v. Mecklenburg County*, 602 F. Supp. at

679.

Likewise, the District Court for the Middle District of Alabama in

*Pinkard v. Johnson,* 118 F.R.D. 517 (M.D. Ala. 1987), ordered a reporter to

comply with a deposition subpoena limited to the events he had witnessed a

specific public meeting.  The plaintiff, a commissioner at an agency that oversaw a

racetrack, claimed that the defendant commission had conspired to harass him by

manufacturing sexual harassment charges and airing them at a public meeting. *Id.*

at 518-19.  The journalist filed a motion to quash the deposition subpoena,

claiming that the reporter's privilege protected him from deposition. *Id.* at 519.

The court declined to extend the claimed privilege to parts of the subpoena seeking evidence of his observations as a witness at the public meeting. *Id.* at 521. It explained:

> Federal courts have generally held that the qualified privilege does not apply when the reporter is being questioned about an incident to which he or she may be a witness like any other member of the public . . . In such a case, there is no intrusion into newsgathering or special functions of the press.

*Id.*

Many other cases have ruled in similar fashion, namely, that the news gatherer privilege does not apply to the type of non-privileged, non-confidential information Plaintiffs seek in this case. *See e.g., U. S. v. LaRouche Comm.*, 841 F.2d 1176 (1st Cir. 1988); *Shoen v. Shoen*, 48 F.3d 963 (9th Cir. 1995); *In re Shain*, 978 F.2d 850 (4th Cir. 1992); *U.S. v. Smith*, 135 F.3d 963 (5th Cir. 1998); *Gonzalez v. NBC*, 194 F.3d 29 (2d Cir. 1999).

B.    <u>The "news gatherer" privilege has been waived in this case.</u>

As Bernhard-Bubb and Maldonado note in their Motion, they have offered to give their evidence in response to plaintiffs' subpoenas, provided that their evidence is received in the form of affidavits. Motion, ¶ 14. Plaintiffs have agreed to this accommodation, and hope it will not seem ungracious to argue that the proffer of these affidavits represents a waiver of the asserted privilege. Bernhard-Bubb and Maldonado are willing to provide their evidence, so long as it

is received in the form they prefer. In effect, the privilege they are asking this Court to recognize is a privilege against cross-examination, which has not been recognized by any court and cannot fairly be circumscribed by the balancing called for by Justice Powell in *Branzburg*. However, their interests can be reasonably accommodated by granting the protective order they request as an alternative to quashing the subpoena.

## III.   CONCLUSION

For the foregoing reasons, the Motion should be denied to the extent it seeks to quash plaintiffs' subpoenas, but plaintiffs do not object to the proposed protective order.

Respectfully submitted,

*/s/ Thomas B. Schmidt, III*
Eric Rothschild (PA 71746)
Alfred H. Wilcox (PA 12661)
Stephen G. Harvey (PA 58233)
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000
*rothschilde@pepperlaw.com*
*wilcoxa@pepperlaw.com*
*harveys@pepperlaw.com*

*(continued)*

Thomas B. Schmidt, III (PA 19196)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
P.O. Box 1181
Harrisburg, PA 17108
(717) 255-1155
*schmidtt@pepperlaw.com*

Witold J. Walczak (PA 62976)
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213
412-681-7864
*vwalczak@aclupgh.org*

Paula K. Knudsen (PA 87607)
ACLU of Pennsylvania
105 N. Front St., Suite 225
Harrisburg, PA 17101
(717) 236-6827
*pknudsen@aclupa.org*

Ayesha Khan (adm. *phv*)
Richard B. Katskee (adm. *phv*)
Alex J. Luchenitser (adm. *phv*)
Americans United for Separation of
      Church and State
518 C St., NE
Washington, DC 20002
(202) 466-3234
*akhan@au.org*
*katskee@au.org*
*luchenitser@au.org*

Attorneys for Plaintiffs

Date:  June 10, 2005

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 10, 2005, I caused a copy of the

foregoing document to be served upon the following counsel by the Middle

District ECF system and/or FAX and other counsel of record by the Middle

District ECF system:

Richard Thompson, Esquire        Ron Turo, Esquire
Robert J. Muise, Esquire         Toro Law Offices
Patrick T. Gillen, Esquire       28 South Pitt Street
Thomas More Law Center           Carlisle, PA 17013
24 Frank Lloyd Wright Drive
P. O. Box 393
Ann Arbor, MI 48106

<u>VIA FAX (717.852.8797)</u>
Niles S. Benn, Esquire
Terence J. Barna, Esquire
Benn Law Firm
103-107 East Market Street
PO Box 5185
York, PA 17405-5185

*s/ Thomas B. Schmidt, III*
Thomas B. Schmidt, III (PA 19196)