IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMMY J. KITZMILLER, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:04-CV-2688 |
| | ) | |
| DOVER AREA SCHOOL DISTRICT | ) | Hon. John E. Jones, III |
| and DOVER AREA SCHOOL | ) | |
| DISTRICT BOARD OF DIRECTORS, | ) | |
| | ) | REPLY OF FOUNDATION |
| Defendants, | ) | FOR THOUGHT AND ETHICS |
| | ) | TO PLAINTIFFS' AND |
| FOUNDATION FOR THOUGHT AND | ) | DEFENDANTS' OPPOSITION |
| ETHICS, | ) | TO FTE'S APPLICATION TO |
| | ) | INTERVENE |
| Applicant for Intervention. | ) | |

# TABLE OF CONTENTS

Table of Authorities ...................................................................................iv

Summary of Argument..............................................................................1

Argument and Authorities.........................................................................2

I.   FTE Has a Right to Intervene Under Fed. R. Civ. P. 24(a)(2).........................2

   A. FTE's Application is Timely Because the Litigation is at an Early
      Stage ...........................................................................................2

   B. FTE's Application is Timely Because Any Prejudice to the Parties is of
      Their Own Making ........................................................................3

   C. FTE's Application is Timely Because FTE Did Not Delay......................4

   D. Plaintiffs Seek to Minimize FTE's Economic Interests............................8

   E. Economic Interests Are Sufficient for Intervention as of Right ...............9

      1. FTE Has Direct, Financial Interests in the Subject Matter of the
         Litigation ..............................................................................9

      2. Plaintiffs Rely on Authority that Supports Intervention by FTE........12

   F. FTE's Educational and Expressive Interests are at Stake in this
      Litigation .............................................................................14

   G. Impairment is Not Measured by Looking to Unimpaired Interests .........16

   H. Impairment is Not Measured by Looking to Public Opinion...................17

   I.  FTE's Interests are Not Adequately Represented ...................................17

      1. Defendants' Alleged Representation of FTE's Generalized
         Interests is Inadequate ..........................................................17

    2.   Defendants' Interests are Likely to Change .........................................18

    3.   Defendants Failed to Defend the Protective Order that Their Conduct Necessitated .........................................................................19

    4.   Defendants Fired Their Retained Experts of IDT ..............................20

II.   FTE Should be Permitted to Intervene Under Fed. R. Civ. P. 24(b)(2) .........21

   A. FTE and the Parties Have Common Questions of Law and Fact.............21

   B. FTE Will Add to the Litigation by Vigorously Opposing Plaintiffs' Central Theory .........................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                            **Page(s)**

*AMS Constr. Co., Inc. v. Reliance Ins. Co.*,
　　No. Civ.A.04-CV-2097, 2004 WL 2600792 (E.D. Pa. Nov. 15, 2004)........12

*Brody v. Spang*,
　　957 F.2d 1108 (3d Cir. 1992) ................................................................16, 17

*Fed. Trade Comm'n v. Mercury Mktg. of Del., Inc.*,
　　No. Civ.A.00-3281, 2004 WL 2110686 (E.D. Pa. Aug. 25, 2004)..............12

*Harris v. Pernsley*,
　　820 F.2d 592 (3d Cir. 1987) .........................................................................15

*Haymond v. Lundy*,
　　No. CIV.A. 99-5048, 2002 WL 31149289 (E.D. Pa. Sept. 26, 2002)...........13

*Keyishian v. Bd. of Regents of Univ. of State of N. Y.*,
　　385 U.S. 589 (1967).......................................................................................15

*Kitzmiller v. Dover Area Sch. Dist.*,
　　No. 04CV2688, 2005 WL 578974 (M.D. Pa. Mar. 10, 2005) .....................19

*Kleissler v. U.S. Forest Serv.*,
　　157 F.3d 964 (3d Cir. 1998) ............................................................2, 10, 18

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
　　72 F.3d 361 (3d Cir. 1995) .........................................................2, 3, 10, 12

*Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*,
　　No. CIV.A.86-5357, 1997 WL 587278 (E.D. Pa. Sept. 10, 1997)...............13

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
　　732 F.2d 452 (5th Cir. 1984) .......................................................................10

*Pa. State Univ. v. U.S. Dept. of Health & Human Servs.*,
　　142 F.R.D. 274 (M.D. Pa. 1992) .................................................................12

*Sch. Dist. of Philadelphia v. Pa. Milk Mktg. Bd.*,
    160 F.R.D. 66 (E.D. Pa. 1995) ......................................................13

*Sierra Club v. Epsy*,
    18 F.3d 1202 (5th Cir. 1994) ...................................................5, 6

*Southeastern Pa. Transp. Auth. v. Pa. Pub. Utility Comm'n*,
    210 F. Supp. 2d 689 (E.D. Pa. 2002)....................................13, 14

*U.S. v. Alcan Aluminum, Inc.*,
    25 F.3d 1174 (3d Cir. 1994). ...........................................5, 10, 12

*Williams v. Wohlgemuth,*
    540 F.2d 163 (3d Cir. 1976). .......................................................9

## Federal Rules

Fed. R. Civ. P. 24(a)(2) ...............................................................1

Fed. R. Civ. P. 24(b)(2)...............................................................1

# SUMMARY OF ARGUMENT

Plaintiffs admit that they seek to prove that "intelligent design is fundamentally a religious proposition rather than a scientific one." (Pls.' Opp'n Br. at 20.)[1] Yet Defendants claim that FTE is attempting to "hijack this litigation" to "transform this case from one focused on Defendants' policy to make students aware of IDT to a case focused on the more general and abstract issue FTE wishes to litigate – the overall standing of IDT quite apart from the facts of this case." (Defs.' Opp'n Memo. at 7.)[2] Defendants' faulty perception of this litigation demonstrates that FTE's substantial economic, educational, and expressive interests are indeed threatened and thus intervention is warranted.

FTE has a right to intervene under Federal Rule of Civil Procedure 24(a)(2) because FTE's application was filed early in the litigation and within weeks of learning that its interests were directly affected by the litigation; FTE has sufficient economic, educational, and expressive interests in the litigation; FTE's interests may be impaired by the disposition of this action; and FTE's interests are not adequately represented by the parties. Alternatively, FTE should be permitted to intervene under Federal Rule of Civil Procedure 24(b)(2) because FTE and the parties are faced with common questions of law and fact, FTE will add to the

---

[1] "Pls.' Opp'n Br." refers to Plaintiffs' Brief Opposing Application to Intervene by Foundation for Thought and Ethics.

[2] Defs.' Opp'n Memo." refers to Defendants' Memorandum of Law in Opposition to FTE's Application to Intervene.

litigation, and Defendants do not adequately represent FTE's interests.   By granting intervention, this Court will protect FTE's substantial interests and fulfill the central purpose of Rule 24 to "allow intervention by those who might be practically disadvantaged by the disposition of the action."  *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 970 (3d Cir. 1998).

## ARGUMENT AND AUTHORITIES

### I.   FTE Has a Right to Intervene Under Fed. R. Civ. P. 24(a)(2)

#### A.   FTE's Application is Timely Because the Litigation is at an Early Stage

Plaintiffs claim that the litigation has reached an "advanced stage," so "FTE's application [is] untimely because it will cause prejudice, delay and added expense to the parties."  (Pls.' Opp'n Br. at 5).  Defendants go so far as to argue that intervention would require the parties to "relitigate the case."  (Defs.' Opp'n Memo. at 7.)  These contentions are simply not true.  This case was filed only six months ago.  The litigation is still in its early stages: discovery continues.  In fact, depositions are scheduled for July 8 and 19, 2005, the parties have not filed dispositive motions, and the trial date is not until September 26, 2005.

Simply put, "[t]he mere passage of time . . . does not render an application untimely."  *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995).  In *Mountain Top Condominium Association*, the court held that the proposed intervenors' application was timely even though "four

2

years had elapsed before [they] filed their motion to intervene." *Id*. The "critical inquiry is: what proceedings of substance on the merits have occurred?" *Id*. The court explained, "[T]he stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved. As a result, intervention has been allowed even after the entry of a judgment." *Id*. at 369 (citation omitted).

In this case, FTE's application is timely because FTE filed it at an early stage of litigation. When FTE filed the application on May 23, 2005, the parties had several weeks of discovery remaining and there had only been one "proceeding[] of substance on the merits" – a motion to dismiss by Defendants.

**B.    FTE's Application is Timely Because Any Prejudice to the Parties is of Their Own Making**

Plaintiffs claim that they will be prejudiced by FTE's intervention because "the parties already have completed most of the depositions and other discovery necessary, [so] they may have to depose additional witnesses and engage in additional discovery if FTE is permitted to intervene." (Pls.' Opp'n Br. at 5.) Likewise, Defendants state that they will be prejudiced because "the parties have virtually completed discovery." (Defs.' Opp'n Memo. at 7.) These arguments fail when they are put in proper context: before and after FTE's application to intervene, FTE's counsel attempted to participate in scheduled depositions. (Ex. A.) However, Defendants and Plaintiffs refused to allow FTE's participation

despite knowing that should FTE's application be granted, FTE would seek to again depose some individuals.  (Ex. A.)  As of May 23, 2005, there were many depositions still scheduled in this case.  Neither Plaintiffs nor Defendants should be permitted to claim prejudice when FTE sought to ameliorate any prejudice but was rejected.

Furthermore, when certain experts requested private representation by counsel for FTE, (Meyer Aff. ¶ 4; Brown Aff. ¶¶ 3-4), Defendants (amazingly) fired several experts because they insisted on representation, rather than allow these experts the benefit of counsel.  (Meyer Aff. ¶¶ 5, 7-8; Brown Aff. ¶¶ 7-8.)  Ignoring their role in preventing FTE's participation in discovery, the parties now argue that FTE's intervention is not timely because discovery expired on June 15, 2005.  (Pls.' Opp'n Br. at 5; Defs.' Opp'n Memo. at 7.)  FTE's application should not be deemed untimely merely because FTE was prevented from participating in discovery by the same parties that now oppose intervention.

### C.   FTE's Application is Timely Because FTE Did Not Delay

Plaintiffs claim that "FTE's application is untimely because FTE does not have a sufficient reason for its delay."  (Pls.' Opp'n Br. at 7.)  Plaintiffs proffer the following reasons in an attempt to demonstrate delay:  1) Jon Buell ("Buell") was previously aware of the litigation through media reports, 2) Buell wrote a letter in 1987 concerning the impact of legal rulings on sales, and 3) FTE did not recently

become aware of Plaintiffs' claim that IDT is a religious view.  (Pls.' Opp'n Br. at 7-8.)

Plaintiffs arguments are unpersuasive because "timeliness is not just a function of counting days; it is determined by the totality of the circumstances." *U.S. v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 (3d Cir. 1994).  "[T]o the extent there is a temporal component to the timeliness inquiry, it should be measured from the point which an applicant knows, or should know, its rights are directly affected by the litigation, not . . . from the time the applicant learns of the litigation."  *Id*. at 1182.  Similarly, the Fifth Circuit "rejected the notion that the date on which the would-be intervenor became aware of the pendency of the action should be used to determine whether it acted promptly."  *Sierra Club v. Epsy*, 18 F.3d 1202, 1206 (5th Cir. 1994).  "A better gauge of promptness is the speed with which the would-be intervenor acted when it became aware that its interests would no longer be protected by the original parties."  *Id*.

First, Plaintiffs would measure the timeliness of FTE's application based on Buell's awareness of the litigation through media reports.  (Pls.' Opp'n Br. at 7.) While Buell first learned of the litigation through media reports, these reports did not provide him with knowledge that FTE's rights were "directly affected by litigation."  Rather, FTE learned that this case would affect its private rights in its commercial property after Plaintiffs served FTE and Buell, FTE's President, with

5

subpoenas on April 28, 2005.  (Buell Aff. ¶ 7.)  The discovery subpoenas prompted FTE and Buell to retain its own legal counsel and to ascertain the specifics of Plaintiffs' claims in this case.  (Buell Aff. ¶¶ 6, 8.)  In addition, FTE recently learned on May 10, 2005 and May 19, 2005 from Plaintiffs' pleadings in this Court and the Northern District of Texas that FTE's economic, educational, and expressive interests are directly affected by this litigation.  (Buell Aff. ¶¶ 8-13.)

Media reports often contain limited information about a news story and are frequently unreliable.  It is unreasonable for Plaintiffs to charge Buell with knowledge that FTE's rights were *directly* affected by his review of sketchy news reports.  Rather, timeliness should be measured from the events described above that occurred in April and May of 2005 because "[a] better gauge of promptness is the speed with which the would-be intervenor acted when it became aware that its interests would no longer be protected by the original parties." *Sierra Club*, 18 F.3d at 1206.  FTE timely filed an Application to Intervene with this Court on May 23, 2005.  Because FTE did not delay in seeking to intervene, the parties will not be prejudiced by FTE's intervention.

Second, Plaintiffs attempt to measure the timeliness of FTE's application in this case based on an excerpt from Jon Buell's letter to a publisher that was written nearly 20 years ago about another case.  (Pls.' Opp'n Br. at 7).  While Buell may have seen the interplay of law and creation science in 1987, this says nothing about

Buell's knowledge of the potential impact of the current case on a different theory – IDT – in 2005.  No court would reasonably impute notice concerning an entity's present interests based on an individual's state of mind nearly 20 years ago concerning a separate matter.

Last, Plaintiffs attempt to measure the timeliness of FTE's application based on when Plaintiffs believe FTE "became aware of plaintiffs' claim that intelligent design is a religious view."  (Pls.' Opp'n Br. at 8.)  Plaintiffs note that they "made clear from the inception of this suit that they believe intelligent design is a religiously motivated viewpoint."  (Pls.' Opp'n Br. at 8.)  Again, the focal point for the timeliness inquiry is to determine when FTE became aware that its rights were directly affected by Plaintiffs' claims, not when the claims were filed.  Because FTE learned that its rights were directly implicated in April and May of 2005, the timing of when Plaintiffs' complaint was filed is irrelevant.

In addition, Plaintiffs highlight that "the religious aspect of this lawsuit has been reported in national newspapers for several months."  (Pls.' Opp'n Br. at 8.) Even if the news reports stated that the lawsuit had a religious aspect, this would not put FTE on notice that its rights were directly implicated.  Media spin on the religious aspect to the lawsuit does not equal knowledge that Plaintiffs intended to establish as a matter of law that IDT is not science, but inherently religious

doctrine.  FTE became aware that its rights were directly affected in April and May of 2005, so FTE timely filed its application.

### D.    Plaintiffs Seek to Minimize FTE's Economic Interests

Plaintiffs seek to minimize FTE's asserted financial interests when they claim that "FTE's only stated reason for intervening in this lawsuit is 'to prevent an economic loss of over $500,000' from the potential loss of book sales to public educational institutions." (Pls.' Opp'n Br. at 10.)  If a potential injury of half a million dollars is not enough, FTE reminds the Court that Plaintiffs seek to stigmatize FTE's publications as a constitutional violation thus barring FTE from the commercial market of public schools.  (Buell Aff. ¶¶ 12-13.)  A judicial finding that IDT is religious as a matter of law would in fact greatly jeopardize FTE's continued existence as a viable entity (Buell Aff. ¶ 13.)  Specifically:

- FTE has significant commercial interests in their unpublished manuscripts; FTE's competitors could benefit if these proprietary, pre-production manuscripts became public (Intervention Memo. at 2[3]);

- A judicial finding that IDT is religious as a matter of law would likely bar the use of FTE materials in public school classes throughout the nation – denying FTE access to its primary commercial market (Intervention Memo. at 2-3);

- Plaintiffs are specifically challenging the central scientific theory upon which FTE's economic interests rest (Intervention Memo. at 9);

---

[3] "Intervention Memo." refers to Memorandum of Law in Support of Application to Intervene by Foundation for Thought and Ethics.

- The potential lost income from the sale of *Pandas* would be approximately $213,334 (Intervention Memo. at 11);[4]

- FTE has spent $49,630 to develop *The Design of Life* (Intervention Memo. at 11); and

- The potential lost income from the sale of *The Design of Life* would be approximately $310,400 (Intervention Memo. at 11).

Clearly, FTE has substantial economic interests at stake.

### E.   <u>Economic Interests Are Sufficient for Intervention as of Right</u>

### 1.   FTE Has Direct, Financial Interests in the Subject Matter of the Litigation

Plaintiffs argue that FTE's "commercial interest is insufficient to warrant intervention under Rule 24(a)(2)." (Pls.' Opp'n Br. at 10.)  Plaintiffs also state that "FTE can only assert a remote and attenuated economic interest" (Pls.' Opp'n Br. at 12), and Defendants similarly claim that "FTE's stated interest in the outcome of this litigation is remote and speculative." (Defs.' Opp'n Memo. at 4.)

FTE is entitled to intervene as of right because FTE has a direct, financial interest in the subject matter of the litigation – IDT and FTE's publications named in Defendants' policy and demanded by subpoena.  While Plaintiffs point to case law disapproving of intervention based on "a mere economic interest in the

_____

[4] Plaintiffs claim that FTE provided no factual foundation for its financial claims (Pls.' Opp'n Br. at 10), but this information was supported by the Affidavit of Jon A. Buell, which was filed in support of FTE's intervention application and repeatedly cited throughout FTE's intervention memorandum.  This court may properly rely on affidavits when deciding this motion.  *See, e.g., Williams v. Wohlgemuth*, 540 F.2d 163, 165-66 (3d Cir. 1976).

outcome of the litigation" (Pls.' Opp'n Br. at 10-11), the Third Circuit has discredited the "mere economic interest" line of cases by stating that such phraseology "has been used but has not proved decisive in practice." *Kleissler*, 157 F.3d at 970 (citing *Mountain Top Condo. Ass'n*, 157 F.3d at 366; *Alcan Aluminum*, 25 F.3d at 366).

The *Kleissler* court noted that the Fifth Circuit explored the "mere economic interest" concept in *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464-66, 470 (5th Cir. 1984) (*en banc*)." *Kleissler*, 157 F.3d at 970 n.1. "It was not the fact that the city's interest was financial in nature that disqualified it, but rather, because its interest was too attenuated from that of the utility." *Id*. Clearly, the issue of whether a party calls its interest economic, financial, monetary, or punitive is immaterial because the real issue is "whether the proposed intervenor's interest is direct or remote." *Id*. at 972.

In *Kleissler*, the court evaluated the asserted interests of proposed intervenors and permitted each party to intervene as of right based on financial interests. *Id*. at 973. First, the court recognized that the government applicants had sufficient interests because the relief sought by plaintiffs "would have an immediate, adverse financial effect on the school districts and municipalities." *Id*. at 972. The *Kleissler* court noted that the government applicants will lose money "if plaintiffs are successful in this lawsuit." *Id*. at 973.

Next, the *Kleissler* court permitted intervention by companies with existing timber contracts and companies that "may not have received contracts," but were "very dependent on timber contracts . . . and 'their continued existence may be jeopardized' if plaintiffs prevail."   *Id*. at 973.  The court concluded "that the interests of the [companies] are direct not remote," and "they have more than mere *attenuated* economic interests."  *Id*. at 973 (emphasis added).

Here, FTE's financial interests in IDT and FTE's textbooks and publications are not remote from the ongoing litigation.  *See* § I(D), *supra*.   Plaintiffs seek to stigmatize FTE's textbooks as a constitutional violation thus barring FTE from the commercial market of public schools.  (Buell Aff. ¶¶ 12-13.)  Moreover, as the sole publisher of IDT textbooks for use in public schools,[5] FTE has invested in the publication, production, and promotion of its textbooks.  (Buell Aff. ¶¶ 12-13). FTE markets *Pandas* to public schools within the Middle District of Pennsylvania and throughout the United States, and plans to market *The Design of Life* to public schools within the Middle District of Pennsylvania and throughout the United States as well.  (Buell Aff. ¶¶ 12-13.)  Ruling that IDT is inherently religious would have an "immediate, adverse financial effect" on FTE's economic interests;

---

[5] Because FTE is the sole publisher of a supplemental textbook presenting IDT for use in high school biology courses (Buell Aff. ¶ 4), Defendants' concern that "any publisher of any text touching on the controversy would have a sufficient interest to intervene" is not supported by fact and thus should not deter intervention by FTE.  (Dfs.' Opp'n Memo. at 4.)

the consequent economic impact would not be remote or attenuated from the Court's decision.  Therefore, intervention as of right is proper in this case.

### 2.    Plaintiffs Rely on Authority that Supports Intervention by FTE

While Plaintiffs point to case law to argue that a "commercial interest is insufficient to warrant intervention" (Pls.' Opp'n Br. at 10-15), the legal principle that emerges from these cases is that a direct economic interest in the subject matter of the litigation adequately supports a motion for intervention – a standard that FTE clearly meets.  *See, e.g.*, *Mountain Top Condo. Ass'n*, 72 F.3d at 367-68 (condominium owner had sufficient interest in insurance proceeds to warrant intervention); *Alcan Aluminum, Inc.*, 25 F.3d at 1184-85 (the right of potentially responsible parties under CERCLA to contribution for clean-up costs from non-settling parties was a sufficiently protectable interest to support a motion to intervene); *Pa. State Univ. v. U.S. Dept. of Health & Human Servs.*, 142 F.R.D. 274, 275 (M.D. Pa. 1992) (HMO's potential economic interest in the outcome of the action – rather than an interest in the subject matter of the litigation as FTE claims – is not a legally protectable interest); *AMS Constr. Co., Inc. v. Reliance Ins. Co.*, No. Civ.A.04-CV-2097, 2004 WL 2600792, at *3 (E.D. Pa. Nov. 15, 2004) (Florida Guaranty had sufficient interests in policyholder's deductible reimbursements and collateral provided to secure such obligations); *Fed. Trade Comm'n v. Mercury Mktg. of Del., Inc.*, No. Civ.A.00-3281, 2004 WL 2110686, at

*2 (E.D. Pa. Aug. 25, 2004) (Lender allowed to intervene permissively, but not by right because it did not have a sufficient interest to protect tenuous future earnings of **another** company); *Haymond v. Lundy*, No. CIV.A.99-5048, 2002 WL 31149289, at *3-4 (E.D. Pa. Sept. 26, 2002) (Bank did not have sufficient interest to warrant post-judgment intervention in action concerning breach of partnership agreement where judgment had "no practical effect on the Bank's interest"); *Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, No. CIV.A.86-5357, 1997 WL 587278 (E.D. Pa. Sept. 10, 1997) (possibility of increased cost to Department of Transportation was not sufficient interest to permit intervention in action by Amtrak against Public Utility Commission to enforce injunction concerning exemption from maintenance costs); *Sch. Dist. of Philadelphia v. Pa. Milk Mktg. Bd.*, 160 F.R.D. 66, 68 (E.D. Pa. 1995) (dairy association did not have sufficient interest to intervene because dairy farmers would not be affected).

Ironically, Plaintiffs highlight *Southeastern Pennsylvania Transportation Authority v. Pennsylvania Public Utility Commission* ("SEPTA") (Pls.' Opp'n Br. at 10-11), which actually supports FTE's intervention in this action.  210 F. Supp. 2d 689 (E.D. Pa. 2002).  SEPTA and Amtrak individually sued the Pennsylvania Public Utility Commission to enforce a SEPTA Consent Decree and a prior judgment in an Amtrak case that recognized their statutory exemption from the payment of railway-related road improvements.  *Id*. at 702.

Norfolk Southern, a non-exempt entity, attempted to intervene in the litigation "on the ground that highway bridge costs not assessed to Amtrak or SEPTA . . . might be assessed to it." *Id*. at 703. Norfolk Southern sought to intervene to vacate the SEPTA consent decree and relitigate the merits of the Amtrak case. *Id*. at 705. The court noted that the "proceedings involve[d] *procedural* issues – the enforceability of prior federal court judgments in the face of conflicting state court judgments." *Id*. As a non-exempt entity that did not have an interest in the subject matter of the litigation, the court denied intervention because "Norfolk Southern's interest is limited to the economic effects generated by the ***outcome*** of this litigation": the possibility that Norfolk Southern would have to pay higher assessments. *Id*. at 705 (emphasis added).

In contrast to Norfolk Southern's "backdoor" attempt to intervene in a post-judgment action concerning procedural issues in order to relitigate the merits, FTE is seeking to timely intervene to defend its interests in IDT as scientific theory, rather than religious doctrine, at the same time the parties are litigating this issue. Due to FTE's substantial interests in the subject matter of this litigation, FTE is entitled to intervene as of right.

### F.   FTE's Educational and Expressive Interests are at Stake in this Litigation

In FTE's intervention memorandum, FTE repeatedly stated that FTE has economic, educational, and expressive interests at stake in this litigation.

14

(Intevention Memo. at 9.)  Yet Plaintiffs claim that FTE's only stated interest is an economic loss.  (Pls.' Opp'n Br. at 10.)  Plaintiffs completely failed to rebut these arguments and thus waived a response to FTE's asserted educational and expressive interests.

"Rule 24(a)(2) directs the courts to consider the practical consequences of the litigation," *i.e.*, "any significant legal effect on the applicant's interest." *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987).  Here, Plaintiffs seek to establish as a matter of law that IDT is not science, but rather inherently religious doctrine.  (Compl. at 2-4.)  If Plaintiffs succeed, the judicial finding would likely bar the use of FTE's materials in public school classes throughout the nation – foreclosing FTE from its primary commercial market and from the constitutional "marketplace of ideas." *Keyishian v. Bd. of Regents of Univ. of State of N. Y.*, 385 U.S. 589, 603 (1967).  The Supreme Court has emphasized our national – and individual – interest in promoting the "marketplace of ideas":

> Our Nation is deeply committed to safeguarding academic freedom, which is of transcendent value to all of us and not merely to the teachers concerned. . . . The classroom is peculiarly the "marketplace of ideas."  The Nation's future depends upon leaders trained through ***wide exposure to that robust exchange of ideas*** which discovers truth "out of a multitude of tongues, (rather) than through any kind of authoritative selection."

*Id*. (citations omitted).

Here, FTE has substantial educational and expressive interests in promoting IDT in public school classrooms and defending IDT as a scientific theory, rather than inherently religious doctrine.  (Buell Aff. ¶¶ 11-13.)  As the sole publisher of a supplemental textbook presenting IDT for use in high school biology courses and the publisher of the textbook identified in Defendants' policy, these educational and expressive interests are unique to FTE and a sufficient basis for intervention.  (Buell Aff. ¶ 4; Compl. at 2.)  Again, Plaintiffs have waived their arguments on this point.

### G.     Impairment is Not Measured by Looking to Unimpaired Interests

Plaintiffs seek to minimize this lawsuit's potential to foreclose FTE's primary market for its textbooks by arguing that "traditional book stores, religious book stores, [and] sales to churches" are open to FTE.  (Pls.' Opp'n Br. at 15.)  Plaintiffs miss the point.  The focus of the impairment inquiry is to identify FTE's economic, educational, and expressive interests that "may be affected or impaired, as a practical matter by the disposition of the action."  *Brody v. Spang* , 957 F.2d 1108, 1122 (3d Cir. 1992) (citing *Harris*, 820 F.2d at 596).  The relevant inquiry is not to identify what interests will be unimpaired by the disposition of the action.  The markets that Plaintiffs identified as being open to FTE are irrelevant because they are not at issue in this case.  (Pls.' Opp'n Br. at 15.)  Plaintiffs provide no legal support for their novel argument, which should be rejected.

16

**H.**   **Impairment is Not Measured by Looking to Public Opinion**

Defendants argue that it is not clear that "a finding against the Defendants will necessarily have an adverse impact upon FTE's interest." (Defs.' Opp'n Memo. at 4.)  According to Defendants, "IDT has been the subject of an intense public debate for over a decade and . . . IDT continues to generate support." (Defs.' Opp'n Memo. at 4.)  Defendants focus on a non-issue.  As stated above, the focus of the impairment inquiry is to identify FTE's economic, educational, and expressive interests that "may be affected or impaired, as a practical matter by the disposition of the action."  *Brody*, 957 F.2d at 1122.  Nothing is gained by looking to public opinion concerning IDT.   Public opinion has no bearing on the disposition of this action.

**I.**   **FTE's Interests are Not Adequately Represented**

**1.**   **Defendants' Alleged Representation of FTE's Generalized Interest is Inadequate**

Plaintiffs broadly claim that "defendants will adequately represent FTE's interests" (Pls.' Opp'n Br. at 15-16), and Defendants claim that they "adequately represent any *generalized* interest in IDT that is shared with FTE." (Defs.' Opp'n Memo. at 5) (emphasis added).  Defendants do not adequately represent FTE because FTE's economic, educational and expressive interests are "sufficiently diverse" to Defendants' interest in defending Dover School Board's policy.  FTE's specific interests in this litigation are not some "generalized interest" in IDT.

Rather, in contrast to Defendants' narrow policy-related interest, FTE has broad economic, educational, and expressive interests at stake concerning IDT and FTE's textbooks and other publications, as outlined in §§ D-F, *supra*.  These interests will be left unrepresented and vulnerable if FTE is not permitted to intervene.

### 2.   Defendants' Interests Are Likely to Change

Defendants argue at this early stage of litigation "that they do indeed defend the status of [IDT] as a legitimate scientific theory." (Defs.' Opp'n Memo. at 5.) This claim is unrealistic because Defendants' counsel are obligated to defend the interests of their clients, Dover Area School District and Dover Area School District Board of Directors – not to "die on the hill" defending IDT.

As governmental entities, Defendants' interests are subject to change at any point of the litigation.   "[I]t is not realistic to assume that the [government's] programs will remain static or unaffected by unanticipated policy shifts." *Kleissler*, 157 F.3d at 974.  The *Kleissler* court granted intervention and noted that during litigation situations may arise where settlements or other compromises may be reached that benefit some parties, but harm others with interests that are "inextricably intertwined" yet distinct.  *Id*.

The interests of FTE and Defendants are not "inextricably intertwined"

simply because FTE's textbook is named in Defendants' policy.[6]   During the course of this litigation, Defendants may decide to settle this case to avoid attorneys' fees, enter into a stipulation agreeing with Plaintiffs' concerning the nature of IDT, remove *Pandas* from Defendants' classrooms, point to other sources that challenge "Darwin's theory," and/or revoke their policy that allows consideration of IDT.   Because Defendants' interests and obligations center on defending Defendants' policy and the ever-changing interests of governmental entities, the litigation path Defendants will choose is uncertain and thus may jeopardize FTE's interests.   Defendants' interests prevent them from protecting FTE's substantial interests – including the very existence of FTE as a viable entity. Because Defendants "cannot or will not devote proper attention to [FTE's] interest[s]," Defendants do not adequately represent FTE.   *Kitzmiller v. Dover Area Sch. Dist.*, No. 04CV2688, 2005 WL 578974, at *5 (M.D. Pa. Mar. 10, 2005). Therefore, intervention by FTE is vital to its interests in this case.

### 3.   Defendants Failed to Defend the Protective Order that Their Conduct Necessitated

Defendants claim that they adequately represent FTE's interest because "Defendants filed a motion for protective order seeking to protect FTE's interest in the draft text *The Design of Life* on behalf of Defendants' expert William Dembski,

---

[6] Were this true, it would provide parties a "silver bullet" with which they might slay prospective intervenors by simply mentioning documents in common between parties and the intervention applicants.

a principal author of that text."  (Defs.' Opp'n Memo. at 5.)   However, it was Defendants' own conduct that created the need for a protective order:  under the guidance of Defendants, William Dembski prepared an expert report that Defendants produced to Plaintiffs.   For unknown and unexplained reasons, Dembski's expert report specifically identified FTE's draft text *The Design of Life* even though it is unpublished and was not at issue in this case until disclosed by Defendants.  Consequently, Plaintiffs demanded that FTE and Buell produce the draft text and other related materials.  FTE's counsel filed a motion for protective order in the Northern District of Texas seeking to prohibit disclosure of its confidential and proprietary information.  (Buell Aff. ¶ 8.)  Yet – remarkably – Defendants' counsel did not even appear at the hearing on June 6, 2005 in the Northern District of Texas or file any papers in support of FTE's crucial protective order.

### 4.    Defendants Fired Their Retained Experts of IDT

Defendants also claim that they adequately represent FTE because they "have retained highly credentialed experts to defend the status of IDT as a scientific theory," including "William Dembski, a principal author of *The Design of Life*, and one of the foremost exponents of IDT."  (Defs.' Opp'n Memo. at 5-6.) Soon after Defendants filed their intervention response, however, Defendants fired William Dembski as well as John Campbell as expert witnesses.  (Brown Aff. ¶ 7;

Meyer Aff. ¶¶ 7-8.)[7]  Having fired the leading IDT experts – when the time for designating experts has expired – Defendants cannot now claim that they adequately represent FTE's interests in IDT.

## II.    FTE Should be Permitted to Intervene Under Fed. R. Civ. P. 24(b)(2)

### A.    FTE and the Parties Have Common Questions of Law and Fact

Plaintiffs concede that "FTE's defense would present a question of fact in common with that already asserted in this lawsuit – namely, whether intelligent design is fundamentally a religious proposition rather than a scientific one." (Pls.' Opp'n Br. at 20.)  Defendants failed to respond to FTE's request that this Court grant permissive intervention, except to insert the following statement in a footnote:  "For these same reasons, Defendants believe that FTE has not even made a showing sufficient to justify permissive intervention under Fed. R. Civ. P. [24](b)."  (Defs.' Opp'n Memo. at 7.)  Because the element of a common question of law or fact is not an element of intervention as of right, Defendants failed to rebut this point and thus their cursory footnote fails as a legal argument.  This

---

[7] FTE specifically rejects Plaintiffs' claim that "FTE's counsel is interfering with defendants' counsel's ability to adequately represent defendants by causing defendants' experts to withdraw." (Pls.' Opp'n Br. at 18.)  Quite the contrary, Defendants fired William Dembski and John Campbell as expert witnesses because they insisted on private counsel to provide confidential legal advice to assist them in preparing for depositions and to assist them at their expert depositions in this case.  (Brown Aff. ¶¶ 3-4; Meyer Aff. ¶¶ 4-5.)  Moreover, Stephen Meyer withdrew as an expert witness because he lost confidence in Defendants' counsel due to its treatment of its expert witnesses, including firing expert witnesses that insisted on private counsel.  (Meyer Aff. ¶ 9.)  In addition, Stephen Meyer recognized a difference of interests between Defendants' counsel and him in his role with the Discovery Institute. (Meyer Aff. ¶¶ 9, 11.)

Court should grant permissive intervention because FTE and the parties in the current litigation share common questions of law and fact.  (Intervention Memo. at 16-17.)

**B.**    **FTE Will Add to the Litigation by Vigorously Opposing Plaintiffs' Central Theory**

Defendants claim that FTE attempts to "hijack this litigation" to "transform this case from one focused on Defendants' policy to make students aware of IDT to a case focused on the more general and abstract issue FTE wishes to litigate – the overall standing of IDT quite apart from the facts of this case."  (Defs.' Opp'n Memo. at 7.)  Yet – contrary to Defendants' assertion – Plaintiffs freely admit that this lawsuit presents the question "whether intelligent design is fundamentally a religious proposition rather than a scientific one."  (Pls.' Opp'n Br. at 20.)  Defendants' ill-informed perception that this case is "focused on Defendants' policy" demonstrates that FTE will significantly add to the litigation by vigorously opposing Plaintiffs' central theory that IDT is tantamount to religion.  FTE's intent to defend IDT as science to protect its economic, educational, and expressive interests is not "hijack[ing]" – it's self-defense, and well-justified self-defense at that.

Therefore, Foundation for Thought and Ethics requests that the Court grant its intervention application.

Respectfully submitted,

By:   s/Randall L. Wenger
      **Randall L. Wenger, Esq.**
      PA I.D. No. 86537
      **Leonard G. Brown, III, Esq.**
      PA I.D. No. 83207
      **Dennis E. Boyle, Esq.**
      PA I.D. No. 49618
      **CLYMER & MUSSER, P.C.**
      23 North Lime Street
      Lancaster, PA 17602-2912
      (717) 299-7101

      **Jeffrey C. Mateer, Esq. \***
      Texas State Bar No. 13185320
      **MATEER & SHAFFER, L.L.P.**
      1300 Republic Center
      325 N. St. Paul Street
      Dallas, Texas 75202
      Telephone: (214) 720-9900
      Facsimile: (214) 720-9910

      **Benjamin W. Bull, Esq.**
      Arizona State Bar No. 009940
      **Gary S. McCaleb, Esq.**
      Arizona State Bar No. 018848
      **Elizabeth A. Murray, Esq.**
      Arizona State Bar No. 022954
      **ALLIANCE DEFENSE FUND**
      15333 North Pima Road Suite 165
      Scottsdale, AZ  85260
      Tel: (800) 835-5233
      Fax: (480) 444-0028

      **Kelly J. Shackelford, Esq.**
      Texas Bar No. 18070950
      **Hiram S. Sasser, III, Esq.**
      Texas Bar No. 24039157
      Oklahoma Bar No. 19559

23

**LIBERTY LEGAL INSTITUTE**
903 E. 18th, Suite 230
Plano, Texas 75024
Telephone: 972.423.3131
Facsimile: 972.423.8899

***Attorneys for Foundation for***
***Thought and Ethics***

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8**

This brief complies with the word-count limit described in Local Rule 7.8 as the word count feature of the MS Word word-processing system used to prepare this brief indicates that the actual number of words contained in this brief is 4,999.

By:   <u>s/Randall L. Wenger</u>
      **Randall L. Wenger, Esq.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above document was served electronically on the below listed individuals by electronic filing using the ECF system for the United States District Court, Middle District of Pennsylvania, and is available for viewing on its website.

Eric Rothschild
Alfred H. Wilcox
Pepper Hamilton, LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, Pennsylvania 19103

Patrick Gillen
Thomas More Law Center
24 Frank Lloyd Wright Drive
P.O. Box 93
Ann Arbor, Michigan 48106

By:   s/Randall L. Wenger
**Randall L. Wenger, Esq.**

Date: June 28, 2005