# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TAMMY KITZMILLER, et al.,     )
                                   )
        Plaintiffs,          )       Case No. 04-CV-2688
                                   )       (Hon. Judge Jones)
        v.                  )
                                   )
DOVER AREA SCHOOL DISTRICT and  )       **DEFENDANTS'**
DOVER AREA SCHOOL DISTRICT      )       **BRIEF IN SUPPORT OF**
BOARD OF DIRECTORS,           )       **MOTION FOR SUMMARY**
                                 )       **JUDGMENT**
        Defendants.      )
_____)

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PROCEDURAL HISTORY ................................................................................. 1

QUESTIONS INVOLVED ................................................................................. 1

FACTS ................................................................................................................. 1

RELIEF SOUGHT .............................................................................................. 6

SUMMARY JUDGMENT STANDARD ............................................................ 6

ARGUMENT ...................................................................................................... 6

    I.     DASD's Modest Curriculum Change Does Not Violate The
          Constitution ............................................................................................ 6

        A. This Court Should Be Reluctant To Intervene In the
           Curriculum Decisions of A Local School Board ............................. 7

        B. Establishment Clause ....................................................................... 8

        C. Critically Evaluating The Theory Of Evolution, Mentioning
           "Intelligent Design" In A Ninth-Grade Biology Class, And
           Referring Students To A Book In The Library On Intelligent
           Design Do Not Violate The Establishment Clause ........................ 10

           1. DASD's Ninth-Grade Biology Curriculum Has Many
              Valid Secular Purposes ........................................................... 11

           2. The Principal Or Primary Effect of The Curriculum
              Neither Advances Nor Inhibits Religion ............................... 19

CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Agostini v. Felton,*
521 U.S. 203 (1997)................................................................9, 10

*Board of Education v. Mergens,*
496 U.S. 226 (1990)....................................................................12

*Board of Education v. Pico,*
457 U.S. 853 (1982)..............................................................*passim*

*Bown v. Gwinnett County Sch. Dist.,*
112 F. 3d 1464 (11th Cir. 1997) .............................................12

*Capitol Square Review & Advisory Bd. v. Pinette,*
515 U.S. 753 (1995)....................................................................20

*Child Evangelism Fellowship of New Jersey v. Stafford Township Sch. Dist.,*
386 F.3d 514 (3rd Cir. 2004) ...............................................9, 21

*Edwards v. Aguillard,*
482 U.S. 573 (1987)..............................................................*passim*

*Epperson v. Arkansas,*
393 U.S. 97 (1968)................................................................*passim*

*Freedom From Religion Found. v. City of Marshfield,*
203 F.3d 487 (7th Cir. 200) ....................................................20

*Harris v. McRae,*
448 U.S. 297 (1980)....................................................................11

*Lamb's Chapel v. Center Moriches Union Free Sch. Dist.,,*
508 U.S. 384 (1993)....................................................................21

*Lemon v. Kurtzman,*
403 U.S. 602 (1971)..................................................................8, 9

*Lynch v. Donnelly,*
465 U.S. 668 (1984)..................................................................................... 18

*McCreary County v. American Civil Liberties Union of Ky.,*
No. 03-1694, 2005 WL 1498988 (U.S. Sup. Ct. June 27, 2005) ........................ 8, 11

*Mueller v. Allen,*
463 U.S. 388 (1983)..................................................................................... 11

*National Organization for Women v. Scheidler,*
510 US 249 (1994)......................................................................................... 1

*Springfield Sch. Dist. v. Department of Ed.,,*
483 Pa. 539, 397 A.2d 1157 (1979)............................................................... 7

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly,*
309 F.3d 144 (3rd Cir. 2002) ...................................................................... 9

*Wallace v. Jaffree,*
472 U.S. 38 (1985)................................................................................. 11, 20

*Wiest v. Mt. Lebanon Sch. Dist.,,*
457 Pa. 166, 320 A.2d 362 (1974)................................................................. 7

## **Constitutional Provisions**

U.S. Const. amend. I..................................................................................... 8

## **Rules**

Fed. R. Civ. P. 56(c) .................................................................................... 6

## PROCEDURAL HISTORY

On December 14, 2004, Plaintiffs filed a complaint challenging portions of Defendants' ninth-grade biology curriculum. (Doc.-#1). On January 6, 2005, Defendants filed their answer. (Doc.-#22). The parties have engaged in discovery pursuant to Fed. R. Civ. P. 26. Defendants ("DASD") now move this Court for a summary judgment in their favor as to all claims.

## QUESTIONS INVOLVED

I.    Whether making students aware of "gaps/problems" in the theory of evolution violates the Constitution.

II.   Whether making students aware of intelligent design in a ninth-grade biology class through a prepared statement and by referring to *Of Pandas and People* and placing this book in the school library violate the Constitution.

## FACTS[1]

Plaintiffs are parents of children that attend Dover High School or who claim that their children will attend this school in the future. For some children, this future time is many years away. Other children have already passed the ninth grade and will never have the challenged curriculum.[2] The individual students are not parties to this action. (*See* Compl. at ¶¶3-10).

---

[1] Pursuant to LR 56-1, Defendants have provided a separate statement of material facts ("SMF").

[2] Standing is an issue that this Court must consider at all stages of the litigation. *See National Org. for Women v. Scheidler,* 510 U.S. 249, 255 (1994) ("Standing

1

Plaintiffs' lawsuit challenges two components of DASD's ninth-grade biology curriculum: (1) The critical teaching of the theory of evolution;[3] and (2) The reading of a brief statement that essentially makes students <u>aware</u> of two facts (a) the existence of an explanation of the origins and diversification of life (i.e., intelligent design) that differs from the theory of evolution and (b) that the book *Of Pandas and People* and other resources are available to the students in the library if they desire further information.[4]

The challenged ninth-grade biology curriculum states:

> Students will be made aware of gaps/problems in Darwin's Theory and of other theories of evolution including, but not limited to, Intelligent Design.  The Origins of Life is not taught.

(SMF-¶¶20,28).

The brief statement is as follows:

---

represents a jurisdictional requirement which remains open to review at all stages of the litigation.").  For the reasons stated in Defendants' motion to dismiss (*see* Docs. #30-31), this Court should dismiss Plaintiff Smith and the Callahan Plaintiffs.

[3] As DASD understands it, Plaintiffs do not object to the fact that the theory of evolution is being taught pursuant to the Pennsylvania Academic Standards or that *Biology* was selected as the main text for the class.  In fact, Plaintiffs' expert and co-author of *Biology* predictably testified at deposition that the selection of this book was a good choice.  (*See* SMF-¶6).

[4] Plaintiffs do not object to DASD placing *Of Pandas and People* in the school library.  (*See* Tr. at 20,21,25 at Doc.-#44).  <u>Plaintiffs' apparent concern is with making students aware that it is there</u>.

The Pennsylvania Academic Standards require students to learn about Darwin's Theory of Evolution and eventually to take a standardized test of which evolution is a part.

Because Darwin's Theory is a theory, it continues to be tested as new evidence is discovered. The Theory is not a fact. Gaps in the Theory exist for which there is no evidence. A theory is defined as a well-tested explanation that unifies a broad range of observations.

Intelligent Design is an explanation of the origin of life that differs from Darwin's view. The reference book, *Of Pandas and People*, is available for students who might be interested in gaining an understanding of what Intelligent Design actually involves.

With respect to any theory, students are encouraged to keep an open mind. The school leaves the discussion of the Origins of Life to individual students and their families. As a Standards-driven district, class instruction focuses upon preparing students to achieve proficiency on Standards-based assessments.

(SMF-¶21).

This statement was recently modified to include the following revised sentence: "The reference book, *Of Pandas and People*, is available <u>in the library along with other resources</u> for students who might be interested in gaining an understanding of what Intelligent Design actually involves." (SMF-¶22) (emphasis added). This revision reflects the fact that there are multiple resources regarding the topic of evolution available in the library. (SMF-¶22).

A minority of working scientists, including Dr. Michael J. Behe, professor of biological sciences at Lehigh University in Pennsylvania, and Dr. Scott Minnich, a

microbiology professor at the University of Idaho, advocate for intelligent design as a scientific theory.  (SMF-¶14).

Pursuant to DASD policy, intelligent design will not be taught in the class nor is teaching it part of the curriculum.  As a result, students will not be tested on this subject.  Additionally, teachers are not permitted to teach creationism or present his/her or the School Board's religious beliefs in the classroom.  (SMF-¶¶24,25,30).

In addition to maintaining its standards-based curriculum focused on teaching and testing students on the theory of evolution, the change to DASD's ninth-grade biology curriculum has the purpose of informing students about the existing scientific controversy surrounding the theory of evolution, including the fact that alternative explanations, such as intelligent design, are being advanced by scientists.  (SMF-¶26).

The challenged curriculum is for the ninth-grade biology class; no other students or classes will have it.  This curriculum was implemented on January 18, 2005.  (SMF-¶¶28,29).

The Pennsylvania Academic Standards require students to "Evaluate the nature of scientific and technological knowledge" and to "Critically evaluate the status of existing theories," including the "theory of evolution."  (SMF-¶4).

Because the Darwinian theory of evolution is a theory, it continues to be tested as new evidence is discovered. (SMF-¶12). Like all scientific theories, it is not a fact. (SMF-¶13).

*Biology* contains several sections that address some of the weaknesses of the Darwinian theory of evolution. (SMF-¶9). For example, the origin of life is still an unsolved scientific problem. (SMF-¶10).

In a section entitled "Strengths and Weaknesses of Evolutionary Theory," the authors of *Biology*, one of whom is Plaintiffs' expert, write,

> Like any scientific theory, <u>evolutionary theory continues to change as new data are gathered</u> and new ways of thinking arise. As you will see shortly, researchers still debate such important questions as precisely <u>how new species arise</u> and <u>why species become extinct</u>. <u>There is also uncertainty about how life began</u>.

(SMF-¶8) (emphasis added).

According to the authors of *Biology*, "no theory is considered absolute truth." (SMF-¶11).

The Santorum Amendment to the No Child Left Behind Act of 2001 was included in the Final Conference Report and states, in part, the following:

> Where topics are taught that may generate controversy (such as biological evolution), the curriculum should help students to understand the full range of scientific views that exist, why such topics may generate controversy and how scientific discoveries can profoundly affect society.

(SMF-¶18).

## RELIEF SOUGHT

Plaintiffs seek (1) a declaratory judgment that portions of DASD's ninth-grade biology curriculum violate the United States and Pennsylvania Constitutions, (2) an injunction prohibiting DASD from implementing the challenged portions of the curriculum and requiring the removal of the book, *Of Pandas and People*, from DASD's "science classrooms,"[5] and (3) nominal damages. (Compl. at ¶¶49-56 & "Prayer for Relief").

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In the present case, there is no <u>genuine</u> issue as to any <u>material</u> fact; therefore, Defendants are entitled to a judgment as a matter of law.

## ARGUMENT

**I.   DASD's Modest Curriculum Change Does Not Violate The Constitution.**

The gravamen of Plaintiffs' complaint is an Establishment Clause violation. Because Plaintiffs' state law claim provides no greater protection than their

_____

[5] It is undisputed that this book is in the high school library. (*See* SMF-¶16).

Establishment Clause claim, DASD will focus its analysis on the established federal law. *See Wiest v. Mt. Lebanon Sch. Dist.*, 457 Pa. 166, 174, 320 A.2d 362, 366 (1974) ("The protection of rights and freedoms secured by [Article I, § 3] of our Constitution, however, does not transcend the protection of the First Amendment of the United States Constitution."); *Springfield Sch. Dist. v. Department of Ed.*, 483 Pa. 539, 571, 397 A.2d 1154, 1170-71 (1979) (stating that the limitations contained in Art. I, § 3 and Art. III, §§ 15 & 29 "do not extend beyond those announced by the United States Supreme Court in interpreting the first amendment to the federal constitution").

## A.    This Court Should Be Reluctant To Intervene In The Curriculum Decisions Of A Local School Board.

The U.S. Supreme Court "has long recognized that local school boards have broad discretion in the management of school affairs." *Board of Educ. v. Pico*, 457 U.S. 853, 863 (1982).

As the Court stated,

> Judicial interposition in the operation of the public school system of the Nation raises serious problems requiring care and <u>restraint</u>. . . . By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not <u>directly and sharply</u> implicate basic constitutional values.

*Epperson v. Arkansas*, 393 U.S. 97, 104 (1968) (emphasis added).

This Court should be reluctant to intervene in the present matter because DASD's ninth-grade biology curriculum does not "<u>directly and sharply</u> implicate basic constitutional values." This curriculum change was a modest attempt by a small-town school board to provide its students with an opportunity to learn more about an important subject.[6]

**B.    Establishment Clause.**

The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion. . . ." U.S. Const. amend. I. It applies to state governments and their political subdivisions by operation of the Fourteenth Amendment. *See Everson v. Board of Educ.*, 330 U.S. 1, 15 (1947).

The *Lemon* test set forth in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), remains the applicable test for <u>this</u> case based on controlling precedent. *See Edwards v. Aguillard*, 482 U.S. 578 (1987) (applying *Lemon* test to strike down Louisiana's "Creationsim Act"); *see also Epperson*, 393 U.S. at 107 (considering the purpose and the primary effect of an Arkansas statute forbidding the teaching of evolution in public schools); *see generally McCreary County v. ACLU*, No. 03-

---

[6] The DASD Board of Directors, like many small-town school boards, is not comprised of experts in science. Rather, they are ordinary people who volunteer their time and efforts to do the best they can to improve the education of the students in the district.

1694, 2005 WL 1498988 (U.S. Sup. Ct. June 27, 2005) (declining request to abandon the *Lemon* test).

Under the *Lemon* test, there is <u>no</u> Establishment Clause violation if the challenged law or practice: (1) has "a secular purpose"; (2) "its principal or primary effect" "neither advances nor inhibits religion," and (3) it does not "foster an excessive government entanglement with religion." *Lemon*, 403 U.S. at 612-13; *see also Child Evangelism Fellowship of New Jersey v. Stafford Township Sch. Dist.*, 386 F.3d 514, 534 (3rd Cir. 2004) (reciting the *Lemon* test and holding that the school district would not offend *Lemon* by allowing the distribution of a religious organization's religious materials by the faculty to the students and by placing the materials on the school walls and bulletin boards).

In *Agostini v. Felton*, 521 U.S. 203, 233-34 (1997), the Court clarified the third prong of this test, concluding that it is best understood "as an aspect of the inquiry into a statute's effect." *See also Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 174 n.36 (3rd Cir. 2002) (noting that "'Entanglement' still matters . . . in the context of direct aid to parochial schools, where the Court subsumes it within the 'effect' analysis, and in the rare case where government delegates civic power to a religious group") (citing cases).  An entanglement must be "'excessive' before it runs afoul of the Establishment Clause," and this requires

more than mere "[i]nteraction between church and state," for some level of interaction has always been "tolerated." *Agostini*, 521 U.S. at 233.

In this case, there is no evidence that DASD is involved in any "entanglement" with the "church," let alone an entanglement that might be construed as "excessive." Therefore, this Court should analyze the challenged curriculum under the first and second prongs of the *Lemon* test.

### C.   Critically Evaluating The Theory Of Evolution, Mentioning "Intelligent Design" In A Ninth-Grade Biology Class, And Referring Students To A Book In The Library On Intelligent Design Do Not Violate The Establishment Clause.

> *Certainly the Darwinian theory, precisely like the Genesis story of creation of man, is not above challenge. In fact the Darwinian theory has not merely been criticized by religionists but by scientists, and perhaps no scientist would be willing to take an oath and swear that everything announced in the Darwinian theory is unquestionably true.*

*Epperson*, 393 U.S. at 114 (Black, J. concurring) (emphasis added).

> *We do not imply that a legislature could never require that scientific critiques of prevailing scientific theories be taught . . . . [T]eaching a variety of scientific theories about the origins of humankind to schoolchildren might be validly done with the clear secular intent of enhancing the effectiveness of science instruction.*

*Edwards*, 482 U.S. at 594 (emphasis added).

Upon application of the *Lemon* test, it is evident that Defendants' modest change to its curriculum does not violate the Constitution.

1.     **DASD's Ninth-Grade Biology Curriculum Has Many Valid Secular Purposes.**

Even assuming, *arguendo*, that DASD's modified biology curriculum was motivated in part by religion, it is unconstitutional only "if it is entirely motivated by a purpose to advance religion." *Wallace v. Jaffree*, 472 U.S. 38, 57 (1985). A decision respecting the subject matter to be taught in a public school classroom does not violate the Establishment Clause simply because the material "happens to coincide or harmonize with the tenets of some or all religions." *See Harris v. McRae*, 448 U.S. 297, 319 (1980) (quotation and citation omitted).

The Supreme Court has consistently held that when a court undertakes the difficult task of reviewing a government's asserted purpose, it must take the government at its word absent compelling evidence to the contrary. *See, e.g., Edwards*, 482 U.S. at 586 (stating that "the Court is . . . deferential to a State's articulation of a secular purpose," unless that purpose is insincere or a sham); *Mueller v. Allen*, 463 U.S. 388, 394-95 (1983) (ascribing the Court's disinclination to invalidate government practices under *Lemon*'s purpose prong to its "reluctance to attribute unconstitutional motives to the States, <u>particularly when a plausible secular purpose for the State's program may be discerned from the face of the statute</u>") (emphasis added); *McCreary County*, 2005 WL 1498988, at *7 ("When the government acts with the <u>ostensible</u> and <u>predominant purpose</u> of advancing religion, it violates the central Establishment Clause value of official religious

neutrality, there being no neutrality when the government's <u>ostensible object is to take sides</u>.") (emphasis added).

In *Board of Education v. Mergens*, 496 U.S. 226 (1990), the Court held that the Equal Access Act did not violate the Establishment Clause. In doing so, the Court stated,

> Even if some legislators were motivated by a conviction that religious speech in particular was valuable and worthy of protection, that alone would not invalidate the Act, because what is relevant is the legislative *purpose* of the statute, not the possibly religious *motives* of the legislators who enacted the law.

*Id.* at 249; *see also Bown v. Gwinnett County Sch. Dist.*, 112 F.3d 1464, 1471-72 (11th Cir. 1997) (holding that the religious motives of individual legislators could not alone invalidate the statute and stating, "we readily conclude at the very least that the legislative history cannot be construed to override the express statutory language articulating a clear secular purpose and also disclaiming a religious purpose").

Similarly, in this case, it is the *purpose* of the modest change to the curriculum that matters—not the *motives* of certain school board members who voted for it. More fundamentally, there is clearly a "plausible secular purpose" for this curriculum change that "may be discerned from the face of [it]," as discussed further below.

Once this Court looks beyond the hyperbole and the irrelevant *ad hominem* attacks against certain board members because they hold personal religious beliefs, Plaintiffs' complaint can be distilled down to the following.   According to Plaintiffs, the Constitution prohibits DASD from critically teaching the theory of evolution by presenting "gaps/problems" with this theory.   Second, Plaintiffs claim that the Constitution forbids making students <u>aware</u> of "intelligent design" in a ninth-grade biology class.   Finally, Plaintiffs claim that the Constitution prohibits DASD from referencing *Of Pandas and People* and putting it in their high school library.[7]

As the facts show, DASD is <u>not</u> teaching "intelligent design" or "creationism" or advancing "religious beliefs" in its ninth-grade biology class because, as DASD policy makes plain on its face, this is forbidden.  (SMF-¶30; *see also* Compl. at ¶¶40,44).

Further, Plaintiffs' claim that DASD is "treat[ing] intelligent design as a bona fide scientific theory competing with the scientific theory of evolution" (*see* Compl. at ¶40) is incorrect.  As the facts show, the Darwinian theory of evolution is the <u>only</u> such theory taught in the ninth-grade biology class at Dover High School.   It is the <u>only</u> such theory that is taught pursuant to Pennsylvania's academic standards.   As a consequence, it is the <u>only</u> such theory on which

---

[7] As noted previously, Plaintiffs do not object to DASD placing this book in the library.  They object to letting students know that it is there.

students will be tested.  This case is not at all like *Edwards*, where the teaching of creationism was required if the school was teaching the theory of evolution.  Thus, there is no "competition" in this case.  The Darwinian theory of evolution is the predominate scientific theory on the subject, and it is being treated that way.  DASD's brief statement verifies this fact by stating that "[t]he Pennsylvania Academic Standards require students to learn about Darwin's Theory of Evolution and eventually to take a standardized test of which evolution is a part. . . .  As a Standards-driven district, class instruction focuses upon preparing students to achieve proficiency on Standards-based assessments."  (SMF-¶¶21,22,30).  Moreover, *Biology*, the textbook purchased by DASD for use in the ninth-grade biology class, provides comprehensive coverage of the theory of evolution.  This book was co-authored by Plaintiffs' expert, and it does not cover intelligent design.

Furthermore, it is of no constitutional significance that the Darwinian theory of evolution is the only theory on evolution in which "gaps/problems" will be presented (Compl at ¶45) because it is the only such theory that will be taught.[8]

---

[8] In fact, *Biology* contains sections that explain various "gaps/problems" in this theory.  The authors refer to them as "Weaknesses."  (SMF-¶¶8,9).  In his deposition, Plaintiffs' expert identified several such "weaknesses," including gaps, that are discussed in *Biology*. (*See* SMF-¶9; *see also* Miller Dep. at 296 at Ex. 2 (quoting from *Biology*: "A stew of organic molecules is a long way from a living cell, and the leap from nonlife to life is the greatest gap in scientific hypotheses of earth's early history") (emphasis added)).  This is also consistent with the Pennsylvania Academic Standards, which require students to "Evaluate the nature

Finally, it is unremarkable that DASD has chosen to require the reading of a brief statement as the manner in which students will be made <u>aware</u> of intelligent design. This lawsuit demonstrates why school boards such as DASD must proceed with caution when they seek to present any alternatives, including the mere <u>mention</u> of them, to the Darwinian theory of evolution. If DASD did not do so, Plaintiffs would undoubtedly complain that the policy grants unfettered discretion to teachers to teach intelligent design or even creationism. By requiring this statement, DASD is able to control the implementation of their curriculum and ensure that intelligent design, creationism, and/or religion are not taught in the biology class.

Therefore, this is not a case, like *Edwards*, in which a school board banned the teaching of Darwin's theory of evolution, <u>unless</u> the school also taught "creationism." And unlike *Epperson*, DASD is <u>not</u> banning the teaching of evolution in its public schools; it is <u>requiring</u> it to be taught and ensuring that it is the <u>only</u> scientific theory on evolution that students will be taught and tested on in the ninth-grade biology class, consistent with the state's academic standards.

Indeed, the challenged curriculum and related policy not only affirm the teaching of the Darwinian theory of evolution, but they also clearly prohibit the biology teachers from advancing their religious beliefs. Thus, DASD is ensuring

---

of scientific and technological knowledge" and to "Critically evaluate the status of existing theories," including the "theory of evolution." (SMF-¶4).

that its biology class material will be presented in a religiously-neutral manner, as required by the Constitution.  *See Edwards*, 482 U.S. at 578.

Moreover, in *Edwards*, the Court rejected the government's claimed secular purpose of providing a more comprehensive curriculum because, "Such a ban on teaching does not promote—indeed, it undermines—the provision of a comprehensive scientific education."  *Id.* at 587.

In this case, DASD is teaching the Darwinian theory of evolution, and its policy broadens a students' access to knowledge and information by making students aware of intelligent design and placing a book in its high school library as a reference for independent study and inquiry—a laudable and secular educational goal.

As noted by the Supreme Court:

> A school library, no less than any other public library, is a place dedicated to quiet, to knowledge, and to beauty.  [S]tudents must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding.  The school library is the principal locus of such freedom.  [I]n the school library, a student can literally explore the unknown, and discover areas of interest and thought not covered by the prescribed curriculum. . .  Th[e] student learns that a library is a place to test or expand upon ideas presented to him, in or out of the classroom.

*Pico*, 457 U.S. at 868-69 (internal quotations and citations omitted).

Thus, the "revised Biology curriculum . . . provide[s] an opportunity for open critical discussion—the real heart of scientific practice." (SMF-¶30).  *See id.*

at 866-67 (stating that a student's "right to receive information and ideas" is "an inherent corollary" of the right to freedom of speech and that "the State may not, consistently with the spirit of the First Amendment, contract the spectrum of available knowledge") (quotations and citation omitted).

It can hardly be said that DASD's purpose "was to narrow the science curriculum," which was the case in *Edwards*. *See Edwards,* 482 at 587. Rather, DASD is broadening students' knowledge and access to information—<u>contrary to the facts in *Edwards*</u>. In fact, the Supreme Court acknowledged that what DASD has done in this case is constitutional and <u>DASD could have gone further by actually teaching intelligent design</u>: "We do not imply that a legislature could never require that scientific critiques of prevailing scientific theories be <u>taught</u>. . . . [T]eaching a variety of scientific theories about the origins of humankind to schoolchildren might be validly done with the clear secular intent of enhancing the effectiveness of science instruction." *Id.* at 593-94 (emphasis added). Furthermore, the Darwinian theory of evolution is not above criticism and "perhaps no scientist would be willing to take an oath and swear that everything announced in the Darwinian theory is unquestionably true." *Epperson*, 393 U.S. at 114 (Black, J., concurring). Plaintiffs' expert confirms the veracity of this statement (and DASD's statement that the theory of evolution is not a fact). (*See* SMF-¶¶11,13).

In reality, DASD's modest curriculum change advances many legitimate, secular educational goals, including: (1) raising students awareness about multiple ways of knowing; (2) promoting critical thinking; (3) encouraging students to assume more responsibility in their learning and to play an active part in constructing their own knowledge; (4) promoting a fuller understanding of the theory of evolution, including its limitations; (5) aligning its curriculum with the Pennsylvania Academic Standards, which require students to "Critically evaluate the status of existing theories," including the "theory of evolution"; and (6) helping students understand the views inherent in controversial issues, such as biological evolution, which is consistent with the Santorum Amendment. (SMF-¶27).

Moreover, insofar as DASD intends to leave out of its science curriculum discussions that would either advance certain religious beliefs or disapprove of certain religious beliefs, such as a discussion on the origins of life would likely entail, does not render the curriculum unconstitutional. *See Lynch v. Donnelly*, 465 U.S. 668, 673 (1984) (stating that the Constitution "affirmatively mandates accommodation, not merely tolerance, of all religions, and forbids hostility toward any"). Rather, such an approach is consistent with the Constitution and consistent with providing a religiously-neutral science curriculum.

In sum, DASD's ninth-grade biology curriculum has many valid, secular purposes and it serves to promote education—a laudable and constitutional goal for a school district.

### 2.   The Principal Or Primary Effect Of The Curriculum Neither Advances Nor Inhibits Religion.

The "effect" of DASD's ninth-grade biology curriculum is similarly one of neutrality toward religion, as the above discussion demonstrates.  This modest curriculum change does not advance nor inhibit religion.  It is neutral.

Because of the media attention associated with this curriculum change and the focus on a few statements by one board member, DASD issued a clear, public disclaimer of any intent to advance religion in its science classrooms.  This disclaimer and clarification was issued <u>prior to the filing of the present lawsuit</u>. Plaintiffs acknowledge that this disclaimer is part of the curriculum change. (*See* Compl. at ¶¶40,44).  Therefore, whatever message was conveyed by the personal expressions of certain board members during the deliberations related to this curriculum change, that personal message <u>cannot</u> be ascribed to DASD.[9]  DASD made it clear <u>prior</u> to the implementation of the curriculum change that "no teacher will teach Intelligent Design, Creationism, or present his or the Board's, religious beliefs."  (SMF-¶¶24,30).  This clear and unequivocal disclaimer vitiates any

---

[9] As noted, it is DASD's *purpose* as discerned from the challenged curriculum that is relevant here, not the possibly religious *motives* of the individual board members who voted for it. *See Mergens*, 496 U.S. at 249.

perceived unconstitutional taint that Plaintiffs seek to attribute to DASD. *See, e.g., Wallace v. Jaffree*, 472 U.S. 38 (1985) ("If a legislature expresses a plausible secular purpose for a moment of silence statute in either the text or the legislative history, or if the statute disclaims an intent to encourage prayer over alternatives during a moment of silence, then courts should generally defer to that stated intent.") (O'Connor, J., concurring) (emphasis added); *cf. Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 776 (1995) ("In context, a disclaimer helps remove doubt about state approval of respondents' religious message.") (O'Connor, J., concurring); *Freedom from Religion Found. v. City of Marshfield*, 203 F.3d 487, 497 n.3 (7th Cir. 2000) (stating "that a disclaimer . . . would be helpful to make clear the City's disavowal of any endorsement of religion"). Thus, DASD has given a straightforward answer to the question of whether it is advancing religion in its biology class. The answer is no.

Given all of the steps taken by DASD to ensure that the theory of evolution is well-taught and tested in the ninth-grade biology class, its efforts to disavow any religiously-charged motives and statements of board members and press reports related to the curriculum change, and its efforts to ensure that religious beliefs will not make their way into the science classroom, it is evident that this modest curriculum change does not have the principal or primary effect of advancing religion. Rather, its principal and primary effect is to teach the theory of evolution

consistent with the Pennsylvania academic standards and the chosen text *Biology*, to make students aware of intelligent design, and to inform students that there are books in the school library on the subject.[10]   *See, e.g., Child Evangelism Fellowship of New Jersey,* 386 F.3d at 534 ("Granting equal access would not have the principal or primary effect of advancing religion.  Rather, the principal and primary effect would be to inform school families about available community activities and to foster a wide range of activities in the community.").  Indeed, because the Darwinian theory of evolution is the <u>only</u> theory on evolution actually taught in the ninth-grade biology class and the <u>only</u> such theory that students are required to learn about and for which they will be tested on, there is no "realistic danger that the community would think that [DASD] was endorsing religion or any particular creed, and any benefit to religion or to the Church would have been no more than incidental." *Lamb's Chapel v. Center Moriches Union Free Sch. Dist.,* 508 U.S. 384, 395 (1993).

In the final analysis, a small-town school board has taken a modest step to improve the education of its students.  The curriculum change at issue advances many secular educational purposes, and, given the undisputed fact that <u>only</u> the Darwinian theory of evolution will actually be taught in the ninth-grade biology

---

[10] Contrast, for example, DASD's ninth-grade biology curriculum to the state laws at issue in *Edwards* and *Epperson,* and it is clear that DASD has not impermissibly "established religion."

class pursuant to Pennsylvania's academic standards, DASD's selection and purchase of *Biology* as its primary science text, and DASD's unequivocal statement and disclaimer that intelligent design, creationism, or religion will not be taught in this class, its principal or primary effect neither advances nor inhibits religion. Plaintiffs' claims fail as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant judgment in their favor as to all claims.

Respectfully submitted this 13th day of July, 2005.

By:

Robert J. Muise (MI P62849)*
Richard Thompson (MI P21410)*
Patrick T. Gillen (MI P47456)*
Edward L. White III (MI P62485)*
THOMAS MORE LAW CENTER
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, Michigan 48106
(734) 827-2001
Fax: (734) 930-7160

* Admitted *pro hac vice*

Ron Turo
TURO LAW OFFICES
29 South Pitt Street
Carlisle, Pennsylvania 177013
(717) 245-9688

*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to LR 7.8(b) the foregoing Defendants' Brief In Support Of Motion For Summary Judgment has a typeface of 14 points Times New Roman and contains 4,996 words.

Dated:        July 13, 2005

Robert J. Muise, Esq.