IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMMY KITZMILLER, et al. | : | Case No. 04cv2688 |
| Plaintiffs | : | |
| | : | |
| v. | : | Judge Jones |
| | : | |
| DOVER AREA SCHOOL DISTRICT and | : | |
| DOVER AREA SCHOOL DISTRICT | : | |
| BOARD OF DIRECTORS, | : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER

### July 27, 2005

### THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Pending before the Court is a Motion to Intervene ("the Motion") (doc. 61)

filed by the Foundation for Thought and Ethics ("FTE" or "Applicants") (doc. 61)

on May 23, 2005.  We will deny the Motion for the reasons that follow.

## FACTUAL AND PROCEDURAL BACKGROUND:

The procedural chronology of this case has been set forth in prior orders and

is well known to the parties.  The following brief recitation of that history is

sufficient for purposes of this Court's review of the pending Motion.

On December 14, 2004, Plaintiffs filed a complaint against Defendants,

Dover Area School District and Dover Area School District Board of Directors

(collectively "Defendants" or "DASD"), in the United States District Court for the

Middle District of Pennsylvania.  (See Rec. Doc. 1).  On January 6, 2005,

Defendants filed an answer in the above-captioned case.

In their complaint, Plaintiffs assert that Defendants' October 18, 2004

resolution and November 19, 2004 press release (collectively, "the Policy")

facially and as applied violate the Establishment Clause of the First Amendment to

the United States Constitution.  (See Cmplt. at Count One).  In addition, Plaintiffs

state that Defendants' Policy violates Art. 1, § 3 and Art. III, §§ 15 & 29 of the

Pennsylvania Constitution facially and as applied.  (See id. at Count Two).

The Applicant is a non-profit corporation formed in 1980, which publishes

and owns the intellectual property rights of the book Of Pandas and People

("Pandas") and the draft text of The Design of Life: Discovering Signs of

Intelligence in Biological Systems ("The Design of Life").  (See App. to Intervene

¶¶ 1-2).

On May 23, 2005, Applicant filed the instant Motion.  The Motion has been

briefed by the parties.  On July 14, 2005, the Court held a hearing on the pending

Motion in which FTE's President, Jon A. Buell ("Buell") testified before the Court.

The Motion is therefore ripe for disposition.


**STANDARD OF REVIEW:**

The applicable standards for adjudicating a motion to intervene will be  fully set forth within the analysis of the pending Motion.

**DISCUSSION:**

### A.   MOTION TO INTERVENE

As we previously explained, Applicant is a non-profit corporation which publishes and owns the intellectual property rights of <u>Pandas</u> and the draft text of <u>The Design of Life</u>.  The Applicant argues that it intends to market its textbooks to public schools within the Middle District of Pennsylvania and that a ruling by this Court finding that intelligent design theory ("IDT") is religious would destroy FTE's ability to market its textbooks within this district.  (<u>See</u> Mot. Intervene ¶ 20).  Moreover, FTE asserts that such a ruling would affect FTE's ability to market its textbooks to any public school in the United States.  The Applicant seeks to intervene because its pecuniary interest in the outcome of the litigation is real and will directly affect the viability of FTE.  <u>Id.</u>

As FTE submits, the Federal Rules of Civil Procedure provide for two types of intervention: intervention as of right and permissive intervention.  <u>See</u> Fed.R.Civ.P. 24.  We will discuss the two types of intervention in turn.

### 1.   Intervention as of Right

3

Federal Rule of Civil Procedure 24 provides, in pertinent part:

> **Intervention as of Right.**  Upon timely application anyone shall be permitted to intervene in an action: (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practicable matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a).  As we explained in our March 10, 2005 Order disposing of an unrelated attempt by parties to intervene in this case, the Third Circuit Court of Appeals has instructed that Fed.R.Civ.P. 24(a) entitles an applicant to intervene if the applicant establishes that all prongs of the following four-part test are satisfied: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.  Kitzmiller v. Dover Area Sch. Dist., 04-CV-2688, 2005 WL 578974 (M.D. Pa. 2005); see also Brody v. Spang, 957 F.2d 1108, 1115 (3d Cir. 1992); Harris v. Pernsley, 820 F.2d 592, 597 (3d Cir. 1987), cert. denied, 484 U.S. 947 (1987).  The applicant carries the burden of proving all four parts of the test under Fed.R.Civ.P. 24.  See United States v. Alcan Aluminum, 25 F.3d 1174 n.9 (3d Cir. 1994).

We will now proceed to apply each prong of the aforementioned

intervention as of right test to the Applicant's Motion.

### a.    <u>Timeliness of Intervention Application</u>

The first prong of the intervention as of right test concerns the timeliness of the intervention application.  This prong is particularly significant as it relates to the case at bar.  FTE argues that its Application to Intervene is timely as it did not learn that this case would affect its rights until after Plaintiffs served FTE and its President, Buell, with subpoenas on April 28, 2005. (<u>See</u> Applicants' Br. Supp. Mot. Intervene at 7; <u>see</u> <u>also</u> Buell Aff. ¶ 7).  In that vein, FTE contends that prior to April 28, 2005, Buell had not reviewed or even seen Plaintiff's complaint or any other papers filed in the above-captioned case.  Rather, FTE maintains that Buell had only a general awareness of this litigation through media reports.  <u>Id.</u> at 8; <u>see</u> <u>also</u> Buell Aff. ¶ 6.  FTE states that the discovery subpoenas prompted it and Buell to learn the specifics of Plaintiffs' claims and that subsequent to the discovery subpoenas, Buell retained legal counsel to protect FTE's interests.  On May 9, 2005, FTE and Buell filed a Motion for Protective Order and/or to Quash Subpoenas and supporting brief in federal court in Texas.  FTE asserts that during the same period, Buell took another step to protect FTE's interests by advising William A. Dembski ("Dembski"), one of Defendants' former experts, the editor and one of the authors who contracted with FTE to write <u>The Design of Life</u>, to

take all necessary actions to protect FTE's confidential and proprietary information.  (<u>See</u> Applicants' Br. Supp. Mot. Intervene at 8; Buell Aff. ¶ 9).

In response, Plaintiffs and Defendants argue that the advanced state of the litigation renders FTE's application untimely as it will cause prejudice, delay, and added expense to the parties.  (Pls.' Br. Opp. Mot. Intervene at 5; Defs.' Br. Opp. Mot. Intervene at 7).  In that vein, Plaintiffs assert that as of their June 14, 2005 filing, thirty-six depositions have been taken, including nine expert depositions, and only three depositions remain to be taken, combined with the fact that discovery was scheduled to close in June and the case is scheduled to go to trial in September.  <u>Id.</u>  "Additional defendants will mean more witnesses, depositions, and discovery, as well as possible additional pre-trial motions, threatening to delay the trial date."  <u>Id.</u>

As we stated in our March 10, 2005 Order, timeliness is not just a function of counting days, but it is a totality of the circumstances analysis.  <u>Kitzmiller</u>, 04-CV-2688, 2005 WL 578974, at *3; <u>see also</u> <u>Alcan Aluminum</u>, 25 F.3d at 1181.  "[W]here a party takes reasonable steps to protect its interest, its application should not fail on timeliness grounds."  <u>Id.</u> at 1182.  The Third Circuit has instructed that in determining whether an intervention motion is timely, three factors ("<u>Mountain Top</u> factors") should be considered: "(1) the stage of the proceedings; (2) the

prejudice that delay may cause the parties; and (3) the reason for the delay."

Mountain Top Condo. Assoc. v. Dave Stabbert Master Bldr., Inc., 72 F.3d 361,

365-66 (3d Cir. 1995); see also In re Fine Paper Antitrust Litigation, 695 F.2d 494,

500 (3d Cir. 1982).

Plaintiffs filed the complaint in the case sub judice on December 14, 2004,

which clearly laid out their contentions and the subject of the action, which made

specific mention of Pandas. Buell's testimony before the Court on July 14, 2005

revealed that he, the President of the proposed intervenor corporation, was first

aware of the lawsuit as early as January 2005, within a month of when the suit was

filed.  As of January 2005, Buell admitted that he was aware that Pandas formed

part of the lawsuit.  In addition, Buell testified that he has been aware of

developments in the litigation subsequent to January 2005 through press reports,

although he argued that the reports did not reflect FTE's involvement in the case.

Moreover, FTE maintains that despite Buell's awareness of the lawsuit in January

2005, he did not focus on its potential impact upon the distribution of Pandas until

April 22, 2005, when Plaintiffs served subpoenas on FTE and Buell, in the United

States District Court for the Northern District of Texas, seeking Buell's deposition

and documents related to Pandas, its drafting, and its distribution.

FTE's arguments in this regard are both unavailing and disingenuous.

7

Within one month of Plaintiffs filing the instant action and as noted, Buell was aware of its existence, as well as the fact that <u>Pandas</u> formed part of the lawsuit.  At that juncture, as well as over the next few months, Buell received press or media reports concerning more specific details of the case.  It is beyond question that this case has received intense media scrutiny and that it has attracted the attention of advocates on both sides of the issues presented.  Despite this, FTE took no action regarding an attempt to intervene even after Defendants' former expert, leading proponent on IDT, editor, and one of the authors who contracted with FTE to write <u>The Design of Life</u> specifically addressed <u>The Design of Life</u> in his expert report dated March 30, 2005, which prompted Motions for Protective Orders to be filed by the Defendants and FTE.  In the face of this, as aforestated it was not until May 23, 2005, that FTE filed the instant Motion.  Because the President of FTE was aware that <u>Pandas</u> was involved in the lawsuit in January 2005, it was incumbent upon him to have examined the alleged substantial impact of the litigation upon the distribution of <u>Pandas</u> well prior to May 23, 2005, which was less than one month before the close of discovery.  <u>See</u> <u>Haymond v. Lundy</u>, 2002 U.S. Dist. LEXIS 18110, *13 (E.D. Pa. 2002) ("When a proposed intervenor knew or should have known of the pendency of a lawsuit at an earlier time, but failed to act at that time to protect its interests, that inaction will weigh heavily against the timeliness of the

motion.") (citing <u>Del. Valley Citizens' Council for Clean Air v. Pennsylvania</u>, 674

F.2d 970, 975 (3d Cir. 1982))[1].

We are in agreement with the parties that the advanced stage of this

litigation renders FTE's application untimely as it will cause prejudice, delay, and

added expense to the parties.  In that regard, we conclude that application of the

<u>Mountain Top</u> factors, which we previously delineated, to this case demonstrates

that FTE's Motion is untimely.

Although the Applicant carries the burden of proving all four parts of the

test under Fed.R.Civ.P. 24(a) and has failed to do so with respect to the timeliness

of intervention, in the exercise of completeness, we will analyze the remaining

three prongs of the test in this narrative.  See <u>Alcan Aluminum</u>, 25 F.3d at n.9; <u>see</u>

<u>also</u> <u>Harris</u>, 820 F.2d at 596 ("Although these requirements are intertwined, each

must be met to intervene as of right.").

### b.    <u>Interest in the Litigation</u>

Federal Rule of Civil Procedure 24(a) requires that applicants demonstrate

---

[1] It is clear to the Court that FTE improperly assumed that its rights would be protected
so long as Dembski remained an expert for the Defendants.  As such, we believe that the real
motivation or underlying reason that FTE filed the instant Motion was because Defendants
terminated Dembski as an expert in this case, which led FTE to conclude that its rights were no
longer being protected.  Notably however, Dembski was involved in this litigation only as a
disclosed witness, and never as an agent or representative of FTE.  It was only after Dembski
apparently subjected <u>The Design of Life</u> to a premature release by including it in his March 30,
2005 expert report, as previously noted, that the various machinations which led to his
termination commenced.

an interest in this action that is "significantly protectable."  As we explained in our

March 10, 2005 Order, the Third Circuit instructs that this means that the asserted

interests "must be legal interests as distinguished from interests of a general and

indefinite character. . .[T]he applicant must demonstrate that there is a tangible

threat to a legally cognizable interest to have the right to intervene."  Kitzmiller,

No. 04-CV-2688, 2005 WL 578974, at *3; see also Harris, 820 F.2d at 601.

Moreover, as Plaintiffs submit, an applicant typically has a right to intervene where

"the action will have a significant *stare decisis* effect on the applicant's rights,"

"the contractual rights of the applicant may be affected by a proposed remedy,"

Harris, 820 F.2d at 601, or the applicant is the "real party in interest" and "would

have standing to raise the claim" itself.  Alcan, 25 F.3d at 1185.

   The Applicant contends that its sufficient legal interest is that if the Court

were to rule that "Intelligent Design is the equivalent of Creation science," it would

have a devastating effect on FTE's economic, educational, and expressive interests

as it is the publisher of the textbook at issue, Pandas, and the publisher of a future

textbook on intelligent design, The Design of Life.[2]  (Applicant's Br. Supp. Mot.

_____

   [2] FTE's reliance on Kleissler v. U.S. Forest Serv., 157 F.3d 964 (3d Cir. 1998), in support
of its application for intervention, is misplaced.  In Kleissler, plaintiffs were several
environmentalists who filed suit against the United States Forest Service ("Service") alleging
that the Service violated statutory requirements by approving projects calling for the cutting of a
substantial number of trees within a national forest.  Plaintiffs sought an injunction barring the
projects, halting all logging, and suspending or canceling contracts for logging in the forest.  Id.

Intervene at 9-10).  "Plaintiffs should not be permitted to shut FTE out of [the] huge market for its textbooks as well as the 'marketplace of ideas' without this Court permitting FTE to have a voice in this litigation."  Id. at 10.

In opposition to the Motion, both parties contend that FTE lacks a sufficient interest in the litigation.  First, Plaintiffs argue that FTE lacks a sufficient interest as the only stated reason for intervening is "to prevent economic loss of over $500,000" from the potential loss of book sales to public educational institutions. Furthermore, Plaintiffs state that "In addition to the fact that FTE could provide no factual foundation for this contention, such a commercial interest is insufficient to warrant intervention under Rule 24(a)(2)."  (Pls.' Br. Opp. Mot. Intervene at 10). Second, Defendants assert that FTE's stated interest in the outcome of the litigation is remote and speculative.  Defendants explain that it is by no means clear that a ruling against Defendants will necessarily have an adverse impact on FTE's interest.  (Defs.' Br. Opp. Mot. Intervene at 4).

─────────────────────

at 967.  As Plaintiffs point out, the applicants for intervention were several school districts and municipalities that, pursuant to statutory provisions, received a substantial percentage of the funds earned from logging operations in the forest, as well as lumber companies, some of which had already been granted contracts to perform the logging projects at issue and others of which generated most of their income from similar logging projects in the forest.  The Third Circuit held that companies that were dependent on timber contracts as well as those with existing contracts had substantial interests.  Id. at 972-73.

Unlike the Kleissler case in which direct and specific economic detriment faced the intervenors, FTE asserts a remote and attenuated economic interest allegedly stemming from the potential that this Court could determine IDT to be the equivalent of creation science.  FTE's claimed risk of future economic loss is purely speculative and may be avoidable.

We do not find that the scenario raised by FTE, specifically that if this Court should find IDT to be the equivalent of creation science, which will result in the loss of hundreds of thousands of dollars to FTE, constitutes a "legal interest as distinguished from interests of a general and indefinite character." Harris, 820 F.2d at 601; see also United States v. American Telephone and Telegraph Co., 642 F.2d 1285, 1292 (D.C. Cir. 1980).  Plaintiffs accurately submit that the United States District Courts for the Middle and Eastern Districts of Pennsylvania have denied motions to intervene for lack of a sufficiently protectable legal interest in several instances where the proposed intervenors' only interest was an uncertain and purely economic one.  See Pennsylvania State Univ. v. U.S. Dept. of Health and Human Serv., 142 F.R.D. 274, 275 (M.D. Pa. 1992) (denying motion to intervene where proposed intervenor's only interest was potential economic interest in earning profit from sale of health-benefit plan if federal statute required plaintiff to offer its employees the type of plan offered by proposed intervenor); FTC v. Mercury Mktg. of Del., Inc., 2004 U.S. Dist. LEXIS 17730, *5-6 (E.D. Pa. 2004) (holding that proposed intervenor's application for intervention as of right failed for want of significantly protectable interest where interest asserted was for "tenuous future earnings" that could result if company to whom proposed intervenor had loaned money stayed in business); Haymond v. Lundy, 2002 U.S.

12

Dist. LEXIS 18110, *9-10 (E.D. Pa. 2002) (holding that interest that was not only "clearly economic in nature," but also "qualified" in that it was "contingent" upon happening of other events, was not sufficient to support motion to intervene).

In addition, we find that Applicant has not demonstrated a "tangible threat to a legally cognizable interest[.]" Harris, 820 F.2d at 601.  Although FTE may be quite concerned with the outcome of the litigation in this case, the afore-mentioned concern does not rise to the level of a significantly protectable interest in the litigation warranting intervention as a party.  Therefore, Applicant has not demonstrated an interest in the litigation to justify intervention as of right pursuant to Fed.R.Civ.P. 24(a).

### c.    Potential Impairment of the Interest

Once an applicant for intervention has established that he or she has a sufficient legal interest in the underlying dispute, the applicant must also show that the interest is in jeopardy in the lawsuit.  Alcan Aluminum, 25 F.3d at 1181, n.9; see also Harris, 820 F.2d at 596.  In making such a determination, the court is obligated to assess the "practicable consequences of the litigation," and "may consider any significant legal effect on the applicants' interest."  Id. at 601.

FTE argues that it faces a "tangible threat" because financial success or failure of its textbooks is now threatened by Plaintiffs' prayer that this Court rule

that IDT is purely religious doctrine. (Applicants' Br. Supp. Mot. Intervene at 11).

Such a ruling by this Court would destroy, according to the Applicant, FTE's

ability to market its textbooks to any public school in the United States. "More

specifically, holding IDT to be 'religious' as a matter of law would greatly

jeopardize FTE's continued existence as a viable entity as the potential lost income

from the sale of Pandas would be approximately $213,334. . .FTE already spent

approximately $49,630 to develop The Design of Life and potential lost income

from its sale would be approximately $310,400." Id.; see also Buell Aff. ¶ 13.

As Plaintiffs submit, they do not seek an order prohibiting FTE from

soliciting orders, raising contributions, or otherwise conducting its affairs.

Moreover, to the extent that the *stare decisis* effect of an order declaring intelligent

design instruction to be unconstitutional in a public school might require FTE to

redirect its marketing efforts, that indirect, remote, and attenuated effect fails to

"impair" FTE's interest.

As we have previously determined that seeking to intervene, to prevent

potentially significant economic loss from potential decline in books sales to public

educational institutions, is not a cognizable interest in the litigation which warrants

intervention as of right on the part of Applicant, it logically follows that we need

not determine whether Applicant's alleged interest as so expressed is placed in

jeopardy by the case <u>sub judice</u>.  Accordingly, the Applicant has failed to prove this part of the intervention as of right test.

### d.   <u>Representation by Existing Party in Litigation</u>

As we stated in our March 10, 2005 Order, the final prong of the intervention as of right test is that FTE must demonstrate that its interests is not adequately represented by the existing parties in the lawsuit.  <u>Kitzmiller</u>, No. 04-CV-2688, 2005 WL 578974, at *5; <u>see also</u> <u>Hoots v. Pennsylvania</u>, 672 F.2d 1133, 1135 (3d Cir. 1982).  Applicant must demonstrate that its interest is sufficiently different that the representative cannot give that interest proper attention.  The Third Circuit Court of Appeals has instructed that representation is typically considered to be inadequate for any one of the following three reasons:

> (1)  Although the applicants' interests are similar to those of a party, they are sufficiently diverse that there is a risk that the existing party cannot or will not devote proper attention to the applicant's interest;
>
> (2)  There is collusion between the representative party and the opposing party; or
>
> (3)  The representative party has not been diligent in prosecuting the litigation.

<u>Kitzmiller</u>, No. 04-CV-2688, 2005 WL 578974, at *5; <u>Hoots</u>, 672 F.2d at 1135.

FTE contends that intervention as of right is proper because its significant interests are not adequately being represented by any of the existing parties.  (Applicant's Br. Supp. Mot. Intervene at 12-13).  In addition, FTE asserts that its

economic, educational, and expressive interests are "sufficiently diverse" to Defendants' interest in defending the Policy as Defendants are primarily concerned with defending the Policy that allows school officials to inform students "of other theories of evolution" regardless of whether the Policy promotes quality science education.  Id. at 13-14.  Moreover, FTE alleges that a lack of attention to FTE's interests has already occurred in the case sub judice.

In response, both parties argue that FTE's interests have been, and will be adequately represented by the Defendants in this case.  Defendants remind the Court that they previously filed a Motion for Protective Order seeking to protect FTE's interest in the draft text of The Design of Life on behalf of Defendants' former expert, Dembski, a principal author of that text.  (Defs.' Br. Opp. Mot. Intervene at 5).  Additionally, both FTE and Defendants are clearly concerned with showing that intelligent design is not a religious view, evidenced by Defendants' answer, defense expert reports, and specific declarations to this Court, including Defendants' reply submission regarding FTE's Motion to Intervene.

After careful consideration of the parties' submissions and the record, including but not limited to the three typical reasons constituting inadequate representation as specified by the Third Circuit Court of Appeals, we do not find that any interest alleged by Applicant is not being adequately represented by

Defendants in this action for the additional reasons that follow.  See Hoots, 672 F.2d 1135.

First, at this late date, the Court would have expected a coherent statement of what FTE intends to prove or demonstrate if the Court were to permit intervention, as well as specific reasons as to why the Defendants are not adequately protecting FTE's interests; however, despite repeated questioning in that regard by the Court during the July 14, 2005 hearing, FTE was unable to verbalize how its interests and the Defendants' interests diverge concerning the merits of the lawsuit.  Moreover, Buell's testimony revealed that the very experts that insisted on private counsel from FTE to provide confidential legal advice in preparation for and during expert depositions, Dembski and John Campbell ("Campbell"), which resulted in their being terminated as experts for Defendants, will be brought back into this case if FTE is permitted to intervene.  It is absurd to the Court that Buell has now testified on multiple occasions that he would go to jail prior to revealing the draft text of The Design of Life; however, if the Court allows FTE to intervene, Buell would place that issue squarely back into play by FTE's apparent intention to use Dembski as **its** expert witness.

We will now discuss the three typical reasons constituting inadequate representation as specified by the Third Circuit Court of Appeals, as they apply to

this case.

First, FTE has not presented sufficient evidence to demonstrate that its alleged interests are sufficiently diverse than those of Defendants, such that there is a risk that the existing party, Defendants, cannot or will not devote proper attention to Applicant's interest.  This is true particularly in light of the fact that both Defendants and FTE are clearly concerned with demonstrating that intelligent design is not a religious view.  Additionally, Defendants assert that they adequately represent any generalized interest in IDT that is shared with FTE.  (Defs.' Br. Opp. Mot. Intervene at 5).  We agree.  Second, as FTE has not raised the issue of potential collusion between the representative party, Defendants, and the opposing party, Plaintiffs, this issue does not warrant discussion.  Finally, FTE does not state that there is a reason to believe that the representative party, Defendants, have not been diligent in prosecuting the litigation, nor could we possibly find any reason to believe that this is the case.  Moreover, we find it incumbent to again note at this juncture that the Court's exposure to defense counsel as it relates to this litigation leads us to conclude that counsel have consistently rendered zealous, professional, and appropriate representation to the Defendants, which translates, in our view, to a finding that Defendants, through their able counsel, will certainly protect the

stated interests of FTE as this case proceeds to trial.[3]

We therefore conclude that Applicant has not demonstrated that its alleged interest is not being adequately represented by Defendants in this action.  As a result of Applicant's failure with respect to each prong of the intervention as of right test, intervention as of right pursuant to Fed.R.Civ.P. 24(a) is accordingly not warranted in the case <u>sub judice</u>.

We will now discuss Applicant's alternative argument that the Court grant their intervention application under Fed.R.Civ.P. 24(b), which provides for permissive intervention.

## 2.   <u>Permissive Intervention</u>

Under Fed.R.Civ.P. 24(b), upon timely application, anyone may be permitted to intervene in an action when the applicants' claim or defenses in the main action have a question of law or fact in common.  Whether to grant permissive intervention is within the Court's discretion, but in making this determination, courts consider whether the proposed intervenors will add anything to the litigation.  <u>Kitzmiller</u>, No. 04-CV-2688, 2005 WL 578974, at *6; <u>see also</u> <u>Hoots</u>, 672 F.2d at 1136.  Additionally, if the interests of the proposed intervenors

---

[3] The Court was struck by the fact that upon our questioning, FTE's President, Buell, could not tell us how many attorneys had entered their appearances for Defendants, nor could he articulate why their work was in any way deficient.  For the record, a total of five (5) attorneys have now entered their appearances for Defendants in this case.

are already represented in the litigation, courts deny such application to intervene. Hoots, 672 F.2d at 1136.

FTE argues that permissive intervention is warranted as there are common questions of law and fact regarding this litigation and FTE's concern for future viability of marketing its textbooks to public schools.  (Applicant's Br. Supp. Mot. Intervene at 16).  Furthermore, FTE contends that this Court should grant permissive intervention because FTE will aid the course of litigation by vigorously opposing Plaintiffs' central theory, that FTE's science is tantamount to religion, which FTE characterizes as an issue that is only peripheral to the Policy.  Id.

Both parties oppose permissive intervention.  Plaintiffs submit that FTE's defense would present a question of fact in common with that already asserted in the lawsuit, namely, whether intelligent design is fundamentally a religious proposition rather than a scientific one.  Plaintiffs maintain that FTE will not add any defense to the instant case that Defendants have not already demonstrated that they will present.  (Pls.' Br. Opp. Mot. Intervene at 20).  Likewise, Defendants oppose permissive intervention by FTE and argue that they adequately represent any generalized interest in IDT that is shared with FTE.  (Defs.' Br. Opp. Mot. Intervene at 5).

After a thorough review of the record and in the sound discretion of the

Court, we find that permissive intervention pursuant to Fed.R.Civ.P. 24(b) is not warranted in the case sub judice.  First, in conducting our intervention as of right analysis under Rule 24(a), we concluded that FTE has failed to satisfy any of the Rule 24(a) four prongs necessary to establish to warrant intervention as of right.  Consequently, we determined that Applicant's alleged interest was being adequately represented by Defendants in this action.  In making these determinations, we have also found that Applicant will not add anything to the litigation, but rather, FTE's participation in this litigation will be merely duplicative of Defendants' efforts.  As we explained in our March 10, 2005 Order, the Third Circuit Court of Appeals has explained that if the interests of the proposed intervenors are already represented in the litigation, courts deny such applications to intervene.  Kitzmiller, No. 04-CV-2688, 2005 WL 578974, at *8; see also Hoots, 672 F.2d at 1136.  Second and significant to note is the adverse impact that intervention may have on the original parties.  It is readily apparent to the Court that FTE sat on any right to intervene it may have had for several months after having knowledge of the lawsuit and Pandas' involvement therein, and has now presented an untimely application for intervention that will necessarily cause prejudice, delay, and expense to the existing parties.

Permissive intervention under Fed.R.Civ.P. 24(b) is accordingly not

warranted in this case.

**NOW, THEREFORE, IT IS ORDERED THAT:**

    1.      The Applicant's Motion to Intervene (doc. 61) is **DENIED**.

<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge