IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMMY KITZMILLER, et al. | : | Case No. 04cv2688 |
| Plaintiffs | : | |
| | : | |
| v. | : | Judge Jones |
| | : | |
| DOVER AREA SCHOOL DISTRICT and | : | |
| DOVER AREA SCHOOL DISTRICT | : | |
| BOARD OF DIRECTORS, | : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER

### August 2, 2005

### THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Pending before the Court is a Motion to Quash Subpoena or For Protective Order ("Motion to Quash") (doc. 80) filed by the Non-Party Subpoenaed Witnesses, Joseph Maldonado ("Maldonado") and Heidi Bernhard-Bubb ("Bernhard-Bubb"), on June 16, 2005 and a Motion to Compel Non-Parties to Comply with Subpoenas ("Motion to Compel") (doc. 85) filed by the Defendants on June 15, 2005 in this matter.

For the reasons that follow, both Motions will be granted in part and denied in part as detailed herein.

## FACTUAL AND PROCEDURAL BACKGROUND:

As we explained in our recent July 27, 2005 Order (doc. 111), which disposed of a Motion to Intervene, the procedural chronology of this case has been set forth in several prior orders and is well known to the parties.  The following recitation of that history is therefore sufficient for purposes of this Court's review of the pending Motions.

On December 14, 2004, Plaintiffs filed a complaint against Defendants, Dover Area School District and Dover Area School District Board of Directors (collectively "Defendants" or "DASD"), in this Court asserting that Defendants' October 18, 2004 Resolution and November 19, 2004 press release (collectively, "the policy") facially and as applied violate the Establishment Clause of the First Amendment to the United States Constitution and that Defendants' policy violates Art. 1, § 3 and Art. III, §§ 15 & 29 of the Pennsylvania Constitution facially and as applied.

Maldonado, an independent contractor for a newspaper known as the <u>York Daily Record</u>, and Bernhard-Bubb, an independent contractor for a newspaper known as <u>The York Dispatch</u> (collectively "the Reporters"), cover Dover Area School Board meetings and have written articles about the Dover Area School District and this case in particular.  The Reporters have been served with subpoenas by defense counsel to appear and testify at a deposition that was

previously scheduled for June 15, 2005 in Dover, Pennsylvania.

The Reporters became involved with this litigation when Plaintiffs served them with subpoenas and noticed their depositions for June 8, 2005.  In response to the subpoenas, counsel for the Reporters filed a Motion to Quash the Subpoenas or For Protective Order.  (See Rec. Doc. 80).  The scheduled depositions were stayed pending the Court's consideration of the Motion.  Subsequently, on or about May 24, 2005, Defendants served subpoenas for production of documents on the Reporters and York County Record, and The York Dispatch.

On or about June 3, 2005, the parties received a letter from the Reporters' counsel enclosing affidavits from Maldonado, Bernhard-Bubb, York Daily Record, and The York Dispatch, attesting to the accuracy of the published newspaper articles.  The affidavits were proposed in lieu of testimony at deposition or at trial. A week later, on June 10, 2005, the Court held a telephonic conference with the parties and counsel for the Reporters.  During said conference, Plaintiffs indicated that they did not intend to seek enforcement of their previously served subpoenas, and that they would accept the aforementioned affidavits in lieu of deposition testimony of Maldonado and Bernhard-Bubb, subject to an agreed upon

amendment to the Maldonado affidavit.[1]  Relatedly, Plaintiffs reserved the right to call the Reporters as witnesses at trial and the Reporters have reserved the right to raise objections to their appearance as witnesses at that time.  Also during the June 10, 2005 telephonic conference, the Court indicated that in light of these developments, Defendants would need to pursue the interests they had in obtaining testimony and documents from the Reporters, as it became clear that defense counsel were not amenable to using the affidavits in lieu of deposition testimony.

Subsequently, on June 10, 2005, Defendants served the Reporters with subpoenas to appear for depositions scheduled for June 15, 2005.  Three days later, counsel for the Reporters informed defense counsel that his clients would not appear and testify at their June 15, 2005 depositions and that he would be filing a Motion to Quash the subpoenas.  Defendants agreed to postpone and stay the Reporters' depositions pending a ruling by the Court on the merits of the Motion to Quash and the Motion to Compel.

The Motion to Quash was filed on June 16, 2005 and the Motion to Compel was filed on June 15, 2005.  The Motions have been briefed by the parties.  On July 14, 2005, the Court held a hearing on the pending Motions.  The Motions are

---

[1] Pursuant to the Court's direction, Plaintiffs and the reporters have filed a stipulation memorializing their agreement to proceed in this manner.  In the stipulation, Plaintiffs and the reporters withdrew as moot the Motion filed by the reporters and the May 4, 2005 and May 10, 2005 subpoenas issued by Plaintiffs.  (See Rec. Doc. 101).

4

therefore ripe for disposition.

## STANDARD OF REVIEW:

The Federal Rules that underlie a Motion to Quash or For Protective Order

and a Motion to Compel are Federal Rules of Civil Procedure ("Fed.R.Civ.P.")

26(c), 37, and 45, which we will discuss below.  First, Fed.R.Civ.P. 26(c) states, in

pertinent part, the following:

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]

Fed.R.Civ.P. 26(c).

Second, Fed.R.Civ.P. 37 addresses the failure to make disclosures,

cooperating in discovery, and sanctions.  Federal Rule 37(a) provides that:

> A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery[.]

Fed.R.Civ.P. 37(a).

Finally, Fed.R.Civ.P. 45 addresses subpoenas in general, namely, their

issuance, service, the protection of persons subject to subpoenas, duties in

responding to subpoenas, and contempt.   Federal Rule 45(c)(3)(A)(iii) provides, in

pertinent part, that:

> On timely motion, the court by which a subpoena was issued shall
> quash or modify the subpoena if it requires disclosure of privileged or
> other protected matter and no exception or waiver applies[.]

Fed.R.Civ.P. 45(c)(3)(A)(iii).

**DISCUSSION:**

**A.    MOTION TO QUASH SUBPOENA OR FOR PROTECTIVE
ORDER AND MOTION TO COMPEL NON-PARTIES TO
COMPLY WITH SUBPOENAS**

As previously noted, we have before us a Motion to Quash filed by the

Reporters, as well as a subsequently filed Motion to Compel by Defendants.   As

these Motions are factually intertwined, we will address them together at this

juncture.

In their Motion to Quash, the Reporters request that the subpoenas issued by

Defendants be quashed or alternatively, that the Court issue a protective order

limiting their testimony solely to what was printed in the published articles at issue

and barring any questioning as to any sources, discussions, notes, documents or

other materials gathered or created as part of their functions and duties in

preparation for the published articles at issue.   (Reporters' Br. Supp. Mot. Quash at

9).   In support thereof, the Reporters have asserted the First Amendment Reporter's

Privilege ("Reporter's Privilege"), which we will discuss in detail below, and argue

that the Reporter's Privilege cannot be overcome in this case.

In response thereto and in their Motion to Compel, Defendants argue that the

Reporters should be compelled to attend their depositions and answer the questions

posed by defense counsel.  (Defs.' Br. Opp. Mot. Quash at 5-6; see also Defs.' Br.

Supp. Mot. Compel at 6-7).  In addition, Defendants contend that the objections to

the subpoenas relating to document production should be overruled and the

Reporters, York Daily Record, and The York Dispatch, should be compelled to

produce the requested documents.

We will therefore engage in a two-part inquiry.  First, we will determine

whether the Reporter's Privilege covers deposition testimony of the Reporters and

we will subsequently ascertain whether the said privilege extends to the requested

documents.

## 1.    Deposition Testimony

Prior to delving into the issue of whether the Reporter's Privilege shields the

Reporters from deposition testimony in the case sub judice, it is necessary to

provide background information concerning the said privilege and its application.

We initially note that in Branzburg v. Hayes, 408 U.S. 665 (1972), the

Supreme Court acknowledged the existence of First Amendment protection for

"newsgathering," also referred to as the qualified privilege.  See Riley v. City of Chester, 612 F.2d 708, 714 (3d Cir. 1979).  In Branzburg, a seminal case on the qualified privilege, the Supreme Court held in a 4-1-4 decision that a court could require a reporter to testify in a criminal case about a crime that he had *witnessed*. Miller v. Mecklenburg County, 602 F. Supp. 675, 678 (W.D. N.C. 1985), aff'd, 813 F.2d 402 (4th Cir. 1986)(emphasis added).  Justice Powell's deciding fifth vote in a concurrence stressed the limited holding of the Court and explained that the "asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct.  Branzburg, 408 U.S. at 710. Morever, Justice Powell explained that the proper balance should be struck on a case-by-case basis by balancing the interests of society in a free press on one hand and in a fair and complete trial on the other.  Id.

In Riley, the Third Circuit Court of Appeals instructed that the interrelationship between newsgathering, news dissemination, and the need for a journalist to protect his or her source is too apparent to require belaboring.  Riley, 612 F.2d at 714.  The Third Circuit further explained that "The strong public policy which supports the unfettered communication to the public of information, comment and opinion and the Constitutional dimension of that policy, expressly

8

recognized in <u>Branzburg v. Hayes</u>, leads us to conclude that journalists have a federal common law privilege, albeit qualified, to refuse to divulge their sources." <u>Id.</u> at 715.   Moreover, this federal common law privilege has been recognized by many other courts which have considered this question following the <u>Branzburg</u> decision.   <u>See</u>, <u>e.g.</u>, <u>Silkwood v. Kerr-McGee Corp.</u>, 563 F.2d 433, 436 (10th Cir. 1977); <u>Baker v. F & F Investment</u>, 470 F.2d 778, 782 (2d Cir. 1972), <u>cert.</u> <u>denied</u>, 411 U.S. 966 (1973); <u>Gulliver's Periodicals, Ltd. v. Chas. Levy Circulating Co.</u>, 455 F. Supp. 1197, 1203 (N.D. Ill. 1978); <u>Zerilli v. Bell</u>, 458 F. Supp. 26, 28 (D.D.C. 1978); <u>Altemose Constr. Co. v. Building & Constr. Trades Council</u>, 443 F. Supp. 489, 491 (E.D. Pa. 1977); <u>Gilbert v. Allied Chemical Corp.</u>, 411 F. Supp. 505, 508 (E.D. Va. 1976).

The law in Pennsylvania on the Reporter's Privilege issue reveals that a balancing test must be used to weigh the rights of reporters under the First Amendment with the rights of those seeking disclosure of information the reporters possess.  The Reporter's Privilege, adopted and recognized by Pennsylvania state and federal courts, can only be overridden where the following criteria have been satisfied:

1.    The information sought is material, relevant, and necessary;
2.    There is a strong showing that it cannot be obtained by alternative means; and
3.    The information is crucial to the party's case.

Riley, 612 F.2d at 716; United States v. Criden, 633 F.2d 346, 358-59 (3d Cir.

1980)(criminal proceeding involving First Amendment Reporter's Privilege);

United States v. Cuthbertson, 630 F.2d 139 (3d Cir. 1980)(criminal proceeding

involving unpublished materials and the First Amendment Reporter's Privilege).

The Riley case is instructive as it elaborated upon the Reporter's Privilege.

In Riley, the Third Circuit held that a reporter had a qualified right to refuse to

disclose the identity of a confidential source in a federal civil case.   The Third

Circuit reasoned that:

> [T]his is simply a situation where a journalist has been called as a
> witness to a civil suit in which neither she nor her employer has any
> personal interest.  The news stories were concededly written by her in
> the course of her newspaper employment on matters of public interest
> concerning a candidate for high public office in a hotly contested
> campaign...Under the circumstances, plaintiff must demonstrate why
> his interest in civil litigation, although brought to vindicate his
> significant constitutional right to participate freely and without undue
> hindrance in a public election, is dependent upon the information
> sought.
>
> In striking the delicate balance between the assertion of the privilege
> on the one hand and the interest of either criminal or civil litigants
> seeking the information the materiality, relevance and necessity of the
> information sought must be shown.  All courts which have considered
> this issue have agreed that the federal common law privilege of news
> writers shall not be breached without a strong showing by those
> seeking to elicit the information that there is no other source for the
> information requested.

Riley, 612 F.2d at 716 (internal citations omitted).

In the Motion to Quash, the Reporters submit a variety of arguments in support of their assertion that this Court should quash the subpoenas issued and/or issue a protective order pursuant to Fed.R.Civ.P. 45(c)(3)(A)(iii) and 26(c) based on "necessary and compelling grounds." Specifically, the Reporters assert that Defendants have not satisfied the <u>Riley</u> criteria to overcome the Reporter's Privilege. In that vein, the Reporters argue that Defendants have made no attempt to show the subpoenaed individuals that additional information is needed or that the information sought at the depositions is material, relevant, necessary, and crucial to their claims or defenses. Moreover, the Reporters maintain that the information believed to be sought by Defendants can easily be obtained through alternative means, namely, the other individuals who attended the Dover Area School District Board meetings in question.

In response, Defendants argue that the Reporters should be compelled to comply with their deposition subpoenas as the Reporter's Privilege has been overcome pursuant to the <u>Riley</u> three part test. The Reporters' testimony is relevant and important to Defendants' claims because the Reporters purport to have recorded statements made by board members tending to support Plaintiffs' claims. Defendants further assert that the Reporters are the only sources of this information, discovery of the information is essential to a meaningful cross-

examination of the Reporters and directly impacts Defendants' ability to defend themselves in the litigation, as well as the fact that Defendants' due process rights would be adversely affected if they were denied the right to cross-examine and/or impeach the Reporters.

For the reasons that follow, we conclude that the Reporter's Privilege does not apply when a reporter is being questioned about a public incident or event to which he or she was a witness because there is no intrusion into the newsgathering or special functions of the press.

Although the Third Circuit acknowledges that reporters have a qualified privilege to shield the disclosure of confidential sources and information, Riley, 612 F.2d at 716-17, and that the qualified privilege extends to unpublished materials in criminal cases, U.S. v. Cuthbertson, 630 F.2d 139, 147 (3d Cir. 1980), the Court is in agreement with the parties that this qualified privilege does not apply when a reporter is subpoenaed to testify as a fact witness to public comments and observations, or to comments made in his or her presence at a public meeting. (Pls.' Br. Opp. Reporters' Mot. Quash at 5; Defs.' Br. Opp. Mot. Quash at 7).

Courts that have confronted the circumstance of a reporter being called to testify about his or her observations at a public meeting have ruled that reporters are not privileged to refuse to testify.  First, as both parties submit, in U.S. v.

12

Steelhammer, 539 F.2d 373 (4th Cir. 1976), reh'g en banc, 561 F.2d 539 (4th Cir.

1977), the court sitting en banc upheld a finding of contempt against reporters who

had refused to testify even though they were witnesses to the matter, a public union

rally.  The testimony sought from the reporters did not involve confidential

information and the reporters were considered witnesses to the matter at trial just

as any other fact witness would be considered.  Moreover, in Miller, the United

States District Court for the Western District of North Carolina explained that the

en banc Fourth Circuit in Steelhammer "explicitly found that the newspaper

reporters were witnesses to the event like other members of the public."  Miller,

602 F. Supp. at 678.  Second, in Alexander v. Chicago Park Dist., 548 F. Supp. 277

(N.D. Ill. 1982), aff'd, 427 F.2d 1014 (7th Cir. 1991), the district court did not

recognize the Reporter's Privilege in a case where a reporter had observed a public

place.  In Alexander, the plaintiffs had subpoenaed a reporter to testify only about

his personal observations of the parks during the investigation for the series

entitled "Our Squandered Legacy."  Id. at 277.  The court denied the journalist's

motion to quash a deposition subpoena and found that:

> A reporter's observations of a public place or event are no different
> in kind than that of other individuals; and as to this, they are not
> entitled to constitutional protection.  The provisions of the First
> Amendment simply do not extent to cover reporter[']s observations of
> the park during their investigation.

Id. at 278.  Additionally, both parties accurately submit that <u>Alexander</u>, like

<u>Steelhammer</u>, stands for the proposition that "the qualified [reporter's] privilege

does not apply when the reporter is being questioned about an incident to which he

or she may be a witness like any other member of the public.  In such a case, there

is no intrusion into newsgathering or special functions of the press."  <u>Miller</u>, 602 F.

Supp. at 679.

Finally, we are in agreement with the parties that many other courts have

ruled in a fashion similar to the above-referenced caselaw, specifically, that the

Reporter's Privilege does not apply to the type of non-privileged, non-confidential

information that Defendants seek in this case.  <u>See</u>, <u>e.g.</u>, <u>Pinkard v. Johnson</u>, 118

F.R.D. 517, 521 (M.D. Ala. 1987)(the court ordered a reporter to comply with a

deposition subpoena that was limited to the events he had witnessed at a specific

public meeting); <u>United States v. LaRouche Campaign</u>, 841 F.2d 1176 (1st Cir.

1988); <u>In re Shain</u>, 978 F.2d 850 (4th Cir. 1992); <u>United States v. Smith</u>, 135 F.3d

963 (5th Cir. 1998); <u>Gonzalez v. NBC</u>, 194 F.3d 29 (2d Cir. 1999). Therefore, the

applicable caselaw reveals that when addressing the issue of whether reporters may

be deposed, or be required to testify at trial, about those things that they have seen

or heard at public meetings or about public incidents or events to which the

reporter was a witness, courts from various jurisdictions have consistently

14

concluded that the Reporter's Privilege is not applicable because there is no intrusion into the newsgathering or special functions of the press.

Although the Reporters argue strenuously that Defendants have not satisfied the Riley criteria necessary to overcome the Reporter's Privilege, after a careful review of the record and applicable caselaw cited above, we conclude that the qualified privilege available under the First Amendment for reporters does not apply when a reporter is questioned about an incident to which he or she can be a witness like any other member of the public because there is no intrusion into the newsgathering or special functions of the press.[2]

Therefore, we will grant the Reporters' Motion to Quash and the Defendants' Motion to Compel to the extent that the Reporters may be deposed with regard to what they perceived, saw, and heard at Dover Area School District public meetings; however, the subject depositions are limited in that the Reporters

---

[2] The Reporter's reading of the second Riley criterion, namely, a strong showing that the information cannot be obtained by alternative means, is a jump in logic as it applies to this case. Reporters' counsel states in submissions to the Court that numerous individuals were present at the Dover Area School Board meetings, including members of the public and members of the Dover Area School Board. "In fact, it is believed that there were approximately one hundred members of the community present at the Dover School Board meetings in question." (See Rec. Doc. 100 at 5-6; Reporters' Reply Br. At 5-6). Reporters' counsel implies the second Riley criterion is satisfied only when every person in the room is questioned before the Reporters may be questioned. That interpretation is simply too strict. The question here is what the Reporters who wrote the story heard and Defendants are not burdened with an "exhaustion" requirement relating to every other person in the room.

may not be questioned concerning any confidential sources.[3, 4]

### 2.      Documents Requested by Defendants

Our second inquiry concerns whether the Reporter's Privilege extends to notes taken by Bernhard-Bubb relating to the school board meetings, drafts of newspaper articles relating to school board meetings, written by Bernard-Bubb, editorial work product associated with the articles, including e-mails, as well as other materials gathered or created as part of their functions and duties in the preparation of the articles in question ("Requested Documents").  (See Rec. Doc. 86 at Exs. A-D).

At the July 14, 2005 hearing, the Court ordered that the Requested Documents be produced for an in camera review.  After conducting the in camera

---

[3] We do note that at the July 14, 2005 hearing before the Court, counsel for the Reporters indicated that he believed there to be no confidential sources in this case.  (See Rec. Doc. 110, Hr'g Tr., 11, July 14, 2005).

[4] Although the Reporters argue that Defendants failed to give them reasonable notice of the depositions in their Motion to Quash, we do not find this argument to be meritorious.  As we previously explained, Plaintiffs served deposition subpoenas on the Reporters on or about May 12, 2005, for depositions to take place on June 8, 2005.  On or about May 24, 2005, Defendants served the Reporters with subpoenas to produce documents on June 7, 2005, which would be used at the June 8, 2005 deposition.  Defendants indicate, and we have no reason to doubt, that they believed the Reporters would comply with the subpoenas and that Plaintiffs would enforce their deposition subpoenas.  It was not until June 10, 2005, during a telephonic conference with the Court, that Defendants learned that Plaintiffs did not intend to seek enforcement of their subpoenas and that Defendants would have to pursue the interests they had in obtaining the Reporters' testimony.  That same day, Defendants served deposition subpoenas on the Reporters, for depositions scheduled to occur on June 15, 2005, the day discovery was scheduled to close.
We therefore find that under the circumstances, the Reporters had reasonable notice that their depositions would be taken.

review, we find that some of the Requested Documents are not relevant to this case
and that the Reporter's Privilege applies to the balance of the documents that were
requested by Defendants, for the reasons that follow.

We initially note that Defendants served subpoenas on the Reporters, <u>York
Daily Record</u>, and <u>The York Dispatch</u> requesting the above-referenced documents.
The Reporters argue that the Court should deny Defendants' Motion to Compel the
Reporters and their respective newspapers to produce the Requested Documents
because Defendants have failed to establish that the Reporters are the only sources
of the requested information.  While Plaintiffs assert that the Reporters may be
required to give *non-privileged testimony*, they maintain that Defendants' request
for various documents goes beyond the taking of testimony about observations of
public events and is unnecessary.  (emphasis added).  In that vein, Plaintiffs submit
that it is "unnecessary for the Court to permit this intrusion into the reporters'
newsgathering and news reporting activities in order to accomplish this discovery."
(Pls.' Br. Opp. Defs.' Mot. Compel at 5).

In response therefore, Defendants contend that the objections to the
subpoenas relating to document production should be overruled and the Reporters,
<u>York Daily Record</u>, and <u>The York Dispatch</u>, should be compelled to produce the
Requested Documents.  Defendants assert that the Reporters have not established

17

that any of the withheld documents are privileged or involve confidential sources.

Moreover, Defendants contend that the Requested Documents cannot be obtained

from any other party and only the Reporters possess information concerning their

bias, prejudice, interest, and motive.  (Defs.' Br. Supp. Mot. Compel at 10-13).  In

that respect, Defendants assert in their submissions and at the July 14, 2005

hearing before the Court that the Reporters have been biased and consistently false

in terms of their reporting.

It is evident that Defendants seek the Requested Documents because they are

trying to establish that the Reporters have engaged in reporting which has been

either false, biased, or both, and which has as a result placed Defendants in a false

light.  After conducting a detailed and thorough in camera review of the documents

at issue, we find no evidence of biased reporting or a lack of reliability present in

the Requested Documents, which would place the Reporters' credibility at issue.

Additionally, Defendants have failed to satisfy the Riley criteria necessary to

overcome the Reporter's Privilege as Defendants have not established the

relevance of all of the Requested Documents or their compelling need for the

information.  Riley, 612 F.2d at 716; see also Pinkard, 118 F.R.D. at 522-23 (The

court granted plaintiff's discovery request to question a reporter about the contents

of a conversation in which neither the source nor the content of the conversation

was confidential and denied defendant's subpoena duces tecum.  Defendants did

not demonstrate a compelling need to have the notes and records of the reporter

produced.)

Our in camera review of the Requested Documents, as previously noted,

consisted of four e-mails written from Maldonado, notes taken by Bernhard-Bubb

relating to the school board meetings, and drafts of newspaper articles relating to

the school board meetings written by Bernard-Bubb.  We will first note that our

review of the e-mails indicates that they have no relationship to anything relevant

to the case sub judice.  Second, Defendants' request for the notes and drafts in

question is a particularly odious request given the Reporter's Privilege, as they

appear to be nothing more than contemporaneous renderings of draft articles.  If we

were to compel their disclosure, the inescapable effect would be an intrusion on the

Reporters' newsgathering activities, as well as a chilling effect on the print media

in general, as such an order would mean that it would be commonplace to require

the revealing of reporter's notes and drafts of articles.[5]

Accordingly, we find both that some of the Requested Documents are not

relevant to this case and that the Reporter's Privilege applies to the balance of the

---

[5] Defendants argue in their submissions that the documents requested to which the
Reporters did not object should be immediately produced; however, counsel for the Reporters
testified that no objection was made to the aforementioned documents because they do not exist.
(See Rec. Doc. 110, Hr'g Tr., 14, July 14, 2005).

Requested Documents.  As a result of this determination and as previously noted, we are in agreement with Plaintiffs that it is unnecessary for the Court to permit this intrusion into the Reporters' newsgathering and news reporting activities. Moreover, it is our view that permitting discovery of the Requested Documents under the circumstances of this case would have a chilling effect on the editorial process, editorial decisionmaking, and would adversely affect reporters engaging in their profession, in violation of the First Amendment.

We will grant the Reporters' Motion to Quash and deny the Defendants' Motion to Compel to the extent that the requested e-mails at issue are not relevant to this case and that the Reporter's Privilege applies to the balance of the documents that were requested by Defendants in the respective subpoenas.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.  The Reporters' Motion to Quash Subpoena or For Protective Order (doc. 80) and Defendants' Motion to Compel Non-Parties to Comply with Subpoenas (doc. 85) are granted in part and denied in part to the following extent:

    a.  Maldonado and Bernhard-Bubb may be deposed with regard to what they perceived, saw, and heard at Dover Area School District public meetings; however, the subject depositions are

20

limited in that the Reporters may not be questioned concerning any confidential sources.

b.      With regard to the production of documents, the requested e-mails at issue are not relevant to this case and the Reporter's Privilege applies to the balance of the documents requested by Defendants in the respective subpoenas.

c.      The Reporters' Motion to Quash Subpoena or For Protective Order (doc. 80) is denied in all other respects.

d.      Defendants' Motion to Compel Non-Parties to Comply with Subpoenas (doc. 85) is denied in all other respects.

<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge