## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TAMMY KITZMILLER; BRYAN AND
CHRISTY REHM; DEBORAH
FENIMORE AND JOEL LIEB; STEVEN
STOUGH; BETH EVELAND; CYNTHIA
SNEATH; JULIE SMITH; AND ARALENE
("BARRIE") D. AND FREDERICK B.
CALLAHAN,

Plaintiffs,

v.

DOVER AREA SCHOOL DISTRICT;
DOVER AREA SCHOOL DISTRICT
BOARD OF DIRECTORS,

Defendants.

Civil Action No. 04-CV-2688

Honorable John E. Jones III

**PLAINTIFFS' RESPONSE TO
DEFENDANTS' STATEMENT OF
MATERIAL FACTS PURSUANT TO
LR 56.1**

Plaintiffs Tammy Kitzmiller, Bryan and Christy Rehm, Deborah
Fenimore, Joel Lieb, Steven Stough, Beth Eveland, Cynthia Sneath, Julie Smith
and Aralene ("Barrie") D. and Frederick B. Callahan hereby submit the following
Response To Defendants' Statement Of Material Facts Pursuant To LR 56.1.

## I.   __Introduction__

In numbered paragraphs below plaintiffs respond to defendants' Statement of Material Facts, in accordance with L.R. 56.1.  As a preliminary matter however, plaintiffs deny that defendants have identified all material facts necessary for the court to resolve defendants' Motion for Summary Judgment.  In their Opposition to the Motion for Summary Judgment, plaintiffs identify numerous material facts not identified by defendants that preclude the entry of summary judgment, including facts that demonstrate clearly that the defendant school board's policy was religiously motivated and that its primary effect is to promote religion.  In fact, as explained in the Opposition, the record establishes the following:[1]

---

[1] Five appendices accompany the Opposition.  Appendix I contains fact-witness depositions; Appendix II contains the district's experts' reports and depositions; Appendix III contains plaintiffs' experts' reports and depositions; Appendix IV contains miscellaneous exhibits and articles cited in this Opposition; Appendix V contains Dr. Barbara Forrest's Supplemental Expert Report, which has been filed under seal.  Miscellaneous materials in Appendix IV are cited by tab number, in the form App. IV-__.

- School-board members described the district's objectives at public board meetings using overtly religious terms. (See e.g. Joseph Maldonado, *Book is focus of more debate; The teaching of creationism or evolution was the topic again at the Dover Area School Board meeting*, YORK DAILY RECORD, June 15, 2004, at 1 (App. IV-M); Joseph Maldonado, *Dover schools still debating biology text; A board member said a book was rejected because it didn't offer creationism*, YORK DAILY RECORD, June 9, 2004, at 4 (App. IV-K); Heidi Bernhard-Bubb, *Dover schools could face lawsuit*, THE YORK DISPATCH, June 9, 2004, at 1 (App. IV-L).

- In developing its policy, the board did not consult any scientific resources — not one professional scientist, not one scientific organization, not one scientific treatise, and not even the district's own science teachers — and instead sought only ***legal*** advice, from a religious think-tank and a faith-based law firm. (Buckingham Dep. I at 68:24-69:1, 80:21-83:1, 98:24-99:20; W. Buckingham Dep. II, at 20:21-21:12).

- The book to which the policy directs students was originally written as a creationist text, and was revised to use the term 'intelligent design' only after the Supreme Court declared teaching creationism in public schools unconstitutional. (*See* Buell 07/14/2005 Testimony at 87, 98-99; *see also* Forrest Suppl. Rep. at 4-8, 10-13 (filed under seal).

- Intelligent design does not fit any accepted definition of science because it assumes a supernatural 'designer' not subject to empirical observation or scientific study. (K. Miller Dep. at 33:17-19, 194:24-195:8; Alters Dep. at 217:1-8 (stating that one of "ground rules of science * * * is methodological naturalism, and methodological naturalism is basically that we do research * * * by trying to find natural causes for natural phenomena"); Pennock Dep. at 100:6-106:10).

- The Dover community understands the policy to be religiously inspired and to further religious objectives. (See App. IV-CC (Compilation of News Articles published in the YORK DAILY RECORD, THE YORK DISPATCH and the HARRISBURG PATRIOT) & App. IV-DD Compilation of Letters to the Editor published in the YORK DAILY RECORD, THE YORK DISPATCH and the HARRISBURG PATRIOT).

As explained in the Opposition, these record facts are more than sufficient to preclude summary judgment.  Plaintiffs reserve the right to present facts at trial in this case in addition to those set forth in the Opposition to the Motion for Summary Judgment.

## II.   Response To Defendants' Statement Of Material Facts

1. Admit.

2. Admit.

3. Admit.

4. Admit in part, deny in part.  Plaintiffs admit that the Pennsylvania Academic Standards for Science and Technology require students to "Evaluate the nature of scientific and technological knowledge" and to "Critically evaluate the status of existing theories," but plaintiffs deny this statement to the extent that it characterizes the Standards as singling out the theory of evolution for this inquiry. (*See Pennsylvania Department of Education Academic Standards for Science and Technology* 22 Pa. Code, Ch. 4, Appendix B (January 5, 2002) at App. IV-T).

5. Admit.

6. Admit.

7. Admit.

8. Admit.

9. Admit.

10. Admit.

11. Admit.

12. Admit.

13. Admit.

14. Deny.  The plaintiffs specifically deny that a minority of working scientists advocate for intelligent design as a scientific theory.  The National Academy of Sciences defines 'scientific theory' as follows:  "a well-substantiated explanation of some aspect of the natural world that can incorporate facts, laws, inferences and tested hypotheses."  (Science and Creationism website "Introduction" at App. IV-Z).  Defendants' lead expert, Michael Behe, acknowledged that intelligent design is not a 'scientific theory' as the National Academy of Sciences defines the term.  (Behe Dep. at 123:16-126:20, 132:17-24, 133:18-135:12).  Plaintiffs vigorously deny that intelligent design is a scientific theory.

15. Admit.

16. Deny.  If this statement of material fact is intended to imply that the textbook *Of Pandas and People* was used solely as a resource for interested students then it is denied.  In addition to being made available to interested students, the text was also introduced to all students in the biology class as part of the district's message that intelligent design is an alternative to evolution.  (App. IV-B (original disclaimer); App. IV-C (as amended, June 2005).

17. Neither Admit nor Deny.  Defendants have provided no evidence, and plaintiffs are unaware, of whether the Dover Area High School library contains many reference books related to evolution.  By way of further answer, whether or not there are other books in the Dover Area High School library is irrelevant because the district specifically directs its students directly to consult *Of Pandas and People.*

18. Admit.

19. Admit.

20. Admit.

21. Deny.  Plaintiffs deny that the disclaimer that will be read to the students as the new biology curriculum is implemented was created in coordination with the science department teachers.  The science-department teachers deny

having any meaningful input in the development of the disclaimer.  (J. Miller Dep. at 125:11-126:5; 168:6-169:14; Geesey Dep. at 93:25-94:14; Eschback Dep. at 118:8-119:16).

22. Admit in part, neither admitted nor denied in part.  Plaintiffs admit that the disclaimer was modified in June 2005 and that the language quoted in defendants' statement of facts appears in the revised disclaimer.  Plaintiffs neither admit nor deny that there are other resources regarding the topic of evolution in the Dover Area High School library for the reasons stated in Response #17.

23. Deny.  Plaintiffs deny that the disclaimer and the curriculum change were developed to provide a balanced view and not to teach or present religious beliefs.  The development of each was the result of a religiously motivated desire to dilute evolution instruction and advance intelligent-design creationism as an alternative to evolution.  (*See e.g.* Joseph Maldondo, *Dover schools still debating biology text; A board member said a book was rejected because it didn't offer creationism*, YORK DAILY RECORD, June 9, 2004, at 4 (App. IV-K); Heidi Bernhard-Bubb, *Dover schools could face lawsuit*, THE YORK DISPATCH, June 9, 2004).

24. Deny as stated.  While Dr. Nilsen ostensibly directed teachers not to teach intelligent design, creationism, or present his or her, or any DSAD Board

member's religious beliefs, the board's policy would in fact require the teachers to teach intelligent design, creationism, and the DASD Board members' religious beliefs. (*Freiler v. Tangipahoa Parish Board of Education*, 185 F.3d 337, 348 (5th Cir. 1999) ("[a] teacher's reading of a disclaimer that not only disavows endorsement of educational materials but also juxtaposes that disavowal with an urging to contemplate alternative religious concepts implies School Board approval of religious principles"); *see also* Alters Dep. at 134:17-137:3 (explaining that reading statement to science class constitutes teaching); Webster's Third New International Dictionary 2346 (1986) (defining "teach" to include "present[ing] in a classroom lecture or discussion")).

25. Admit in part, deny in part. While plaintiffs admit that the students are not being tested on the subject, plaintiffs deny that the District is not teaching it. By any reasonable definition of the word teach, the presentation of information in a classroom, by a teacher or an administrator, amounts to teaching. (see, e.g., Alters Dep. at 134:17-137:3 (explaining that reading statement to science class constitutes teaching); Webster's Third New International Dictionary 2346 (1986) (defining "teach" to include "present[ing] in a classroom lecture or discussion")).

-8-

26. Deny.  Plaintiffs deny that the change to DASD's ninth-grade biology curriculum is minor and that it has the purpose of informing students about an existing scientific controversy surrounding the theory of evolution.  The "controversy" as stated by the defendants is not scientific but is instead a religiously motivated debate.  (*See e.g. Selman v. Cobb County Sch. Dist.*, No. Civ.A.1:02-CV-2325-C, 2005 WL 83829 at*21 (citing law-review articles explaining that telling students that evolution is a theory rather than a fact is "one of the latest strategies to dilute evolution instruction employed by anti-evolutionists with religious motivations")).  Furthermore, the board's purpose behind the religiously motivated change in the biology curriculum is to dilute evolution instruction and advance intelligent-design creationism as an alternative to evolution.  (*See e.g.* Joseph Maldondo, *Dover schools still debating biology text; A board member said a book was rejected because it didn't offer creationism*, YORK DAILY RECORD, June 9, 2004, at 4 (App. IV-K); Heidi Bernhard-Bubb, *Dover schools could face lawsuit*, THE YORK DISPATCH, June 9, 2004, at 1 (App. IV-L); Spahr Dep. at 35:18-37:1).

Plaintiffs further deny that alternative explanations such as intelligent design are being advanced by scientists.  (*See* Response #14).

27. Deny.  Plaintiffs deny that the ninth-grade biology curriculum advances the six secular pedagogical goals listed.  The asserted secular purposes are irreconcilable with the policy and disclaimer as written.  (*See, e.g., Edwards v. Aguillard*, 482 U.S. 578, 587-89 (1987) (concluding that asserted purposes of encouraging academic freedom and improving science instruction were shams because balanced-treatment statute would have been written far more broadly if intended to serve those objectives)); *Freiler v. Tangipahoa Parish Board of Education*, 185 F.3d at 344-45 (rejecting as sham asserted purpose of promoting critical thinking because disclaimer inhibited critical thinking)).

28. Admit.

29. Deny.  Plaintiffs deny that no other students or classes will be presented with the challenged curriculum.  The School District distributed a newsletter to residents of the District, informing them that "intelligent design is a scientific theory" and that, "on a molecular level, scientist have discovered a purposeful arrangement of parts which cannot be explained by Darwin's theory." By this means, as well as presentations at public meetings and widely distributed media reports, all residents of Dover were presented with the challenged curriculum.  (*See* District Newsletter at App. IV-D).

30. Admit.

Respectfully submitted,

*/s/ Thomas B. Schmidt, III*
Eric Rothschild (PA 71746)
Alfred H. Wilcox (PA 12661)
Stephen G. Harvey (PA 58233)
Christopher J. Lowe (PA 90190)
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000
(215) 981-4750 (fax)
*rothschilde@pepperlaw.com*
*wilcoxa@pepperlaw.com*
*harveys@pepperlaw.com*
*lowec@pepperlaw.com*

Thomas B. Schmidt, III (PA 19196)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
P.O. Box 1181
Harrisburg, PA  17108
(717) 255-1155
(717) 238-0575 (fax)
*schmidtt@pepperlaw.com*

Witold J. Walczak (PA 62976)
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213
412-681-7864
412-681-8707 (fax)
*vwalczak@aclupgh.org*

Paula K. Knudsen (PA 87607)
ACLU of Pennsylvania
105 N. Front St., Suite 225
Harrisburg, PA  17101
(717) 236-6827
(717) 236-6895 (fax)
*pknudsen@aclupa.org*

Ayesha Khan (adm. *phv*)
Richard B. Katskee (adm. *phv*)
Alex J. Luchenitser (adm. *phv*)
Americans United for Separation
    of Church and State
518 C St., NE
Washington, DC 20002
(202) 466-3234
(202) 466-2587 (fax)
*akhan@au.org; katskee@au.org;*
*luchenitser@au.org*

-12-

Attorneys for Plaintiffs,
TAMMY KITZMILLER; BRYAN AND
CHRISTY REHM; DEBORAH
FENIMORE AND JOEL LIEB; STEVEN
STOUGH; BETH EVELAND; CYNTHIA
SNEATH; JULIE SMITH, AND
ARALENE ("BARRIE") D. AND
FREDERICK B. CALLAHAN

Dated:  August 8, 2005