IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TAMMY KITZMILLER, et al.** | : | Case Number:  04-CV-2688 |
| | : | Judge Jones |
| | : | (Filed electronically) |
| vs. | : | |
| | : | |
| **DOVER AREA SCHOOL DISTRICT; DOVER AREA SCHOOL DISTRICT BOARD OF DIRECTORS** | : : : | |

### MEMORANDUM OF LAW OF JOSEPH MALDONADO AND HEIDI BERNHARD-BUBB IN SUPPORT OF MOTION FOR RECONSIDERATION OF COURT ORDER DATED AUGUST 2, 2005

**I.   PROCEDURAL HISTORY/STATEMENT OF FACTS**

Plaintiffs filed suit against the Dover Area School District and the Dover Area School District Board of Directors (the "Defendants") on December 14, 2004 relative to the issue of the Defendants' "intelligent design" policy.  Joseph Maldonado, an independent contractor correspondent utilized by the York Daily Record, and Heidi Bernhard-Bubb, an independent contractor correspondent utilized by The York Dispatch, have authored various articles relating to Dover School Board meetings and the controversy surrounding the Dover Area School District's policy on "intelligent design."

On or about May 24, 2005 counsel for Defendants served Subpoenas for the Production of Documents on Mr. Maldonado, Ms. Bernhard-Bubb, the York Daily Record and The York Dispatch.  The said correspondents and newspapers served timely objections to production on defense counsel pursuant to Federal Rule of Civil Procedure 45(c)(2)(B) on or about June 3, 2005.  On June 10, 2005 the Defendants served Subpoenas on counsel representing Mr. Maldonado and Ms. Bernhard-Bubb commanding the said correspondents

to testify at pre-trial depositions on June 15, 2005. Defendants agreed to postpone and stay the depositions pending a ruling by this Honorable Court on the outstanding legal issues involved. Defendants filed a Motion to Compel the Production of Documents (doc. 85) on June 15, 2005 and the non-parties filed a Motion to Quash (doc. 80) the testimonial subpoenas on June 16, 2005. The Court conducted a hearing on July 14, 2005, wherein it requested an *in camera* review of written materials in the possession of the non-party correspondents and newspapers.

This Court entered a Memorandum Opinion and Order dated August 2, 2005 (doc. 115). In its Memorandum Opinion and Order, the Court ordered that Mr. Maldonado and Ms. Bernhard-Bubb could be deposed "with regard to what they *perceived, saw, and heard* at Dover Area School District public meetings; however, the subject depositions are limited in that the Reporters may not be questioned concerning any confidential sources." (emphasis added). Trial Court Opinion, p. 20-21, paragraph 1(a). The Court properly determined that the documents reviewed *in camera* were not subject to discovery and did not have to be produced to the Defendants. Id. at p. 21, paragraph 1(b). The non-party correspondents filed a Motion for Reconsideration of the Court's August 2, 2005 Order pursuant to Middle District Local Rule 7.10 contemporaneously with this Memorandum of Law. This Memorandum of Law is being offered in support of said Motion.

## II.  STATEMENT OF QUESTION INVOLVED

Should the Court reconsider that portion of its August 2, 2005 Order allowing the non-party subpoenaed correspondents to be deposed in light of existing case law in the Third Circuit and other circuits relative to the applicability of the First Amendment Reporters' Privilege to non-confidential information and sources and amend its Order to quash the testimonial subpoenas issued by the Defendants to the non-party subpoenaed correspondents?

Suggested Answer:    Yes

## III.  ARGUMENT

This Motion for Reconsideration pertains solely to that portion of the Court's Opinion and Order permitting depositions as to what the non-party subpoenaed correspondents "perceived, saw and heard." Trial Court Opinion, p. 20-21, paragraph 1(a). The Court correctly recognized that Pennsylvania law requires application of a balancing test wherein the rights of reporters under the First Amendment are weighed against "the rights of those seeking disclosure of information that reporters possess. The Reporter's Privilege, adopted and recognized by Pennsylvania state and federal courts, can only be overridden where the following criteria have been satisfied:

>  a.   The information sought is material, relevant and necessary;
>
>  b.   There is a strong showing that it cannot be obtained by alternative means; and
>
>  c.   The information is crucial to the party's case."

Trial Court Opinion, p. 9, citing Riley v. City of Chester, 612 F.2d 708, 716 (3rd Cir. 1979); United States v. Criden, 633 F.2d 346, 358-59 (3rd Cir. 1980); and United States v. Cuthbertson, 630 F.2d 139 (3rd Cir. 1980).

Despite acknowledging the existence of the Reporter's Privilege and application of the Riley test generally, the Court, nevertheless, determined that the Privilege did not apply in this matter because "[c]ourts that have confronted the circumstance of a reporter being called to testify about his or her observations at a public meeting have ruled that reporters are not privileged to refuse to testify." Trial Court Opinion, p. 12. The Court further cited various cases outside of the Third Circuit for the proposition that the "Reporter's Privilege does not apply to the type of non-privileged, non-confidential information the Defendants seek in this case." Trial Court Opinion, p. 14. The non-parties believe that existing case law in the Third Circuit, Pennsylvania state courts and other circuits compels a different result.

The courts in Pennsylvania, New Jersey and Delaware have clearly and unequivocally held that the First Amendment Reporter's Privilege applies to confidential and non-confidential sources and information, including unpublished materials such as reporters' notes.  See Riley; Criden; Cuthbertson; Altemose Construction Co. v. Building and Construction Trades Council of Philadelphia, 443 F. Supp. 489 (E.D. Pa. 1977); Parsons v. Watson, 778 F. Supp. 214 (D. Del. 1991); Damiano v. Sony Music Entertainment, Inc., 168 F.R.D. 485 (D. N.J. 1996); U.S. v. National Talent Associates, Inc., 1997 WL 829176 (D. N.J. 1997); In re: Vmark Software, Inc., 1998 WL 42252 (E.D. Pa. 1998); Madden v. Turner Broadcasting Systems, Inc., 151 F.3d 125 (3rd Cir. 1998); In re: Barnard Subpoena, 1999 WL 38269 (E.D. Pa. 1999).

As stated, this Court indicated that the Reporter's Privilege does not apply to the type of non-privileged, non-confidential information that Defendants are seeking.  Trial Court Opinion, p. 14.  However, the majority of other circuits, as well as the Pennsylvania State Courts, are in agreement with the Third Circuit that the First Amendment Reporter's

4

Privilege applies to **non-confidential information and sources**. See, e.g., U.S. v. The LaRouche Campaign, 841 F.2d 1176 (1st Cir. 1988); Gonzales v. National Broadcasting Company, 194 F.3d 29 (2nd Cir. 1999); Stickels v. General Rental Co., Inc., 750 F. Supp. 729 (E.D. Va. 1990); Penland v. Long, 922 F. Supp. 1080 (W.D. N.C. 1995); Neal v. City of Harvey, Illinois, 173 F.R.D. 231 (N.D. Ill. 1997); Richardson v. Sugg, 220 F.R.D. 343 (E.D. Ark. 2004); Shoen v. Shoen, 48 F.3d 412 (9th Cir. 1995); Re/Max International, Inc. v. Century 21 Real Estate Corporation, 846 F. Supp. 910 (D. Colo. 1994); U.S. v. Foote, 2002 WL 1822407 (D. Kan. 2002); United States v. Blanton, 534 F. Supp. 295 (S.D. Fla. 1982), aff'd, 730 F.2d 1425 (11th Cir. 1984); National Labor Relations Board v. Mortensen, 701 F.Supp. 244 (D.D.C. 1988); McMenamin v. Tartaglione, 139 Pa. Commw. 269, 590 A.2d 802 (1991).

Moreover, contrary to the Court's assertion that there is no intrusion into the newsgathering or special functions of the press when a reporter is being questioned about a public incident or event to which he or she was a witness, Third Circuit courts and the courts of other circuits "have held that the privilege and the First Amendment concerns underlying the privilege are implicated where a party seeks to compel a journalist to authenticate or verify published quotations." Parsons, 778 F.Supp. at 217; U.S. v. Markiewicz, 732 F. Supp. 316 (N.D. N.Y. 1990); National Labor Relations Board v. Mortensen, 701 F. Supp. 244 (D.D.C. 1988); United States v. Blanton, 534 F. Supp. 295 (S.D. Fla. 1982), aff'd, 730 F.2d 1425 (11th Cir. 1984) (Government was not entitled to subpoena a reporter to testify for the sole purpose of verifying that quotations and statements attributed to the defendant were accurate where it failed to show both that it had exhausted or made reasonable attempts to exhaust non-media sources for the information or equivalent information and that it had

negotiated in good faith with the reporter's counsel). The Defendants herein are seeking, in part, to verify published quotations. Although "the lack of a confidential source may be an important element in balancing the defendant's need for the material sought against the interest of the journalist in preventing production in a particular case," Cuthbertson, F.2d at 147, courts may also require the party seeking disclosure to make a "stronger showing in civil cases than in criminal cases because the important constitutional rights possessed by criminal defendants present significant countervailing interests weighing against the interest of the journalist in preventing disclosure." Parsons, 778 F. Supp. at 218.

The foregoing makes clear that the great weight of federal authority in this country holds that the First Amendment Reporter's Privilege applies to non-confidential information and sources. Nevertheless, the Court relied upon a 1976 *Fourth* Circuit case and a 1982 *Fifth* Circuit case to determine that the Reporter's Privilege does not apply. These cases are distinguishable.

Both parties and the Court cited U.S. v. Steelhammer, 539 F.2d 373 (4th Cir. 1976, per Judge Bryan), reh'g en banc, 561 F.2d 539 (4th Cir. 1977). However, Steelhammer did not involve any question as to the accuracy of statements or quotations published in the Charleston Gazette. Moreover, the Fourth Circuit Court of Appeals clearly recognized that the "protection of the public by exacting the truth" could have been accomplished while at the same time protecting the public "through maintenance of the free press" by "calling for testimony from others not similarly situated." (emphasis added). Steelhammer, 539 F.2d at 375. The "others" referred to by the court were other witnesses to the events at issue. The court, therefore, vacated the contempt judgments of the reporters, although the judgments of contempt were subsequently affirmed by a 4-3 vote. Nevertheless, subsequent decisions in

the same Circuit support application of a balancing test as the non-party correspondents have requested in this matter and as cited below.

While the Steelhammer court chose not to apply a balancing test, as suggested by Judge Bryan, other courts within the Fourth Circuit have adopted such a test. The United States District Court for the Eastern District of Virginia interpreted Steelhammer as requiring a balancing test to determine whether reporters could be required to testify in a civil matter as to non-confidential information acquired during the newsgathering process. Stickels v. General Rental Co., Inc., 750 F.Supp. 729 (E.D. Va. 1990) (involving production of photographs taken by a reporter at an accident scene). The United States District Court for the Western District of North Carolina also applied the same balancing test to non-confidential information in a civil matter. Penland v. Long, 922 F. Supp. 1080 (W.D. North Carolina 1995).

This Court also relied upon Alexander v. Chicago Park District, 548 F.Supp. 277 (N.D. Illinois 1982), aff'd, 427 F.2d 1014 (7th Cir. 1991), wherein Chicago Sun-Times reporters were called to testify about their "personal observations of the parks during their investigation" for a series of articles regarding the city's park system. Importantly, the accuracy of statements or quotes published in the Chicago Sun-Times was also not an issue in Alexander. The court denied the reporters' motion to quash, citing cases from other jurisdictions in which reporters were compelled to testify regarding criminal conduct the reporters had witnessed or became aware of. Gilbert v. Allied Chemical Corp., 411 F.Supp. 505, 511 (E.D. Va. 1976), abrogated by Stickels v. General Rental Co., Inc., 750 F.Supp. 729 (E.D. Va. 1990); Branzburg v. Pound, 461 S.W. 2d 345 (Ky. Ct. App.1970), aff'd, 408 U.S. 665 (1972) (reporter witnessed commission of felony); Lightman v. State, 294 A.2d

7

149 (Md. Ct. Spec. App. 1972) (reporter witnessed criminal conduct); <u>People by Fischer v. Dan</u>, 342 N.Y.S. 2d 731 (N.Y. App. Div. 1973) (reporter called to testify before Grand Jury in criminal matter); <u>Rosato v. Superior Court of Fresno County</u>, 51 Cal. App.3d 190 (Cal. Ct. App. 1975) (reporter obtained information from third party in violation of court orders).

The non-parties would agree that application of the <u>Riley</u> test in the criminal context would weigh heavily in favor of the requesting party in most circumstances. The same type of request in a civil matter presents an altogether different issue. The Third Circuit has adopted a case-by-case approach in these matters. <u>Parsons</u>, 778 F.Supp. at 217. "Such a case-by-case analysis is mandated even more in civil cases than in criminal cases, for in the former the public's interest in casting a protective shroud over the newsmen's sources and information warrants an even greater weight than in the latter." <u>Riley</u>, 612 F.2d at 716. The fact that a party seeks non-confidential information in the civil context are factors to be weighed by the courts. <u>Parsons</u>, at 217-218. However, the <u>Riley</u> balancing test should, in the very least, be applied to situations where, as here, a civil party requests information from a reporter engaged in the newsgathering capacity.

It is interesting to note that the United States District Court for the Northern District of Illinois cited decisions from several courts outside of the Seventh Circuit in <u>Alexander</u>, but did not cite <u>Steelhammer</u>. Regardless, the same court applied a <u>Riley</u> type balancing test to grant a reporters' motion to quash fifteen years after the <u>Alexander</u> decision. <u>Neal v. City of Harvey, Illinois</u>, 173 F.R.D. 231, 1997 WL 285739 (N.D. Illinois 1997). In <u>Neal</u>, the court relied on <u>United States v. Lopez</u>, 1987 WL 26051 (N.D. Illinois 1987), stating

> <u>Lopez</u> is particularly on point. In that case, the defendant had given an interview and was seeking a videotape of the out-takes of that interview. 1987 WL 26051, at 1. The court noted that, in

> addition to the defendant, her co-defendant's attorney attended the interview.  <u>The court concluded that '[b]ecause two witnesses were present at the interview (including [the defendant] herself), [the defendant] has not satisfied her burden of showing that the information she seeks is not available from a non-journalistic source</u>. (emphasis added).

<u>Neal</u>, 173 F.R.D. at 233.  Thus, the courts of the Seventh Circuit have applied the balancing test to a set of facts similar to this matter.

While relying primarily on <u>Steelhammer</u> and <u>Alexander</u>, the Court did not consider <u>Parsons v. Watson</u>, <u>supra</u>, a decision of the United States District Court for the District of Delaware, a Third Circuit court, and <u>McMenamin v. Tartaglione</u>, <u>supra</u>, a decision of the Pennsylvania Commonwealth Court. These cases are factually analogous to the case before this Honorable Court. In <u>McMenamin</u>, the Pennsylvania Commonwealth Court ruled that the Court of Common Pleas of Philadelphia County properly upheld a newspaper reporter's First Amendment Privilege against testifying as to the accuracy of statements made by a district attorney at a <u>public press conference</u>.  "**While there appears to be no dispute that the information sought was material, relevant, necessary and perhaps crucial, there is nothing to show that <u>McMenamin</u> could not have obtained the information from other persons present**" at the public press conference in question.  <u>McMenamin</u>, 590 A.2d at 811. (emphasis added).  We emphasize that "state law considerations may be included in analyzing the issue of the newsperson's privilege discussed in <u>Riley</u>," including the use of state law analogies "in instances where the federal rule is unsettled." <u>Downey v. The Coalition Against Rape and Abuse, Inc.</u>, 2003 WL 23164082 (D.N.J. 2003), <u>quoting</u> <u>Wm. T. Thompson Co. v. Gen. Nutrition Corp, Inc.</u>, 671 F.2d 100, 104 (3rd Cir. 1982), citing <u>Riley</u>, <u>supra</u>. While we recognize that <u>McMenamin</u> is not binding upon the federal courts, this

9

Court could have looked to the state law precedent established in <u>McMenamin</u> because of the analogous factual scenario involved. <u>Id</u>.

The Third Circuit case of <u>Parsons v. Watson</u>, 778 F.Supp. 214, 217 (D. Del. 1991), addressed another situation where a reporter witnessed statements being made. In <u>Parsons</u>, the plaintiff in a civil suit argued that statements attributed to him and published in the <u>Wilmington News Journal</u> were reported inaccurately. The alleged inaccurate remarks were made during a conversation between plaintiff and three (3) others who worked in the same department with plaintiff.

The plaintiff served a subpoena commanding the reporter to testify at a deposition. Thereafter, the reporter filed a motion to quash. The court held that the First Amendment Reporter's Privilege applied even though the material sought was <u>not confidential</u>. The court further held that the motion to quash would be granted in light of the fact that the plaintiff failed to establish that the information sought could not have been gleaned from the three other individuals present when the conversation took place. Because there were four participants in the conversation, plaintiff could not establish that the information was crucial to his case.

> Plaintiff has not made any showing that he cannot obtain information regarding the accuracy of these statements attributed to him in the July 5, 1987 article from one or more of the other three participants in the conversation. Moreover, plaintiff himself is a source of information regarding exactly what was said during the conversation. Lewis' [the reporter's] testimony, while relevant, would be cumulative of the testimony of the participants in the conversation.

<u>Parsons</u>, 778 F.Supp. at 219. The court concluded that "[w]hen there is a clear alternative source for the information sought, the journalist may invoke the privilege to avoid compelled testimony." <u>Id</u>.

It is submitted that the factual background in this case is indistinguishable in all material respects from those present in McMenamin and Parsons. To wit, the McMenamin and Parsons reporters were witnesses to statements made by individuals and reported about same in their respective newspapers. The former involved a public press conference; the latter, a non-confidential conversation between four (4) individuals. Similarly, the non-parties in this case, while engaged in their newsgathering capacities with the intent to disseminate such information to the public, witnessed statements made by Dover School Board members and contemporaneously reported such remarks. The McMenamin and Parsons courts properly applied the Riley test and determined that the reporters could not be compelled to testify <u>because other sources for the information existed</u>.[1] The Riley test should have been applied here because the correspondents were engaged in their newsgathering capacities at all relevant times and a myriad of other sources for the information sought by Defendants exists. Moreover, the testimony of Mr. Maldonado and Ms. Bernhard-Bubb would clearly be cumulative of the testimony of the members of the public who attended the meetings in question.

If the Riley test were applied herein, the Defendants would fail same. The Defendants in this matter seek to depose Mr. Maldonado and Ms. Bernhard-Bubb to verify the accuracy of non-confidential, published statements and to test the alleged bias in the

---

[1] The court indicated that Reporters' counsel implied the second Riley criterion is satisfied only when every person in the room is questioned before the Reporters may be questioned. Trial Court Opinion, p. 15, n.2. The non-parties do not believe every person that had attended the Dover School Board meetings at issue must be questioned prior to a deposition of the subpoenaed correspondents. However, the non-parties do believe that the Defendants must make an effort to obtain the requested information from alternative, non-journalistic sources. No such showing has been made. In Carey v. Hume, 492 F.2d 631 (D.C. Cir. 1974), the Court of Appeals for the District of Columbia Circuit suggested that an alternative requiring the taking of as many as sixty (60) depositions might be a reasonable prerequisite to the compelled disclosure of information held by a reporter.

correspondents' reporting.[2] To the extent that Defendants are successful, their discovery will only go to the credibility of the correspondents. However, Defendants could theoretically establish the alleged bias and/or prejudice of the non-parties from less intrusive sources such as the published articles[3], the testimony of those members of the public attending relevant Dover School Board meetings and their own testimony. The non-parties are not aware of any attempt on the part of the Defendants to obtain the deposition testimony of citizens who attended the public meetings. Absent this showing, the non-parties submit that the Defendants have not met the applicable Riley test and their requested discovery should have been denied.

The non-parties in this matter, like the NBC reporter in Lopez and the newspaper reporters in McMenamin and Parsons, were not the only ones to hear the statements at issue. Even if this Court were to carve out an exception to the Reporters' Privilege for "eyewitness testimony," the non-parties believe that such an exception should be strictly limited to criminal matters due to the important societal interests involved in the prosecution of crime and the constitutional rights possessed by criminal defendants. These considerations are irrelevant here. The balancing test articulated in Riley and adopted by this Court should be applied in all civil cases involving a reporter engaged in the newsgathering process where, as here, the subpoenaing party can obtain the requested information from multiple other, non-journalistic sources. See Parsons, McMenamin and Lopez. "Although no confidential source or information is involved, this distinction is irrelevant to the chilling effect

---

[2] The non-party subpoenaed correspondents have already submitted Affidavits wherein they affirmed the accuracy of all statements contained in the relevant articles.

[3] Rule 902 (6) of the Federal Rules of Evidence provides that extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to printed materials purporting to be newspapers or periodicals.

12

enforcement of the subpoena would have on the flow of information to the press and public." United States v. Blanton, 534 F. Supp. 295 (S.D. Fla. 1982), aff'd, 730 F.2d 1425 (11th Cir. 1984), citing United States v. Cuthbertson, 630 F.2d 139, 147 (3rd Cir. 1980); Loadholtz v. Fields, 389 F. Supp. 1299, 1303 (M.D. Fla. 1975). Based on the foregoing, the non-parties submit that their Motion to Quash should have been granted pursuant to McMenamin, Parsons and the analogous case law cited herein, and, accordingly, ask for reconsideration of the Court's August 2, 2005 Opinion and Order as to the issue of the obligation of the correspondents to testify.

In the alternative, should this Court choose not to grant the non-party correspondents' Motion to Quash, the said correspondents would respectfully request that the Court modify paragraph 1(a) of its Order of August 2, 2005 to limit the non-parties' testimony solely for purposes of verifying the accuracy of the statements published in the relevant articles, which would be limited to what the correspondents saw and heard. This would exclude any testimony as to what the correspondents "perceived."

Webster's Dictionary defines the term "perception" as "the act or faculty of apprehending by means of the senses or the mind; cognition; awareness" and as "immediate or intuitive recognition or appreciation, as of moral, psychological, or aesthetic qualities; insight; discernment." Random House Webster's College Dictionary, p. 967 (2nd Ed. 1997). Black's Law Dictionary defines "perception", in applicable part, as "[s]eeing, noticing or otherwise comprehending." Black's Law Dictionary, p. 1136 (6th Ed. 1990). It is submitted that the terms "perceive" and "perception" amount to a comprehension and understanding of the

13

correspondents' thought processes and mental analysis. Clearly, the exposure to such questions would have a negative and chilling effect upon the newsgathering ability of the correspondents and their respective newspapers.

Reporters and correspondents such as Mr. Maldonado and Ms. Bernhard-Bubb are essentially historians. Reporters are not *part* of the story. Rather, they report facts as impartial, objective observers. Editorials and opinion are reserved for the editorial page. Allowing reporters to take the witness stand or testify as to their perceptions in a deposition effectively strips away their objectivity.

If the Defendants are permitted to ask Mr. Maldonado and Ms. Bernhard-Bubb about their perceptions, thought processes and analyses relative to Dover School Board meetings they attended, a question would arise as to the correspondents' objectivity regardless of the answers given.[4]  As a result, the public's confidence in the print media will surely erode. Moreover, newspapers and reporters might choose to cover the most important and controversial issues less aggressively for fear of being continually hauled into court and questioned about their opinions on particular matters. Clearly, this type of questioning would have a negative, chilling effect upon the credibility of the press and the free flow of information to the press and the *public*.  Accordingly, if this Court should deny the correspondents' Motion to Quash, the correspondents would respectfully request that their testimony be limited to verifying the accuracy of the statements

---

[4] Rule 701 of the Federal Rules of Evidence provides that if a witness is not testifying as an expert, the witness may be asked about opinions or inferences which are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

published in the relevant articles, which would be limited to what they saw and heard.

## IV. CONCLUSION

For the foregoing reasons, the non-parties respectfully request that the Court reconsider paragraph 1(a) of its August 2, 2005 Order, apply the Riley test to the testimony sought by Defendants and hold that the Motion to Quash the deposition subpoenas of Defendants be granted.  In the alternative, the non-parties would respectfully request that the Court modify paragraph 1(a) of its Order of August 2, 2005 to limit the non-parties' testimony solely for purposes of verifying the accuracy of the statements published in the relevant articles, which would be limited to what they saw and heard.

                        Respectfully submitted,
                        **BENN**LAW**FIRM**

Date: August 11, 2005       By:/s/ Niles S. Benn, Esquire____
                        Niles S. Benn, Esquire
                        Attorney I.D. #16284
                        Terence J. Barna, Esquire
                        Attorney I.D. #74410
                        Christian J. Dabb, Esquire
                        Attorney I.D. #85370
                        P.O. Box 5185
                        103 E. Market Street
                        York, Pennsylvania 17405-5185
                        (717) 852-7020
                        nbenn@bennlawfirm.com
                        tbarna@bennlawfirm.com
                        cdabb@bennlawfirm.com

**CERTIFICATE OF SERVICE**

I, Christian J. Dabb, Esquire, hereby certify that on this 11th day of August, 2005, I served a true and correct copy of the foregoing "Memorandum of Law" upon the following counsel by the Middle District ECF system and/or fax and other counsel of record by the Middle District ECF system:

**VIA FACSIMILE (734) 930-7160**
Richard Thompson, Esquire
Patrick T. Gillen, Esquire
Robert J. Muise, Esquire
Edward L. White, III, Esquire
Thomas More Law Center
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, Michigan  48106
(Defendants' counsel)

Thomas B. Schmidt, III
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
P.O. Box 1181
Harrisburg, PA  17108
(Plaintiffs' co-counsel)

Eric Rothschild, Esquire
Pepper Hamilton LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103
(Plaintiffs' co-counsel)

/s/ Christian J. Dabb, Esquire___
Christian J. Dabb, Esquire
Attorney I.D. #85370