IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY KITZMILLER, et al., )<br>  Plaintiffs, )<br> )<br>v. )<br> )<br> )<br>DOVER AREA SCHOOL DISTRICT, et al.,)<br>  Defendants. )<br>_____) | Case No. 04-CV-2688<br>(Hon. Judge Jones)<br><br>(Filed Electronically) |

## DEFENDANTS' RESPONSE TO REPORTERS' MOTION TO RECONSIDER THIS COURT'S ORDER OF AUGUST 2, 2005

Defendants, pursuant to this court's order of August 17, 2005, (Doc. 130), respond to the motion to reconsider this court's order of August 2, 2005, filed by nonparty reporters, Joseph Maldonado and Heidi Bernhard-Bubb, (Doc. 125). The motion to reconsider should be denied in full.

### I.   PROCEDURAL HISTORY/STATEMENT OF FACTS

Plaintiffs filed this action challenging portions of defendants' ninth-grade biology curriculum under the Establishment Clause to the federal Constitution and provisions of the Pennsylvania Constitution. Defendants have filed a motion for summary judgment, which is pending. (Doc. 104.)

Joseph Maldonado is a correspondent for the *York County Daily Record* and Heidi Bernhard-Bubb is a correspondent for the *York Dispatch*. These reporters

and papers cover Dover Area School Board meetings and have issued stories relevant to this action. During depositions of board members, plaintiffs have questioned the members about statements attributed to them by these reporters in published news articles.

As is obvious from plaintiffs' response to defendants' motion for summary judgment, the evidence dealing with the reporters, their reporting, and their newspaper accounts, is essential to plaintiff's case. (Docs. 119, 120.)

The defense has steadfastly maintained that the reporters and newspapers are inaccurate and biased in their reporting. (*E.g.*, Doc. 86, Ex. L, Bonsell Depo. at 36-46; Ex. M, Harkins Depo. at 25-27, 36-38; Ex. N, Buckingham Depo. at 22-26; Ex. O, Geesey Depo. at 34-35, 99-100.) For example, attached hereto as Exhibit A is an op-ed piece that school board member Alan Bonsell submitted to the *York Daily Record* and the version of the op-ed piece that the paper printed. The printed version bears little resemblance to the submitted version and shows the editorial distortion by the newspaper of a school board member's views.

Indeed, the defense has reason to believe that Maldonado is grossly negligent in his reporting. For example, when Heather Geesey informed Maldonado that she did not make a statement he had attributed to her in one of his articles, he responded, "so, I am putting my kids through college." (Doc. 86, Ex. O, Geesey Depo. at 99-100.)

After the parties subpoenaed the reporters, the reporters filed motions to quash the subpoenas, and defendants filed a motion to compel compliance with their subpoenas for documents and testimony. (Docs. 71, 80, 85.)

On July 14, 2005, this court held a hearing on the motions, at which time the reporters and the parties presented their arguments in addition to what they had submitted on paper to the court. (Doc. 112.)

On August 2, 2005, this court issued its order. This court correctly concluded "that the qualified privileged available under the First Amendment for reporters does not apply when a reporter is questioned about an incident to which he or she can be a witness like any other member of the public because there is no intrusion into the newsgathering or special functions of the press." (Doc. 115 at 15.) Therefore, this court ordered that the reporters "may be deposed with regard to what they perceived, saw, and heard at Dover Area School District public meetings; however, the subject depositions are limited in that the Reporters may not be questioned concerning any confidential sources." (Doc. 115 at 15-16, 20-21; also noting at 16, n.3, reporters' counsel did not believe any confidential sources were involved.)

On August 11, 2005, the reporters filed a motion to reconsider the court's order of August 2, 2005. (Doc. 125.)

On August 17, 2005, this court held a telephonic conference on the reporters' motion to reconsider. The court indicated that it was considering altering the language of its order since the reporters had taken issue with the court permitting defendants to depose the reporters on what they "perceived" at the public meetings, along with what they had seen and heard. The court indicated it may alter its order to allow questioning of the reporters on such subjects as their affidavits, the statements of the declarants (including such areas as how the statements were heard, who was at the meetings when the statements were made, and whether the statements were reported accurately) and to prevent questioning about the reporters' biases or motives. Defendants requested the opportunity to file a responsive brief before the court ruled on the motion to reconsider, a request this court granted on an expedited basis in light of the September 26, 2005, trial date.

## II.   STATEMENT OF QUESTION INVOLVED

Whether this court should deny in full the reporters' motion to reconsider this court's order of August 2, 2005. Suggested answer: Yes.

## III.   ARGUMENT

### The Reporters Have Failed To Show That The Court's Order Of August 2, 2005, Should Be Reconsidered Or Altered

"[W]ithin the Third Circuit, a motion to reconsider, even where purportedly prompted by the court's commission of clear error, is not to be used merely as an opportunity to reargue issues that the court has already analyzed and determined."

*Helfrich v. Leigh Valley Hosp.*, No. Civ. A. 03-CV-05793, 2005 WL 1715689 at *4 (E.D. Pa. July 21, 2005) (copy attached hereto as Exhibit B.) Moreover, a motion to reconsider may not be used to rehash arguments already presented, to raise arguments that should have been raised before, or to express the opinion that the court's original order is wrong. In short, a motion to reconsider is appropriate only to point out factual and legal issues the court misapprehended. *E.g., In re Armstrong Store Fixtures Corp.*, 139 B.R. 347, 349 (Bankr. W.D. Pa. 1992); *Helfrich,* No. Civ.A. 03-CV-05793, 2005 WL 1715689 at *3-*4, Ex. B hereto.

The reporters have failed to show that this court misapprehended any facts or law that have a material bearing on its decision to allow defendants to depose the reporters to preserve defendants' due process rights in this action. All the reporters have done in their motion is to rehash arguments they have previously presented to this court, to express their view that the decision is wrongly decided, and to address arguments they previously failed to address. (Docs. 80, 81, 95, 100, 125, 126; Doc. 103 at 3-4 (noting in defendants' reply brief in support of their motion to compel that the reporters failed to address and refute the legal principle that a reporter lacks a privilege not to testify as a fact witness, just as any fact witness would lack such a privilege (citing *United States v. Steelhammer,* 539 F.2d 373 (4th Cir. 1976), *on rehearing en banc* 561 F.2d 539 (4th Cir. 1977); *Miller v.*

*Mecklenburg County,* 602 F.Supp. 675, 678 (W.D. N.D. 1985); *Alexander v. Chicago Park Dist.,* 548 F.Supp. 277, 278 (N.D. Ill. 1982)).

The arguments the reporters raise in their motion to reconsider do not alter the correct conclusion of this court that the qualified privilege does not apply when a reporter is subpoenaed to testify about what he saw, heard, or perceived at a public meeting because there is no intrusion into the newsgathering or special functions of the press, especially when the reporters are not questioned about confidential sources. (Doc. 115 at 12; Doc. 112 at 11:17-21, reporters' counsel noting his belief that confidential sources are not involved in this case.) The reporters' motion to reconsider should be denied in full.

### This Court Properly Permitted Full Discovery Of The Reporters And That Ruling Should Not Be Reconsidered Or Altered

The main concern the reporters have with this court's August 2, 2005, order, as expressed in their motion for reconsideration and at the August 17, 2005, telephonic conference with this court, is to the use of the word "perceived" in this court's order: the reporters "may be deposed with regard to what they perceived, saw, and heard at Dover Area School District public meetings; however, the subject depositions are limited in that the reporters may not be questioned concerning any confidential sources." (Doc. 115 at 20-21; Doc. 126 at 13-15.)

In this regard, as in all other regards, the reporters' motion is meritless. As this court has clearly stated, a reporter does not have a privilege to refuse to testify

6

on matters when the reporter is a fact witness, because there is no intrusion in the newsgathering or special functions of the press. (Doc. 115 at 12-16.) In such a situation, a reporter is the same as any other fact witness. As such, defendants may depose the reporters on any matter not privileged that is relevant to the claim or defense of any party. *See* Fed. R. Civ. P. 26(b)(1) (permitting broad discovery).

Because plaintiffs intend to call the reporters as witnesses at trial and intend to rely on their reporting and articles to advance plaintiffs' claims, defendants have a right to depose the reporters just as fully as they deposed the other fact witnesses in this case in order to properly prepare their defense, prepare for the cross-examination of the reporters at trial, and for other case-related purposes. Clearly, what the reporters saw, heard, and perceived at these public meetings, the accuracy of their reporting, and any bias, motive, interest, or prejudice held by the reporters would be fair areas of inquiry, especially within the broad discovery confines of Fed. R. Civ. P. 26(b).

The reporters state that this court should not allow them to be asked questions about their "perceptions" because, they claim, such "questions would have a negative and chilling effect upon the newsgathering ability of the correspondents and their respective newspapers." (Doc. 126 at 13-14.) Besides being pure speculation, the reporters cite no support for this novel attempt to

restrict defendants from engaging in proper and necessary discovery to defend themselves in this case.

Also, the reporters argue, without support, that they "report facts as impartial, objective observers." (Doc. 126 at 14.) They further claim, without support, that allowing them to "take the witness stand or testify as to their perceptions in a deposition effectively strips away their objectivity." (Doc. 126 at 14.) These are specious arguments by the reporters. The reporters cannot merely assert that their are "impartial, objective observers" who are "not part of the story" and expect defendants (and this court) to take their word for it. What the reporters are attempting to do is to prevent defendants from exploring these claims, especially when defendants have reason to believe the reporters are not impartial, objective observers and have written stories in a way to place school board members in a false light and to unjustly stir up public controversy. Defendants should be permitted to explore such areas during discovery. *See* Fed. R. Civ. P. 26(b); *May v. Cooperman,* 780 F.2d 240, 263 & n.13 (3rd Cir. 1985) (Becker, J., dissenting) (finding the admission of newspaper articles erroneous and noting with regard to the trustworthiness of news reporting that "[w]e have no idea of the amount of editorializing that went into the articles, which could have been written from a biased point of view. It is not unknown for reporters to stretch some facts or omit others in order to arouse public indignation. . . . [W]e also know nothing

of the methods or motivations of the reporters who wrote the articles that were admitted into evidence.").

The reporters also make the frivolous claim that if defendants are permitted to depose them about their perceptions, among other areas of inquiry, that a "question would arise as to the correspondents' objectivity regardless of the answers given" and "[a]s a result, the public's confidence in the print media will surely erode." (Doc. 126 at 14.) The only reason the public's confidence in the reporters would be eroded is if the reporters are shown to be partial, biased, and unobjective, not because they are *merely* questioned on these matters. The reporters, if they are truly impartial, objective observers, as they proudly claim in their motion to reconsider, (*id.*), should welcome the opportunity to prove same.[1]

In short, the concerns the reporters have raised in their reconsideration motion and during the telephonic conference about impairment to newsgathering activities are not valid. As this court properly ruled, "the Reporters' Privilege does not apply when a reporter is being questioned about a public incident or event to which he or she was a witness *because there is no intrusion into the newsgathering or special functions of the press*." (Doc. 115 at 12) (emphasis added).

---

[1] Inquiry into the reporters' perceptions and biases is also relevant and important because the "accuracy of witness perception may be undermined because people tend to interpret their perceptions in light of their biases. The reliability of witness recollection may be questioned since people sometimes engage in selective recall and even confabulation in order to serve their biases." 27 Wright & Gold, *Federal Practice & Procedure: Evidence* § 6095 at 516 (1990).

## Defendants Would Be Denied Due Process

What the reporters continue to seek is to be able to present their testimony through the affidavits they have unilaterally agreed to with plaintiffs and not be subjected to meaningful cross-examination by defendants.  As defendants have argued previously, something not refuted by plaintiffs or the reporters, the law does not provide an exception for the reporters to be exempted from a thorough cross-examination and impeachment by defense counsel at trial, which can only be accomplished by defendants first having the opportunity of thorough discovery of the reporters under the broad umbrella of Fed. R. Civ. P. 26(b).

Under the circumstances of this case, defendants have a right to delve into the truth and veracity of the reporters' affidavit statements and reporting and to probe their credibility, bias, motive, interest, and prejudice with regard to their affidavits and their reporting.  Indeed, defendants would be deprived of their due process rights if they were denied the right to conduct meaningful discovery and cross-examination of the reporters. (*E.g.,* Doc. 86 at 13-14; Doc. 94 at 12-13 & cases cited); *see Douglas v. Owens,* 50 F.3d 1226, 1230 (3rd Cir. 1995) ("To properly evaluate a witness, a jury must have sufficient information to make a discriminating appraisal of a witness's motives and bias."); *Gladden v. Henderson Co.,* 385 F.2d 480, 483 (3rd Cir. 1967) ("To have forbidden such cross-examination

would have conferred on plaintiff the unparalleled right to give testimony on direct examination with immunity for inquiry on cross-examination.").[2]/

The reporters should not receive a special exemption, something no other witness has received, from being asked questions regarding non-confidential matters or about their perceptions, biases, and motives. When it comes to the trustworthiness of news reporting,

> *perception, memory, narration, and misrepresentation all present potential problems.* The reporters may have been present for only part of the hearings they reported, and *may not correctly have remembered or interpreted the speeches they heard.* They *may have simply recorded their impressions* of the hearings, in which case the clippings would provide only very slender evidence of legislative intent. We have no idea of the *amount of editorializing* that went into the articles, which could have been *written from a biased point of view. It is not unknown for reporters to stretch some facts or omit others in order to arouse public indignation.* . . . [W]e also know nothing of the *methods or motivations of the reporters* who wrote the articles that were admitted into evidence.

*May v. Cooperman*, 780 F.2d 240, 263 & n.13 (3rd Cir. 1985) (Becker, J., dissenting) (emphasis added);[3]/ *accord In re Columbia Securities Litigation*, 155 F.R.D. 466, 475 (S.D. N.Y. 1994) ("Unless their author is available for cross-

---

[2]/ If this court does not allow defendants to conduct meaningful discovery and cross-examination with regard to the reporters, the reporters should be excluded as witnesses in this action.

[3]/ In *May*, the district court admitted newspaper articles. The majority doubted the admissibility of this hearsay evidence but found harmless error in light of the other evidence. Although the majority avoided deciding the evidentiary issues, Judge Becker did analyze the matter in detail and determined the newspaper accounts were inadmissible. *May*, 780 F.2d at 252 n.9, 262-63 & n.11.

examination, newspaper stories generally will present a blank face that gives little clue as to the reliability of the reporter's perception, memory, narration, or sincerity, and in addition fails to disclose how the article was changed in the editing process.")

Indeed, the importance of defendants being able to depose the reporters fully in order to properly prepare their defense and their cross-examination of the reporters is made evident by principles noted in *Davis v. Alaska,* 415 U.S. 308 (1974), in which the Supreme Court explained that a cross-examiner should be permitted to delve "into the witness' story to test the witness' perceptions and memory" and "impeach, i.e., discredit, the witness." *Id.* at 316. The Supreme Court specifically explained that a "more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Id.* Moreover, the Supreme Court explained that the "partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'"[4]/ *Id.* For defendants to be able to prepare for meaningful cross-

---

[4]/ Although the *Davis* Court was writing in the context of a criminal trial with regard to cross-examination, the Third Circuit has explained that giving the finder of fact sufficient information to make a discriminating appraisal of a witness's motives and biases through cross-examination is equally implicated in a civil trial context. *Douglas v. Owens,* 50 F.3d 1226, 1230 n.6 (3rd Cir. 1995).

examination of the reporters, defendants need to engage in meaningful discovery of the reporters, which this court has permitted in its August 2, 2005, order, something that should not be altered.

At the deposition of the reporters, defendants should, among other areas of inquiry, be able to inquire about who was present with the reporters when the alleged statements by the board members were made; where and when the alleged statements were made; whether the statements were accurately reported and how the reporters know that; what else the board members allegedly said; in what context the alleged statements were made; whether the reporters have a financial interest in this litigation; whether they have any personal, business, or social relationships with plaintiffs, plaintiffs' counsel, plaintiffs' law firms and organizations or with any board member or defendant; whether the reporters have any corroboration for their reporting and the quotes they have attributed to board members; whether the reporters have any enmity toward defendants or school board members; whether the reporters have any shared beliefs or backgrounds with plaintiffs, plaintiffs' counsel, and plaintiffs' law firms or organizations, and to confirm with the reporters that board members had complained to them about their

inaccurate reporting, (*e.g.*, Doc. 86, Ex. L, Bonsell Depo. at 36-39; Ex. N. Buckingham Depo. at 22-23; Ex. O, Geesey Depo. at 99-100).[5]/

These and other areas are fair inquiry pursuant to Rule 26(b) to enable defendants to be prepared to conduct meaningful cross-examination and impeachment of the reporters at trial. *See* Fed. R. Evid. 607 (explaining that the credibility of a witness may be attacked by any party); Fed. R. Evid. 611(b) (explaining that witnesses may be cross-examined on matters affecting their credibility). This is especially true when it comes to showing at trial any biases held by the reporters. *See United States v. Abel,* 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.")

In sum, the reporters purport to have recorded statements by board members that tend to support the plaintiffs' claims in this action. Defendants maintain that the reporters are inaccurate and biased in their reporting. Because the newspaper articles are inadmissible hearsay, *see, e.g., Barnes Found. v. Township of Lower*

---

[5]/ See attached Exhibit C in which plaintiffs seek, at proposed stipulated fact number 20, a stipulation that board members and district officials did not send written requests to newspapers requesting retraction or correction, indicating plaintiffs seek to make this a part of their case. As noted above in the text, school officials did make numerous verbal requests for retraction or correction, something the reporters would have to concede and on which defendants should be able to depose the reporters.

*Merion,* 982 F.Supp. 970, 996 (E.D. Pa. 1997), for plaintiffs to present the reporters' testimony, the reporters will have to appear in person at trial and testify. Without allowing defendants the opportunity to conduct discovery, such testimony would be presented without defendants first having had the opportunity to examine the witnesses and to prepare for cross-examination. Defendants would be denied fundamental due process.

### III. CONCLUSION

Defendants respectfully request that this court deny in full the reporters' motion to reconsider and permit defendants to proceed with the depositions of the reporters as this court ordered on August 2, 2005.

                Respectfully submitted,

                */s/ Edward L. White III*
                Richard Thompson (MI P21410)*
                Patrick T. Gillen (MI P47456)*
                Robert J. Muise (MI P62849)*
                Edward L. White III (MI P62485)*
                Thomas More Law Center
                24 Frank Lloyd Wright Drive, P.O. Box 393
                Ann Arbor, MI 48106
                734-827-2001; Fax. 734-930-7160
                * Admitted pro hac vice

                Ron Turo
                Turo Law Offices
                29 South Pitt Street
                Carlisle, PA 177013
                717-245-9688
Dated: August 24, 2005        *Counsel for defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2005, a copy of the foregoing defendants' responsive brief in opposition to the reporters' motion to reconsider and attached index, certification, and exhibits A-C were served on the following counsel through the court's electronic case filing system:

Eric Rothschild
Stephen G. Harvey
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103

Witold J. Walczak
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213

Alex J. Luchenitser
Richard Katskee
Ayesha Khan
Americans United for Separation
 of Church and State
518 C Street, NE
Washington, DC 20002

Niles Benn
Benn Law Firm
103-107 E. Market Street
P.O. Box 5185
York, PA  17405

Thomas B. Schmidt, III
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
PO Box 1181
Harrisburg, PA 17108

Paula K. Knudsen
ACLU of Pennsylvania
105 N. Front Street, Suite 225
Harrisburg, PA 17101

Ron Turo
Turo Law Offices
29 South Pitt Street
Carlisle, PA 17013

Mary Catherine Roper
ACLU of Pennsylvania
P.O. Box 1161
Philadelphia, PA 19105

*[signature]*

Edward L. White III
Admitted *pro hac vice*