# EXHIBIT B



Westlaw.

Slip Copy                                                                 Page 1

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

**Н**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Douglas HELFRICH
v.
LEHIGH VALLEY HOSPITAL
**No. Civ.A. 03-CV-05793.**

July 21, 2005.

*MEMORANDUM and ORDER*

PRATTER, J.

I. BACKGROUND

**\*1** On March 18, 2005, this Court granted Defendant Lehigh Valley Hospital's Motion for Summary Judgment (hereinafter, "Helfrich Memorandum Opinion") (Docket No. 43). Plaintiff Donald Helfrich raises two issues in his Motion to Reconsider Summary Judgment (the "Motion to Reconsider") (Docket No. 44) and an additional issue in his Supplemental Memorandum of Law to Cite New Authority (the "Supplemental Memorandum") (Docket No. 45). Defendant Lehigh Valley Hospital ("LVH") opposes Helfrich's Motion for Reconsideration ("Defendant's Opposition") (Docket No. 47). For the reasons stated below, the Court denies Helfrich's Motion to Reconsider.

First, Helfrich argues that by granting summary judgment the Court failed to follow the United States Supreme Court's unanimous holding in *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). In *Desert Palace,* the Supreme Court specifically addressed whether, *in Title VII claims,* "a plaintiff must present direct evidence of discrimination in order to obtain a mixed-motive [jury] instruction under 42 U.S.C. § 2000e-2(m)." [FN1] *Id.* at 99. [FN2] Helfrich did not allege a violation of Title VII, but, rather, violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act of 1993 ("FMLA"). Moreover, nowhere in the *Desert Palace* opinion does the Supreme Court discuss or even intimate, as Helfrich proposes, that *Desert Palace* represents a broad, sweeping modification of the Supreme Court's previous holdings with regard to the evidentiary standard to be applied in employment discrimination cases, outside

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                           Page 2

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

the explicit scope of the issues actually addressed in *Desert Palace, i.e.,* the evidentiary standard in a(a) Title VII, (b) mixed-motive case (c) pursuant to statute.

> FN1. Following the Court's review of Helfrich's Motion to Reconsider and Supplemental Memorandum, and with due consideration of the submissions on behalf of Helfrich throughout the instant matter, the Court is constrained to note that Plaintiff's submissions have a recurring and disquieting feature in terms of the characterization of the controlling factual record and controlling case law. Apparently succumbing to an advocacy style of "my client--right or wrong," counsel's descriptions of both facts and law are very frequently presented as counsel subjectively wishes them to be rather than as they objectively exist. Throughout this matter, counsel neglected to analyze and present the established record facts (or acknowledge a lack thereof) and failed to disclose controlling law to be applied when the facts or case law are not otherwise helpful to his client. As an example, Helfrich's Motion to Reconsider failed to disclose the *Desert Palace* holding as one specifically directed to *statutorily-based, post-trial jury instructions in a Title VII mixed-motive case.* Mr. Helfrich's

claim is decidedly not such a case. No language within *Desert Palace* supports the sweeping proposition that Helfrich proffered to this Court in his Motion to Reconsider. Helfrich makes his argument without any literal support from the *Desert Palace* opinion itself, nor does he present controlling law from the Court of Appeals for the Third Circuit (although he ignores some) to support his argument for a modification of a long-standing rule of law. Moreover, the Supreme Court case that Helfrich would have this Court interpret as implicitly overruled, *McDonnell Douglas v. Green,* was definitively cited to, and thus implicitly affirmed, in *Raytheon v. Hernandez,* 540 U.S. 44, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003), a Supreme Court decision handed down approximately six months after *Desert Palace.* Furthermore, the Court of Appeals for the Third Circuit has, on at least three occasions following the *Desert Palace* decision (and prior to Helfrich's Motion to Reconsider), held that direct evidence is still required to support a plaintiff's claims in non-Title VII actions. *See Glanzman v. Metropolitan Management Corp.,* 391 F.3d 506 (3d Cir. Dec.14, 2004) and *Monaco v. American Gen. Assurance Co.,* 359 F.3d 296 (3d Cir. Feb.23, 2004)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 3

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

, *cert. denied,* --- U.S. ----, 125 S.Ct. 62, 160 L.Ed.2d 19 (2004).* * Helfrich's papers cited to neither of these controlling ADEA cases in his Memorandum in Opposition to LVH's Motion for Summary Judgment or in the Motion to Reconsider. Helfrich also makes no mention of *Raytheon* in his Motion to Reconsider or the supplemental filing. Other significant shortcomings are discussed *infra.*

* *Subsequent to Helfrich's Motion to Reconsider, the Court of Appeals for the Third Circuit confirmed that, as an evidentiary matter, if a plaintiff fails to provide direct evidence in an ADEA case, the district court must analyze such a claim consistent with the *McDonnell Douglas* test:

Kautz presents no direct evidence of age discrimination. His claim must, therefore, be analyzed under the burden shifting framework provided by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

*Kautz v. Met-Pro Corp.,* --- F.3d ----, 2005 WL 1413405 at *1 (3d Cir. June 17, 2005) (emphasis added). Significantly, no mention is made of *Desert Palace* in the *Kautz* opinion.

FN2. *Glanzman* discusses direct evidence requirements:
To be "direct" for purposes of the *Price Waterhouse* test, evidence must be sufficient to allow the jury to find that the decision makers placed a substantial negative reliance on the plaintiff's age in reaching their decision. *Fakete [v. Aetna, Inc.,* 308 F.3d 335, 308 (3d Cir.2002) ].
*Glanzman, supra,* at 512. This means that, to be entitled to a mixed-motive analysis, Helfrich needed to argue and "produce evidence of discriminatory attitudes about age that were causally related to the decision to fire [him]. *See id.* He did not. Additionally, in *Woodson v. Scott Paper Co.,* 109 F.3d 913, 930 (3d Cir.), *cert. denied,* 522 U.S. 914, 118 S.Ct. 299, 139 L.Ed.2d 230 (1997), the court discusses the difference between direct and circumstantial evidence: Direct evidence is evidence "that proves an ultimate fact in the case without any process of inference, save ... the inferences of credibility." 22 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5214, at 265 (1978). In contrast, circumstantial evidence is offered to prove an ultimate fact, but an inferential step by the factfinder is required to reach that fact.

As a matter of providing further background for a full consideration of the Motion to Reconsider, the instant matter (i)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 4

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

does not involve a Title VII case, (ii) Helfrich does not argue that he, in fact, proffered any direct evidence of discrimination in opposition to the summary judgment motion and (iii) Helfrich only argued pretext in an effort to forestall summary judgment (albeit, with a weak, undeveloped, passing reference to the existence of a mixed-motive review). Indeed, Plaintiff Helfrich previously submitted a memorandum of law in opposition to LVH's Motion for Summary Judgment that, in detail, discussed the legal standard to be applied with regard to his allegations that Defendant LVH's proffered reasons for termination Helfrich were *pretextual. See* Helfrich Memorandum in Opposition to LVH's Motion to Dismiss at 11-18 (sections entitled, "Burden Shifting Paradigm" and "Evidence of Pretext").

As discussed more fully *infra,* only one very short paragraph included in the Helfrich Memorandum in Opposition to LVH's Motion for Summary Judgment included *any* suggestion that the Court should engage in a mixed-motive analysis based on the record presented. [FN3] Nonetheless, not only did Helfrich proffer no evidence to entitle him to a mixed-motive analysis, but he erroneously cites to *Desert Palace* as the controlling legal standard. More robust research and analysis prior to briefing at the stage of summary judgment, or now, with regard to the Motion to Reconsider, likely would have disclosed *Raytheon v. Hernandez,* 540 U.S. 44, 124 S.Ct. 513, 157 L.Ed.2d

357 (2003), [FN4] a case that implicitly confirms that the Supreme Court's *Desert Palace* holding in no way modified the standard to be applied in non-Title VII cases analyzed pursuant to the *McDonnell Douglas* shifting burden of production analysis. Moreover, the Court of Appeals for the Third Circuit, in direct contradiction of Helfrich's argument with regard to *Desert Palace,* observed in an opinion filed well after *Desert Palace,* with regard to a mixed-motive, *Price Waterhouse,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), analysis:

> FN3. The Court's original Helfrich Memorandum Opinion of March 18, 2005, explained in some depth that the basis for the dismissal of all of Mr. Helfrich's claims was his failure to provide the Court with *any* convincing evidence to support his ADA, ADEA or FMLA allegations. Nor was there any evidence of retaliatory behavior on the part of LVH. Rather, the evidence, as presented to the Court, and construed in a light most favorable to Mr. Helfrich, creates a vignette of a disgruntled, insubordinate employee.

> FN4. In *Raytheon,* without mention of *Desert Palace,* the Supreme Court included a substantive discussion of the *McDonnell Douglas* analysis to be applied in an ADA disparate treatment case.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 5

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

The Supreme Court instructed the Court of Appeals for the Ninth Circuit that its underlying analysis had been flawed, vacating and remanding *Raytheon* back to the circuit court for further consideration consistent with the Supreme Court's holdings. *Raytheon, supra,* at 55.

**\*2** [The] showing that age motivated or had a determinative influence on the decision of the employer can be made either through the use of direct evidence or circumstantial evidence. If direct evidence is used, the proponent of the evidence must satisfy the test laid out in *Price Waterhouse,* in order to prove a violation of the ADEA. [FN3] *See Fakete v. Aetna,* 308 F.3d 335 (3d. Cir.2002) (applying the *Price Waterhouse* test to an ADEA case where direct evidence of discrimination was presented). If circumstantial evidence of age discrimination is used, then the proponent of the evidence must satisfy the three-step test of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

FN3. Congress overruled this test as applied in the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e-2, 2000e-5 (f). In that law Congress specified that unless otherwise provided "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any

employment practice, even though other factors also motivated the practice." *Id.* § 2000e-2. Because the Civil Rights Act of 1991 does not apply to ADEA cases and because recently in *Fakete,* we used the *Price Waterhouse* test to decide an ADEA case we continue to apply the *Price Waterhouse* test in order to resolve ADEA cases.

*Glanzman v. Metropolitan Management Corp.,* 391 F.3d 506, 512 n .3 (3d Cir. Dec. 14, 2004) (emphasis added). [FN5]

FN5. *Glanzman* includes no mention of *Desert Palace.*

Regardless of the type of evidence offered by Helfrich in support of his discrimination claim (direct, circumstantial, or evidence of pretext), or whether he attempted to proceed under a mixed-motive or single-motive theory, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 153, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see Texas Dept. Of Comm. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207. To demonstrate intent to discriminate by an employer, the plaintiff alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that "the protected trait ... actually motivated the employer's decision." *Reeves,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 6

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

530 U.S. at 141 (internal quotation marks omitted). This protected trait "must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Id.* (alterations and internal quotation marks omitted); *cf. Price Waterhouse,* 490 U.S. at 277 (O'Connor, J., concurring) (noting that "statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [do not] suffice to satisfy the plaintiff's burden" of proving discrimination).

As this Court stated in its prior Memorandum and Order, direct evidence of discrimination is required to entitle Plaintiff Helfrich to a *Price Waterhouse* mixed-motive analysis. *See Monaco v. American Gen. Assurance Co.,* 359 F.3d 296 (3d Cir. Feb.23, 2004). In *Monaco,* the Court of Appeals for the Third Circuit discussed the evidentiary and corollary burden-shifting requirements with regard to a case brought pursuant to the ADEA:

**\*3** Under [ ] the ADEA ..., a plaintiff may meet his or her burden by (1) presenting direct evidence of discrimination that meets the requirements of Justice O'Connor's concurring opinion in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 261, 109 S.Ct. 1775, 1796, 104 L.Ed.2d 268 (1989), [FN5] or (2) presenting indirect evidence of discrimination that satisfies the familiar three-step burden shifting framework identified in *McDonnell*

*Douglas. Fakete,* 308 F.3d at 337-38; [ *Bergen Commercial Bank v. Sisler,* 157 N.J. 188, 723 A.2d 944, 954 (N.J.1999) ]. Inasmuch as Monaco attempted to prove his case solely through the use of indirect evidence, our analysis will focus on the burden shifting framework of *McDonnell Douglas* ....

FN5. We have regarded Justice O'Connor's opinion as controlling, *see Fakete,* 308 F.3d at 337 n. 2, but we note that in *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 2153, 156 L.Ed.2d 84 (2003), the Court declined an opportunity to indicate which opinion in *Price Waterhouse* was controlling.

*Monaco,* 359 F.3d at 300 & f.5 (emphasis added). Therefore, for the reasons stated more fully below, the Court finds that *Desert Palace* has no effect on the analysis conducted with regard to Mr. Helfrich's claims because his claims were not brought pursuant to Title VII.

Second, Helfrich contends that this Court erred by not viewing the Unemployment Compensation Referee's decision with regard to LVH's challenge to Helfrich's entitlement to benefits, due to perceived insubordination, as creating an issue of material fact in the case. For the reasons stated below, the Court holds that, as a matter of law, the Referee's decision did not create an issue of material fact for this litigation.

Finally, Helfrich requests that the Court vacate its Order granting LVH's Motion for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 7

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

Summary Judgment based on the Supreme Court's recent *Smith v. City of Jackson,* ---U.S. ----, 125 S.Ct. 1536, 161 L.Ed.2d 410 (Mar. 30, 2005), ruling with regard to disparate impact cases brought pursuant to the ADEA. As discussed more fully below, *Smith* provides no basis for this Court to modify its prior holding. [FN6]

> FN6. As discussed more fully, *infra,* there is a difference between "disparate treatment" and "disparate impact" cases. The instant matter involves allegations of disparate treatment. *Smith* addresses the legal standard to be applied in *disparate impact* cases.

Therefore, Plaintiff's Motion to Reconsider is denied. [FN7]

> FN7. Inasmuch as counsel's *Desert Palace* argument has been addressed by him to at least four judges of the United States District Court for the Eastern District of Pennsylvania, in eight separate matters, a number of which presentations occurred in the context of motions to reconsider, *see, e.g., Helfrich v. Lehigh Valley Hospital,* 2005 WL 670299 (E.D.Pa. Mar 18, 2005) (motion for reconsideration denied), *Rizzo v. PPL Service Corp.,* 2005 WL 1397217 (E.D.Pa. Jun 10, 2005) (ADEA case) (motion for reconsideration denied), *G. Gorsky v. PPL Service Corp.,* 2005 WL 1397217 (E.D.Pa. Jun 10, 2005) (ADEA case) (motion for reconsideration denied), *K. Gorsky v. PPL Service Corp.,* 2005 WL 1397217 (E.D.Pa. Jun 10, 2005) (ADEA case) (motion for reconsideration denied), *Higgins v. Hospital Central Services, Inc.,* 2004 WL 2850079 (E.D.Pa. Dec.9, 2004) (Title VII and ADEA case), *Snik v. Verizon Wireless,* 2004 WL 1151711 (E.D.Pa. May 21, 2004) (ADEA case) (*"Snik I"* ), *Snik v. Verizon Wireless,* 2004 WL 1490354 (E.D.Pa. July 1, 2004) (motion for reconsideration denied) (*"Snik II"* ); *Lloyd v. City of Bethlehem,* 2004 WL 540452 (E.D.Pa. Mar.3, 2004) (ADEA case); and *Campetti v. Career Education Corp.,* 2003 WL 21961438 (E.D.Pa. June 25, 2003) (Title VII, ADA and ADEA case), it may well be that counsel will be tendering his *Desert Palace* argument to the Court of Appeals for the Third Circuit. If he does so, based upon the Court's review of counsel's memoranda with regard to this matter, the Court trusts that counsel will engage in diligent research in support of his client's claims. Such research should disclose the following *controlling* case law to assist in Helfrich's determination of the applicability of *Desert Palace, Inc. v. Costa,* 539

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                  Page 8

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (June 9, 2003) to the instant matter: *Raytheon v. Hernandez,* 540 U.S. 44, 124 S.Ct. 513, 157 L.Ed.2d 357 (Dec. 2, 2003) (ADA case); *Kautz v. Met-Pro Corp.,* --- F.3d ----, 2005 WL 1413405 at *1 (3d Cir. June 17, 2005) (ADEA case); *Glanzman v. Metropolitan Management Corp.,* 391 F.3d 506 (3d Cir. Dec.14, 2004) (ADEA case); and *Monaco v. American Gen. Assurance Co.,* 359 F.3d 296 (3d Cir. Feb.23, 2004) (ADEA case). That such cases may not be helpful to his client's cause is an insufficient reason for avoiding them.

II. STANDARD OF REVIEW--MOTION TO RECONSIDER

The purpose of a Motion to Reconsider is to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). The standard for a Motion to Reconsider is set out in Fed.R.Civ.P. 59(3) and our District's Local Rule 7.1. *Kostar v. Pepsi-Cola Metropolitan Bottling Company, Inc.,* 1998 WL 848116 at *2 (E.D.Pa.Dec.4, 1998); *Vaidya v. Xerox Corporation,* 1997 WL 732464 at *1 (E.D.Pa. Nov.25, 1997). A court should grant a Motion to Reconsider "only if the moving party establishes one of three grounds: (1) there is newly available evidence; (2) an intervening change in the controlling law; or (3) there is a need to correct a clear error of law or prevent manifest injustice." *Drake v. Steamfitters Local Union No. 420,* No. 97-585, 1998 WL 564486, at *3 (E.D.Pa. Sept.3, 1998), *aff'd,* 242 F.3d 370 (3d Cir.2000). Moreover, "[b]ecause federal courts have a strong interest in finality of judgments, motions for reconsideration should be granted sparingly." *Continental Casualty Co. v. Diversified Industries, Inc.,* 884 F.Supp. 937, 943 (E.D.Pa.1995); *see also, Rottmund v. Continental Assurance Co.,* 813 F.Supp. 1104, 1107 (E.D.Pa.1992). The moving party must show more than mere disappointment or pique with the Court's ruling in order for reconsideration to be granted. *Burger King Corp. v. New England Hood and Duct Cleaning Co.,* 2000 WL 133756, at *2 (E.D.Pa. Feb.4, 2000); *Glendon Energy Co. v. Borough of Glendon,* 836 F.Supp. 1109, 1122 (E.D.Pa.1993). Additionally, a motion to reconsider may not raise new arguments that could have (or should have) been made in support of or in opposition to the original motion. *See Balogun v. Alden Park Management Corp.,* 1998 WL 692956 at *1 (E.D.Pa. Oct.1, 1998); *Vaidya, supra* at *2.

*4 Helfrich also acknowledges that within the Third Circuit, a motion to reconsider, even where purportedly prompted by the court's commission of clear error, is not to be used merely as an opportunity to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 9

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

reargue issues that the court has already analyzed and determined. *Waye v. First Citizen's National Bank,* 846 F.Supp. 310, 314 (M.D.Pa.1994), *aff'd,* 31 F.3d 1175 (3d Cir.1994). "[A] Motion to Reconsider addresses only factual and legal matters that the Court may have overlooked ... It is improper on a Motion to Reconsider to 'ask the Court to rethink what [it] had already thought through--rightly or wrongly." ' *Glendon Energy,* 836 F.Supp. at 1122 (citation omitted).

III. ARGUMENT

A. The Basis for the Court's Dismissal of Helfrich's Claims.

Helfrich's causes of action were dismissed pursuant to the summary judgment standard not because Court's chose to fully analyze his claims under the theory of pretext rather than mixed-motives, [FN8] but rather because Helfrich provided absolutely no convincing evidence of discriminatory animus, discriminatory behavior or retaliation to be permitted to proceed to trial. [FN9] *See O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 311-12, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) ("[t]here must be at least a logical connection between each element of the prima facie case and the illegal discrimination for which it establishes a 'legally mandatory, rebuttable presumption." ') (citation omitted). This Court, in fact, did fully analyze Helfrich's claims pursuant to his proffered theory of

pretext and consistent with the analytical rules established in *McDonnell Douglas v. Green.* Thus, because Helfrich failed to produce any credible evidence to support his claims, the result would have been the same regardless of whether Helfrich's claims had been fully analyzed under either test (or both), respectively, for pretext ( *McDonnell Douglas* ) [FN10] or mixed-motives ( *Price Waterhouse* ). [FN11]

> FN8. *Campetti v. Career Education Corp.,* 2003 WL 21961438 at *6-7 (E.D.Pa. June 25, 2003) (emphasis added), presents a helpful discussion of the differences between pretext and mixed-motive cases:
> A pretext case is one in which the plaintiff shows that the proferred reason for the employment decision is not the real reason. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny address those instances in which the plaintiff alleges through indirect evidence, i.e., actions or statements from which unlawful discrimination may be inferred, that the defendant's basis for the employment decision "was in fact pretext." *Id.* at 804.
> ...
> A "mixed-motive" case is one in which the plaintiff shows that the adverse decision is the result of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 10

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

mixed-motives-where both legitimate reasons and illegitimate, discriminatory reasons were involved. *See Watson v. SEPTA,* 207 F.3d 207, 215 (3d Cir.2000)[, *cert. denied,* 531 U.S. 1147, 121 S.Ct. 1086, 148 L.Ed.2d 961 (2001) ]. In mixed-motive cases, a plaintiff must demonstrate that the unlawful motive was a motivating factor in the adverse employment action. *Id.* at 214. Traditionally, under *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), the employee had the obligation to produce direct evidence of discrimination, *i.e.,* more direct evidence than is required for the *McDonnell Douglas* prima facie case. *Starceski* [*v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1096 n. 4 (3d Cir.1995) ]. In *Desert Palace, Inc. v. Costa,* however, the Supreme Court recently held that "[d]irect evidence of discrimination is not required for a plaintiff to obtain a mixed-motive jury instruction under Title VII." No. 02-679, 2003 U.S. LEXIS 4422, at *4 (June 9, 2003). The Supreme Court focused on the language of the Civil Rights Act of 1991 and concluded that "[o]n its face, the statute does not mention, much less require, that a plaintiff make a heightened showing through direct evidence." *Id.* at *16. Therefore, presentation of

circumstantial evidence is sufficient to obtain a mixed-motive jury charge. *Id.* at *18 (noting that the conventional rule of civil litigation, which requires a plaintiff to prove his case by a preponderance of the evidence using either direct or circumstantial evidence, generally applies in Title VII cases).

FN9. As discussed more fully below, the Court's prior analysis is fully consistent with the law, as interpreted by the Court of Appeals for the Third Circuit, and consistent with the level and nature of the scrutiny Helfrich requested in his Memorandum in Opposition to LVH's Motion for Summary Judgment.

FN10. The Court's full *McDonnell Douglas* analysis, as applied to the instant facts, is set out in the prior Helfrich Memorandum Opinion of March 18, 2005. In summary, after Helfrich presented his prima facie case, the burden shifted to LVH to articulate a legitimate, nondiscriminatory reason for Helfrich's termination. LVH met its burden of production by presenting credible evidence that Helfrich was perceived to be insubordinate prior to his termination. Thereafter, "the *McDonnell Douglas* framework--with its presumptions

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 11

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

and burdens--disappeared, and the sole remaining issue was discrimination *vel non.*" *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. at 133-142 (2000). In other words, the burden shifted back to Helfrich to prove by a preponderance of evidence that LVH's stated reasons "were not its true reasons, but were pretext for discrimination." *Id* at 143. Furthermore, at this point, the burden to demonstrate the existence of pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *See Burdine,* 450 U.S. at 256. As a temporal matter with regard to the facts within the established record, Helfrich produced absolutely no credible evidence, circumstantial or direct, to support his claim that LVH's allegation of "insubordination" was pretext for unlawful discrimination.

FN11. As fully discussed, *infra,* however, Helfrich based his opposition to the Motion for Summary Judgment on a pretext theory, only making a half-hearted, passing reference (without any applicability to the instant matter) that this Court may consider a mixed-motive analysis in a circumstantial evidence case. *See* Helfrich's Memorandum of Law in Opposition to the Motion for Summary Judgement at 12-13. The very next section of Helfrich's opposition memorandum is entitled "EVIDENCE OF PRETEXT." (Helfrich Memorandum of Law at 13) (bold lettering and capitalization in original). There is no further mention of, reference to, or corresponding section entitled "EVIDENCE OF MIXED-MOTIVES" included in Helfrich's Memorandum in Opposition, nor was an analogous argument presented to the Court during oral argument. *See* Transcript of Proceedings, Feb. 23, 2005 (Docket No. 42). Helfrich faults the Court for failing to discuss and rule on an issue that he himself neither developed nor argued. The Court cannot comment on whether that reflects counsel's strategic choice or oversight. However, the Court is left with the impression that counsel is willing to proffer under- or undeveloped arguments, expecting the Court to undertake the effort to understand and supplement the plaintiff's arguments by searching the record and locating applicable case law like a pig searching for truffles. *See United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                          Page 12

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

To put it differently, the record permitted no inference that Helfrich was dismissed for a reason other than his perceived insubordinate behavior. Therefore, even if Helfrich is correct that the direct evidence requirement for mixed-motives case is no longer applicable to *any* employment discrimination cause of action (not just Title VII cases) at either the summary judgment or post-trial jury instruction stages (a sweeping proposition for which this Court has not found support after a careful analysis of *Desert Palace, Raytheon, Kautz, Glanzman* and *Monaco,* and their progeny) this Court had no choice but to dismiss each of Helfrich's employment discrimination and retaliation claims because Helfrich failed to establish a competent, reliable factual record to support his allegations of ADEA, ADA and FMLA violations or any related retaliatory behavior by LVH.

B. Helfrich Overstates His Case [FN12]-- *McDonnell Douglas* Has Not Been Modified by the United States Supreme Court or the Court of Appeals for the Third Circuit

> FN12. Primarily, the Court cannot overemphasize that the only support in the record with regard to Helfrich's discrimination allegations are the plaintiff's own words: (a) Helfrich's claims that he sensed he was being forced out of his job because of his age; (b) Helfrich's belief his employer may

have perceived him to be disabled; and (3) Helfrich's allegation that his dismissal was a form of retaliation for, *inter alia,* the ADA and ADEA claims and for taking FMLA leave. In fact, the only evidence of significance the Court could find in the entire record was that Helfrich's superiors (and at least one of his co-workers) had, at the time of his dismissal, tired of what they perceived as his insubordinate behavior. It was this insubordination that served as the keystone for Helfrich's dismissal.

**\*5** Helfrich argues that in Section III of his Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment he expressly requested that the Court apply a *Desert Palace* mixed-motive analysis to his proffered evidence of discrimination and the Court failed to even mention *Desert Palace* in its opinion. Helfrich is correct that *Desert Palace* is not mentioned in the summary judgment decision in the case at bar, and that the Court actually applied a pretext analysis. The Court found then, and still finds, that *Desert Palace* is distinguishable from this case, and thus inapposite to it, for two reasons: (1) *Desert Palace* only addresses Title VII mixed-motive cases, and (2) a plain reading of *Desert Palace* indicates a very narrow and focused holding, not a broad, sweeping one with instructions that its holding should be applied generally to all employment cases. Helfrich contends

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                              Page 13

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

that by not including such an analysis, the Court committed an error of law. The Court disagrees.

First, Helfrich did not expressly request a *Desert Palace* mixed-motive analysis. Rather, a plain reading of Helfrich's memorandum in opposition reveals *Desert Palace* appears as a vague afterthought. Helfrich's entire argument with regard to the applicability of a mixed-motive analysis is encapsulated in the single, short paragraph quoted immediately below:

Moreover, this Court may now consider a "mixed-motives" analysis, even in a summary judgment proceeding, in a circumstantial evidence case. A plaintiff may defeat a defendant's motion for summary judgment and establish a claim for intentional race, sex, or age discrimination or retaliation through either the "mixed-motive" or "pretext" methods of proof. *See, e.g., Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 284-85 (4th Cir.2004) (en banc); *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305 (5th Cir.2004). Under the mixed-motive method, a plaintiff avoids summary judgment by introducing sufficient direct or circumstantial evidence for a reasonable jury to conclude that an impermissible factor actually motivated an adverse employment decision. *See Hill, supra,* at 286; *see also Desert Palace, Inc. v. Costa,* 539 U.S. 90, 101, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003).

Helfrich Memorandum in Opposition to

Defendant's Motion for Summary Judgment, at 12-13 (Docket No. 29). [FN13] The quoted paragraph represents the sum and substance of Helfrich's attempt to invoke a *Desert Palace* analysis--no facts from the record, no reference to controlling law from the Supreme Court or *our* circuit court of appeals, and no further analysis.

> FN13. As discussed both *infra* and *supra,* as a matter of objective judicial interpretation and textual analysis of the *Desert Palace* and *Raytheon* opinions, this Court finds no support for Helfrich's proposition that
> the Supreme Court effectively held that in the wake of the Civil Rights Act of 1991, discrimination cases under 42 U.S.C. § 2000e-2 have all become mixed-motive cases. In other words, once a plaintiff has shown that unlawful discrimination was "a motivating factor" in an adverse employment action, the burden of proof (not merely production) falls on the defendant to show that it would have reached the same decision in the absence of discrimination." *See [Desert Palace* ], 539 U.S. at 92-94, 102, 123 S.Ct. 2148, 156 L.Ed.2d 84. *See also, Machinchick v. PB Power, Inc.,* 398 F.3d 345 (5th Cir.2005) ( *Desert Palace* analysis applies to ADEA case); *Hill, supra,* 354 F.3d at 284-85; *Rachid v. Jack in the*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                      Page 14

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

*Box, Inc.,* 376 F.3d 305 (5th Cir.2004).
Motion to Reconsider at 6 (emphasis in original).

Helfrich contends that the traditional *McDonnell Douglas* test under which pretext cases are analyzed, including the instant matter, has been modified by the holding in *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). In Title VII cases, plaintiffs may demonstrate discrimination by merely establishing a factual record that supports an allegation that such discrimination was "a motivating factor" for an employment-related action, not necessarily the only factor. *See Desert Palace,* 539 U.S. at 92-94 (*quoting* 42 U.S.C. § 2000e-2(m)) ("[e]xcept as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.") (emphasis added).

**\*6** Nevertheless, the gravamen of Helfrich's Motion to Reconsider is absolutely incorrect--the *McDonnell Douglas* test has not been modified, at least not with regard to non-Title VII causes of action. *See Raytheon v. Hernandez* (applying the traditional *McDonnell Douglas* test, without modification, with regard to a decision

rendered *less than 6 months after Desert Palace* ). [FN14] *See also, Kautz v. Met-Pro Corp.,* --- F.3d ---, 2005 WL 1413405 (3d Cir. June 17, 2005) (holding that, in an ADEA case, if the plaintiff fails to present direct evidence of discrimination, the claims must be analyzed "under the burden shifting framework provided by *McDonnell Douglas* [.] ); *Glanzman v. Metropolitan Management Corp.,* 391 F.3d 506 (3d Cir. Dec.14, 2004) (holding that, in a mixed-motive ADEA case, the *Price Waterhouse* test is used when direct evidence is proffered; otherwise, circumstantial evidence cases are analyzed pursuant to *McDonnell Douglas* ); *Monaco v. American Gen. Assurance Co.,* 359 F.3d 296 (3d Cir. Feb.23, 2004) (same).

FN14. The Supreme Court voted unanimously in both *Desert Palace* and *Raytheon.* Justices Breyer and Souter took no part in the *Raytheon* decision.

Nevertheless, Helfrich now argues that this Court, subsequent to and with reliance on *Desert Palace,* should have applied a modified *McDonnell Douglas* pretext analysis inasmuch as such a modified analysis has been applied by other courts within this district (and in other jurisdictions). As discussed more fully below, in support of Helfrich's request for the Court to adopt his modified *McDonnell Douglas* theory and reasoning, Helfrich requests that this Court rely on and adopt

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 15

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

the analysis from, *inter alia, Lloyd v. City of Bethlehem,* 2004 WL 540452 *3 (E .D.Pa. Mar 03, 2004), *Campetti v. Career Educ. Corp.,* 2003 WL 21961438 at *7 (E.D.Pa. June 25, 2003) and *Oby v. Baton Rouge Marriott,* 329 F.Supp.2d 772, 786 (M.D.La.2004) (holding that *Desert Palace* analysis applies to FMLA case). Unfortunately for Helfrich, the approach he wants this Court to adopt is fatally flawed for three reasons.

First, the analysis on which *Lloyd* relied, as articulated in *Dunbar v. Pepsi-Cola General Bottlers of Iowa,* 285 F.Supp.2d 1180 (N.D.Iowa 2003), a district court within the Eighth Circuit, was later explicitly rejected by the Court of Appeals for the Eighth Circuit. *See Griffith v. City of Des Moines,* 387 F.3d 733, 735 (8th Cir.2004). Next, as discussed *supra,* the Court of Appeals for the Third Circuit, in three opinions following *Desert Palace,* found that plaintiffs are still required to provide direct evidence of discrimination within the *McDonnell Douglas* burden shifting analysis. *See* Kautz, --- F.3d ----, 2005 WL 1413405 (3d Cir. June 17, 2005); [FN15] *Glanzman,* 391 F.3d 506; *Monaco,* 359 F.3d 296. [FN16] Third, and most importantly, the United States Supreme Court, in *Raytheon v. Hernandez,* in an opinion filed after *Desert Palace,* applied the *McDonnell Douglas* test, without modification. Therefore, this Court is constrained to follow the Supreme Court's implicit guidance that the *McDonnell Douglas* analysis shall be applied at the

stage of summary judgment in the same manner as it was applied prior to *Desert Palace.* [FN17]

> FN15. The *Kautz* decision was rendered after Helfrich filed the Motion to Reconsider. Nevertheless, its holding is consistent with *Glanzman* and *Monaco,* both of which Helfrich should have reviewed, digested and cited with regard to the Motion to Reconsider:
> This appeal ... requires us to decide whether Kautz met his burden of proving that his employer's reasons for laying him off, in a reduction in force situation, were pretextual.
> Kautz presents no direct evidence of age discrimination. His claim must, therefore, be analyzed under the burden shifting framework provided by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In *Stanziale v. Jargowsky,* 200 F.3d 101 (3d Cir.2000), we explained this burden shifting framework in the context of an Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 (2000), claim[.]
> ...
> The Cout determined that Met-Pro met its burden of going forward with the evidence by establishing legitimate nondiscriminatory reasons for his termination and that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 16

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

Kautz failed to establish that Met-Pro's reasons were pretextual. We will affirm.

...

In *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Court held that proof of pretext does not have to include evidence of discrimination, but rather "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." 530 U.S. at 147, 120 S.Ct. 2097, 147 L.Ed.2d 105.

Although *Reeves* makes clear that we may not require affirmative evidence of discrimination in addition to proof of pretext, it does not change our standard for proving pretext which "places a difficult burden on the plaintiff." *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir.1994). In order to avoid summary judgment, *Fuentes* requires a plaintiff to put forward "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence." *Id.* (internal quotation and citation omitted; emphasis in the original).

*Fuentes* further explains that "to avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons ... was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Id.* at 764 (emphasis in the original)[.] *Kautz, supra,* at *1-*3 (emphasis added). Helfrich failed to put forward such evidence to contradict LVH's proffered reasons for dismissing Helfrich that would enable a reasonable factfinder to determine such reasons were unworthy of credence.

FN16. Logically, an argument could be made that there exists an analytical contradiction with regard to the reasoning handed down by the respective courts in *Desert Palace, Raytheon, Price Waterhouse, McDonnell Douglas, Kautz, Glanzman* and *Monaco.* However, not only would such an ideological and analytical analysis involve a comprehensive review of the law and policy on which the employment laws are based, *e.g.,* Title VII, the ADEA, the ADA and the FMLA, but, such a discrepancy, if one actually exists, must necessarily be remedied, if at all, by

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                        Page 17

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

either the Court of Appeals for the Third Circuit or the Supreme Court.

FN17. Furthermore, because this Court follows precedential rulings and the analysis contained therein handed down by the Court of Appeals for the Third Circuit and the United States Supreme Court, Mr. Helfrich's citation to case law from other district or circuit courts is singularly not helpful. *See, e.g., Rachid v. Jack in the Box,* 376 F.3d 305 (5th Cir.2004); *Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 286 (4th Cir.2004) (en banc); *Boyce v. Bank of Am. Tech. and Operations, Inc.,* 2004 WL 2545015, at *4 (N.D.Tex. Nov 10, 2004); *Good v. Ask Jeeves, Inc.,* 2004 WL 2203248, *5 (N.D.Tex. Sep 30, 2004) (ADEA); *Reed v. Efficient Networks, Inc.,* 2004 WL 1717369, at *5 (N.D.Tex. Jul 30, 2004).

**\*7** Consistent with the reasoning discussed above with regard to the Supreme Court's holding in *Raytheon v. Hernandez* and our court of appeals' *Kautz, Glanzman* and *Monaco* opinions that direct evidence is still required in ADEA cases to entitle the plaintiff to a mixed-motive analysis, the holdings rendered by the circuit courts in *Rachid* and *Hill* (and the respective reasoning in support) are not persuasive. Furthermore, both the *Rachid* (opinion filed June 25, 2004) and *Hill*

(filed Jan. 5, 2004) decisions were rendered after the Supreme Court's decision in *Raytheon* (decided Dec. 2, 2003). Therefore, temporally, this Court finds that *Raytheon'* s application of an unmodified *McDonnell Douglas* analysis, as well as the holdings in *Kautz, Glanzman* and *Monaco,* both implicitly and explicitly hold that *Desert Palace* only modified the analysis to be applied in Title VII mixed-motive cases.

As mentioned above, counsel for Helfrich chose to ignore *Glanzman* and *Monaco* [FN18] in support of his argument here. Instead, Helfrich cites to non-controlling law from our sister courts. *See, e.g., Lloyd v. City of Bethlehem,* 2004 WL 540452, at *3 (E.D.Pa. Mar.3, 2004) (alleged violations of the ADEA, Pennsylvania Whistleblower Law, breach of implied contract, Section 1983 and Sections 955 and 962 of the PHRA), and *Campetti v. Career Educ. Corp.,* 2003 WL 21961438, at *7 (E.D.Pa. June 25, 2003) (alleged violations of Title VII, the ADA and the FMLA). [FN19]

> FN18. Helfrich's counsel certainly had knowledge of both *Glanzman* and *Monaco.* Helfrich's failure to cite to *Glanzman* within his prior opposition memorandum was a subject of discussion in the Court's summary judgment memorandum. Nonetheless, in the Motion to Reconsider, Helfrich again failed to cite the controlling *Glanzman*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                          Page 18

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

decision and its discussion of the *McDonnell Douglas*-based evidentiary standards to be applied in an ADEA pretext case. Furthermore, *Monaco* was referenced and discussed in *Snik v. Verizon Wireless,* 2004 WL 1490354 at *2 ("*Snik II*" ), one of Helfrich's counsel's own prior cases in which he also sought reconsideration:

... *cf. Monaco v. American Gen. Assurance Co.,* 359 F.3d 296, 300 (3d Cir.2004) (stating-without discussion of *Desert Palace*--the rule that in ADEA cases, plaintiffs proceeding under a mixed-motive theory are required to present direct evidence of discrimination). In any event, in this case we need not decide whether Plaintiff is required to present direct evidence of discrimination to proceed under a mixed-motive theory. In our earlier Memorandum and Order, we considered all the evidence that Plaintiff presented (direct, circumstantial, and evidence of a pretext), and failed to find a genuine issue of material fact to support an inference of discrimination.

FN19. Helfrich's counsel also served as plaintiff's counsel in both *Lloyd* and *Campetti,* the cases he cites. Curiously, counsel did not cite to his other recent cases before judges of this district in which counsel has had the opportunity to address and/or analyze *Desert Palace* and its progeny. *See, e.g., Higgins,* 2004 WL 2850079; *Snik II,* 2004 WL 1490354 (motion for reconsideration denied).

In *Lloyd,* a non-Title VII decision, the court understandably observed that some courts were having difficulty, post-*Desert Palace,* identifying and applying the proper standard in cases that would otherwise be decided pursuant to the traditional *McDonnell Douglas* burden shifting analysis:

As a result of the change in the law enunciated in *Desert Palace,* district courts around the country have wrestled with how to apply the decision within the existing framework of *McDonnell Douglas.*

*Lloyd,* 2004 WL 540452, at *3. Nonetheless, the court in *Lloyd* posited that there is a heightened evidentiary burden at the onset of a mixed-motive case, as compared with the *McDonnell Douglas* prima-facie analysis. *See Overall v. [University of Pennsylvania],* No. Civ.A. 02-1628, 2003 U.S. Dist. LEXIS 23892 at *17 (E.D.Pa.Dec.19, 2003); *Campetti v. Career Education Corporation,* No. Civ.A. 02-1349, 2003 U.S. Dist. LEXIS 12202 at *7 (E.D. Pa. June 25, 2003). *Lloyd,* 2004 WL 540452, at *4. Thereafter, the court discussed two alternative analyses used by district courts within the Eighth Circuit, *see Dare v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                        Page 19

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

*Wal-Mart Stores, Inc.,* 267 F.Supp.2d 987 (D.Minn.2003) and *Dunbar v. Pepsi-Cola General Bottlers of Iowa,* 285 F.Supp.2d 1180 (N.D.Iowa 2003), in applying the *McDonnell Douglas* test in a post-*Desert Palace* world. *Lloyd,* 2004 WL 540452, at *4. Nevertheless, the *Lloyd* court, while concluding that in light of the Supreme Court's unanimous *Raytheon* decision, *McDonnell Douglas* is still good law, found *Dunbar* persuasive and applied that analysis:

> *8 On December 2, 2003 the United States Supreme Court issued its unanimous decision in *Raytheon Company v. Hernandez,* 540 U.S. 44, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003). In that case the Supreme Court applied the *McDonnell Douglas* framework to a post-*Desert Palace* case, and indeed, did not mention *Desert Palace* in its Opinion. Thus, contrary to the district court's determination in *Dare,* we conclude that *McDonnell Douglas* is still valid precedent. Moreover, *we find persuasive the comprehensive analysis and reasoning of the district court in* Dunbar. *Thus, we apply the modified* McDonnell Douglas *test enunciated in* Dunbar to the facts of the within matter.

*Lloyd,* 2004 WL 540452, at *5 (emphasis added) (footnote omitted). [FN20]

> FN20. As mentioned above, Helfrich's counsel was also the plaintiff's counsel in *Lloyd.* Because of the explicit reference to *Raytheon* in the *Lloyd* decision,

there seems to be no excuse for counsel's failure to cite to *Raytheon* with regard to his submissions to this Court in the instant matter, both at the stage of summary judgment and with regard to the Motion to Reconsider. Surely, counsel would not claim that he failed to "discover" *Raytheon,* as he claimed earlier in this litigation, to have failed to discover the controlling *Glanzman* case. *See* Helfrich's Memorandum in Opposition to LVH's Reply Brief at 1-2 (Docket No. 36) and this Court's Helfrich Memorandum Opinion at 42 f.22.

In retrospect, it seems that reliance on *Dunbar* was premature. In a subsequent decision, the Court of Appeals for the Eighth Circuit explicitly rejected the district court's holding in *Dunbar:*

> Griffith urges us to conclude, as some district courts have concluded, that the Supreme Court in *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), implicitly directed us to modify our Circuit's use of the familiar framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), at the summary judgment stage of an employment discrimination lawsuit.
> ...
> [H]e relies on *Dunbar v. Pepsi-Cola General Bottlers of Iowa, Inc.,* 285

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 20

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

F.Supp.2d 1180, 1197 (N.D.Iowa 2003), where the court concluded that, at the summary judgment stage, the third step in the *McDonnell Douglas* analysis must be modified "so that it is framed in terms of whether the plaintiff can meet his or her 'ultimate burden' to prove intentional discrimination, rather than in terms of whether the plaintiff can prove 'pretext." ' We do not agree that *Desert Palace* affected controlling Eighth Circuit precedents in this fashion.
*Griffith v. City of Des Moines,* 387 F.3d 733, 735 (8th Cir.2004) (emphasis added). [FN21] In a subsequent case, the Court of Appeals for the Eighth Circuit revisited the relationship between *McDonnell Douglas, Desert Palace* and *Raytheon:*

> FN21. Because our court of appeals has not yet had the occasion to discuss the issues before this Court in detail, the Court finds additional substantive portions of *Griffith* to be instructive:
> *Desert Palace* involved the post-trial issue of when the trial court should give a "mixed-motive" jury instruction under 1991 Title VII amendments codified at 42 U.S.C. §§ 2000e-2(m) and 2000e-5(g)(2)(B). The Court's opinion did not even cite *McDonnell Douglas,* much less discuss how those statutes impact our prior summary judgment decisions. While in general the standard for granting summary

judgment "mirrors" the standard for judgment as a matter of law, *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the contexts of the two inquiries are significantly different. At the summary judgment stage, the issue is whether the plaintiff has sufficient evidence that unlawful discrimination was *a* motivating factor in the defendant's adverse employment action. If so, the presence of additional legitimate motives will not entitle the defendant to summary judgment. Therefore, evidence of additional motives, and the question whether the presence of mixed-motives defeats all or some part of plaintiff's claim, are trial issues, not summary judgment issues. Thus, *Desert Palace,* a decision in which the Supreme Court decided only a mixed-motive jury instruction issue, is an inherently unreliable basis for district courts to begin ignoring this Circuit's controlling summary judgment precedents. For concrete evidence confirming that *Desert Palace* did not forecast a sea change in the Court's thinking, we need look no further than *Raytheon Co. v. Hernandez,* 540 U.S. 44, 124 S.Ct. 513, 517-18 & n. 3, 157 L.Ed.2d 357 (2003), a post*Desert Palace* decision in which the Court approved use of the *McDonnell*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                              Page 21

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

*Douglas* analysis at the summary judgment stage.
*McDonnell Douglas* and most subsequent cases in which the Supreme Court has applied *McDonnell Douglas* came to the Court on a trial record, not a summary judgment record. Prior to *Desert Palace,* in two recent cases involving the sufficiency of the plaintiff's evidence at trial, the Court held that a finding of pretext does not *compel* judgment for the plaintiff, *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) , but conversely, that the plaintiff's prima facie case combined with sufficient evidence of pretext *may* permit the jury to find unlawful discrimination, *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097, 147 L.Ed.2d 105. *Hicks* and *Reeves* are far more pertinent to our summary judgment analysis than *Desert Palace,* particularly because the Court reiterated the principle that the *McDonnell Douglas* burden-shifting analysis is no the only way for a plaintiff to prove unlawful discrimination: "Proof that the defendant's explanation is unworthy of credence [i.e., pretextual] is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves,* 530 U.S. at

147, 120 S.Ct. 2097, 147 L.Ed.2d 105.
We have long recognized and followed this principle in applying *McDonnell Douglas* by holding that a plaintiff may survive the defendant's motion for summary judgment in one of two ways. The first is by proof of "direct evidence" of discrimination. Direct evidence in this context is not the converse of circumstantial evidence, as many seem to assume. Rather, direct evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action. *Thomas v. First Nat'l Bank of Wynne,* 111 F.3d 64, 66 (8th Cir.1997). Thus, "direct" refers to the causal strength of the proof, not whether it is "circumstantial" evidence. A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial. But if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                      Page 22

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext. *See, e.g., Harvey v. Anheuser-Busch, Inc.,* 38 F.3d 968, 971 (8th Cir.1994). This formulation is entirely consistent with *Desert Palace.* Thus, we conclude that *Desert Palace* had *no* impact on prior Eighth Circuit summary judgment decisions. [FN2]

FN2. *Desert Palace* held that, under the 1991 amendments, if the plaintiff presents sufficient evidence of intentional discrimination solely by reason of pretext or other circumstantial evidence, and if the defendant presents sufficient evidence that it would have taken the same adverse action in any event, *either party* is entitled to a mixed-motive jury instruction. In this regard, the amendments overruled Justice O'Connor's view in *Price Waterhouse* that a plaintiff must have "direct evidence" of a discriminatory motive to shift the burden of proof. 123 S.Ct. at 2155. The Court's resolution of that issue meant, "we need not address the second question on which we granted certiorari: 'What are the appropriate standards for lower courts to follow in making a direct evidence determination in

'mixed-motive' cases." ' 123 S.Ct. at 2155 n. 3. Had the Court addressed that second question, its answer *might* have affected our cases defining direct evidence for summary judgment purposes.

In the instant case, Helfrich, like Griffith, has produced no strong (direct) evidence that discrimination motivated any alleged adverse employment action against him. *See Griffith v. City of Des Moines,* 387 F.3d 733, 735-36 (8th Cir.2004) (emphasis added).

Sallis argues that he proffered enough evidence to defeat summary judgment and that the district court misapplied *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003).

...

Title VII race discrimination cases are tested on summary judgment under either *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), or in a mixed-motive case, under *Price-Waterhouse v. Hopkins,* 490 U.S. 228, 269-70, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) and *Desert Palace.* The district court struggled to harmonize *Desert Palace* with *McDonnell Douglas,* ultimately deciding that it "would reach the same conclusion under any conceivable reading of *Desert Palace.*" We hold that *Desert Palace* is inapplicable under the facts of this case. [FN4]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                          Page 23

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

**\*9** ...
Sallis produced no convincing evidence, circumstantial or direct, that race motivated UM's decisions not to promote him. We therefore proceed under *McDonnell Douglas.* [FN5]

FN4.... [A Title VII plaintiff may] prove his case 'by a preponderance of the evidence,' using 'direct or circumstantial evidence." ' *Desert Palace,* 539 U.S. at 99, 123 S.Ct. 2148, 156 L.Ed.2d 84. *See also Griffith v. City of Des Moines,* 387 F.3d 733, 735 (2004) (determining *Desert Palace* to be "an inherently unreliable basis for district courts to begin ignoring this Circuit's controlling summary judgment precedents").

FN5. We have specifically declined to "modify our Circuit's use of the familiar framework established in [*McDonnell Douglas* ], at the summary judgment stage of an employment discrimination lawsuit." *Griffith,* 387 F.3d at 735 (2004) ; *see also Raytheon Co. v. Hernandez,* 540 U.S. 44, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003) (using the *McDonnell Douglas* analysis in a post-*Desert Palace* decision).

*Sallis v. Univ. of Minnesota,* 408 F.3d 470, 2005 WL 1186504 at \*3 & fn. 4, 5 (8th Cir. May 20, 2005); *see also, Torlowei v. Target,* 401 F.3d 933, 934 (8th Cir.2005) (holding that *"Desert Palace* is applicable to post-trial jury instructions, and not to the analysis performed at summary judgment. And we concluded that any language in *Desert Palace* that may seem to point to a

change in the *McDonnell Douglas* framework refers only to the traditional understanding that direct evidence-evidence, circumstantial or otherwise, that shows a strong causal connection between discriminatory animus and the adverse employment action-is another method of defeating a defendant's summary judgment motion. *Id."* ). *See also, Overall v. University of Pennsylvania,* 2003 WL 23095953 (E.D.Pa. Dec.19, 2003), *aff'd in part and rev'd in part,* --- F.3d ----, 2005 WL 1500906 (3d Cir. June 27, 2005) (affirming, without discussion, the district court's award of summary judgment to defendant under a *Desert Palace* Title VII mixed-motive analysis because no reasonable jury could find that sex was the motivating factor in the defendant's decision not to hire plaintiff); *Snik II, supra,* (denying a *Desert Palace* -based Motion to Reconsider because the court had already considered all the evidence that the plaintiff presented--direct, circumstantial and evidence of a pretext--and, as a result, awarded the employer summary judgment after failing to find a genuine issue of material fact to support an inference of discrimination); *Walden v. Saint Gobin Corp.,* 323 F.Supp.2d 637, 644 (E.D.Pa.2004) (holding that "[a]lthough direct evidence of discrimination is no longer required to succeed on a mixed-motive theory [in a Title VII case], the plaintiff must still present sufficient evidence for a reasonable jury to conclude, by preponderance of the evidence, that race

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 24

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

... was a motivating factor for any employment practice.... Walden does not in fact have any direct evidence of discrimination, nor does he present any evidence from which a jury could reasonably discern even an inference that race was a motivating factor in his termination. Accordingly, the Court concludes that he cannot on his own words succeed on a mixed-motive theory.") (internal quotations and case citation omitted).

**\*10** Helfrich also criticizes the Court for allegedly failing to analyze his claims under both a pretext and mixed-motive analysis. In *Campetti,* one of the cases Helfrich admonishes the Court to embrace, the court highlighted the differences between mixed-motive and pretext cases:

It is generally to an employee's benefit to show evidence of discrimination under a mixed-motive theory rather than relying on the inferential model set forth in *McDonnell Douglas. Weston-Smith v. Cooley Dickinson Hosp., Inc.,* 282 F.3d 60, 64 (1st Cir.2002). "[A] plaintiff [who] is able to produce direct evidence of discrimination ... may prevail without proving all the elements of a [*McDonnell Douglas* ] prima facie case." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Though it is advantageous for a plaintiff to proceed on a mixed-motive theory, the plaintiff has a high initial hurdle to clear. To obtain the benefits under a mixed-motive theory, the

employee must "offer stronger evidence ... than that needed to establish a prima facie case under" *McDonnell Douglas. Weston-Smith,* 282 F.3d at 65 (quoting I.B. Lindemann & P. Grossman, *Employment Discrimination Law* 43 (3d ed.1996)). Therefore, in a mixed-motive case, the evidence produced by the plaintiff must be "so revealing of discriminatory animus that it is not necessary to rely on any presumption from the *prima facie* case to shift the burden of production." *Armbruster v. Unisys Corp.,* 32 F.3d 768, 778 (3d Cir.1994).

Specifically, in a mixed-motive case, a plaintiff must show that the unlawful motive was a motivating factor in the adverse employment action. *Watson,* 207 F.3d at 214. Traditionally, under *Price Waterhouse,* a plaintiff would satisfy this burden by presenting "direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Price Waterhouse,* 490 U.S. at 277 (O'Connor, J., concurring). "Direct evidence is overt or explicit evidence which directly reflects a discriminatory bias by a decision maker." *Bulluck v. Children's Hosp. of Philadelphia,* 71 F.Supp.2d 482, 485 (E.D.Pa.1999). In order for evidence to be "direct evidence," it must prove the existence of the fact in issue without inference or presumption. *Torre v. Casio, Inc.,* 42 F.3d 825, 829 (3d Cir.1994). Assuming that the employee is capable of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                Page 25

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

producing direct evidence of discriminatory animus, the burden then rests on the employer to demonstrate that it would have made the same decision in the absence of illegal bias. *Price Waterhouse,* 490 U.S. at 244-45. *Campetti, supra,* at *7 (emphasis added). Thus, with due consideration to the controlling holdings of *Kautz, Glanzman* and *Monaco, Campetti* is both persuasive and instructive with regard to the theory that plaintiffs attempting to proceed with only circumstantial evidence of pretext in a non-Title VII matter, such as the instant case, continue to be analyzed under the traditional *McDonnell Douglas* burden shifting test. *See id.* at *8. *See also, Raytheon v. Hernandez, supra.*

D. The Controlling Evidentiary Standards Applied in Mixed-Motive and Pretext Cases

**\*11** The "mixed-motive" test was originally described in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Under the current test, as modified by statute and judicial interpretation, the plaintiff has the initial burden to demonstrate that the adverse employment action was the result of mixed-motives (*i.e.* it was the "result of multiple factors, at least one of which is illegitimate" and the illegitimate factor played "a motivating part" in the adverse employment decision). *Price Waterhouse,* 490 U.S. at 244-45; *see also, Glanzman,* 391 F.3d 506. If the plaintiff satisfies this

initial burden, "the burden shifts to the employer to persuade the jury by a preponderance of the evidence that it would have reached the same decision even if the protected trait had not been considered." *Id.* In *Desert Palace,* the Supreme Court modified the *Price Waterhouse* test, with regard to the evidentiary standard to be applied, holding that, *in a Title VII discrimination case,* either direct or circumstantial evidence can be used to satisfy the plaintiff's burden with regard to engaging in a "mixed-motive" analysis and being entitled to a "mixed-motives" jury instruction. *See Desert Palace,* 539 U .S. at 100. Nonetheless, in *Glanzman,* the Court of Appeals for the Third Circuit has instructed that the trial courts *should not* apply a *Desert Palace* "mixed-motives" analysis in ADEA cases. Rather, according to *Glanzman,* in ADEA cases, the direct evidence *Price Waterhouse* test still applies:

If direct evidence is used, the proponent of the evidence must satisfy the test laid out in *Price Waterhouse,* in order to prove a violation of the ADEA.... *See Fakete v. Aetna,* 308 F.3d 335 (3d Cir.2002) (applying the *Price Waterhouse* test to an ADEA case where direct evidence of discrimination was presented). If circumstantial evidence of age discrimination is used, then the proponent of the evidence must satisfy the 3-step test of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 26

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

*Glanzman,* 391 F.3d at 512. Moreover, in a footnote, the *Glanzman* court further explained that:

Congress overruled [the *Price Waterhouse* ] test as applied in the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e-2 , 2000e-5(f). In that law, Congress specified that unless otherwise provided "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.* § 2000e-2. Because the Civil Rights Act of 1991 does not apply to ADEA cases and because recently in *Fakete,* we used the *Price Waterhouse* test to decide an ADEA case, we continue to apply the *Price Waterhouse* test in order to resolve ADEA cases.

*Glanzman,* 391 F.3d at 512 n. 3 (emphasis added). [FN22] Thus, with regard to Helfrich's ADEA claim,

> FN22. This Court (as well as opposing counsel) previously called *Glanzman* to Helfrich's attention. *See Helfrich v. Lehigh Valley Hospital,* Civil Action No. 03-5793, slip op. at 42 n. 22 (E.D.Pa. Mar. 18, 2005). Despite this admonishment, in his Motion to Reconsider, Helfrich makes no mention of *Glanzman* or its on-point and controlling holding with regard to an ADEA-based *Price Waterhouse* mixed-motive

analysis.

**\*12** if Helfrich is alleging mixed-motives by LVH, he is required to produce evidence of documents, conduct, or statements made by the LVH employees involved in the termination decision that can be viewed as directly reflecting some alleged discriminatory attitude. In such a situation, Helfrich would only need to prove that "the discriminatory motive made a difference in the decision." *Griffiths v. CIGNA Corp.,* 988 F.2d 457, 471 (3d Cir.), *cert. denied,* 510 U.S. 865, 114 S.Ct. 186, 126 L.Ed.2d 145 (1993). Helfrich Memorandum Opinion at 17-18 n. 9 (emphasis added); *see also, Glanzman, supra; Monaco, supra; Fakete,* 308 F.3d 335.

Additionally, with explicit reference to, but without discussion of, *Desert Palace,* the Court of Appeals for the Third Circuit has held that presentation of direct evidence by the plaintiff is still required in ADEA cases. *See Monaco,* 359 F.3d at 300 .

When, as here, a plaintiff alleges that he has suffered age discrimination predicated on disparate treatment, liability under the ADEA depends on whether age "actually motivated the employer's decision." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993); *see also Raytheon Co. v. Hernandez,* 540 U.S. 44, ----, 124 S.Ct. 513, 519, 157 L.Ed.2d 357 (2003).... In cases brought

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                            Page 27

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

under [ ] the ADEA ..., the plaintiff's age actually must have played a role in the employer's decisionmaking process and had a determinative influence on the outcome of that process *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000).

*Monaco, supra,* at 300 (emphasis added) (footnote omitted). In *Monaco,* the Court of Appeals for the Third Circuit also discussed the evidentiary and corollary burden-shifting requirements with regard to a case brought pursuant to the ADEA:

Under [ ] the ADEA ..., a plaintiff may meet his or her burden by (1) presenting direct evidence of discrimination that meets the requirements of Justice O'Connor's concurring opinion in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 261, 109 S.Ct. 1775, 1796, 104 L.Ed.2d 268 (1989), [FN5] or (2) presenting indirect evidence of discrimination that satisfies the familiar three-step burden shifting framework identified in *McDonnell Douglas. Fakete,* 308 F.3d at 337-38; *Sisler,* 723 A.2d at 954. Inasmuch as Monaco attempted to prove his case solely through the use of indirect evidence, our analysis will focus on the burden shifting framework of *McDonnell Douglas* ....

FN5. We have regarded Justice O'Connor's opinion as controlling, *see Fakete,* 308 F.3d at 337 n. 2, but we note that in *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 2153, 156 L.Ed.2d 84 (2003), the Court declined an

opportunity to indicate which opinion in *Price Waterhouse* was controlling. *See Monaco,* F.3d at 300 & f.5.

Here, after LVH met its burden "to articulate a legitimate non-discriminatory reason for the adverse employment action," it was Helfrich's obligation to:

**\*13** discredit the defendant's proffered reason for its action or adduce evidence that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. *See Potence v. Hazleton Area Sch. Dist.,* 357 F.3d 366, 2004 WL 188083, at *2 (3d Cir.Feb.2, 2004) (ADEA case).

In an ordinary employment termination case under the ADEA to establish a prima facie case of age discrimination at the first step of the *McDonnell Douglas* burden shifting framework a plaintiff must show that he or she: (1) was a member of the protected class, *i.e.,* was over 40, (2) was qualified for the position, (3) suffered an adverse employment decision, and (4) ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination. *Duffy v. Paper Magic Group, Inc.,* 265 F.3d 163, 167 (3d Cir.2001).

*Monaco, supra,* at 300-01. Thus, consistent with the holdings established by *Raytheon, Glanzman* and *Monaco,* Helfrich's reliance on extra-Circuit authority is misplaced. Additionally, as the Court stated in its prior Memorandum:

While reviewing their respective parties'

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 28

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

submissions and considering their collective arguments, this Court has not viewed the evidence in a piecemeal fashion, giving credence to innocent explanations for individual strands of evidence.... Helfrich has presented no evidence that he was terminated because of his age.... Furthermore, Helfrich has failed to provide even an inkling of evidence supporting his allegation that age was a motivating factor.... The law requires Helfrich to show that age was a motivating factor, and he has failed to make the showing.... Because LVH has presented credible, unimpeached documentary and testimonial evidence that it was concerned about problems with Mr. Helfrich prior to his alleged protected activity, this court finds no inference with regard to the temporal proximity of the protected activity and his termination.... Finally, throughout his submissions to this Court, and during oral argument, Helfrich attempted to rely on unsupported assertions, conclusory allegations, or mere suspicions in an attempt to keep his case alive.... Such a technique cannot succeed. Helfrich failed to make showings sufficient to establish the existence of elements essential to his case. Such failures as to essential elements render all other facts immaterial.... Therefore, viewing *all* reasonable inferences in favor of Helfrich, the non-moving party, this Court finds that there are no genuine issues of material fact and an entry summary judgment in favor of LVH is

appropriate....
Helfrich Memorandum Opinion at 47-49 (internal citations omitted). Thus, prior to the entry of summary judgment, Helfrich made none of the required evidentiary showings to support his allegations.

Such a result is apparent from the language of *Raytheon*. Highlighting the traditional standard to be applied in an ADA "regarded as" disparate treatment case, the Supreme Court noted that the Court of Appeals for the Ninth Circuit:
**\*14** proceeded under the familiar burden-shifting approach first adopted by this Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[FN3]
FN3. The Court in *McDonnell Douglas* set forth a burden-shifting scheme for discriminatory-treatment cases. Under *McDonnell Douglas,* a plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. 411 U.S., at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The Courts of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 29

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

Appeals have consistently utilized this burden-shifting approach when reviewing motions for summary judgment in disparate-treatment cases. *See, e.g., Pugh v. Attica,* 259 F.3d 619, 626 (C.A.7 2001) (applying burden-shifting approach to an ADA disparate-treatment claim).
*Raytheon, supra,* at 49-50 & fn. 3 (emphasis added). Therefore, the absence of any *Desert Palace* discussion in *Raytheon* forms the basis for only one logical conclusion, no credible argument can be made that *Desert Palace* modified the traditional *McDonnell Douglas* pretext analysis. Our prior holdings in the instant matter and the holdings in *Glanzman* and *Monaco* are wholly consistent with this analysis.

After analyzing the first two prongs of the *McDonnell Douglas* test, the *Raytheon* court also had occasion to emphasize the evidentiary showing necessary for a plaintiff to avoid summary judgment:
THE ONLY remaining question would be whether respondent could produce sufficient evidence from which a jury could conclude that "petitioner's stated reason for respondent's rejection was in fact pretext." *McDonnell Douglas, supra,* at 804, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668.
*Raytheon, supra,* at 52 (emphasis in original).

In *Raytheon,* the Supreme Court also highlighted and discussed the distinction between claims based on "disparate treatment" and those predicated upon "disparate impact."
This Court has consistently recognized a distinction between claims of discrimination based on disparate treatment and claims of discrimination based on disparate impact. The Court has said that " '[d]isparate treatment' ... is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or [other protected characteristic]." *Teamsters v. United States,* 431 U.S. 324, 335, n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). *See also Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) (discussing disparate-treatment claims in the context of the Age Discrimination in Employment Act of 1967). Liability in a disparate-treatment case "depends on whether the protected trait ... actually motivated the employer's decision." *Id.,* at 610, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338. *By contrast, disparate-impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity."* *Teamsters, supra,* at 335-336, n. 15, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396. Under a disparate-impact theory of discrimination, "a facially neutral

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                  Page 30

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

employment practice may be deemed [illegally discriminatory] without evidence of the employer's subjective intent to discriminate that is required in a 'disparate-treatment' case." *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 645-646, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), superseded by statute on other grounds, Civil Rights Act of 1991, § 105, 105 Stat. 1074- 1075, 42 U.S.C. § 2000e-2(k) (1994 ed.).

**\*15** Both disparate-treatment and disparate-impact claims are cognizable under the ADA. See 42 U.S.C. § 12112(b) (defining "discriminate" to include "utilizing standards, criteria, or methods of administration ... that have the effect of discrimination on the basis of disability" and "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability").
*Raytheon, supra,* at 52-53 (emphasis added); *see also, Smith v. City of Jackson,* --- U.S. ----, ----, 125 S.Ct. 1536, 1540, 161 L.Ed.2d 410 (2005) (holding that the ADEA authorizes recovery in "disparate impact" cases). [FN23]

> FN23. As discussed more fully *infra,* in the section discussing Helfrich's reference to *Smith v. City of Jackson* as a basis for relief here, the instant matter involves allegations of disparate treatment in violation of the ADEA, ADA, and FMLA. However, because of the

utter lack of evidence proffered by Helfrich to support his allegations, summary judgment was entered in LVH's favor. There was, in fact, no support for any allegation that a protected trait actually motivated LVH's decision to dismiss Mr. Helfrich. *See Raytheon, supra,* at 52; *Hazen, supra,* at 610.

The analysis conducted by this Court in the instant matter is consistent with the analysis in *Kautz, Glanzman* and *Monaco* and with the Supreme Court's application of the *McDonnell Douglas* test in *Raytheon.* The *Raytheon* court held that if a defendant's proffered policy or explanation for an employment decision plainly satisfies its obligation under *McDonnell Douglas* to provide a legitimate, non-discriminatory reason for its actions, the only relevant question at the summary judgment stage for the deciding court after the defendant presented a neutral explanation for its decision was whether there exists sufficient evidence from which a jury could conclude that the defendant did make its employment decision based on the plaintiff's status as disabled (or "regarded as" disabled) despite the defendant's proffered explanation. *See cf., Raytheon, supra,* at 53.

In summary, within the courts of the Third Circuit, the *Price Waterhouse* test continues to govern the mixed-motives analysis for ADEA claims. Thus, had Helfrich been entitled to a *Price*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                           Page 31

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

*Waterhouse* mixed-motive analysis, which he was not, his claims would have nevertheless been dismissed as a result of the lack of evidence in the record to support any of his claims. This Court's fealty to the Third Circuit Court of Appeals' interpretation of how and when to apply the *Price Waterhouse* test with regard to ADEA claims is consistent with all on-point controlling law rendered by that court. Therefore, with regard to the pretext analysis conducted by this Court in the instant matter, because the instant matter does not involve Title VII and a mixed-motive analysis, it is not *Desert Palace,* but *Raytheon, Kautz, Glanzman* and *Monaco,* that control.

E. The At-Will Employment Doctrine and Insubordination

As Helfrich's counsel acknowledges in his memorandum underlying the instant motion, he conceded at oral argument that, prior to Mr. Helfrich's termination, the parties were engaging in a dispute regarding the transfer of control over "Scorecard," a vital software program designed by Mr. Helfrich, but unquestionably the property of the Defendant pursuant to a patent assignment. *See* (Helfrich Dep. at 88-91); (Patent Application/Assignment) (Bates Nos. 1200, 1204). Moreover, Plaintiff Helfrich proffered no evidence of any illegal discriminatory intent that resulted in Helfrich's termination. Helfrich failed to establish a record to support, even

circumstantially, that age played a motivating factor in his termination. The sole motivating factor for Helfrich's termination, as gleaned by the Court after a comprehensive review of the record presented, was that Mr. Helfrich was an insubordinate employee. As the Court explained in its prior Memorandum and Order, Pennsylvania's at-will employment doctrine permits an employer to terminate an employee for "any reason or no reason at all," as long as that termination is lawful. The Court found no unlawful motivation or intent in the record. Rather significant evidence was produced by Defendant LVH that Helfrich was terminated pursuant to the at-will doctrine and "any reason", *i.e.,* insubordination.

**\*16** Helfrich also argues that the Court's analysis that, "there is no doubt Plaintiff was qualified to do his job ... he was continuously employed by the LVH for a considerable number of years and he received good reviews and salary increases during his entire tenure" creates a compelling argument for Helfrich, thus creating a genuine issue of material fact supported by circumstantial evidence of discrimination. *See* Motion to Reconsider at 7. The Court disagrees.

Because Helfrich failed to produce any credible *evidence* to contradict LVH's proffered reason (which was supported by significant documentary and testimonial evidence) for Helfrich's termination, insubordination, the Court is not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 32

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

compelled whatsoever, as a matter of law, to find that continuous employment with good reviews and salary increases is somehow mutually exclusive with a situation, as presented here, where a once robust employment relationship quickly devolved due to an employee's perceived insubordination. Moreover, as discussed above, absent some evidence of unlawful behavior that motivated an employer's action, Pennsylvania's at-will employment doctrine permits termination of an employee such as Helfrich, for any reason or for no reason at all.

F. The Unemployment Compensation Referee's Finding in Favor of Helfrich Did Not Create an Issue of Material Fact.

Helfrich alleges that this Court erred by failing to find that the March 25, 2002 decision of Pennsylvania Unemployment Compensation Referee James A. Norris (hereafter, the "Referee"), established a genuine issue of material fact that should have precluded the entry of summary judgment on behalf of Defendant LVH. Specifically, Helfrich contends that the Referee's decision should have been considered by this Court as credible evidence in the record to cast doubt on the credibility of the Defendant's claim that the Plaintiff was insubordinate. The Court finds no such error.

Reviewing all of the facts presented to the Court from the record, including the Referee's decision, and with due

consideration to the fact that Plaintiff Helfrich provided no evidence of discriminatory animus, while Defendant LVH provided ample evidence of insubordinate behavior by Helfrich, on the record presented, the only permissible outcome was the grant of summary judgment in favor of Defendant LVH.

There is no dispute that LVH informed Referee Norris that Helfrich was terminated for what LVH believed to be insubordinate behavior. Despite LVH's allegation challenging Helfrich's right to unemployment benefits because of the nature of his termination, factual finding number 25 of the decision to grant Helfrich benefits stated:

[t]he passwords on [S]corecard which the claimant did not disclose to the director were passwords given to him from a vice-president who was considered the owner and fiduciary of that information. *The claimant believed that only the vice-president was authorized to disclose these passwords.* **\*17** ...

Because the claimant explained reasonably his course of conduct, the Referee concludes that the claimant's conduct does not rise to the level of willful misconduct.

Pennsylvania Unemployment Board of Review Referee's Decision (Motion for Summary Judgment, Def. Ex. U) (emphasis added). What Helfrich subjectively believed is of no moment. [FN24] These issues were discussed and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                            Page 33

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

disposed of in the Court's previous Memorandum and Order. First, it is the employer's (i.e., LVH's) perception that governs, not that of a UC Referee. *See Simpson v. Kay Jewelers,* 142 F.3d 639, 647 (3d Cir.1998) (stating that any discrimination case "focuses on the particular criteria or qualifications identified by the employer as the reasons for the adverse action") (emphasis added); *Billet v. CIGNA Corp.,* 940 F.2d 812, 825 (3d Cir.1991) ("what matter is the perception of the decision maker"), *overruled, in part, on other grounds, St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). This is controlling law, and counsel for Helfrich's failure to acknowledge such ruling with regard to the particular facts of the instant matter is troubling. Thus, some might argue that Helfrich's Motion to Reconsider, on this issue, borders on frivolity.

> FN24. It is possible that Helfrich does not understand or appreciate the distinct and divergent roles of the Referee and this Court. The Referee determines as a matter of law and equity, based on the record before him, whether the applicant is entitled to unemployment compensation benefits. Here, the Court's role was to determine whether a genuine issue of material fact existed as to each of Mr. Helfrich's allegations against LVH: age discrimination, disability

discrimination, violation of the Family Medical and Leave Act of 1993 and retaliation. Plaintiff Helfrich produced no evidence to create a genuine issue of material fact with regard to any of his allegations and, therefore, his claims were properly dismissed pursuant to the summary judgment standard. The Referee's findings do not create a genuine issue of material fact because, as discussed *infra,* and within the Court's prior Memorandum, the controlling issue is whether the employer's proffered reason, even if it is subjective, is lawful and credible. On all the facts before this Court, including the Referee's determination, and viewing all the facts in a light most favorable to Helfrich, the dispositive nature of LVH's belief that Helfrich may have been acting in an insubordinate manner is not affected by the Referee's findings. *See Simpson,* 142 F.3d at 647 (stating that any discrimination case "focuses on the particular criteria or qualifications identified by the employer as the reasons for the adverse action") (emphasis added); *Billet,* 940 F.2d at 825 ("what matter is the perception of the decision maker").

Second, the record supports LVH's argument that it terminated Helfrich's employment on insubordination grounds,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 34

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

only one of which involved Helfrich's failure to provide Ms. Halkins with the password needed to operate, maintain and update the Scorecard program during Helfrich's one week of PTO leave. Helfrich Memorandum Opinion at 46. Third, the Referee's determination that Helfrich was not ineligible for UC benefits on grounds of *willful misconduct* does not mean that a genuine issue of material fact exists whether LVH perceived Helfrich to be *insubordinate.* The Referee's determination that Helfrich's conduct did not amount to willful misconduct has no bearing upon whether a genuine issue of material fact exists that LVH's perception of Helfrich's insubordination constituted a pretextual ground for Helfrich's termination.

The inquiry into willful misconduct is not whether the employer had the right to discharge the employee for the challenged conduct, but rather, whether the Commonwealth is justified in reinforcing that decision by denying UC benefits under the Unemployment Compensation Act. *See Galbraith v. Philips Information Systems, Inc.,* 1986 WL 6536 at *11 (E.D.Pa. June 10, 1986) ("Pennsylvania courts recognize that the existence of willful misconduct is a different legal issue than the propriety of the employer's decision to discharge"), *aff'd,* 813 F.2d 397 (3d Cir.1987); *Frumento v. Unemployment Compensation Board of Review,* 466 Pa. 81, 351 A.2d 631, 634 (Pa.1976) (the inquiry into willful misconduct is not whether the employer had the right to discharge for the

questioned conduct of the employee, but whether the Commonwealth is justified in reinforcing that decision by denying benefits under the UC Act); *see also, Travor v. Unemployment Compensation Board of Review,* 68 Pa.Cmwlth. 471, 449 A.2d 814, 815 (Pa.Cmwlth.1982) (absenteeism may justify the discharge of an employee but such behavior is not willful misconduct rendering the employee ineligible for unemployment compensation).

**\*18** Moreover, the Referee acknowledged the limited purpose of his ruling when he wrote that

[b]ecause the claimant explained reasonably his course of conduct, the Referee concludes that the claimant's conduct does not rise to the level of willful misconduct. Although the Referee does not question the employer's right to discharge claimant, he concludes that the claimant is not ineligible for benefits under the provisions of Section 402(e) of the [UC] Law.

(Defendant LVH's Summary Judgment Appendix, Vol. II, Ex. "U" at 3). Furthermore, even though the Referee determined that Helfrich "explained reasonably his course of conduct," this finding does not, on this record, establish pretext. As stated above, and in the Court's previous Memorandum, it is the employer's belief that governs. *Simpson,* 142 F.3d at 647 (stating that in any discrimination case "the focus is on the particular criteria or qualifications identified by the employer as

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                          Page 35

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

the reasons for the adverse action")
(emphasis added); *Billet,* 940 F.2d at 825
("what matters is the perception of the
decision maker"). Given the radically
different issues before Referee Norris and
this Court, Helfrich's proffering of a
"reasonable explanation" for his course of
conduct to the Referee fails as a matter of
law, on this record, to thwart summary
judgment. *See Gallo v. John Powell
Chevrolet, Inc.,* 765 F.Supp. 198, 208-09
(M.D.Pa.1991) (UC willful misconduct
issues and PHRA discrimination issues are
different).

Finally, Helfrich concedes that "it is well
settled that the findings of an
unemployment compensation referee do
not have a preclusive effect in a federal
employment discrimination case." Helfrich
Motion to Reconsider at 8; *see also, Torres
v. EAFCO, Inc.,* 2001 WL 41135 at *3
(E.D.Pa. Jan 17, 2001) (citing *Rue v.
K-Mart Corp.,* 552 Pa. 13, 713 A.2d 82, 86
(Pa.1998) (holding that the "substantial
procedural and economic disparities
between unemployment compensation
proceedings and later civil proceedings
negate the preclusive effect of a Referee's
factual findings")); *see also, e.g., Mendoza
v. SSC & B Lintas, New York,* 799 F.Supp.
1502, 1508 n. 2 (S.D.N.Y.1992) (citing
*University of Tennessee v. Elliott,* 478 U.S.
788, 796, 106 S.Ct. 3220, 92 L.Ed.2d 635
(1986)) ("[u]nreviewed state administrative
proceedings do not have preclusive effect
with respect to claims brought under Title
VII").

In *Rue,* the Pennsylvania Supreme Court
provided a comprehensive analysis with
regard to whether collateral estoppel (or
issue preclusion) applies in a subsequent
proceeding after an administrative
unemployment compensation
determination:

[P]roceedings before a Referee clearly do
not allow parties to litigate issues in the
manner available in a court of record. For
example, the Rules of Evidence do not
apply in Referees' hearings, and there is
no procedure for prehearing discovery.
*See* Section 505 of the Unemployment
Compensation Law, *as amended,* 43 P.S.
§ 825 ("[T]he conduct of hearings and
appeals ... shall be in accordance with
rules of procedure prescribed by the
board whether or not such rules conform
to common law or statutory rules of
evidence and other technical rules of
procedure....").

*19 Moreover, there are two significant
factors that distinguish unemployment
compensation proceedings from court
proceedings. First, the unemployment
compensation system is specifically
designed to adjudicate matters quickly,
because one of its primary goals is to
"get[ ] money into the pocket of the
unemployed worker at the earliest point
that is administratively feasible."
*California Department of Human
Resources v. Java,* 402 U.S. 121, 136, 91
S.Ct. 1347, 1356, 28 L.Ed.2d 666 (1971).
*See also McNeill v. Unemployment
Compensation Board of Review,* 510 Pa.
574, 579, 511 A.2d 167, 169 (1986);

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 36

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

*Swineford v. Snyder County,* 15 F.3d 1258, 1268-69 (3d Cir.1994). Thus, proceedings before a Referee are, by design, brief and informal in nature. *See, e.g.,* 34 Pa.Code §§ 101.51 (relating to *ex parte* hearings); 101.121-101.126 (relating to telephone hearings).
...
Second, the amount of money in controversy in most unemployment compensation proceedings is, from the employer's perspective, quite minimal. The most the employer has at stake is a small increase in the amount of future contributions to the Unemployment Compensation Fund. In light of such minimal risk, the employer often has little incentive to litigate vigorously, or even to retain counsel and/or attend a hearing. This is in stark contrast to a subsequent civil action, which, as this case exemplifies, may subject the employer to liability for amounts tens of thousands of times greater than those at stake in the proceedings before the Referee.
The substantial procedural and economic disparities between unemployment compensation proceedings and later civil proceedings negate the preclusive effect of a Referee's factual findings. Pursuant to Restatement (Second) of Judgments, Section 28, issue preclusion is not appropriate where:
A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two [proceedings] or ...

[T]he party sought to be precluded ... did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.
The comments to Section 28 suggest that collateral estoppel should not apply where, "the procedures available in the first [proceeding] may have been tailored to the prompt, inexpensive determination of small claims and thus may be wholly inappropriate to the determination of the same issues when presented in the context of a much larger claim," nor where, "the amount in controversy in the first action may have been so small in relation to the amount in controversy in the second that preclusion would plainly be unfair." Restatement (Second) of Judgments, Section 28, Comments (d) and (j). *See also Verbilla v. Workers' Compensation Appeal Board,* 668 A.2d 601, 605 (Pa.Cmwlth.1995) (discussing Section 28, Comment (d)).
*Rue,* 713 A.2d at 85-86 (footnote omitted). *See also, Jones v. United Parcel Service,* 214 F.3d 402 (3d Cir.2000); *Dici v. Comm. of Pennsylvania,* 91 F.3d 542 (3d Cir.1996).

**\*20** The circumstances described in *Rue, supra* and Section 28 of the Restatement are present here. As a result of the apparent informal nature of the proceedings before Referee Norris, it cannot be said that LVH had a full and fair opportunity to fully litigate the issue of whether Helfrich was, in fact, insubordinate or engaged in willful misconduct. *See Rue, supra,* at 86- 87.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 37

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

Accordingly, this Court's prior holding correctly held that the Referee's factual finding that Helfrich did not engage in willful misconduct does not have *a* preclusive effect on this Court's determination of whether LVH's allegation of insubordinate behavior was merely pretext for an unlawful termination or that the Referree's decision created a genuine issue of material fact. *See id.*

Nevertheless, Helfrich argues, decisions from such administrative proceedings have been found to be admissible in federal court. *See, e.g., Fitch v. R.J. Reynolds Tobacco Co.,* 675 F.Supp. 133, 138 (S.D.N.Y.1987) (unemployment board's administrative law judge's findings held to be admissible and would be "given weight in accordance with the nature of the administrative proceeding"); *Altman v. Port Authority of New York and New Jersey,* 879 F.Supp. 345, 349 (S.D.N.Y.1995) (jury in an ADEA case had properly considered a New Jersey Department of Labor decision that, *inter alia,* the plaintiff had been harassed by his supervisors); *Stokes v. General Mills, Inc.,* 754 F.Supp. 312, 316 (W.D.N.Y.1991) (unemployment compensation referee's findings are admissible in evidence). Decisions by state unemployment compensation officials may have probative value. *See e.g., Barfield v. Orange County,* 911 F.2d 644 (11th Cir.1990) (citation omitted), *cert. denied,* 500 U.S. 954, 111 S.Ct. 2263, 114 L.Ed.2d 715 (1991); *Baldwin v. Rice,* 144 F.R.D. 102

(E.D.Cal.1992). Nonetheless, in the instant matter, the admissibility of the Referee's decision is not at issue. Rather, the question is whether such a decision created a genuine issue of material fact. For the reasons explained above, discussing the divergent factual, legal and policy considerations addressed by the Referee and this Court, the Court finds no error of law in its determination that the Referee's decision did not create a genuine issue of material fact.

G. The Patent Assignment

LVH does not dispute that the Referee's decision may be considered as a public record pursuant to F.R.E. 803(8). Nevertheless, in support of Helfrich's argument that the Court should have assigned more weight to the Referee's findings with regard to the patent assignment and Helfrich's alleged insubordination, he notes that in *Stewart v. Rutgers University,* 120 F.3d 426, 433-34 (3rd Cir.1997), our circuit court reversed summary judgment that had been granted in favor of Rutgers University (the "University") after acknowledging that evidence existed within the record, as did a genuine factual dispute, with regard to whether a prior decision by the University's grievance committee had been arbitrary and capricious. Here, with regard to the Referee's decision, Helfrich attempts to analogize the Referee's conclusion with the grievance committee's report in *Stewart.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 38

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

**\*21** In *Stewart,* the Court of Appeals for the Third Circuit reversed a grant of summary judgment for the University, explaining that the district court "failed to consider the grievance committee's conclusion that the denial of tenure was arbitrary and capricious and that such evidence was probative of a racial animus." *Id; see also, Equal Employment Opportunity Com'n. v. Muhlenberg College,* 2005 WL 1154075 at \*5 (3rd Cir. May 17, 2005) (not precedential) (citing *Stewart, supra,* at 434 n. 5). However, having reviewed *Stewart* carefully, it is distinguishable on its facts. Unlike *Stewart,* where the grievance committee observed that some of the University's conduct was not consistent with its affirmative action initiatives, the facts and applicable law in the instant case are fundamentally different. Here, the record conclusively establishes that, as a matter of law, notwithstanding the Referee's commentary, that a valid patent assignment existed as between Helfrich and LVH. In *Blum v. C.I.R.,* 183 F.2d 281, 287 (3rd Cir.1950), the court held:

A patent is property, title to which passes from the inventor only by assignment, and an agreement to assign will be specifically enforced; as between employer and employee rights are determined upon the contract of employment; absent a contrary understanding the mere existence of an employer-employee relationship does not entitle the employer to ownership of an invention of the employee even though the employee uses the time and facilities of the employer; if the employee is hired to invent or is assigned the duty of devoting his efforts to a particular problem, the resulting invention belongs to the employer and the inventor is bound to assign to his employer any patent obtained.

*See also, e.g., United States v. Dubilier Condenser Corp.,* 289 U.S. 178, 189, 53 S.Ct. 554, 77 L.Ed. 1114 (1933), *amended,* 289 U.S. 706, 53 S.Ct. 687, 77 L.Ed. 1462 (1933); *Standard Parts Co. v. Peck,* 264 U.S. 52, 44 S.Ct. 239, 68 L.Ed. 560 (1924) ; *Houghton v. United States,* 23 F.2d 386 (4th Cir.), *cert. denied,* 277 U.S. 592, 48 S.Ct. 528, 72 L.Ed. 1004 (1928). "An agreement to assign a patent or an interest therein is an executory contract which may be valid and enforceable." *University Patents, Inc. v. Kligman,* 762 F.Supp. 1212, 1219 (E.D.Pa.1991) (citing *Gas Tool Patent Corp. v. Mould,* 133 F.2d 815 (7th Cir.1943)); *Thomas v. Thomas Flexible Coupling Co.,* 353 Pa. 591, 46 A.2d 212 (Pa.1946). Furthermore, LVH, as an equitable assignee could have sued Helfrich in equity for specific performance. *See University Patents, supra,* (citing *Blum,* 183 F.2d at 281); *see also, Mississippi Glass Co. v. Franzen,* 143 F. 501, 506 (3d Cir.1906). Helfrich did not present record facts or compelling law to merit denial of summary judgment on this issue.

H. *Smith v. City of Jackson*--disparate impact vs. disparate treatment

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                            Page 39

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

Helfrich, in his Supplemental Memorandum, also attempts to rely upon the Supreme Court's recent ADEA disparate impact decision, *Smith v. City of Jackson,* --- U.S. ----, 125 S.Ct. 1536, 161 L.Ed.2d 410 (Mar. 30, 2005), in support of the Motion to Reconsider. Helfrich asserts that *Smith,* a disparate *impact* decision, is somehow "pertinent" to this disparate *treatment* case because, according to Helfrich's reading of *Smith,*

> **\*22** [i]t is clear ... that the Supreme Court has now removed the need, in any ADEA case, for a plaintiff to prove discriminatory intent.

Helfrich Supplemental Memorandum of Law at 3 (emphasis added). Helfrich's misreading of *Smith,* however, reflects a confusion of the concepts of disparate treatment and disparate impact. *Compare* 29 U.S.C. 623(a)(1) ( "disparate treatment") with 29 U.S.C. § 623(a)(2) ("disparate impact"). *See also, Raytheon,* 540 U.S. at 52-53 (discussing the difference between disparate treatment and disparate impact).

In *Smith,* the Supreme Court held:

> it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is 'responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.'

*Smith,* 125 S.Ct. at 1545 (*quoting Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 656, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989)) (emphasis added); *see also, Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 994, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). In *Smith,* the Supreme Court found that a pay plan that was "relatively less generous to older workers than to younger workers" did not disparately impact the older workers because "the plan was based on reasonable factors other than age." *Id.* The test established by the Supreme Court in *Smith* is not whether "there may have been other reasonable ways" to accomplish a goal, but whether the method used was reasonable. *See id.* at 1546.

"Disparate treatment," as is alleged in this case, exists whenever an employer treats some people less favorably then others because of their age. In disparate treatment cases, "liability depends on whether the protected trait actually motivated the employer's decision." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993); *see also, Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). As discussed immediately below, nothing in *Smith* altered the Supreme Court's prior holding on this issue. Thus, in the instant matter, because this is a disparate *treatment* case, proof of *discriminatory motive* is therefore still necessary. The absence of proof of any discriminatory motive or animus with regard to each of Helfrich's claims was the necessary focal point for the Court's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 40

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

decision dismissing Helfrich's disparate treatment case against LVH in its entirety.

"Disparate impact," in contrast, involves employment practices that are facially neutral with regard to their treatment of different groups, but that in fact manifest more harshly on one group than another and cannot be justified by business necessity. *See Raytheon,* 540 U.S. at 52-53; *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 415 n. 15 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977) (discussion of the difference between theories of "disparate treatment" and "disparate impact."). Thus, as a result of *Smith,* proof of discriminatory motive is no longer required in an ADEA case predicated upon disparate impact theory.

**\*23** Therefore, *Smith* did not relieve ADEA plaintiffs, such as Helfrich, from having to prove discriminatory motivation in disparate *treatment* cases. *Smith* has no applicability to Helfrich's "disparate treatment" age discrimination case. Therefore, this Court finds no support for Helfrich's proposition that *Smith* overruled *Reeves* or *Raytheon.*

For all of the above reasons, this Court denies Helfrich's Motion to Reconsider.

IV. CONCLUSION

The Motion to Reconsider is denied in its entirety. The Court finds no manifest error of law, fact or newly discovered evidence.

*See Harsco,* 779 F.2d at 909, *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). After a full and complete analysis of Helfrich's arguments in his Motion to Reconsider and the Supplemental Memorandum, the Court also finds that counsel for Helfrich has disregarded important policy concerns that requests for reconsideration should be requested and granted only sparingly. Moreover, Helfrich disregards the general proposition that a motion to reconsider may not raise new arguments that could have (or should have) been made in support of the original motion or opposition thereof. *See Balogun,* 1998 WL 692956 at \* 1. The request for a mixed-motive analysis is the prime example here. With regard to the Court's full discussion and analysis above, the Court finds that Helfrich acted improperly in asking the Court "to rethink what [it] had already thought through--rightly or wrongly." *See Glendon Energy,* 836 F.Supp. 1109, 1122 (citation omitted).

No credible evidence (direct, circumstantial or that of pretext) has been presented to this Court to support Helfrich's claims that he was the victim of intentional discrimination. *See Reeves,* 530 U.S. at 153 (2000); *see also, Burdine,* 450 U.S. at 256. Here, the discussion with regard to the evidentiary standards to be applied based on whether Helfrich produced direct or circumstantial evidence of discrimination is of no moment--Helfrich presented no credible

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                            Page 41

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**(Cite as: 2005 WL 1715689 (E.D.Pa.))**

evidence to establish a causal link between his termination and any discriminatory animus or motive. On the record presented, no reasonable jury could find that age, disability or retaliation were motivating factors is LVH's decision to terminate Helfrich. Thus, none of Helfrich's claims are viable under either a mixed-motive or pretext theory.

### ORDER

AND NOW, this 21st day of July, 2005, upon consideration of the Motion For Summary Judgment and Brief in Support filed by Defendant Lehigh Valley Hospital ("LVH") (Docket No. 26), the Memorandum in Opposition to the Motion for Summary Judgment filed by Plaintiff Helfrich (Docket No. 29), the Reply Brief filed by LVH (Docket No. 32), the Memorandum of Law in Opposition to LVH's Reply Brief (Docket No. 36), and following oral argument held before this Court on February 23, 2005, and upon further consideration of the Court's Memorandum and Order, dated March 18, 2005, granting LVH's Motion for Summary Judgment (Docket No. 43), Helfrich's Motion to Reconsider Summary Judgment (the "Motion to Reconsider") (Docket No. 44), Helfrich's Supplemental Memorandum of Law to Cite New Authority (Docket No. 45), and LVH's Memorandum in Opposition to the Motion to Reconsider (Docket No. 47), for the reasons more fully stated in the accompanying Memorandum, it is hereby ORDERED that the Motion to Reconsider is DENIED.

Slip Copy, 2005 WL 1715689 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2:03cv05793 (Docket) (Oct. 20, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Date of Printing: AUG 23,2005

### KEYCITE

**H Helfrich v. Lehigh Valley Hosp., 2005 WL 1715689 (E.D.Pa., Jul 21, 2005) (NO. CIV.A. 03-CV-05793)**

© Copyright 2005 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, A 058 914 668, or their Licensors. All rights reserved.