## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TAMMY KITZMILLER; BRYAN AND
CHRISTY REHM; DEBORAH
FENIMORE AND JOEL LIEB; STEVEN
STOUGH; BETH EVELAND; CYNTHIA
SNEATH; JULIE SMITH; AND ARALENE
("BARRIE") D. AND FREDERICK B.
CALLAHAN,

           Plaintiffs,

           vs.

DOVER AREA SCHOOL DISTRICT;
DOVER AREA SCHOOL DISTRICT
BOARD OF DIRECTORS,

           Defendants.

Civil Action No. 04-CV-2688

Hon. John E. Jones III

**Plaintiffs' Pretrial Memorandum**

## PLAINTIFFS' PRETRIAL MEMORANDUM

**Date conference was held by counsel:** August 12, 2005

A.    **Brief statement as to federal court jurisdiction.**

The Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and
1343 over plaintiffs' causes of action arising under the First and Fourteenth
Amendments to the Constitution of the United States, 42 U.S.C. § 1983, and the
Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  The Court has
supplemental jurisdiction over plaintiffs' cause of action arising under the
Constitution of the Commonwealth of Pennsylvania pursuant to 28 U.S.C. § 1367.
This is admitted by defendants.  *See* Answer ¶ 1.

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)
because one or more defendants resides in this District, all defendants reside in the
Commonwealth of Pennsylvania and the events or omissions giving rise to the
claims at issue occurred in this District.  This is admitted by defendants.  *See*
Answer ¶ 2.

B.    **A summary statement of facts and contentions as to liability.**

On October 18, 2004, the Dover school board voted to change its
ninth-grade biology curriculum to include an introduction to the classroom unit on
the scientific theory of evolution.  The introduction consists of a disclaimer
denigrating the scientific theory of evolution and presenting "intelligent design" as
an alternative to that scientific theory.  The disclaimer instructs students that
evolution "is a theory, * * * not a fact"; that there are "Gaps in the Theory * * * for

-2-

which there is no evidence"; and that "Intelligent Design" is an "explanation of the origin of life that differs from" evolution. It then invites students to consult the book *Of Pandas and People* to "gain[] an understanding of what Intelligent Design actually involves." Finally, it encourages students to "keep an open mind," while "leav[ing] the discussion of Origins of Life to individual students and their families." The disclaimer has twice been read to students in 9[th] grade biology class at Dover High School.  To explain the curriculum change, the school district has sent district residents a newsletter stating that "intelligent design is a scientific theory," and that, "on a molecular level, scientists have discovered a purposeful arrangement of parts which cannot be explained by Darwin's theory."

The board first began considering the roles that creationism and evolution would play in the Dover-high-school biology curriculum when, in late 2002 or early 2003, the district's science teachers requested a new biology textbook for their classes.  During this time period, the Assistant Superintendent told the high school science department chair that a board member wanted half the evolution unit devoted instead to teaching creationism.  By June 2004, Bill Buckingham, the board's curriculum-committee chairperson, was publicly criticizing the textbook that the science teachers had selected – Miller and Levine's *Biology* – because it was "laced with Darwinism."  Responding to concerns that it might not be proper to favor Christianity over other religions, he declared that

PHLEGAL: #1783986 v2 (128J602!.DOC)

"[t]his country wasn't founded on Muslim beliefs or evolution" but instead "was founded on Christianity, and our students should be taught as such."  Buckingham announced that the curriculum committee would look for a textbook presenting creationism as well as evolution.

At the next board meeting, Buckingham denied that the Constitution calls for separation of church and state; he lamented that public-school students no longer prayed and read the Bible in class as they had in his day; and he criticized "liberals in 'black robes' [for] taking away the rights of Christians."  Other board members made equally clear their views that they saw no problem with teaching only a "Christian" version of creation.  For example, in late June, board member Heather Geesey wrote a letter to the *York Daily Record* to defend the board's position, underscoring both that the board did in fact intend to teach "creationism" and that it shared Buckingham's scorn for religious views other than Christian fundamentalism.

At about the same time, Assistant Superintendent Baksa followed up on the curriculum committee's pledge to find a biology textbook teaching creationism: he surveyed parochial schools (but not other public schools) in the region to determine which biology texts they used, and he also gathered information from the Bob Jones University publication *Biology for Christians*. Buckingham, meanwhile, did not consult with scientists or science teachers, but

-4-

instead sought legal advice from the Discovery Institute and the Thomas More Law Center. Buckingham also showed the high-school science teachers a Discovery Institute video purporting to demonstrate holes in the theory of evolution.

In late July 2004, Buckingham proposed that the board purchase the creationist book *Pandas* as a supplement to the Miller-Levine text. While the board did not end up buying the books, Buckingham solicited contributions through his church, and board member Alan Bonsell's father also gave money, to purchase 60 copies of *Of Pandas and People* for 'anonymous' donation to the district. The district accepted that donation, and the books arrived at the high school in November.

Meanwhile, the board adopted the curriculum change on October 18. Its resolution provided that students would be "made aware of gaps/problems" with respect to the theory of evolution and would be informed about intelligent design. The board passed the resolution over the Dover science teachers' objections.

The Dover policy, including the promotion of intelligent design as a scientific alternative to evolution, is the latest version of the religious, creationist challenge to evolution described in prior court decisions, such as *Epperson v. Arkansas*, 393 U.S. 97 (1968), *McLean v. Arkansas Board of Education*, 529 F. Supp. 1255 (E.D. Ark. 1982), and *Edwards v. Aguillard*, 482 U.S. 578 (1987).

The creationist, religious nature of intelligent design is demonstrated both by the fact that the author of *Of Pandas and People*, Dean Kenyon, was advocating "creation-science" as an expert witness in the *Edwards* case at the same time he was drafting *Of Pandas and People*, and by the evidence that *Pandas* was developed by the Foundation for Thought and Ethics as a creationist book, for religious and cultural reasons. It is also reflected by the work of the Discovery Institute and its fellows, which have committed to developing theistic, Christian science.

Plaintiff's experts will demonstrate that intelligent design cannot claim scientific acceptance or validity. Its purported scientific propositions have not been tested or subjected to peer review, and in any event, make only negative arguments against evolution. Intelligent design's invocation of supernatural activity renders it an inherently religious, non-scientific concept.

For all these reasons, the Dover policy constitutes an unconstitutional establishment of religion violating the First and Fourteenth Amendments of the United States Constitution and Article I, Section 3 of the Pennsylvania Constitution.[1]

---

[1] Plaintiffs will not base their liability argument on Article III of the Pennsylvania Constitution.

**C.      A comprehensive statement of undisputed facts as agreed to by counsel at the conference of attorneys required by Local Rule 16.3.**

Plaintiffs have proposed stipulations of fact to defendants, attached as Exhibit A.  Defendants submitted responses to Plaintiffs' proposed stipulations, and their own set of proposed stipulations on the afternoon that this pre-trial memorandum had to be filed.  Therefore, plaintiffs have not had a chance to consider or discuss defendants' submissions with defendants' counsel prior to filing.

**D.      A brief description of damage.**

Plaintiffs claim nominal damages against the defendants for violating the plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution and Art. I, Sec. 3 of the Constitution of the Commonwealth of Pennsylvania.

PHLEGAL: #1783986 v2 (128J602!.DOC)

E.    **Names and addresses of witnesses, along with the specialties and qualifications of experts to be called.[2]**

| PLAINTIFFS[3] | CONTACT INFORMATION | |
|---|---|---|
| Beth A. Eveland | May be contacted through counsel:<br>Eric Rothschild, Esquire<br>Pepper Hamilton LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>(215) 981-4000 | |
| Aralene D. Callahan ("Barrie") | May be contacted through counsel:<br>Eric Rothschild, Esquire<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>(215)981-4000 | |
| Frederick B. Callahan | May be contacted through counsel:<br>Eric Rothschild, Esquire<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>(215)981-4000 | |
| Deborah F. Fenimore | May be contacted through counsel:<br>Eric Rothschild, Esquire<br>Pepper Hamilton LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>(215)981-4000 | |
| Tammy J. Kitzmiller | May be contacted through counsel:<br>Eric Rothschild, Esquire<br>Pepper Hamilton LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>(215)981-4000 | |

---

[2] The specialties and qualifications of experts are summarized in Section F.

[3] Plaintiffs have proposed to Defendants that they will not call all eleven (11) plaintiffs as witnesses if defendants will stipulate to certain facts set forth in Plaintiffs' Proposed Stipulations of fact, attached hereto.

PHLEGAL: #1783986 v2 (128J602!.DOC)

| PLAINTIFFS | CONTACT INFORMATION | |
|---|---|---|
| Joel A. Lieb | May be contacted through counsel:<br>Eric Rothschild, Esquire<br>Pepper Hamilton LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>(215)981-4000 | |
| Bryan Rehm | May be contacted through counsel:<br>Eric Rothschild, Esquire<br>Pepper Hamilton LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>(215)981-4000 | |
| Christy Rehm | May be contacted through counsel:<br>Eric Rothschild, Esquire<br>Pepper Hamilton LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>(215)981-4000 | |
| Julie Smith | May be contacted through counsel:<br>Eric Rothschild, Esquire<br>Pepper Hamilton LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>(215)981-4000 | |
| Cynthia Sneath | May be contacted through counsel:<br>Eric Rothschild, Esquire<br>Pepper Hamilton LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>(215)981-4000 | |
| Steven Stough | May be contacted through counsel:<br>Eric Rothschild, Esquire<br>Pepper Hamilton LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>(215)981-4000 | |

PHLEGAL: #1783986 v2 (128J602!.DOC)

| OTHER FACT WITNESSES | CONTACT INFORMATION | |
|---|---|---|
| Carol ("Casey") Brown | 5401 Davidsburg Road<br>Dover, PA  17315 | |
| Jeffrey Brown | 5401 Davidsburg Road<br>Dover, PA  17315 | |
| Heidi Bernhard-Bubb | May be contacted through counsel:<br>Niles S. Benn, Esquire<br>Benn Law Firm<br>103 E. Market Street<br>York, Pennsylvania 17405-5185 | |
| Joseph Maldonado | May be contacted through counsel:<br>Niles S. Benn, Esquire<br>Benn Law Firm<br>103 E. Market Street<br>York, Pennsylvania 17405-5185 | |
| Robert Eshbach | May be contacted through counsel:<br>Jane Gowan Penny, Esquire<br>Killian & Gephart LLP<br>218 Pine Street<br>Harrisburg, PA 17101 | |
| Jennifer Miller | May be contacted through counsel:<br>Jane Gowan Penny, Esquire<br>Killian & Gephart LLP<br>218 Pine Street<br>Harrisburg, PA 17101 | |
| Bertha Spahr | May be contacted through counsel:<br>Jane Gowan Penny, Esquire<br>Killian & Gephart LLP<br>218 Pine Street<br>Harrisburg, PA 17101 | |
| Charlotte Buckingham | Address unknown.  Previously represented by counsel for defendants. | |

PHLEGAL: #1783986 v2 (128J602!.DOC)

| EXPERT WITNESSES | CONTACT INFORMATION | |
|---|---|---|
| Brian Alters, Ph.D. | May be contacted through counsel:<br>Eric Rothschild, Esquire<br>Pepper Hamilton LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>(215)981-4000 | |
| Barbara Forrest, Ph.D. | May be contacted through counsel:<br>Eric Rothschild, Esquire<br>Pepper Hamilton LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>(215)981-4000 | |
| John F. Haught, Ph.D. | May be contacted through counsel:<br>Eric Rothschild, Esquire<br>Pepper Hamilton LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>(215)981-4000 | |
| Kenneth R. Miller, Ph.D. | May be contacted through counsel:<br>Eric Rothschild, Esquire<br>Pepper Hamilton LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>(215)981-4000 | |
| Kevin Padian, Ph.D. | May be contacted through counsel:<br>Eric Rothschild, Esquire<br>Pepper Hamilton LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>(215)981-4000 | |

PHLEGAL: #1783986 v2 (128J6G2!.DOC)

| EXPERT WITNESSES | CONTACT INFORMATION | |
|---|---|---|
| Robert T. Pennock, Ph.D. | May be contacted through counsel:<br>Eric Rothschild, Esquire<br>Pepper Hamilton LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>(215)981-4000 | |
| Jeffrey Shallit Ph.D. | May be contacted through counsel:<br>Eric Rothschild, Esquire<br>Pepper Hamilton LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>(215)981-4000 | |

## WITNESSES TO BE ENTERED BY DESIGNATION OF DEPOSITION TESTIMONY

Michael Baksa
Alan Bonsell
Donald Bonsell
William Buckingham
Jon Buell
Jane Cleaver
Heather Geesey
Richard Nilsen
Charles Thaxton
Angie Yingling

Plaintiffs may also designate deposition testimony and sections of reports from defendants' experts as part of their case in chief.

PHLEGAL: #1783986 v2 (128J602!.DOC)

F.   **Summary of testimony of each expert witness.**

1.   *Brian J. Alters, Ph.D.*

Brian J. Alters, Ph.D., is Associate Professor of Education and Sir

William Dawson Scholar at McGill University in Montréal, Canada.  He holds a

joint appointment at the Harvard College Observatory (specifically in the Science

Education Department, Harvard-Smithsonian Center for Astrophysics) at Harvard

University, and he has for many years taught high-school-science teachers at

Harvard's Philosophy of Education Research Center how to teach students about

evolution.  He is the founder and Director of the Evolution Education Research

Centre at McGill.  Dr. Alters has written several books, including *Defending*

*Evolution in the Classroom* (2001), a book primarily for high school science-

teachers discussing how to teach evolution while being sensitive to students'

religious beliefs.  Dr. Alters is an expert in science education, with a particular

focus on evolution education.

Dr. Alters will testify about standards for good pedagogy in science

education; the source of those standards; why it is important to teach high-school

students about evolution; why intelligent design should not be taught in biology

classes; how the book *Of Pandas and People* promotes religious beliefs; how the

Dover policy will require District science teachers to use poor pedagogy, disregard

findings of the scientific community, disregard recommendations of their national-

-13-

professional-science-teacher associations, and contradict their professional

preparation and development; how the Dover policy is detrimental to student

scientific literacy, will improperly prepare students for postsecondary education at

secular schools, and will introduce religion into the classroom.

  2.     ***Barbara Forrest, Ph.D.***

  Barbara Forrest, Ph.D., is a Professor of Philosophy in the Department

of History and Political Science at Southeastern Louisiana University.  She is an

expert in the emergence of intelligent design from earlier forms of creationism,

intelligent-design-advocates' Wedge Strategy, and the philosophical and religious

commitments of intelligent-design advocates.  She is the co-author of

*Creationism's Trojan Horse: The Wedge of Intelligent Design (2004)*, which sets

forth the history of the intelligent-design movement.

  Dr. Forrest will testify about religious challenges to the teaching of

evolution; the history and development of intelligent design; the religious nature of

intelligent design; intelligent design's rejection of methodological naturalism and

the history and religious nature of the book *Of Pandas and People.*

  3.     ***John F. Haught, Ph.D.***

  John F. Haught, Ph.D., has been a Professor of Theology at

Georgetown University since 1970, where he has taught courses on science and

religion for 35 years.  He served as Theology Department chair from 1990-1995

PHLEGAL: #1783986 v2 (128J602!.DOC)

and is the founder and director of the University's Centre for the Study of Science and Religion.  Professor Haught has authored many books and articles about the relationship between science - specifically evolution - and religion, including most recently in 2003 *Deeper Than Darwin: The Prospects for Religion in the Age of Evolution*.  Dr. Haught is an expert in theology.

Dr. Haught will testify about how religion is distinct from science; why intelligent design is not a scientific theory but a religious belief; why the teaching or presentation of intelligent design favors a religious viewpoint over a non-religious viewpoint, and favors one particular religious viewpoint over other religious viewpoints; and why Dover's policy is inseparable from religion motivationally, historically, logically, and theologically.

### 4.    *Kenneth Miller, Ph.D.*

Kenneth Miller, Ph.D., is a cell biologist, has been a Professor of Biology for thirty years, first at Harvard University and since 1980 at Brown University.  He has published more than 50 articles in leading scientific journals. He has for many years co-authored one of the country's most widely used high-school-biology textbooks, including the one currently employed by Dover High School.  Dr. Miller also has expertise on arguments by intelligent-design proponents that modern biology supports intelligent design.  He has also written a book, *Finding Darwin's God*, that discusses how a scientist of faith can harmonize

-15-

a belief in God with a devotion to science.  Dr. Miller is an expert in biology and

biological evolution.

        Dr. Miller will testify about evolution and its status in the scientific

community; how science and scientists operate; why it is so important for students

to learn about evolution; why intelligent design is not science but is in reality a

form of creationism; how the scientific community has repudiated the claims of the

very few scientists who support intelligent design, including those of Michael Behe

for "irreducibly complexity"; how the Dover intelligent-design policy contains

errors of fact, misrepresents the scientific standing of evolution, misrepresents the

scientific standing of intelligent design and serves no valid educational function;

how the book *Of Pandas and People* misrepresents scientific evidence; and why

intelligent design should not be taught in public-school science classes.

      **5.**    ***Kevin Padian, Ph.D.***

        Kevin Padian, Ph.D., is a paleontologist, and has for the past 25 years

been a Professor of Integrative Biology at the University of California, Berkeley.

He is the author of nearly 100 peer-reviewed scientific articles spanning topics

from the evolution of birds from dinosaurs to the development of evolutionary

thought.  He has been an officer or committee chair in many prominent scientific

societies and has been a member of the editorial boards of many of the major

journals in his field.  Dr. Padian is an expert in paleontology and in the origins of evolutionary adaptations.

Dr. Padian will testify about paleontology; how the fossil record supports the scientific theory of evolution; how and why intelligent-design proponents' claims are scientifically flawed, including how intelligent design fails to reconcile modern paleontological knowledge; how and why the discussion in *Of Pandas and People* about the fossil record is scientifically wrong; how so-called "gaps" in the fossil record previously relied upon by intelligent-design proponents as evidence of "design" have now been filled with intermediate forms; and the danger that intelligent design poses for future scientific research and discovery.

6.    ***Robert T. Pennock, Ph.D.***

Robert T. Pennock, Ph.D. is a professor of both Philosophy and Science and Technology at Michigan State University.  Previously he was a professor of Philosophy at the College of New Jersey, and the University of Texas. He has studied the creationist movement for more than 20 years, focusing since the early 1990s on intelligent-design creationism.  Dr. Pennock has published numerous articles on the subject, and written the book *Tower of Babel: The Evidence Against the New Creationism (1999)* and edited the book *Intelligent Design Creationism and Its Critics:  Philosophical, Theological and Scientific Perspectives* (2001).  He also does scientific research on experimental evolution

and evolutionary design using evolving computer organisms, which has been reported in the journal *Science*. He is an expert in the philosophy of science and the history of science, and the research on evolving computer organisms described above.

Dr. Pennock will testify about the self-limiting rules of science; how intelligent design rejects both fundamental conclusions and basic methodological constraints of science, including natural causation and testability, and thus cannot be considered "science"; that in order to accept intelligent design as science would require science to be redefined; and why intelligent design is inherently religious. He will also testify about how his experimental research rebuts the intelligent design claims of irreducible complexity and specified complexity.

### 7.   *Jeffrey Shallit, Ph.D.*

Jeffrey Shallit, Ph.D., is a mathematician, computer scientist and professor at the University of Waterloo in Waterloo, Ontario. He has published more than 80 peer-reviewed articles and co-authored two books on mathematics and computer science. He is the Editor of the *Journal of Integer Sequences*. Dr. Shallit is an expert in mathematics and computer science.

Dr. Shallit will testify about why one of intelligent design's two principal claims, namely, that of William Dembski's theory of complex specified

information ("CSI"), is not a valid or accepted scientific or mathematical theory and has been rejected by the mainstream scientific community.

**G.      Special comment about pleadings and discovery, including depositions.**

Defendants' motion for summary judgment is pending before the Court. All briefing for that motion is complete.

Also pending is the non-party reporters' motion for reconsideration. Once that motion is resolved, plaintiffs expect defendants to notice depositions of reporters Heidi Bernhard-Bubb and Joseph Maldonado.

In addition, on August 11, 2005, defendants produced additional responsive documents in the possession of District Superintendent Richard Nilsen. Plaintiffs have noticed the deposition of Dr. Nilsen for Thursday, August 25, 2005 following the completion of the pre-trial conference.

**H.      A summary of legal issues involved and legal authorities relied upon.**

The legal issues for trial concern whether the District's policy has the primary purpose or effect of advancing religion and whether it endorses religion. The protections afforded by Article I, Section 3, of the Pennsylvania Constitution are coextensive with the federal Establishment Clause (*see, e.g.*, *Weist v. Mt. Lebanon Sch. Dist.*, 320 A.2d 362, 366 (Pa. 1974)), so the same legal standards apply to both plaintiffs' federal claims and their state claims.

-19-

Under *Lemon v. Kurtzman*, 403 U.S. 602 (1971), the challenged policy is unconstitutional if (a) the district's primary purpose was to advance religion; or (b) the policy has the primary effect of promoting religion (*id.* at 612-13; *see McCreary County, Ky. v. ACLU*, 125 S. Ct. 2722, 2732-33 (2005); *Edwards v. Aguillard*, 482 U.S. 578, 582-83 (1987); *Freiler v. Tangipahoa Parish Bd. of Educ.*, 185 F.3d 337, 344 (5th Cir. 1999)).[4]

In addition to applying the *Lemon* test, the Third Circuit separately analyzes whether challenged governmental conduct improperly endorses religion. *See Modrovich v. Allegheny County, Pa.*, 385 F.3d 397, 406-13 (3d Cir. 2004); *Freethought Soc'y v. Chester County*, 334 F.3d 247, 262-69 (3d Cir. 2003); *cf. ACLU v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1485-86 (3d Cir. 1996). Under the endorsement test, the District's policy is unconstitutional if a reasonable observer, familiar with the policy's language, origins, and legislative history, as well as the history of the Dover community and the broader social and historical context in which the policy arose (*McCreary*, 125 S. Ct. at 2736-37; *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 307-08 (2000)), would conclude that the District has taken a "position on questions of religious belief," or has made "'adherence to a religion relevant in any way to a person's standing in the political

---

[4] Plaintiffs will not claim at trial that the District's policy violates *Lemon's* third prong — the prohibition against government excessively entangling itself with religion.

PHLEGAL: #1783986 v2 (128J602!.DOC)

community,'" or has in any other way "'convey[ed] * * * a message that religion

or a particular religious belief is favored or preferred'" (*County of Allegheny v.

*ACLU*, 492 U.S. 573, 593-94 (1989) (citations omitted)).

     ***Purpose:***  The District offers several supposedly secular purposes for

its policy.  But any "secular purpose * * * has to be genuine, not a sham, and not

merely secondary to a religious objective." *McCreary*, 125 S. Ct. at 2735; *accord,*

*e.g., Santa Fe*, 530 U.S. at 308; *Edwards*, 482 U.S. at 586-87.  Thus, this Court

should consider whether the legislative history reveals a primary purpose different

from the asserted purposes, whether the historical or cultural context for the policy

suggests an improper purpose, and whether a mismatch between the asserted

secular purposes and the policy's practical effect suggests that the policy's true

purpose is not what the District claims.  *See, e.g., McCreary*, 125 S. Ct. at 2734-37;

*Edwards*, 482 U.S. at 586-96.

     The District's asserted purposes are not even genuine, much less pre-

eminent.  For the policy's language, legislative history, and historical context all

show that the District's primary purpose was to "further[] a contrary purpose,

namely the protection and maintenance of a particular religious viewpoint."

*Freiler*, 185 F.3d at 344-45.  Among other things, the School Board sought to

incorporate creationism into the curriculum (*see, e.g., Edwards*, 482 U.S. at 586-

88; *McLean v. Arkansas Bd. of Educ.*, 529 F. Supp. 1255, 1272 (E.D. Ark. 1982)),

choosing its current manifestation — 'intelligent design.' Because 'intelligent design' posits a supernatural 'designer,' it is a "religious viewpoint." *Edwards*, 482 U.S. at 588-91. So teaching it in science class serves no secular purpose, and the only purpose for it must therefore be an unconstitutional religious one. *See Edwards*, 482 U.S. at 587-88; *Wallace v. Jaffree*, 472 U.S. 38, 59-60 (1985); *Stone v. Graham*, 449 U.S. 39, 42 (1980). And it implemented "the latest strategies to dilute evolution instruction employed by anti-evolutionists with religious motivations." *Selman v. Cobb County Sch. Dist.*, No. Civ.A.1:02-CV-2325-C, 2005 WL 83829, at *21 (N.D. Ga. Jan. 13, 2005). In short, the District unconstitutionally "restructure[d] the science curriculum to conform with a particular religious viewpoint." *Edwards*, 482 U.S. at 593.

      *Effect:* Because intelligent design "is not science, the conclusion is inescapable that the only real effect of [the policy] is the advancement of religion." *McLean*, 529 F. Supp. at 1272. Beyond that, the policy singles out evolution — "the one scientific theory that historically has been opposed by certain religious sects" (*Edwards*, 482 U.S. at 593) — and disparages it in just the ways that *Freiler* and *Selman* held to violate the effect prong. *See* 185 F.3d at 346-48; 2005 WL 83829, at *22. And the policy has produced "the civic divisiveness that follows when the Government weighs in on one side of religious debate" — which is "one

of the major concerns that prompted adoption of the Religion Clauses."

*McCreary*, 125 S. Ct. at 2742.

      **Endorsement:** An objective observer "would 'perceive official school support' for the religious activity in question." *Verbena United Methodist Church v. Chilton County Bd. of Educ.*, 765 F. Supp. 704, 711 (M.D. Ala. 1991) (citation omitted). For a public-school superintendent's "reading of a disclaimer that not only disavows endorsement of educational materials but also juxtaposes that disavowal with an urging to contemplate alternative religious concepts implies School Board approval of religious principles." *Freiler*, 185 F.3d at 348. What is more, the objective observer would view the District's policy as sending the message that "the School Board believes there is some problem peculiar to evolution"; and "[i]n light of the historical opposition to evolution by Christian fundamentalists and creationists[,] * * * the informed, reasonable observer would infer the School Board's problem with evolution to be that evolution does not acknowledge a creator." *Selman*, 2005 WL 83829, at *22. So "[b]y denigrating evolution, the School Board appears to be endorsing the well-known prevailing alternative theory, creationism or variations thereof * * *." *Id.*

I.     **Estimated number of trial days.**

      Plaintiffs anticipate that the trial will take a total of fifteen (15) to twenty (20) days.

**J.**      **Any other matter pertinent to the case to be tried.**

Plaintiffs request the opportunity to make a short opening statement.

Plaintiffs plan to employ trial technology that will allow exhibits, including demonstrative exhibits, to be published electronically on monitors stationed with the judge, witness, and counsel, as well as on a large monitor visible to the courtroom.  Plaintiffs understand that this procedure for publishing exhibits will not excuse plaintiffs from the requirement of providing hard copies of the exhibits in notebooks to the judge, law clerk, witnesses, and opposing counsel.

Subject to Court approval, the parties have agreed that motions *in limine* challenging the admissibility of expert witnesses or large categories of evidence must be made no later than September 6, 2005.  Responses to such motions must be filed no later than September 16, 2005.

Subject to Court approval, the parties have agreed to advise each other no later than September 6, 2005, whether they object to the admissibility or authenticity of individual exhibits.  To the extent that such exhibits are objected to, the parties may raise such objections when the exhibits are offered into evidence. However, both the sponsoring and objecting party reserve the right to file a motion *in limine* prior to trial regarding such disputed exhibits.

PHLEGAL: #1783986 v2 (128J602!.DOC)

Subject to Court approval, the parties have agreed to make best efforts to provide copies of demonstrative exhibits to each other forty-eight (48) hours before they are used.

Subject to Court approval, the parties have agreed to serve deposition designations by September 12, 2005, and counter designations by September 19, 2005.

Plaintiffs will be submitting trial testimony in the form of designations from depositions of unavailable witnesses and party opponents. Plaintiffs propose to enter this testimony by submitting highlighted portions of the deposition transcripts, rather than by reading the testimony into the record. Plaintiffs may read brief selected deposition designations to highlight particular testimony or as necessary to authenticate other evidence.

**K.    Prenumbered schedule of exhibits.**

A prenumbered schedule of Exhibits is attached as Exhibit B. The exhibits are separated into fact and expert exhibits. The expert exhibit list includes all of plaintiffs' expert reports and also, for the purpose of completeness, all of the authorities referred to in the expert reports, including a number of books. As a general practice, plaintiffs propose to provide the Court the pages of the books that are specifically cited to, unless the Court requires the entire book.

-25-

Plaintiffs do not interpret Rule 16 to require listing of exhibits presently intended for use in cross-examination only.  Plaintiffs reserve the right to supplement this list as needed if exhibits were inadvertently omitted, to respond to issues arising in pre-trial pleadings or at trial, for cross examination, and for rebuttal.

    **L.**    **Append any special verdict questions which counsel desires to submit.**

Not applicable for bench trial.

    **M.**    **Defense counsel must file a statement that the person or committee with settlement authority has been notified of the requirements of and possible sanctions under Local Rule 16.2.**

The required certification is attached, as Exhibit C.

    **N.**    **Certificate must be filed as required under Local Rule 30.10 that counsel have met and reviewed the depositions and videotapes in an effort to eliminate irrelevancies, side comments, resolved objections, and other matters not necessary for consideration by the trier of fact.**

Counsel have agreed that deposition designations will be exchanged on September 12, 2005, and counter designations and objections will be exchanged on September 19, 2005.  Currently, plaintiffs intend to use a videotape interview of William Buckingham, which has previously been provided to defendants' counsel, and a tape of a presentation by defendants' expert Michael Behe to the Dover community, which was produced by defendants' counsel.

PHLEGAL: #1783986 v2 (128J602!.DOC)

**O.**     **In all trials without a jury, requests for findings of both fact and law shall be submitted with this memorandum as required under Local Rule 48.2.**

The scheduling order provides that proposed findings of fact and conclusions of law must be submitted seven (7) days after the trial. Counsel has confirmed with chambers that they are not required for this pre-trial memorandum.

**P.**     **Proposed voir dire questions.**

Not applicable for bench trial.

Respectfully submitted,

*s/     Eric Rothschild*
Eric Rothschild (PA 71746)
Stephen G. Harvey (PA 58233)
Alfred H. Wilcox (PA 12661)
Christopher J. Lowe (PA 90190)
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000
(215) 981-4750 (fax)
rothschilde@pepperlaw.com

Thomas B. Schmidt, III (PA 19196)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
P.O. Box 1181
Harrisburg, PA  17108
(717) 255-1155
(717) 238-0575 (fax)
schmidtt@pepperlaw.com

-27-

Witold J. Walczak (PA 62976)
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213
412-681-7864
412-681-8707 (fax)
vwalczak@aclupgh.org


Paula K. Knudsen (PA 87607)
ACLU of Pennsylvania
105 N. Front St., Suite 225
Harrisburg, PA  17101
(717) 236-6827
(717) 236-6895 (fax)
pknudsen@aclupa.org


Ayesha Khan
Richard B. Katskee
Alex J. Luchenitser
Americans United for Separation of Church
and State
518 C St., NE
Washington, DC 20002
(202) 466-3234

Attorneys for plaintiffs
TAMMY KITZMILLER; BRYAN AND
CHRISTY REHM; DEBORAH
FENIMORE AND JOEL LIEB; STEVEN
STOUGH; BETH EVELAND; CYNTHIA
SNEATH; JULIE SMITH, AND
ARALENE ("BARRIE") D. AND
FREDERICK B. CALLAHAN

Dated:  August 24, 2005

PHLEGAL: #1783986 v2 (128J602!.DOC)