## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TAMMY KITZMILLER, et al.** | : | **Case Number:  04-CV-2688** |
| | : | **Judge Jones** |
| | : | **(Filed electronically)** |
| vs. | : | |
| | : | |
| **DOVER AREA SCHOOL DISTRICT; DOVER** | : | |
| **AREA SCHOOL DISTRICT BOARD OF** | : | |
| **DIRECTORS** | : | |

### REPLY BRIEF OF JOSEPH MALDONADO AND
### HEIDI BERNHARD-BUBB IN SUPPORT OF MOTION FOR
### RECONSIDERATION OF COURT ORDER DATED AUGUST 2, 2005

## I.     PROCEDURAL BACKGROUND

On August 11, 2005 the non-party subpoenaed witnesses, Joseph Maldonado and

Heidi Bernhard-Bubb, filed a Motion for Reconsideration (doc. 125) of this Court's August

2, 2005 Order (doc. 115) and a supporting Memorandum of Law. (doc. 126). On August 17,

2005 this Court conducted a telephonic conference regarding the Motion for

Reconsideration involving legal representatives of the Plaintiffs, Defendants and non-party

subpoenaed witnesses. The Court acknowledged issues with the interpretation of its Order

and indicated that it had not intended to allow questioning of the non-party subpoenaed

witnesses regarding their thought processes. The Court further indicated that it had not

intended to allow questioning outside of the four corners of the Affidavits previously

submitted by the non-parties, nor had it intended to allow questioning about potential biases,

predispositions or motives absent extrinsic evidence of same, of which there was none

before the Court.

The Court entered an Order on August 17, 2005 setting forth an expedited briefing schedule. (doc. 130). Defendants filed a responsive Brief on August 24, 2005. (doc. 132). To date, the Plaintiffs have filed no response to the Motion for Reconsideration or Defendants' responsive Brief. This Reply Brief is submitted by the non-party subpoenaed witnesses in support of their Motion for Reconsideration.

## II.   STATEMENT OF QUESTION INVOLVED

Should the Court reconsider that portion of its August 2, 2005 Order allowing the non-party subpoenaed correspondents to be deposed in light of existing case law in the Third Circuit and other circuits relative to the applicability of the First Amendment Reporters' Privilege to non-confidential information and sources and amend its Order to quash the testimonial subpoenas issued by the Defendants to the non-party subpoenaed correspondents?

Suggested Answer:    Yes

## III.   ARGUMENT

The Defendants cite language in Helfrich v. Lehigh Valley Hospital, 2005 WL 1715689 (E.D. Pa. 2005, slip opinion), regarding the standard of review to be applied on a Motion for Reconsideration. Helfrich holds that a Motion for Reconsideration may be granted where "there is a need to correct a clear error of law or prevent manifest injustice." Helfrich, 2005 WL 1715689 at p. 3. To wit, a Motion for Reconsideration may address "factual and legal matters that the Court may have overlooked." (emphasis added). Helfrich, 2005 WL 1715689 at p. 4, quoting Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993). Moreover, the non-party subpoenaed witnesses are

unaware of any authority which prevents a Court from clarifying its Order or clearing up unintended meanings and ambiguities.

Defendants mischaracterize the contents of the Memorandum of Law dated August 11, 2005. (doc. 126).  The non-parties did not rehash arguments previously presented to this Court. Rather, they raised legal matters that the Court may have overlooked. The Defendants are seeking to verify published quotations as part of their meritless claim that the non-party subpoenaed witnesses are biased against them. As pointed out by the Court, the Defendants have offered no extrinsic evidence of such alleged bias. In their responsive Brief, the Defendants cite to the self-serving deposition testimony of Dover School Board members Bonsell, Harkins, Buckingham and Geesey.  (doc. 132 at p. 2).

In addition, the Defendants have attached to their responsive Brief a letter that school board member Alan Bonsell submitted to the York Daily Record and the op-ed piece printed in the York Daily Record.  By way of background, the Editor of the York Daily Record offered Mr. Bonsell the opportunity to draft a letter for publication in the newspaper approximately six (6) weeks before the Dover School Board election.  However, Mr. Bonsell submitted a letter approximately one (1) week before the election, after expiration of the newspaper's deadline for publication of election letters.  Moreover, the letter exceeded the newspaper's standard length limit.  As a result, the newspaper gave Mr. Bonsell the opportunity to rework his letter and submit a shorter version of same.  At the same time, the newspaper also offered to print the entire letter after the election and told Mr. Bonsell to advise other Dover School Board members that the newspaper would print their opinion letters, if submitted.  Board members Eric Riddle and Heather Geesey did submit letters and these were subsequently published in the York Daily Record, properly edited for space and

3

grammar.  Mr. Bonsell chose to edit his original letter rather than publish the entire letter after the election, and it is this version, rewritten and submitted by Mr. Bonsell, that was published in the York Daily Record and properly edited for space and grammar.

Contrary to the Defendants' assertion that there is no intrusion into the newsgathering or special functions of the press when a reporter is being questioned about a public incident or event to which he or she was a witness, Third Circuit courts and the courts of other circuits "have held that the privilege and the First Amendment concerns underlying the privilege are implicated where a party seeks to compel a journalist to authenticate or verify published quotations." Parsons v. Watson, 778 F.Supp. 214, 217 (D. Del. 1991); U.S. v. Markiewicz, 732 F. Supp. 316 (N.D. N.Y. 1990); National Labor Relations Board v. Mortensen, 701 F. Supp. 244 (D.D.C. 1988); United States v. Blanton, 534 F. Supp. 295 (S.D. Fla. 1982), aff'd, 730 F.2d 1425 (11th Cir. 1984) (Government was not entitled to subpoena a reporter to testify for the sole purpose of verifying that quotations and statements attributed to the defendant were accurate where it failed to show both that it had exhausted or made reasonable attempts to exhaust non-media sources for the information or equivalent information and that it had negotiated in good faith with the reporter's counsel). It is respectfully submitted that these cases were overlooked by the Court.

More importantly, the Court did not address Parsons v. Watson, supra, a decision of the United States District Court for the District of Delaware, a Third Circuit court, and McMenamin v. Tartaglione, 139 Pa. Commw. 269, 590 A.2d 802 (1991), a decision of the Pennsylvania Commonwealth Court. While not wanting to rehash arguments previously made in their Memorandum of Law (doc. 126), the non-parties submit that the factual background in this matter is indistinguishable in all material respects from those present in

4

McMenamin and Parsons. The McMenamin and Parsons courts applied the test articulated in Riley v. City of Chester, 612 F.2d 708 (3rd Cir. 1979), and determined that the reporters in those cases could not be compelled to testify because other non-media sources for the information existed. As a result, the Riley test should have been applied in this case because the non-party correspondents were engaged in their newsgathering capacities at all relevant times and a myriad of other sources for the information sought by Defendants exists. These arguments and the remaining arguments contained in the Memorandum of Law filed on August 11, 2005 (doc. 126) support the conclusion that the Motion for Reconsideration (doc. 125) of the non-party subpoenaed witnesses should be granted and the deposition subpoenas of Defendants quashed or otherwise modified so as to permit the non-party correspondents a protective order as suggested hereafter.

The Defendants further mischaracterize the nature and extent of the non-parties' position by stating that the "main concern the reporters have with this court's August 2, 2005, order, as expressed in their motion for reconsideration and at the August 17, 2005, telephonic conference with this court, is to the use of the word 'perceived' in this court's order. . ." (doc. 132 at p. 6). In point of fact, the primary concern of the non-parties with regard to this Court's August 2, 2005 Order is that they have been exposed to questioning at deposition; the non-parties have always taken the position that they should not have to testify at all. See Memorandum of Law (doc. 126) at p. 1-13. We reiterate that the federal courts in Pennsylvania, New Jersey and Delaware have clearly and unequivocally held that the First Amendment Reporter's Privilege applies to confidential and non-confidential sources and information, including unpublished materials such as reporters' notes. See doc.

126 at p. 4. The majority of other circuits, as well as the Pennsylvania State Courts, are in agreement with the Third Circuit. See doc. 126 at p. 4-5.

The arguments that the Defendants decry as "specious" and "unsupported" are anything but that. "That no confidential source or information is involved is irrelevant to the chilling effect enforcement of a subpoena would have on information obtained by a journalist in his professional capacity." Kidwell v. McCutcheon, 962 F. Supp. 1477, 1480 (S.D. Fla. 1996). See also United States v. Blanton, 534 F. Supp. 295 (S.D. Fla. 1982), aff'd, 730 F.2d 1425 (11th Cir. 1984); United States v. Cuthbertson, 630 F.2d 139 (3rd Cir. 1980); Loadholtz v. Fields, 389 F. Supp. 1299 (M.D. Fla. 1975). If the Court chooses to characterize the correspondents herein as "fact witnesses", reporters and correspondents within the Middle District could be exposed to intrusive questioning in nearly every matter on which they report. Under this Court's ruling, a correspondent who attends a municipal meeting, press conference or other public event, responds to a crime scene or conducts a non-confidential interview can be classified as a "fact witness" and subsequently deposed or subpoenaed to testify at trial, even if 5, 10, 15, 20, 25, 50 or 100 other people witnessed the same meeting, sat through the same press conference, listened to the same interview or heard the same statements being reported. However, a reporter is simply not the same as a lay witness or fact witness while he or she is engaged in a newsgathering capacity and actively reporting on a matter. This is precisely why courts all across the United States of America have adopted some form of the First Amendment Reporter's Privilege; to recognize and protect the distinct and crucial role played by the media in society.

This type of dispute is not novel. The Third Circuit courts and the federal courts, generally, have developed an analytical framework within which to determine whether a

6

reporter is privileged from discovery under the First Amendment. This framework requires a balancing of interests via application of the well established <u>Riley</u>-<u>Criden</u> test. <u>See</u> doc. 126 at p. 3. The correspondents herein unquestionably possess a First Amendment interest because they received the information at issue while engaged in a newsgathering capacity. In order to overcome this important interest, the Defendants must establish that the testimony sought is crucial to their defense; that they have made an effort to obtain the needed information from alternative sources; and that the only access to the information sought is through the testimony of the correspondents. <u>Parsons</u>; <u>Riley</u>; <u>Criden</u>.  This test should have been applied to the Defendants' deposition subpoenas.

The Defendants argue that they need to depose the non-party correspondents in order to defend themselves and that the non-parties are attempting to restrict them from engaging in proper and necessary discovery. To the contrary, the non-parties are not stopping the Defendants from deposing other members of the public who attended the meetings in question.[1] The Defendants do not dispute that many alternative sources for the information exist.  In fact, the Defendants have failed to show any effort on their part to obtain the desired information from the myriad of non-journalistic sources available.

Moreover, the Defendants have not offered a scintilla of credible evidence that the Defendants are biased against them or that the articles authored by the non-parties are untrustworthy in any respect. In that regard, this Court has already determined that the documents reviewed <u>in camera</u> showed "no evidence of biased reporting or a lack of reliability present  . . . which would place the Reporters' credibility at issue." <u>Memorandum and Order</u>, p. 18. (doc. 115)  Absent any reliable, extrinsic evidence of bias, the information

7

sought from the non-party correspondents is clearly not crucial to their defense.[2] The

Defendants are essentially asking this Court to sanction a wholesale fishing expedition at the

expense of well established First Amendment principles and doctrine in hopes of

discovering a plausible defense, all without showing that such an expedition is necessary.

Stated another way, the Defendants are attempting to delve into areas that the First

Amendment simply does not allow under these circumstances. The Defendants have failed

to meet the <u>Riley</u>-<u>Criden</u> criterion and their thinly-veiled attempts to obscure these

shortcomings on due process grounds should fail.

      Alternatively, should this Court determine that the correspondents may be

deposed, the non-parties have respectfully requested that the Court modify

paragraph 1(a) of its August 2, 2005 Order to limit the non-parties' testimony

solely for purposes of verifying the accuracy of the statements published in the

relevant articles, which would be limited to the four corners of the Affidavits

previously submitted. This would exclude any testimony as to what the

correspondents "perceived", thought, understood or comprehended.

      Defendants cite the provisions of Federal Rule of Civil Procedure 26(b)

and argue that reporters should not receive a "special exemption" because to grant

same would deny them of due process and the opportunity to ask questions about

their perceptions, biases and motives.  However, the federal courts unquestionably

have the authority to preclude or limit the disclosure of protected or privileged

matter through the granting of protective orders and motions to quash as requested

---

[1] The non-parties understand that the Defendants possess lists of attendees of the public meetings in question and understand that the Defendants had recorded over the tapes of the meetings in issue.

herein.  See Fed. R.Civ. Pro. 45(c).  The non-parties believe that their testimony is privileged.  In that regard, the Defendants continually fail to comprehend the special role served by the media and the very purpose of the First Amendment Reporters' Privilege. Reporters who witness events while in a newsgathering capacity *are* different than lay witnesses. They are not the story. Rather, reporters exist as impartial, objective observers to report on stories *for, and on behalf of, the public*. It is for these very reasons that the First Amendment Reporters' Privilege was adopted by the courts.

The Defendants aver that they should be able to inquire about, inter alia, "whether the [non-parties] have a financial interest in this litigation; whether [the non-parties] have any personal, business, or social relationships with plaintiffs, plaintiffs' counsel, plaintiffs' law firms and organizations or with any board member or defendant; whether the reporters have any enmity toward defendants or school board members; whether the [non-parties] have any shared beliefs or backgrounds with plaintiffs, plaintiffs' counsel, and plaintiffs' law firms or organizations." (doc. 132 at p. 13). The Defendants state that these questions represent "areas of fair inquiry pursuant to Rule 26(b)." (doc. 132 at p. 14).

These and other areas of inquiry are clearly irrelevant and collateral given that the Defendants cannot cite any specific, credible examples of bias on the part of the non-parties. Indeed, a federal trial court has "broad discretion to curtail exploration of collateral matters." Justice v. Hoke, 90 F.3d 43, 48 (2d. Cir. 1996). We reiterate that this Court, after conducting a "detailed and thorough in camera

---

[2] The testimony of  Mr. Maldonado and Ms. Bernhard-Bubb would clearly be cumulative of the testimony of

review" of the documents, notes and drafts submitted by the non-parties

concluded that "we find no evidence of biased reporting or a lack of reliability

present . . . which would place the Reporters' credibility at issue." <u>Memorandum

and Order</u>, p. 18. (doc. 115).  Further, the Defendants possess no extrinsic

evidence of bias regarding the non-parties, as aforesaid.  Thus, questioning of the

correspondents, if any, should be strictly limited to the four corners of the non-

parties' Affidavits.[3]

Accordingly, if this Court should deny the non-party correspondents'

Motion for Reconsideration of their Motion to Quash, the correspondents would

respectfully request that the Court's Order of August 2, 2005 be amended to

provide that the correspondents' testimony be limited solely to verifying the

accuracy of the statements contained in their Affidavits and the relevant articles;

that the correspondents be characterized as reporters and not as "fact witnesses";

and that the correspondents may not be questioned as to their perceptions,

opinions, thoughts, understandings and mental impressions, etc.

---

the members of the public who attended the meetings in question.
[3] Rule 26(b) is clear that parties may obtain discovery regarding "any matter, *not privileged*." (emphasis added). Fed. R. Civ. Pro. 26(b)(1). It has always been the position of the non-parties that their testimony is privileged from discovery pursuant to the First Amendment Reporters' Privilege, <u>supra</u>.

IV.    **CONCLUSION**

For the foregoing reasons, the non-parties respectfully request that the Court reconsider paragraph 1(a) of its August 2, 2005 Order, apply the Riley test to the testimony sought by Defendants and hold that the Motion to Quash the deposition subpoenas of Defendants be granted.  In the alternative, the non-parties would respectfully request that the Court modify paragraph 1(a) of its Order of August 2, 2005 to limit the non-parties' testimony solely for purposes of verifying the accuracy of the statements contained in their Affidavits and the relevant articles; to provide that the correspondents be characterized as reporters and not as "fact witnesses"; and to provide that the correspondents may not be questioned as to their perceptions, opinions, thoughts, understandings and mental impressions, etc.

Respectfully submitted,
**BENN**LAW**FIRM**

Date: August 31, 2005          By:/s/ Niles S. Benn, Esquire_____
                               Niles S. Benn, Esquire
                               Attorney I.D. #16284
                               Terence J. Barna, Esquire
                               Attorney I.D. #74410
                               Christian J. Dabb, Esquire
                               Attorney I.D. #85370
                               P.O. Box 5185
                               103 E. Market Street
                               York, Pennsylvania 17405-5185
                               (717) 852-7020
                               nbenn@bennlawfirm.com
                               tbarna@bennlawfirm.com
                               cdabb@bennlawfirm.com

## CERTIFICATE OF SERVICE

I, Christian J. Dabb, Esquire, hereby certify that on this 31st day of August, 2005, I served a true and correct copy of the foregoing "Reply Brief" upon the following counsel by the Middle District ECF system and/or fax and other counsel of record by the Middle District ECF system:

> **VIA FACSIMILE (734) 930-7160**
> Richard Thompson, Esquire
> Patrick T. Gillen, Esquire
> Robert J. Muise, Esquire
> Edward L. White, III, Esquire
> Thomas More Law Center
> 24 Frank Lloyd Wright Drive
> P.O. Box 393
> Ann Arbor, Michigan  48106
> (Defendants' counsel)
>
> Thomas B. Schmidt, III
> Pepper Hamilton LLP
> 200 One Keystone Plaza
> North Front and Market Streets
> P.O. Box 1181
> Harrisburg, PA  17108
> (Plaintiffs' co-counsel)
>
> Eric Rothschild, Esquire
> Pepper Hamilton LLP
> 3000 Two Logan Square
> 18th and Arch Streets
> Philadelphia, PA  19103
> (Plaintiffs' co-counsel)

> /s/ Christian J. Dabb, Esquire___
> Christian J. Dabb, Esquire
> Attorney I.D. #85370