# CAMERAS and RECORDERS

### in

# ARIZONA'S TRIAL COURTS



# An EVALUATION of the EXPERIMENT

by Bob Baker

The Supreme Court of Arizona in an order filed December 23,1981, temporarily suspended Rule 45, Canon 3, (A) (7) of the Rules of the Supreme Court allowing for electronic and still photographic coverage of public proceedings in all courts of the State of Arizona on an experimental basis from March 1,1982,  until March 1, 1983. (See appendix). Prior to that historic order such media coverage in Arizona's Courts had been restricted to the appellate level where it had been previously tested for a period of 31 months.  With this order, the Supreme Court of Arizona put in place provisions under which the citizens of Arizona and the general public thoughout the United States could examine the work of the Judicial Branch in Arizona at the general and limited jurisdiction levels in the form of electronic recordings broadcast by radio and television or still photographs published by newspapers and magazines, all in the convenience of their homes.

It was to be a structured experiment, the result of careful planning by both citizens and legal groups.  To that end,the Arizona Supreme Court, in its December 23, 1981 order, issued a set of 21 guidelines that would be the basis on which the one-year experiment would be conducted. Discussions by trial court judges throughout Arizona gave rise to Local Rules for adoption by the Arizona Supreme Court to assist in the implementation of the order, seeking to ensure that the quality of justice would not be altered from the beginnning to the completion of the experiment.  To better grasp the impact of

this order and the particular effect upon the trial courts of Arizona, the Supreme Court provided that an ongoing evaluation be conducted throughout the experimental period. (3/1/82 - 3/1/83). Thus, this final report has been prepared presenting all the pertinent data that has been collected relating to the impact of cameras and electronic recorders in the trial courts of Arizona, pursuant to the concerns of the Arizona Supreme Court.

## PURPOSE OF THE EVALUATION

The fundamental intent in conducting the evaluation was twofold: (1) determine if the presence of the media in the form of electronic recorders and cameras, technicians and reporters, altered in any measurable manner the behavior of the participants in the trial environment; and (2) did the presence of the media in this form, alter the behavior of the participants in a manner that affected the quality of justice in these proceedings.

## SUMMARY OF RESPONSES

The response data was classified into five basic areas of concern regarding media coverage in the trial setting, namely:

1. Physical Disruption
2. Prejudicial Publicity
3. Selective Coverage
4. Psychological Impact
5. Procedural Delay

Attitudes of respondents were requested in a manner seeking to evaluate their impressions before, during, and after their experience in these areas of concern.

Listed below each classification heading on pages 20,22,24,26,29 is the definition used by the evaluation for that area of concern, and in my opinion, a summary of the significant response data that was collected, expressed in a percentage statement. A complete summary of the response data that was collected for each question posed on each questionnaire can be found beginning on page 31.

## CLASSIFICATION  SUMMARY

### PHYSICAL DISRUPTION

In its order, filed December 23, 1981, the Supreme Court of Arizona provided in the guidelines that all persons engaged in coverage conduct their behavior in a manner that was not distracting to the participants or the dignity of the proceedings.  Furthermore, the Court set forth in the guidelines that television or still cameras which were distracting shall not be permitted.  In response to the questionnaire in this regard, the following findings were achieved:

1.   93% of the jurors/witnesses responding said during the trial the presence of the media equipment did not distract them.

2.   82% of jurors/witnesses responding said the amount of media equipment would not affect the dignity of the proceedings.

3.   92% of the jurors/witnesses responding said that the amount of media equipment they saw did not cause them any inconvenience.

4.   81% of the Court personnel responding said the equipment and the operator present in the courtroom did not distract them during the trial.

5.   72% of the Court personnel responding said the presence of the media equipment would not effect the dignity of the trial.

6.    91% of responding judges said the amount of media equipment did not affect the dignity of the proceedings.

7.    91% of the judges questioned said the presence of the media in the courtroom did not affect the conduct of business.

8.    84% of the attorneys responding said that during the trial the presence of the media and its equipment was not distracting.

9.    64% of the responding attorneys said the presence of media personnel and their equipment did not affect the dignity of the proceedings.

10.    77% of the attorneys responding said the presence of the media and the equipment did not obstruct or delay the orderly conduct of the Court's business.

11.    80% of the attorneys responding said the amount of equipment in the courtroom was what they envisioned.

12.    67% of the Court personnel responding said the amount of the equipment that they saw in the courtroom is what they thought they would see.

13.    100% of the judges responding said the amount of equipment outside of the courtroom has not caused them any inconvenience or concern.

14.    72% of the attorneys responding said the amount of media personnel or media equipment outside the courtroom did not cause them to be concerned.

PREJUDICIAL PUBLICITY

According to the evaluation the classification (prejudicial publicity) consisted of information received that often resulted in premature judgment or unwarranted opinion directly affecting the behavior of participants.  The significant responses regarding this classification that were found during the study were:


1.   92% of the jurors/witnesses responding said that when they learned that television or newspaper coverage was to take place it did not change their attitude about the work of the court.

2.   63% of the jurors/witnesses responding said that the presence of the media did not make them feel that the case was more important.

3.   59% of the judges and attorneys responding said that there were no exclusions of jurors as the result of pretrial publicity.

4.   70% of the judges and attorneys responding said that during trial the media's presence in the courtroom did not make jurors more sensitive to public opinion.

5.   62% of the judges and attorneys responding said before the initial hearings were conducted that they felt that the parties should not be bothered by the media coverage.

6.    58% of the judges and attorneys responding said objections were raised during the proceedings regarding media coverage.

7.    75% of the judges and attorneys responding said that there were pre-hearings regarding camera coverage.

8.    59% of the attorneys responding said that during the proceedings objections were raised regarding the presence of the cameras in the courtroom.

9.    81% of the attorneys responding said that after the proceedings they made special attempt to see, hear, or read what had been reported.

10.   82% of the jurors or witnesses responding said they have heard or read media accounts of the proceedings in which they participated after their conclusion.

11.   57% of the court personnel said after the proceedings that they had made a special effort to review what the media had reported.

SELECTIVE COVERAGE

According to the evaluation, the classification (selective coverage) consisted of restricting the choice of court proceedings covered and the content of the coverage provided. The significant findings in this classification were:

1.   92% of the jurors and witnesses who responded said that once they learned that media coverage was taking place that it did not change their attitude about the work of the court.

2.   63% of the jurors and witnesses responding said that the presence of the media did not make them feel as though the case was more important

3.   82% of the responding judges said that in their opinion jurors were not more sensitive to public opinion due to the presence of the media.

4.   74% of the court personnel responding said the presence of the media signaled to them that the case was more important.

5.   84% of the attorneys responding said that during and after the proceedings they were recognized by others as a result of the coverage.

6.    58% of the court personnel responding said that during the proceedings they were recognized by others as participants in the trial.

7.    77% of the court personnel responding said they were recognized by others after the conclusion of the trial as a result of the media coverage.

PSYCHOLOGICAL IMPACT

The evaluation reviewed the classification (psychological impact) as a condition affecting the behavior of participants that directly limits their participation.  Regarding the classification of psychological impact the following findings were considered significant.

1.    88% of the jurors or witnesses responding said knowing that cameras would be present in the courtroom did not make them more nervous before the proceedings.

2.    63% of the jurors or witnesses responding said that the presence of the media did not make them feel as though the case was more important.

3.    75% of the jurors and witnesses responded that the equipment seen in the courtroom was about what they had expected.

4.    92% of the responding jurors or witnesses said that once they learned television and newspaper coverage was taking place, it did not change their attitude about the court.

5.    69% of the jurors or witnesses responding said that during the proceedings the presence of the media did not make them nervous.

6. taken as a group, jurors and witnesses who responded qualified their experience with cameras in the courtroom as:

55% favorable

8% unfavorable

11% undecided

25% no opinion

7.    92% of the jurors or witnesses responding said they would be willing to serve again if they were put in the same situation, serving in the same capacity, with the cameras present.

8.    82% of the judges and attorneys responding said that in their opinion jurors were not more sensitive to public opinion due to the presence of the media.

9.    80% of the responding judges and attorneys said that the anticipated presence of the media equipment in the courtroom did not make them more nervous.

10.   82% of the attorneys responding said the amount of equipment in the courtroom was what they envisioned.

11.   85% of the judges and attorneys said during the trial the presence of the equipment did not make them more nervous.

12.   47% of the attorneys concluded their experience with cameras in the courtroom was favorable.

13.  82% of the judges and attorneys questioned said the amount of equipment in the courtroom was about what they had expected.

14.  85% of the judges and attorneys responding said that during the trial proceeding the equipment or the operator in the courtroom did not make them nervous.

15.  40% of the judges responding said that the presence of the equipment and its operator in the courtroom made them more attentive.

16.  68% of the court personnel responding said that the anticipated coverage did not make them more nervous.

17.  81% of the responding court personnel said during the proceedings the presence of the cameras in the courtroom did not make them nervous.

18.  26% of the court personnel said that the presence of the media equipment in the courtroom and its operator made them more attentive.

19.  21% of the jurors/witnesses responding said during the proceedings they were recognized by others through the media. Additionally, 21% of the jurors or witnesses said after the proceedings they were recognized as the result of the media coverage.

21.  26% of the attorneys responding classified their experience with cameras in the courtroom as unfavorable. (This group was predominantly comprised of defense attorneys).

22.  29% of the responding court personnel said during the trial, the presence of the media and the equipment in the courtroom makes participants act out of character.

PROCEDURAL DELAY

According to the evaluation, the classification (procedural delay) examined events resulting from the presence of the media that altered the processing of cases in a manner other than the norm.  The following response data was considered significant regarding the classification of procedural problems:

1.    82% of the attorneys responding said the presence of the media and its equipment did not obstruct or delay the orderly conduct of the court's business.

2.    90% of the judges responding said they did not have to reschedule any hearings as a result of the media problem.

3.    95% of the court personnel responding said that the presence of the media did not delay the orderly conduct of the court's business.

4.    83% of the judges and attorneys responding said that media coverage requests were made within an appropriate amount of time.

5.    91% of the judges responding said that there was proper advance notification by the media to allow appropriate time for the presence of the media in the courtroom, prior to the convening of the trial.

6.    72% of the attorneys responding said the amount of people involved with coverage of the proceedings from the media stationed outside the courtroom did not cause the attorneys to be concerned.

29

7.  55% of the judges and attorneys responding said that objections to the media were raised during the proceedings.

Participants Conclusions

Each participant who was sent a questionnarie was asked to respond to the following two questions; the results of which are listed below:

1. If cameras/recorders are permitted to continue to cover trial court proceedings do you think it is beneficial?

|  | Yes | No | Possibly |
|---|---|---|---|
| judges | 64% | 18% | 18% |
| attorneys | 50% | 33% | 17% |
| juror/witness | 50% | 30% | 20% |
| ct. personnel | 69% | 23% | 8% |
| Overall | 58% | 26% | 16% |

2. How would you classify your experience with cameras and recorders in the courtroom?

|  | Favorable | Undecided | Unfavorable | No Opinion |
|---|---|---|---|---|
| judges | 82% | 0% | 18% | 0% |
| attorneys | 47% | 23% | 26% | 4% |
| jurors/witn. | 55% | 11% | 8% | 25% |
| ct. persn. | 53% | 13% | 21% | 13% |
| Overall | 59% | 12% | 18% | 11% |