## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **TAMMY KITZMILLER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil No. 04-CV-2688** |
| | ) | |
| **v.** | ) | **Filed Electronically** |
| | ) | |
| **DOVER AREA SCHOOL** | ) | **Hon. John E. Jones, III** |
| **DISTRICT, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OF COURTROOM TELEVISION NETWORK LLC IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF THE COURT'S MEMORANDUM AND ORDER DATED SEPTEMBER 7, 2005

Dated:  September 9, 2005

Lee Levine*
Gayle C. Sproul
Michael Berry
Levine Sullivan Koch & Schulz, L.L.P.
2112 Walnut Street, Third Floor
Philadelphia, Pennsylvania 19103
(215) 988-9778 (phone)
(215) 988-9750 (facsimile)
llevine@lskslaw.com
gsproul@lskslaw.com
mberry@lskslaw.com

*Attorneys for Intervenor*
*Courtroom Television Network LLC*

\*      Petition for special admission filed on September 2, 2005.

Courtroom Television Network LLC ("Court TV") hereby respectfully requests that the Court reconsider, pursuant to Local Rule 7.10, its Memorandum and Order of September 7, 2005, in which it denied Court TV's unopposed motion to intervene in this matter for the limited purpose of filing its unopposed motion for permission to record and telecast the trial proceedings. The Court denied the unopposed motion for permissive intervention pursuant to Rule 24(b) because it concluded that it does not have the power to grant Court TV's substantive request, *i.e.*, the request to record and telecast the trial. September 7 Memorandum ("Sept. 7 Memorandum"), p. 4, 8.

First, Court TV respectfully submits that it was error for the Court to deny the request to intervene based on its view of the outcome of Court TV's substantive request. Sept. 7 Memorandum, p. 4. The cases relied upon by the Court for this conclusion govern situations in which the prospective intervenor seeks to intervene as a party, where interests sought to be advanced were already well represented before the Court. Here, however, Court TV was not seeking to intervene as a party, nor to advance any interest already before the Court, but only to bring before the Court its motion to record and telecast. As Court TV explained in its memorandum in support

of its motion to intervene, where the proposed intervenor is a media entity that seeks access only for the collateral purpose of televising the trial, Rule 24(b) provides an accepted means of bringing the request before the Court. *See, e.g., Hamilton v. Accu-Tek*, 942 F. Supp. 136, 138 (E.D.N.Y. 1996) (court grants Court TV status as intervenor and grants request to televise courtroom proceedings). Moreover, it is clear under Third Circuit law that, where access to courts is at issue, Rule 24(b) is the correct mechanism to initiate the request. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994).

This is a fine point of procedure, but it is one with important substantive implications here. The resolution by the Court of Court TV's request to televise the trial on the papers supporting the intervention motion rather than on the papers supporting the substantive request to record and televise the trial has, with great respect to the Court, necessarily led to a truncated consideration of Court TV's substantive request and an erroneous result. Specifically, the Court's conclusion that the guidelines of the Federal Judicial Conference are mandatory here and that it has no discretion in any event under Local Rule 83.1.1 are, with great respect, erroneous. As explained in detail in Court TV's Memorandum of Law in Support of Motion to Record and Televise ("the Memorandum of Law"), submitted to

2

the Court as Exhibit 1 to the motion to intervene and attached hereto as Exhibit A, this Court does in fact have the power to decide whether to permit television coverage of this trial. While the Court may exercise its discretion either by granting or denying the request to record and televise, it is error to hold that the Court does not have that discretion in the first instance.

Court TV hopes, of course, that the Court will conclude that it should permit the recording and telecasting of the trial of this unique case. But, even if it does not, Court TV respectfully requests that the Court base its ultimate decision on the full merits of Court TV's request, having before it all of the materials that fully support that unopposed request.

## I.    PROCEDURAL HISTORY/STATEMENT OF FACTS

Court TV filed its unopposed motion to intervene on September 2, 2005. Attached as exhibits to that motion were the motions it intended to file if the Court were to grant it intervenor status. Those motions were (1) a motion to record and televise the trial (along with the Memorandum of Law, the declarations of Douglas Jacobs, Esq., (Court TV's general counsel) and Gayle C. Sproul, Esq. (attaching materials relating to cameras in the courtroom and the controversy at issue in this case)), and (2) a motion for permission to file a brief in excess of the word limit.

3

On September 7, 2005, this Court denied the motion to intervene and

Court TV's request for oral argument.

## II.   STATEMENT OF QUESTIONS INVOLVED

Should the Court reconsider that portion of its September 7 Order denying Court TV's unopposed motion to intervene for the limited purpose of lodging its request to record and televise the trial, when, in view of clear precedent, the resolution of the intervention motion is not dependent on the resolution of the underlying substantive request?

Suggested Answer:  Yes.

Should the Court grant the motion to intervene for this limited purpose and permit Court TV to file its unopposed motion to record and televise the trial or deem the motion filed, because, in view of clear precedent, this is the proper procedural approach and because such an approach permits the fullest and fairest means of deciding Court TV's underlying request to record and televise?

Suggested Answer:  Yes.

Should the Court reconsider that portion of its September 7 Memorandum concluding that it has no discretion to permit the trial to be recorded or televised under the circumstances present here, where Local Rule 83.1.1 grants the Court this discretion?

Suggested Answer:  Yes.

4

## III.   ARGUMENT

### A.   The Court Should Reconsider Its Denial of the Motion to Intervene, Grant the Motion to Intervene and Allow Court TV to File its Motion to Record and Televise the Trial Proceedings.

Intervention pursuant to Rule 24(b)(2) is the appropriate vehicle for non-party media entities to bring their access-related requests before the Court. *See, e.g.*, *Hamilton*, 942 F. Supp. at 138 (court grants Court TV status as intervenor and grants request to televise courtroom proceedings). Indeed, in the Third Circuit, courts have repeatedly ruled that in matters relating to access to trials and other judicial proceedings, Rule 24(b)(2) is the appropriate means through which such requests by the media are to be brought. *See, e.g.*, *Shingara v. Skiles*, No. 05-2376, slip op. at 2, 4 (3d Cir. Aug. 24, 2005) (ruling on motion of non-party newspaper, which intervened pursuant to Rule 24(b), to challenge district court's protective order) (attached as Exhibit 20 to the Declaration of Gayle C. Sproul ("Sproul Decl."), which was attached to Exhibit 1 of the motion to intervene); *Pansy*, 23 F.3d at 778 (reversing trial court order denying news organizations' request to intervene pursuant to Rule 24(b) in civil rights lawsuit brought against local government); *United States v. Antar*, 38 F.3d 1348, 1352 (3d Cir. 1994) (ruling on motion of news organizations that intervened in trial

court proceedings to seek access to juror identities); *Dashner v. Riedy*, 2004 U.S. Dist. LEXIS 19980, at *1 (E.D. Pa. Sept. 30, 2004) (court first granted newspaper's motion to intervene for the purpose of seeking access to sealed transcript of in camera testimony) (Sproul Decl., Ex. 21). None of these decisions was premised on the outcome of the underlying request for access. To the contrary, in *Dashner*, for example, Judge Gardner first granted the motion to intervene and then resolved the substantive motion for access. *Dashner*, *supra*, *1.

The intervention opinions relied upon by the Court in its September 7 Memorandum do not suggest a contrary approach. Those decisions – one based on a motion to intervene filed in this case (*Kitzmiller v. Dover Area School District*, 2005 WL 578974 (M.D. Pa. Mar. 10, 2005)) and *Hoots v. Pennsylvania*, 672 F.2d 1133, 1136 (3d Cir. 1982) – simply do not apply. In *Kitzmiller*, the proposed intervenors sought to position themselves as defendants in the case, as did the proposed intervenors in *Hoots*.

In *Hoots*, the Third Circuit upheld the denial of permissive intervention pursuant to Rule 24(b) because "the interests of the applicant in every manner match those of an existing party and the party's representation is deemed adequate, [thus] the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be

superfluous and that any resulting delay would be 'undue.'" 672 F.2d at
1136; *accord, Kitzmiller, supra,* \*6 ("we do not find that any interest alleged
by the Applicants is not being adequately represented by Defendants in this
action [citing *Hoots*]").

Here, Court TV's interests do not "match those of an existing party"
in any respect, nor are its interests "adequately represented." Indeed, the
parties have not taken any position on Court TV's request nor do they
illuminate in any way the Court's understanding of the narrow and distinct
issue raised by Court TV. Hence, it is error to conclude that Court TV's
"contribution to the proceedings would be superfluous."

Thus, Court TV should be granted the status of intervenor for the
limited purpose requested and be permitted to file its motion to record and
telecast the trial, or, in the alternative, the Court may deem the motion filed.
At that juncture, Court TV strongly urges the Court to reconsider its
conclusion that it has no power to consider that substantive motion nor the
discretion to grant it. Even if, however, the Court concludes that the
substantive motion should be denied, this will not have been an empty
exercise. The matter will have been decided on a full record, which is just

7

**B.    The Court Should Reconsider Its Conclusion That It Has No Discretion to Permit Court TV to Record and Televise the Trial.**

This Court has the discretion – and the power – to decide whether to permit televised coverage of the trial. The discretion emanates from the pertinent local rule, which provides the Court with discretion to decide "in any specific case" to depart from the general prohibition on televised coverage of trials, and that discretion is not circumscribed by the guidelines promulgated by the Federal Judicial Conference. Thus, Court TV respectfully requests that the Court reconsider its conclusion to the contrary, and, ultimately, exercise its discretion to grant Court TV's request to record and televise the trial.

The guidelines promulgated by the Judicial Conference are "suggestions"; they are not, as the Court characterized them in its Memorandum, "mandates." Sept. 7 Memorandum at 6. *See* 28 U.S.C. § 331 (providing that the Judicial Conference "shall make a comprehensive survey of the condition of business in the courts" and "*shall also submit suggestions and recommendations to the various courts* to promote uniformity of management procedures") (emphasis added); *see also* http://www.uscourts.gov/faq.html#conference ("Federal Judges" webpage of

8

the U.S. Courts website, stating that the Judicial Conference "shall . . .
submit *suggestions* to the various courts in the interest of promoting
uniformity of management procedures and the expeditious conduct of court
business") (emphasis added).

Thus, the guidelines of the Judicial Conference are suggestions; they
are not binding. Indeed, this was the specific conclusion reached by three
judges in the District Courts in New York, who, faced with similar requests
by Court TV, concluded, in cases of arguably far less public significance
than the one now before this Court that, while the Judicial Conference's
suggestions were "persuasive," they are "not controlling." *Sigmon v. Parker
Chapin Flattau & Klimpl*, 937 F. Supp. 335, 336 (S.D.N.Y. 1996); *see also
Hamilton v. Accu-Tek*, 942 F. Supp. at 137(same); *Marisol A. v. Giuliani*,
929 F. Supp. 660, 661 (S.D.N.Y. 1996) (same); *Katzman v. Victoria's Secret
Catalogue*, 923 F. Supp. 580, 584 (S.D.N.Y. 1996) (same). Each of these
courts held that it had discretion to follow the rule of its district on televising
courtroom proceedings, even when doing so contradicted the guidelines
promulgated by the Judicial Conference.

Recent examples further demonstrate that federal courts have the
power to depart from the guidelines of the Judicial Conference. As
explained more fully in the attached Memorandum of Law, when the Ninth

9

Circuit heard oral argument in the Napster file-sharing case, it allowed C-SPAN to televise the argument. *See A&M Records, Inc. v. Napster, Inc.*, No. 00-16401 (9th Cir. Sept. 25, 2000) (order granting applications to audio or video record) (Sproul Decl., Ex. 22). Likewise, the D.C. Circuit permitted the press to disseminate live audio coverage of the oral arguments in *United States v. Microsoft Corporation*. *See Appeals Hearing to Be Live on Radio, Internet*, SEATTLE TIMES, Feb. 13, 2001, at C1 (Sproul Decl., Ex. 23). Similarly, in another case of great public significance – *Bush v. Gore* – the Supreme Court departed from its traditional procedure by releasing to the public the audiotape of the oral argument in its chambers in *Bush v. Gore* immediately upon the conclusion of the argument. *See* Letter from Chief Justice Rehnquist to Barbara Cochran, Radio-Television News Directors Association (Nov. 28, 2000) ("In light of the public interest . . . the Court today has decided to release a copy of the audiotape of the argument promptly after the conclusion of the argument.") (Sproul Decl., Ex. 19). The Supreme Court argument was immediately broadcast in its entirety on radio and television stations throughout the United States.

This Court is bound only by the applicable local rule, Rule 83.1.1, which generally prohibits camera coverage, but which explicitly provides this Court with the discretion to depart from the rule in a *"specific case"*:

10

"The court may make such orders as may be necessary in connection with any specific case to protect the rights of all parties and the public." As set out more fully in the attached Memorandum of Law, this language provides the Court with discretion sufficient to grant – or deny – Court TV's request to televise the trial proceedings. *See* Memorandum of Law, pp. 7-10 (discussing, *inter alia*, that the use of the word "may" in the rule confers discretion upon the Court and contrasting Rule 83.1.1 with Fed. R. Crim. P. 53, which is a flat ban on camera coverage that permits no exceptions).

Court TV is not asking that the Court exercise this discretion arbitrarily or capriciously. As explained more fully in the attached Memorandum of Law (pp. 10-21), this is a case of great public moment and yet it poses none of the concerns commonly asserted when the prospect of television coverage is raised. There is no jury to protect, no private information to shield, no salacious content, no rights of a criminal defendant at stake, no intrusive cameras, and no objection from any party. *See e.g.*, *Sigmon*, 937 F. Supp. at 336-37 ("The question of how the Court should apply that discretion in light of the persuasive effect of the position of the Judicial Conference is made simpler . . . by the fact that neither plaintiff nor defendant objects in principle to the taping and broadcast of the trial.").

11

Thus, if, as the Court suggests, it is "philosophically inclined to allow cameras within [its] courtroom" (Sept. 7 Memorandum, pp.7-8), its hands are not tied by either the suggestions of the Judicial Conference or the Local Rules. This unique case, as almost no other, warrants the comprehensive coverage that Court TV provides and the public desires and deserves. Memorandum of Law, pp. 10-21.

## IV.   CONCLUSION

For these reasons, Court TV respectfully requests that the Court reconsider its denial of the motion to intervene; permit Court TV to intervene and deem filed its unopposed motion to record and telecast; on the basis of a full record, reconsider its conclusion that it does not have the power to grant the motion to record and telecast; and grant the motion to record and telecast the trial of this matter.

Dated:  September 9, 2005

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

By: _____

Lee Levine*
Gayle C. Sproul
Michael Berry
2112 Walnut Street, Third Floor
Philadelphia, Pennsylvania 19103
(215) 988-9778 (phone)
(215) 988-9750 (facsimile)
llevine@lskslaw.com
gsproul@lskslaw.com
mberry@lskslaw.com

*Attorneys for Intervenor*
*Courtroom Television Network LLC*

\*      Petition for special admission filed on September 2, 2005.