-1-

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY KITZMILLER; BRYAN AND CHRISTY REHM; DEBORAH FENIMORE AND JOEL LIEB; STEVEN STOUGH; BETH EVELAND; CYNTHIA SNEATH; JULIE SMITH; AND ARALENE ("BARRIE") D. AND FREDERICK B. CALLAHAN, <br><br> Plaintiffs, <br><br> v. <br><br> DOVER AREA SCHOOL DISTRICT; DOVER AREA SCHOOL DISTRICT BOARD OF DIRECTORS, <br><br> Defendants. | Civil Action No. 04-CV-2688 <br><br> Honorable John E. Jones III |

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANTS'
REPLY BRIEF IN SUPPORT OF ITS MOTION IN LIMINE
TO PRECLUDE PLAINTIFFS FROM USING OR INTRODUCING
<u>AT TRIAL NEWS MATERIALS</u>**

Plaintiffs submit this sur-reply brief to address two points of law made in defendants' reply brief. (Doc. 196). For all other arguments made by defendants in their reply brief, plaintiffs refer the Court to our Brief in Response to Defendants' Motions *in Limine*. (Doc. 189).

## I. Newspaper Articles are Non-hearsay Evidence Demonstrating a Religious Effect.

Defendants seek to preclude plaintiffs from entering any news materials into evidence for any purpose. While defendants have made arguments that the statements in the articles by board members and school-district administrators cannot be introduced for the truth of the matter asserted, which arguments plaintiffs address in their Response (Doc. 189) and Section II below, defendants' truly extraordinary assertion is that the articles cannot come into evidence even when they are not hearsay. Defendants attempt to argue that the proffered newspaper articles are irrelevant and therefore inadmissible as evidence of *effect* because, they say, in determining the challenged policy's effect this Court must focus narrowly on what Dover's ninth-grade biology students would perceive that effect to be, and may not look to how the broader community perceives the policy. This view cannot be squared with controlling Supreme Court precedent.

1. First of all, in *Santa Fe Independent School District v. Doe*, 530 U.S. 290 (2000), the Supreme Court made clear not only that a challenged school policy should be considered from, among other things, the perspective of an

objective student observer of the same age and level of sophistication as the actual students to whom the policy is directed; but also that courts should scrutinize the policy's legislative history and context. *Id.* at 308. *Santa Fe* involved a challenge to student-initiated, student-led invocations at public-high-school football games. The Court concluded that "an objective Santa Fe High School student will unquestionably perceive the inevitable pregame prayer as stamped with her school's seal of approval." *Id.* But the Court did not stop there. Instead, it went on to hold that the "text and history of this policy * * * reinforce our objective student's perception that the prayer is, in actuality, encouraged by the school." *Id.* at 308. The Court, in other words, did not blind itself to the policy's legislative history, as defendants here advocate. Nor did it ask whether the affected high-school students actually knew the policy's history before treating evidence of that history as both relevant and highly probative. Instead, the Court treated legislative history and the objective student's perceptions as two separate indicia of the policy's unconstitutional effect.

        2.    The Supreme Court in *Santa Fe* also made clear that, when evaluating a school district's actions, courts should consider not just how an objective student would perceive them, but how the entire "listening audience" would perceive the conduct. *Id.* In that case, the "listening audience" was not just students, but the entire "large audience" that attended the football games — an

audience that included parents and other members of the community. *Id.* at 308. Here, the listening audience is broader yet: The challenged policy was the subject of public debates in school-board meetings (where the board members defended the policy to parents and other concerned citizens using explicitly religious terms). Board-member Heather Geesey defended the policy to the broader community in a letter to the editor of a local York newspaper (again employing explicitly religious terms). The local newspapers informed their readers about the public controversy (describing it as, at its core, a religious dispute and not a pedagogical one). And most obviously, the district expressly invited the entire community into the controversy (by sending every household in the district a newsletter affirmatively advocating for intelligent design).

   Because everyone in Dover received defendants' message of religious endorsement — in part because the district made sure that they did — defendants cannot run away from the fact that their actions must now be evaluated in part from the standpoint of the community as a whole.

   3. What is more, there is strong evidence that the challenged policy has generated substantial community divisiveness that goes well beyond the confines of the Dover Area High School biology classes. Notable in that regard is the record evidence that defendants' conduct so marginalized those who did not share defendants' religious views that three of the board's own number were

driven to resign. *See* Opp. Mot. Summ. J. at 63-64; *cf. Santa Fe*, 530 U.S. at 309-10 ("[s]chool sponsorship of a religious message is impermissible because it sends the ancillary message to members of the audience who are nonadherents 'that they are outsiders, not full members of the political community * * *.'" (citation omitted)). For that reason too, the focus here must be on the wider community as well as on the students, and defendants' attempts to present the policy's effects as limited to the students are therefore legally insupportable as well as factually false.

      4.    Because a reasonable, informed adult member of the Dover community would at minimum be aware of the reports about the controversy in the local newspapers, such an observer could surely conclude — based in part on those reports — that the policy advances or endorses religion. And lest there be any doubt that this Court can look to the newspaper articles to establish the community's "collective social judgment" in that way (*Capital Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 780 (1995) (O'Connor, J., concurring)), the Supreme Court did exactly that in *Epperson v. Arkansas*, 393 U.S. 97, 108 n.16 (1968). Defendants' assertion that community perceptions are "irrelevant" (Reply Supp. Mot. in Limine to Preclude News Materials at 10) flies in the face of *Epperson*.

So quite apart from the fact that the articles speak directly and powerfully to the board's purpose in formulating and implementing its policy,

*Santa Fe*, *Epperson*, and a host of other decisions demonstrate that a reasonable, objective observer in the Dover community could look to the proffered articles (along with other pertinent information) in drawing conclusions about whether the district was advancing religion.

5. But even if defendants were correct that this Court must blind itself to everything except how Dover students would perceive the policy, that still would not be a valid basis for excluding the articles as irrelevant. The Third Circuit has made clear that "the reasonable observer is an informed citizen who is more knowledgeable than the average passerby" (*Modrovich v. Allegheny County, Pa.*, 385 F.3d 397, 407 (3d Cir. 2004)), and therefore that, in conducting "***any such inquiry***, 'the 'history and ubiquity' of a practice is relevant because it provides part of the context in which a reasonable observer evaluates whether a challenged governmental practice conveys a message of endorsement of religion'" (*ACLU v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1486 (3d Cir. 1986) (*quoting County of Allegheny v. ACLU*, 492 U.S. 573, 630 (1989)) (emphasis added)). The inquiry is thus an objective one that is not hamstrung by the limited knowledge of any actual high-school student. So even in evaluating the policy from the standpoint of an objective Dover ninth-grader, this Court would not ignore press coverage because an intelligent, informed ninth grader is wholly competent to read the newspaper and draw conclusions about defendants' policy therefrom. In other

words, the objective-student standard does not require the Court to assume the role of the 'ignorant kid' that the defendants apparently wish to posit; it instead requires the Court to evaluate all the effect evidence albeit with the recognition that a ninth grader would undertake analysis of that evidence with somewhat less sophistication than an objective adult would.  *Cf. McCreary*, 125 S. Ct. at 2736-37 ("[T]he Counties are simply asking us to ignore perfectly probative evidence; they want an absentminded objective observer, not one presumed to be familiar with the history of the government's actions and competent to learn what history has to show" (*citing Santa Fe*, 530 U.S. at 308 (objective student observer is familiar with "'implementation of'" government action) (citation omitted))).

## II.     Statements by the School Board Members and Administrators Are Admissible as Admissions of a Party Opponent.

Defendants' argument that the relevant statements by the school-board members and administrators are not statements by a party opponent because these individuals are not parties to this action demonstrates a clear misunderstanding of the applicable Federal Rule of Evidence.  Rule 801(d)(2)(D) provides that, "[a] statement is not hearsay if – the statement is offered against a party and is . . . (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."  Fed. R. Evid. 801(d)(2)(D).  Despite defendants' contention, the Rule does not require that the individuals making the statements actually be parties to the action; rather, it

requires that they be agents or employees of a party to the action.  Fed. R. Evid. 801(d)(2)(D); 30B Michael H. Graham, *Federal Practice and Procedure* § 7023 (2d ed. 2000) ("A statement of an agent or servant concerning a matter within the scope of his employment, made during the existence of the relationship, is an admission of his employer.").

As numerous courts have held, statements made by school-board members and administrators acting as agents for school districts are not hearsay and are admissible as statements by party opponents.  *See e.g. Wilkerson v. Columbus Separate Sch. Dist.*, 985 F.2d 815, 818 (5th Cir. 1993) (considering statements by school-board members as evidence against the defendant school district because the board members were the district's agents); *Savarese v. Agriss*, 883 F.2d 1194, 1200-1201 (3d Cir. 1989) (holding that statements to local newspaper by former county-transportation-authority board member, during his board membership, that were directly related to purpose of previously held board meeting, were admissible as admissions against party opponent); *Biver v. Saginaw Township Cmty. Sch.*, 805 F.2d 1033 (6th Cir. 1986) (holding that statements of school superintendent at school-board budget meeting were not hearsay because they were within scope of his agency and were admissible as admissions against party opponent); *Contini v. Bd. of Educ.*, 668 A.2d 434, 444 (N.J. Super. Ct. App. Div. 1995) (holding that an audit containing statements by representatives of board

of education were within scope of the representatives' duties and were admissible against board as statements of party opponents).[1]  As such, Rule 801(d)(2)(D) clearly renders admissible the statements by the school-board members and the administrators that plaintiffs seek to offer against defendants, because these statements were made while the board members and administrators were agents of the school district and they concerned a matter within the scope of that agency relationship — namely, a school-district policy related to the teaching of biology.

---

[1] *Contini* applies New Jersey statutes rather than the Federal Rules of Evidence, but the statute relied upon by the court in ruling that the evidence was admissible as an admission of a party-opponent adopts the language and conditions of Federal Rule of Evidence 801(d)(2) and, therefore, the analysis would be the same under the Federal Rules.

### III.     Conclusion

For all the foregoing reasons, defendants' motion *in limine* to preclude plaintiffs from using or introducing at trial news materials should be denied.

*/s/ Eric Rothschild*
Eric Rothschild (PA 71746)
Alfred H. Wilcox (PA 12661)
Stephen G. Harvey (PA 58233)
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000
(215) 981-4750 (fax)
*rothschilde@pepperlaw.com*
*wilcoxa@pepperlaw.com*
*harveys@pepperlaw.com*

Thomas B. Schmidt, III (PA 19196)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
O. Box 1181
Harrisburg, PA  17108
(717) 255-1155
(717) 238-0575 (fax)
*schmidtt@pepperlaw.com*

Witold J. Walczak (PA 62976)
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213
412-681-7864
412-681-8707 (fax)
*vwalczak@aclupgh.org*

Paula K. Knudsen (PA 87607)
ACLU of Pennsylvania
105 N. Front St., Suite 225
Harrisburg, PA  17101
(717) 236-6827
(717) 236-6895 (fax)
*pknudsen@aclupa.org*

Ayesha Khan (adm. *phv*)
Richard B. Katskee (adm. *phv*)
Alex J. Luchenitser (adm. *phv*)
Americans United for Separation
    of Church and State
518 C St., NE
Washington, DC 20002
(202) 466-3234
(202) 466-2587 (fax)
*akhan@au.org; katskee@au.org; luchenitser@au.org*

Attorneys for Plaintiffs,
TAMMY KITZMILLER; BRYAN AND CHRISTY REHM; DEBORAH FENIMORE AND JOEL LIEB; STEVEN STOUGH; BETH EVELAND; CYNTHIA SNEATH; JULIE SMITH, AND ARALENE ("BARRIE") D. AND FREDERICK B. CALLAHAN

Dated:  September 21, 2005

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2005, a copy of the foregoing Plaintiffs' Sur-Reply in Opposition to Defendants' Reply Brief should be served on the following counsel through the electronic case filing system:

| | |
|---|---|
| Richard Thompson, Esquire<br>Robert J. Muise, Esquire<br>Patrick T. Gillen, Esquire<br>Thomas More Law Center<br>24 Frank Lloyd Wright Drive<br>P.O. Box 393<br>Ann Arbor, MI  48106 | (Counsel for Defendants) |
| Ron Turo, Esquire<br>Toro Law Offices<br>28 South Pitt Street<br>Carlisle, PA 17013 | (Local Counsel for Defendants) |

*/s/ Eric Rothschild*
Eric Rothschild (71746)