**THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TAMMY KITZMILLER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 04-CV-2688 |
| | ) | (Hon. Judge Jones) |
| v. | ) | |
| | ) | |
| DOVER AREA SCHOOL DISTRICT and | ) | DEFENDANTS' REPLY |
| DOVER AREA SCHOOL DISTRICT | ) | IN SUPPORT OF MOTION |
| BOARD OF DIRECTORS, | ) | *IN LIMINE* TO EXCLUDE |
| | ) | THE TESTIMONY OF |
| Defendants. | ) | BARBARA FORREST, PH.D. |
| | ) | |

Pursuant to Rule 702, this Court's "rigorous gatekeeping function" applies "to cases involving non-scientific testimony," such as that proffered by Barbara Forrest, Ph.D. ("Forrest"). *See Elcock v. Kmart Corporation*, 233 F.3d 734, 744 (3rd Cir. 2000). Forrest does not get a "free pass" simply because her proffered testimony is "non-scientific."

1

According to Forrest, her "area of expertise is the nature and strategy of the intelligent design (ID) creationist movement." (Rep. at 1 at Ex. 11).[1] In particular, she claims to be an expert on the "Wedge strategy." (Forrest Dep. at 48 at Ex. 12). Forrest is not an expert in science, religion, the philosophy of science, or the philosophy of education.  (Forrest Dep. at 48, 49, 50, 56, 76, 178 at Ex. 12). Plaintiffs claim, "Forrest is not testifying to any scientific subject." (Pls.' Opp'n at 35).  Plaintiffs further claim that Forrest "is not testifying, for example, either that evolution is scientifically accurate or not." (Pls.' Opp'n at 35).  Thus, based on her lack of expertise and qualifications—as Plaintiffs admit here, Forrest is similarly not qualified to testify as to whether intelligent design is scientifically accurate or not (i.e., whether it is science).  Yet, that is the crux of her opinion. (*See* Rep. at 1 at Ex. 11) ("My research reveals that ID is not science.").  In an effort to remedy this fatal defect, Plaintiffs seek to transmogrify Forrest into a historian, which she is not.  *Waldorf v. Shuta*, 142 F.3d 601, 625 (3rd Cir. 1998) ("Even though we apply Rule 702 liberally, we have not pursued a policy of qualifying *any* proffered witness as an expert.").

Even assuming Forrest's suspect credentials are sufficient for her to "qualify" as an expert, the marginal nature of these qualifications plainly enters

---

[1] The numbered exhibits were previously filed along with Defendants' brief in support of their motion *in limine*. (Doc. 159-1).  The lettered exhibits are filed along with this reply.

into the *Daubert* calculus to further undermine the reliability of her opinions. *See Elcock,* 233 F.3d at 744; *In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717, 741 (3rd Cir. 1994) ("*Paoli II*").

Plaintiffs claim that because Forrest is not testifying to any "scientific subject," "the *Daubert/Paoli* reliability criteria are largely inapplicable." (Pls.' Opp'n at 35). Thus, Plaintiffs seek to have this Court ignore its gatekeeping obligation and simply permit Forrest to testify without examining the errors in her methodology. That would be an error.

In *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141 (1999), the Court concluded that "*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." The Court further stated, "a trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony." *Id.* at 152.

As Defendants noted in their supporting brief, because of the non-scientific nature of Forrest's testimony, this Court can only roughly analogize to the relevant *Daubert* factors. (Defs.' Br. at 14). Nonetheless, this Court must still make a reliability determination and the *Daubert* factors provide some measure for doing so. *See, e.g., Elcock,* 233 F.3d at 747-48.

3

As Defendants noted in their supporting brief and as the arguments below will further demonstrate, Forrest's "methodology" is unreliable and has resulted in a subjective evaluation and judgment based entirely upon subjectively chosen data. In essence, Forrest has collected hearsay statements[2] and anecdotal information that she has taken out of context and spliced it together in an effort to impugn the motives of so-called "Wedge leaders," with no evidence connecting this so-called "Wedge strategy" to the facts of this case.[3]  Such testimony will not assist the trier of fact and should be excluded.

A simple example is illustrative of the lack of intellectual rigor in Forrest's purported "methodology."   Forrest spends a considerable amount of time in her expert report vilifying Dr. William Dembski ("Dembski") because he has a professed Christian worldview.  (*See* Rep. at 32-35 at Ex. 11).  She cites many philosophical and religious statements purportedly made by Dembski. Yet, Forrest does not reveal that Dembski has a doctorate in philosophy from the University of Illinois and a masters of divinity from Princeton Theological Seminary.  It should

---

[2] With no citation to any rule of law, Plaintiffs make the following erroneous claim, "There is no hearsay issue for FTE materials relied upon by Dr. Forrest, because they have been authenticated in sworn testimony that will be part of the trial-court record through the designation of the deposition of FTE president Jon Buell." (Pls.' Opp'n at 37, n.5).  Contrary to Plaintiffs' claim, all that they have is authenticated hearsay, which is still inadmissible.

[3] Q.  Do you believe that the people who prepared the policy were acting under the guidance of the intelligent design movement?
A.  I have no way to know.  (Forrest Dep. at 172:18-21 at Ex. 12).

come as little surprise that Dembski would make statements that are philosophical and theological in nature. However, Dembski also holds a doctorate in mathematics from the University of Chicago, and his principal contribution to the theory of intelligent design is based on his expertise in mathematics. Indeed, he received the "Outstanding Dissertation Award in Fine Arts and Humanities" for his doctoral dissertation, *The Design Inference*, which was subsequently published in 1998 by Cambridge University Press—a prestigious academic press. (*See* Ex. A). The ideas outlined in *The Design Inference* are Dembski's most significant contribution to intelligent design. Yet, Forrest makes no mention of this. Thus, Forrest's "methodology" lacks intellectual integrity because she has made no effort to distinguish whether Dembski is involved in philosophical, theological, or scientific discourse in any given piece, something that is manifestly required, where, as here, the author is credentialed in more that one discipline and engages in intellectual exchanges in each of them.

The subjective nature and unreliability of Forrest's "methodology" is further demonstrated by the following. Applying Forrest's "methodology," one could conclude that the theory of evolution was not science, but rather a politically and philosophically motivated effort to advance anti-religious claims. This could be shown by relying solely on "primary source data," such as "statements made by the leaders" of this "movement." For example, the prominent evolutionary biologist

Richard Dawkins of Oxford University wrote, "Darwin made it possible to be an intellectually-fulfilled atheist." (Ex. B). The late Stephen Jay Gould, a prominent paleontologist from Harvard, claimed, "[B]iology took away our status as paragons created in the image of God . . . ." and "Before Darwin, we thought that a benevolent God had created us." (Ex. C). The late George Gaylord Simpson, an evolutionary biologist and paleontologist, claimed, "Man is the result of a purposeless and materialistic process that did not have him in mind. He was not planned." (Ex. D).

<u>All</u> of the above data are directly from the writings of the leaders in question. Therefore, applying Forrest's methodology, public schools should refrain from teaching the Darwinian theory of evolution because—by Forrest's measure at least—the theory of evolution is not science.

This all goes to show that Forrest's result-oriented approach is not a reliable "methodology" at all. That is, unless one is willing to accept the farcical notion that the selective culling of hearsay statements taken out of context and used to support a predetermined conclusion is "reliable." This "methodology" and "expertise" might sell popular books, but it will not assist a trier of fact in a court of law.

In the final analysis, upon this Court's assessment of the reasoning and methodology underlying Forrest's testimony and the data she relies upon in

reaching her biased, subjective conclusions, it is evident that she should be excluded from testifying as an expert witness in this case.

## CONCLUSION

For the foregoing reasons and for those stated in Defendants' motion and supporting brief, this Court should exclude the testimony of Dr. Barbara Forrest.

Respectfully submitted this 21st day of September, 2005.

By:

Robert J. Muise (MI P62849)*
Richard Thompson (MI P21410)*
Patrick T. Gillen (MI P47456)*
Edward L. White III (MI P62485)*
THOMAS MORE LAW CENTER
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, Michigan 48106
(734) 827-2001
Fax: (734) 930-7160

* Admitted *pro hac vice*

Ron Turo
TURO LAW OFFICES
29 South Pitt Street
Carlisle, Pennsylvania 177013
(717) 245-9688

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2005, a copy of the foregoing *Defendants' Reply in Support of Motion in Limine to Exclude the Testimony of Barbara Forrest, Ph.D.* and exhibits were served on the following counsel through the electronic case filing system:

Eric Rothschild                                     (Counsel for Plaintiffs)
Stephen G. Harvey
Joseph M. Farber
Benjamin M. Mather
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103

Thomas B. Schmidt, III
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
PO Box 1181
Harrisburg, PA 17108

Witold J. Walczak
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213

Paula K. Knudsen
ACLU of Pennsylvania
105 N. Front Street
Suite 225
Harrisburg, PA 17101

Richard B. Katskee
Ayesha Khan
Alex J. Luchenitser
Americans United for Separation
  of Church and State
518 C Street, NE
Washington, DC 20002

Mary Catherine Roper
ACLU of Pennsylvania
P.O. Box 1161
Philadelphia, PA  19105

Robert J. Muise*
Admitted *pro hac vice*