IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TAMMY KITZMILLER, et al., )
    Plaintiffs, ) Case No. 04-CV-2688
) (Hon. Judge Jones)
v. )
) (Filed Electronically)
DOVER AREA SCHOOL DISTRICT, et al.,)
    Defendants. )
_____)

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION IN LIMINE
TO PRECLUDE PLAINTIFFS FROM USING OR INTRODUCING
AT TRIAL EVIDENCE RELATED TO DISCOVERY INSTITUTE,
FOUNDATION FOR THOUGHT AND ETHICS, JON BUELL,
CHARLES THAXTON, PHILLIP JOHNSON,
<u>PERCIVAL DAVIS, AND DEAN KENYON</u>**

Defendants submit this reply brief in support of their motion in limine. (Docs. 156-157.) This court should preclude plaintiffs from using or introducing this evidence at the trial of this action.

### The Evidence Is Irrelevant

What is at issue in this case, and is therefore relevant, is whether the purpose and primary effect of defendants' modest policy change to the science curriculum violates the Establishment Clause to the United States Constitution because its

primary purpose or primary effect is to advance religion. *Lemon v. Kurtzman,* 403 U.S. 602 (1971); *Edwards v. Aguillard,* 482 U.S. 578 (1987).

The evidence plaintiffs seek to introduce regarding Discovery Institute, Foundation for Thought and Ethics (FTE), Jon Buell, Charles Thaxton, Phillip Johnson, Percival Davis, and Dean Kenyon is irrelevant to the matters at hand, and plaintiffs have failed in their response to show the logical relationship between this evidence and a "fact of consequence" in this case. This evidence is inadmissible. Fed. R. Evid. 401, 402.

Plaintiffs have not refuted the undeniable fact that the Discovery Institute evidence plaintiffs seek to use and introduce, including Discovery Institute's goals, motives, purposes, objectives, and so-called "Wedge Strategy," played no role in the development and enactment of defendants' policy. (Doc. 157, Ex. A, Buckingham Decl. ¶¶ 11-13; Ex. B, Bonsell Decl. ¶¶ 11-13; Ex. C, Cleaver Decl. ¶¶ 10-12; Ex. D, Geesey Decl. ¶¶ 11-13; Ex. E, Harkins Decl. ¶¶ 11-13; Ex. F, Nilsen Decl. ¶¶ 11-13; Ex. G, Baksa Decl. ¶¶ 10-12.)

Because it is only defendants' policy that is at issue in this case, not Discovery Institute's policy, goals, objective, or motives, the evidence is irrelevant to a determination of the constitutional question at issue under *Lemon.* The evidence is inadmissible.

Along the same lines, plaintiffs have not refuted the undeniable fact that the evidence they seek to use and introduce regarding FTE (including its goals, purposes, objective, and motives and drafts and versions of *Of Pandas and People*) and regarding Buell, Thaxton, Johnson, Davis, and Kenyon played absolutely no role in the development and enactment of the policy in question. Plaintiffs also have not refuted the undeniable fact that school board members and school district administrators never communicated with Buell, Thaxton, or FTE concerning the origins, drafts, and purposes of the supplemental text, *Of Pandas and People* (published by FTE and written by Davis and Kenyon), did not speak with them about the origins, mission, purpose, or projects of FTE, and never spoke with Johnson, Davis, or Kenyon. Moreover, plaintiffs have not refuted the undeniable fact that school board members and school district administrators had never seen any drafts of *Of Pandas and People*. (Doc. 157, Ex. A, Buckingham Decl. ¶¶ 4-10, 14; Ex. B, Bonsell Decl. ¶¶ 4-10, 14; Ex. C, Cleaver Decl. ¶¶ 4-9, 13; Ex. D, Geesey Decl. ¶¶ 4-10, 14; Ex. E, Harkins Decl. ¶¶ 4-10, 14; Ex. F, Nilsen Decl. ¶¶ 4-10, 14; Ex. G, Baksa Decl. ¶¶ 4-9, 13; Ex. H, Buell Depo. at 130-35; Ex. I, Thaxton Depo. at 97-104.)

Because it is only defendants' policy that is at issue in this case, not the policy, goals, objectives, and motives of FTE, Buell, Thaxton, Johnson, Davis, and

Kenyon, the evidence is irrelevant to a determination of the constitutional question at issue under *Lemon*. The evidence is inadmissible.

With regard to defendants' policy, the focus is on the primary effect of the policy on its intended audience: the ninth grade biology students at Dover High School. *See, e.g., Freiler v. Tangipahoa Parish Bd. of Educ.*, 185 F.3d 337, 346 (5th Cir. 1999); *Brown v. Woodland Joint Unified School District*, 27 F.3d 1373, 1379 (9th Cir. 1994) (in determining the primary effect of the school's policy under the *Lemon* test, the question is whether an objective observer in the position of an elementary school student would perceive an advancement or inhibition of religion); *Roberts v. Madigan*, 921 F.2d 1047, 1057-58 (10th Cir. 1990) (in considering the primary effect of a teacher's use of religious materials in his classroom, the court viewed the matter from the "eyes of the children" in the "classroom environment.").[1]

---

[1] Plaintiffs' apparent claim that the "endorsement test" should be used is incorrect. *Lemon* and *Edwards* are the controlling law in this case and require this court to determine whether defendants' policy lacks a secular purpose or its principal or primary effect advances or inhibits religion. *E.g., Edwards*, 482 U.S. at 582-83. As the Third Circuit has recognized, the "endorsement test" has been developed for, and applied with respect to, cases involving religious displays, which are not at issue in this action. *See Modrovich v. Allegheny County*, 385 F.3d 397, 401 (3rd Cir. 2004) ("[T]he 'endorsement' test modifies *Lemon* in cases involving religious displays on government property."). The Supreme Court has never applied the "endorsement test" to claims that curriculum violates the Establishment Clause. Consequently, "[a]bsent a counter directive by the Supreme Court," *see Otto v. Pennsylvania State Educ. Ass'n*, 330 F.3d 125, 132-33 (3rd Cir. 2003), this court must "likewise make no exception," *id.*, to the straightforward


The issue is not the primary effect of the policy, goals, motives, purposes, or objectives of Discovery Institute, FTE, Buell, Thaxton, Johnson, Davis, or Kenyon (or earlier versions and drafts of *Of Pandas and People*) on ninth grade students in Dover High School.

Any student who reads or hears defendants' policy would be unaware of the goals, motives, purpose, and objectives of Discovery Institute, FTE, Buell, Thaxton, Johnson, Davis, and Kenyon, none of whom are mentioned in defendants' policy and none of whom had any role in the development or enactment of defendants' policy.

Moreover, any student who chooses to review the text of *Of Pandas and People* would have no knowledge about drafts or prior versions of the text. It is obvious that evidence regarding drafts and prior versions of the text cannot be used on the theory that students can somehow receive information no longer in the text.

Accordingly, the evidence relating to Discovery Institute, FTE, Jon Buell, Charles Thaxton, Phillip Johnson, Percival Davis, and Dean Kenyon is inadmissible because the evidence is irrelevant to the issues at hand. Fed. R. Evid. 401, 402.

---

application of the *Lemon* test the Supreme Court has employed with respect to claims that the purpose and effect of a curriculum change was improper.

## The Evidence Is Inadmissible Hearsay

Agreeing with defendants' position, (Doc. 157 at 8), plaintiffs concede that the evidence they seek to introduce regarding Discovery Institute, FTE, Buell, Thaxton, Johnson, Davis, and Kenyon is hearsay. (Doc. 189 at 29.) Understanding that the evidence is hearsay, plaintiffs unsuccessfully attempt to fit the evidence into the residual hearsay exception of Fed. R. Evid. 807 and the "state of mind" exception of Fed. R. Evid. 803(3). The exceptions should not be employed here.

As the Third Circuit has explained, the residual hearsay exception is rarely used and "only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present." *United States v. Bailey,* 581 F.2d 341, 347 (3rd Cir. 1978).

To fall within the exception, the statement must have "guarantees of trustworthiness," and (A) be offered as evidence of a material fact, (B) be "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts," *and* (C) "the general purposes of these rules and the interest of justice will best be served by admission of the statement into evidence." Fed. R. Evid. 807. The evidence plaintiffs seek to submit under Rule 807 does not meet *any* of the requirements of the Rule.

The statements lack the guarantees of trustworthiness and are not more probative than other evidence plaintiffs can procure through reasonable efforts. Plaintiffs have offered no proof that this hearsay evidence has "exceptional guarantees of trustworthiness." *Bailey*, 581 F.2d at 347. Also, the evidence is not more probative than other non-hearsay evidence plaintiffs could offer through reasonable efforts, and the evidence is irrelevant to the issues at hand.[2]

Moreover, the evidence does not fall within Rule 807 because it is not being offered "as evidence of a material fact." As explained above, the evidence is irrelevant and therefore not material to any fact of consequence in this case. *See* Fed. R. Evid. 401, 402. In addition, the general purpose of the rules of evidence and the interest of justice would not be served by admitting this irrelevant, hearsay evidence at trial. *See* Fed. R. Evid. 807; Fed. R. Evid. 102.

With regard to plaintiffs' "state of mind" contention, as the Third Circuit has warned, the scope of the state of mind exception of Rule 803(3) "must be limited to prevent it from devouring the [hearsay] rule." *United States v. Hernandez*, 176

---

[2] Plaintiffs wrongly claim that defendants have authenticated that the "Wedge Document" was authored by the Discovery Institute by making reference to another document, "The Wedge Document: So What?" in their brief supporting their motion in limine to exclude the testimony of Barbara Forrest. (Doc. 189 at 30 n.2.) Authentication of documents is plaintiffs' responsibility, and just because something is authenticated, the proponent of that evidence still has to overcome hearsay problems related to that evidence. Defendants' use of hearsay to demonstrate the inherent unreliability of hearsay does not represent acquiescence to the use of hearsay, but rather the basis for defendants' objection.

F.3d 719, 727 (3rd Cir. 1999). "Statements that are considered under . . . the state of mind exception, cannot be offered to prove the truth of the underlying facts asserted." *Id.* (internal quotation marks omitted). And, "statements offered to support an implied assertion are inadmissible hearsay." *Id.*

Any "state of mind" of the declarants is irrelevant to the issues at hand. As explained above, the evidence regarding Discovery Institute, FTE, Buell, Thaxton, Johnson, Davis, and Kenyon is irrelevant to resolving whether the defendants' policy is constitutional under either the purpose prong or the primary effect prong of the *Lemon* test. Thus, the state of mind or motivations of the declarants are meaningless to a resolution of the constitutionality of defendants' policy. And, as noted above, no ninth grade student who reads or hears the policy, or who reviews *Of Pandas and People,* would have any knowledge or awareness of the state of mind of the declarants. And, the motives of the declarants had no role in the development or enactment of the defendants' policy.

### The Evidence Is More Prejudicial Than Probative

Plaintiffs fail to address defendants' argument that even if the evidence is relevant, which it is not, the evidence is still inadmissible under Fed. R. Evid. 403 for reasons of unfair prejudice, confusion of the issues, misleading of the fact finder, undue delay, waste of time, and needless presentation of cumulative evidence. (Doc. 157 at 9-10.)

The motives, purposes, goals, and objectives of Discovery Institute, including its "Wedge Strategy" or "Wedge Document," FTE, including drafts and prior versions of *Of Pandas and People,* Jon Buell, Charles Thaxton, Phillip Johnson, Percival Davis, and Dean Kenyon played no role in the development and enactment of the policy at issue in this case. The admission of such evidence would be unfairly prejudicial to defendants, precisely because plaintiffs would use evidence concerning the motives and goals of third parties to impose liability on defendants. The law does not support guilt by association, never mind plaintiffs' efforts to impose guilt *without* association.

## CONCLUSION

Defendants respectfully request that this court grant their motion in limine and exclude at trial any evidence relating to the Discovery Institute, including its so-called "Wedge Document" and "Wedge Strategy," the Foundation for Thought and Ethics, including drafts or prior versions of *Of Pandas and People,* Jon Buell, Charles Thaxton, Phillip Johnson, Percival Davis, and Dean Kenyon.

Respectfully submitted,

*/s/ Edward L. White III*

Richard Thompson (MI P21410)*
Patrick T. Gillen (MI P47456)*
Robert J. Muise (MI P62849)*
Edward L. White III (MI P62485)*
Thomas More Law Center
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, MI 48106
734-827-2001; Fax. 734-930-7160
ewhite@thomasmore.org
* Admitted pro hac vice

Ron Turo
Turo Law Offices
29 South Pitt Street
Carlisle, PA 177013
717-245-9688

Dated: September 21, 2005    *Counsel for defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2005, a copy of the foregoing defendants' reply brief was caused to be served on the following counsel through the court's electronic case filing system and by email where noted:

Eric Rothschild (also served by email)
Stephen G. Harvey
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103

Witold J. Walczak
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213

Richard B. Katskee
Ayesha Khan
Alex J. Luchenitser
Americans United for Separation
  of Church and State
518 C Street, NE
Washington, DC 20002

Thomas B. Schmidt, III
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
P.O. Box 1181
Harrisburg, PA 17108

Ron Turo
Turo Law Offices
29 South Pitt Street
Carlisle, PA 17013

Mary Catherine Roper
ACLU of Pennsylvania
P.O. Box 1161
Philadelphia, PA  19105

_/s/ Edward L. White III_
Edward L. White III
Admitted *pro hac vice*