IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TAMMY KITZMILLER, et al.,** | : | Case Number:  04-CV-2688 |
| **Plaintiffs** | : | Judge Jones |
| | : | (Filed electronically) |
| vs. | : | |
| | : | |
| **DOVER AREA SCHOOL DISTRICT; DOVER** | : | |
| **AREA SCHOOL DISTRICT BOARD OF** | : | |
| **DIRECTORS,** | : | |
| **Defendants** | : | |

### MEMORANDUM OF LAW OF JOSEPH MALDONADO AND HEIDI BERNHARD-BUBB IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR FOR PROTECTIVE ORDER

**I.**     **PROCEDURAL HISTORY/STATEMENT OF FACTS**

Plaintiffs filed suit against the Dover Area School District and the Dover Area School District Board of Directors on December 14, 2004.  The Plaintiffs, a group of parents with children in the Dover Area School District, seek, inter alia, a declaratory judgment declaring that the Defendants' intelligent design policy violates the Establishment Clause of the First Amendment to the United States Constitution and portions of the Pennsylvania Constitution.

The York Daily Record and The York Dispatch are newspapers of general circulation in York County, Pennsylvania.  Joseph Maldonado, an independent contractor correspondent utilized by the York Daily Record, and Heidi Bernhard-Bubb, an independent contractor correspondent utilized by The York Dispatch, have authored various articles relating to Dover School Board meetings and the controversy surrounding the Dover Area School District's policy on "intelligent design."

1

On September 20, 2005 counsel for Plaintiffs served Subpoenas on Mr. Maldonado and Ms. Bernhard-Bubb commanding them to testify at trial on September 26, 2005. Mr. Maldonado and Ms. Bernhard-Bubb have filed a Motion to Quash the Subpoenas or For a Protective Order pursuant to the Federal Rules of Civil Procedure. This Memorandum of Law is being offered in support of the said Motion.

## II.   STATEMENT OF QUESTIONS INVOLVED

      **A.**   Should this Honorable Court quash the trial Subpoenas issued to Joseph Maldonado and Heidi Bernhard-Bubb on the basis of the First Amendment Reporters' Privilege, or, in the alternative, should the Court grant a Protective Order?

Suggested Answer:  Yes.

## III.   ARGUMENT

The First Amendment to the United States Constitution provides for freedom of the press. The law in Pennsylvania is clear that a balancing test must be used in order to weigh the rights of reporters under the First Amendment with the rights of those seeking disclosure of information the reporters possess. The First Amendment Reporter's Privilege adopted and recognized by Pennsylvania state and Federal courts can only be overridden where (1) the information sought is material, relevant, and necessary, (2) there is a strong showing that it cannot be obtained by alternative means and, (3) the information is crucial to the party's case. <u>Riley v. City of Chester</u>, 612 F.2d 708 (3rd Cir. 1979); <u>United States v. Criden</u>, 633 F.2d 346 (3rd Cir. 1980) (Criminal proceeding involving First Amendment reporters' privilege); <u>United States v. Cuthbertson</u>, 630 F.2d 139 (3rd Cir. 1980); <u>McMenamin v. Tartaglione</u>, 590 A.2d 802 (Pa. Commw. 1991).

The federal courts in Pennsylvania, New Jersey and Delaware have clearly and unequivocally held that the First Amendment Reporter's Privilege applies to confidential and non-confidential sources and information, including unpublished materials such as reporters' notes.  See Riley; Criden; Cuthbertson; Altemose Construction Co. v. Building and Construction Trades Council of Philadelphia, 443 F. Supp. 489 (E.D. Pa. 1977); Parsons v. Watson, 778 F. Supp. 214 (D. Del. 1991); Damiano v. Sony Music Entertainment, Inc., 168 F.R.D. 485 (D. N.J. 1996); U.S. v. National Talent Associates, Inc., 1997 WL 829176 (D. N.J. 1997); In re: Vmark Software, Inc., 1998 WL 42252 (E.D. Pa. 1998); Madden v. Turner Broadcasting Systems, Inc., 151 F.3d 125 (3rd Cir. 1998); In re: Barnard Subpoena, 1999 WL 38269 (E.D. Pa. 1999).

Moreover, the majority of other circuits, as well as the Pennsylvania State Courts, are in agreement with the Third Circuit that the First Amendment Reporter's Privilege applies to **non-confidential information and sources**. See, e.g., U.S. v. The LaRouche Campaign, 841 F.2d 1176 (1st Cir. 1988); Gonzales v. National Broadcasting Company, 194 F.3d 29 (2nd Cir. 1999); Stickels v. General Rental Co., Inc., 750 F. Supp. 729 (E.D. Va. 1990); Penland v. Long, 922 F. Supp. 1080 (W.D. N.C. 1995); Neal v. City of Harvey, Illinois, 173 F.R.D. 231 (N.D. Ill. 1997); Richardson v. Sugg, 220 F.R.D. 343 (E.D. Ark. 2004); Shoen v. Shoen, 48 F.3d 412 (9th Cir. 1995); Re/Max International, Inc. v. Century 21 Real Estate Corporation, 846 F. Supp. 910 (D. Colo. 1994); U.S. v. Foote, 2002 WL 1822407 (D. Kan. 2002); United States v. Blanton, 534 F. Supp. 295 (S.D. Fla. 1982), aff'd, 730 F.2d 1425 (11th Cir. 1984); National Labor Relations Board v. Mortensen, 701 F.Supp. 244 (D.D.C. 1988); McMenamin v. Tartaglione, 139 Pa. Commw. 269, 590 A.2d 802 (1991).

Third Circuit courts and the courts of other circuits have further "held that the privilege and the First Amendment concerns underlying the privilege are implicated where a party seeks to compel a journalist to authenticate or verify published quotations." Parsons, 778 F.Supp. at 217; U.S. v. Markiewicz, 732 F. Supp. 316 (N.D. N.Y. 1990); National Labor Relations Board v. Mortensen, 701 F. Supp. 244 (D.D.C. 1988); United States v. Blanton, 534 F. Supp. 295 (S.D. Fla. 1982), aff'd, 730 F.2d 1425 (11th Cir. 1984) (Government was not entitled to subpoena a reporter to testify for the sole purpose of verifying that quotations and statements attributed to the defendant were accurate where it failed to show both that it had exhausted or made reasonable attempts to exhaust non-media sources for the information or equivalent information and that it had negotiated in good faith with the reporter's counsel). It is believed that the Plaintiffs herein are seeking, in part, to verify published quotations. Although "the lack of a confidential source may be an important element in balancing the defendant's need for the material sought against the interest of the journalist in preventing production in a particular case," Cuthbertson, F.2d at 147, courts may also require the party seeking disclosure to make a "stronger showing in civil cases than in criminal cases because the important constitutional rights possessed by criminal defendants present significant countervailing interests weighing against the interest of the journalist in preventing disclosure." Parsons, 778 F. Supp. at 218.

The foregoing makes clear that the great weight of federal authority in this country holds that the First Amendment Reporter's Privilege applies to non-confidential information and sources. It is anticipated that the Plaintiffs will cite U.S. v. Steelhammer, 539 F.2d 373 (4th Cir. 1976, per Judge Bryan), reh'g en banc, 561 F.2d 539 (4th Cir. 1977) for the proposition that reporters being called as "fact witnesses" lack a privilege to refuse to testify.

4

However, Steelhammer did not involve any question as to the accuracy of statements or quotations published in the Charleston Gazette. Moreover, the Fourth Circuit Court of Appeals clearly recognized that the "protection of the public by exacting the truth" could have been accomplished while at the same time protecting the public "through maintenance of the free press" by "calling for testimony from others not similarly situated." (emphasis added). Steelhammer, 539 F.2d at 375. The "others" referred to by the court were other witnesses to the events at issue. The court, therefore, vacated the contempt judgments of the reporters, although the judgments of contempt were subsequently affirmed by a 4-3 vote. Nevertheless, subsequent decisions in the same Circuit support application of a balancing test as the non-party correspondents have requested in this matter and as cited below.

While the Steelhammer court chose not to apply a balancing test, as suggested by Judge Bryan, other courts within the Fourth Circuit have adopted such a test. The United States District Court for the Eastern District of Virginia interpreted Steelhammer as requiring a balancing test to determine whether reporters could be required to testify in a civil matter as to non-confidential information acquired during the newsgathering process. Stickels v. General Rental Co., Inc., 750 F.Supp. 729 (E.D. Va. 1990) (involving production of photographs taken by a reporter at an accident scene). The United States District Court for the Western District of North Carolina also applied the same balancing test to non-confidential information in a civil matter. Penland v. Long, 922 F. Supp. 1080 (W.D. North Carolina 1995).

It is also anticipated that the Plaintiffs will cite Alexander v. Chicago Park District, 548 F.Supp. 277 (N.D. Illinois 1982), aff'd, 427 F.2d 1014 (7th Cir. 1991), wherein Chicago Sun-Times reporters were called to testify about their "personal observations of the parks

5

during their investigation" for a series of articles regarding the city's park system. Importantly, the accuracy of statements or quotes published in the Chicago Sun-Times was also not an issue in Alexander. The court denied the reporters' motion to quash, citing cases from other jurisdictions in which reporters were compelled to testify regarding criminal conduct the reporters had witnessed or became aware of. Gilbert v. Allied Chemical Corp., 411 F.Supp. 505, 511 (E.D. Va. 1976), abrogated by Stickels v. General Rental Co., Inc., 750 F.Supp. 729 (E.D. Va. 1990); Branzburg v. Pound, 461 S.W. 2d 345 (Ky. Ct. App.1970), aff'd, 408 U.S. 665 (1972) (reporter witnessed commission of felony); Lightman v. State, 294 A.2d 149 (Md. Ct. Spec. App. 1972) (reporter witnessed criminal conduct); People by Fischer v. Dan, 342 N.Y.S. 2d 731 (N.Y. App. Div. 1973) (reporter called to testify before Grand Jury in criminal matter); Rosato v. Superior Court of Fresno County, 51 Cal. App.3d 190 (Cal. Ct. App. 1975) (reporter obtained information from third party in violation of court orders).

The non-parties would agree that application of the Riley test in the criminal context could weigh heavily in favor of the requesting party under certain circumstances. The same type of testimonial request in a civil matter presents an altogether different issue. The Third Circuit has adopted a case-by-case approach in these matters. Parsons, 778 F.Supp. at 217. "Such a case-by-case analysis is mandated even more in civil cases than in criminal cases, for in the former the public's interest in casting a protective shroud over the newsmen's sources and information warrants an even greater weight than in the latter." Riley, 612 F.2d at 716. The fact that a party seeks non-confidential information in the civil context are factors to be weighed by the courts. Parsons, at 217-218. However, the Riley balancing test

6

should, in the very least, be applied to situations where, as here, a civil party requests information from a reporter engaged in the newsgathering capacity.

It is interesting to note that the Alexander Court cited decisions from several courts outside of the Seventh Circuit, but did not cite Steelhammer. Regardless, the same court applied a Riley type balancing test to grant a reporters' motion to quash fifteen years after the Alexander decision. Neal v. City of Harvey, Illinois, 173 F.R.D. 231, 1997 WL 285739 (N.D. Illinois 1997). In Neal, the court relied on United States v. Lopez, 1987 WL 26051 (N.D. Illinois 1987), stating

> Lopez is particularly on point. In that case, the defendant had given an interview and was seeking a videotape of the out-takes of that interview. 1987 WL 26051, at 1. The court noted that, in addition to the defendant, her co-defendant's attorney attended the interview. The court concluded that '[b]ecause two witnesses were present at the interview (including [the defendant] herself), [the defendant] has not satisfied her burden of showing that the information she seeks is not available from a non-journalistic source. (emphasis added).

Neal, 173 F.R.D. at 233. Thus, the courts of the Seventh Circuit have applied the balancing test to a set of facts similar to this matter.

The decisions within the Third Circuit are in accord with Lopez. The case of Parsons v. Watson, supra, a decision of the United States District Court for the District of Delaware, a Third Circuit court, and McMenamin v. Tartaglione, supra, a decision of the Pennsylvania Commonwealth Court, should govern this matter. In McMenamin, the Pennsylvania Commonwealth Court ruled that the Court of Common Pleas of Philadelphia County properly upheld a newspaper reporter's First Amendment Privilege against testifying as to the accuracy of statements made by a district attorney at a public press conference. "**While there appears to be no dispute that the information sought was material, relevant,**

7

**necessary and perhaps crucial, there is nothing to show that <u>McMenamin</u> could not have obtained the information from other persons present" at the public press conference in question**. <u>McMenamin</u>, 590 A.2d at 811. (emphasis added).  We emphasize that "state law considerations may be included in analyzing the issue of the newsperson's privilege discussed in <u>Riley</u>," including the use of state law analogies "in instances where the federal rule is unsettled." <u>Downey v. The Coalition Against Rape and Abuse, Inc.</u>, 2003 WL 23164082 (D.N.J. 2003), <u>quoting</u> <u>Wm. T. Thompson Co. v. Gen. Nutrition Corp, Inc.</u>, 671 F.2d 100, 104 (3rd Cir. 1982), citing <u>Riley</u>, <u>supra</u>. While we recognize that <u>McMenamin</u> is not binding upon the federal courts, this Court could have looked to the state law precedent established in <u>McMenamin</u> because of the analogous factual scenario involved. <u>Id</u>.

The Third Circuit case of <u>Parsons v. Watson</u>, 778 F.Supp. 214, 217 (D. Del. 1991), addressed another situation where a reporter witnessed statements being made.  In <u>Parsons</u>, the plaintiff in a civil suit argued that statements attributed to him and published in the <u>Wilmington News Journal</u> were reported inaccurately.  The alleged inaccurate remarks were made during a conversation between plaintiff and three (3) others who worked in the same department with plaintiff.

The plaintiff served a subpoena commanding the reporter to testify at a deposition. Thereafter, the reporter filed a motion to quash.  The court held that the First Amendment Reporter's Privilege applied even though the material sought was <u>not confidential</u>.  The court further held that the motion to quash would be granted in light of the fact that the plaintiff failed to establish that the information sought could not have been gleaned from the three other individuals present when the conversation took place.  Because there were four

participants in the conversation, plaintiff could not establish that the information was crucial to his case.

> Plaintiff has not made any showing that he cannot obtain information regarding the accuracy of these statements attributed to him in the July 5, 1987 article from one or more of the other three participants in the conversation. Moreover, plaintiff himself is a source of information regarding exactly what was said during the conversation. Lewis' [the reporter's] testimony, while relevant, would be cumulative of the testimony of the participants in the conversation.

Parsons, 778 F.Supp. at 219. The court concluded that "[w]hen there is a clear alternative source for the information sought, the journalist may invoke the privilege to avoid compelled testimony." Id.

It is submitted that the factual background in this case is indistinguishable in all material respects from those present in McMenamin and Parsons. To wit, the McMenamin and Parsons reporters were witnesses to statements made by individuals and reported about same in their respective newspapers. The former involved a public press conference; the latter, a non-confidential conversation between four (4) individuals. Similarly, the non-parties in this case, while engaged in their newsgathering capacities with the intent to disseminate such information to the public, heard statements made by Dover School Board members and contemporaneously reported such remarks. The McMenamin and Parsons courts properly applied the Riley test and determined that the reporters could not be compelled to testify because other sources for the information existed.[1] The Riley test should have been applied here because the correspondents were engaged in their

---

[1] The non-parties do not believe every person that had attended the Dover School Board meetings at issue must be questioned prior to a deposition of the subpoenaed correspondents. However, the non-parties do believe that the parties must make an effort to obtain the requested information from alternative, non-journalistic sources. No such showing has been made. In Carey v. Hume, 492 F.2d 631 (D.C. Cir. 1974), the Court of Appeals for the District of Columbia Circuit suggested that an alternative requiring the taking of as many as

newsgathering capacities at all relevant times and a myriad of other sources for the information sought by Plaintiffs exists. Moreover, the testimony of Mr. Maldonado and Ms. Bernhard-Bubb would clearly be cumulative of the testimony of the members of the public who attended the meetings in question.

If the <u>Riley</u> test were applied herein, the subpoenas issued by Plaintiffs would fail same. The Plaintiffs in this matter seek to question Mr. Maldonado and Ms. Bernhard-Bubb at trial to verify the accuracy of non-confidential, published statements.[2] However, the Plaintiffs could theoretically establish this information from less intrusive sources such as the published articles[3], the testimony of those members of the public attending relevant Dover School Board meetings and their own testimony. The non-parties are not aware of any attempt on the part of the Plaintiffs to obtain the testimony of citizens who attended the public meetings. Absent this showing, the non-parties submit that the Plaintiffs have not met the applicable <u>Riley</u> test and their subpoenas should be quashed.

The non-parties in this matter, like the NBC reporter in <u>Lopez</u> and the newspaper reporters in <u>McMenamin</u> and <u>Parsons</u>, were not the only ones to hear the statements at issue. Even if this Court were to carve out an exception to the Reporters' Privilege for "eyewitness testimony," the non-parties believe that such an exception should be strictly limited to criminal matters due to the important societal interests involved in the prosecution of crime and the constitutional rights possessed by criminal defendants. These considerations are irrelevant here. The balancing test articulated in <u>Riley</u> and adopted by this Court should be

---

sixty (60) depositions might be a reasonable prerequisite to the compelled disclosure of information held by a reporter.
[2] The non-party subpoenaed correspondents have already submitted Affidavits wherein they affirmed the accuracy of all statements contained in the relevant articles.

applied in all civil cases involving a reporter engaged in the newsgathering process where, as here, the subpoenaing party can obtain the requested information from multiple other, non-journalistic sources. See Parsons, McMenamin and Lopez. The non-party correspondents are not merely "fact witnesses" as the parties often suggest. To the contrary, the non-parties attended the meetings in question not as concerned citizens, but as objective observers reporting for, and on behalf of, the public. "Although no confidential source or information is involved, this distinction is irrelevant to the chilling effect enforcement of the subpoena would have on the flow of information to the press and public." United States v. Blanton, 534 F. Supp. 295 (S.D. Fla. 1982), aff'd, 730 F.2d 1425 (11th Cir. 1984), citing United States v. Cuthbertson, 630 F.2d 139, 147 (3rd Cir. 1980); Loadholtz v. Fields, 389 F. Supp. 1299, 1303 (M.D. Fla. 1975). Based on the foregoing, the non-parties request that their Motion to Quash be granted pursuant to McMenamin, Parsons and the analogous case law cited herein.

     In the alternative, should this Court choose not to grant the non-party correspondents' Motion to Quash, the said correspondents would respectfully request that the Court enter a protective order limiting the non-parties' testimony solely for purposes of verifying the accuracy of the statements published in the relevant articles. This would exclude any testimony outside of the four corners of the Affidavits previously submitted by the non-parties.

     Clearly, the exposure to questioning at trial would have a negative and chilling effect upon the newsgathering ability of the correspondents and their

---

[3] Rule 902 (6) of the Federal Rules of Evidence provides that extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to printed materials purporting to be newspapers or periodicals.

respective newspapers. Reporters and correspondents such as Mr. Maldonado and Ms. Bernhard-Bubb are essentially historians. Reporters are not *part* of the story. Rather, they report facts as impartial, objective observers. Editorials and opinion are reserved for the editorial page. Allowing reporters to take the witness stand effectively strips away their objectivity.

If the Plaintiffs are permitted to ask Mr. Maldonado and Ms. Bernhard-Bubb questions at trial relative to Dover School Board meetings they attended, a question would arise as to the correspondents' objectivity regardless of the answers given.[4]  As a result, the public's confidence in the print media will surely erode. Moreover, newspapers and reporters might choose to cover the most important and controversial issues less aggressively for fear of being continually hauled into court and questioned about their observations, perceptions and opinions on particular matters. Clearly, this type of questioning would have a negative, chilling effect upon the credibility of the press and the free flow of information to the press and the *public*.  Accordingly, if this Court should deny the correspondents' Motion to Quash, the correspondents would respectfully request that their testimony be limited to verifying the accuracy of the statements published in the relevant articles.

---

[4] Rule 701 of the Federal Rules of Evidence provides that if a witness is not testifying as an expert, the witness may be asked about opinions or inferences which are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

**IV.    CONCLUSION**

For the foregoing reasons, the non-parties respectfully request that the Court apply the <u>Riley</u> test to the trial testimony sought by Plaintiffs and quash the subpoenas issued by Plaintiffs. In the alternative, the non-parties would respectfully request that the Court limit the non-parties' trial testimony solely for purposes of verifying the accuracy of the statements published in the relevant articles.

Respectfully submitted,
**BENN**LAW**FIRM**

Date: September 22, 2005          By:/s/ Niles S. Benn, Esquire____
Niles S. Benn, Esquire
Attorney I.D. #16284
Terence J. Barna, Esquire
Attorney I.D. #74410
Christian J. Dabb, Esquire
Attorney I.D. #85370
P.O. Box 5185
103 E. Market Street
York, Pennsylvania 17405-5185
(717) 852-7020
nbenn@bennlawfirm.com
tbarna@bennlawfirm.com
cdabb@bennlawfirm.com

# CERTIFICATE OF SERVICE

I, Christian J. Dabb, Esquire, hereby certify that on this 22nd day of September, 2005, I served a true and correct copy of the foregoing "Memorandum of Law" upon the following counsel by the Middle District ECF system and/or fax and other counsel of record by the Middle District ECF system:

**VIA FACSIMILE (734) 930-7160**
Richard Thompson, Esquire
Patrick T. Gillen, Esquire
Robert J. Muise, Esquire
Edward L. White, III, Esquire
Thomas More Law Center
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, Michigan  48106
(Defendants' counsel)

Thomas B. Schmidt, III
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
P.O. Box 1181
Harrisburg, PA  17108
(Plaintiffs' co-counsel)

Eric Rothschild, Esquire
Pepper Hamilton LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103
(Plaintiffs' co-counsel)

/s/ Christian J. Dabb, Esquire___
Christian J. Dabb, Esquire
Attorney I.D. #85370