IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY KITZMILLER; BRYAN AND CHRISTY REHM; DEBORAH FENIMORE AND JOEL LIEB; STEVEN STOUGH; BETH EVELAND; CYNTHIA SNEATH; JULIE SMITH; AND ARALENE ("BARRIE") D. AND FREDERICK B. CALLAHAN, : : : : : : : : | |
| : Plaintiffs : : | CIVIL ACTION |
| vs. : : | No. 4:04-cv-2688 |
| DOVER AREA SCHOOL DISTRICT; : DOVER AREA SCHOOL DISTRICT : BOARD OF DIRECTORS, : : Defendants : | (JUDGE JONES) (Filed Electronically) |

MEMORANDUM OF LAW IN SUPPORT OF ADMISSIBILITY OF
EDITORIALS AND LETTERS TO THE EDITOR IN THE *YORK DAILY
RECORD* AND *YORK DISPATCH* FROM THE PERIOD JUNE 1, 2004,
THROUGH SEPTEMBER 1, 2005

Plaintiffs submit this memorandum in support of their motion to admit into evidence four trial exhibits consisting of (a) collections of letters to the editor and editorials from the *York Daily Record* and the *York Dispatch* addressing the curriculum controversy at issue in this case during the period from June 1, 2004, through September 1, 2005, as well as (b) charts summarizing each set of these materials. Under controlling Supreme Court and Third Circuit law, the letters to the editor and editorials are relevant and highly probative to show that defendants' conduct improperly advances and endorses religion. And under F. R. E. 1006, the charts are admissible as summaries of voluminous materials.

I. **Editorials and Letters to the Editor Are Relevant and Probative of the Community's "Collective Social Judgment" That the Challenged Conduct Advances Religion.**

In *Santa Fe Independent School District v. Doe*, 530 U.S. 290 (2000), the Supreme Court held that a school board's conduct violates the Establishment Clause if the "listening public" – *i.e.*, the members of the community who see, hear, or otherwise receive the message that the district's policy conveys – would view the policy as advancing or endorsing religion. *Id.* at 308. Under controlling Supreme Court precedent, letters to the editor and editorials in the local newspaper are both relevant and highly probative here because they demonstrate how the community perceives defendants' conduct at issue in this case.

In *Epperson v. Arkansas*, 393 U.S. 97 (1968) – an Establishment Clause challenge to a statutory prohibition against teaching evolution in public schools – the Supreme Court pointed to letters to the editor as support for its conclusion that "fundamentalist sectarian conviction was and is" the reason for the statute's existence. Specifically, the Court quoted from three letters to the editor of the *Arkansas Gazette* to show that the public "fear[ed] that teaching of evolution would be 'subversive of Christianity,' and that it would cause school children 'to disrespect the Bible." *Id*. at 108 n. 16. Here, plaintiffs are offering approximately 80 editorials and more than 200 letters to the editor that together demonstrate that the community as a whole – both citizens who support defendants' actions and citizens who oppose them – regard defendants as having advanced religion. In other words, plaintiffs are offering the very same type of evidence that the Supreme Court considered – and treated as not only relevant but highly probative – in *Epperson*.

Whether the primary effect of defendants' conduct is religious or secular requires an objective inquiry, of course; and hence, plaintiff do not argue that any particular individual's actual view of the challenged policy is controlling. But as Justice O'Connor explained in her concurrence in *Capital Square Review and Advisory Board v. Pinette*, 515 U.S. 753 (1995), consideration of the community's "collective social judgment" as to whether governmental conduct advances or

endorses religion is a critical part of the Establishment Clause inquiry.[1]  *Id*. at 780 (O'Connor, J., concurring).  And under *Epperson*, review by the Court of letters to the editor and editorials is an appropriate way to take the temperature of the community as to how the policy is perceived.

Here, letter after letter and editorial after editorial show that the Dover community views the challenged policy as religious.  Taken all together, the materials provide strong evidence that the Dover community perceives defendants as having taken sides in a religious dispute, and strong evidence also that the community perceives the School Board to be aligned with a particular religious view – actions of the sort that the court in *Selman v. Cobb County School District*, No. Civ.A.1:02-CV-2325-C, 2005 WL 83829 (N.D. Ga. Jan. 13, 2005), correctly recognized as having an unconstitutional effect under the *Lemon* test.  *See id*. at *23.

---

[1]  Although defendants have repeatedly argued that the 'endorsement test' applies only to religious-display cases, that argument is wrong as a matter of law.  In *ACLU v. Black Horse Pike Regional Board of Education*, 84 F.3d 1471 (3d Cir. 1996), the Third Circuit explicitly applied the endorsement inquiry along with the traditional 'effect' test in a challenge to a school policy of allowing prayer at public-school graduation ceremonies.  *See id*. at 1485-86.  And the Supreme Court in *Santa Fe* conducted precisely that same inquiry, considering the "actual or perceived endorsement of the message" conveyed by a public school district's policy of allowing student-led prayer at football games.  530 U.S. at 307.  In all events, the same considerations in this sense plainly apply whether under the effect inquiry or under the endorsement test, so the distinction for these purposes is merely semantic.

Plaintiffs anticipate that defendants will object that the letters to the editor and the editorials are irrelevant because, in defendants' view, the challenged policy must be considered solely from the standpoint of ninth-grade students at the Dover Area High School. Specifically, defendants' legal arguments on summary judgment and in their motions in limine suggest that defendants will argue that students would be unaware of the letters and editorials and so the Court should not look at those materials. Relatedly, defendants may argue that the letters appear to be written by adults, and so do not reflect a student's perspective.

Both arguments would be misguided.

First, there can be no question that, under the reasonable observer test, this Court can and should look at the letters and editorials as part of the source material that the reasonable, objective observer would use in judging the purpose and effect of the challenged governmental conduct – irrespective of whether the Court conducts that inquiry from the standpoint of a reasonable, objective student or from that of a reasonable, objective adult. For in "any" inquiry, the reasonable, objective observer is presumed to know the history and context of the challenged conduct or policy – as the Third Circuit made clear in *ACLU v. Black Horse Pike Regional Board of Education*, 84 F.3d 1471, 1486 (3d Cir. 1996). Surely, a reasonable, objective observer – whether an adult or a ninth grader – would be competent to read the local newspapers and consider the public response to

defendants' conduct as an indicium of that conduct's effect in the Dover community, *i.e.*, the community's "collective social judgment" about the challenged conduct's effect. *Pinette*, 515 U.S. at 780 (O'Connor, J., concurring). And for that reason, knowledge of the letters to the editor and editorials would be attributed to the objective observer.

In this regard, too, the Third Circuit made clear in *Modrovich v. Allegheny County, Pennsylvania*, 385 F.3d 397, 407 (3d Cir. 2004), and *Freethought Society v. Chester County Board of Education*, 334 F.3d 247, 258-60 (3d Cir. 2003), that "the reasonable observer is an informed citizen who is more knowledgeable than the average passerby." In addition to knowing the challenged conduct's history, the observer is deemed able to "glean other relevant facts" from the face of the policy ***in light of its context***. *Modrovich*, 385 F.3d at 407. Again, published letters to the editor and editorials are plainly within an informed objective observer's ken, and inferring effect on the community from the community's own perception of that effect is a straightforward application of the effect and endorsement tests.

Second, it is simply wrong to limit the Court solely to the standpoint of a ninth-grade student because Dover's ninth graders are not the only ones in the "listening audience" for the policy. The Board debated, implemented, and defended its policy in Board meetings, through public statements, through

materials on its publicly accessible website, and through a newsletter that it mailed to everyone in the District. As such, adult citizens are plainly part of the "listening audience," which the Supreme Court in *Santa Fe* makes clear is the relevant consideration. 530 U.S. at 308.²

Third, in *Santa Fe* the Supreme Court looked to **both** the objective student's perceptions **and** to the history and context of the challenged policy, without regard for whether the students knew or would have known that history and context. *Id*. *Santa Fe* thus makes clear that the judicial blinders that defendants may ask this Court to don are unwarranted and improper as a matter of law.

Finally, the Supreme Court has long recognized that the public schools are "[d]esigned to serve as perhaps the most powerful agency for promoting cohesion among a heterogenous democratic people," and hence that courts must be particularly scrupulous in the public-school context to enforce the mandates of the Establishment Clause in order to keep the community free from "divisive conflicts." *McCollum v. Board of Education*, 333 U.S. 203, 216-17 (1948). As

---

² Thus, to the extent that defendants have attempted to find authority for limiting this Court's focus to students' perspective in cases involving conduct by teachers in the classroom that did not involve policy formation by a school district at public meetings or advocacy for the policy by a school board to the community at large, the cases on which defendants rely are inapposite because they do not speak to the standard applicable to school-district policies addressed to a broader listening audience.

Justice Breyer wrote just weeks ago in his controlling concurring opinion in *Van Orden v. Perry*, 125 S. Ct. 2854 (2005), for example, "[g]overnment's obligation to avoid divisiveness and exclusion" lies at the heart of the First Amendment's Religion Clauses.  *Id*. at 2875 (Breyer, J., concurring).  Simply put, "[o]ne of the purposes served by the Establishment Clause is to remove debate over [divisive religious issues] from governmental supervision or control." *Santa Fe*, 530 U.S. at 310.  The "preservation and transmission of religious beliefs and worship is a responsibility and a choice committed to the private sphere." *Lee v. Weisman*, 505 U.S. 577, 589 (1992).  And when government takes sides in a religious issue, "the debates that presumably must precede" its doing so "impermissibly invade that private sphere." *Santa Fe*, 530 U.S. at 311.  The letters to the editor and editorials proffered here are strong evidence of the divisiveness engendered by the district's decision to favor a particular religious view through its change to the biology curriculum – a divisiveness that also invades the right of parents to decide for themselves the religious instruction that their children will receive.

## CONCLUSION

The proffered letters to the editor and editorials are relevant and highly probative evidence that the defendants' conduct has had the effect of promoting and endorsing a particular religious viewpoint. Accordingly, the letters and editorials should be admitted into evidence.

Respectfully submitted,

*/s/ Richard B. Katskee*
Ayesha Khan (adm. *phv*)
Richard B. Katskee (adm. *phv*)
Americans United for Separation of
    Church and State
518 C St., NE
Washington, DC 20002
(202) 466-3234
*akhan@au.org*
*katskee@au.org*


Eric Rothschild (PA 71746)
Alfred H. Wilcox (PA 12661)
Stephen G. Harvey (PA 58233)
Christopher J. Lowe (PA 90190)
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000
*rothschilde@pepperlaw.com*
*wilcoxa@pepperlaw.com*
*harveys@pepperlaw.com*
*lowec@pepperlaw.com*

                                              Thomas B. Schmidt, III (PA 19196)
                                              Pepper Hamilton LLP
                                              200 One Keystone Plaza
                                              North Front and Market Streets
                                              P.O. Box 1181
                                              Harrisburg, PA 17108
                                              (717) 255-1155
                                              *schmidtt@pepperlaw.com*

                                              Witold J. Walczak (PA 62976)
                                              ACLU of Pennsylvania
                                              313 Atwood Street
                                              Pittsburgh, PA 15213
                                              412-681-7864
                                              *vwalczak@aclupgh.org*

                                              Paula K. Knudsen (PA 87607)
                                              ACLU of Pennsylvania
                                              105 N. Front St., Suite 225
                                              Harrisburg, PA 17101
                                              (717) 236-6827
                                              *pknudsen@aclupa.org*

Dated:  October 28, 2005                Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2005, I caused a copy of the foregoing document to be served upon defendants' counsel by hand delivery and through the Middle District ECF system.

I further certify that other counsel listed below were served through the Middle District ECF system on October 28, 2005.

<u>Hand Delivery/ECFS</u>
Richard Thompson, Esquire
Robert J. Muise, Esquire
Patrick T. Gillen, Esquire
Thomas More Law Center
24 Frank Lloyd Wright Drive
Post Office Box 393
Ann Arbor, MI 48106
*Counsel for Defendants*

Niles S. Benn, Esquire
Terence J. Barna, Esquire
Benn Law Firm
103-107 East Market Street
Post Office Box 5185
York, PA 17405-5185
*Counsel for Reporters*

Ron Turo, Esquire
Toro Law Offices
28 South Pitt Street
Carlisle, PA 17013
*Local Counsel for Defendants*

*s/ Stephen G. Harvey*
Stephen G. Harvey (PA 58233)