IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA



RECEIVED NOV 0 7 2005 PER HARRISBURG, PA. DEPUTY CLERK

| | |
|---|---|
| TAMMY KITZMILLER, et al. : | |
| Plaintiffs, : | |
| v. : | Civil Action   No.  04-CV - 2688 |
| DOVER AREA SCHOOL DISTRICT : And DOVER AREA SCHOOL DISTRICT : BOARD OF DIRECTORS, : Defendants : | |

**BRIEF FOR AMICUS CURIAE, SCIPOLICY JOURNAL
OF SCIENCE AND HEALTH POLICY**

Stanley M. Shingles, Esquire
I.D. No. 15416
Six Tower Bridge, Suite 550
Conshohocken, PA 19428
(610) 828-3860
Attorney for Amicus Curiae,
SciPolicy Journal of Science and
Health Policy

# TABLE OF CONTENTS

| | |
|---|---|
| STATEMENT OF INTEREST | 1 |
| SUMMARY OF ARGUMENT | 2 |
| ARGUMENT | 2 |
| CONCLUSION | 6 |
| CERTIFICATE OF SERVICE | 7 |

## STATEMENT OF INTEREST

SCIPOLICY JOURNAL OF SCIENCE AND HEALTH POLICY (SCIPOLICY) of Haverford Pennsylvania is a peer review science policy journal whose interest and mission is the furtherance of science, technology, research, medicine, health, environment, and national development. It speaks to the advancement of knowledge, discovery of nature, and use of knowledge for humanitarian benefits. The identification of sources of possible social or normative bias is of prime importance. The search for value neutral scientific discovery is paramount because from it flows better ways of analyzing the laws, policies, and conditions that govern our lives, endeavors, and environment.

SCIPOLICY'S Editorial Board consists of eleven (11) Ph.D.'s who are prominent scholars, professors, and researchers of excellent genre. The Editor and Publisher is Stephen Miles Sacks, MPA, Ph.D. Founded in 2000, SCIPOLICY has published a critical mass of peer-reviewed materials on topics related to both sides of the present legal case, including 20 articles by scholars of world class genre on The Science Wars including several articles by Board Members Steve Fuller, Norman Levitt, and Paul Gross on topics directly appurtenant to the present case, and a book on evaluating research centers, institutes, and consortia authored by Board Members William Tash and Stephen Miles Sacks that is in use at virtually all of the leading research universities, medical centers, and collages in the United States, Canada, and Australia. SCIPOLICY also published an article and editorial on the role of the National Academies (of Science). And, SCIPOLICY issued relevant editorials on Government mandated peer review, published White House response, and contributed to change in OMB peer-review

1

regulations. SCIPOLICY also publishes a behavioral science based and non-partisan Undecided Voter Form for use in Presidential elections; in the last such election, the Form was downloaded by over a million people and featured in national news programs and publications. SCIPOLICY also hosts the CounterTerrorism-L Discussion group on the Internet that was founded the day after 9/11 to provide a means of debate among scholars and professionals on ways to reduce domestic and international terrorism.

Since its founding the SCIPOLICY website received over 80,000 visitors and millions of hits to its scholarly publications plus over one million downloads of the Undecided Voter Form.

## SUMMARY OF ARGUMENT

The defendant School Board's policy with respect to a pronouncement of the view of intelligent design contravenes the Establishment Clause of the First Amendment to the Constitution of the United States of America.

## ARGUMENT

Intelligent Design is a philosophical view predicated on the belief that what the natural sciences have not yet been able to explain materially, must exist because it was the product of a superior being. In contrast to the natural sciences, the notion of Intelligent Design demonstrates neither procedure, measurement technique, nor testable hypotheses. The notion is, it seems, that everything must have an explanation and, therefore, where none is apparent, the creation must be the will of a non-material or superhuman force. Some scholars would maintain that this view simply endorses the

2

supernatural and whether that supernatural is good or evil is simply an exercise in faith. Man's desperate need for answers to mysteries of life, many of which remained unavailable until the natural sciences matured and offered rational conclusions, is compelling. The relevant point is that adherence to a belief in the supernatural is entirely a matter of faith, not of science. Undeniably, faith is the bedrock of organized religion. It is purely subjective, needs no factual predicate and has none. Irrefutably, the concept of Intelligent Design embraces the notion of the supernatural; it gives no other possible explanation and reposes on the individual's intellectual and psychological needs and the depth of his faith.

The defendants maintain that "[t]he preliminary statement and procedural statement were developed [to provide its ninth grade Biology students] with a balanced view and not to teach or present religious beliefs" and they declare that [t]eaching Intelligent Design is not part of the ninth-grade biology curriculum and students will not be tested on this subject." (Defendants' Statement of Material Facts, Nos. 23, 25). The defendants fail to explain how stamping official imprimatur on an essentially faith based concept promotes a "balanced view" of science in a public school setting and further, identify what educational value there is in a bland reference to Intelligent Design?

Quality education, especially in the teaching of science at the high school level, depends upon the exposure of students to the important intellectual history and philosophical inquiries that shed light on the authority of science. Science teaching, to be valid, should foster an understanding of the discovery process and the way that scientific theories come into being and change over time as discoveries are made and new knowledge is developed. The importance of teaching critical and rational thinking --

3

processes that require the comparative reading and analysis of literature in an unbiased environment -- is denied when the alternative of "intelligent design" is simply announced as "an alternative theory." There is a logical fallacy in mandating the inclusion of intelligent design since it provides neither scientific explanation nor empirical evidence of the actual existence of a designer, but through fiat simply asserts that a designer must exist to explain the gap in knowledge. Stripped of its intellectual façade the announcement is nothing but a transparent effort to engraft religious dogma onto the classroom examination of scientific theory.

While "philosophers of science" may participate in the debate about intelligent design, they are not themselves "scientists." Although there has been some support for intelligent design from social theorists plying postmodern ideas, many of them have a track record of hostility to natural science. The "Science Wars" is an ongoing, decades-old conflict between physical scientists and sociologists of science, the latter claiming that all science is socially constructed and relative to the subgroups and culture within the several scientific disciplines. Though the conflict continues, the social theorists' ideas have not prevailed among either philosophers of science or working scientists.

The Superintendent of the School District defended the mandated announcements as devoid of teaching content, and suggested that teaching is different from making announcements about the existence of possible alternative explanations to evolution. However, the proffered rationale is not supported by generally accepted principles in educational psychology and psycho-educational processes, which treat the teacher as a very powerful influence on students. Additionally, the School District's mandate has an institutional influence, conveying legitimacy to the notion of intelligent design. Thus, the

mandated announcement to the students is a form of teaching science that is not sanctioned by the scientific community and the several forms of national science education standards. Indeed, The National Academies (of Science), the American Association for the Advancement of Science (AAAS), the National Science Foundation (NSF), National Institutes of Health (NIH) and other groups of physicists, chemists, and other natural scientists and university officials have all declined to include intelligent design in their proceedings and considerations.

Finally, there is no challenge here to the legitimacy of the concern among some groups about the erosion of family value and the proliferation of crime and drug abuse among the young. These same groups are free to espouse the view that the root cause of these conditions is the deterioration of the role of religion and faith in daily life. However, their blatant attempt to introduce spiritual considerations into science as a means of promoting religion is intellectually biased and totally unacceptable.

There can be no challenge to the right of parents to expose their children to secular views. And, especially in the arena of public education, we are long past the time when there can be a legitimate challenge to the co-extensive right of parents to insulate their children from secular views. Instantly, the defendants have devised a mechanism by which to impose their religious views on an entire public school community. We have no quarrel with their right to harbor their faith and to espouse it. We do, however, maintain that they have no right to proselytize others in a public school setting or to introduce explicitly religious notions (such as intelligent design) into public school curricula.

## **CONCLUSION**

Wherefore, for the foregoing reasons, Amicus Curiae, SCIPOLICY, requests the Court to declare the policy of the Dover Area School District to be violative of constitutional principles.

Respectfully submitted,

Stanley M. Shingles, Esquire
I.D. No. 15416
Six Tower Bridge, Suite 550
Conshohocken, PA 19428
(610) 828-3860
Attorney for Amicus Curiae,
SciPolicy Journal of Science and
Health Policy

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion for Leave to File Brief Amicus Curiae and a copy of the proposed Brief have been served this 4th day of November, 2005, by US Postal Service Mail and facsimile to the following:

COUNSEL FOR PLAINTIFFS:

Eric Rothschild (Pa. ID # 71746)
Stephen G. Harvey (Pa. ID # 58233)
Joseph M. Farber (Pa. ID # 84965)
Benjamin M. Mather (Pa. ID # 89959)
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000
(215) 981-4750 (fax)
rothschilde@pepperlaw.com

Witold J. Walczak (Pa. ID # 62976)
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213
412-681-7864
412-681-8707 (fax)
vwalczak@aclupgh.org

Thomas B. Schmidt, III
(Pa. ID # 19196)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
P.O. Box 1181
Harrisburg, PA 17108
(717) 255-1155
(717) 238-0575 (fax)
schmidtt@pepperlaw.com

Paula K. Knudsen
(Pa. ID # 87607)
ACLU of Pennsylvania
105 N. Front St., Suite 225
Harrisburg, PA 17101
(717) 236-6827
(717) 236-6895 (fax)
pknudsen@aclupa.org

Ayesha Khan
Richard B. Katskee
Alex J. Luchenitser
Americans United for Separation of Church and State
518 C St., NE
Washington, DC 20002
(202) 466-3234
(202) 548-9700 fax
americansunited@au.org

COUNSEL FOR DEFENDANTS:

Richard Thompson (P21410)
Robert J. Muise (P62849)
Patrick T. Gillen (P47456)
THOMAS MORE LAW CENTER
24 Frank Lloyd Wright Drive
PO Box 393
Ann Arbor, Michigan 48106
(734) 827-2001
(734) 930-7160 fax

Ron Turo
Turo Law Offices
29 South Pitt Street
Carlisle, PA 177013
(717) 245 9688
(800) 562 9778
(717) 245 2165 fax
ronturo@turolaw.com
info@thomasmore.org

_____
STANLEY M. SHINGLES, ESQUIRE
Attorney for petitioner