# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY KITZMILLER, et al., ) | |
| ) | |
| Plaintiffs, ) | Case No. 04-CV-2688 |
| ) | (Hon. Judge Jones) |
| v. ) | |
| ) | |
| DOVER AREA SCHOOL DISTRICT and ) | **DEFENDANTS PROPOSED** |
| DOVER AREA SCHOOL DISTRICT ) | **FINDINGS OF FACT** |
| BOARD OF DIRECTORS, ) | **AND CONCLUSIONS OF** |
| ) | **LAW** |
| Defendants. ) | |
| _____) | |

# PART TEN

942. The Plaintiffs' seek to disqualify IDT as "science" simply because <u>some</u> (not all) of the possible hypothesis left open by IDT theorist may coincide with some (not all) religious or philosophical beliefs.

   a. But such mere consistency cannot disqualify a scientific theory as a matter of fact. Cf. FF 765–770.

   b. And it is fundamental that mere coincidence, in this case between scientific hypothesis and certain religious or philosophical beliefs, provides no grounds to void a policy on the theory it is an establishment of religion. *Cf. Harris v. McRae*, 448 U.S. 297, 319-320, 100 S.Ct. 2671, 2689-2690 (reasoning that Hyde Amendment prohibiting funding for abortion did not violate Establishment Clause simply because the values it reflected happened to coincide with religious beliefs of some religious groups.); *McGowan v. Maryland*, 366 U.S. 420, 442-43, 81 S.Ct. 1101, 1113-14 (reasoning that Establishment Clause does not ban laws simply because rationale for law "happens to coincide or harmonize with the tenets of some or all religions.").

943. These primary effects of DASD's curriculum change advance wholly legitimate and secular educational goals, generally speaking–to advance

science education by making students aware of another scientific theory, IDT, and the controversy surrounding IDT and ET. Any other effects of the curriculum change are secondary.

944. The Court rejects the Plaintiffs' assertions that DASD's policy does not advance DASD's goals because these assertions boil down to nothing more than difference in judgment concerning the wisdom of the Board's educational goal given the current standing of IDT in the scientific community or the efficacy of the measure that the Board chose in an effort to advance its goal. This line of argument fails to take into account the actual and modest goal of the Board: to make students aware of IDT and the controversy concerning ET and IDT in the scientific and academic community. More fundamentally, the Establishment Clause does not empower the Plaintiffs to second-guess the Defendants' lawful exercise of authority to determine curriculum based on nothing more than differing views concerning the wisdom of the chosen pedagogical goal or efficacy of means by which that goal is advanced. Quite the contrary, it is fundamental that the Board's exercise of authority is entitled to this Court's deference.

945. The Court also finds that the Plaintiffs cannot prove that the primary effect of DASD's curriculum policy is to advance religion by pointing to an

"endorsement" of religion which they–or others–would attribute to DASD's curriculum policy.[7] The Plaintiffs' recourse to the endorsement test is improper because no Court is free to set aside Supreme Court precedent on the theory that intervening case law has somehow changed the law where, as here, the controlling case is clear. *See Agostini*, 521 U.S. at 237 ("if a precedent of this Court has direct application in a case . . . the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."); *Otto v. Pennsylvania State Education Association-NEA*, 330 F.3d 125, 132-33 (2003)(following Supreme Court precedent despite questions because "[a]bsent a counter directive by the Supreme Court, we likewise make no exception."). As the Third Circuit has recognized, the "endorsement" test has been developed for, and applied with respect to, cases involving religious displays. *See, e.g., Modrovich v. Allegheny County*, 385 F.3d 397, 401 (3rd Cir. 2004) ("[T]he 'endorsement' test modifies *Lemon* in cases involving religious displays on government property."). The Supreme Court has never applied the endorsement test to claims that curriculum

---

[7] In the interest of economy, efficiency, (and shared humanity), Defendants will address the Plaintiffs' effects argument in detail in connection with their rebuttal submissions so as to avoid piecemeal arguments on this issue.

violates the Establishment Clause and therefore, "[a]bsent a counter directive by the Supreme Court," *see Otto,* 330 F.3d at 132-33, this Court must "likewise make no exception," *id*, to the straightforward application of the *Lemon* test the Supreme Court has employed with respect to claims that the purpose and effect of a curriculum change was to advance religion.

946. Moreover, it is clear that Plaintiffs cannot be allowed to use newspaper clippings claiming that the board sought to advance a religious purpose to prove that the board's policy has the effect of advancing religion.

   a.   As found above, the primary effect of the curriculum change was the statement to be read to students.

   b.   Indeed, the evidence shows that the board did not even discuss or contemplate the press release or newsletter at the time the curriculum policy was approved by the board such that these actions were, at most, not intended but secondary and incidental effects–not of the curriculum change–but of inaccurate reporting about the curriculum change. FF 484, 534.

   c.   This all goes to show that there is no way the board can be liable for reports issued by third parties who are not authorized to speak for the board and who are not under the control of the Defendants. For these

reasons the Court concludes, as a matter of fact and law, that the newspaper articles cannot be used as evidence of the purpose or effect of the Defendants' policy.

947. Finally, it is likewise clear that Plaintiffs' use of newspaper clippings and the like as evidence of public controversy concerning the legitimacy of the Board's curriculum policy cannot stand-in for an actual constitutional violation. The reason is obvious: on this theory mere controversy becomes the ersatz substitute for a genuine constitutional violation. The Supreme Court has already rejected this argument in another context precisely because it makes accusation (no matter how baseless) tantamount to conviction. *See Lynch v. Donnelly*, 465 U.S. 668, 683-84 (1984)(rejecting claim that political divisiveness provides basis for Establishment Clause violation).

948. The adherence to controlling case law which precludes application of the "endorsement test" to a curriculum change–and is required by law–is particularly appropriate where, as here, the purported change in the law lacks appeal to common sense. One need look no further than the Plaintiffs' arguments to see the unjust and absurd results that would follow from an effort to apply the endorsement test to this case. In this case Plaintiffs

would ground their claim that DASD's curriculum policy endorses religion, not on the text of the statement read to students (the actual effect of the curriculum change) but on newspaper stories asserting that DASD's policy is religious. By this slight of hand, the hearsay characterization of DASD's policy trumps the actual effects of the policy proven by evidence in this court of law.[8]

949. The Plaintiffs effort to prove the effects of DASD's curriculum policy by means of press clippings must be rejected for other reasons. If the Plaintiffs' use of newspaper stories as proof of the board's board's policy advances religion, were accepted, a change to the ninth grade curriculum which results in a statement read to students, has a primary effect that advances religion not just in Dover but the world. This Court cannot accept the Plaintiffs' effort to equate primary effect with "butterfly effect" precisely because it finds no support in the law, and the result would be chaotic.

950. In sum, the Court finds that *Edwards, supra*, actually supports the Defendants policy in this case precisely because the Supreme Court took

---

[8] First, if such evidence were proof, then there would be no need for trials. Plaintiffs could base their claims on news reports and prevail regardless of the truth of the matters asserted therein. Second,

pains to point out that "teaching a variety of scientific theories about the origins of humankind to school children, might be validly done with the clear secular intent of enhancing the effectiveness of science instruction." *Edwards*, 482 U.S. at 594. Defendants' policy is a modest step in that direction, making students aware of IDT as a theory which differs from ET while focusing teaching effort on ET as recommended by science faculty, and from this it follows that the Plaintiffs' claim must be–and hereby are–rejected.

## CONCLUSION

For these reasons, this Court will deny the Plaintiffs' request for relief and enter judgment dismissing, with prejudice, the Plaintiffs' claim. A separate judgment will be entered pursuant to this opinion and order.

Respectfully submitted,

22 November 2005

_____
Patrick T. Gillen (P47456)*
Richard Thompson (P21410)*
Robert J. Muise (P62849)*
THOMAS MORE
LAW CENTER
24 Frank Lloyd Wright Drive
PO Box 393
Ann Arbor, Michigan 48106
(734) 827-2001
*Attorneys for Defendants*
 *admitted pro hac vice


By:_____
Ron Turo
Turo Law Offices
29 South Pitt Street
Carlisle, PA 177013