IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMMY KITZMILLER; BRYAN AND CHRISTY REHM; DEBORAH FENIMORE AND JOEL LIEB; STEVEN STOUGH; BETH EVELAND; CYNTHIA SNEATH; JULIE SMITH; AND ARALENE ("BARRIE") D. AND FREDERICK B. CALLAHAN, | : : : : : : : : | |
| Plaintiffs | : : | CIVIL ACTION |
| vs. | : : | No. 4:04-cv-2688 |
| DOVER AREA SCHOOL DISTRICT; DOVER AREA SCHOOL DISTRICT BOARD OF DIRECTORS, | : : : : : | (JUDGE JONES) (Filed Electronically) |
| Defendants | : | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Defendants spend 898 paragraphs of proposed factual findings and 52

proposed legal conclusions avoiding the mountain of inconvenient evidence

demonstrating that the Dover Area School Board's change to the biology

curriculum was done for religious reasons, and that intelligent design is inherently

religious.  At bottom, their defense depends on three unsustainable contentions:

(1) It doesn't matter that intelligent design's designers describe their movement as

a religious one.  (2) It doesn't matter what the Board members said about

creationism or religion generally because intelligent design is not religious.  And therefore (3) this Court should not base its decision in this case on the types of evidence that were dispositive in *Edwards* and *McLean*.  But defendants' position cannot be squared with either the evidence or the Supreme Court's and the Third Circuit's settled Establishment Clause jurisprudence.  For the record is clear that intelligent design is a religious view; that defendants latched onto it because they wanted to impart that religious view to Dover's ninth-graders; and that defendants succeeded in their goal.  No reasonable observer could draw any other conclusions.

A.   **The Unrebutted Evidence of Intelligent Design's Creationist and Religious Nature is Highly Relevant to this Court's Determination Whether Presenting Intelligent Design Violates the Establishment Clause**

Plaintiffs proved at trial that (a) the intelligent-design textbook *Of Pandas and People* was written as a creationist tract by creationists, including Dean Kenyon, the principal proponent of creation-science in *Edwards v. Aguillard*[1] (Pls.' FF 19-27); (b) the intelligent-design movement was the result of a legal strategy devised by law-professor Phillip Johnson to get around the *Edwards* decision (Pls.' FF 13); (c) the arguments and assertions that intelligent design's proponents make are the same as those that their creation-science predecessors made, right down to the last flagellum (Pls.' FF 28); and (d) the intelligent-design

---

[1] 482 U.S. 578 (1987).

movement's stated goal is to produce a "theistic and Christian science."  Pls.' FF 10.  John Haught, the only theologian to testify, explained that the ultimate, supernatural cause posited by intelligent design has all the attributes of the God of Western (and in particular Christian) religions, and that the argument for intelligent design is essentially the same as the classical argument for the existence of God. Pls.' FF 2-3.  Barbara Forrest explained, and the writings of the leaders of the intelligent-design movement confirm, that the movement's founders and chief proponents consider the "designer" to be God and view intelligent design itself as an explication of the Gospel of John.  Pls.' FF 6, 9-11.  Defendants did not refute any of this evidence.  Quite the contrary, their experts admitted that the "designer" is God (Pls.' FF 4), and that the argument for intelligent design is the very one that Rev. William Paley offered more than 200 years ago as proof of God's existence. Pls.' FF 3.

Defendants devote only a single proposed finding (FF 597) and two proposed conclusions of law (CL 930-31) to responding to – or more accurately, to attempting to explain away – all the evidence that intelligent design is a religious proposition and a form of creationism.  They contend in those paragraphs that the Court should ignore all the evidence of intelligent design's lineage and religious character because the Dover Board members do not personally know Jon Buell (*Pandas'* publisher) or Phillip Johnson (the law professor who founded the modern

intelligent-design movement), have not read the *Wedge Document*, which advocates design as "theistic and Christian science," and were not familiar with *Pandas'* drafting history.  But defendants' protestations have no merit either legally or logically.

Defendants are the parties that brought intelligent design and *Pandas* to Dover.  In their proposed findings, they ask the Court to find as a factual matter that intelligent design is neither creationism nor a religious concept of any other sort.  *See* Defs.' FF 641 ("ID is not inherently religious and is not religion"); Defs.' FF 643 ("ID is not Creationism."); Defs.' CL 939 ("IDT is – in fact – a scientific theory, not creationism."), and CL 941 ("IDT is not <u>religion</u>.").  And they ask this Court to find that making *Pandas* available to students is good for science education.  Defs.' FF 854.  They cannot expect the Court to make those findings without considering the evidence most probative of intelligent design's content – namely, how the intelligent-design movement defines and describes itself in *Pandas* and elsewhere.   Otherwise, proponents of religious, non-scientific explanations for the origins and development of life could avoid constitutional scrutiny – and render the *Edwards* decision nugatory – by the simple expedient of adopting less-religious sounding labels.  But surely the Supreme Court did not mean in *Edwards* to instruct creationists that the First Amendment would be satisfied if they just kept trying new names – going from "creation science" to

"intelligent design" to "sudden emergence" theory to "teach the controversy" to whatever follows that – until they finally found one that might fool a reviewing court.

Indeed, the evidence that defendants are asking this Court to ignore is exactly the sort that the court in *McLean v. Arkansas Board of Education*[2] considered and found dispositive of the question whether creation science was a scientific view that could be taught in public schools, or a religious one that could not. Specifically, the *McLean* court considered writings and statements by creation-science advocates like Henry Morris and Duane Gish, as well as the activities and mission statements of creationist think-tanks like the Bible Science Association,[3] the Institute for Creation Research, and the Creation Science Research Center.[4] The court did not make the relevance of that evidence conditional on whether the Arkansas Board of Education knew all this information; instead, the court treated the evidence as speaking directly to the threshold question *what creation science was*. And, in *Edwards,* the Supreme Court adopted *McLean*'s analysis of that evidence without reservation – and without any

---

[2] 529 F. Supp. 1255 (E.D. Ark. 1982).

[3] The Bible Science Association is the organization that *Pandas* contributor Nancy Pearcey affiliates with (Pls.' FF 20), another connection between creation science and intelligent design.

[4] 529 F. Supp. at 1259-1260.

PHLEGAL: #1829322 v1 (137$$01!.DOC)

discussion of which details about creation science the defendant school board actually knew.[5]

Furthermore, while defendants may not have been as well versed in intelligent design's creationist history as Barbara Forrest and Robert Pennock are, defendants were not entirely ignorant on that score either:  They contacted FTE about *Pandas*.  31:223-224 (Baksa).  They had multiple discussions with the Discovery Institute, sponsors of the Wedge Strategy and the driving force behind the movement to generate a "theistic and Christian science" under the label "intelligent design."  29:130-43 (Buckingham); 33:111-12 (Bonsell).  Defendants also searched the Institute for Creation Research's website to learn about *Pandas*, and that website accurately describes *Pandas* as a creationist book.  Pls.' FF 209. What is more, the Board received unequivocal information that intelligent design is a form of creationism, both through the Origins of Life document that Mike Baksa distributed (P149) and through the legal memorandum from Stephen Russell, who told the Board that the Thomas More Law Center "refers to the creationism issue as intelligent design."[6]  P70.

---

[5] 482 U.S. at 590 n.9.

[6] Whether or not the Thomas More lawyers actually used the words that Russell attributed to them is not the issue; what matters is what the Board was told, because that information had to figure prominently in its understanding of what intelligent design actually is.

(continued...)

PHLEGAL: #1829322 v1 (137$$01!.DOC)

Additionally, there can be no serious doubt that evidence about what intelligent design means to those who promote it is highly relevant to the effect and endorsement tests.  Most of that evidence – which unequivocally attests to intelligent design's fundamentally and inescapably religious nature – is readily available in print and on the internet.  Plaintiff Cyndi Sneath and Board members Sheila Harkins and William Buckingham all learned about intelligent design by searching on-line.  7:51-54 (Sneath); 34:48-49 (Harkins); 29:30-39 (Buckingham). A reasonable, objective observer surely has constructive knowledge of the voluminous, publicly available writings demonstrating intelligent design's religious, creationist nature.  And it is certainly relevant that Jon Buell, Phillip Johnson, and the Wedge document's authors all have the stated objective of imparting to high-school students the conviction that God is their creator (P 566, P328, P140) – and to do so through *Pandas* and intelligent design.[7]

_____

(continued...)

We note in passing that, although defendants aver that the District's solicitor advised that the Board's policy initiative was legal (Defs.' FF 560), the **only** legal advice in evidence is Russell's e-mail message, which warned defendants that they would  likely lose a lawsuit over intelligent design and *Pandas* because of the Board's history of religious statements and efforts to incorporate religion into the classroom.  P70.

[7] *Lynch v. Donnelly*, 465 U.S. 668, 690 (1984)(O'Connor, J., concurring).

-7-

     **B.**    <u>**Defendants' Admissions Demonstrate That Intelligent Design is Not Science**</u>

     Defendants' proposed findings are a litany of misrepresentations of the record evidence, designed to persuade this Court that intelligent design is science.  But in the end, plaintiffs need not burden the Court with point-by-point corrections because the Court can resolve the case based on defendants' own admission that intelligent design endeavors to change the ground rules of science to include supernatural causation (Defs.' FF 654-59), which the Supreme Court in *Edwards* and the court in *McLean* correctly recognized as an inherently religious concept.[8]  Indeed, the religious, non-scientific nature of intelligent design is implicit in the phrase that defendants' experts use to explain it, namely, the "purposeful arrangement of parts."  For scientists universally recognize that even simple biological systems have multiple interacting parts.  The only thing that intelligent design adds to this equation is the notion of "purpose."  But that notion is one that defendants' experts admit is not knowable through science (38:94-95, 98) (Minnich), for it would require seeing into the mind of the designer – God.  In short, intelligent design makes no scientific assertion, just a theological one.

---

[8] *See Edwards*, 482 U.S. at 591-92*; McLean,* 529 F. Supp. at 1267.

**C.**     **Defendants Employ Fatally Inconsistent Characterizations About Board Members' Statements and Actions**

As for the Board's words and deeds in advocating for and implementing the curriculum change, defendants' proposed factual findings suffer from an astounding cognitive dissonance, if not pure schizophrenia. Statements and actions admitted in one paragraph are ignored, contradicted or averted in the next one.

Take Alan Bonsell's discussion of creationism at Board retreats in 2002 and 2003: Defendants admit both that Bonsell talked about "creationism" at the March 2003 board retreat (Defs.' FF 74) and that he talked about teaching "something" 50/50 with evolution at that same retreat. Defs.' FF 77. But they insist that Bonsell did not say that he wanted creationism taught 50/50 with evolution. Defs.' FF 133. This Court can put two and two (or 50 and 50) together, even if Defendants will not.

Moreover, while defendants admit that Dr. Nilsen accurately recorded Bonsell discussing creationism at the retreats, neither Bonsell nor any other witness for defendants had an independent recollection of him saying it. [9] Yet

---

[9] Defendants falsely assert that plaintiffs' witnesses have no independent recollection of Bonsell talking about creationism at the board retreats. Defs.' FF 51, 79. In fact, Barrie Callahan, Jeff Brown, and Casey Brown – in some instances after their recollection was refreshed – all remembered Bonsell talking about

(continued...)

defendants blithely assert that, in "mention[ing] creationism," Bonsell was not talking about "teaching creationism."  Defs' FF 133.  If defendants don't remember Bonsell saying the word, how could they know what he meant by it?

On the hotly contested issue whether board members who eventually voted for the change to the biology curriculum were discussing creationism at the June 2004 board meetings, defendants again suggest facts that can co-exist only in parallel universes.  Defendants admit that William Buckingham discussed creationism at the June board meetings (Defs.' FF 244, 267), but then insist that "one of the inaccuracies in the press reporting on board meetings was that the reporters were referring to ID as creationism."  Defs.' FF 248.  While arguments can exist in the alternative, facts cannot.  Either the Board was promoting creationism at the June meetings (and the reporters described events correctly) or it was not.  The evidence – and defendants' admissions in paragraphs 244 and 267 – make clear which account is correct.

Moreover, even if this Court were to credit defendants' assertion that "[t]he weight of the evidence shows that board members were considering a curriculum change relating to ID, not creationism," at the June 2004 meetings

_____

(continued...)

creationism at the board retreats.  4:125-29 (Callahan); 7:17-22 (C. Brown); 8:49-51 (J. Brown).

PHLEGAL: #1829322 v1 (137$$01!.DOC)

(Defs.' FF 243), the case that the Board acted with a religious purpose would not be undermined in the slightest.  Defendants admit that, when discussing the biology curriculum at those meetings, Buckingham stated that "separation of church and state is a myth."  Defs.' FF 211.  They do not deny that at those same meetings, Buckingham declared that this is "a Christian nation," and made the impassioned plea that "2000 years ago a man died on a cross for us, can't we stand up for him now."  Whatever Buckingham might have thought he was advocating – creationism, intelligent design, sudden emergence, or anything else – he knew that his purpose was expressly religious, and he made sure that everyone else did too.[10]

### D.  Defendants Presented No Convincing Evidence That They Were Motivated By Any Valid Secular Purpose, Much Less That Their Primary Purpose Was Secular

Although defendants attempt to persuade this Court that each Board member who voted for the change to the biology curriculum did so for the secular

---

[10] Nor can defendants escape liability by contending that only some but not all the Board members who voted to change the curriculum declared a religious purpose for doing so.  The case law is clear that a religious purpose can be inferred from the statements of a policy's sponsors – in this case, Bonsell and Buckingham. *See, e.g., Edwards*, 482 U.S. at 587 and 591 n.13; *Wallace v. Jaffree,* 472 U.S. 38, 56-58 (1985).  There is no evidence that other Board members who voted for the policy in any way opposed, objected to, or otherwise expressed any different view than Bonsell and Buckingham did.  The evidence demonstrates that neither Cleaver nor Harkins brought any independent knowledge or judgment to the debate, but instead simply relied on and deferred to Bonsell and Buckingham.  Plfs.' FF 284. And as for Geesey, she not only explicitly testified that she relied entirely on Bonsell and Buckingham (Plfs.' FF 284) but also independently advocated for the policy as "creationism."  P60.

purpose of improving science education (Defs.' FF 909-14), their contentions are

irreconcilable with the record evidence.  For the Board took none of the steps that

school officials would take if promoting science education had truly been their

objective:  they did not consult any scientific materials; they did not contact any

scientists or scientific organizations; and they did not even listen to their own

science teachers.[11]  Pls.' FF 289, 332.  In fact, some of the Board members who

---

[11] Although defendants brazenly attempt to conscript the science teachers into their rationale for approving the change to the biology curriculum (Defs.' FF 475), the record is clear that the teachers did not initiate or endorse any change to the curriculum.  Instead, they were bullied and pressured for the two years leading up to the curriculum change; and to the extent that they ultimately went along with some aspects of the curriculum change, Mrs. Spahr made sure the full Board knew that the teachers were doing so only as a compromise and did not approve of any of the Board's actions.  Pls.' FF 151-161, 178-188, 207-09, 219, 228-29.  The record also establishes that the Board rejected the faculty's and the administration's recommendations for the disclaimer statement read to the biology students because the proposed language would have portrayed evolution in a positive light.  Pls.' FF 245-48.  For defendants to claim that the Board based its approval of any aspect of the curriculum change on the teachers' acquiescence to the Board's demands is a perversion of the facts.

It is also disingenuous for defendants to suggest that the current policy requiring presentation of intelligent design is in any way similar to the biology teachers' former practice of mentioning creationism at the start of the evolution unit.  The teachers testified, and defendants' witnesses agreed, that the teachers never represented the religious proposition of creationism as a scientific theory competing with the theory of evolution; instead, they underscored that creationism lies outside the realm of science and therefore that it would not be discussed in science class.  36:83-84 (Linker).  The teachers' approach was consistent with science-education-expert Brian Alters' testimony that teachers should demonstrate sensitivity to students' religious beliefs and communicate that lessons on evolution in science class are not intended to compete with those religious beliefs.  14:87-93

(continued...)

voted for the change to the biology curriculum expressly admitted that they *do not even know what intelligent design is*.  Pls.' FF 235, 240-41.  The evidence thus demonstrates that the Board never attempted to develop any understanding of intelligent design beyond the fact that it is a less overtly religious – but nonetheless still inherently religious – version of the creationism that they wanted to teach.

In short, there is no credible evidence that the Board acted for secular purposes and overwhelming evidence that it acted for religious ones.  Under these circumstances, there can be no doubt that the Board's primary purpose was religious.

### E.    Conclusion

The law and the evidence speak with one voice:  Defendants' conduct violates the endorsement test as well as the purpose and effect prongs of the *Lemon* test.  It cannot stand.  The challenged policy should be struck down.

_____

(continued...)

(Alters).  By contrast, the board's policy requires teachers to mislead students into believing that intelligent design – a religious view – is a scientific explanation for the origin and development of life that competes with evolutionary theory.

Respectfully submitted,


*/s/ Eric Rothschild*

Eric Rothschild (PA 71746)
Stephen G. Harvey (PA 58233)
Alfred H. Wilcox (PA 12661)
Christopher J. Lowe (PA 90190)
Stacey I. Gregory (PA 90290)
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000
*rothschilde@pepperlaw.com*
*harveys@pepperlaw.com*
*wilcoxa@pepperlaw.com*
*lowec@pepperlaw.com*
*gregorys@pepperlaw.com*


Thomas B. Schmidt, III (PA 19196)
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
P.O. Box 1181
Harrisburg, PA 17108
(717) 255-1155
*schmidtt@pepperlaw.com*


Witold J. Walczak (PA 62976)
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213
412-681-7864
*vwalczak@aclupgh.org*

-14-

Paula K. Knudsen (PA 87607)
ACLU of Pennsylvania
105 N. Front St., Suite 225
Harrisburg, PA 17101
(717) 236-6827
*pknudsen@aclupa.org*

Ayesha Khan (adm. *phv*)
Richard B. Katskee (adm. *phv*)
Alex J. Luchenitser (adm. *phv*)
Americans United for Separation of
        Church and State
518 C St., NE
Washington, DC 20002
(202) 466-3234
*akhan@au.org*
*katskee@au.org*
*luchenitser@au.org*

Attorneys for plaintiffs:
TAMMY KITZMILLER; BRYAN AND
CHRISTY REHM; DEBORAH
FENIMORE AND JOEL LIEB; STEVEN
STOUGH; BETH EVELAND; CYNTHIA
SNEATH; JULIE SMITH, AND
ARALENE ("BARRIE") D. AND
FREDERICK B. CALLAHAN

Dated:  November 30, 2005

## CERTIFICATE OF SERVICE

I, Eric Rothschild, hereby certify that on November 30, 2005, I caused true and correct copies of the foregoing Plaintiffs' Response to Defendants Proposed Finding of Fact and Conclusions of Law to be served upon the following counsel via electronic filing and electronic mail to:

Richard Thompson
Robert J. Muise
Patrick T. Gillen
THOMAS MORE LAW CENTER
24 Frank Lloyd Wright Drive, P.O. Box 393
Ann Arbor, Michigan  48106


and via electronic mail to:


Thomas B. Schmidt, III
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets, P.O. Box 1181
Harrisburg, PA  17108


Witold J. Walczak
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213


Paula K. Knudsen
ACLU of Pennsylvania
105 N. Front St., Suite 225
Harrisburg, PA  17101

Ayesha Khan
Richard B. Katskee
Alex J. Luchenitser
Americans United for Separation of Church and
State
518 C St., NE
Washington, DC 20002


Ron Turo
Turo Law Offices
29 South Pitt Street
Carlisle, PA  177013


_____*/s/ Eric Rothschild*_____
ERIC ROTHSCHILD

PHLEGAL: #1829322 v1 (137$$01!.DOC)