IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMMY J. KITZMILLER, et al. | § | Civil Action No. 4:04-CV-2688 |
| | § | (M.D. Pa.) |
| Plaintiffs, | § | |
| | § | Hon. John E. Jones III |
| vs. | § | |
| | § | |
| DOVER AREA SCHOOL | § | |
| DISTRICT and DOVER AREA | § | |
| SCHOOL DISTRICT BOARD | § | |
| OF DIRECTORS, | § | |
| | § | |
| Defendants. | § | |

REPLY OF DISCOVERY INSTITUTE AND FOUNDATION FOR THOUGHT AND ETHICS TO PLAINTIFFS' RESPONSE TO AMICUS BRIEFS

Pursuant to its Motion Seeking Leave to File this Reply, Amici Discovery Institute and the Foundation for Thought and Ethics ("FTE") seek to correct four false claims made in Plaintiffs' Response to Amicus Briefs.

**I.  False Claim #1:  "The Dover board has followed [Discovery Institute's] suggestion."**

This statement, found on p. 2 of Plaintiffs' Response, is demonstrably false. Plaintiffs cite an article originally published in the UTAH LAW REVIEW (2000 UTAH L. REV. 37) and reprinted in DARWINISM, DESIGN AND PUBLIC EDUCATION, published by the Michigan State University Press.  Two of the article's authors are Discovery

1

Fellows, and the article does advocate the constitutionality of teaching about intelligent design. However, it is obvious from reading the article that it affirms the *academic freedom of a hypothetical "John Spokes" who wants to "teach the controversy."* Following well-established precedents including *Edwards v. Aguillard*, the article demonstrates the solid foundation for presenting scientific information about biological evolution. By contrast, the Dover school board sought, not to affirm the academic freedom of its teachers to "teach the controversy," but rather adopted an ill-advised statement that the teachers in Dover refused to read. This law review article deals with a very different situation from Dover, which wanted to mandate the teaching of intelligent design for all teachers rather than simply providing them with the academic freedom to teach the theory.

Finally, Amicus Discovery Institute has consistently opposed this policy from long before it was adopted and has never "changed its tune." This fact is documented by a press release issued by Discovery Institute which predates the adoption of Dover's policy, stating Discovery's opposition to their policy:

> "[A] recent news report seemed to suggest that the Center for Science & Culture endorses the adoption of textbook supplements teaching about the scientific theory of intelligent design (ID), which simply holds that certain aspects of the universe and living things can best be explained as the result of an intelligent cause rather than merely material and purposeless processes like natural selection. Any such suggestion is incorrect."[1]

---

[1] Pennsylvania School District Considers Supplemental Textbook Supportive of Intelligent Design: Discovery Institute continues to recommend fully teaching

Shortly after the adoption of the Dover policy, the Associate Director of Discovery Institute's Center for Science and Culture was cited in an Associated Press article objecting to the Dover policy.[2] Indeed, the very day plaintiffs filed their lawsuit, Discovery Institute again issued a statement of opposition to Dover's policy:

> "Apart from questions about its constitutionality, [Discovery Senior Fellow John] West expressed reservations about the Dover School Board's directive on public policy grounds.
>
> "'When we first read about the Dover policy, we publicly criticized it because according to published reports the intent was to mandate the teaching of intelligent design,' explained West. 'Although we think discussion of intelligent design should not be prohibited, we don't think intelligent design should be required in public schools.'"[3]

For a variety of reasons, both legal and policy, the Discovery Institute consistently *opposed* the Dover Board's adoption of the policy in question.[4]

---

Darwinian evolution, including scientific challenges to the theory; October 6, 2004, discovery.org/scripts/viewDB/index.php?command=view&id=2231, last visited Dec 10, 2005.

[2] "...the Seattle-based Discovery Institute, which supports scientists studying intelligent-design theory, opposes mandating it in schools... said John West, associate director of the institute's Center for Science and Culture." Martha Raffaele, Associated Press, "Mandate to teach 'intelligent design' as evolution alternate is believed to break ground," November 12, 2004.

[3] Discovery Calls Dover Evolution Policy Misguided, Calls For its Withdrawal, discovery.org/scripts/viewDB/index.php?command=view&id=2341, last visited Dec 10, 2005.

[4] For a full statement of Discovery Institute's consistent position regarding the Dover policy, and a correction to inaccurate claims made about the non-participation of Dr. Stephen Meyer as an expert witness, see "Setting the Record Straight about Discovery Institute's Role in the Dover School District Case," November 10, 2005,

3

**II.     False Claim #2:  "Discovery Institute has abandoned that position"**

After mischaracterizing the position that Discovery Institute Fellows took at the beginning of this litigation, they can offer no support for the claim that Discovery has abandoned that position. Moreover, it is obvious from Discovery's brief that it vigorously defends the constitutionality of teaching about intelligent design *when it is included in a well designed science curriculum*.  As discussed *supra*, Discovery has consistently opposed Dover's policy to mandate the teaching of intelligent design. Discovery's position has remained unchanged, and it is unclear what purpose is served by plaintiffs' gratuitous and unjustified attack on the credibility and integrity of Discovery.

**III.    False Claim #3:  Discovery Institute describes its "mission and activities as Christian apologetics."**

Plaintiffs' Response misrepresents the mission and philosophy of Discovery Institute, which is a secular think tank that existed for several years before it became involved in the issue of intelligent design. In particular, plaintiffs egregiously distort and misinterpret the content of the so-called "Wedge Document." The Institute continues to believe that both religious and anti-religious motivations of scientists are

---

http://www.discovery.org/scripts/viewDB/index.php?command=view&id=3003, last visited Dec. 10, 2005.

irrelevant to determining the validity of a scientific theory. But because the plaintiffs continue to misstate the Institute's position to the court, the Institute submits its official published response to misinterpretations of the "Wedge Document" as Appendix A.[5]

### IV. False Claim #4: FTE is "not a scientific [organization] pursuing scientific aims."

Plaintiffs' Response at page 6 states "Numerous documents reveal FTE to be a religious organization with religious objectives, not a scientific one pursuing scientific aims." This statement makes as much sense as saying that Albert Schweitzer was a Christian missionary, not a medical doctor or a world-famous authority on Johann Sebastian Bach. Of course, Schweitzer was all three. FTE freely concedes that is an organization with religious objectives, but establishing that fact in no way precludes the possibility that FTE is also a scientific organization pursuing scientific aims. Indeed, the scientific aims of FTE are borne out in the substance contained in *Of Pandas and People*:

> "This book has a single goal: to present data from six areas of science that bear on the central question of biological origins. We don't propose to give final answers, nor to unveil *The Truth*. Our purpose,

---

[5] See Appendix A, "The 'Wedge Document': 'So What?'" also available at http://www.discovery.org/scripts/viewDB/filesDB-download.php?id=349, last visited December 12, 2005.

5

rather, is to help readers understand origins better, and to see why the data may be viewed in more than one way."[6]

It is typical of Plaintiffs' form of argument that it responds to claims about science by pointing to religious identity or motivation as though the latter disqualified the claimant from standing to make scientific claims. This prejudicial and false dichotomy should be rejected by the Court.

V.  **False Claim #5: Amici made "logically inconsistent assertions that . . . science must discard the . . . ground rule of methodological naturalism . . . yet, on the other hand, intelligent design does not involve supernatural causation."**

Plaintiffs' Response is actually quite noteworthy in its concession (page 4, note 4) that science includes the study of "intelligent activity." Plaintiffs finally clarify their meaning of "methodological naturalism" by explaining that "[i]t is only supernatural 'intelligent causes' that are excluded by methodological naturalism."[7] But Amici have made painfully clear that the methodology of design detection, which Plaintiffs now concede is part of science, is typically incapable of identifying the intelligent agent—it is only able to identify *that* the causal agent for the phenomenon in question was an intelligent one rather than a combination of natural forces.

---

[6] *Of Pandas and People* (2nd ed., 1993) pg. viii.
[7] Pg. 4

Yet plaintiffs' witnesses throughout the trial appeared to rely upon a definition of science that excludes intelligent agents as causal explanations: Under the rules of methodological naturalism, science is a search for "natural explanations for natural phenomena" (Dr. Kenneth Miller, Day 1 (pm), p. 95; Dr. Robert Pennock, Day 3 (am), p. 23; Dr. Barbara Forrest, Day 6 (am), p. 9). If, as the footnote concedes, science also includes the study of the actions of intelligent agents, and indeed the study of how to differentiate the actions of intelligent agents from the effects of natural forces like wind and erosion, then much of the force of Plaintiffs' argument against intelligent design (that it violates the rules of methodological naturalism) evaporates.  Of course, Plaintiffs refuse to acknowledge that science could include the search for an intelligent cause of biological complexity, because *Plaintiffs* assert that the agent responsible for such complexity would necessarily be supernatural.  But this is precisely the point of the briefs submitted by Amici—that the search for the best explanation for biological complexity can consider the hypothesis that it is the result of intelligent activity, *and preclude from the scientific endeavor speculation concerning the agent's identity*. As noted, the inference to intelligent causes is based upon our observation-based experience of the cause-and-effect relationship between the origin of information and the action of intelligent agency.  Plaintiffs' failure to grasp this argument results not  from a logical

inconsistency in the position of Amici but rather from the devastating effect such an acknowledgement would have upon their attack on the theory of intelligent design.

## Conclusion

For the foregoing reasons, Amici respectfully request that this Court reject Plaintiffs' contentions.

Respectfully submitted,

\_\_/s/ Randall L. Wenger_____
Randall L. Wenger, Esq.
Pa. ID No. 86537
Leonard G. Brown, III, Esq.
Pa. ID No. 83206
CLYMER & MUSSER, P.C.
23 North Lime Street
Lancaster, PA  17602
(717) 299-7101
*Attorneys for Amici*

Jeffrey C. Mateer
Texas State Bar No. 13185320
MATEER & SHAFFER, L.L.P.
1300 Republic Center
325 N. St. Paul Street
Dallas, Texas  75201
(214) 720-9900
*Attorney for the Foundation for Thought and Ethics*

David K. DeWolf, Esquire
Professor of Law
Gonzaga U. School of Law

>WA Attorney I.D. No. 10875
>721 Cincinnati Street
>Spokane, WA  99220
>(509) 323-3767
>*Attorney for Discovery Institute*

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2005, a copy of the foregoing *Brief* were served on the following counsel through the electronic case filing system:

Eric Rothschild
Stephen G. Harvey
Joseph M. Farber
Benjamin M. Mather
Pepper Hamilton LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103

Thomas B. Schmidt, III
Pepper Hamilton LLP
200 One Keystone Plaza
North Front and Market Streets
P. O. Box 1181
Harrisburg, PA  17108

Witold J. Walczak
ACLU of Pennsylvania
313 Atwood Street
Pittsburg, PA  15213

Paula K. Knudsen
ACLU of Pennsylvania
105 N. Front Street
Suite 225
Harrisburg, PA  17101

Richard B. Katskee
Ayesha Khan
Alex J. Luchenitser
Americans United for Separation Of Church and State
518 C. Street, NE
Washington, DC  20002

Mary Catherine Roper
ACLU of Pennsylvania
P. O. Box 1161
Philadelphia, PA 19105

Richard Thompson
Robert J. Muise
Patrick T. Gillen
THOMAS MORE LAW CENTER
24 Frank Lloyd Wright Drive
P. O. Box 393
Ann Arbor, MI 49106

Ron Turo
Turo Law Offices
28 South Pitt Street
Carlisle, PA 17013

__/s/ Randall L. Wenger________
Randall L. Wenger, Esq.